THERESA M. TRABER (SBN 116305)
Traber & Voorhees
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com

JANET HEROLD (SBN 186419)
Special Counsel to Change to Win, CLC
2629 Foothill Blvd #357
La Crescenta, California 91214
Telephone: (818) 957-7054
Facsimile: (818) 542-6419
Janet.Herold@seiu.org

MICHAEL RUBIN (SBN 80618)
JONATHAN WEISSGLASS
 (SBN 185008)
JENNIFER SUNG (SBN 254741)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
mrubin@altber.com
jweissglass@altber.com
jsung@altber.com

Attorneys for Plaintiffs Everardo Carrillo, *et al.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

**CV 11 - 08557 CAS (DTBx)**

| | |
|---|---|
| EVERARDO CARRILLO; FERNANDO CHAVEZ; ERIC FLORES; JOSE MARTINEZ ARCEO; BALTAZAR ZAVALA; and JUAN CHAVEZ, for themselves and all others similarly situated and the general public, <br><br> Plaintiffs, <br><br> v. <br><br> SCHNEIDER LOGISTICS, INC.; PREMIER WAREHOUSING VENTURES, LLC; ROGERS-PREMIER UNLOADING SERVICES, LLC; IMPACT LOGISTICS, INC., and DOES 1-15, <br><br> Defendants. | Case No. _____ <br><br> CLASS, COLLECTIVE AND REPRESENTATIVE ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, DAMAGES, RESTITUTION, AND CIVIL PENALTIES <br><br> (1) FEDERAL FAIR LABOR STANDARDS ACT; <br><br> (2) CALIFORNIA LABOR CODE, CALIFORNIA WAGE ORDERS; <br><br> (3) CALIFORNIA LABOR CODE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA UNFAIR COMPETITION LAW <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Complaint, Case No. _____

THERESA M. TRABER (SBN 116305)
Traber & Voorhees
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com

JANET HEROLD (SBN 186419)
Special Counsel to Change to Win, CLC
2629 Foothill Blvd #357
La Crescenta, California 91214
Telephone: (818) 957-7054
Facsimile: (818) 542-6419
Janet.Herold@seiu.org

MICHAEL RUBIN (SBN 80618)
JONATHAN WEISSGLASS
 (SBN 185008)
JENNIFER SUNG (SBN 254741)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
mrubin@altber.com
jweissglass@altber.com
jsung@altber.com

Attorneys for Plaintiffs Everardo Carrillo, *et al.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| EVERARDO CARRILLO; FERNANDO CHAVEZ; ERIC FLORES; JOSE MARTINEZ ARCEO; BALTAZAR ZAVALA; and JUAN CHAVEZ, for themselves and all others similarly situated and the general public,<br><br>        Plaintiffs,<br><br>        v.<br><br>SCHNEIDER LOGISTICS, INC.; PREMIER WAREHOUSING VENTURES, LLC; ROGERS-PREMIER UNLOADING SERVICES, LLC; IMPACT LOGISTICS, INC., and DOES 1-15,<br><br>        Defendants. | Case No. _____<br><br>CLASS, COLLECTIVE AND REPRESENTATIVE ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, DAMAGES, RESTITUTION, AND CIVIL PENALTIES<br><br>(1) FEDERAL FAIR LABOR STANDARDS ACT;<br><br>(2) CALIFORNIA LABOR CODE, CALIFORNIA WAGE ORDERS;<br><br>(3) CALIFORNIA LABOR CODE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA UNFAIR COMPETITION LAW<br><br>DEMAND FOR JURY TRIAL |

Complaint, Case No. _____

Plaintiffs Everardo Carrillo, Fernando Chavez, Eric Flores, Jose Martinez Arceo, Baltazar Zavala and Juan Chavez, on their own behalf, on behalf of the general public, and on behalf of all similarly situated warehouse workers employed in Riverside County, California, by defendants Schneider Logistics, Inc. ("Schneider Logistics"), Premier Warehousing Ventures, LLC ("Premier Warehousing"), Rogers-Premier Unloading Services, LLC ("Premier Unloading," and, collectively with Premier Warehousing, "Premier"), Impact Logistics, Inc. ("Impact"), and Does 1-15, allege as follows:

## INTRODUCTION

1. This is a class, collective, and representative action brought under federal and California law by six warehouse workers whom defendants have forced to work long hours, under oppressive workplace conditions, for legally inadequate pay, in defendants' Inland Empire warehouses in Mira Loma, California ("the Mira Loma warehouses").  Plaintiffs bring this action on behalf of themselves and others similarly situated to recover the wages that defendants stole – and are continuing to steal – from them in violation of federal and California law.  Plaintiffs also seek redress for other consequences of defendants' unlawful conspiracy, including defendants' wrongful scheme to hide and then cover up the extent of their wrongdoing by failing to keep mandatory payroll records, falsifying records of hours worked and compensation owed, and concealing, denying and/or misrepresenting to the workers the amount of their earnings and on what basis these earnings were calculated.

2. Like hundreds of other similarly situated warehouse workers whom defendants employed during the applicable limitations period, plaintiffs spend their workdays performing strenuous, unskilled physical labor in an environment where the temperature often exceeds 90 degrees, filling orders, labeling boxes, sweeping and cleaning warehouse facilities, breaking down pallet supports, and lifting boxes on and off semi-trailer truck containers destined for Wal-Mart distribution centers

1

Complaint; Case No.

1  and Wal-Mart stores throughout the United States.  Most of the warehouse workers

2  are immigrants; many do not speak English fluently; and large numbers of them have

3  no formal education beyond middle school.

4       3.  In or about 2006, the vast majority of the warehouse workers in the Mira

5  Loma warehouses were directly hired and employed by Schneider Logistics to

6  perform jobs spanning all aspects of the warehouse operation and were paid wages at

7  hourly rates between approximately $12-$17 per hour, plus benefits.  Beginning in or

8  about 2006, defendants devised and began implementing an unlawful scheme to

9  evade their obligations under federal and state labor laws, to depress warehouse

10  workers' wages, and to increase their corporate profits by shifting jobs and hours

11  from warehouse workers directly hired by Schneider Logistics to warehouse

12  workers, like plaintiffs and other similarly situated warehouse workers, who are

13  jointly employed by Schneider Logistics and the companies that recruit and pay

14  those workers, like defendants Premier and Impact.  The wages, hours and working

15  conditions of the workers paid by Impact and Premier are jointly controlled by those

16  companies, Schneider Logistics, and Doe Defendants 1-15.  Although Schneider

17  Logistics previously hired nearly all of the warehouse workers in the Mira Loma

18  warehouses as its direct employees, the percentage of direct hires has steadily

19  decreased since defendants began implementing their unlawful scheme and

20  conspiracy.  Currently, only about 25% of the workers in defendants' Mira Loma

21  warehouses are directly hired by Schneider Logistics.  The remainder are recruited

22  and paid by subcontractors, such as Premier and Impact, and jointly employed by one

23  of those subcontractors, Schneider Logistics and various Doe Defendants.

24       4.  Before approximately February 2010, defendants paid plaintiffs Everardo

25  Carrillo, Jose Martinez Arceo, Baltazar Zavala, and similarly situated warehouse

26  workers who were hired by Premier ("the Schneider-Premier class") on an "hourly

27  rate" basis.  During that period, defendants systematically violated federal and state

28  wage and hour law by failing to pay members of the Schneider-Premier class for all

2

1   hours worked and for all overtime hours at the legally required overtime premium

2   rates, among other violations.

3        5. Beginning in or before February 2010, defendants Impact, Schneider

4   Logistics, and Does 6-10 adopted what they described as a piece-rate compensation

5   plan for all warehouse workers hired by Impact ("the Schneider-Impact class"), and

6   they have continued to compensate members of the Schneider-Impact class under

7   this purportedly piece-rate plan through the present.  Under this compensation plan,

8   defendants claim to pay members of the Schneider-Impact class a set amount for

9   each semi-trailer truck container that is completely unloaded by an individual worker

10  or that individual's team of unloaders.  While defendants have informed plaintiffs

11  and other members of the Schneider-Impact class of the amounts they supposedly

12  earned for completely unloading a particular semi-trailer truck container, defendants

13  have not disclosed, and do not disclose, the basis for those amounts or the factors

14  considered in calculating them.

15       6. By defendants' own description, the purported piece rate system they use to

16  compensate plaintiff Juan Chavez and other members of the Schneider-Impact class

17  does not cover any work that is unrelated to the process of unloading a semi-trailer

18  truck container.  Nonetheless, from the time defendants implemented this purported

19  piece-rate system through to the present, defendants have instructed and required

20  plaintiff Juan Chavez and other members of the Schneider-Impact class to perform

21  many work tasks that are unrelated to the class member's unloading of any trailer,

22  and they have not paid any compensation to the members of the Schneider-Impact

23  class for their performance of those unrelated work tasks.

24       7. Also beginning in or about February 2010, defendants Premier, Schneider

25  Logistics, and Does 1-5 unilaterally adopted a new pay scheme for members of the

26  Schneider-Premier class, which they describe as a group "piece rate" plan, and they

27  have continued to compensate members of the Schneider-Premier class under this

28  purported group piece-rate plan through the present.  Under defendants' purported

3

group "piece rate" plan for the Schneider-Premier class, defendants claim to assign a fixed "piece-rate" amount to each of semi-trailer truck containers fully loaded or unloaded by all members of the Schneider-Premier class working during a shift, add those amounts together, and then divide the total by the number of all class members who worked on that shift to determine the daily compensation paid to each class member.  While defendants have sometimes informed plaintiffs and other members of the Schneider-Premier class of the amounts they earned during a particular day, defendants have refused and continue to refuse to disclose the purported underlying basis for calculating these wages, including the number of truck containers fully filled or unloaded during a shift, the number of class members who worked on the shift, and/or the piece rate or rates assigned to each fully filled or unloaded truck container.  By defendants' own description, the purported group piece rate system used to compensate plaintiffs and other members of the Schneider-Premier class does not cover any work that is unrelated to the process of placing cargo into or removing cargo from a semi-trailer truck container.  Nonetheless, from the time defendants implemented this purported group piece-rate system through to the present, defendants have instructed and required plaintiffs and other members of the Schneider-Premier class to perform many work tasks that are unrelated to the class member's labor in placing cargo into or removing cargo from trailers, but have refused to pay any compensation to members of the Schneider-Premier class for their performance of those unrelated work tasks.   At or about the time defendants adopted this purported group piece-rate plan, defendants falsely represented to members of the Schneider-Premier class that those workers' incomes would increase as a result of defendants' change to the group piece rate method of payment.  Instead, defendants' adoption of group piece-rate plan for paying plaintiffs and members of the Schneider-Premier classes caused the pay of all such warehouse workers to decrease sharply.

Complaint; Case No.

8. Defendants have represented to plaintiffs and all similarly situated warehouse workers that they will only be credited with a "piece" under defendants' purported piece rate systems when they have completed all of the work that must be done on a semi-trailer truck container. Thus, according to defendants, plaintiff Juan Chavez and members of the Schneider-Impact class are only entitled to compensation based on the number of semi-trailer truck containers that are completely unloaded by the worker or his team of unloaders. Similarly, members of the Schneider-Premier class were advised that they are only entitled to a share of the purported group piece rate for semi-trailer truck containers that are completely filled or unloaded before the end of the workers' shift. Defendants do not pay, and have not paid, any plaintiff or plaintiff class members for work performed on any container that was not completely filled or unloaded by a Schneider-Premier class member or completely unloaded by a Schneider-Impact class member before the end of the workers' shift, or for work performed by those workers that does not directly involve filling or unloading such truck containers.

9. Defendants' purported piece rate pay schemes violate federal and state law in many ways. Defendants' pay system perniciously results in all plaintiffs and plaintiff class members not being compensated for all hours worked, not receiving all compensation that defendants promised and represented that the workers earned, not receiving the statutorily mandated overtime premium for hours worked in excess of eight hours per day, 12 hours per day, 40 hours per week, and on the seventh day of seven-day workweeks, and often not being advised of the true rate of pay until well after the work was tendered and completed by the plaintiff class.

10. Defendants also violated, and continue to violate, federal and state minimum wage laws through their manner of implementing their purported "piece rate" schemes. California law requires employers to disclose to their workers, at the time of each wage payment, how each worker's paycheck was calculated, including the number of "pieces" completed, the pay rate corresponding to each piece

5

Complaint; Case No.

1  completed, and the number of hours worked.   Defendants deliberately, but

2  unlawfully, conspired to keep this information secret from plaintiffs and their co-

3  workers, to increase defendants' control over the workers, to maximize their own

4  profits at the workers' expense, and to prevent the workers and state and federal

5  labor enforcement authorities from discovering the nature and extent of defendants'

6  pervasive law-breaking as alleged herein.   Defendants also routinely falsified, and

7  continue to falsify, payroll records that are supposed to reflect the number of hours

8  actually worked by plaintiffs and similarly situated workers and/or the number of

9  "pieces" completed by them.

10      11.   When plaintiffs and their co-workers have questioned defendants about

11  pay issues, defendants routinely responded with threats of retaliation and actual

12  retaliation, including by sending the inquiring workers home without pay, refusing to

13  give them work the next day or over the next several days, terminating their

14  employment, and making threats and imposing other forms of discipline on them.

15  This response was made with the intent, and had the effect, of intimidating workers

16  and dissuading them from asking questions or complaining about compensation and

17  other workplace issues, or otherwise asserting their rights under federal and state

18  labor laws.

19      12.   Defendants also do not ensure that plaintiffs and plaintiff class members

20  are provided with the meal and rest breaks required under California law; never

21  provide paid rest breaks even if the workers are permitted a brief respite from work;

22  fail to pay plaintiffs and plaintiff class members when they report for work and are

23  sent home, as required by California law; and commit other legal violations as

24  described below.

25                              **PARTIES**

26      13.   Plaintiff Everardo Carrillo is an unskilled warehouse worker who applied

27  for employment as a warehouse worker and was employed by defendants Premier,

28

6

Complaint; Case No.

1 | Schneider Logistics and Does 1-5 to work at one or more of the Mira Loma

2 | warehouses from approximately November 2009 to approximately November 2010.

3 |     14.  Plaintiff Fernando Chavez is an unskilled warehouse worker who applied

4 | for employment as a warehouse worker and was employed by defendants Premier,

5 | Schneider Logistics and Does 1-5 to work at one or more of the Mira Loma

6 | warehouses from October 2010 to June 2011.

7 |     15.  Plaintiff Eric Flores is an unskilled warehouse worker who applied for

8 | employment as a warehouse worker and has been employed by defendants Premier,

9 | Schneider Logistics and Does 1-5 to work at one or more of the Mira Loma

10 | warehouses since October 2010.

11 |     16.  Plaintiff Jose Martinez Arceo is an unskilled warehouse worker who

12 | applied for employment as a warehouse worker and has been employed by

13 | defendants Premier, Schneider Logistics and Does 1-5 to work at one or more of the

14 | Mira Loma warehouses since October 2009.

15 |     17.  Plaintiff Baltazar Zavala is an unskilled warehouse worker who applied

16 | for employment as a warehouse worker and was employed by defendants Premier,

17 | Schneider Logistics and Does 1-5 to work at one or more of the Mira Loma

18 | warehouses from April 2009 to June 2011.

19 |     18.  Each of the five plaintiffs identified immediately above brings this lawsuit

20 | on his own behalf, on behalf of all similarly situated warehouse workers employed

21 | by defendants, and on behalf of all aggrieved employees and the general public

22 | pursuant to California Labor Code §2698 et seq. and California Business &

23 | Professions Code §17200 et seq.  The proposed class that these five plaintiffs seek to

24 | represent includes all individuals who applied for employment as a warehouse

25 | worker through Premier and were subsequently assigned to work, and did report to

26 | work and/or worked during the applicable limitations periods, at one or more of

27 | defendants' Inland Empire warehouses in Mira Loma, California ("Schneider-

28 | Premier class").

7

19.  Plaintiff Juan Chavez is an unskilled warehouse worker who applied to Impact for employment as a warehouse worker and has been employed by Impact, Schneider Logistics and Does 6-10 to work at one or more of the Mira Loma warehouses since September 2011.

20.  Plaintiff Juan Chavez brings this lawsuit on his own behalf, on behalf of all similarly situated warehouse workers employed by defendants, and on behalf of all aggrieved employees and the general public pursuant to California Labor Code §2698 et seq. and California Business & Professions Code §17200 et seq.  The proposed class he seeks to represent includes all individuals who applied for employment as a warehouse worker through Impact and were subsequently assigned to work, and did report to work and/or worked during the applicable limitations periods, at one or more of defendants' Inland Empire warehouses in Mira Loma, California ("Schneider-Impact class").

21.  All six plaintiffs also seek to represent a proposed class of all individuals who applied for employment as a warehouse worker and were subsequently assigned to work, and did report to work and/or worked during the applicable limitations periods, at one or more of defendants' Inland Empire warehouses in Mira Loma, California ("the Joint Schneider class").

22.  Defendant Schneider Logistics, Inc. is a Wisconsin corporation that operates in California and other states, principally operating warehouses and providing warehouse and trucking related services on behalf of Wal-Mart and other customers.  At all relevant times, defendant Schneider Logistics did and continues to do business in California and committed the unlawful acts alleged in this Complaint in the Eastern Division of the Central District of California.

23.  Defendant Premier Warehousing Ventures, LLC, is a North Carolina corporation that operates in California and other states, providing a range of warehouse services, including but not limited to freight loading, unloading, pallet repair, and cleaning services, and that provides employees to work in Schneider

8

Logistics' warehouses and other warehouses in California.  At all relevant times,
defendant Premier Warehousing did and continues to do business in California and
committed the unlawful acts alleged in this Complaint in the Eastern Division of the
Central District of California.

24.  Defendant Rogers-Premier Unloading Services, LLC, is a North Carolina
corporation that operates in California and other states, providing a range of
warehouse services, including but not limited to freight loading and unloading, pallet
repair, and cleaning services, and that provides employees to work in Schneider
Logistics' warehouses and other warehouses in California.  Premier Unloading is a
subsidiary of defendant Premier Warehousing, and is owned by defendant Premier
Warehousing and Rogers Unloading Services, Inc.  At all relevant times, defendant
Premier Unloading did and continues to do business in California and committed the
unlawful acts alleged in this Complaint in the Eastern Division of the Central District
of California.

25.  Defendant Impact Logistics, Inc., is a Tennessee corporation that operates
in California and other states, providing a range of warehouse services, including but
not limited to freight loading, unloading, pallet repair, and cleaning services, and that
provides employees to work in Schneider Logistics' warehouses and other
warehouses in California.  At all relevant times, defendant Impact Logistics, Inc. did
and continues to do business in California and committed the unlawful acts alleged
in this Complaint in the Eastern Division of the Central District of California.

26.  The true names and capacities, whether individual, corporate, associate, or
otherwise, of defendants sued herein as Does 1 through 15, inclusive, are currently
unknown to plaintiffs, who therefore sue such defendants by such fictitious names.
Plaintiffs are informed and believe, and on that basis allege, that each of the
defendants designated herein as a Doe defendant is legally responsible in some
manner for the unlawful acts and omissions alleged herein.  Plaintiffs will seek leave
of court to amend this Complaint to reflect the true names and capacities of the

9

1  defendants designated hereinafter as Doe defendants when such defendants'
2  identities become known.

3      27.  Defendants Premier, Schneider Logistics, and Does 1-5 are, and at all
4  relevant times have been, employers covered by the Fair Labor Standards Act, the
5  California Labor Code, and California Industrial Welfare Commission ("IWC")
6  Wage Order No. 9-2001.  Those defendants, together with their co-conspirators,
7  Does 11-15, are jointly and severally responsible for all violations alleged herein.
8  Together, Premier, Schneider Logistics, and Does 1-5 jointly employ, and have
9  employed throughout the limitations period, plaintiffs Everardo Carrillo, Fernando
10  Chavez, Eric Flores, Jose Martinez Arceo, Baltazar Zavala, and hundreds of other
11  similarly situated warehouse workers, jointly dictating material terms and conditions
12  of those workers' employment and jointly controlling material aspects of the
13  employment relationship.

14      28.  Defendants Impact, Schneider Logistics, and Does 6-10 are, and at all
15  relevant times have been, employers covered by the Fair Labor Standards Act, the
16  California Labor Code, and IWC Wage Order No. 9-2001.  Those defendants,
17  together with their co-conspirators, Does 11-15, are jointly and severally responsible
18  for all violations alleged herein.  Together, Impact, Schneider Logistics, and Does 6-
19  10 jointly employ, and have employed throughout the limitations period, plaintiff
20  Juan Chavez and hundreds of other similarly situated warehouse workers, jointly
21  dictating material terms and conditions of those workers' employment and jointly
22  controlling material aspects of the employment relationship.

23                         **JURISDICTION AND VENUE**

24      29.  This action arises under the Fair Labor Standards Act ("FLSA"), 29
25  U.S.C. §201 et seq., and several California statutes and other provisions of law.  This
26  Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331.
27  This Court has supplemental jurisdiction over the state law claims under 28 U.S.C.
28  §1367, because all state law claims derive from a common nucleus of operative fact

                                   10

1 and are so related to the federal claims that they form part of the same case or

2 controversy under Article III of the United States Constitution.

3      30. Venue is proper in this judicial district pursuant to 29 U.S.C. §1391(b)

4 and (c). Venue is proper in this division because: the Court has personal jurisdiction

5 over the parties; one or more defendants may be found within this district and

6 division; one or more defendants resides within this district and division and all

7 defendants reside within this State; and a substantial part of the events or omissions

8 giving rise to plaintiffs' claims occurred within this district and division.

9                   **GENERAL FACTUAL ALLEGATIONS**

10 **A.**    **Plaintiffs Hired by Premier and Jointly Employed by Defendants**

11      31. Plaintiff Carrillo obtained his job with defendants after being referred by

12 another employee of defendant Schneider Logistics, who told him to present himself

13 for work at a specific time and date on or about the first week of November 2009 at

14 one of the Mira Loma warehouses. Upon arriving at that warehouse at the appointed

15 time, Carrillo was directed by the security guard on duty to speak to Jose Rivas, an

16 employee of defendant Premier. Defendant Premier conducted, and continues to

17 conduct in the warehouse lunchroom, its business relating to its joint employment

18 with defendant Schneider Logistics of plaintiffs and similarly situated warehouse

19 workers.

20      32. Plaintiffs Fernando Chavez, Flores, Martinez, and Zavala also obtained

21 their jobs by presenting themselves at one of the Mira Loma warehouses where they

22 spoke to an employee of defendant Premier. These plaintiffs' applications, hiring,

23 and orientation were also processed on the premises of one of the Mira Loma

24 warehouses.

25      33. The paychecks of all five of these plaintiffs and members of the

26 Schneider-Premier class have borne and continue to bear the name of "Premier

27 Warehousing Ventures, LLC," but these plaintiffs and class members were directed

28 by, and their work was supervised throughout the period of their employment by,

Complaint; Case No.

1    employees of Premier, by employees of Schneider Logistics, and, on information and
2    belief, by Does 1-5.  During all periods relevant herein, Schneider Logistics'
3    employees have directed and supervised the overall work of the warehouse,
4    including assigning the work of plaintiffs and members of the Schneider-Premier
5    class; and all defendants jointly dictated and controlled the terms and conditions of
6    these workers' employment.

7    **B.    Defendants' Pay Practices for Members of the Schneider-Premier Class**

8         34.  From the beginning of their employment until approximately February
9    2010, defendants paid plaintiffs Carrillo, Martinez, and Zavala on an hourly rate
10   basis.  Throughout that period, the paycheck stubs provided by defendants to
11   plaintiff Carrillo, Martinez, and Zavala did not identify either the number of hours
12   they worked during each covered pay period nor the hourly rate that defendants paid
13   them for that work.

14        35.  Throughout the period of these plaintiffs' employment, defendants
15   knowingly and willfully failed to pay these plaintiffs and members of the Schneider-
16   Premier class of similarly situated warehouse workers for all hours worked at the
17   rates required by state and federal law.  For example, defendants willfully failed to
18   pay these plaintiffs and similarly situated warehouse workers for mandatory on-duty
19   time during which they were required to report to the worksite and be physically
20   present at defendants' warehouse while waiting for specific tasks to be assigned to
21   them.  Defendants also willfully failed to pay those plaintiffs and similarly situated
22   warehouse workers the overtime premium required by state law when they worked
23   more than eight hours per day, or 12 hours per day, or seven continuous days.
24   During those weeks when defendants caused plaintiffs and similarly situated workers
25   to work seven-day workweeks, defendants required, and continue to require those
26   workers to work more than six hours per day and more than 30 hours per week.

27        36.  In or about February 2010, a Premier supervisor instructed plaintiffs
28   Carrillo, Martinez, and Zavala and all other members of the Schneider-Premier class

Complaint; Case No.

of warehouse workers employed at the time to attend a mandatory, unpaid meeting. At that meeting, defendants' representative informed all workers present, including plaintiffs Carrillo, Martinez, and Zavala, that defendants were unilaterally changing their compensation system from an hourly-pay plan to a group "piece rate" plan. Defendants' representative specifically represented that, under the new compensation plan, plaintiffs and members of the Schneider-Premier class of similarly situated warehouse workers would each earn "much more money" than they were earning under the hourly rate plan, for the same amount of work, a representation upon which the workers reasonably relied. Plaintiff Carrillo asked whether he could continue to be paid on the existing hourly rate basis instead of under the new "piece rate" plan. Defendants' representative responded that the workers had no choice, and that going forward all compensation would be based on defendants' new group "piece rate" pay scheme.

37. At that meeting, and in conversations with new warehouse workers whom defendants employed for the first time after that meeting, defendants' representatives described, and continue to describe, their new group "piece rate" pay plan as based on a pro rata share, divided equally among all members of the Schneider-Premier class employed at all of defendants' Mira Loma warehouses during a particular shift, of a per-container "piece" amount for each semi-trailer truck container that was completely filled or unloaded by the end of that shift. Under defendants' group "piece rate" scheme, the "piece" amount varied based on the size of the container and other factors known only to defendants and never disclosed to plaintiffs or other members of the Schneider-Premier class of similarly situated warehouse workers; but each "piece" was always a completely filled or unloaded semi-trailer truck container. The "group" among which defendants claimed to allocate pro rata shares in each completed piece supposedly included all members of the Schneider-Premier class employed by defendants in their Mira Loma warehouses during the shift that was working when the container was filled.

13

38. Defendants' group "piece rate" plan did not, and does not, provide any compensation to plaintiffs or members of the Schneider-Premier class of similarly situated warehouse workers for work on any container that is not completely filled or unloaded by the end of the workers' shift, for work on a shift when the worker does not complete the shift, or for work that does not directly involve filling or unloading such containers. Defendants did not, and do not, pay those workers for any additional work that defendants also required, suffered, and permitted them to perform, such as being on mandatory on-duty status while waiting for a specific task to be assigned, or performing tasks such as cleaning the warehouse, repairing pallets, packing boxes or organizing shelves, and other duties that did not involve physically placing cargo onto containers or, when assigned to do unloading, physically removing cargo from such containers.

39. Although defendants' representatives stated that plaintiffs and other members of the Schneider-Premier class would make more money based on the group "piece rate" system, on information and belief, defendants knew or should have known that workers' effective hourly rates of pay would decrease dramatically, in part because defendants would be able to – and did – defraud plaintiffs and similarly situated warehouse workers by not paying them for many hours of work they performed which was neither loading nor unloading work, by not recording all hours worked by the Schneider-Premier class as required by state and federal law, by knowingly misrepresenting to the workers how their compensation would be calculated and what compensation they earned, and by hiding critical information from those workers about how defendants calculated, and would calculate, those workers' pay.

40. Defendants falsely and fraudulently informed, and continue to falsely and fraudulently inform, plaintiffs and similarly situated warehouse workers that defendants base the workers' pay, and defendants' calculation of that pay, on this group "piece rate" formula. But defendants do not disclose the components of that

14

formula and do not provide the critical information necessary for any worker to evaluate the accuracy of defendants' representations about what wages are due, whether the supposed formula was accurately applied, or whether the weekly compensation paid is greater than the minimum wages dictated by state and federal law.  Defendants also routinely fail to disclose to plaintiffs and members of the Schneider-Premier class of similarly situated warehouse workers the underlying figures on which defendants' supposed calculations are based, including the piece rate or rates for each truck trailer filled, the number of truck containers filled or unloaded in each covered warehouse each shift or each workday, and the identity or number of the workers sharing in each group piece rate.  On information and belief, defendants' representations about the total amounts each worker earned during each pay period – whether made orally the day after the work was performed or as included in the lump sum compensation paid after the fact to the workers – are knowingly false, fraudulent, and inaccurate, because those statements do not accurately reflect the actual number of truck trailers filled or unloaded, the number of workers who filled them, and/or the "piece rates" assigned to each truck trailer filled, and because the compensation defendants actually pay to plaintiffs and members of the Schneider-Premier class of similarly situated workers is less than the compensation that defendants orally represent to those workers that the workers earned.

41.  Defendants do not pay the Schneider-Premier plaintiffs or members of the Schneider-Premier class of other similarly situated workers for any work performed on any truck container that is not completely filled or unloaded by the end of the workers' shift, no matter how much time the workers spent filling or unloading on that container or how little work remains for the next shift of workers to complete the work on that container.  Nor do defendants pay plaintiffs or other members of the Schneider-Premier class of similarly situated workers for work on a shift when the worker is not allowed to complete the shift or for any of the warehouse work other

1  than filling or unloading truck containers that plaintiffs and similarly situated

2  warehouse workers are regularly required by defendants to perform.

3       42.  Individual worker productivity is not a factor in defendants' calculation of

4  the pay earned by plaintiffs and other members of the Schneider-Premier class under

5  defendants' supposed group "piece rate" scheme.  No matter how much effort a

6  worker devotes to filling or unloading a given truck container, if that container is not

7  completely filled or unloaded by the end of the worker's shift, the worker will not be

8  paid by defendants for any of his work on that container.  Similarly, no matter how

9  productive a worker is in assembling pallets, sweeping the warehouse, and

10  completing other non-loading tasks, the worker's pay will not increase to reflect this

11  productivity because, under the purported group piece-rate system used for the

12  Schneider-Premier class, warehouse workers are paid no compensation at all to

13  complete these tasks.  Workers will also earn less under defendants' scheme, for the

14  same amount of work, if other workers employed during that same shift at another

15  one of defendants' warehouses are relatively less efficient or productive in

16  completely filling or unloading containers during that shift, regardless of the reason.

17       43.  Defendants' warehouses are each large structures, each spanning roughly

18  the length and width of two city blocks.  Workers employed by defendants in one

19  warehouse do not know and cannot determine how many workers defendants employ

20  in another warehouse, and cannot accurately count or determine the number of other

21  workers employed by defendants in any of the warehouses, because of the size of

22  those warehouses and because workers are often inside containers or otherwise out

23  of sight.  Further, one of the Mira Loma warehouses is located several miles away

24  from the other two Mira Loma warehouses, foreclosing any possibility that class

25  members could observe the total number of workers on any shift or the amount of

26  work performed.  Neither plaintiffs nor any member of the Schneider-Premier class

27  have, or had, any ability to determine how many containers were filled or unloaded

28  on any shift, how many workers were employed by defendants on that shift, or how

16

defendants allocated the supposed group piece rate among the workers employed on that shift.  Defendants had, and continue to have, access to all that information, but defendants deliberately withhold that information from plaintiffs and from other members of the Schneider-Premier class to further the conspiracy alleged herein and to mask and cover up defendants' violations of state and federal law.  On or about October 14, 2011, members of the Schneider-Premier class demanded that defendants provide this information to the members of the Schneider-Premier class currently working at the Mira Loma warehouses, but defendants' representatives specifically reiterated their refusal to provide this information.

44.  Defendants required, and continue to require, plaintiffs and similarly situated warehouse workers to perform substantial amounts of unpaid off-the-clock work every day in violation of state and federal law.  For example, defendants had, and continue to have, a regular policy and practice of expressly directing, suffering, and permitting plaintiffs and similarly situated warehouse workers to report to work at a specific time ready for duty, and to perform uncompensated work before defendants assign those workers any of the so-called "piece rate" work to perform.  Because defendants' group "piece rate" compensation scheme does not compensate plaintiffs and similarly situated workers for any work other than filling or, on occasion, unloading truck containers, defendants do not pay these workers any compensation for performing other tasks required by defendants.  Because defendants' group "piece rate" compensation scheme also does not pay these workers for any work on containers whose filling has not been completed by the end of the workers' shift, defendants also do not pay these workers any compensation for any work performed on any container that remains unfilled – even slightly unfilled – at the end of the workers' shift, or for any work a worker performed on an uncompleted shift.  The same is true for how defendants apply their group "piece rate" compensation scheme to unloading work done by members of the Schneider-Premier class, who are not paid any compensation for work performed on any

17

container that remains only partially unloaded at the end of the workers' shift.  All of the unpaid work that defendants suffer and permit plaintiffs and similarly situated warehouse workers to perform has benefitted and will continue to benefit defendants, enabling them to avoid having to pay to have that same work performed by permanent workers recruited and paid directly by Schneider Logistics, rather than by Premier.

**C.      Plaintiffs Hired by Impact and Jointly Employed by Defendants**

45. Plaintiff Juan Chavez obtained his job with defendants by applying for work with defendant Impact and being assigned to work at one of the Mira Loma warehouses in or about September 2011.  The paychecks of plaintiff Juan Chavez and members of the Schneider-Impact class of similarly situated warehouse workers have borne and continue to bear the name of "Impact Logistics, Inc.," but these plaintiffs were directed by, and their work was supervised throughout the period of their employment by, employees of Impact, by employees of Schneider Logistics, and, on information and belief, by Does 6-10.  During all periods relevant herein, Schneider Logistics' employees have directed and supervised the overall work of the warehouse, including assigning the work of plaintiffs and members of the Schneider-Impact class; and all defendants jointly dictated and controlled the terms and conditions of these workers' employment.

**D.      Defendants' Pay Practices for Members of the Schneider-Impact Class**

46.  Since at least sometime in 2010, defendants Impact, Schneider Logistics and Does 6-10 have used a purported piece-rate system to compensate members of the Schneider-Impact class.  Under this purported piece-rate system for the Schneider-Impact class, these defendants claim to pay members of the Schneider-Impact class a set amount for each semi-trailer truck container fully unloaded by an individual worker or that individual's team of unloaders.  Under this system, if a member of the Schneider-Impact class works with another class member to unload a semi-trailer truck container, the two workers share in the piece rate assigned to

1   unloading that trailer.  According to defendants, plaintiff Juan Chavez and members

2   of the Schneider-Impact class are only entitled to compensation based on the number

3   of semi-trailer truck containers that have been completely unloaded by the worker or

4   his team of unloaders during the shift worked.

5       47.   Under defendants' "piece rate" system for the Schneider-Impact class, the

6   "piece" amount varies based on the size of the semi-trailer truck container and/or on

7   the number of boxes unloaded from the containers, and other factors known only to

8   defendants and never disclosed to plaintiffs or other members of the Schneider-

9   Impact class.  Defendants purport to maintain rate sheets and other documents that

10  reflect the piece rate for each truck, but neither plaintiff Juan Chavez nor any other

11  members of the Schneider-Impact class have access to these rate sheets or other

12  documents.  The Schneider-Impact class members' only source of information about

13  the piece-rate compensation earned for work they performed is from oral reports

14  provided by defendants after the class member has finished unloading a truck

15  container and has reported that completion to defendants.

16      48.  By defendants' own description, the purported piece rate system used to

17  compensate plaintiff Juan Chavez and other members of the Schneider-Impact class

18  did not, and does not, provide any compensation for any work that is unrelated to the

19  process of completely unloading a semi-trailer truck container.  Defendants did not,

20  and do not, pay those workers for the work they perform on any container that is not

21  completely unloaded by the end of the worker's shift.  Defendants also have failed

22  and continue to fail to pay plaintiff Juan Chavez and other members of the

23  Schneider-Impact class for any other work that defendants require, suffer, or permit

24  them to perform, such as being on mandatory on-duty status while waiting for a

25  specific unloading job to be assigned, sorting and arranging boxes on specific

26  pallets, locating missing boxes or posts, and other duties that do not involve

27  physically unloading boxes from the semi-trailer truck containers.  All of the unpaid

28  work that defendants require, suffer, or permit plaintiff Juan Chavez and other

19

1   members of the Schneider-Impact class to perform has benefitted and will continue

2   to benefit defendants, enabling them to avoid having to pay to have that same work

3   performed by more highly paid, direct-hire workers recruited and paid directly by

4   Schneider Logistics, rather than by Impact.

5       49.  On information and belief, defendants know or should have known that

6   the workers' effective hourly rates of pay under the purported piece-rate system used

7   for the Schneider-Impact class would result in a violation of federal and state

8   minimum wage standards, in part because defendants would be able to defraud and

9   have in fact defrauded plaintiff Juan Chavez and members of the Schneider-Impact

10  class by not paying them for all work they performed, by knowingly misrepresenting

11  to the workers how their compensation would be calculated and what compensation

12  they earned, and by hiding critical information from them about the underlying

13  factors and formula used by defendants to calculate the wages actually paid to these

14  workers and the number of hours worked.

15      50.  Defendants falsely and fraudulently informed, and continue to falsely and

16  fraudulently inform, plaintiff Juan Chavez and members of the Schneider-Impact

17  class that defendants calculate these workers' pay on the basis of defendants'

18  supposed per-container piece-rate system.  But defendants do not disclose the

19  components of the formula and do not provide the critical underlying information

20  necessary for any worker to evaluate the accuracy of defendants' representation

21  about what wages are due, whether the supposed formula was accurately applied, or

22  whether the formula produces compensation consistent with federal and state

23  minimum wage and overtime pay requirements.  Specifically, defendants fail to

24  provide the workers with information about how the per-container rates are derived,

25  including how the size of the semi-trailer truck container, the number of boxes

26  unloaded, and other factors affect what the worker actually earns for unloading a

27  particular semi-trailer truck container.  On information and belief, defendants'

28  representations about the total amounts each worker earned during each pay period –

20

whether made orally after the workers completed an unloading task or as included in the lump sum compensation paid after the fact to the workers – are knowingly false, fraudulent, and inaccurate, because those statements do not accurately reflect the actual number of boxes unloaded, and/or the number of semi-trailer truck containers emptied of cargo, and/or because the compensation defendants actually pay to plaintiff Juan Chavez and members of the Schneider-Impact class is less than the compensation that defendants orally represent to those workers that the workers earned.

**E.**     **Defendants' Failure to Record and Report Accurate Hours Worked and Production Information for Purported Piece Rates**

51. Defendants, and each of them, have failed and continue to fail to create accurate records of the number of hours worked by plaintiffs and members of the Schneider-Premier and Schneider-Impact classes (jointly "the Joint Schneider class"). Before defendants switched from an hourly-rate pay plan to the supposed group "piece rate" scheme used for members of the Schneider-Premier class, workers were required to punch in when they arrived at one of the Mira Loma warehouses and to punch out when they departed, using the same electronic time clocks used by Schneider's more highly paid, direct-hire employees. Since at least in or about February 2010, defendants have failed and refused to record the time worked by all plaintiffs and members of the Joint Schneider class, and members of the Joint Schneider class have not been permitted to punch in and out on the electronic timeclocks still in use by the direct-hire Schneider Logistics warehouse workers.

52. On and after February 2010, and continuing to the present, defendants directed plaintiffs Carrillo, Martinez, Zavala, and other members of the Schneider-Premier class on every shift to stop using the electronic punch clocks to track their hours and to sign only their names on a blank sign-in form, but not to enter any other information such as the time work began, the time work ended, or any break time taken. Defendants then directed their "lead" employees or other supervisors to fill in

1   the blank spaces for each warehouse worker, and to input false starting, stopping,

2   and break times that defendants knew and intended would significantly understate

3   the number of hours each worker actually worked under California and federal law.

4        53.  Throughout the applicable limitations period, defendant Impact

5   maintained no records of the time worked by plaintiff Juan Chavez and other

6   members of the Schneider-Impact class.

7        54.  Plaintiffs and other members of the Joint Schneider class have requested,

8   and continue to request, that defendants provide them with accurate information of

9   the wages they have earned and the basis for those wages.  Members of the

10  Schneider-Premier class frequently asked their supervisors to tell them how much

11  they actually earned.  Defendants' representatives often refused to respond to such

12  inquiries altogether, but when a response was given, defendants simply stated a

13  dollar amount that defendants represented was the per-worker share of the group

14  piece rate on the worker's shift for the prior day or for two days before, based on the

15  number of containers filled by all workers employed on that shift.  Similarly,

16  members of the Schneider-Impact class frequently asked their supervisors for

17  information about the wages earned unloading a particular semi-trailer truck

18  container or group of containers and received oral reports about what compensatioin

19  would be paid for that work.  When plaintiffs and other members of the Joint

20  Schneider class compared the dollar amounts that defendants represented they had

21  earned with the dollar amounts they were actually paid on their next pay check, those

22  workers repeatedly discovered that defendants actually paid them considerably less

23  than the amounts defendants had represented the workers had earned.

24       55.  Defendants did not provide plaintiffs Carrillo, Martinez, and Zavala, and

25  similarly situated warehouse workers who were employed in and before February

26  2010, with complete or accurate information about the number of hours they worked,

27  the hourly rate they earned, their overtime hours and overtime pay, or other legally

28  mandated information, during the time defendants paid these workers on an hourly

22

1   basis.  Defendants have not provided plaintiffs and other members of the Joint

2   Schneider class who have been employed under defendants' purported piece-rate

3   compensations systems with complete or accurate information about the number of

4   hours they worked, the hourly rate they earned, their overtime hours and overtime

5   pay, the piece rate calculation method, the number of pieces they completed, or other

6   legally mandated information, during the time defendants purported to pay these

7   workers on a piece rate basis.  When plaintiff Fernando Chavez requested that

8   defendants produce written documentation of the hours he worked and other

9   mandatory pay records, defendants refused to provide any responsive documents.

10  **F.**      **Defendants' Failure to Provide Mandatory Meal and Rest Breaks**

11          56.  Defendants Premier, Schneider, and Does 1-5 had and continue to have a

12  policy or practice of authorizing or permitting plaintiffs Carrillo, Martinez, Zavala,

13  Flores, and Fernando Chavez and other members of the Schneider-Premier class to

14  take a first meal break, on shifts of five hours or more, only if defendants make an

15  announcement that the first meal be taken and only if the worker promptly responds

16  to such an announcement, even if it is not audible from the worker's location.  On

17  many occasions, even when an announcement has been made, defendants'

18  supervisors will instruct these plaintiffs and other members of the Schneider-Premier

19  class to keep working and not to take the announced break.  Through the

20  implementation of these practices, defendants Premier, Schneider, and Does 1-5 have

21  failed to ensure that these plaintiffs and other members of the Schneider-Premier

22  class take their first meal break as required under California law.

23          57.  Defendants Premier, Schneider, and Does 1-5 had, and continue to have, a

24  policy and practice of not providing plaintiffs Carrillo, Martinez, Zavala, Flores, and

25  Fernando Chavez and other members of the Schneider-Premier class with all second

26  meal breaks that defendants are required to provide to workers on shifts of 10 hours

27  or more.

28

23

Complaint; Case No.

58. Defendants Impact, Schneider, and Does 6-10 have had, and continue to have, a policy and practice of not providing plaintiff Juan Chavez and other members of the Schneider-Impact class with any off-duty meal breaks, allowing time off from continuous unloading work only when there are no semi-trailer truck containers present and ready for unloading.

59. Defendants did not pay, and continue not to pay, plaintiffs and other members of the Joint Schneider class the additional hour of pay required by California Labor Code §226.7 for any meal break that defendants failed to provide.

60. Defendants had, and continue to have, a policy and practice of failing to provide any plaintiff or member of the Joint Schneider class with the paid rest breaks that employers are required to provide under California law. Further, defendants Impact, Schneider, and Does 6-10 had, and continue to have, a policy and practice of not providing plaintiff Juan Chavez and other members of the Schneider-Impact class with any rest breaks – paid or unpaid – because defendants only allow time off from continuous unloading work when there are no semi-trailer truck containers present and ready for unloading.

61. Defendants do not pay, and have not paid, plaintiffs and other members of the Joint Schneider class the additional hour of pay required by California Labor Code §226.7 for any rest break that defendants failed to ensure, authorize or permit, or prevented, discouraged, or dissuaded those workers from taking.

**G.   Defendants' Failure to Pay for Mandatory Reporting and Split Shifts**

62. Defendants routinely required, and continue to require, a greater number of their jointly employed warehouse workers to report for duty each day and each shift than the number of workers whom defendants need to perform the work that defendants have available to be performed on that particular day and shift. At the start of each shift, defendants send all unneeded workers home without pay, including without the reporting pay required by IWC Wage Order No. 9-2001 §5(A), despite having required those workers to report for duty ready to work. Defendants

also do not compensate workers who are required to work two shifts that are interrupted by a non-paid working period for an extra hour of work as required by IWC Wage Order No. 9-2001 §4(C).

63.   During the course of their employment for defendants, plaintiffs and other members of the Joint Schneider class have complied with defendants' requirements to report for duty each day at a designated time, but have been sent home without work and without any pay for the time they spent reporting to work, as required under IWC Wage Order No. 9-2001 §5(A).

64.   During the course of their employment for defendants, plaintiffs and other members of the Joint Schneider class have been required and scheduled to work two shifts during a single day.   Although the shifts were interrupted by non-paid working period of one or more hours, such workers have not been paid for an extra hour of work as required by IWC Wage Order No. 9-2001 §4(C).

## H.   Defendants' Retaliation Against All Plaintiffs and Class Members

65.   During the period of time defendants' supposed "piece rate" compensation schemes have been in effect, defendants responded, and have continued to respond, to workers who questioned their pay or complained about defendants' unlawful practices, by denying them work, issuing disciplinary warnings or other threats, sending complaining worker home mid-shift and therefore denying them all pay for work performed that day because the worker did not complete the shift, or terminating or threatening to terminate them.   Defendants have done so to punish and retaliate against those who question or complain about defendants' unlawful practices and to dissuade plaintiffs and similarly situated warehouse workers from questioning or complaining about defendants' practices.

66.   For example, when plaintiff Fernando Chavez complained about the amount he was paid, based on his belief that defendants were not paying him the amount he was promised for the work he performed, defendants responded by refusing to give him any work the following day.   Plaintiff Flores witnessed workers

Complaint; Case No.

who complained about pay and were either sent home or were not called to work the next day. Plaintiff Flores was also present when a worker complained about underpayment of wages and was punished by being sent home without work for a week. When another worker asked a question in plaintiff Zavala's presence about how pay was calculated, a supervisor threatened that anyone who wanted to know what they were being paid would be laid off. Plaintiff Carrillo repeatedly saw workers sent home who complained, and when it happened mid-shift, the workers received no pay for the entire day. Plaintiff Martinez witnessed workers who complained being banished from the workplace for days or weeks or permanently.

67.   During 2011, plaintiff Fernando Chavez repeatedly complained to defendants that they were denying him breaks he was entitled to receive and that defendants were improperly assigning him to perform sweeping, order filling and other work for which he was provided with no compensation under defendants' purported group "piece rate" scheme used for the Schneider-Premier class. During 2011, plaintiff Baltazar Zavala repeatedly complained to defendants about the unpaid labor he was required to perform, including unpaid work he was directly ordered to perform by defendant Schneider Logistics supervisors. On or about June 16, 2011 – the day after a Schneider Logistics supervisor issued a public order to a Schneider-Premier class member to perform certain non-loading work – a Premier lead employee named Luis Lopez informed plaintiffs Fernando Chavez and Baltazar Zavala, and other members of the Schneider-Premier class that warehouse workers could be terminated by Schneider Logistics if a Schneider supervisor saw that they were not constantly working while they were present in the Mira Loma warehouse. Plaintiffs Fernando Chavez and Baltazar Zavala questioned this rule and asked whether defendant Schneider Logistics had the authority to fire them. Defendant Schneider Logistics management addressed these plaintiffs' questions in the presence of many other members of the Schneider-Premier class, advising them that Schneider Logistics management personnel had the authority to assign any tasks and

Complaint; Case No.

1  to terminate any worker in the warehouse, and that Schneider Logistics would

2  terminate any worker who refused to accept this authority.  Later that day, in

3  retaliation for plaintiffs' questions about and opposition to defendants' practices,

4  defendants terminated plaintiffs Fernando Chavez and Baltazar Zavala, advising

5  them that their terminations were demanded and required by Schneider Logistics

6  management personnel.

7  **I.   Summary of Defendants' Violations of All Plaintiffs' Rights**

8       68.  Before approximately February 2010, defendants Premier, Schneider, and

9  Does 1-5 violated federal and state wage and hour law by failing to pay members of

10 the Schneider-Premier class for all hours worked and for all overtime hours at the

11 legally required overtime premium rates, among other violations.  Beginning in or

12 before February 2010 and continuing to the present, defendants have applied their

13 purported "piece rate" pay schemes in a manner that deprives plaintiffs and all

14 members of the Joint Schneider class of the minimum wages, overtime, and other

15 premium pay required by law.  Defendants do not pay and have not paid these

16 workers compensation for work that defendants require, suffer, and permit that does

17 not directly involve placing products into or out of containers and trucks.

18 Defendants do not pay and have not paid these workers any compensation for

19 mandatory on-duty waiting time and rest break time that is not included in the piece

20 rate calculation.  Defendants do not pay, and have not paid, these workers any

21 compensation for work filling or unloading truck containers that are not completely

22 filled or unloaded before the end of the workers' shift.

23      69.  Because plaintiffs and other members of the Joint Schneider class are

24 never paid during the time they take any rest, defendants have denied, and continue

25 to deny, plaintiffs and all members of the Joint Schneider class all paid rest periods

26 to which they are entitled.  Defendants also have violated, and continue to violate,

27 the rights of all plaintiffs and other members of the Joint Schneider class by failing

28 to provide them with off-duty meal breaks in compliance with the law.  Defendants

27

Complaint; Case No.

do not pay, and have not paid, these workers the additional hour of pay that California law requires employers to pay when they fail to provide a legally required meal period or rest break.

70. Defendants do not pay, and have not paid, plaintiffs or any members of the Joint Schneider class the additional hour of pay that California law requires employers to pay when workers are required to work two shifts that are interrupted by a non-paid working period. Defendants do not pay, and have not paid, these workers any compensation for "reporting time" when the workers are called to duty by defendants and then sent away without being given any work, or when these workers work partial shifts but are sent home or otherwise laid off before a shift is completed. Defendants do not pay, and have not paid, these workers for all wages due and owing upon the workers' discharge or other termination of employment.

71. Defendants do not keep, and have not kept, accurate payroll records as required by law, and do not provide, and have not provided, plaintiffs or any members of the Joint Schneider class with all of the information required by state law to be delivered with the workers' paychecks, including an accurate statement of the actual hours worked and the actual piece rate components, that would enable these workers to determine how their purported piece rate pay was calculated. Defendants misrepresent, and have misrepresented, to these workers how they would be paid, how much they earned, and how their compensation is, has been, and will be calculated, and defendants conspire among and between themselves to prevent plaintiffs and other members of the Joint Schneider class from gaining timely access to this information.

72. Defendants have maintained, and continue to maintain, an unlawful policy and/or practice of retaliating against plaintiffs and members of the Joint Schneider class who have questioned their pay, complained about defendants' pay practices, sought detailed information about how their compensation was calculated, objected to being assigned to do unpaid work, and otherwise asserted their rights under

28

1    federal and state labor law.  Defendants' retaliation has taken a number of forms,

2    including but not limited to through denial of the opportunity to work, issuance of

3    disciplinary warnings and other threats, terminating or threatening to terminate

4    plaintiff class members, and through other means.

5        73.  Defendants unlawfully exposed, and continue to unlawfully expose, all

6    plaintiffs and other members of the Joint Schneider class to hazardous working

7    conditions, and deprived and continue to deprive these workers of minimum health

8    and safety protections required by state and federal law.  For example, defendants

9    have forced, and continue to force, plaintiffs and similarly situated warehouse

10   workers to perform their jobs under hot and dusty conditions in superheated

11   containers and warehouses without adequate ventilation, water breaks, or other rest

12   breaks.  Temperatures in the areas where plaintiffs and similarly situated warehouse

13   workers work and have worked often exceed 90 degrees, especially during the hot

14   Inland Empire summers, and the high levels of dust and airborne particulates

15   frequently cause these warehouse workers to suffer acute respiratory and other health

16   problems.

17       74.  Throughout the applicable limitations period, defendants Premier,

18   Schneider, and Does 1-5 required plaintiffs and members of the Schneider-Premier

19   class to "rent" a tee-shirt uniform with a distinct Premier Unloading logo for one

20   dollar per week.  These defendants required, and continue to require, plaintiffs and

21   members of the Schneider-Premier class to wear this uniform at work and to be

22   responsible for their own laundering and upkeep of the uniform.  Defendants

23   Premier, Schneider, and Does 1-5 unlawfully deducted one dollar per week from

24   these workers' paychecks and deducted, and continue to deduct, that amount from

25   the paychecks of and other members of the Schneider-Premier class to pay for the

26   "rental" of this mandatory work uniform.

27       75.  Throughout the applicable limitations period, defendants Premier,

28   Schneider, and Does 1-5 required plaintiffs and other members of the Schneider-

29

1  Premier class to reimburse defendants for defendants' purported cost of background

2  checks, which amounts were deducted from these workers' paychecks.

3      76.  Plaintiff Carrillo's employment by defendants terminated in or about

4  November 2010.  Plaintiff Chavez's employment by defendants terminated in or

5  about June 2011.  Plaintiff Zavala's employment by defendants terminated in or

6  about June 2011.  At the time of their terminations, defendants owed plaintiffs

7  Carrillo, Chavez, and Zavala unpaid and underpaid wages that were then due and

8  owing.  Defendants knowingly and willfully failed to pay plaintiffs Carrillo, Chavez,

9  and Zavala, and other members of the Joint Schneider class of similarly situated

10  workers whose employment terminated within the applicable limitations period, the

11  full amount of wages that were due and owing at the time of their termination of

12  employment.

13      77.  Plaintiffs and other members of the Joint Schneider class have no plain,

14  speedy, or adequate remedy at law for the violations alleged herein, because:

15  (a) pecuniary compensation is not available for all such alleged violations; (b) where

16  pecuniary compensation is available it is not sufficient to remedy such violations or

17  to provide adequate and complete relief; (c) it is difficult to measure the amount of

18  monetary damages that would fully compensate plaintiffs for many of the wrongful

19  acts alleged herein; and (d) plaintiffs and similarly situated class members who are

20  currently employed by defendants or who will be employed by defendants in the

21  future are entitled by law not to be subjected to the violations alleged herein.  For

22  these reasons, and because plaintiffs and similarly situated warehouse workers are

23  low-wage workers with limited financial means and often no other source of family

24  income who live day-by-day in precarious economic circumstances, they will suffer

25  great and irreparable harm if defendants' ongoing violations of law as alleged herein

26  are not promptly enjoined.

27

28  //

30

Complaint; Case No.

**J.**    **Defendants Jointly Employ Plaintiffs and All Class Members**

78.  Plaintiffs Everardo Carrillo, Fernando Chavez, Eric Flores, Jose Martinez Arceo, Baltazar Zavala, and other members of the Schneider-Premier class are jointly employed by defendants Premier, Schneider Logistics, and Does 1-5 to perform unskilled, physical labor in the Mira Loma warehouses.  Much of these employees' work involves placing cargo in containers or trailers on the backs of trucks under the direction of defendants' supervisors who jointly direct the work, including by providing specific instructions to members of the Schneider-Premier class about what cargo to select and where to place it.  These defendants provide little or no training to members of the Schneider-Premier class about how to perform their duties, and these defendants do not allow these workers to exercise independent judgment or discretion in the performance of their job duties.  Any safety training provided by these defendants is rudimentary at most, and is largely limited to instructions on how to lift boxes without injury; although defendants' supervisors regularly disregard these instructions in their effort to pressure members of the Schneider-Premier class to be more productive without regard to the workers' personal health and safety.

79.  Defendants Premier, Schneider Logistics, and Does 1-5 are joint employers of plaintiffs Everardo Carrillo, Fernando Chavez, Eric Flores, Jose Martinez Arceo, Baltazar Zavala, and other members of the Schneider-Premier class, for the following reasons, among others:

(a)  Defendants Premier, Schneider Logistics, and Does 1-5 jointly control and dictate all material terms and conditions of the employment of members of the Schneider-Premier class ;

(b) Members of the Schneider-Premier class physically work and report to work on Schneider Logistics' premises;

1    (c)  The work of members of the Schneider-Premier class is jointly supervised

2    by individuals employed by Premier, individuals employed by Schneider Logistics,

3    and Does 1-5;

4    (d)  Members of the Schneider-Premier class jointly apply for employment

5    through both Premier and Schneider Logistics, including by submitting applications

6    to Premier supervisors who conduct defendants' hiring and orientation activities at

7    the Schneider Logistics warehouses, who use orientation and/or training materials

8    from Schneider Logistics' parent company, Schneider National, and who fill out

9    employment-related paperwork at the Schneider Logistics warehouses;

10    (e)  Defendants Premier, Schneider Logistics, and Does 1-5 jointly design and

11    implement the new-hire orientation that members of the Schneider-Premier class

12    must undertake after hiring, which takes place at a Schneider Logistics warehouse

13    with Schneider Logistics training materials, and which is principally run by

14    Premier's on-site supervisors;

15    (f)  Defendants Premier, Schneider Logistics, and Does 1-5 share

16    responsibility for discipline and discharge decisions involving members of the

17    Schneider-Premier class, and Premier and Schneider Logistics have authority and

18    have jointly exercised the authority to discharge, discipline, and/or correct the work

19    of such warehouse workers for perceived infractions of either Premier or Schneider

20    Logistics' rules or policies or for infractions of the rules or policies of their

21    customers, including Wal-Mart;

22    (g)  Defendants Premier, Schneider Logistics, and Does 1-5 jointly exercise

23    control over the number of hours and types of work performed by members of the

24    Schneider-Premier class by, among other things, deciding whether and when to

25    require those workers to perform work that is customarily performed by Schneider

26    Logistics' permanent direct-hire hourly rate employees, deciding whether and when

27    to require members of the Schneider-Premier class to perform warehouse work in

28

32

Complaint; Case No.

1  addition to filling truck containers, and deciding on the amount and pace of work

2  that the workers must perform;

3      (h)  Defendants Premier, Schneider Logistics, and Does 1-5 jointly exercise

4  control over the pay that members of the Schneider-Premier class receive by

5  dictating the pace at which their work must be performed, providing daily rate sheets

6  based on the size of the truck containers to be filled, and assigning members of the

7  Schneider-Premier class to perform tasks that do not count toward the piece rate

8  compensation scheme, thereby effectively lowering those workers' wages;

9      (i)  Defendants Premier, Schneider Logistics, and Does 1-5 jointly exercise

10  control over the working conditions under which members of the Schneider-Premier

11  class perform their jobs by supervising, monitoring, and checking their work,

12  including by telling workers to change the way a box has been stacked or placed, or

13  by designating which boxes to remove if a truck is overweight; by determining the

14  protocol and procedure for filling each container and truck; by setting the daily pace

15  of work, including by imposing onerous and unrealistic productivity standards; by

16  setting work rules; and by adding to the workers' usual work duties;

17      (j)  Premier, Schneider Logistics, and Does 1-5 jointly exercise control over

18  the wages and working conditions of members of the Schneider-Premier class by

19  entering into contracts between and among themselves that necessarily require

20  defendants to pay those workers less than federal and California law require, because

21  defendants cannot produce the volume of work contracted for under the time

22  constraints contracted for while complying with the legally mandated pay rates under

23  federal and state law;

24      (k)  Members of the Schneider-Premier class generally perform just one step in

25  defendants' broader warehousing process, and defendants assign to other workers the

26  principal responsibility for unloading the boxes, placing them into storage, and

27  retrieving those boxes for plaintiffs and similarly situated warehouse workers to

28  place in the truck containers;

33

Complaint; Case No.

1       (l)  Schneider Logistics suffers or permits members of the Schneider-Premier

2 class to work in its warehouses by acquiescing in and not hindering their working,

3 including by not remedying but instead accepting and profiting from the unlawful

4 conditions under which they work;

5       (m)  The warehouse job duties performed by members of the Schneider-

6 Premier class constitute an integral, core function of the warehouse business of

7 Premier, Schneider Logistics, and Does 1-5; and

8       (n)  Members of the Schneider-Premier class  perform work that consists

9 primarily of unskilled physical labor that does not require special training, education,

10 or the exercise of judgment or discretion to perform.

11       80.  For the reasons set forth above, among others, defendants Premier,

12 Schneider Logistics, and Does 1-5, each directly or indirectly, or through an agent or

13 any other person, employs or exercises control over the wages, hours, or working

14 conditions of plaintiffs Everardo Carrillo, Fernando Chavez, Eric Flores, Jose

15 Martinez Arceo, Baltazar Zavala, and other members of the Schneider-Premier class.

16       81.  Plaintiff Juan Chavez and other members of the Schneider-Impact class

17 are jointly employed by defendants Impact, Schneider Logistics, and Does 6-10 to

18 perform unskilled, physical labor in the Mira Loma warehouses.  Much of these

19 employees' work involves removing cargo from containers or trailers on the backs of

20 trucks under the direction of defendants' supervisors who jointly direct the work,

21 including by providing specific instructions to plaintiffs and similarly situated

22 warehouse workers about where to place the boxes unloaded from the semi-trailer

23 truck containers.  Defendants  Impact, Schneider Logistics, and Does 6-10 provide

24 little or no training to plaintiffs and similarly situated warehouse workers about how

25 to perform their duties, and these defendants do not allow these workers to exercise

26 independent judgment or discretion in the performance of their job duties.  Any

27 safety training provided by these defendants is rudimentary at most, and is largely

28 limited to instructions on how to lift boxes without injury; although defendants'

34

supervisors regularly disregard these instructions in their effort to pressure plaintiffs and similarly situated warehouse workers to be more productive without regard to the workers' personal health and safety.

82.  Defendants Impact, Schneider Logistics, and Does 6-10 are joint employers of Plaintiff Juan Chavez and other members of the Schneider-Impact class, for the following reasons, among others:

(a)  Defendants Impact, Schneider Logistics, and Does 6-10 jointly control and dictate all material terms and conditions of the employment of members of the Schneider-Impact class;

(b)  The work of members of the Schneider-Impact class is jointly supervised by individuals employed by Impact, individuals employed by Schneider Logistics, and Does 6-10;

(c)  Defendants Impact, Schneider Logistics, and Does.6-10 share responsibility for discipline and discharge decisions involving members of the Schneider-Impact class, and Impact and Schneider Logistics have authority and have jointly exercised the authority to discharge, discipline, and/or correct the work of such warehouse workers for perceived infractions of either Impact or Schneider Logistics' rules or policies or for infractions of the rules or policies of their customers, including Wal-Mart;

(d)  Defendants Impact, Schneider Logistics, and Does 6-10 jointly exercise control over the number of hours and types of work performed by members of the Schneider-Impact class by, among other things, deciding whether and when to require those workers to perform work that is customarily performed by Schneider Logistics' direct-hire hourly rate employees, deciding whether and when to require members of the Schneider-Impact class to perform warehouse work in addition to unloading truck containers, and deciding on the amount and pace of work that the workers must perform;

35

(e)  Defendants Impact, Schneider Logistics, and Does 6-10 jointly exercise control over the pay that members of the Schneider-Impact class receive by dictating the pace at which their work must be performed, providing daily rate sheets based on the size of the truck containers to be filled, and assigning members of the Schneider-Impact class to perform tasks that do not count toward the piece rate compensation scheme, thereby effectively lowering those workers' wages;

(f)  Defendants Impact, Schneider Logistics, and Does 6-10 jointly exercise control over the working conditions under which members of the Schneider-Impact class perform their jobs:  by supervising, monitoring, and assigning the precise tasks that must be performed; by checking their work, including by telling workers to change the way a box has been stacked or placed; by directing individual workers and teams of workers to retrieve various pallets, posts and individual boxes located throughout the warehouse; by determining the protocol and procedure for unloading and stacking boxes removed from containers and trucks; by setting the daily pace of work, including by imposing onerous and unrealistic productivity standards; by setting work rules; and by adding to the workers' usual work duties;

(g)  Impact, Schneider Logistics, and Does 1-5 jointly exercise control over the wages and working conditions of members of the Schneider-Impact class by entering into contracts between and among themselves that necessarily require defendants to pay those workers less than federal and California law require, because defendants cannot produce the volume of work contracted for under the time constraints contracted for while complying with the legally mandated pay rates under federal and state law;

(h)  Members of the Schneider-Impact class generally perform just one step in defendants' broader warehousing process, and defendants assign to other workers the principal responsibility for moving unloaded boxes and other cargo away from the loading dock, placing them into storage, filling orders, and loading the boxes and

36

1    other cargo unloaded by plaintiffs into different semi-trailer truck containers for

2    transport to defendants' customers;

3        (i)  Schneider Logistics suffers or permits members of the Schneider-Impact

4    class to work in its warehouses by acquiescing in and not hindering their working,

5    including by not remedying but instead accepting and profiting from the unlawful

6    conditions under which they work;

7        (j)  The warehouse job duties performed by members of the Schneider-Impact

8    class constitute an integral, core function of the warehouse business of Impact,

9    Schneider Logistics, and Does 1-5; and

10       (k) Members of the Schneider-Impact class perform work that consists

11   primarily of unskilled physical labor that does not require special training, education,

12   or the exercise of judgment or discretion to perform.

13       83.  For the reasons set forth above, among others, Impact, Schneider

14   Logistics, and Does 6-10, each directly or indirectly, or through an agent or any other

15   person, employs or exercises control over the wages, hours, or working conditions of

16   plaintiff Juan Chavez and other members of the Schneider-Impact class.

### CONSPIRACY AND TOLLING ALLEGATIONS

18       84.  Plaintiffs are informed and believe, and on that basis allege, that at all

19   material times, each defendant acted and is continuing to act as an agent and/or

20   co-conspirator of each other defendant and of certain unnamed and as-yet unknown

21   co-conspirators.  Plaintiffs are informed and believe, and on that basis allege, that

22   prior to the start of the applicable limitations periods, each defendant entered into a

23   conspiracy and agreement with the other defendants and with unnamed and unknown

24   co-conspirators and/or subsequently joined said conspiracy and ratified the prior acts

25   and conduct of the other defendants and/or co-conspirators who had previously

26   entered into said conspiracy.  The purpose of said ongoing conspiracy includes

27   unlawfully evading compliance with the federal and state labor laws in an effort to

28   artificially reduce defendants' labor costs and unlawfully maximize their profits by

Complaint; Case No.

1  failing to pay plaintiffs and similarly situated warehouse workers the wages and

2  benefits required by law; failing to provide meal periods, rest breaks, and other labor

3  rights mandated by law; creating a sham and fraudulent group "piece rate" scheme;

4  and concealing their illegal activities by making misrepresentations about facts

5  known only to defendants, by failing to provide workers with information required

6  by law, and by other means.  Plaintiffs are currently unaware of when each defendant

7  or other co-conspirator joined said conspiracy but, on information and belief, allege

8  that all defendants and their co-conspirators knowingly, maliciously and wilfully

9  entered into said conspiracy which continues to this day.  By engaging in the conduct

10  and omissions alleged in this Complaint, each defendant was acting within the

11  course and scope of its agency, with the authorization of the other defendants, and in

12  furtherance of the ongoing conspiracy.

13      85.  Plaintiffs are further informed and believed, and based on such

14  information and belief allege, that defendants, and each of them, and those who acted

15  as defendants' co-conspirators and/or who acted in concert with defendants, have

16  engaged and are continuing to engage in the unlawful practices alleged in this

17  Complaint, and will continue to do so unless restrained and enjoined by this Court.

18      86.  Defendants, including Does 11-15 who did not actually employ plaintiffs,

19  had, and continue to have, the means of obtaining and actual possession of superior

20  knowledge and special information relating to the nature and scope of the practices

21  alleged herein and whether those practices are unlawful under state and federal law.

22  Plaintiffs and similarly situated warehouse workers do not have, or have access to,

23  this same information, which defendants have deliberately withheld from them.

24  Defendants' superior knowledge and special information includes: what work is

25  being performed in defendants' warehouses; who is performing it; how each piece

26  rate is calculated; when each piece rate component is completed; which workers on

27  which shifts and in which warehouses performed the work on each piece rate

28  component; the history of defendants' use of warehouse workers; the discussions,

38

agreements, negotiations, and other communications between the joint employer defendants (Does 1-10) and their suppliers and customers (Does 11-15) concerning the facts alleged in this Complaint and the structure of their relationship with each other, with the workers, and with suppliers and customers (including discussions concerning the labor cost component of defendants' contracts and commitments, and the labor cost component of defendants' budgeting); the history and historical development of the hourly rate and piece rate pay systems for plaintiffs and similarly situated warehouse workers; and other facts relevant to a determination of each worker's proper pay.  As a result of defendants' scheme to ensure that they have superior knowledge, coupled with defendants' actual possession of such superior knowledge, each defendant has gained an unconscionable advantage over their workers, who have been and continue to be kept unaware of material facts relevant to their wage and other claims and who have not been and are not in a position to become informed about such facts.

87.  Despite defendants' superior knowledge and special information, defendants have failed to provide plaintiffs and similarly situated workers with material information pertaining to the claims alleged in this lawsuit.  Defendants are under a statutory obligation to provide much of this information to plaintiffs and similarly situated workers at the time of every wage payment yet defendants have not complied with this statutory requirement, thereby breaching a statutory duty and concealing and affirmatively misrepresenting material information that would reveal defendants' unlawful practices.

88.  Because of defendants' ongoing conspiracy to violate their warehouse workers' rights and to conceal defendants' unlawful practices as alleged herein, the applicable statute of limitations on the claims of plaintiffs and other workers has been and should continue to be tolled through the date on when each worker learned or learns of defendants' illegal practices and policies.

Complaint: Case No.

## CLASS ALLEGATIONS

89. <u>Proposed Classes.</u>  All individual plaintiffs, as class representatives, bring the Second through Twelfth and Fourteenth through Sixteenth Claims for Relief on behalf of a class of all similarly situated individuals, pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The proposed Joint Schneider class comprises all individuals who applied for employment as a warehouse worker and were subsequently assigned to work, and did report for work during the applicable limitations periods, at one or more of defendants' Inland Empire warehouses in Mira Loma, California.  Plaintiffs Everardo Carrillo, Fernando Chavez, Eric Flores, Jose Martinez Arceo, Baltazar Zavala seek to act as class representatives on behalf of other members of the Schneider-Premier class to bring the Thirteenth Claim for Relief.  The proposed Schneider-Premier class includes all individuals who applied for employment as a warehouse worker and were subsequently assigned to work, and did report to work during the applicable limitations periods, at one or more of defendants' Inland Empire warehouses in Mira Loma, California.

90. <u>Ascertainability.</u>  The identity of all class members is readily ascertainable from defendants' records, and class notice can be provided to all class members by means permitted by Rule 23 of the Federal Rules of Civil Procedure.  To be effective, class notice should be provided not only through written communication to each class member's last known address as reflected in defendants' records, but also through Spanish language newspaper and radio announcements, workplace postings, and other alternative means of notice designed to reach this class of transient, non-English speaking warehouse workers whom defendants have affirmatively misled and deprived of information concerning their workplace rights under state and federal law and of other information material to the claims alleged herein.  Most class members are no longer employed by defendants, cannot be reached at the last-known addresses in defendants' records, and do not have access to traditional English-speaking media.

Complaint; Case No.

91. <u>Numerosity.</u>  The size of the class makes a class action both necessary and efficient.  The class consists of several hundred warehouse workers currently or formerly working at the Mira Loma warehouses during the applicable limitations period.  Members of the class are ascertainable but so numerous that joinder is impracticable.  The class includes future class members who will benefit from the injunctive relief sought herein and whose joinder is inherently impossible.

92. <u>Common Questions Of Law And Fact.</u>  This case poses common questions of law and fact affecting the rights of all class members, including:

(a)   The legality of defendants' piece rate compensation systems;

(b)   The policies, practices, programs, procedures, protocols, and plans of defendants regarding payment of the minimum wage;

(c)   The policies, practices, programs, procedures, protocols, and plans of defendants regarding payment of overtime premiums;

(d)   Whether defendants required, suffered, or permitted plaintiffs and similarly situated warehouse workers to work in excess of eight hours per day and/or 12 hours per day and/or 40 hours per week and/or seven-day workweeks comprising more than 30 hours total work or more than six hours of work per day;

(e)   Whether defendants paid plaintiffs and similarly situated warehouse workers the legally required overtime premium for hours worked in excess of eight hours per day and/or 12 hours per day and/or 40 hours per week and/or on the seventh day of work;

(f)   Whether defendants provided plaintiffs and similarly situated warehouse workers with accurate itemized wage statements as required by California Labor Code §226;

(g)   Whether defendants paid plaintiffs and similarly situated warehouse workers the reporting time pay required by California law when defendants required workers to report for duty but discharged them

41

without providing them any work or discharged them mid-shift without pay, in violation of IWC Wage Order No. 9-2001 §5;

(h)   Whether defendants paid plaintiffs and similarly situated warehouse workers an additional hour of pay when they are required to work two shifts that are interrupted by a non-paid working period, as required by IWC Wage Order No. 9-2001 §4(C);

(i)   Whether defendants paid plaintiffs and similarly situated warehouse workers their full wages when due and whether defendants willfully failed to make timely payment of the full wages due to workers who quit or have been discharged as required by California Labor Code §§201-04;

(j)   Whether defendants paid plaintiffs and similarly situated warehouse workers secret wages in violation of Labor Code §223;

(k)   Whether defendants made fraudulent misrepresentations to plaintiffs and similarly situated warehouse workers;

(l)   Whether defendants violated California Labor Code §226.7 and IWC Wage Order No. 9-2001 §11 by failing to ensure that all plaintiffs and similarly situated warehouse workers were provided with a meal period for every five hours worked and twice for every ten hours worked and failed to compensate said employees one hour of wages in lieu of each meal period that was not provided;

(m)   Whether defendants violated California Labor Code §226.7 and IWC Wage Order No. 9-2001 §12 by failing to provide any paid rest periods to plaintiffs and similarly situated warehouse workers for every four hours or major fraction thereof worked and failed to compensate said employees one hour of wages in lieu of each rest period that was not provided;

Complaint; Case No.

(n)   Whether the temperature in Schneider Logistics's warehouses provides plaintiffs and similarly situated warehouse workers reasonable comfort consistent with industry-wide standards as required by IWC Wage Order No. 9-2001 §15;

(o)   Whether defendants engaged in unfair and unlawful business practices in violation of Business & Professions Code §17200 et seq.;

(p)   Whether defendants are subject to civil penalties under the California Labor Code Private Attorneys General Act, California Labor Code §2698 et seq.;

(q)   Whether defendants are joint employers of plaintiffs and similarly situated warehouse workers;

(r)   Whether the named defendants conspired with each other and/or with any unnamed co-conspirator, as alleged herein; and

(s)   What relief is necessary to remedy defendants' unfair and unlawful conduct as herein alleged.

93.   Typicality.   The claims of the individual plaintiffs are typical of the claims of the class as a whole.  Defendants' unlawful wage policies and practices, which have operated to deny plaintiffs the overtime premiums, minimum wages, other unpaid wages, and other compensation, benefits, penalties, and protections required by law, are typical of the unlawful wage policies and practices that have and will continue to operate to deny other class members lawful compensation.

94.   Adequacy Of Class Representation.   The individual plaintiffs can adequately and fairly represent the interests of the class as defined above, because their individual interests are consistent with, not antagonistic to, the interests of the class.

95.   Adequacy Of Counsel For The Class.   Counsel for plaintiffs have the requisite resources and ability to prosecute this case as a class action and are

43

experienced labor and employment attorneys who have successfully litigated other cases involving similar issues, including in class actions.

96. <u>Propriety of Class Action Mechanism.</u> Defendants have implemented a series of unlawful schemes that are generally applicable to the class, making it appropriate to issue final injunctive relief and corresponding declaratory relief with respect to the class as a whole. Class certification is also appropriate because the common questions of law and fact predominate over any questions affecting only individual members of the class. The prosecution of separate actions against defendants by individual class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for defendants. For all these and other reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy set forth in this Complaint.

**FIRST CLAIM FOR RELIEF**
**(FLSA Violations,**
**29 U.S.C. §201 et seq., 29 C.F.R. §516 et seq.,**
**Brought by Plaintiffs on Behalf of Themselves**
**and the FLSA Collective Plaintiffs)**

97. Plaintiffs, on behalf of themselves and similarly situated warehouse workers, reallege and incorporate by reference all previous paragraphs.

98. Plaintiffs bring the First Claim for Relief as a collective action pursuant to the FLSA, 29 U.S.C. §216(b), on their own behalf and on behalf of all individuals who applied for employment as a warehouse worker and who were subsequently assigned to work, and did work, at one or more of defendants' Mira Loma warehouses located in the county of Riverside, California, at some time during the applicable limitations period (hereafter, "FLSA Collective Plaintiffs").

99. At all relevant times, defendants Premier, Schneider Logistics, Impact, and Does 1-15 have been, and continue to be, employers and enterprises engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §203. At all relevant times, defendants Premier, Schneider Logistics, Impact and Does 1-10 have

44

1  employed, and continue to employ, some or all of the FLSA Collective Plaintiffs as

2  employees within the meaning of the FLSA, 29 U.S.C. §203.

3      100.  At all relevant times, plaintiffs and the other FLSA Collective Plaintiffs

4  have been similarly situated; have had substantially similar job requirements, job

5  duties, and pay provisions; and have been subject to defendants' common decisions,

6  policies, programs, practices, procedures, protocols, routines, and rules pursuant to

7  which defendants have willfully failed and refused to pay plaintiffs and the other

8  FLSA Collective Plaintiffs the amounts to which those workers are entitled under the

9  FLSA.

10     101.  The First Claim for Relief is properly brought under and maintained as

11  an opt-in collective action pursuant to the FLSA, 29 U.S.C. §216(b).  The FLSA

12  Collective Plaintiffs are readily ascertainable and can be given notice about this

13  action through means permitted by the FLSA and *Hoffman-LaRoche v. Sperling*, 493

14  U.S. 165 (1989).  To be effective, collective notice should be provided not only

15  through written communication to each class member's last known address as

16  reflected in defendants' records, but also through Spanish language newspaper and

17  radio announcements, workplace postings, and other alternative means of notice

18  designed to reach this class of transient, non-English speaking warehouse workers

19  whom defendants have affirmatively misled and deprived of information concerning

20  their workplace rights under state and federal law and of other information material

21  to the claims alleged herein.  Plaintiffs are informed and believe that most collective

22  action members are no longer employed by defendants, cannot be reached at the last-

23  known addresses in defendants' records, and do not have access to traditional

24  English-speaking media.

25     102.  Each of the named plaintiffs by this Complaint hereby consents to sue

26  under the FLSA, 29 U.S.C. §216(b).  Further consents to sue will be submitted to the

27  Court as they become available.

28

Complaint; Case No.

103.  The FLSA, 29 U.S.C. §207(a), requires defendants to compensate FLSA Collective Plaintiffs at 1-1/2 times these workers' regular hourly rate for all work performed by the FLSA Collective Plaintiffs in excess of 40 hours per workweek.

104.  Throughout the statute of limitations period covered by these claims, and particularly during certain high-production times of the year, the FLSA Collective Plaintiffs regularly worked in excess of 40 hours per workweek and continue to do so.

105.  At all relevant times, defendants willfully, regularly, and repeatedly failed, and continue to fail, to pay the FLSA Collective Plaintiffs at the required overtime rates, for hours worked in excess of 40 hours per workweek.

106.  The FLSA, 29 U.S.C. §206, requires defendants to compensate FLSA Collective Plaintiffs at the minimum wage rate of at least $7.25 per hour.

107.  Since defendants' implementation of their purported "piece rate" compensation schemes, defendants have willfully failed, and continue to fail, to pay the federal minimum wage to plaintiffs and similarly situated warehouse workers for numerous workweeks during which those workers' gross pay divided by the number of hours worked was less than $7.25 per hour.

108.  The FLSA imposes specific record-keeping requirements on employers, including the obligation to keep accurate records of all hours worked by employees. Defendants have knowingly and willfully failed, and continue willfully to fail, to record, report, and/or preserve accurate records of all hours worked by the FLSA Collective Plaintiffs.  By failing to record, report, and/or preserve records of all hours worked by plaintiffs and the FLSA Collective Plaintiffs, defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §201 et seq., including 29 U.S.C. §§211(c) and 215(a), and 29 C.F.R. §516 et seq.

//

//

Complaint; Case No.

109. Defendants' violations of the FLSA's minimum wage, overtime, and recordkeeping provisions are, and were, willful within the meaning of 29 U.S.C. §255.

110. As a direct and proximate result of defendants' violations of the minimum wage and overtime provisions as alleged herein, the FLSA Collective Plaintiffs have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties, including liquidated damages, and other appropriate relief under the FLSA.

**SECOND CLAIM FOR RELIEF**
**(California Overtime Provisions,**
**Cal. Labor Code §§510, 1194(a), 1198**
**and IWC Wage Order No. 9-2001 §§3, 4(C);**
**Brought by Plaintiffs on behalf of**
**Themselves and the Joint Schneider Class)**

111. Plaintiffs, on behalf of themselves and the Joint Schneider class, reallege and incorporate by reference all previous paragraphs.

112. It is unlawful under California law for an employer to suffer or permit an employee to work in excess of eight hours per workday or 12 hours per workday or 40 hours per workweek without paying premium wages under California Labor Code §510 and IWC Wage Order No. 9-2001 §3. It is also unlawful under California law for an employer to suffer or permit an employee to work in excess of 30 hours per workweek or six hours per day during any seven-day workweek under Labor Code §§550-56, or to suffer or permit an employee to work on the seventh day of a seven-day workweek without paying premium wages under California Labor Code §510 and IWC Wage Order No. 9-2001 §3. Further, when workers are required to work two shifts that are interrupted by a non-paid working period, they must be paid for an extra hour of work pursuant to IWC Wage Order No. 9-2001 §4(C).

113. California Labor Code §1198 makes employment of an employee for longer hours than the IWC sets or under conditions the IWC prohibits unlawful.

Complaint; Case No.

California Labor Code §1194(a) entitles an employee to recover in a civil action the unpaid balance of all overtime compensation due but not paid.

114. Plaintiffs and members of the Joint Schneider class routinely worked in excess of eight hours per workday and in excess of 40 hours per workweek during the applicable limitations period, and during certain parts of the year plaintiffs and class members routinely worked in excess of 12 hours per day.

115. Plaintiffs and members of the Joint Schneider class routinely worked seven-day workweeks in excess of six hours per day and in excess of 30 hours per week during parts of the year during the applicable limitations period.

116. Defendants have a policy and practice of not paying plaintiffs and members of the Joint Schneider class properly for overtime, and have not properly compensated plaintiffs and class members properly for their overtime hours under California law.

117. Plaintiffs and members of the Joint Schneider class work double shifts with a break in between on certain occasions. Defendants have a policy and practice of not paying plaintiffs and members of the Joint Schneider class an extra hour of pay on those occasions.

118. As a direct and proximate result of defendants' unlawful conduct as alleged herein, plaintiffs and members of the Joint Schneider class have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from defendants' violations of the California Labor Code and IWC Wage Order No. 9-2001.

**THIRD CLAIM FOR RELIEF**
**(California Minimum Wage Provisions,**
**Cal. Labor Code §§1182.12, 1194(a), 1194.2(a), 1194.5, 1197, 1198**
**and IWC Wage Order No. 9-2001 §4;**
**Brought by Plaintiffs on behalf of**
**Themselves and the Joint Schneider Class)**

119. Plaintiffs, on behalf of themselves and the Joint Schneider class, reallege and incorporate by reference all previous paragraphs.

48

120. California Labor Code §§1182.12 and 1197, and IWC Wage Order No. 9-2001 §4, requires defendants to pay plaintiffs and class members at or above the state minimum wage of $8.00 per hour for every hour defendants suffer or permit those employees to work.

121. California Labor Code §1198 makes unlawful the employment of an employee under conditions the IWC prohibits. California Labor Code §§1194(a) and 1194.2(a) provide that an employer that has failed to pay its employees the legal minimum wage is liable to pay those employees the unpaid balance of the unpaid wages as well as liquidated damages in an amount equal to the wages unpaid and interest thereon.

122. Defendants have failed to pay plaintiffs and members of the Joint Schneider class at or above the California minimum wage for many hours worked by plaintiffs and class members, including but not limited to mandatory on-duty time when no work that defendants characterize as compensable was available to be performed and other hours spent on work that is not reflected in defendants' purported "piece rate" payments.

123. As a direct and proximate result of defendants' unlawful conduct as alleged herein, plaintiffs and members of the Joint Schneider class have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from defendants' violations of the California Labor Code and IWC Wage Order No. 9-2001.

124. California Labor Code §1194.5 authorizes injunctions where an employer has willfully violated laws governing wages, hours, or working conditions. Plaintiffs and members of the class are entitled to injunctive relief under the governing legal standards, and are entitled to an order requiring defendants to pay the minimum wage and to keep track of the time plaintiffs and similarly situated warehouse workers spend on all purported piece rate and non-piece rate work.

49

Complaint; Case No.

**FOURTH CLAIM FOR RELIEF**
**(California Meal Period Provisions,**
**Cal. Labor Code §§226.7, 1198**
**and IWC Wage Order No. 9-2001 §11;**
**Brought by Plaintiffs on behalf of**
**Themselves and the Joint Schneider Class)**

125.  Plaintiffs, on behalf of themselves and the Joint Schneider class, reallege and incorporate by reference all previous paragraphs.

126.  California Labor Code §226.7(a) prohibits an employer from requiring an employee to work during any meal period mandated by an applicable Industrial Wage Order.  IWC Wage Order No. 9-2001 §11(A) prohibits employers from employing a worker for more than five hours without a meal period of at least 30 minutes.  IWC Wage Order No. 9-2001 §11(B) prohibits employers from employing a worker for more than ten hours without a second meal period of at least 30 minutes.   Under both California Labor Code §226.7(b) and IWC Wage Order No. 9-2001 §11(D), if an employer fails to provide an employee a meal period as required, the employer must pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided as required.

127.  California Labor Code §1198 makes unlawful the employment of an employee under conditions the IWC prohibits.

128.  Defendants have a policy or practice of failing to ensure that all plaintiffs and members of the Joint Schneider class take the meal periods required by California Labor Code §226.7 and IWC Wage Order No. 9-2001 §12.

129.  Defendants also have a policy or practice of failing to pay each of their employees who was not provided with a meal period as required an additional one hour of compensation at each employee's regular rate of pay.

130.  As a direct and proximate result of defendants' unlawful conduct as alleged herein, plaintiffs and members of the Joint Schneider class have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory

50

1  damages and penalties and other appropriate relief from defendants' violations of the

2  California Labor Code and IWC Wage Order No. 9-2001.

**FIFTH CLAIM FOR RELIEF**
**(California Rest Period Provisions,**
**Cal. Labor Code §§226.7, 1198**
**and IWC Wage Order No. 9-2001 §12;**
**Brought by Plaintiffs on behalf of**
**Themselves and the Joint Schneider Class)**

7      131.  Plaintiffs, on behalf of themselves and the Joint Schneider class, reallege

8  and incorporate by reference all previous paragraphs.

9      132.  California Labor Code §226.7(a) prohibits an employer from requiring

10  an employee to work during any rest period mandated by an applicable Industrial

11  Wage Order.  IWC Wage Order No. 9-2001 §12(A) requires employers to authorize

12  and permit employees to take a paid rest period of at least 10 minutes for every four

13  hours worked or major fraction thereof, which insofar as practicable shall be in the

14  middle of each work period.  Under both California Labor Code §226.7(b) and IWC

15  Wage Order No. 9-2001 §12(B), if an employer fails to provide an employee a rest

16  period as required, the employer must pay the employee one hour of pay at the

17  employee's regular rate of compensation for each workday that a rest period is not

18  provided as required.

19      133.  California Labor Code §1198 makes unlawful the employment of an

20  employee under conditions the IWC prohibits.

21      134.  Defendants have a policy or practice of failing to authorize and permit

22  plaintiffs and class members to take, on time or at all, the rest periods required by

23  California Labor Code §226.7 and IWC Wage Order No. 9-2001 §12.

24      135.  Defendants also have a policy or practice of failing to pay each of their

25  employees who was not provided with a rest period as required an additional one

26  hour of compensation at each employee's regular rate of pay.

27      136.  As a direct and proximate result of defendants' unlawful conduct as

28  alleged herein, plaintiffs and members of the Joint Schneider class have sustained

economic damages, including but not limited to unpaid wages and lost interest, in an

Complaint; Case No.

amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from defendants' violations of the California Labor Code and IWC Wage Order No. 9-2001.

**SIXTH CLAIM FOR RELIEF**
**(California Reporting Time Pay Provisions,**
**Cal. Labor Code §1198**
**and IWC Wage Order No. 9-2001 §5;**
**Brought by Plaintiffs on behalf of**
**Themselves and the Joint Schneider Class)**

137.  Plaintiffs, on behalf of themselves and the Joint Schneider class, reallege and incorporate by reference all previous paragraphs.

138.  For each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half of said employee's usual or scheduled day's work, IWC Wage Order No. 9-2001 §5 requires the employer to pay the employee a minimum of two hours or half of the employee's usual or scheduled day's work, at the employee's regular rate of pay.

139.  California Labor Code §1198 makes unlawful the employment of an employee under conditions the IWC prohibits.

140.  Defendants have a policy or practice of failing to provide plaintiffs and members of the Joint Schneider class any reporting time pay when they require workers to report to work but fail to put the employees to work or furnish the employees with less than half their usual or scheduled day's work.  This failure to provide reporting time pay occurs both at the beginning of the day and when defendants send workers home or otherwise lay off workers mid-shift, for disciplinary reasons or otherwise.

141.  As a direct and proximate result of defendants' unlawful conduct as alleged herein, plaintiffs and members of the Joint Schneider class have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from defendants' violations of the California Labor Code and IWC Wage Order No. 9-2001.

**SEVENTH CLAIM FOR RELIEF**
**(California Recordkeeping Provisions,**
**Cal. Labor Code §§1174, 1194.5, 1198**
**and IWC Wage Order No. 9-2001 §7;**
**Brought by Plaintiffs on behalf of**
**Themselves and the Class)**

142.  Plaintiffs, on behalf of themselves and the Joint Schneider class, reallege and incorporate by reference all previous paragraphs.

143.  California Labor Code §1174(c)-(d) requires employers to keep records showing the names and addresses of all employees employed, and to keep, at a central location in the State of California or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, all employees employed at the respective plants or establishments. IWC Wage Order No. 9-2001 §7(A)(3) further requires employers to keep time records showing when the employee begins and ends each work period, meal period, and split shift interval. Under §7(A)(5), employers must also record each employee's total hours worked and applicable rates of pay, and must make such information "readily available" to the employee upon request. Under §7(A)(6), when a piece rate or incentive plan is in effect, the employer must provide to employees the piece rates and an explanation of the incentive plan formula, and the employer must maintain "an accurate production record." Under §7(C), all required records must be in the English language and in ink or other indelible form, properly dated, showing month, day, and year; must be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California; and must be available for inspection by an employee upon reasonable request.

144.  California Labor Code §1198 makes unlawful the employment of an employee under conditions the IWC prohibits.

145.  Pursuant to defendants' policy or practice, defendants have willfully failed, and continue willfully to fail, to maintain accurate, complete, and readily

53

Complaint: Case No.

available records, in violation of California Labor Code §1174 and IWC Wage Order No. 9-2001 §7.

146. Although plaintiffs and other members of the Joint Schneider class have requested defendants to produce certain required records, defendants have not provided those records.

147. Plaintiffs and members of the Joint Schneider class have suffered and will continue to suffer actual economic harm resulting from these violations, as they have been, and will continue to be, precluded from accurately monitoring the wages to which they are entitled, have been required to retain counsel and other experts and consultants to evaluate and calculate unpaid wages, and have suffered delays in receiving the wages and interest that are due and owing to them. Defendants' ongoing violations of these mandatory recordkeeping laws have caused, and will continue to cause, irreparable harm to plaintiffs and class members, among other reasons because as long as defendants fail to maintain the required records, plaintiffs and members of the Joint Schneider class will be unable to determine or demonstrate the precise number of hours actually worked, or the wages and penalties owed to them for the long hours that defendants have required them to work.

148. By willfully failing to maintain the records required by California Labor Code §1174(c) or the accurate and complete records required by §1174(d), defendants are also liable for a civil penalty of five hundred dollars for each violation under §1174.5.

149. California Labor Code §1194.5 authorizes issuance of and injunction where an employer has willfully violated laws governing wages, hours, or working conditions. Plaintiffs and members of the class are entitled to injunctive relief under the governing legal standards, and are entitled to an order requiring defendants to provide plaintiffs and members of the class all of the information required by California Labor Code §1174 and IWC Wage Order No. 9-2001.

54

**EIGHTH CLAIM FOR RELIEF**
**(California Itemized Wage Statement Provisions,**
**Cal. Labor Code §§226, 1198**
**and IWC Wage Order No. 9-2001 §7(B);**
**Brought by Plaintiffs on behalf of**
**Themselves and the Joint Schneider Class)**

150. Plaintiffs, on behalf of themselves and the Joint Schneider class, reallege and incorporate by reference all previous paragraphs.

151. California Labor Code §226(a) requires employers semimonthly or at time of paying wages to provide to their employees the following information: total hours worked, all applicable hourly rates, the number of piece rate units earned, any applicable piece rate, and deductions. IWC Wage Order No. 9-2001 §7(B) requires employers semimonthly or at the time of each payment of wages to furnish to each employee an itemized statement in writing showing the following information: all deductions; the inclusive dates of the period for which the employee is paid; the name of the employee or the employee's social security number; and the name of the employer. These required disclosures of information are essential to enable employees to determine whether they have been paid in compliance with the law and to determine the identify of all employers who are responsible for any payments that remain due.

152. Pursuant to defendants' unlawful policies and practices as alleged herein, defendants have knowingly and intentionally failed to provide plaintiffs and other members of the Joint Schneider class with the legally mandated disclosures of total hours worked, hourly rates, the number of piece rate units earned and any applicable piece rate, the identity of all joint employers, and an itemization of all deductions taken, as required by California Labor Code §226(a).

153. California Labor Code §226(e) provides that an employee who suffers injury as a result of a knowing and intentional failure by an employer to comply with §226(a) may recover the greater of actual damages or the civil penalties designated by statute of $50 for the initial pay period in which a violation occurs and $100 per

55

1   employee for each violation in a subsequent pay period up to an aggregate penalty of

2   $4,000.

3       154.  California Labor Code §1198 makes employment of an employee under

4   conditions the IWC prohibits unlawful.

5       155.  Defendants have knowingly and intentionally failed to furnish plaintiffs

6   and members of the Joint Schneider class with the information required by California

7   Labor Code §226(a) and IWC Wage Order No. 9-2001 §7(B).  This failure has

8   injured and was intended to injure plaintiffs and members of the Joint Schneider

9   class by, among other things, enabling defendants to avoid paying these workers all

10  wages due without detection of wrongdoing; creating confusion among these

11  workers over whether they had received all wages due and owing; making it difficult

12  and expensive for these workers to reconstruct pay records; forcing these workers to

13  make mathematical computations to analyze whether the wages paid compensated

14  them for all hours worked; requiring these workers to retain attorneys, experts,

15  consultants, and others to help them determine the fact, scope, and extent of

16  defendants' wrongful conduct; and causing delay in these workers recovering their

17  full back pay and interest.

18      156.  Defendants have also willfully violated and continue to violate

19  California Labor Code §226(a) and IWC Wage Order No. 9-2001 §7(B) by

20  retaliating, or threatening retaliation, against plaintiffs and members of the Joint

21  Schneider class who seek information that the employer is obligated to provide under

22  that provision, and by making those threats in a loud, public manner for the purpose,

23  and with the effect, of dissuading other plaintiffs and similarly situated workers from

24  exercising their right to seek such information themselves.

25      157.  As a direct and proximate result of defendants' unlawful conduct as

26  alleged herein,  plaintiffs and members of the Joint Schneider class have sustained

27  economic damages, including but not limited to unpaid wages and lost interest, in an

28  amount to be established at trial, and are entitled to recover such damages and

Complaint; Case No.

1    penalties, and to other appropriate relief from defendants' violations of the

2    California Labor Code and IWC Wage Order No. 9-2001.

3        158.  California Labor Code §226.3 provides that any employer who violates

4    §226(a) shall be subject to a civil penalty of $250 per employee per violation in an

5    initial citation and $1,000 per employee for each violation in a subsequent citation

6    for which the employer fails to provide the employee a wage deduction statement or

7    fails to keep the records required in §226(a).

8        159.  California Labor Code §226(g) authorizes courts to issue injunctive

9    relief to remedy violations of §226(a).   Plaintiffs and members of the Joint

10   Schneider class are entitled to injunctive relief under the governing legal standards,

11   and are entitled to an order requiring defendants: (a) to immediately begin providing

12   to current employee class members all of the information required to be disclosed by

13   California Labor Code §226(a); (b) to immediately provide to all plaintiffs and

14   members of the Joint Schneider class the information required to be disclosed by

15   California Labor Code §226(a), dating back to those employees' beginning of

16   employment or to the start of the applicable limitations period, whichever is further

17   back in time; and c) to prohibit defendants from retaliating or threatening to retaliate

18   against any plaintiff or class member who seeks or requests information that is

19   required to be disclosed by California Labor Code §226(a).

**NINTH CLAIM FOR RELIEF**
**(California Labor Code Prohibition against Retaliation,**
**Cal. Labor Code §98.6;**
**Brought by Plaintiffs on behalf of Themselves and the Joint Schneider Class)**

22       160.  Plaintiffs, on behalf of themselves and the Joint Schneider class, reallege

24   and incorporate by reference all previous paragraphs.

25       161.  California Labor Code §98.6(a) prohibits employers from discharging or

26   otherwise discriminating against any employee "because of the exercise by the

27   employee . . . on behalf of himself, herself, or others of any rights afforded him or

28   her."

162. Through their practices as alleged above, defendants violated, and continue to violate, California Labor Code §98.6(a) by discriminating against and by threatening plaintiffs and members of the Joint Schneider class with suspension, discharge, and/or other adverse employment consequences for exercising the rights protected by California Labor Code §§226(a) and 1174, and IWC Wage Order No. 9-2001 §7, to receive and/or request complete and accurate information regarding their pay, hourly wage or piece rates, and hours worked, by complaining about defendants' violations of federal and state labor law, and through other protected conduct.

163. Plaintiffs, on behalf of themselves and the Joint Schneider class, seek an injunction requiring defendants to cease violating California Labor Code §98.6(a) by discharging, suspending, threatening, or otherwise discriminating against plaintiffs and members of the Joint Schneider class for exercising rights provided by the Labor Code and IWC Wage Order No. 9-2001.

164. Plaintiffs, on behalf of themselves and the Joint Schneider class, separately seek damages and/or reinstatement, pursuant to Labor Code §98.6(b), which provides that "[a]ny employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of his or her employment" for exercising his or her rights is entitled to reinstatement and reimbursement of lost wages and work benefits caused by those acts of the employer.

165. As a direct and proximate result of defendants' unlawful conduct as alleged herein, plaintiffs and members of the Joint Schneider class have each sustained economic damages, including loss of wages and other work benefits and lost interest, in an amount to be established at trial.

166. The unlawful conduct of defendants and/or their agents, supervisors, managers, and/or employees, as described herein, was malicious, fraudulent, and/or oppressive, and was done with a willful and conscious disregard for the rights of plaintiffs and members of the Joint Schneider class and for the deleterious

Complaint; Case No.

consequences of defendants' actions. Further, defendants and/or their agents, employees, managers or supervisors authorized, condoned and ratified the unlawful conduct of the officers, supervisors, managers, and/or other employees of defendants who retaliated against plaintiffs and other members of the Joint Schneider class. Consequently, plaintiffs and other members of the Joint Schneider class are entitled to punitive damages against all defendants, in amounts according to proof.

**TENTH CLAIM FOR RELIEF**
**(California Full and Timely Wage Provisions,**
**Cal. Labor Code §201-04;**
**Brought by Plaintiffs on behalf of**
**Themselves and the Joint Schneider Class)**

167. Plaintiffs, on behalf of themselves and the Joint Schneider class, reallege and incorporate by reference all previous paragraphs.

168. California Labor Code §201 requires an employer who discharges an employee to pay all compensation due and owing to that employee immediately upon the employee's discharge from employment. California Labor Code §202 requires an employer promptly to pay all compensation due and owing to an employee within 72 hours after that employee's employment terminates, including by resignation. California Labor Code §204 requires an employer to pay all wages due to its employees when those wages are due. California Labor Code §203 provides that if an employer willfully fails to pay all compensation due promptly upon discharge or resignation, as required by §§201 and 202, the employer shall be liable for waiting time penalties in the form of continued compensation for up to 30 work days.

169. By failing to compensate plaintiffs and members of the Joint Schneider class as required by California law, as set forth above, defendants have violated and continue to violate California Labor Code §204, which requires employers, including defendants, to pay their employees their full wages when due.

170. By failing to compensate plaintiffs and members of the Joint Schneider class as required by California law, as set forth above, defendants have willfully

59

1  failed to make timely payment of the full wages due to its employees who quit or

2  have been discharged, thereby violating California Labor Code §§201-02.

3      171.  As a direct and proximate result of defendants' unlawful conduct as

4  alleged herein, plaintiffs and members of the Joint Schneider class have sustained

5  economic damages, including but not limited to unpaid wages and lost interest, in an

6  amount to be established at trial.

7      172.  By failing to make timely payment of the full wages due to plaintiffs and

8  members of the Joint Schneider class who quit or have been discharged, defendants

9  are also liable for a penalty to each such employee of up to 30 days' of that

10 employee's wages under California Labor Code §203.

11              **ELEVENTH CLAIM FOR RELIEF**
               **(California Prohibition Against Secret Wages,**
12               **Cal. Labor Code §223;**
               **Brought by Plaintiffs on behalf of**
13             **Themselves and the Joint Schneider Class)**

14     173.  Plaintiffs, on behalf of themselves and the Joint Schneider class, reallege

15 and incorporate by reference all previous paragraphs.

16     174.  Pursuant to California Labor Code §223, where a contract requires an

17 employer to maintain a designated wage scale, it is unlawful for the employer

18 secretly to pay a lower wage while purporting to pay the wage designated by the

19 contract.

20     175.  For the purposes of California Labor Code §223, plaintiffs Everardo

21 Carrillo, Fernando Chavez, Eric Flores, Jose Martinez Arceo, Baltazar Zavala and

22 other members of the Schneider-Premier class had an oral contract with defendants

23 Premier, Schneider Logistics, and Does 1-5 that the group "piece rate" would be

24 based on a fixed rate for each completely filled or unloaded semi-trailer truck

25 container divided on a pro rata basis among all workers on the shift that completed

26 filling the containers.  Further, pursuant to California Labor Code §223, plaintiff

27 Juan Chavez and other members of the Schneider-Impact class had an oral contract

28 with defendants Impact, Schneider Logistics, and Does 6-10 that defendants would

60

pay them a fixed piece rate for every semi-trailer truck container they finished unloading on each of their shifts.

176. In violation of California Labor Code §223, defendants secretly paid plaintiffs and similarly situated workers at rates lower than the agreed upon group piece rate, including by failing to pay workers their full and accurate pro rata shares; failing to pay workers for all pieces completed during their shifts; failing to disclose to employees how their piece rate and group piece rate pay would actually be calculated; failing to disclose to employees information regarding the number of pieces on which they worked and the number of employees in their piece-rate "group"; and making improper deductions from their paychecks.

### TWELFTH CLAIM FOR RELIEF
#### (Fraudulent Misrepresentation;
#### Brought by Plaintiffs on behalf of
#### Themselves and the Joint Schneider Class)

177. Plaintiffs, on behalf of themselves and the class, reallege and incorporate by reference all previous paragraphs.

178. Defendants Premier, Schneider Logistics, and Does 1-5 represented to Everardo Carrillo, Fernando Chavez, Eric Flores, Jose Martinez Arceo, Baltazar Zavala and other members of the Schneider-Premier class that they would be paid on a group "piece rate" basis a pro rata share, allocated among all workers on a shift, of a fixed price for each semi-trailer truck container that was completely filled or unloaded on that shift. These defendants also represented to these plaintiffs and other members of the Schneider-Premier class that they would be paid more based on the group piece rate scheme than they had earned under the prior compensation system. Similarly, defendants Impact, Schneider Logistics, and Does 6-10 represented to plaintiff Juan Chavez and other members of the Schneider-Impact class that they would be paid a fixed piece rate for every semi-trailer truck container they finished unloading on each of their shifts.

179. On information and belief, defendants did not intend to comply with these representations but made the statements without any intention to fulfill them.

Complaint; Case No.

180. At all relevant times, defendants had and continue to have both the means of obtaining and actual possession of superior knowledge and special information with regard to their representations about the piece-rate and group "piece rate." As a result of defendants' opportunity to obtain superior knowledge and their actual possession of such knowledge, each defendant has gained an unconscionable advantage over members of the Joint Schneider class, who have been and/or continue to be ignorant of facts relevant to defendants' piece rate compensation systems and who have not been and/or are not in a position to become informed about such facts.

181. Despite their superior knowledge and special information, defendants falsely represented to plaintiffs and other members of the Joint Schneider class how they would be paid under defendants' piece rate compensation systems and, as to the Schneider-Premier group "piece rate" scheme, that they would earn more than they had been earning. Such representations were made by defendants with knowledge of their falsity and with the intent to induce plaintiffs and similarly situated workers to rely on those representations. Because of defendants' position of superior access to relevant knowledge and information, plaintiffs and similarly situated workers justifiably relied upon defendants' false representations to their detriment.

182. As a direct and proximate result of defendants' conduct as alleged in this Complaint, plaintiffs and other members of the Joint Schneider class have lost wages and other benefits in amounts to be proven at trial.

183. In making the representations set forth above under the circumstances set forth above and in intentionally failing to live up to those representations, defendants acted with oppression, fraud, and malice towards plaintiffs and other members of the Joint Schneider class, in violation of their rights. Consequently, plaintiffs and all members of the Joint Schneider class are entitled to recover from defendants exemplary and punitive damages in an amount to be proven at trial.

**THIRTEENTH CLAIM FOR RELIEF**
(California Unlawful Deductions and Compelled Purchases Provisions,
Cal. Labor Code §§221, 450, 1198, 2802
and IWC Wage Order No. 9-2001 §§8, 9(A);
Brought by Plaintiffs Everardo Carrillo, Fernando Chavez, Eric Flores, Jose
Martinez Arceo, Baltazar Zavala on behalf of
Themselves and the Schneider-Premier Class)

184.  Plaintiffs, on behalf of themselves and the Schneider-Premier class, reallege and incorporate by reference all previous paragraphs.

185.  Defendants take deductions from the pay of plaintiffs and members of the Schneider-Premier class, including for the cost of background checks and uniforms.

186.  For example, defendants deduct from the pay of plaintiffs and members of the Schneider-Premier class a fee of one dollar per week that is purportedly for the cost of mandatory uniforms, consisting of tee-shirts with a distinct Premier Unloading logo, that defendants required, and continue to require, each worker to wear, to launder, maintain, and repair, and to "rent" from defendants for one dollar per week.  This mandatory one dollar per week "rental" fee bears no reasonable relation to the cost and value of the uniform, but represents an unlawful mechanism by which defendants obtain unlawful deductions or kickbacks from the wages they lawfully owe to plaintiffs and  members of the Schneider-Premier class.

187.  California Labor Code §221 makes it unlawful for employers to collect or receive from an employee any part of wages paid.  California Labor Code §450 makes it unlawful for an employer to compel or coerce employees to purchase any thing of value from the employer.  California Labor Code §2802 requires employers to indemnify their employees for all expenditures necessary for the employees' duties.  IWC Wage Order No. 9-2001 §9(A) provides that if an employer requires a uniform or part of a uniform to be worn by an employee, the employer must provide and maintain the uniform.  IWC Wage Order No. 9-2001 §8 provides that the only circumstances under which an employer may take a deduction from an employee's

1   wages due to cash shortage, breakage, or loss of equipment is if the employer can

2   show that the shortage, breakage, or loss was the result of the employee's gross

3   negligence or dishonest or willful act.  The tee-shirts that defendants require

4   plaintiffs and members of the Schneider-Premier class to rent and to wear are

5   uniforms within the meaning of §9(A) because they have a distinct design and are

6   not generally usable because of the specialized Premier Unloading logo.

7       188.  California Labor Code §1198 makes unlawful the employment of an

8   employee under conditions the IWC prohibits.

9       189.  By taking deductions from the pay of plaintiffs and members of the

10  Schneider-Premier class, including for the cost of background checks and uniforms,

11  requiring plaintiffs and members of the Schneider-Premier class to pay one dollar per

12  week for uniforms, defendants, pursuant to their policy and practice, have willfully

13  violated California Labor Code §§221, 450, and 2802.  By taking deductions for the

14  cost of uniforms, defendants have also willfully violated IWC Wage Order No.

15  9-2001 §§8 and 9(A).

16      190.  As a direct and proximate result of defendants' unlawful conduct as

17  alleged herein, plaintiffs and members of the Schneider-Premier class have sustained

18  economic damages, including unpaid wages and lost interest, in an amount to be

19  established at trial.

**FOURTEENTH CLAIM FOR RELIEF**
**(California Labor Code Private Attorneys General Act,**
**Cal. Labor Code §2698 et seq.;**
**Brought by Plaintiffs on behalf of Themselves and all**
**Aggrieved Employees and/or on behalf of the Joint Schneider Class)**

24      191.  Plaintiffs, on behalf of themselves and all aggrieved employees and/or

25  on behalf of the Joint Schneider Class, as well as the general public of the State of

26  California, reallege and incorporate by reference all previous paragraphs.

27      192.  IWC Wage Order No. 9-2001 §15 requires defendants to maintain the

28  temperature in the work areas where plaintiffs and similarly situated warehouse

64

Complaint; Case No.

1   workers perform their job duties at a reasonable level of comfort consistent with

2   industry-wide standards for the nature of the process and the work performed. The

3   temperature in defendants' warehouses where plaintiffs and similarly situated

4   warehouse workers are employed often exceeds 90 degrees, which is well in excess

5   of what IWC Wage Order No. 9-2001 §15(A) allows. Defendants have not taken all

6   feasible means to reduce such excessive heat to a degree providing reasonable

7   comfort, as required by §15(B), such as air conditioning, improved ventilation,

8   cooling fans, and other reasonable alternatives.

9       193. Under the California Labor Code Private Attorneys General Act,

10  California Labor Code §§2698-99 ("PAGA"), any aggrieved employee may bring a

11  representative action as a private attorney general on behalf of the general public,

12  including all other aggrieved employees, to recover civil penalties for their

13  employers' violations of the California Labor Code and IWC Wage Orders. These

14  civil penalties are in addition to any other relief available under the Labor Code, and

15  must be allocated 75% to the State of California's Labor and Workforce

16  Development Agency and 25% to the aggrieved worker, pursuant to California

17  Labor Code §2699.

18      194. Pursuant to California Labor Code §1198, defendants' employment of

19  any plaintiff or class member for longer hours than those fixed by IWC Wage Order

20  No. 9-2001 or under conditions of labor prohibited by Wage Order No 9-2001 is

21  unlawful and constitutes a violation of the California Labor Code, actionable under

22  PAGA. Pursuant to California Labor Code §1198, it is unlawful for defendants to

23  have required plaintiffs and similarly situated warehouse workers to work for longer

24  hours than those fixed, or under conditions of labor prohibited by, Wage Order No.

25  9-2001; to have paid or caused to have paid plaintiffs and similarly situated

26  warehouse workers a wage less than the minimum fixed by Wage Order No. 9-2001;

27  and to have violated, or refused or neglected to have complied with, any other

28  provision of Wage Order No. 9-2001 as alleged herein.

Complaint; Case No.

195.  Plaintiffs allege, on behalf of themselves, all aggrieved employees and/or on behalf of the Joint Schneider Class, as well as the general public of the State of California, that defendants have violated the following provisions of the California Labor Code and the following provisions of the IWC Wage Orders that are actionable through the California Labor Code and PAGA, as previously alleged herein: California Labor Code §§ 98.6, 201-04, 221, 223, 226, 226.7, 450, 510, 551, 552, 1174, 1182.12, 1194(a), 1197-99, and 2802, and IWC Wage Order No. 9-2001 §§3, 4, 5, 7, 8, 9, 11, 12, and 15.  Each of these violations entitles plaintiffs, as private attorneys general, to recover the applicable statutory civil penalties on their own behalf, on behalf of all aggrieved employees, and on behalf of the general public.

196.  California Labor Code §2699(a), which is part of PAGA, provides in pertinent part:

> Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3.

197.  California Labor Code §2699(f), which is part of PAGA , provides in pertinent part:

> For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: . . .
>
> (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two

66

hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

198.  Plaintiffs are entitled to civil penalties, to be paid by defendants and allocated as PAGA requires, pursuant to California Labor Code §2699(a) for defendants' violations of the California Labor Code and IWC Wage Orders for which violations a civil penalty is already specifically provided by law; and plaintiffs are entitled to civil penalties, to be paid by defendants and allocated as PAGA requires, pursuant to California Labor Code §2699(f) for defendants' violations of the California Labor Code and IWC Wage Orders for which violations a civil penalty is not already specifically provided.

199.  Plaintiffs are in the process of exhausting their administrative remedies as required by California Labor Code §2699.3.  Plaintiffs will amend their Complaint to allege such exhaustion after the exhaustion process is complete.

200.  Under PAGA, plaintiffs and the State of California are entitled to recover the maximum civil penalties permitted by law for the violations of the California Labor Code and Wage Order No. 9-2001 that are alleged in this Complaint.

**FIFTEENTH CLAIM FOR RELIEF**
**(California Unfair and Unlawful Business Practices,**
**Cal. Bus. & Prof. Code §17200 et seq.;**
**Brought by Plaintiffs on behalf of**
**Themselves, the Joint Schneider Class, and the General Public)**

201.  Plaintiffs, on behalf of themselves and the Joint Schneider class, reallege and incorporate by reference all previous paragraphs.

202.  Defendants have engaged in unfair and unlawful business practices in violation of California Business & Professions Code §17200 et seq. by engaging in the unlawful conduct alleged above, including but not limited to: failing to pay the overtime premiums required by federal and state law; failing to pay the minimum wage required by federal and state law; requiring workers to work seven-day weeks that include more than 30 hours of work including workdays in excess of six hours

Complaint; Case No.

per day; failing to provide workers with all meal periods and paid rest breaks to which they are entitled; failing to provide employees information required by California Labor Code §§226(a) and 1174 and Wage Order No. 9-2001; concealing from workers material information concerning defendants' joint employer status, defendants' relationships with the Doe defendants, the Doe defendants' responsibilities for the acts and omissions alleged herein, and the nature and extent of the conspiracy in which defendants are engaged; misleading the workers about the basis for their periodic pay and the nature of their employment and defendants' joint employer relationships and conspiracies as alleged herein; failing to pay full wages when due and failing to make timely payment of full wages to workers who quit or have been discharged; requiring workers to pay a "rental" fee for their uniforms and making other wrongful deductions from the workers' paychecks; failing to pay workers when they report as required and are sent home; retaliating against workers in response to their requests for information about how their wages were calculated or for complaining that they were not paid wages that were due and owing; and failing to maintain the temperature to provide reasonable comfort consistent with industry-wide standards.

203.   Plaintiffs are informed and believe, and based upon such information and belief, allege that by engaging in the unfair and unlawful business practices complained of above, defendants were able to lower their labor costs and thereby to obtain a competitive advantage over law-abiding employers with which they compete, in violation of California Business & Professions Code §17200 et seq. and California Labor Code §90.5(a), which sets forth the public policy of California to vigorously enforce minimum labor standards to ensure that employees are not required or permitted to work under substandard and unlawful conditions and to protect law-abiding employers and their employees from competitors that lower their costs by failing to comply with minimum labor standards.

204.  As a direct and proximate result of defendants' unfair and unlawful conduct as alleged herein, plaintiffs and members of the  Joint Schneider class have

Complaint; Case No.

sustained injury and damages, including unpaid wages and lost interest, in an amount to be established at trial. Plaintiffs and members of the Joint Schneider class seek restitution of all unpaid wages owed to the class members, disgorgement of all profits that defendants have enjoyed as a result of their unfair and unlawful business practices, penalties, and injunctive relief.

### SIXTEENTH CLAIM FOR RELIEF
### (Declaratory Judgment Act,
### 28 U.S.C. §§ 2201 and 2202;
### Brought by Plaintiffs on behalf of
### Themselves and the Joint Schneider Class)

205. Plaintiffs, on behalf of themselves and the Joint Schneider class, reallege and incorporate by reference all previous paragraphs.

206. An actual controversy has arisen and now exists between the parties relating to the legal rights and duties of the parties as set forth above, for which plaintiffs desire a declaration of rights and other relief available pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.

207. A declaratory judgment is necessary in that plaintiffs contend that defendants have committed the violations set forth above and defendants, on information and belief, will deny that they have done so and/or that they will continue to do so.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for the following relief:

1. Certification of this action as a collective action brought pursuant to the FLSA, 29 U.S.C. §216(b).

2. Designation of plaintiffs as representatives of the FLSA Collective Plaintiffs.

3. Certification of this action as a Rule 23 class action on behalf of the proposed classes.

4. Designation of plaintiffs as representatives of the classes.

69

5.  A temporary, preliminary, and permanent injunction requiring defendants to pay plaintiffs and members of the class the minimum wage and requiring defendants to keep track of the time plaintiffs and similarly situated warehouse workers spend on non-piece rate work.

6.  A temporary, preliminary, and permanent injunction requiring defendants to provide plaintiffs and members of the class all of the information required by California Labor Code §§226(a) and 1174 and IWC Wage Order No. 9-2001, §7.

7.  A temporary, preliminary, and permanent injunction requiring defendants to cease discharging, threatening, or otherwise discriminating against plaintiffs and members of the class in violation of California Labor Code §98.6(a).

8.  A permanent injunction prohibiting defendants from violating the California Labor Code and IWC Wage Order No. 9-2001, and committing unlawful and unfair business practices proscribed by California Business & Professions Code §17200 et seq.

9.  Equitable tolling of the applicable statute of limitations on the claims of plaintiffs and members of the classes.

10.  A declaratory judgment that defendants have knowingly and intentionally violated the following provisions of law, and have willfully violated the FLSA for purposes of calculating the applicable statute of limitations period:

(a)  The FLSA, 29 U.S.C. §207(a), by failing to provide compensation at time and a half rates for work in excess of 40 hours per workweek;

(b)  The FLSA, 29 U.S.C. §206, by failing to provide compensation at the federal minimum wage;

(c)  California Labor Code §§510, 550-556 and 1194(a) and IWC Wage Order No. 9-2001 §3, by failing to provide premium wages for work in excess of eight hours per workday, 12 hours per workday, or 40 hours per workweek, for work in excess of 30 hours per workweek or six hours per day during any seven-day workweek, and/or for work on the seventh day of a seven-day workweek;

70

Complaint; Case No.

(d)  California Labor Code §§1182.12, 1194(a), 1194.2(a), and 1197 and IWC Wage Order No. 9-2001 §4, by failing to pay at least the California minimum wage;

(e)  California Labor Code §226.7 and IWC Order No. 9-2001 §§11 and 12, by failing to provide all required meal periods and rest breaks and failing to compensate employees for missed or untimely meal periods and rest periods;

(f)  IWC Wage Order No. 9-2001 §5, by failing to provide reporting time pay;

(g)  California Labor Code §1174 and IWC Wage Order No. 9-2001 §7, by failing to maintain and provide employees with access to complete and accurate records;

(h)  California Labor Code §226, by failing to provide the information required semimonthly or with each payment of wages;

(i)  California Labor Code §98.6, by retaliating against or threatening to retaliate against employees for exercising their rights under California law;

(j)  California Labor Code §§201-204, by failing to pay full wages when due and by willfully failing to make timely payment of the full wages due to workers who quit or have been discharged;

(k) IWC Wage Order No. 9-2001 §4(C) by failing to compensate workers who are required to work two shifts that are interrupted by a non-paid working period for an extra hour of work;

(l) California Labor Code §223, by paying secret wages;

(m) California Labor Code §§221, 450, and 2802, and IWC Wage Order No. 9-2001 §§8 and 9(a), by making improper deductions from wages due;

(n) IWC Wage Order No. 9, §15, by failing to maintain the temperature in the work area in such a manner as to provide reasonable comfort consistent with industry-wide standards; and

(o)  California Business and Professions Code §§17200-08, by violating the provisions set forth in subparagraphs (a)-(n).

71

Complaint; Case No.

11.   An award of unpaid minimum wages and an award of unpaid overtime premiums, plus liquidated damages and interest, pursuant to the FLSA, 29 U.S.C. §255(a).

12.   An award of restitution or damages in the amount of unpaid overtime, minimum wage compensation (plus liquidated damages pursuant to California Labor Code §1194.2), and unlawful deductions from wages (or liquidated damages pursuant to California Labor Code §226(e), whichever is greater), including interest thereon, subject to proof at trial.

13.   An award of statutory penalties pursuant to California Labor Code §§203, 1174.5, and 2698-99 and California Business & Professions Code §17206, subject to proof at trial;

14.   An award of penalties for failure to pay full wages when due pursuant to California Labor Code §§204 and 210, subject to proof at trial.

15.   An award of waiting time penalties as to those class members who quit or have been discharged, pursuant to California Labor Code §203, subject to proof at trial.

16.   An award of restitution of all amounts owed in unpaid overtime, minimum wage compensation, and unlawful deductions from wages, and interest thereon, in an amount according to proof at trial, pursuant to California Business & Professions Code §17203.

17.   Disgorgement of profits and all other appropriate equitable relief authorized by California Business & Professions Code §17203.

18.   Punitive and exemplary damages for fraudulent misrepresentation.

19.   Prejudgment and postjudgment interest on all sums awarded.

20.   Attorneys' fees and litigation expenses in an amount the Court determines to be reasonable, pursuant to 29 U.S.C. §216(b), Labor Code §§218.5, 226(g), 1194(a), 2699(g)(1), and 2802(c), and California Code of Civil Procedure §1021.5, and such other provisions as may be applicable.

Complaint; Case No.

1    21.  Costs of suit.

2    22.  Such other and further relief as is equitable, just, and proper.

3

4    Dated: October 17, 2011                    Respectfully submitted,

5                                               MICHAEL RUBIN
6                                               JONATHAN WEISSGLASS
                                                JENNIFER SUNG
7                                               Altshuler Berzon LLP

8                                               THERESA M. TRABER
9                                               Traber & Voorhees

10                                              JANET HEROLD
                                                Special Counsel to Change to Win, CLC
11

12

13

14                                             By: _____
                                                         Theresa M. Traber
15                                             Attorneys for Plaintiffs
                                               EVERARDO CARRILLO; FERNANDO
16                                             CHAVEZ; ERIC FLORES; JOSE
                                               MARTINEZ ARCEO; BALTAZAR
17                                             ZAVALA; JUAN CHAVEZ, *et al.*

18

19

20

21

22

23

24

25

26

27

28

73

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and similarly situated warehouse workers, hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

Dated: October 17, 2011                    Respectfully submitted,

MICHAEL RUBIN
JONATHAN WEISSGLASS
JENNIFER SUNG
Altshuler Berzon LLP

THERESA M. TRABER
Traber & Voorhees

JANET HEROLD
Special Counsel to Change to Win, CLC


By: _____
            Theresa M. Traber
Attorneys for Plaintiffs
EVERARDO CARRILLO; FERNANDO
CHAVEZ; ERIC FLORES; JOSE
MARTINEZ ARCEO; BALTAZAR
ZAVALA; JUAN CHAVEZ, *et al.*

74

Complaint; Case No.