THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
Traber & Voorhees
128 N. Fair Oaks Avenue, Suite 204
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com

JANET HEROLD (SBN 186419)
Special Counsel to Change to Win, CLC
2629 Foothill Blvd #357
La Crescenta, California 91214
Telephone: (818) 957-7054
Facsimile: (818) 542-6419
heroldj@seiu.org

MICHAEL RUBIN (SBN 80618)
JONATHAN WEISSGLASS
 (SBN 185008)
JENNIFER SUNG (SBN 254741)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
mrubin@altber.com
jweissglass@altber.com
jsung@altber.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

EVERARDO CARRILLO, *et al.*, for themselves and all others similarly situated and the general public,

Plaintiffs,

v.

SCHNEIDER LOGISTICS, INC., *et al.*,

Defendants.

Case No. CV 11-8557 CAS (DTBx)

**PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION REQUIRING DEFENDANTS TO KEEP AND DISCLOSE MANDATORY PAYROLL RECORDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

### *EX PARTE* APPLICATION FOR TRO AND OSC

Pursuant to F.R.C.P. 65, plaintiffs Everardo Carrillo, Fernando Chavez, Eric Flores, Jose Martinez Arceo, Baltazar Zavala, and Juan Chavez apply *ex parte* for a Temporary Restraining Order ("TRO") and Order to Show Cause re: Preliminary Injunction requiring defendants to provide their employees with proper itemized wage statements; to record accurately all hours their employees actually work; and to maintain proper payroll and production records as required by law.  These are basic, mandatory obligations under the California Labor Code, the governing California IWC Wage Order, and federal law.  Instead of complying with these laws, defendants are causing irreparable injury to plaintiffs and similarly situated warehouse workers by unlawfully refusing to maintain and disclose crucial, legally required information that details the basis for the workers' weekly pay.

Plaintiffs are employees in defendants' Mira Loma warehouses.  Plaintiffs and their co-workers load and unload semi-trailer trucks and perform other warehouse jobs in sweltering heat, often six or seven days per week and frequently for more than 12 hours per day.  Each plaintiff's wages are paid in an unexplained lump sum, unaccompanied by any statement listing the number of hours worked or a comprehensible basis for the wages provided.  Defendants claim to pay the workers on a piece rate basis, paying an undisclosed amount for every truck that is completely loaded or unloaded during the workers' shift, but they refuse to reveal the formula or factors supposedly used to calculate each worker's pay under this system.  On October 12, 2011, the California Department of Industrial Relations, Division of Labor Standards Enforcement ("DLSE"), conducted an on-site investigation of defendants' warehouses which revealed widespread labor violations, including blatant violations of state record-keeping requirements.  Despite the DLSE's actions, defendants have not ended their unlawful practices.  Although it has been 12 days since the on-site inspection, defendants still refuse to provide the plaintiffs with any of the production information that would allow them to determine if they are being paid all the wages due

to them under state and federal law.  Further, on October 21, 2011 – the second pay day after the DLSE inspection – plaintiffs again received unexplained lump-sum wages with a statement that provided virtually none of the critical information that must be part of a valid wage statement under state and federal law.

Plaintiffs filed this class action lawsuit on October 17, 2011, alleging, *inter alia,* that defendants are violating minimum wage and overtime laws; failing to maintain legally-required payroll and production records; and failing to disclose to plaintiffs and class members legally-required information, such as the number of hours worked and the pay rate.

Plaintiffs now seek a TRO to require defendants, and all those "who are in active concert or participation with" defendants pursuant to F.R.C.P. 65(d), to begin complying with mandatory state and federal record-keeping requirements and to provide itemized wage statements to all class members setting forth all legally-required information, including the hours worked and all components of any piece rate formula used.  This request is urgent because plaintiffs and the class they represent are low-wage workers who live from paycheck to paycheck and urgently need every penny of the wages they earn.  They and their families are threatened with irreparable harm – such as not being able to pay rent or cover basic living expenses – every time they are underpaid.  By contrast, defendants will suffer no hardship if a TRO is entered, other than the burden that every California employer must shoulder to comply with the mandates of state and federal law.  The public interest favors the enforcement of labor laws to protect employees from violation of the fundamental, non-waivable rights at issue in this class action lawsuit.

Pursuant to Local Rule 7-19.1, counsel for plaintiffs gave notice of this application to counsel for defendants on October 21, 2011.  Plaintiffs' counsel spoke by telephone with the General Counsel of defendant Schneider Logistics, Inc., who confirmed by email that Schneider will file an opposition.  Plaintiffs' counsel also spoke by telephone with in-house counsel for Premier Warehousing Ventures, LLC and

1  Rogers-Premier Unloading Services, LLC, who stated that he did not yet know whether
2  the Premier Defendants intend to file an opposition.  Despite reasonable efforts,
3  plaintiffs' counsel have been unable to learn the identity of the attorneys representing
4  defendants Impact Logistics, Inc., and do not know whether Impact intends to oppose
5  this *ex parte* application.  Plaintiffs' counsel sent letters by overnight mail to Impact's
6  agent for service of process on October 21, 2011 informing Impact of this *ex parte*
7  application, and also faxed a letter to Impact's corporate headquarters. *See* Declaration
8  of Theresa Traber ("Traber Dec.") ¶¶ 2-4.

9      This *ex parte* application is based on this application, the attached Memorandum
10  of Points and Authorities, Plaintiffs' Request for Judicial Notice and the exhibits
11  thereto, the Declarations of Theresa Traber, Michael Rubin, Juan Chavez, Daniel Lopez,
12  Everardo Carrillo, Jose Martinez Arceo, Evaristo Morales, Armando Esquivel, and
13  exhibits thereto, the proposed *ex parte* order lodged here, the pleadings and papers on
14  file with the Court, and any further briefing and arguments of counsel.

15
16  Dated: October 24, 2011          Respectfully submitted,

17
18                    By:        /s/

19                          LAUREN TEUKOLSKY

20                          MICHAEL RUBIN
                              JONATHAN WEISSGLASS
21                          JENNIFER SUNG
22                          Altshuler Berzon LLP

23                          THERESA M. TRABER
24                          LAUREN TEUKOLSKY
25                          Traber & Voorhees

26                          JANET HEROLD
27                          Special Counsel to Change to Win, CLC

28

# **TABLE OF CONTENTS**

                                                                    Page(s)

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . .  1

I.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.  LEGAL AND FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . .  3

A.  Plaintiffs Work Long Hours in Defendants' Warehouses. . . . . . . . . . . . . . .  3

B.  Defendants Pay Their Employees According to an Undisclosed,
    Supposed Piece Rate Formula. . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

C.  Defendants Fail to Provide the Warehouse Employees With the
    Information Necessary to Determine Whether They Are Paid Correctly. . . . .  7

D.  Defendants Do Not Accurately Record the Hours Their Employees
    Work. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

III.  RELIEF SOUGHT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

IV.  LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

A.  Applicable Legal Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

B.  Plaintiffs are Likely to Prevail on Their Claims. . . . . . . . . . . . . . . . . . .  10

    1.  Defendants Fail to Provide Lawful Itemized Wage Statements. . . . . .  10

    2.  Defendants Do Not Accurately Track or Record The Hours Their
        Employees Work. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

        a.  Defendants Must Accurately Record Hours, Meal Breaks,
            and Split Shift Intervals. . . . . . . . . . . . . . . . . . . . . . . .  12

        b.  Defendants Must Record Reporting Time. . . . . . . . . . . . . . .  13

        c.  Defendants Must Identify All Hours Plaintiffs and Other
            Employees Work, Including Their Uncompensated Time. . . . . .  14

    3.  Defendants Do Not Maintain or Make Available Accurate Payroll or
        Production Records. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

C.  Plaintiffs Will Suffer Irreparable Harm Absent Preliminary Relief. . . . . . . .  18

D.  The Balance of Equities Tilts Sharply in Plaintiffs' Favor and an
    Injunction is in the Public Interest. . . . . . . . . . . . . . . . . . . . . . . . . .  20

E.  Plaintiffs Seek Narrow and Provisional Class Certification. . . . . . . . . . . .  21

F.    The Court Should Issue the Injunction Without the Posting of Any Bond . . . 24

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page(s)

*America Trucking Association v. City of L.A.*,
  559 F.3d 1046 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Brantley v. Maxwell-Jolly*,
  656 F. Supp. 2d 1161 (N.D. Cal. 2009). . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bresgal v. Brock*,
  843 F.2d 1163 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*California ex rel. Van de Kamp v. Tahoe Regional Planning Agency*,
  766 F.2d 1319, *as modified by* 775 F.2d 998 (9th Cir. 1985). . . . . . . . . . . . 24

*Cardenas v. McLane FoodServices, Inc.*,
  2011 U.S. Dist. LEXIS 68539 (C.D. Cal. June 23, 2011). . . . . . . . . . . . 15, 16

*Cupolo v. Bay Area Rapid Transit*,
  5 F. Supp. 2d 1078 (N.D. Cal. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
  92 F.3d 1486 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Elliot v. Spherion Pac. Work, LLC*,
  572 F. Supp. 2d 1169 (C.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . 18

*Independent Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*,
  572 F.3d 644 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*McKenzie v. Federal  Express Corp.*,
  765 F. Supp. 2d 1222 (C.D. Cal. 2011). . . . . . . . . . . . . . . . . . . . . . . . . 10

*Miller v. Carlson*,
  768 F. Supp. 1331 (N.D. Cal. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*National Center for Immigrants Rights, Inc. v. INS*,
  743 F.2d 1365 (9th Cir. 1984), *vacated*, 481 U.S. 1009 (1987). . . . . . . . . . . 22

*Ontiveros v. Zamora*,
  2009 U.S. Dist. LEXIS 13073 (E.D. Cal. Feb. 20, 2009). . . . . . . . . . 10, 15, 16

*Price v. City of Stockton*,
  390 F.3d 1105 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Sierra Forest Legacy v. Rey*,
  577 F.3d 1015 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Smith v. Ceva Logistics U.S., Inc.*,
  2011 U.S. Dist. LEXIS 111941 (C.D. Cal. Sept. 28, 2011). . . . . . . . . . . . . 19

*Stuhlbarg International Sales Co. v. John D. Brushy & Co.*,
    240 F.3d 832 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Thomas v. Johnston*,
    557 F. Supp. 879 (W.D. Tex. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Winter v. Natural Resource Defense Council, Inc.*,
555 U.S. 7 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 20

*Zepeda v. INS*,
    753 F.2d 719 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**STATE CASES**

*Armenta v. Osmose, Inc.*,
    135 Cal. App. 4th 314 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Cicairos v. Summit Logistics, Inc.*,
    133 Cal. App. 4th 949 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gould v. Maryland Sound Industries, Inc.*,
    31 Cal. App. 4th 1137 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Heritage Residential Care, Inc. v. DLSE*,
    192 Cal. App. 4th 75 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 18

*Home Depot U.S.A., Inc. v. Superior Court*,
    191 Cal. App. 4th 210 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kerr's Catering Service v. Department of Industrial Relations*,
    57 Cal. 2d 319 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*Martinez v. Combs*,
    49 Cal. 4th 35 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Murphy v. Kenneth Cole Productions, Inc.*,
    40 Cal. 4th 1094 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Smith v. Superior Court*,
    39 Cal. 4th 77 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United Parcel Service, Inc. v. Superior Court*,
    196 Cal. App. 4th 57 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**FEDERAL STATUTES AND RULES**

29 C.F.R. §516.2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

IWC Wage Order 9-2001 §7(A)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17

29 U.S.C.
    §§201, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    §211(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 17

§215(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

Fed. R. Civ. P.
    Rule 23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    Rule 23(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    § 65. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    § 65(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9
    § 65(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# STATE STATUTES

Calif. Labor Code
    §226. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    §226(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    §226(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 17, 23
    §226(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17
    §1174. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    §1174(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    §1194. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    §1194.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    §1198. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Bus. & Prof. Code §17203. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs are warehouse workers whose wages are paid by defendants in an unexplained lump sum, unaccompanied by any statement listing the number of hours worked or a comprehensible basis for the wages provided.  Defendants have repeatedly denied the workers' requests for basic information that would allow them to make sense of the pay they receive under defendants' supposedly piece-rate compensation scheme, and responded to many of these requests with threats and retaliation.  *E.g.,* Declaration of Jose Martinez Arceo ("Arceo Dec.") ¶¶6-7, 10-11,13-14 & Exhibit; Declaration of Juan Chavez ("Chavez Dec.") ¶¶3-4, 6 & Exhibit.

On October 12, 2011, the Department of Industrial Relations, Division of Labor Standards Enforcement ("DLSE") conducted an unannounced on-site investigation of warehouses operated by defendants Schneider Logistics ("Schneider"), Premier Warehousing Ventures and Rogers-Premier Unloading Services (together, "Premier"), and Impact Logistics ("Impact").  The DLSE found widespread legal violations.  For example, Premier was unable to produce any payroll records to the DLSE in violation of California Labor Code § 1174(d).  Declaration of Michael Rubin ("Rubin Dec."), Exh. B.  The only itemized wage statements Impact was able to produce "contain[ed] inaccurate or incomplete information," in violation of Labor Code §226(a).  *Id.*  Even now, defendants continue to violate California recordkeeping and disclosure laws by issuing wholly inadequate wage statements and refusing to reveal production information that would explain the basis for plaintiffs' supposedly piece-rate based pay.  Declaration of Daniel Lopez ("Lopez Dec.")  ¶¶10-11 (denial of production information); Arceo Dec. ¶¶10-13 (same); Chavez Dec. ¶¶3,6 (same); Dec. of Armando Esquivel ("Esquivel Dec.") ¶¶5-6 (same); Supplemental Dec. of Juan Chavez ("Supp. Chavez Dec.") ¶3 & Exhibit (attaching wage statement from second payday after DLSE inspection); Supplemental Dec. of Jose Martinez Arceo ("Supp. Arceo Dec.") ¶3 & Exhibit (same).  Plaintiffs' only recourse is this Court.

1    On October 17, 2011, the six named plaintiffs – each of whom are or were

2    defendants' employees who load and unload trucks and perform a broad range of other

3    warehouse work – filed this lawsuit on behalf of themselves and all similarly-situated

4    warehouse workers.  These employees regularly work more than 12 hours per day, six

5    or seven days per week.  Plaintiffs allege in the Complaint, *inter alia*, that defendants

6    fail to compensate them and the class for all hours they work, and routinely violate

7    overtime and meal and rest break requirements.  Plaintiffs further allege that these

8    violations are part of an unlawful conspiracy and scheme to reduce labor costs and

9    exploit warehouse workers by making it impossible for those workers to know what

10   they are entitled to be paid or how their pay was calculated.

11   Defendants do not comply with the requirements of Labor Code § 226(a), which

12   requires employers paying on a "piece rate" basis to provide an itemized wage statement

13   to their workers showing, among other information, the number of hours worked and

14   piece rate information.  Nor do defendants comply with other state and federal laws

15   requiring employers to keep accurate records.  *E.g.*, 29 U.S.C. §§211(c) & 215(a); 29

16   C.F.R. §516.2(a); Cal. Labor Code §1174(d);  IWC Wage Order 9-2001 §7.

17   Compliance with these record-keeping provisions is *mandatory*.  *Heritage*

18   *Residential Care, Inc. v. DLSE*, 192 Cal. App. 4th 75, 80-81 (2011) (finding Labor Code

19   §226 requirements to be "mandatory"); Cal. Labor Code §1174(d) (employers "shall .

20   . .[k]eep . . . records showing the hours worked daily"); 29 C.F.R. §516.2(a) (employers

21   "shall maintain and preserve . . . records containing . . . [h]ours worked").

22   The purpose of these and other requirements discussed below is to enable workers

23   to assess whether they are being compensated properly for all of the hours they work.

24   Compliance is especially important where the employer chooses to pay its workers not

25   on a straightforward hourly basis, but by employing confusing and complicated piece

26   rate systems like those used by defendants here.  The potential for mistakes (at best) and

27   wage theft (at worst) is heightened when the employer does not record hours and does

28   not disclose information such as the hours worked, piece rate, and pieces completed –

legally-required disclosures that employees, government enforcement agencies, and courts rely upon in determining the full extent to which an employer may be violating wage-and-hour law.  Plaintiffs seek immediate relief because they cannot afford to wait until the end of this lawsuit to know whether they are receiving all the wages owed for the back-breaking work they will be doing this week and in the months to come.  For these plaintiffs, every paycheck matters.

By this *ex parte* application, plaintiffs request that the Court require defendants immediately to: (1) provide itemized wage statements that disclose the number of hours worked, the piece rate formula and all of its components, and all other information that Labor Code §226(a) mandates; (2) accurately record the hours that employees are suffered or permitted to work as required by Labor Code §1174(d), IWC Wage Order 9-2001 §7(A)(3), and 29 C.F.R. §516.2(a), including by recording meal breaks, split shifts, days on which employees are sent home after reporting to work, and hours spent on both piece-rate and non-piece-rate work; and (3) maintain and make available to employees upon reasonable request all legally-required payroll and production records, as required by Labor Code §226(b) and IWC Wage Order 9-2001 §7(A)(6).

## II.  LEGAL AND FACTUAL BACKGROUND

### A.    Plaintiffs Work Long Hours in Defendants' Warehouses

Defendants Schneider, Premier, and Impact operate three warehouses in the Inland Empire known as Building 1, Building 4, and Building 5.  Chavez Dec. ¶2; Arceo Dec. ¶2.  Plaintiffs and hundreds of other similarly situated workers perform a variety of physically demanding duties in the warehouses, including loading and unloading trucks; breaking down pallets; and cleaning the warehouses.  Esquivel Dec. ¶3; Dec. of Evaristo Morales ("Morales Dec.") ¶3; Dec. of Everardo Carrillo ("Carrillo Dec.") ¶9. Defendants frequently require these warehouse employees to work six or seven days per week, and their workdays often exceed eight hours per day.  In the "blitz" period before the Christmas retail season, and then again in February-March, defendants typically require their employees to work seven days a week for 12 or more

1   hours per day.  Chavez Dec. ¶10; Esquivel Dec. ¶7, 9; Morales Dec. ¶6; Arceo Dec. ¶¶4,
2   16; Carrillo Dec. ¶15.

3   **B.**   **Defendants Pay Their Employees According to an Undisclosed, Supposed**
4   **Piece Rate Formula**

5   Five of the named plaintiffs – Everardo Carrillo, Fernando Chavez, Eric Flores,
6   Jose Martinez Arceo and Baltazar Zavala – are current or former employees of
7   Schneider and Premier ("Schneider-Premier employees").  The main job of these
8   Schneider-Premier employees has been to *load* boxes into trucks, although they are also
9   required to perform a variety of other tasks, such as sweeping the warehouses, stacking
10  pallets, attending meetings, and unloading trucks that are overloaded.  Lopez Dec. ¶8;
11  Arceo Dec. ¶9; Carrillo Dec. ¶9.

12  Juan Chavez is a current employee of Schneider and Impact ("Schneider-Impact
13  employee").  The Schneider-Impact employees' main job is to *unload* boxes from
14  trucks, although, like the Schneider-Premier employees, they are also required to
15  perform a variety of other tasks.  Chavez Dec. ¶3.

16  Before 2010, defendants paid the Schneider-Premier employees on an hourly
17  basis.  Lopez Dec. ¶3; Arceo Dec. ¶6.  Schneider-Premier then abandoned the hourly
18  pay system and started paying employees on a confusing and ill-defined "piece rate"
19  basis. In approximately February 2010, the Schneider-Premier supervisors called an all-
20  worker meeting and explained that employees would no longer be paid by the hour.
21  Instead, they would be paid according to a formula supposedly based on the total
22  number of trucks that were fully loaded in a given shift.  Lopez Dec. ¶7; Carrillo Dec.
23  ¶7; Arceo Dec. ¶7.  Under this formula, all Schneider-Premier employees who worked
24  that shift in two or three then-operating warehouses would share in the total amount
25  allocated by defendants for all trucks fully loaded during the shift.  No more details
26  were provided.  *Id.*

27  California law requires employers to provide accurate, detailed pay information
28  at the time of payment of wages (Cal. Labor Code §226(a)) and upon any worker's

request (Cal. Labor Code §226(b)).  Defendants have failed and refused to provide this information to the Schneider-Premier employees since unilaterally imposing the new pay scheme in February 2010.  Defendants do not tell the workers the precise piece rate formula upon which their pay is supposedly calculated; do not disclose the piece rates for any trucks loaded or unloaded; do not reveal how many trucks are completed during any particular shift; and do not disclose the identity, number, or location of the other employees with whom the supposed "group" piece rate per completed truck is shared. Lopez Dec. ¶¶10-11; Carrillo Dec. ¶¶10-11; Arceo Dec. ¶¶10-11.

Defendants have paid the Schneider-Impact employees as well on a supposed "piece rate" basis for several years, and defendants similarly provide no basis for those employees to determine how their pay is calculated.  Chavez Dec. ¶3; Esquivel Dec. ¶5. Defendants' "piece" rate for Schneider-Impact employees supposedly varies depending on the size of the truck and possibly the number of boxes unloaded; but defendants do not provide employees with rate sheets or other documents that show how much any worker should earn or has earned per truck.  *Id.*

Under the purported piece rate pay schemes, defendants do not pay the workers for *any* time spent performing non-piece rate work.   Instead, defendants only compensate employees on some undisclosed basis, for work on trucks whose loading or unloading has been fully completed on that employee's shift.  Lopez Dec. ¶9; Chavez Dec. ¶5; Carrillo Dec. ¶9; Lopez Dec. ¶9; Arceo Dec. ¶9.  For example, if an employee spends two hours waiting at the warehouse for a truck to arrive, five hours unloading or loading boxes, and one hour sweeping, the employee is paid only for the time he spent unloading or loading boxes – and only if the particular truck was completely filled or emptied before the end of that worker's shift.

Defendants do not disclose the required pay or piece rate information on the employees' itemized wage statements. The Schneider-Impact wage statements purport to list the employee's hours and the piece rate, but these numbers bear no relation to reality.  For example, Mr. Chavez's wage statement for the week ending October 9,

2011, states that he worked 592.5 hours, and that the piece rate is $1, so he earned $592.50 for piece rate work that week. Chavez Dec. Exhibit at 6. This calculation makes no sense for a variety of reasons, including that Mr. Chavez could not possibly have worked 592.5 hours during a seven-day period (592.5 hours divided by seven days is about 85 hours per day). The number 592.5 does not correspond to the number of boxes Mr. Chavez unloads in a week (he unloads more than 600 in a few hours), nor the number of trucks he unloads (he could not unload more than 100 in a week), nor anything else. Further, no one has ever told Mr. Chavez that a piece rate of $1 is assigned to any work he performs, such as unloading boxes. The wage statement also claims that Mr. Chavez worked one hour that week at the rate of $8.50, but no one has ever told him that he is paid hourly for any of his work. Chavez Dec. ¶4.

In addition to containing inaccurate information about the number of hours worked and the piece rate, the Schneider-Impact wage statements do not set forth the hourly rate of pay, the number of pieces completed (e.g., the number of trucks unloaded or boxes moved), or the piece rate formula. Morales Dec. ¶8 & Exhibit; Chavez Dec. ¶4 & Exhibit. On October 12, 2011, the DLSE inspected defendants' warehouses and issued a citation to Impact for paying its employees with "itemized wage statements containing inaccurate or incomplete information" and issued a fine for $499,000. Rubin Dec. Exh. B. Still, the violations continue unabated, as more recent paystubs confirm. Supp. Chavez Dec. Exhibit.

The Schneider-Premier pay stubs similarly fail to disclose crucial legally-required information. Those wage statements contain only the employee's gross earnings, deductions, and net earnings. Arceo Dec. ¶6 & Exhibit; Lopez Dec. ¶6 & Exhibit; Carrillo Dec. ¶6 & Exhibit. They do not set forth the total number of hours that the employee worked during the pay period, the hourly rate of pay, the piece rate (that is, the per truck rate), the number of pieces completed (that is, the number of trucks fully completed), or the piece rate formula. The Schneider-Premier wage statements also fail

---

to state the addresses of the employers and do not disclose the inclusive dates of the period for which the employee is being paid. *Id.*

On October 12, 2011, the DLSE issued Premier a "Notice to Discontinue Labor Law Violations" finding that Premier failed to maintain its records in California. Rubin Dec. Exh. B.  Although DLSE has issued citations, DLSE has not sought injunctive relief.  Nor have defendants begun providing more, legally required information on the workers' paystubs since the investigation and citations.  Supp. Arceo Dec. Exhibit.

## C.   Defendants Fail to Provide the Warehouse Employees With the Information Necessary to Determine Whether They Are Paid Correctly

Plaintiffs and their fellow workers have tried to determine how their paychecks are calculated under defendants' claimed piece rate scheme, to no avail.  Defendants do not provide plaintiffs or other Schneider-Premier or Schneider-Impact employees access to production records or piece rates, or any other information necessary to calculate their pay. Lopez Dec. ¶¶10-11; Arceo Dec. ¶¶10-13; Chavez Dec. ¶¶3,6; Esquivel Dec. ¶¶5-6.  Indeed, "lead" workers, who are the only workers with access to the piece rate documentation, are instructed *not* to provide the rates to non-lead workers, and are disciplined if they defy this instruction.  Morales Dec. ¶5.

When plaintiffs or other employees have asked about their pay or to see production records, their supervisors have responded with abusive language, threatened to fire them, or retaliated by not giving them work for days.  When Mr. Arceo raised a question about the amount of his missing pay with his supervisor, his supervisor responded with abusive language and labeled him a "complainer." Arceo Dec. ¶13.  Mr. Arceo has witnessed his supervisor yelling at several other coworkers who asked for information about how their pay is computed, and has witnessed many instances in which coworkers who asked questions about their pay were fired or sent home. *Id.* ¶14. Similarly, when Mr. Lopez asked his supervisors for information about the piece rate formula, they laid him off for several days. Lopez Dec. ¶11. When Armando Esquivel thought his pay was short and asked his supervisor about it, his supervisor responded,

1  "I have a pile of job applications on my desk more than a foot high, if you don't like this

2  job, you can go home." Esquivel Dec. ¶6.  When Juan Chavez and other Schneider-

3  Impact employees ask about their pay, their supervisors say, "If you don't like it, you

4  can hit the door." Chavez Dec. ¶6.

5  **D.**    **Defendants Do Not Accurately Record the Hours Their Employees Work**

6          Defendants not only affirmatively conceal information about the piece rate

7  formula that they are legally required to provide, but they also fail to accurately record

8  the hours that their employees work as California law (including IWC Wage Order 9-

9  2001 §7) requires.  Before 2010, when the Schneider-Premier employees were paid

10  hourly, defendants tracked their hours by requiring the workers to punch in and out

11  using electronic clocks. Lopez Dec. ¶5; Carrillo Dec. ¶5.  When defendants introduced

12  the supposed piece rate pay scheme, they instructed plaintiffs and their co-workers to

13  stop using those clocks.  Carrillo Dec. ¶8.  Since then, defendants have required

14  Schneider-Premier employees to write their names down on a sheet of paper but not to

15  record start or end times; supervisors then fill in the blanks, fabricating the hours

16  supposedly worked and making it appear that the employees are working fewer hours

17  than they actually work.  Carrillo Dec. ¶8; Lopez Dec. ¶8; Arceo Dec. ¶8.

18          Defendants similarly fabricate the hours "recorded" for the Schneider-Impact

19  employees.  Although some Schneider-Impact employees sign in and out with a security

20  guard, none of these hours are recorded for purposes of payroll.  Chavez Dec. ¶7.

21  Instead, the "lead" Schneider-Impact employees are instructed to write down the

22  workers' hours, and to record many fewer hours than are actually worked.  Morales Dec.

23  ¶4; Esquivel Dec. ¶4.

24          Nor do defendants keep records of workers who are required to report to work,

25  but who are then sent home because there is not enough work for all of them.  Lopez

26  Dec. ¶12. Defendants require all employees to report to work very early in the morning,

27  but send some of those employees home if there is not enough work for everyone.

28  Employees typically are required to wait between 30 minutes and 1.5 hours before being

sent home.  Arceo Dec. ¶8.  Schneider-Impact employees used to be guaranteed a minimum payment of $20 for every day they were required to report to work, but since 2006 this "reporting time" pay has been eliminated, and defendants do not record the days on which Schneider-Impact employees are required to report to work the morning and then sent home.  Morales Dec. ¶7.  Schneider-Premier employees similarly are not paid for any days they report to work but are then sent home, and their reporting time is not recorded.  Arceo Dec. ¶15; Carrillo Dec. ¶14.

### III.  RELIEF SOUGHT

Plaintiffs seek a TRO and Order to Show Cause re: Preliminary Injunction requiring defendants, as well all those "in active concert or participation with" them under F.R.C.P. 65(d), immediately to: (1) provide lawful itemized wage statements to their employees that set forth, *inter alia*, the true number of hours worked and information about the piece rate; (2) accurately record the hours that employees work, including recording days that employees are sent home after reporting to work and tracking hours spent on both piece rate and non-piece rate work; and (3) maintain and make available to employees upon reasonable request all legally-required payroll and production records, including the piece rates for fully loaded and unloaded trucks; the number of trucks fully loaded or unloaded in each shift; and the number, identity, and location of all employees sharing in a given piece rate.

### IV.  LEGAL ARGUMENT

**A.**   **Applicable Legal Standards**

The standards for issuing a TRO and a preliminary injunction are "substantially identical."  *Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A plaintiff "'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Am. Trucking Ass'n v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*

1  *v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Sierra Forest Legacy*

2  *v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009).

3  **B.   Plaintiffs are Likely to Prevail on Their Claims**

4      As set forth above, at this preliminary stage, plaintiffs seek narrow relief based

5  on a subset of claims included in the Complaint.  Plaintiffs are likely to prevail on the

6  legal claims underlying the three requested categories of relief.  This section addresses

7  each category in turn.

8      **1.   Defendants Fail to Provide Lawful Itemized Wage Statements**

9      First, plaintiffs request that the Court require defendants to begin providing

10  itemized wage statements to their employees that set forth all legally-required

11  information, including the number of hours actually worked and information about the

12  piece rate formula's components and calculation.  *See* Complaint, Eighth Claim for

13  Relief.

14      Labor Code §226(a) requires employers at the time of paying wages (here,

15  weekly) to provide employees with an itemized written statement showing, *inter alia*,

16  (1) the total hours worked by the employee, (2) the number of piece rate units earned,

17  (3) the applicable piece rate, (4) the employer's name and address, (5) all applicable

18  hourly rates in effect during the pay period and the corresponding number of hours

19  worked at each hourly rate by the employee, and (6) the inclusive dates of the period for

20  which the employee is paid.  Further, "in the event the employee is paid by the piece rate

21  basis, the employer must list the piece rate formula."  DLSE Enforcement Manual,

22  Section 41.2.2.  *See* Pl. Request for Judicial Notice Exh. A (DLSE Enforcement

23  Manual); *Ontiveros v. Zamora*, 2009 U.S. Dist. LEXIS 13073, *7-8 n.3 (E.D. Cal. Feb.

24  20, 2009) (court may take judicial notice of DLSE Enforcement Manual).

25      The requirements of Labor Code §226 are "mandatory," and "[a]n employer's

26  failure to comply constitutes a statutory violation."  *Heritage Residential Care, Inc. v.*

27  *DLSE*, 192 Cal. App. 4th at 80-81; *see also McKenzie v. Fed. Express Corp.*, 765 F.

28  Supp. 2d 1222, 1228-31 (C.D. Cal. 2011) (granting summary judgment to employee

where wage statements showed *prima facie* violations of Labor Code §226(a)); *Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 960-61 (2005) (wage statements must clearly state precise number of hours worked). The policy behind Labor Code §226 "is simple enough – it is designed to provide the employee with a record of hours worked, and to assist the employee in determining whether he has been compensated properly for all of his or her hours worked." DLSE Opinion Letter (May 17, 2002) at 3. *See* Pl. Request for Judicial Notice Exh. C at 3. Labor Code §226(g) expressly provides that "[a]n employee may . . . bring an action for injunctive relief to ensure" compliance with the record-keeping requirements of §226(a).

Here, the employees' wage statements show on their face that defendants are violating Labor Code §226(a). *See* Section II.B, *supra*. The Schneider-Premier employees' statements do not list the number of hours worked, the hourly rate of pay, the number of pieces completed, the applicable piece rate, or the piece rate formula. Those statements fail even to list the employers' addresses and do not disclose the inclusive dates of the period for which the employees are paid. The Schneider-Impact employees' wage statements similarly do not state the piece rate formula, and the information about employee hours and the piece rate on those statements is fictional and nonsensical. Indeed, the DLSE found in its citation to Impact that the "itemized wage statements contain[] inaccurate or incomplete information." Rubin Dec. Exh. B. Given that the wage statements are legally deficient on their face, plaintiffs will likely prevail on their Eighth Claim for Relief for violation of Labor Code §226.

## 2. Defendants Do Not Accurately Track or Record The Hours Their Employees Work

Second, plaintiffs request that the Court require defendants to accurately record the actual hours that employees work, and identify all hours spent on both piece rate and non-piece rate work, including all time employees are "suffered or permitted" to work (*see Martinez v. Combs*, 49 Cal. 4th 35 (2010)), and all instances when defendants required employees to report to work but sent them home without pay.

Labor Code §1194.5 authorizes injunctions where an employer has willfully violated laws governing wages, hours, or working conditions. California Bus. & Prof. Code §17203 permits injunctions against persons who engage in unfair competition. Both statutes support an injunction pursuant to the state record-keeping claim as alleged in the Seventh Claim for Relief, the state reporting time claim as alleged in the Sixth Claim for Relief, and the state minimum wage claim as alleged in the Third Claim for Relief. Section 17203 also supports an injunction with respect to the federal record-keeping provisions alleged in the First Claim for Relief. We explain the legal claims below.

### a. Defendants Must Accurately Record Hours, Meal Breaks, and Split Shift Intervals

State and federal law require employers to maintain and preserve accurate records showing, *inter alia*, when the employee begins and ends work each day; the total number of hours worked on a daily basis; and all meal periods and split shift intervals. *See* 29 U.S.C. §§201, *et seq.*, including 29 U.S.C. §§211(c) & 215(a); 29 C.F.R. §516.2(a); Cal. Labor Code §1174(d);   IWC Wage Order 9-2001 §7.   These requirements are mandatory. Labor Code §1174(d) provides: "Every person employing labor in this state *shall . . .[k]eep*, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by . . . employees employed at the respective plants or establishments." 29 C.F.R. §516.2(a) provides that: "Every employer *shall maintain and preserve* payroll or other records containing [*inter alia*] . . . [h]ours worked each workday and total hours worked each workweek." IWC Wage Order 9-2001 §7(3) provides: "Every employer *shall keep* accurate information with respect to each employee including. . . [t]ime records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded." (Emphasis added throughout.)

Here, plaintiffs are likely to prevail on their claims that defendants violated these provisions because defendants do not even make any pretense of accurately recording when the employees actually begin and end work (as defined by law), the total number of hours worked, or any meal periods provided or split shift intervals required.  After defendants' piece rate system went into effect in early 2010, defendants instructed the Schneider-Premier employees to stop using the existing electronic punch clocks to record their time.   Instead, supervisors began routinely falsifying the workers' handwritten records to make it appear that the Schneider-Impact employees worked fewer hours than they actually work.  *See* Section II.D, *supra*.  Defendants have *no* system in place to record hours or meal breaks; and any "hours" that appear on workers' pay stubs are a complete fiction.  Defendants are wrongfully concealing from their employees – and government enforcement agencies and courts – how many hours their employees actually work, which is a violation of both state and federal law.

### b.  Defendants Must Record Reporting Time

California law also requires defendants to record (or pay for) the days on which they require plaintiffs and other employees to report to work, but then send the workers home without pay.  IWC Wage Order 9-2001 §5(A), entitled "Reporting Time Pay," provides:

> Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage.

Labor Code §1198 makes it unlawful for employers to implement any pay practices or working conditions that are contrary to those mandated by the IWC Wage Orders.  *Home Depot U.S.A., Inc. v. Superior Court*, 191 Cal. App. 4th 210, 220 (2010).  Here, because the Wage Order mandates that employers pay employees for reporting time,

1 defendants should be required to maintain contemporaneous records of days that they
2 require their employees to report to work but then send workers home without pay.

3      Schneider-Premier and Schneider-Impact employees are routinely required to
4 report to work early in the morning and then sent home, sometimes after considerable
5 waiting time. *See* Section II.D, *supra*. Defendants do not record or pay for that "work"
6 time. Indeed, the DLSE cited Premier for violating IWC Wage Order 9-2001 §5(A),
7 which requires employers to pay their employees for reporting time. Rubin Dec. Exh.
8 B. Plaintiffs are therefore likely to prevail on their Sixth Claim for Relief for reporting
9 time violations, and the Court should require defendants immediately to begin recording
10 that time.

11      **c.**    **Defendants Must Identify All Hours Plaintiffs and Other**
12      **Employees Work, Including Their Uncompensated Time**

13      Plaintiffs also request that the Court require defendants to begin identifying all
14 hours their employees work, as defined by California law, including all time spent on
15 duties that do not involve loading or unloading trucks. Plaintiffs are entitled to this
16 relief because they are likely to prevail on their claim that defendants' supposed piece
17 rate pay scheme does not compensate workers for all hours worked, in violation of
18 California minimum wage law (Labor Code §1194).

19      Under California law, employers are required to compensate their employees for
20 each hour worked at the minimum wage or higher. Unlike the federal statutory scheme,
21 in which total weekly wages are divided by total weekly hours to determine whether the
22 average wage exceeds the Fair Labor Standards Act ("FLSA") minimum, California law
23 does not permit *any* time to be uncompensated. *Armenta v. Osmose, Inc.*, 135 Cal. App.
24 4th 314, 317, 324 (2005) (rejecting federal "averaging" methodology and finding
25 California minimum wage violation where employer paid employees only for
26 "productive" work, or time spent performing work "directly related to maintaining
27 utility poles in the field," but not for "nonproductive" work, or time spent performing

28

1    tasks like driving, picking up supplies, and completing paperwork).  As the Court of

2    Appeal explained in *Armenta*:

> 3    A review of our labor statutes reveals a clear legislative intent to protect
>
> 4    the minimum wage rights of California employees to a greater extent than
>
> 5    federally. . . .  While the averaging method utilized by the federal courts to
>
> 6    assess whether a minimum wage violation has occurred may be appropriate
>
> 7    when considered in light of federal public policy, it does not advance the
>
> 8    policies underlying California's minimum wage law and regulations.
>
> 9    California's labor statutes reflect a strong public policy in favor of full
>
> 10   payment of wages for all hours worked.  We conclude, therefore, that the
>
> 11   FLSA model of averaging all hours worked "in any work week" to
>
> 12   compute an employer's minimum wage obligation under California law is
>
> 13   inappropriate.

14   *Id*. at 324.

15       This established principle of California minimum wage law was applied in the

16   piece-rate production context in *Ontiveros v. Zamora*, 2009 U.S. Dist. LEXIS 13073,

17   and *Cardenas v. McLane FoodServices, Inc.*, 2011 U.S. Dist. LEXIS 68539 (C.D. Cal.

18   June 23, 2011).  In both cases, the courts held that a piece rate pay system under which

19   employees are paid only for hours spent performing piece work, but not for hours spent

20   performing non-piece rate work, violates California's minimum wage law.

21       In *Ontiveros*, a car repair shop paid its mechanics a piece rate for each type of car

22   repair, but did not pay for the time they spent attending meetings, setting up their work

23   stations, and taking state-mandated rest breaks.  *Ontiveros*, 2009 U.S. Dist. LEXIS

24   13073, at *7.  In *Cardenas*, a motor carrier paid its truck drivers under a piece rate

25   formula that compensated them only for driving and delivering goods, but not for time

26   spent performing safety checks, filling out paperwork, and waiting for customers.

27   *Cardenas*, 2011 U.S. Dist. LEXIS 68539, at *2.  Relying on *Armenta*, the courts in both

28   cases held that the employer's piece rate compensation system violated California's

minimum wage law because it did not compensate the employees for every hour worked. *Ontiveros*, 2009 U.S. Dist. LEXIS 13073, at *11 (holding that pay scheme under which "an employee is compensated for non-piece rate hours with wages accrued during piece hours" violates California law); *Cardenas*, 2011 U.S. Dist. LEXIS 68539, at *14-15 ("[A] piece-rate formula that does not compensate directly for all time worked does not comply with Labor Codes, even if, averaged out, it would pay at least minimum wage for all hours worked.").

Here, defendants' piece rate pay scheme compensates employees only for work on trucks that are completely filled or unfilled during that worker's shift. *See* Section II.B, *supra*. As in *Ontiveros* and *Cardenas*, defendants do not compensate employees for any time spent performing non-piece rate work, such as attending meetings, sweeping and cleaning the warehouses, stacking pallets, breaking down pallets, and removing trash – or working on trucks near the end of a shift, when they are unable to complete the "piece." Carrillo Dec. ¶9; Arceo Dec. ¶9; Lopez Dec. ¶9. Plaintiffs are likely to prevail on their claim that this pay scheme violates California law. For now, though, plaintiffs simply ask the Court to order defendants immediately to begin keeping track of *all* time on all tasks performed, whether that time is included in the supposed "piece rate" or not.

### 3. Defendants Do Not Maintain or Make Available Accurate Payroll or Production Records

Finally, plaintiffs request that the Court order defendants to maintain and make available to employees upon reasonable request all legally-required payroll and production records, including the piece rates for fully loaded and unloaded trucks; the number of trucks fully loaded or unloaded in each shift; and the number, identity, and location of all employees sharing in a given piece rate. California law requires employers who use a piece rate compensation system to maintain payroll and production records at the place of employment or at a central location within the state. Cal. Labor Code §1174(d); IWC Wage Order 9-2001 §7(A)(6) ("When a piece rate or incentive

1   plan is in operation, piece rates or an explanation of the incentive plan formula shall be

2   provided to employees. An accurate production record shall be maintained by the

3   employer.").

4       Federal law similarly requires every employer to maintain and preserve payroll

5   records containing detailed information, including "[h]ours worked each workday and

6   total hours worked each workweek," and "[t]otal daily or weekly straight-time earnings

7   or wages due for hours worked during the workday or workweek." 29 C.F.R. §516.2(a);

8   *see also* 29 U.S.C. §211(c).

9       California law grants mandatory record inspection rights to employees. Labor

10  Code §226(b) provides: "An employer that is required by this code or any regulation

11  adopted pursuant to this code to keep the information required by subdivision (a) shall

12  afford current and former employees the right to inspect or copy the records pertaining

13  to that current or former employee, upon reasonable request to the employer."

14  (Subdivision(a) is discussed *supra* in Section IV.B.1.) Similarly, the DLSE interprets

15  IWC Wage Order 9-2001 §7(A)(6) to mean that "the employer must keep an accurate

16  production record (including commission or piece rate calculation) and make that record

17  available to the employee upon reasonable request." *See* DLSE Enforcement Manual

18  41.2.2, which is Exh. A to Pl. Request for Judicial Notice.

19      Here, defendants have rejected the requests of several employees to obtain this

20  information. *See* Section II.C, *supra*. Instead, supervisors have responded to these

21  requests by yelling at the requesting employees, firing them, and laying them off. *Id.*

22  Defendants have not been keeping the required payroll or production records, and have

23  not been making those records available to employees to inspect. Given these facts,

24  plaintiffs are likely to prevail on their claims that defendants are failing to maintain and

25  make available payroll and production records in violation of Labor Code §§226 &

26  1174, IWC Wage Order 9-2001 §7, and 29 C.F.R. §516.2(a).

27      An injunction is authorized by Labor Code §§226(g) and 1194.5, and Bus. &

28  Prof. Code § 17203.

## C.   **Plaintiffs Will Suffer Irreparable Harm Absent Preliminary Relief**

Courts recognize several harms that result from an employer's violation of record-keeping requirements, including "the possibility of [workers] not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked." *Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169, 1181 (C.D. Cal. 2008) (citations omitted); *see Heritage Residential Care, Inc. v. DLSE*, 192 Cal. App. 4th at 86 (one purpose of wage statements is to "provide clear, unequivocal notice to the employee of exactly what they are being paid for").

Here, the plaintiff-class is particularly vulnerable to all of these harms. As their paystubs show, they are all low-wage workers. If the Court does not immediately require defendants to start keeping records and provide wage statements that comply with the law, it is extremely likely that these employees will be forced to incur substantial hardships, delays, and costs – including the costs of attorneys and expert consultants in proving the extent to which defendants have deprived them of statutorily mandated wages.

Plaintiffs and the class members simply cannot afford to be denied wages they are due, or to suffer further delays before they are properly paid. Daniel Lopez is the sole support for his wife and four children; he needs every last dollar in his paycheck to cover rent and basic expenses. Lopez Dec. ¶15. Juan Chavez also helps support his family, and he and his wife are unable to cover basic expenses when Mr. Chavez is not paid what he is owed. Chavez Dec. ¶12. Jose Martinez Arceo lives paycheck to paycheck. He supports his wife and child, and when his paychecks are short, he is sometimes unable to pay rent or cover basic expenses. Arceo Dec. ¶18. Armando Esquivel also supports his family, and when his pay is short, it has destabilizing effects on his family and they "struggle[] to pay for rent, food and for the things the kids need[]." Esquivel Dec. ¶10. This Court has recognized that "'wages are not ordinary

debts, . . . and that because of the economic position of the average worker . . . it is essential to the public welfare that he receive his pay when it is due.'" *Smith v. Ceva Logistics U.S., Inc.*, 2011 U.S. Dist. LEXIS 111941, *8-9 (C.D. Cal. Sept. 28, 2011) (quoting *Smith v. Superior Court*, 39 Cal.4th 77, 82 (2006)). *See also Kerr's Catering Service v. Dept. of Industrial Relations*, 57 Cal. 2d 319, 326 (1962) (since at least 1918, state courts have recognized that "[d]elay of payment or loss of wages results in deprivation of the necessities of life, suffering inability to meet just obligations to others, and, in many cases may make the wage-earner a charge upon the public." (citation omitted)).

Further, if the Court does not enter an injunction, defendants will be able to continue to hide critical pay information that plaintiffs – and the Court – could use to determine more efficiently the extent to which defendants failed to pay plaintiffs and other warehouse workers all wages owed. The plaintiff class should not be required to wait until the end of this lawsuit, which could take years, for defendants to start keeping lawful records or providing lawful wage statements. Employees should not be forced to resort to their own record-keeping, using precious break time (on those rare instances it is provided) to scribble down dates and times worked. These employees are not sitting in offices in front of computers. Instead, they are performing constant, physically-demanding labor for hours and days on end inside sweltering truck containers. This is not an environment conducive to employees keeping their own records.

Requiring immediate record-keeping compliance is particularly important because it is currently the "blitz" period – that is, the three-month period preceding Christmas during which defendants typically require the warehouse employees to work seven days per week, often in excess of 12 hours per day. Another "mini-blitz" period will occur in February and March. Morales Dec. ¶6; Arceo Dec. ¶16; Esquivel Dec. ¶7. If the Court does not grant immediate relief, the best evidence of the hours that the plaintiff class worked and the wages they received during the blitz will be lost. For all these

1  reasons, plaintiffs and the class they represent will suffer irreparable harm if the Court
2  does not enter a TRO.

3  **D.    The Balance of Equities Tilts Sharply in Plaintiffs' Favor and an Injunction**
4  **is in the Public Interest**

5        The balance of equities tilts sharply in plaintiffs' favor, and entering a TRO is in
6  the public interest. *See Independent Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572
7  F.3d 644, 657-58 (9th Cir. 2009) (court may consider last two *Winter* factors together).
8  Plaintiffs request only that defendants be required to comply with the law. Defendants
9  can point to no hardships other than those associated with bringing their record-keeping
10 procedures into compliance with mandatory state and federal requirements. As the
11 DLSE has emphasized, the onus remains at all times on the employer, not the employee,
12 to keep accurate records. *See* Pl. Request for Judicial Notice Exh. B (DLSE Opinion
13 Letter (July 20, 1995)), at 2.

14      Moreover, defendants already have systems in place that should enable them
15 easily and with little expense to record the actual hours that their employees work.
16 Before Schneider-Premier changed to the piece rate system, they paid their employees
17 hourly and required all employees to punch in and out using electronic time clocks
18 stationed in the warehouses. Arceo Dec. ¶8; Carrillo Dec. ¶5. Given that this system
19 remains in place, defendants will suffer no undue hardship if the Court requires them
20 to continue using the punch clocks to record employee hours.

21      Further, any hardship that defendants may suffer is a problem of their own
22 making. Defendants have chosen to pay their employees according to a complicated,
23 confusing – and, we believe, spurious – piece rate system. Having made this decision,
24 defendants must devote whatever effort is necessary to bring their practices into
25 compliance with the law and to enable their employees to understand how they are being
26 paid.

27      Finally, the requested injunction is in the public interest. "California courts have
28 long recognized wage and hours laws concern not only the health and welfare of the

workers themselves, but also the public health and general welfare." *Gould v. Maryland Sound Industries, Inc.*, 31 Cal. App. 4th 1137, 1148 (1995) (citation and quotation marks omitted); *see also Kerr's Catering Services v. DIR*, 57 Cal.2d at 326-27 (discussing statutes and case law recognizing the public interest in full and prompt payment of employees' wages). Courts must construe labor statutes broadly to provide as much protection as possible to employees. *E.g.*, *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1103 (2007) ("[S]tatutes governing conditions of employment are to be construed broadly in favor of protecting employees.") (citations omitted); *United Parcel Service, Inc. v. Superior Court*, 196 Cal. App. 4th 57, 62 (2011) ("[I]n light of the remedial nature of legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, such provisions are to be liberally construed with an eye to promoting such protection.").

Entering a TRO will doubtless serve the long-established public policy of protecting employees from exploitation. This policy is particularly important in industries like the warehouse industry that employ low-wage workers, where the balance of power is heavily weighted in favor of the employer and against the employee. Here, an ongoing failure to keep records will substantially increase the likelihood that employees will not get paid in accordance with the law. Requiring defendants to comply with the record-keeping requirements of state and federal law will also enable government agencies and courts to better perform their functions as the enforcers of labor laws. The Court should require defendants to begin maintaining records so that the Court can more easily determine whether defendants are paying their employees correctly.

## E.   **Plaintiffs Seek Narrow and Provisional Class Certification**

The Court may enter the requested classwide injunctive relief at this preliminary stage, even without certifying a class, so long as it finds that the putative class members will face the same harm as plaintiffs. District courts "are empowered to grant

preliminary injunctions regardless of whether the class has been certified." *Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161, 1178 n.14 (N.D. Cal. 2009) (citation and quotation marks omitted) (granting class-wide preliminary injunction to Medicaid recipients before class certification); *see also Price v. City of Stockton*, 390 F.3d 1105, 1117-18 (9th Cir. 2004) (affirming preliminary injunction that benefitted displaced tenants beyond named plaintiffs); *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501-02 (9th Cir. 1996) (affirming classwide preliminary injunction before class was certified); *Bresgal v. Brock*, 843 F.2d 1163, 1169 (9th Cir. 1987); *but see Zepeda v. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1983) ("Without a properly certified class, a court cannot grant relief on a class-wide basis."); *National Center for Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1371-72 (9th Cir. 1984), *vacated*, 481 U.S. 1009 (1987).

Out of an abundance of caution, however, plaintiffs seek provisional certification of the following class, for purposes of the requested TRO and preliminary injunction only, under Fed. R. Civ. P. 23(a) and 23(b)(2):

> All individuals who applied for employment as a warehouse worker and were subsequently assigned to work, and did report for work during the applicable limitations periods, at one or more of defendants' Inland Empire warehouses in Mira Loma, California.

Pursuant to Rule 23 and its general equitable powers, the Court has authority to provisionally certify the class solely for purposes of entering preliminary injunctive relief. *See, e.g., Thomas v. Johnston*, 557 F. Supp. 879, 917 n.29 (W.D. Tex. 1983).

Plaintiffs easily meet the requirements of Rule 23(a), even at this preliminary stage. As to numerosity, there are approximately 100 Schneider-Impact employees and at least 80 Schneider-Premier employees working in the warehouses during any given shift. Chavez Dec. ¶9; Lopez Dec. ¶4. There are many times those numbers of former employees. The class members' identities may be ascertained from defendants' own records.

For purposes of the injunctive relief that plaintiffs now seek, there are several questions of law and fact common to the class, including:

(1) Whether defendants provide class members with accurate itemized wage statements as required by Labor Code §226;

(2) Whether defendants accurately record the hours that the class members work as required by state and federal law, including Labor Code §§226 and 1174 and 29 C.F.R. §516.2(a);

(3) Whether defendants violated IWC Wage Order 9-2001 §5 by failing to pay employees "reporting time pay" on days they were sent home after being required to report to work;

(4) Whether defendants' piece rate compensation system violates California minimum wage law; and

(5) Whether defendants maintain and make available to the employees upon reasonable request all legally-required payroll and production records as required by Labor Code §§226(a)-(b) & 1174(d); IWC Wage Order 9-2001 §7(A)(6); and 29 C.F.R. §516.2(a).

The claims of the named plaintiffs are typical of the claims of the class. All of the named plaintiffs are current or former employees in the three warehouses operated by defendants. They all received itemized wage statements that failed to comply with Labor Code §226(a). They were all supposedly paid on the basis of defendants' "piece rate" system. And, defendants did not accurately record hours for any of the named plaintiffs, or provide them with production information that would explain defendants' supposed "piece rate" system.

The named plaintiffs will adequately represent the interests of the class. They are willing and able to assist with the litigation, and have already spent hours meeting with counsel to advance the interests of the class. Chavez Dec. ¶11; Arceo Dec. ¶17; Carrillo Dec. ¶16. Furthermore, plaintiffs' counsel have extensive experience representing

1 employees in complex class action litigation.  Rubin Dec. ¶¶3-8; Traber Dec. ¶¶5-28;
2 Declaration of Janet Herold ¶¶2-4 & Exhibit.

3      At this stage, plaintiffs seek certification solely under Rule 23(b)(2), which
4 permits a class action to proceed where "the party opposing the class has acted or
5 refused to act on grounds generally applicable to the class, thereby making appropriate
6 final injunctive relief or corresponding declaratory relief with respect to the class as a
7 whole." Fed. R. Civ. P. 23(b)(2).  There is little question that defendants have acted on
8 grounds generally applicable to the class.  Defendants have failed to provide any class
9 member with itemized wage statements that comply with legally-mandated disclosure
10 requirements.  Defendants have failed to maintain any legally-compliant records for any
11 members of the class or to make their records available to any class member.  For these
12 reasons, the Court should provisionally certify the class for purposes of entering
13 preliminary relief.

14 **F.**   **The Court Should Issue the Injunction Without the Posting of Any Bond**

15      A temporary injunction issues upon the applicant's giving security "in such sum
16 as the court deems proper" to pay for the costs and damages that may be incurred by any
17 party who is later found "to have been wrongfully enjoined or restrained." Fed. R. Civ.
18 P. 65(c).  Courts have the discretion to dispense with the security requirement altogether
19 or to impose a nominal security when "requiring security would effectively deny access
20 to judicial review," especially when the likelihood of success on the merits favors little
21 or no bond. *California ex rel. Van de Kamp v. Tahoe Regional Planning Agency*, 766
22 F.2d 1319, 1325-26, *as modified by* 775 F.2d 998 (9th Cir. 1985); see also *Miller v.*
23 *Carlson*, 768 F. Supp. 1331, 1340-41 (N.D. Cal. 1991) (bond waived as plaintiffs are
24 "indigent persons" and the preliminary injunction "is consistent with public policy");
25 *Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078, 1086 (N.D. Cal. 1998) (minimal
26 $100 bond imposed for preliminary injunction in part because bond would cause
27 hardship to plaintiffs).

28

1    Both factors are present in this case.  The individual plaintiffs are all low-wage

2  workers, and cannot afford to post even nominal security.  Moreover, plaintiffs are

3  likely to prevail on the merits.  Granting a TRO is in the public interest.  The Court

4  should, in its discretion, dispense with the requirement of any bond.

5                              **V.  CONCLUSION**

6    For the foregoing reasons, plaintiffs respectfully request that the Court enter a

7  TRO and an Order to Show Cause re: Preliminary Injunction.

8

9  Dated: October 24, 2011              Respectfully submitted,

10

11                              By: _____/s/_____

12                                  LAUREN TEUKOLSKY

13

14                                  MICHAEL RUBIN
                                    JONATHAN WEISSGLASS
15                                  JENNIFER SUNG
                                    Altshuler Berzon LLP
16
                                    THERESA M. TRABER
17                                  LAUREN TEUKOLSKY
                                    Traber & Voorhees
18
                                    JANET HEROLD
19                                  Special Counsel to Change to Win, CLC

20

21

22

23

24

25

26

27

28

---