1

2

3          O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        WESTERN DIVISION

11

12   EVERARDO CARRILLO, *et al.*, for          ) Case No. CV 11-8557 CAS (DTBx)
13   themselves and all others similarly       )
     situated and the general public,          ) **TEMPORARY RESTRAINING**
                                                ) **ORDER AND ORDER TO SHOW**
14                                              ) **CAUSE RE: PRELIMINARY**
                    Plaintiffs,                 ) **INJUNCTION REQUIRING**
15                                              ) **DEFENDANTS TO KEEP AND**
            v.                                  ) **DISCLOSE MANDATORY**
16                                              ) **PAYROLL RECORDS**
     SCHNEIDER LOGISTICS, INC.,                 )
17   *et al.*,                                  )
                                                )
18                  Defendants.                 )
                                                )
19                                              )
                                                )
20

21

22

23

24

25

26

27

28

TRO and OSC re: Preliminary Injunction
Case No. CV 11-8557 CAS (DTBx)

# I.     INTRODUCTION

On October 17, 2011, plaintiffs Everardo Carrillo, Fernando Chavez, Eric Flores, Jose Martinez Arceo, Baltazar Zavala, and Juan Chavez filed a class action complaint asserting claims for: (1) violation of the Fair Labor Standards Act's requirements to pay minimum wage, to pay overtime premiums, and to maintain accurate records of hours worked; (2) violation of California overtime provisions; (3) violation of California minimum wage provisions; (4) violation of California meal period requirements; (5) violation of California rest period requirements; (6) violation of California reporting time pay provisions; (7) violation of California record-keeping provisions; (8) violation of California itemized wage statement provisions; (9) workplace retaliation; (10) waiting time penalties; (11) violation of California provisions against secret wages; (12) fraudulent misrepresentation; (13) unlawful deductions; (14) penalties under the California Private Attorney General Act; (15) violation of California Bus. & Prof. Code § 17200, *et seq.*; and (16) declaratory judgment.  Plaintiffs' claims arise out of their employment at three warehouses operated by defendants Schneider Logistics, Premier Warehousing Ventures, Rogers-Premier Unloading Services, and Impact Logistics.  Schneider Logistics argues that it was improperly sued in this action because it does not employ any member of the proposed class and has no connection with or responsibility for the operation, oversight, or supervision of the Mira Loma warehouse facility that is the subject of this action.  See Declaration of Amy Schilling, ¶¶ 3–19.  Plaintiffs reply that Schneider Logistics is concealing the identity of the Schneider entity that operates the Mira Loma Facility.  Reply at 10.

On October 24, 2011, plaintiffs filed an *ex parte* application for a temporary restraining order (TRO) and an order to show cause re: preliminary injunction requiring defendants, as well as all those "in active concert or participation with" them under F.R.C.P. 65(d), to come into compliance with federal and state recordkeeping and disclosure requirements immediately.  On October 26, 2011,

1  defendant Impact Logistics filed an opposition to plaintiffs' *ex parte* application.[1]

2  After carefully considering the parties' arguments, the Court finds and concludes as

3  follows.

4  **II.     LEGAL STANDARD**

5          The standards for issuing a Temporary Restraining Order and a preliminary

6  injunction are "substantially identical."  Stuhlbarg Int'l Sales Co. v. John D. Brushy

7  & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A preliminary injunction is an

8  "extraordinary remedy."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129

9  S. Ct. 365, 375 (2008).  The Ninth Circuit summarized the Supreme Court's recent

10  clarification of the standard for granting preliminary injunctions in Winter as follows:

11  "[a] plaintiff seeking a preliminary injunction must establish that he is likely to

12  succeed on the merits, that he is likely to suffer irreparable harm in the absence of

13  preliminary relief, that the balance of equities tips in his favor, and that an injunction

14  is in the public interest."  Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d

15  1046, 1052 (9th Cir. 2009); see also Cal Pharms. Ass'n v. Maxwell-Jolly, 563 F.3d

16  847, 849 (9th Cir. 2009) ("Cal Pharm. I").  Alternatively, "'serious questions going to

17  the merits' and a hardship balance that tips sharply toward the plaintiff can support

18  issuance of an injunction, assuming the other two elements of the Winter test are also

19  met."  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011).

20  A "serious question" is one on which the movant "has a fair chance of success on the

21  merits."  Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th

22  Cir. 1984).

23  **III.    DISCUSSION**

24          The Court concludes that a TRO and order to show cause re: preliminary

25  injunction should issue in this case.  Plaintiffs have established that they are likely to

27  ─────────────

28  [1] As an initial matter, the Court rejects Impact Logistic's argument that
plaintiffs application' is "wholly improper" to the extent Impact Logistics was not
properly served with the summons and complaint.  The Court notes that Impact
Logistics had sufficient notice of the pendency of this action to file an opposition to
plaintiffs' request.

1    succeed on the merits, that they are likely to suffer irreparable harm in the absence of

2    preliminary relief, that the balance of equities tips in their favor, and that an

3    injunction is in the public interest.

4         **A.  Likelihood of Success**

5         Impact Logistics argues that plaintiffs cannot establish a likelihood of success

6    on its underlying claims without proceeding to a trial on the merits.  Opp'n at 4.

7    According to Impact Logistics, in order to recover damages under Labor Code §

8    226(e), an employee must suffer injury as a result of an employer's knowing and

9    intentional failure to comply with the statute.  Id. at 5 (citing Price v. Starbucks

10    Corp., 192 Cal. App. 4th 1136, 1142–43 (Cal. Ct. App. 2011)).  Impact Logistics

11    maintains that plaintiffs have not established that the information missing from their

12    pay statements has caused an injury within the meaning of the statute, but rather that

13    this is a matter of proof that cannot be resolved at this stage.  Id. at 6.  Furthermore,

14    Impact Logistics argues that plaintiffs have not offered proof, other than their

15    declarations, suggesting that the underlying recordkeeping is actually deficient, that

16    Impact Logistics has concealed information, or that plaintiffs have suffered an injury

17    for which preliminary injunctive relief is appropriate.  Id. at 6–7.  Finally, Impact

18    Logistics argues that it is willing to provide all necessary information required by

19    California law, and that it has not knowingly violated any laws regarding pay

20    statements.  Id. at 7.

21         The Court finds that plaintiffs are likely to prevail on the legal claims

22    underlying the three requested categories of relief.

23         First, plaintiffs request that the Court require defendants to begin providing

24    itemized wage statements to their employees that set forth all legally-required

25    information, including the number of hours actually worked and information about

26    the piece rate formula's components and calculation.  Employers are required to

27    provide employees with such information under California Labor Code §226(a), and

28    Labor Code §226(g) expressly provides that "[a]n employee may . . . bring an action

1  for injunctive relief to ensure" compliance with the record-keeping requirements of

2  §226(a).

3      Plaintiffs have submitted copies of itemized wage statements provided to them

4  by defendants.  These wage statements are legally deficient on their face.  The wage

5  statements bearing the name "Premier Warehousing Services" do not list all of the

6  required information, such as the number of hours worked, the hourly rate of pay, the

7  number of pieces completed, the applicable piece rate, or the piece rate formula.  The

8  wage statements bearing the name "Impact Logistics" similarly do not state the piece

9  rate formula, and plaintiffs have demonstrated that the information about employee

10  hours and the piece rate on those statements cannot be accurate.  Because the wage

11  statements issued by defendants are legally deficient on their face, plaintiffs are likely

12  to prevail on their Labor Code §226(a) claims.

13      Second, plaintiffs request that the Court require defendants to accurately record

14  the actual hours that employees work, and identify all hours spent on both piece rate

15  and non-piece rate work, including all time employees are "suffered or permitted" to

16  work (see Martinez v. Combs, 49 Cal. 4th 35 (2010)), and all instances when

17  defendants required employees to report to work but sent them home without pay.

18      Under federal and state law, employers must maintain and preserve accurate

19  records showing, *inter alia*, when the employee begins and ends work each day; the

20  total number of hours worked on a daily basis; and all meal periods and split shift

21  intervals.  *See* 29 U.S.C. §§201, *et seq.*, including 29 U.S.C. §§211(c) & 215(a); 29

22  C.F.R. §516.2(a); Cal. Labor Code §1174(d); IWC Wage Order 9-2001 §7.

23  California law also requires defendants to record (or pay for) the days on which they

24  require plaintiffs and other employees to report to work, but then send the workers

25  home without pay.  IWC Wage Order 9-2001 §5(A).  Under California law, "hours

26  worked" means "the time during which an employee is subject to the control of an

27  employer, and includes all the time the employee is suffered or permitted to work,

28  whether or not required to do so."  IWC Wage Order 9-2001 §2(H); Morillion v.

Royal Packing Co., 22 Cal.4th 575, 583 (2000).

1   California law does not permit *any* time to be uncompensated.  Armenta v.

2   Osmose, Inc., 135 Cal. App. 4th 314, 317, 324 (2005) (rejecting federal "averaging"

3   methodology and finding California minimum wage violation where employer paid

4   employees only for "productive" work, or time spent performing work "directly

5   related to maintaining utility poles in the field," but not for "nonproductive" work, or

6   time spent performing tasks like driving, picking up supplies, and completing

7   paperwork).  Where employees are purportedly paid by the piece, the employer must

8   separately compensate employees for all hours spent performing non-piece rate work.

9   Ontiveros v. Zamora, 2009 U.S. Dist. LEXIS 13073, and Cardenas v. McLane

10  FoodServices, Inc., 2011 U.S. Dist. LEXIS 68539 (C.D. Cal. June 23, 2011).

11          Plaintiffs have submitted sworn declarations indicating that defendants do not

12  accurately record when they report to work, the times at which they actually begin

13  and end work, their total hours of work, meal periods, or split shift intervals, and that

14  defendants do not compensate employees for all hours worked or provide the

15  required reporting time pay.  The Court finds plaintiffs are likely to prevail on their

16  recordkeeping, minimum wage, and reporting time claims.

17          Third, plaintiffs request that the Court order defendants to maintain and make

18  available to employees upon reasonable request all legally-required payroll and

19  production records, including the piece rates for fully loaded and unloaded trucks; the

20  number of trucks fully loaded or unloaded in each shift; and the number, identity, and

21  location of all employees sharing in a given piece rate.

22          California law requires employers who use a piece rate compensation system to

23  maintain payroll and accurate production records at the place of employment or at a

24  central location within the state.  Cal. Labor Code §1174(d); IWC Wage Order 9-

25  2001 §7(A)(6).  Federal law similarly requires every employer to maintain and

26  preserve payroll records containing detailed information, including "[h]ours worked

27  each workday and total hours worked each workweek," and "[t]otal daily or weekly

28  straight-time earnings or wages due for hours worked during the workday or

workweek."  29 C.F.R. §516.2(a); *see also* 29 U.S.C. §211(c).  California law grants

1  mandatory record inspection rights to employees.  Labor Code §226(b); DLSE
2  Enforcement Manual 41.2.2.  And "[w]hen a piece rate or incentive plan is in
3  operation," employers must provide employees with the "piece rates or an
4  explanation of the incentive plan formula."  IWC Wage Order 9-2001 §7(A)(6).

5      Plaintiffs's evidence shows that defendants have not been keeping the required
6  payroll or production records, and have not been making those records available to
7  employees to inspect.  Further, defendants have rejected the requests of several
8  employees to obtain such information and retaliated or threatened retaliation against
9  employees who make such requests.  Thus, plaintiffs have established they are likely
10  to prevail on their claims that defendants are failing to maintain and make available
11  payroll and production records in violation of Labor Code §§226 & 1174, IWC Wage
12  Order 9-2001 §7, and 29 C.F.R. §516.2(a).

13      **B.  Irreparable Harm**

14      Impact Logistics argues that plaintiffs will not suffer irreparable harm absent
15  preliminary relief because it has "at all times proactively taken steps to make sure that
16  all necessary information has been provided to its employees."  Opp'n at 8.
17  Specifically, Impact Logistics argues that plaintiffs' attempt to refer to particular
18  documents as not supplying adequate information in the past does not show
19  irreparable injury when such information has been supplied in multiple documents,
20  and will be incorporated into an "integrated" document that is being supplied to the
21  alleged class of employees.  Id.  Finally, Impact Logistics argues that plaintiffs'
22  attempt to challenge its piece rate compensation system does not itself become the
23  basis for a temporary restraining order when "the resolution of that issue" requires
24  factual development.  Id.

25      The Court finds that plaintiffs will suffer irreparable harm absent a temporary
26  injunction.

27      Several harms result from an employer's violation of record-keeping
28  requirements, including "the possibility of [workers] not being paid overtime,
employee confusion over whether they received all wages owed them, difficulty and

expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked." Elliot v. Spherion Pac. Work, LLC, 572 F. Supp. 2d 1169, 1181 (C.D. Cal. 2008) (citations omitted); see Heritage Residential Care, Inc. v. DLSE, 192 Cal. App. 4th at 86 (one purpose of wage statements is to "provide clear, unequivocal notice to the employee of exactly what they are being paid for"). Without accurate recordkeeping and adequate disclosure, there is a substantial risk that plaintiffs will not be paid in accordance with the law.  Because plaintiffs are low-wage workers, and lost wages or delays in compensation threaten or impair their ability to meet basic needs, such harms are irreparable. "'[W]ages are not ordinary debts," and "because of the economic position of the average worker . . . it is essential to the public welfare that he receive his pay when it is due.'" Smith v. Ceva Logistics U.S., Inc., 2011 U.S. Dist. LEXIS 111941, *8-9 (C.D. Cal. Sept. 28, 2011) (quoting Smith v. Superior Court, 39 Cal.4th 77, 82 (2006)).

Further, in the absence of immediate compliance with recordkeeping and disclosure requirements, defendants will be able to continue to conceal critical pay information that plaintiffs and the Court could use to determine more efficiently the full extent to which defendants failed to pay plaintiffs and other warehouse workers all wages owed, and evidence relevant to these proceedings will be lost.

## C. Balance of Equities and Public Interest

Impact Logistics argues that the balance of equities and the public interest do not favor plaintiffs because the issues have yet to be adjudicated fully.  Opp'n at 9. Furthermore, Impact Logistics contends that it has been willing "at all times" to keep adequate records such that plaintiffs' contention that they will be forever deprived of wages to which they are entitled is speculative and improper at this stage of the litigation.  Id.  Finally, Impact Logistics contends that plaintiffs have failed to establish that the hardships suffered by Impact Logistics "before all proof has been developed" would not cause greater harm to Impact Logistics than plaintiffs would suffer absent the issuance of the temporary restraining order.  Id.

1    The Court finds that the balance of equities tips in plaintiffs' favor.

2    Plaintiffs request only that defendants be required to comply with

3 recordkeeping and disclosure requirements under federal and state law. Defendants

4 will suffer no hardships other than those associated with bringing their record-

5 keeping procedures and paycheck information into compliance with state and federal

6 requirements – costs that defendants should already be incurring. Further, the cost of

7 compliance should be nominal, because defendants already have systems in place that

8 should enable them easily and with little expense to record the actual hours that their

9 employees work, including electronic timekeeping and paycheck systems.

10    The requested injunction is also in the public interest. "California courts have

11 long recognized wage and hours laws concern not only the health and welfare of the

12 workers themselves, but also the public health and general welfare." Gould v.

13 Maryland Sound Industries, Inc., 31 Cal. App. 4th 1137, 1148 (1995) (citation and

14 quotation marks omitted); see also Kerr's Catering Services v. DIR, 57 Cal.2d at 326-

15 27 (discussing statutes and case law recognizing the public interest in full and prompt

16 payment of employees' wages).

17    Further, defendants' immediate compliance with basic recordkeeping and

18 disclosure requirements will serve the long-established public policy of protecting

19 employees from exploitation. Requiring defendants to comply with the record-

20 keeping requirements of state and federal law will also enable government agencies

21 to better perform their functions as the enforcers of labor laws, and enable this Court

22 to more efficiently determine whether defendants are paying their employees

23 correctly.

24 //

25 //

26

27

28

**D.  Provisional Class Certification**

Plaintiffs have also moved for provisional class certification for the purpose of entering a TRO.  The Court DENIES plaintiffs' motion for provisional class certification without prejudice subject to it being renewed on a noticed motion for provisional certification.

**IV.   CONCLUSION**

In light of the foregoing, DEFENDANTS PREMIER WAREHOUSING VENTURES, ROGERS-PREMIER UNLOADING SERVICES, AND IMPACT LOGISTICS are ordered to do the following:

A.  Immediately begin providing employees itemized wage statements at the time of paying wages that disclose all information required by Cal. Labor Code §226(a).  The statements must contain information that is true and correct. Specifically, the itemized wage statements must disclose:  (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided, that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

B.  To the extent defendants pay employees on a piece rate basis, defendants must list on the itemized wage statement, or in attachments thereto, the piece rate formula, including all information necessary to calculate each employee's pay. Defendants must disclose the rates paid for each truck loaded or unloaded, including an identifying number for each truck, the date(s) it was loaded or unloaded, and the total amount paid to employees for loading or unloading the truck.  If more than one employee will share in the piece rate, defendants must disclose the names and

location of all employees sharing in each piece rate.  Defendants must also state the share allocated to each employee for each piece rate paid.

C.  Defendants must immediately begin electronically recording the actual hours that employees are suffered or permitted to work, including: (1) the time that employees begin work; (2) the time that employees end work; (3) the time that employees begin meal breaks; (4) the time that employees end meal breaks; and (5) split shifts.  The time that employees "begin work" is the time that they report to work as required by defendants.

D.  Defendants must immediately begin making a record of the dates that employees report to work but are not put to work, or are furnished less than half said employee's usual or scheduled day's work.

E.  Defendants must immediately begin identifying, on a daily basis, all hours that employees spend performing duties that do not involve loading or unloading trucks, including, but not limited to, cleaning the warehouses, attending meetings, waiting for trucks to arrive, labeling, stacking or breaking down pallets, disposing of trash, and taking state-mandated rest breaks.

Defendant SCHNEIDER LOGISTICS is hereby ordered to identify the Schneider entity that operates that Mira Loma warehouse facility within five days of the date of service of this order.

DEFENDANTS PREMIER WAREHOUSING VENTURES, ROGERS-PREMIER UNLOADING SERVICES, SCHNEIDER LOGISTICS, AND IMPACT LOGISTICS ARE FURTHER ORDERED TO SHOW CAUSE at 12 o'clock noon on November 9, 2011, or as soon thereafter as counsel may be heard why defendants, their officers, agents, servants, employees and attorneys and those in active concert or participation with defendants, should not be restrained and enjoined pending trial of this action as described in A–E above.

The Court hereby exercises its discretion to waive plaintiffs' obligation to post a bond under Fed. R. Civ. P. 65(c).  <u>California ex rel. Van de Kamp v. Tahoe Regional Planning Agency</u>, 766 F.2d 1319, 1325-26, <u>as modified by</u> 775 F.2d 998

-10-

1   (9th Cir. 1985); see also Miller v. Carlson, 768 F. Supp. 1331, 1340-41 (N.D. Cal.

2   1991) (bond waived as plaintiffs are "indigent persons" and the preliminary

3   injunction "is consistent with public policy"); Cupolo v. Bay Area Rapid Transit, 5 F.

4   Supp. 2d 1078, 1086 (N.D. Cal. 1998) (minimal $100 bond imposed for preliminary

5   injunction in part because bond would cause hardship to plaintiffs). The Court finds

6   that plaintiffs cannot afford to post even nominal security.  Plaintiffs have also

7   established that they are likely to prevail on the merits, and granting a TRO is in the

8   public interest.  For these reasons, plaintiffs are not required to post a bond.

9       This Order to Show Cause and supporting papers must be served on defendants

10  no later than 7 days before the date set for hearing.  Any response or opposition to

11  this Order to Show Cause must be filed and personally served on Plaintiff's counsel

12  no later than 3 court days before the date set for hearing.

14  DATED: October 31, 2011

                                              _____
                                              The Hon. Christina Snyder
                                              U.S. District Judge