UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| EVERARDO CARRILLO, et al., | Case No. CV 11-8557 CAS (DTBx) |
| Plaintiffs, | |
| vs. | **ORDER GRANTING PRELIMINARY INJUNCTION** |
| SCHNEIDER LOGISTICS, INC., et al.; | |
| Defendants. | |

## I. INTRODUCTION & BACKGROUND

On October 17, 2011, plaintiffs Everardo Carrillo et al., employees at the Mira Loma warehouse facility in Mira Loma, California (the "warehouse"), filed suit against Schneider Logistics, Inc. ("SLI"), Premier Warehousing Ventures, LLC ("PWV"), Rogers-Premier Unloading Services, LLC ("Rogers-Premier"), and Impact Logistics, Inc. ("Impact") alleging violations of the California Labor Code and the Federal Labor Standards Act ("FLSA"). Specifically, plaintiffs alleged improper recordkeeping, inadequate payment for hours worked including overtime, and failure to provide meal and rest breaks as required by law. On October 28, 2011, plaintiffs filed their first Amended Complaint ("FAC") adding Schneider Logistics Transloading and Distribution, Inc. ("SLTD").

///

The Court issued a temporary restraining order ("TRO") dated October 31, 2011 against PWV, Rogers-Premier and Impact imposing requirements for issuing corrected wage statements. In addition, the Court ordered all defendants to show cause on November 9, 2011 ("November 9 Hearing"), why a Preliminary Injunction should not issue pending trial enjoining them from doing the acts prohibited by the TRO. At the November 9 Hearing, the Court extended the TRO against PWV, Rogers-Premier, and Impact. With respect to SLTD and SLI, the Court ordered SLTD to produce the service contracts between SLTD and PWV and between SLTD and Impact. The Court also instructed defendants SLTD, SLI, and Rogers-Premier to submit arguments as to why they should not be bound by the terms of the Preliminary Injunction. Rogers-Premier filed a memorandum of points and authorities as to why it should not be subject to the Preliminary Injunction on November 21, 2011. SLI and SLTD also filed their joint memorandum of points and authorities as to why they should not be subject to the Preliminary Injunction on November 21, 2011. Plaintiffs filed separate responses on November 28, 2011. After carefully considering the parties' arguments, the Court finds and concludes as follows.

## II. LEGAL STANDARD

The Court has broad discretion in deciding the scope of a preliminary injunction. As the Ninth Circuit has explained: "The district court has broad powers and wide discretion to frame the scope of appropriate equitable relief." Securities and Exchange Commission v. United Financial Group, Inc., 474 F. 2d 354, 358–59 (9th Cir. 1973); see also International Mfg. Co. v. Landon, Inc., 327 F. 2d 824, 825 (9th Cir. 1964). Of paramount importance in fashioning preliminary injunctive relief is the need to ensure, as both a practical matter and consistent with the scope of Federal Rule of Civil Procedure 65(d), that the injunction will be effective in preventing further irreparable harm to plaintiffs. United States v. Coca-Cola Bottling Co., 575 F. 2d 222, 228 (9th Cir. 1978).

///
///
///

## III. DISCUSSION

Rogers-Premier argues that it should not be subject to the Preliminary Injunction because it is not the contractual provider of any services at the warehouse. Rogers-Premier Memorandum at 2. Rogers-Premier further contends that it does not employ any of the warehouse workers, but rather that PWV is plaintiffs' employer. Id. at 3.

SLTD first argues that it should not be subject to the Preliminary Injunction because it is not integrated with PWV or Impact. According to SLTD, courts use the "integrated enterprise" test to determine whether there is "sufficient integration of operations" between distinct companies to establish liability for each as a single employer. Memorandum of SLI and SLTD at 8 (citing Maddock v. KB Holmes, Inc., 671 F. Supp. 2d 1226, 1238 (2007) (internal citation omitted) (noting that under the integrated enterprise four factors are considered: (1) the interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control)). SLTD argues that its relationships with PWV and Impact are purely contractual, and that it has no control or access to the payroll systems of Impact and PWV such that it cannot be considered integrated with those entities. Id. at 8. SLTD next argues that it is premature at this stage to make a determination whether a joint employer relationship exists, but that in any event, it is not a joint employer of plaintiffs because it has no control over plaintiffs' wages, hours or working conditions. Id. at 9–10 (citing Martinez v. Combs, 49 Cal. 4th 35, 109 (2010) in which the California Supreme Court articulated that a defendant is an employer if it (1) exercised control over the plaintiff's wages, hours or working conditions or (2) suffered or permitted plaintiff).

SLI contends that it does not have any connection with PWV, Roger-Premier, or Impact such that it cannot be considered "integrated" with those entities. Id. at 12. Further, SLI argues that it is not an integrated enterprise with SLTD because as between SLI and SLTD, there is no interrelation of operation services, no common management, and no centralized control of labor relations. Id.

///

Finally, SLTD and SLI argue that it is not necessary for them to be subject to the Preliminary Injunction because PWV and Impact have agreed to provide time-keeping systems for their employees at the warehouse such that it would be superfluous for SLTD or SLI to do so. Id. at 13.

With respect to Rogers-Premier, plaintiffs contend that the absence of Rogers-Premier's name in the contracts does not determine whether it should be bound by the Injunction. Plaintiffs' Memorandum in Response to Rogers-Premier at 2. According to plaintiffs, Rogers-Premier may be bound by the Preliminary Injunction either as a party or as a result of its participation and concerted action in the challenged practices at the warehouse. Id.

As to SLI and SLTD, plaintiffs argue that the including those entities in the Preliminary Injunction would more effectively achieve the goal of preventing further irreparable harm to plaintiffs and the public interest. Plaintiffs' Memorandum in Response to SLI and SLTD at 1. According to plaintiffs, SLI and SLTD wield the "economic and contractual power" necessary to secure compliance with the Injunction especially in light of the other defendants' continued failure to comply with the TRO. Id.

The Court finds that all defendants should be subject to the Preliminary Injunction.

First, with respect to Rogers-Premier, the Court finds that Rogers-Premier holds itself out to plaintiffs as their employer. For example, employees hired and paid by PWV are required to wear shirts bearing the names of both "Rogers-Premier" and "Premier Warehousing," and carry identification badges that identify their employer and association as "Rogers-Premier. "

The Court also finds it appropriate to issue the Preliminary Injunction with regard to SLTD and SLI. As an initial matter, the Court finds unavailing SLTD and SLI's argument that they are not "integrated" with PWV and Impact. This is so because plaintiffs are not required to prove that SLTD and SLI, PWV, and Impact constitute an "integrated enterprise" but rather only that each defendant bears some responsibility for violations that plaintiffs are likely to succeed in proving and that are causing plaintiffs irreparable harm.

See Chao v. A-One Med. Servs., 346 F. 3d 908, 917 (9th Cir. 2003). Next, the Court notes that the contracts between SLTD and PWV and Impact indicate that SLTD has substantial authority to control the terms and conditions under which plaintiffs are employed such that including SLTD and SLI in the Preliminary Injunction would further its purposes. The contracts dictate nearly every material term of plaintiffs' employment including how Impact and PWV must conduct pre-employment screening and new employment training. Declaration of Theresa Traber ("Traber Decl."), Ex. A (redacted PWV contract) §2.04(a)-(p); Ex. B (redacted Impact contract) § 2.05(a)-(q).[1] Further, the contracts require ongoing supervision over the workers at the warehouse, and require Impact and PWV to accurately record all time worked by those employees. Id., Ex. A §§ 2.04, 2.08; Ex. B §§ 2.07, 2.16, and to conduct periodic performance evaluations. Id., Ex. A §§ 2.06, 2.08, 2.14; Ex. B §§ 2.07, 2.16. The contracts also give SLTD unilateral authority to "request [Impact or PWV] to remove [employees] from the [warehouse] and from their assignment with SLTD immediately." Id., Ex. A § 2.12; Ex. B § 2.13. In addition, the Court notes that SLTD has the contractual authority to compel electronic time and recordkeeping. Id., Ex. A § 2.14, Ex. B § 2.16. Finally, in light of the fact that it appears that none of the defendants has come into compliance with the TRO,[2] the Court

---

[1] Even if SLI is not a formal party to the contracts with PWV and Impact, SLI should still be subject to the Preliminary Injunction because the contracts are between PWV/Impact and SLTD "and its affiliates." Traber Decl. Exs. A and B § 1.01. As the parent corporation, SLI is one of SLTD's affiliates, and is entitled to many rights under the contracts, including the right to take over the contracts through an assignment from SLTD, the right to extensive insurance coverage, and the right to indemnification from Impact and PWV for almost any workplace-related claim asserted by any worker. Id., Ex. A §§ 4.04, 4.05, 4.17; Ex. B. §§ 4.04, 4.05.

[2] Rogers-Premier and PWV have yet to implement an electronic or mechanical time clock and have not provided workers with wage statements identifying the group piece rate formula being employed and the number of trucks loaded and the prices paid to which group of workers. Traber Decl. ¶¶ 4, 6 and Ex. C. Impact instituted an electronic time-
(continued...)

finds it necessary to include SLTD and SLI in the Preliminary Injunction in order to ensure compliance and to protect plaintiffs from irreparable harm.

**IV. CONCLUSION**

In accordance with the foregoing, and for the reasons set forth in the TRO, which the Court hereby incorporates by reference, DEFENDANTS PREMIER WAREHOUSING VENTURES, LLC, ROGERS-PREMIER UNLOADING SERVICES, LLC, IMPACT LOGISTICS, INC., SCHNEIDER LOGISTICS, INC., AND SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, INC. ARE HEREBY RESTRAINED AND ENJOINED pending trial of this action as follows:

A. Defendants must immediately provide employees itemized wage statements at the time of paying wages that disclose all information required by Cal. Labor Code §226(a). The statements must contain information that is true and correct. Specifically, the itemized wage statements must disclose: (1) gross wages earned, (2) total hours worked by the employee, (3) if the employee is paid on a piece-rate basis, the number of piece rate units earned and any applicable piece rate, (4) all deductions, provided, that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

B. To the extent defendants pay employees on a piece rate basis, defendants must list on the itemized wage statement, or in attachments thereto, the piece rate formula, including all information necessary to calculate each employee's pay. Defendants must

---

[2](...continued)
keeping system on November 17, 2011, but its piece-rate wage statements allegedly still contains legal and factual errors and still fails to provide plaintiffs with a coherent explanation of its piece-rate compensation system. Id. ¶¶ 5–6 and Ex. D, Ex. E.

1 disclose the rates paid for each truck container loaded or unloaded, including an identifying
2 number for each truck container, the date(s) it was loaded or unloaded, and the total
3 amount paid to employees for loading or unloading the truck container. If more than one
4 employee will share in the piece rate, defendants must disclose the names and location of
5 all employees sharing in each piece rate, and the daily work hours of each employee sharing
6 in the piece rate. With respect to employees paid on a group piece rate basis, defendants
7 must also state the share allocated to each employee for each piece rate paid.

8     C.  Defendants must immediately begin electronically recording on the Schneider
9 premises, through the implementation of a mechanical or electronic time clock system
10 under which employees themselves record time, the actual hours that employees are
11 suffered or permitted to work, including: (1) the time that employees begin work; (2) the
12 time that employees end work; (3) the time that employees begin meal breaks; (4) the time
13 that employees end meal breaks; and (5) split shifts, if any. The time that employees "begin
14 work" is the time that they report to work as required by defendants.

15     D.  Defendants must immediately begin making a record of the dates that employees
16 report to work but are not put to work, or are furnished less than half said employee's usual
17 or scheduled day's work.

18     E.  With respect to employees paid on a piece rate basis, defendants must
19 immediately begin identifying, on a daily basis, (i) all hours that employees spend
20 performing duties that do not involve loading or unloading truck containers, including, but
21 not limited to, cleaning the warehouses, and (ii) all hours that employees spend doing
22 loading or unloading work that does not result in a fully loaded or unloaded truck container
23 during that employee's shift.

24     F.  For purposes of this Order, "employees" means and includes: all
25 individuals employed by Premier Warehousing Ventures, Rogers-Premier Unloading
26 Services, or Impact Logistics, Inc. as warehouse workers at one or more of the Schneider
27 warehouses in Mira Loma, California.
28 ///

G. This order applies only to work performed at the Schneider warehouses in Mira Loma, California, which are the subject of the instant litigation.

IT IS SO ORDERED.

Dated: December 7, 2011

*Christina A. Snyder*
HONORABLE CHRISTINA A. SNYDER
United States District Judge