UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8557 CAS (DTBx) | Date | March 21, 2012 |
|---|---|---|---|
| Title | *EVERARDO CARRILLO, et al. v. SCHNEIDER LOGISTICS, INC., et al.* | | |

| Present: The Honorable | CHRISTINA A. SNYDER, United States District Judge | | |
|---|---|---|---|
| Catherine M. Jeang | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Lauren Teukolsky
Theresa Traber
Michael Rubin
Janet Herold
Kevin Kish

Attorneys Present for Defendants:

Betsy Johnson
Truc Nguyen

| Proceedings: | **PLAINTIFFS' MOTION FOR FURTHER PRELIMINARY INJUNCTION AND CONTEMPT** (filed March 2, 2012) |
|---|---|

## I. INTRODUCTION AND BACKGROUND

On October 17, 2011, plaintiffs Everardo Carrillo et al., employees at the Mira Loma warehouse facility in Mira Loma, California, filed suit against Schneider Logistics, Inc. ("SLI"), Premier Warehousing Ventures, LLC ("PWV"), Rogers-Premier Unloading Services, LLC ("Rogers-Premier"), and Impact Logistics, Inc. ("Impact") alleging violations of the California Labor Code and the Federal Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"). Specifically, plaintiffs allege improper recordkeeping, inadequate payment for hours worked including overtime, and failure to provide meal and rest breaks as required by law. On October 28, 2011, plaintiffs filed their first Amended Complaint adding Schneider Logistics Transloading and Distribution, Inc. ("SLTD").[1]

The Court issued a temporary restraining order on October 31, 2011, against Premier and Impact imposing requirements for the issuance of corrected wage statements. On December 7, 2011, the Court granted a preliminary injunction against all defendants requiring them to keep accurate records and to abide by the requirements of state and federal labor laws. On February 1, 2012, the Court issued a preliminary injunction in

---

[1] The Court refers to PWV and Rogers-Premier collectively as "Premier" and SLTD and SLI collectively as "Schneider."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8557 CAS (DTBx) | Date | March 21, 2012 |
|---|---|---|---|
| Title | *EVERARDO CARRILLO, et al. v. SCHNEIDER LOGISTICS, INC., et al.* | | |

which it enjoined Schneider and Premier from carrying out an allegedly retaliatory mass termination of workers that was to take place on February 25, 2012. The Court also provisionally certified—for the purposes of that injunction only—a class comprising all individuals employed by Schneider and Premier at the Mira Loma warehouses at any time from the announced termination through February 1, 2012. Finally, the Court conditionally certified the FLSA collective action claims in this lawsuit and authorized the dissemination of Hoffman-La Roche notice to all similarly situated current and former workers at the warehouses.

On February 22, 2012, Schneider filed an ex parte request for clarification of the Court's February 1 preliminary injunction in which it requested that the Court approve Schneider's plan to "rehire" all workers that it contended were previously employed exclusively by Premier. Schneider's proposed plan called for workers to complete Schneider's "pre-employment procedures" including a background check, drug screening, I-9 verification, and new hire paperwork. Further, because of the cyclical nature of the work and the fluctuating need for workers at the Mira Loma warehouses, Schneider's plan called for the use of a randomized list to determine the order in which workers would be selected to receive work assignments. Schneider also represented that it would pay a starting wage of $12.75 per hour, and that workers who met minimum weekly or annual hours requirements would have the opportunity to enroll in Schneider's employee benefits plan.

On February 24, 2012, the Court denied Schneider's ex parte application, ordering it to "retain" the employees rather than "rehire" them in order to preserve the status quo. The Court expressed concern with Schneider's plan to require workers to complete the "pre-employment procedures" because the Court had previously found that Schneider was likely a joint employer of the workers with Premier, which had already vetted the workers. Therefore, the Court explained that it was unnecessary and unduly burdensome to require the workers to complete these procedures. Reporter's Transcript of Proceedings at 4:17–20; 7:18–22. Further, the Court expressed that it could not approve Schneider's plan to use a randomized list to determine the order in which workers were recalled. Id. at 3:19–24.

Plaintiffs assert that when approximately 40 workers reported to resume their employment at the Mira Loma warehouses on February 25, 2012, Schneider informed them that due to this Court's order, Schneider was reducing their pay from $12.75 per

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8557 CAS (DTBx) | Date | March 21, 2012 |
|---|---|---|---|
| Title | *EVERARDO CARRILLO, et al. v. SCHNEIDER LOGISTICS, INC., et al.* | | |

hour to $11.00 per hour, and that workers would not be permitted to participate in Schneider's employee benefits plan. Mot. at 3 (citing Declaration of Daniel Lopez ("Lopez Decl.") ¶ 4; Declaration of Jose Arceo ("Arceo Decl.") ¶¶ 9–10; declaration of Manuel Jimenez ("Jimenez Decl") ¶¶ 9–10; declaration of Armando Perrusquia ("Perrusquia Decl.") ¶¶ 5; Declaration of Giovanni Lopez ("Lopez Decl.") ¶¶ 5–7). According to plaintiffs, this reduced hourly wage was less than the workers were paid prior to February 24, 2012, less that what they were paid when they were initially hired, less than Schneider had represented it would pay the workers as direct employees, and less than the lowest paid Schneider employee earned at that time. Id. at 3–4. Further, plaintiffs maintain that Schneider has not responded to their demands that notice of the Court's February 1, 2012 preliminary injunction be provided to all of the provisionally certified class members. Finally, plaintiffs maintain that Schneider has never responded to demands that a neutral, non-retaliatory mechanism be established, identifying the members of the class covered by the February 1, 2012 injunction so that there will be an "orderly" process for determining who should be called in for work as Schneider's needs fluctuate.[2] Id. at 6. Based on these allegations, plaintiffs argue that Schneider continues to wrongfully retaliate against the workers' efforts to engage in legally protected activity.

On March 2, 2012, plaintiffs filed the instant motion for further preliminary injunction to prevent additional retaliation and for contempt. Schneider opposed the motion on March 9, 2012, and plaintiffs replied on March 14, 2012. A hearing was held on March 21, 2012. After considering the parties' arguments, the Court finds and concludes as follows.

## II. LEGAL STANDARD

### A. Preliminary Injunction

A preliminary injunction is an "extraordinary remedy." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 9 (2008). The Ninth Circuit summarized the Supreme Court's clarification of the standard for granting preliminary injunctions in Winter as

---

[2] Plaintiffs also assert that Schneider failed to pay the approximately 40 workers who to work on February 25, 2012, for approximately two and one half hours of their time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8557 CAS (DTBx) | Date | March 21, 2012 |
|---|---|---|---|
| Title | *EVERARDO CARRILLO, et al. v. SCHNEIDER LOGISTICS, INC., et al.* | | |

follows: "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009); see also Cal. Pharms. Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849 (9th Cir. 2009) ("Cal. Pharms. I"). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011); see also Indep. Living Ctr. of So. Cal. v. Maxwell-Jolly, 572 F. 3d 644, 657–58 (9th Cir. 2009). A "serious question" is one on which the movant "has a fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

    **B.**    **Contempt of Court**

"District courts have the inherent power to enforce their orders through civil contempt." FTC v. Gill, 183 F. Supp. 2d 1171, 1180 (C.D. Cal. 2001). Civil contempt sanctions "are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." International Union, UMWA v. Bagwell, 512 U.S. 821, 827 (1994). "A contempt fine accordingly is considered civil and remedial if it either 'coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained." Id. at 829 (quoting United States v. Mine Workers, 330 U.S. 258, 303–04 (1947)). In order to establish a party's liability for civil contempt, the injured party must show by clear and convincing evidence that the alleged contemnor has violated a specific court order. See Whittaker Corp. v. Execuair Corp. 953 F.2d 510, 517 (9th Cir. 1992); FTC v. Affordable Medial, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999). "The burden then shifts to the contemnors to demonstrate why they were unable to comply." Id.

**III.**    **DISCUSSION**

    **A.**    **Preliminary Injunction**

        **1.**    **Likelihood of Success on the Merits**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8557 CAS (DTBx) | Date | March 21, 2012 |
|---|---|---|---|
| Title | *EVERARDO CARRILLO, et al. v. SCHNEIDER LOGISTICS, INC., et al.* | | |

    Plaintiffs argue that they are likely to prevail on their claim that the wage reduction constitutes unlawful retaliation. Mot. at 7–11. Plaintiffs contend that they can show that: (1) they engaged in protected activity; (2) Schneider subjected them to an adverse employment action; and (3) that a causal link exists between their protected activity and Schneider's adverse action. Id. at 7–8 (citing Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1354 (9th Cir. 1984)). Specifically, plaintiffs argue that they engaged in protected activity when they resisted Schneider's attempt to force workers to complete "onerous and redundant" procedures. Id. at 8. Plaintiffs maintain that Schneider retaliated against the workers for this activity by reducing the hourly rate and cutting the benefits package it had previously offered. Id. Finally, plaintiffs assert that they can show the existence of a causal link between their protected activity and Schneider's purportedly retaliatory conduct in three ways: (1) by their temporal proximity; (2) through Schneider's statements by the employer showing its disapproval of the workers' exercise of their rights; (3) and by showing that Schneider's proffered reasons were pretextual. Id. at 7–10. Further, plaintiffs argue that there is no justification for Schneider's refusal to agree to a reasonable mechanism for ordering the list of the workers in a manner that will determine who is brought on when new work comes in, and who is temporarily laid-off when work diminishes. Plaintiffs also contend that Schneider's failure to provide notice of the Court's February 1, 2012 injunction to a significant portion of the provisionally certified class is also retaliatory. Id. at 11–12.

    Schneider responds that plaintiffs cannot establish a likelihood of success on the merits of their claim for retaliation because Schneider did not engage in any retaliatory action. Opp'n at 9–13. Instead, Schneider contends that even though it initially offered to pay more than $11.00 per hour and to provide benefits, its reduced offer was not retaliatory, but was in line with the Court's directive to maintain the status quo. In this respect, Schneider asserts that the workers were previously compensated at an effective rate of $11.00 per hour. Thus, Schneider argues that in order to maintain the status quo, it "reluctantly adopted" equivalent terms to the workers' employment. Id. at 10–11. With respect to plaintiffs' contention that Schneider did not provide notice to the provisionally certified class that the Court had enjoined the allegedly retaliatory mass termination, Schneider argues that Premier already provided such notice and therefore

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8557 CAS (DTBx) | Date | March 21, 2012 |
|---|---|---|---|
| Title | *EVERARDO CARRILLO, et al. v. SCHNEIDER LOGISTICS, INC., et al.* | | |

that it is unnecessary for Schneider to duplicate these efforts.[3]  Id. at 6–7.

The Court finds that plaintiffs are likely to succeed on the merits of their claim that Schneider retaliated against the workers by reducing wages and eliminating benefits, by failing to provide adequate notice to the provisionally certified class, and by failing to submit and provide notice of a seniority-based plan for allocating work assignments.

The FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), broadly prohibits any person from retaliating against any worker or group of workers who have filed complaints concerning violations of the FLSA.  Kasten v. St. Gobain, 131 S.Ct. 1325 (2010).  That provision states, in pertinent part:

> [I]t shall be unlawful for any person . . . (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . .

Equally broad anti-retaliation provisions are set forth in the California Labor Code, which prohibit any "discharge" or "any manner [of] discrim[ination]" against any workers who make complaints and public filings.  See Labor Code § 98.6(a); see also Labor Code § 1102.5(b) ("An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.").

---

[3] In addition, Schneider devotes several pages of its opposition brief to the argument that the Court erred in denying its ex parte application for clarification.  Opp'n at 11–13.  Schneider continues to argue that it was not a joint employer of the workers, and therefore that it was legally entitled to subject all plaintiffs to the same "pre-hire" procedures that it imposes on "new hires" in other Schneider facilities.  Id. at 11–12.  Likewise, Schneider reiterates that it should be allowed to conduct new background checks and I-9 verifications of the provisionally certified class members.  Id. at 5–6, 12–13.  The Court, however, has already rejected these arguments, and declines to revisit its holdings on these issues.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8557 CAS (DTBx) | Date | March 21, 2012 |
|---|---|---|---|
| Title | *EVERARDO CARRILLO, et al. v. SCHNEIDER LOGISTICS, INC., et al.* | | |

First, with respect to the wage reduction and benefits elimination, Schneider enacted these cuts within hours after plaintiffs successfully argued to this Court that Schneider's plan to "rehire" rather than "retain" the workers was unnecessary and unduly burdensome. The close temporal proximity between the protected activity and the adverse action by Schneider is likely sufficient to show retaliation. See Thomas v. City of Beaverton, 379 F.3d 802, 812 (9th Cir. 2004) ("The causal link between a protected activity and the alleged retaliatory action can be inferred from the timing alone when there is a close proximity between the two."). Even if this were not so, the Court would still find that plaintiffs are likely to succeed on their claim for retaliation because Schneider's proffered reason for reducing the workers' pay and revoking their benefits is apparently pretextual. See Coszalter v. City of Salem, 320 F.3d 968, 977 (9th Cir. 2003) (holding that plaintiffs may prove that retaliation was a motivating factor by showing, *inter alia*, that the employer's proffered reason for the adverse action is pretextual). Schneider suggests that it had no choice but to cut plaintiffs' wages and benefits because the Court ordered it to do so. The Court did no such thing. As Schneider acknowledged in its ex parte application for clarification of the February 1 preliminary injunction, the only issues before the Court on February 24 were whether Schneider could "rehire" rather than "retain" the employees and whether Schneider was permitted to use a "randomized" list to determine the order in which the provisionally certified class members would be called to work. See Dkt. No. 192 at 5–6. At no point during the hearing did the Court rule that Schneider was required to reduce the wage and benefit package it had offered.[4]

---

[4] Schneider's assertion that it must pay workers only $11.00 per hour to conform to the "status quo" is similarly unavailing. This is so because plaintiffs have presented declarations from several class members that their hourly pay rate in February 2012 ranged from $12.09 to $13.95. See, e.g., Jimenez Decl. ¶ 12 (paid $13.95 per hour for February 11–17 and $12.09 per hour for February 18–24); Arceo Decl. ¶¶ 2, 13 (paid $13.92 per hour for February 4–10 and $12.96 per hour for February 11–17; paid $11.25 per hour when he first began working in the Mira Loma warehouses in October 2009); Perrusquia Decl. ¶¶ 2, 6–7 (paid $13.10 per hour for February 11–17. 2012, and $11.00 per hour when he first began working in the Mira Loma warehouses in 2009). Schneider ignores this testimony, preferring to rely upon the deposition testimony from Premier manager James Pittman. Pittman's testimony, however, is unavailing, because he

(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8557 CAS (DTBx) | Date | March 21, 2012 |
|---|---|---|---|
| Title | *EVERARDO CARRILLO, et al. v. SCHNEIDER LOGISTICS, INC., et al.* | | |

///

Next, the Court finds that Schneider's failure to provide notice of the Court's February 1, 2012 preliminary injunction to the provisionally certified class will also likely be found retaliatory. This is so because, insofar as the provisionally certified class members are never informed that their jobs have been saved, the Court's injunction is denied its intended effect. The Court rejects Schneider's argument that it should not be required to "duplicate" Premier's efforts.[5] This is so because the notice sent by Premier was likely deficient in scope and substance to inform all of the provisionally certified class members of their right to continued employment. Premier's notice made no reference to the WARN notice that was previously distributed to workers on November 18, 2011, and failed to mention the Court's February 1, 2012 injunction. Further, even if the notice were adequate for the approximately one-third of the provisionally certified class members who were working when the notice was physically distributed, it was likely inadequate for the approximately 60–70 remaining workers. This is so because the notice did not explain how the Court's February 1 injunction affected those workers' rights as work picked up again. Moreover, because it was sent only by standard mail, it

---

[4](...continued)
testified only that when Premier *first* started operating at the Mira Loma warehouses three years ago, it began by paying workers $11.00 per hour. See Pittman Depo. at 114:17–19. While Pittman testified that the "minimum wage in our minds . . . would be $11 an hour," Pittman did not testify that $11.00 was the current rate at which the workers were paid. Consequently, Schneider has not offered any evidence to contradict the declarations offered by plaintiffs showing that the $12.75 Schneider offered in late February was roughly comparable to what the provisionally certified class members were then being paid.

[5] On February 17 and February 18, 2012, Premier distributed a notice to workers currently working at the Mira Loma warehouses, which stated that those workers' employment would continue after February 24, and promised: "You will be provided with additional details regarding your status, employer and terms of your employment as soon as they become available." Dkt. No. 194-1, Ex. B at 9. Premier also mailed the same written notice to the other workers who had previously received a WARN Act Notice. Declaration of Truc Nguyen, ¶ 4. There is no indication in the record that Premier has provided the workers with any of the promised additional details.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8557 CAS (DTBx) | Date | March 21, 2012 |
|---|---|---|---|
| Title | *EVERARDO CARRILLO, et al. v. SCHNEIDER LOGISTICS, INC., et al.* | | |

likely failed to reach a substantial number of the absent workers.[6]

Finally, Schneider's failure to submit and provide notice of a seniority-based plan for recalling workers will likely also be found retaliatory. This is so because it is reasonable to expect that any other system for recalling workers would effectively result in the most experienced workers, who are most active in this lawsuit, being discriminated against on that basis.

### 2. Risk of Irreparable Harm

Schneider contends that plaintiffs cannot establish irreparable harm because any possible monetary damages could be repaid. Id. at 13–14.

The Court rejects this argument, and finds that plaintiffs would be irreparably harmed absent an injunction. While it is true that irreparable harm may not be present where plaintiffs could be adequately compensated through monetary damages at the conclusion of a trial on the merits, here damages would be insufficient to compensate plaintiffs for two reasons. First, as the Court has previously explained, irreparable harm results from the delays in compensation owed to plaintiffs as low-wage workers. See Dkt No. 43 at 7; Dkt. No. 186 at 14–16; Smith v. Sup. Ct., 39 Cal.4th 77, 82 (Cal 2006) ("Wages, are not ordinary debts . . . because of the economic position of the average worker . . . it is essential to the public welfare that he receive his pay when it is due."). Second, courts routinely recognize that retaliatory actions deter workers from vindicating their statutory rights and seeking access to courts, and that these injuries constitute irreparable harm. See, e.g., Mullins v. City of New York, 626 F.3d 47, 55 (2d Cir. 2010) ("Unchecked retaliation subverts the purpose of the FLSA" and "the resulting weakened enforcement of federal law can itself be irreparable harm in the context of a preliminary injunction application."); Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 938–39 (9th Cir. 1987) ("[A]llegations of retaliation for the exercise of statutorily protected rights

---

[6] Although the record does not show how many of the letters mailed by Premier were not received, or how many were returned as undeliverable, the testimony of two of the provisionally certified class members, Jose Gonzalez Garcia and Rafael Chavez Alexis, coupled with Schneider's apparent lack of follow-up, strongly suggest that many of these letters were never delivered to the class members to whom they were addressed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8557 CAS (DTBx) | Date | March 21, 2012 |
|---|---|---|---|
| Title | *EVERARDO CARRILLO, et al. v. SCHNEIDER LOGISTICS, INC., et al.* | | |

represent possible irreparable harm far beyond economic loss."). Absent the issuance of a preliminary injunction, Schneider's adverse actions threaten irreparable harm in this manner as well.

### 3. Balance of Hardships and the Public Interest

Schneider argues that the balance of hardships and public interest weigh against the issuance of further injunctive relief because an injunction would improperly intrude on Schneider's ability to operate its business and because plaintiffs are "attempting to use a procedural device to obtain substantive relief to which they have not proven they are entitled." Mot. at 14–15 (citing Anderson v. United States, 612 F.2d 1112, 1116 (9th Cir. 1979); Transwestern Pipeline Co. v. 17.19 Acres of Property, 550 F.3d 770, 776 (9th Cir. 2008)).

The Court disagrees. With respect to the balance of hardships, the Court has already concluded that Schneider's refusal to treat plaintiffs as continuing, retained employees warrants injunctive relief. See Dkt. No. 186 at 16–17. In any event, Schneider's "management-rights" argument that the Court lacks authority to order it to increase the workers' pay package; to require adequate notice that the workers' jobs have been saved; and to require seniority-based work allocation is unavailing. Given the extensive evidence of Schneider's continued retaliatory conduct in this case, the Court finds these remedies appropriate.[7] Finally, the public interest favors the issuance of further injunctive relief in this case. As the Court has explained, an anti-retaliation injunction serves the public interest due to the strong anti-retaliation policies underlying the federal and state statutory provisions at issue.[8] See Dkt. No. 186 at 16.

---

[7] The Court notes however that it does not require Schneider to pay wages above what the workers previously earned, but instead requires Schneider to pay a wage that is at least equivalent to what workers' were paid before Schneider decided to retain them as its own direct employees. On that basis, the Court requires Schneider to pay above $11.00 per hour because the evidence in the record establishes that $11.00 per hour is inadequate. See supra n. 5.

[8] Contrary to Schneider's contention, Anderson does not hold that a plaintiff is *never* entitled to relief of a substantive nature until after a final decision on the merits.

(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8557 CAS (DTBx) | Date | March 21, 2012 |
|---|---|---|---|
| Title | *EVERARDO CARRILLO, et al. v. SCHNEIDER LOGISTICS, INC., et al.* | | |

**B.　　Contempt**

Because the Court's previous orders did not specifically outline Schneider's responsibilities in retaining the workers, at this time, the Court denies plaintiffs' request for civil contempt sanctions without prejudice. See Whittaker Corp. v. Execuair Corp. 953 F.2d at 517.

**III.　CONCLUSION**

In accordance with the foregoing, the Court hereby GRANTS plaintiffs' motion for preliminary injunction. Schneider is hereby ordered, within ten days, to:

(1) Pay the workers a wage equivalent to that which they were earning before Schneider decided to retain them;

(2) Publish a seniority list (based on plaintiffs' seniority with Premier) that identifies the order in which all of the provisionally certified class members will be given work as the workload increases or decreases;

(3) Produce a list of all provisionally certified class members to plaintiffs' counsel and this Court, with all available contact information, including last known addresses and phone numbers;

(4) Prepare a written notice, to be approved by the Court after conferring with plaintiffs' counsel, stating that the class members continue to have jobs available to them at the Mira Loma warehouses, providing the details of their continued employment, informing them of their position on the seniority list, inquiring how they should be contacted as new work becomes available, and asking them to contact Schneider, either by phone or physically at the warehouses, if they are interested in the jobs;

(5) Mail the written notices to the class members, and provide a list to plaintiffs' counsel of the names of any class members for whom the notices come back as undeliverable, or who do not contact Schneider within four weeks after mailing; and

---

[8](...continued)
612 F. 2d at 1116. Likewise, Transwestern Pipeline Co., 550 F.3d at 776, merely stands for the principle that where the substantive statute at issue does not permit the relief sought, a preliminary injunction cannot provide that relief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8557 CAS (DTBx) | Date | March 21, 2012 |
|---|---|---|---|
| Title | *EVERARDO CARRILLO, et al. v. SCHNEIDER LOGISTICS, INC., et al.* | | |

    (6) Call class members who have phone numbers to inform them of the same information contained in the written notices, and provide plaintiffs' counsel the names of any class members who were unreachable by phone.

    Plaintiffs shall be permitted to provide community notice, including by posting the written notice in community centers and other locations where the provisionally certified class members are likely to see them.

    At this time, the Court denies plaintiffs' request for civil contempt sanctions.

    IT IS SO ORDERED.

                                                                                                                                                                 :     12

                                    Initials of Preparer      SMOM