THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
Traber & Voorhees
128 N. Fair Oaks Avenue, Suite 204
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com

MICHAEL RUBIN (SBN 80618)
JONATHAN WEISSGLASS (SBN 185008)
JENNIFER SUNG (SBN 254741)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
mrubin@altber.com
jweissglass@altber.com
jsung@altber.com

SANDRA C. MUÑOZ (SBN 190404)
Law Offices of Sandra C. Muñoz
5429 E. Beverly Blvd.
Los Angeles, CA 90022
Telephone: (323) 720-9400
Facsimile: (323) 720-9090
scm4law@att.net

(Add'l counsel on next page)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

EVERARDO CARRILLO, *et al.*, for themselves and all others similarly situated and the general public,

Plaintiffs,

v.

SCHNEIDER LOGISTICS, INC., *et al.*,

Defendants.

Case No. CV 11-8557 CAS (DTBx)

**JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL RESPONSES TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO SCHNEIDER LOGISTICS TRANSLOADING & DISTRIBUTION, INC.**

Date:             June 21, 2012
Time:            10:00 a.m.
Judge:          Hon. David T. Bristow

Discovery cutoff:   None set
Pretrial conf.:        None set
Trial date:            None set

Additional counsel for plaintiffs:

GUS T. MAY (SBN 159436)
KEVIN R. KISH (SBN 233004)
MATTHEW E. DECAROLIS (SBN 238595)
Bet Tzedek Legal Services
3435 Wilshire Blvd., Suite 470
Los Angeles, CA  90010
Telephone: (323) 939-0506
Facsimile: (213) 384-3524
gmay@bettzedek.org
kkish@bettzedek.org
mdecarolis@bettzedek.org

# **TABLE OF CONTENTS**

I.    Plaintiffs' Introductory Statement.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   Defendant's Introductory Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  First Issue in Dispute: Schneider's Refusal to Produce Wal-Mart
      Documents.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    The RFPs in Dispute and Schneider's Responses. . . . . . . . . . . . . . . . 7

      B.    Plaintiffs' Position. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      C.    SLTD's Position. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

            1.    Discovery Related to Wal-Mart Is Beyond the Scope of the
                  Claims in this Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

            2.    Plaintiffs Cannot Establish that Wal-Mart Is a Joint
                  Employer.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

                  a.    Plaintiffs Present No Evidence That Wal-Mart Hires or
                        Fires. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

                  b.    Plaintiffs Have No Evidence That Wal-Mart Supervises or
                        Controls Work Schedules.. . . . . . . . . . . . . . . . . . . . . . . 24

                  c.    Plaintiffs  Offer  No  Evidence  That  Wal-Mart
                        Determines Pay.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

                  d.    Plaintiffs  Offer  No  Evidence  That  Wal-Mart
                        Maintains Personnel Records.. . . . . . . . . . . . . . . . . . . . 26

            3.    The  Court  Should  Decline  to  Compel  SLTD  to
                  Produce Confidential Documents Relating to a Third
                  Party.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

                        a.    SLTD's Confidential Agreements With Non-Party,
                              Wal-Mart, Are Entitled To Special Protection. . . . 27

IV.   Second Issue in Dispute: Schneider's Destruction or Withholding of
      Responsive Documents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

      A.    The RFPs at Issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

|  | B. | Plaintiffs' Position. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 48 |
|  | C. | SLTD's Position. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 54 |
|  |  | 1. | The Court Should Deny the Motion Because Plaintiffs Failed To Meet And Confer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 54 |
|  |  | 2. | Plaintiffs' Demand For Extraordinary Relief Is Unwarranted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 57 |
| V. | Plaintiffs' Request for Attorneys' Fees.. . . . . . . . . . . . . . . . . . . . . . . . . . . | 59 |
|  | A. | Plaintiffs' Position. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 59 |
|  | B. | SLTD's Position. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 59 |

## I.     Plaintiffs' Introductory Statement

The plaintiffs in this class action lawsuit are current and former employees at three warehouses in Mira Loma who load and unload trucks with goods destined for Wal-Mart stores.  Wal-Mart, which has an ownership share in two of the warehouses, contracts with defendant Schneider Logistics Transloading and Distribution, Inc. ("Schneider") to operate the warehouses on its behalf.  Declaration of Lauren Teukolsky ("Teukolsky") Exhs. 2 & 3 at 38:24-39:10.

On October 17, 2011, plaintiffs filed this challenge to egregious wage-and-hour violations at the warehouses – including falsification of time records, concealment of wage rates, and failure to pay lawful wages – under both federal and California law. The First Amended Complaint, filed October 28, 2011, names Schneider, its parent Schneider Logistics, Inc., and two of Schneider's contractors – Impact Logistics ("Impact") and Premier Warehousing Ventures/Rogers-Premier Unloading ("Premier") – who, along with Schneider, jointly employ the plaintiff warehouse workers.  The complaint also names fifteen Doe defendants.  Teukolsky Exh. 12.

The Schneider-Impact class members *unload* boxes from trucks, and the Schneider-Premier class members *load* boxes.  During high volume periods, workers are required to perform this backbreaking work six or seven days per week, under oppressively hot and dusty conditions, often in excess of twelve hours per day. Teukolsky Exh. 12 (FAC) ¶¶ 9, 105, 115, 193; *see also, e.g.,* Exh. 8 (Carrillo Decl.) ¶4; Exh. 9 (Chavez Decl.) ¶10; Exh. 10 (Morales Decl.) ¶¶6, 10.

On December 7, 2011, after finding extensive violations of state and federal record-keeping and disclosure laws, the Court issued a TRO and then a preliminary injunction that required Schneider and the other defendants to comply with those laws. *See* Teukolsky Exhs. 11 & 13.  The Court concluded that plaintiffs were likely to prevail on their underlying claims, and that Schneider should be bound by the injunction.  *Id*.

In November 2011, Premier announced that it planned to cease operations in the warehouses, and that all of the workers then-employed by Premier and Schneider would

be terminated in late February 2012.  In light of extensive facts showing that Premier and Schneider terminated those workers in retaliation for protected conduct, the Court granted plaintiffs' motion for a second preliminary injunction, prohibiting Schneider and Premier from firing those workers.  Teukolsky Exh. 14. The Court concluded that plaintiffs were likely to show that Schneider and Premier were both "employers" of the targeted class, given Schneider's extensive control over the workers' hiring, firing, and terms of employment, and its broad contractual authority "to control almost every material term and condition of the workers' employment." *Id*. at 8.  Schneider opted to comply with the injunction by directly employing the Schneider-Premier workers.

Plaintiffs are currently investigating the extent to which Wal-Mart, Schneider's *only* customer in the warehouses, may be responsible for the violations alleged in this lawsuit.  The pending discovery, to which Schneider has flatly refused to respond, is a primary subject of the motion to compel.  As alleged in the complaint, Wal-Mart could be jointly and severally responsible under the theory that it conspired with the other defendants to commit labor violations, or because, like Schneider, it is an "employer" of some or all of the class members, Teukolsky Exh. 12 ¶¶79-89.  Discovery concerning Wal-Mart and the obligations it imposed upon Schneider and others may also be relevant to establish *why* Schneider imposed certain terms and conditions upon the workers, which is relevant to Schneider's own liability as a joint employer.   The deadline for naming new defendants is September 3, 2012.  Teukolsky Exh. 15.

On February 1, 2012, plaintiffs served Schneider with a First Request for the Production of Documents ("RFPs").  Several of these RFPs seek documents calculated to discover the extent of Wal-Mart's direct or indirect control over the workers' terms and conditions of employment, both contractually and in practice.  Schneider provided responses on March 12, and supplemental responses on April 4.  The parties were able to resolve most disputes through extensive meet and confers.  Teukolsky Exh. 1 & ¶43. However, two issues remain that require Court resolution.

First, Schneider refuses to produce *any* documents related to Wal-Mart, such as Schneider's contracts with Wal-Mart; communications with Wal-Mart regarding the work that the class members perform; or any Wal-Mart policies governing the plaintiffs. These documents are highly relevant because they will enable plaintiffs to determine the extent to which Schneider acted at the behest of Wal-Mart, and whether Wal-Mart itself bears responsibility as an employer, agent or co-conspirator with the other defendants. Communications between Schneider and Wal-Mart that discuss unloading and loading, quotas, pay practices, and minimum labor requirements are all relevant to this inquiry.

Second, Schneider has responded to about 20 RFPs by stating that it has conducted a "diligent search," but has been unable to locate any responsive documents. Alternatively, Schneider claims that it has now produced all documents responsive to certain requests.   As to several of those RFPs, though, Schneider's responses are demonstrably false.   We know this, because Impact and Premier recently produced documents *created by Schneider* that are directly responsive to plaintiffs' requests, but that Schneider has failed to produce.  For example, Schneider claims that there are no Schneider training materials or policies that apply to the Schneider-Impact and Schneider-Premier workers.  Both Impact and Premier, however, have produced dozens of pages of training materials and workplace rules *authored by Schneider* applicable to plaintiffs.  We detail several more examples below demonstrating that Schneider is either withholding or has destroyed crucial documents that are probative of its joint employer status, and that are responsive to plaintiffs' requests.

In light of Schneider's blatant discovery misconduct, plaintiffs request that the Court order Schneider to produce for deposition, at its expense, a custodian of records to explore Schneider's non-compliance with its discovery obligations.  Plaintiffs further request that the Court permit plaintiffs to retain, at Schneider's expense, an outside vendor experienced in electronic document retrieval to collect responsive documents, as detailed below.  These remedies are appropriate where there is evidence that a party is withholding responsive documents. *See Wingnut Films, Ltd. v. Katja Motion Pictures*

1    *Corp.*, 2007 U.S. Dist. LEXIS 72953 (C.D. Cal. Sept. 18, 2007); *Tulip Computers Int'l*

2    *B.V. v. Dell Computer Corp.*, 2002 U.S. Dist. LEXIS 7792, 2002 WL 818061 (D. Del.

3    Apr. 30, 2002).

4    **II.    Defendant's Introductory Statement**

5          Defendant Schneider Logistics Transloading and Distribution, Inc. ("SLTD")

6    operates out of a facility located in Mira Loma, California ("Mira Loma warehouse

7    facility") and provides internal warehousing services. SLTD contracted loading and

8    unloading functions at the Mira Loma warehouse facility from independent third-party

9    vendors, Premier Warehousing Ventures, LLC ("PWV") and Impact Logistics, LLC

10   ("Impact"). Under the vendor agreements, PWV and Impact hired and employed

11   Plaintiffs and the alleged putative class members to perform these services. PWV and

12   Impact had the sole responsibility on the material terms of employment including hiring,

13   discipline, onsite management, training, determining rate of pay, timekeeping and

14   compliance.

15         On October 17, 2011, Plaintiffs filed a class action against their direct employers,

16   PWV and Impact, alleging violations of the California Labor Code and Fair Labor

17   Standards Act.  Plaintiffs brought claims against Schneider Logistics, Inc. ("SLI"),

18   SLTD's parent company, as an alleged joint employer. Plaintiffs later amended the

19   complaint and added SLTD as an alleged joint employer.

20         Plaintiffs subsequently filed a preliminary injunction against Defendants.

21   Although the record establishes that SLI and SLTD do not employ any of the Plaintiffs

22   and have no statutory obligations to record their hours or pay their wages or overtime,

23   the Court extended the injunction to SLI and SLTD. <u>However, despite Plaintiffs'</u>

24   <u>overstated characterization of SLTD and SLI as "joint employers," the Court never</u>

25   <u>concluded that SLTD or SLI were or are "joint employers" of Impact and PWV</u>.  The

26   Court's order made clear that it was only a *preliminary* determination for purposes of

27   the preliminary injunction and not a final determination as to whether SLTD and SLI

28

---

1   were joint employers of PWV and Impact employees.  The Court's order also has never

2   concluded that SLTD and SLI were the Plaintiffs' *actual* employers.

3       Plaintiffs' discovery motion addresses two issues:  (1) documents relating to

4   Wal-Mart, for the purpose of establishing whether Wal-Mart is a joint employer; and (2)

5   electronic discovery of SLTD's computers and a deposition for allegedly failing to turn

6   over documents.  The Court should deny Plaintiffs' efforts in this regard.

7       First, the Court should recognize that Plaintiffs' efforts to seek documents from

8   Wal-Mart is groundless, intended to harass, and beyond the scope of discovery in this

9   case.  On March 7, 2012, this Court granted bifurcated discovery for the purpose of

10  *focused* discovery on *Defendants'* alleged control over Plaintiffs' employment in the

11  Mira Loma warehouses.  The parties believed that this discovery would materially

12  advance settlement discussions. (Teukolsky Decl., Ex 15.) Plaintiffs admit the purpose

13  they are requesting documents related to Wal-Mart is to determine whether "Wal-Mart

14  itself bears some responsibility as an employer, agent, or co-conspirator of the other

15  defendants."  This reason clearly has no bearing on the claims Plaintiffs currently have

16  because the joint employer issues here involve *solely* SLTD, SLI, and the vendors PWV

17  and Impact.  (Teukolsky Decl., Exh 15.)  Because Plaintiffs' discovery goes beyond the

18  scope of the agreed upon discovery, the Court should reject Plaintiffs' discovery as

19  irrelevant.

20      Moreover, the record does not establish that Wal-Mart has a joint employer

21  relationship with SLTD, SLI or with PWV and Impact.  Now, Plaintiffs attempt to tether

22  Wal-Mart as a joint-employer with PWV and Impact based on Wal-Mart's agreements

23  with SLTD.  However, no evidence exists in the record that Wal-Mart:  (1) hires, fires,

24  or disciplines Plaintiffs; (2) assigns and directs the work of Plaintiffs; (3) determines

25  their rate of pay or (4) maintains payroll and personnel records of Plaintiffs.  *Bonnette*

26  *v. California Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983).  Plaintiffs'

27  evidence regarding Wal-Mart's involvement is purely speculative and conclusory, and,

28

1  as explained below, does not satisfy *any* of the *Bonnette* factors.   Thus, Plaintiffs'

2  motion to compel the production of documents related to Wal-Mart should be denied.

3  The clear conclusion is that Plaintiffs' discovery is intended to harass SLTD.   For

4  example, Plaintiffs contend that they raised Wal-Mart's joint and several liability in the

5  Complaint.   Yet, the Complaint merely makes two passing references to Wal-Mart but

6  makes no allegations concerning Wal-Mart's potential joint and several liability for any

7  claim in this action.  (Teukolsky Exh. 12 ¶¶ 80 (f) and 83(c)).

8      Second, the Court should reject Plaintiffs' demand for an outside vendor to

9  conduct electronic discovery as unfounded and premature.   As an initial matter, SLTD

10  has been diligent in responding to discovery Plaintiffs, having produced over 5700

11  documents to date.   The fact that SLTD has not produced similar documents as

12  co-defendants PWV and Impact is not indicative of non-compliance with the letter or

13  spirit of the discovery rules.

14      More importantly, Plaintiffs have failed to act in good faith regarding alleged

15  non-compliance with discovery obligations.  When Plaintiffs raised the fact that there

16  may be documents responsive to Plaintiffs' request that co-defendants PWV and Impact

17  already produced, SLTD expressed a willingness to work with Plaintiffs to develop

18  search terms in order to locate such documents. Notwithstanding SLTD's willingness

19  to reach a reasonable and informal resolution to the issues presented in this motion,

20  Plaintiffs' counsel chose to bypass the meet and confer process and demand further

21  discovery through a motion to compel. For this reason alone, Plaintiffs' motion to

22  compel should be denied.

23      In sum, the Court should deny Plaintiffs' motion to compel.

24  **III.   First Issue in Dispute: Schneider's Refusal to Produce Wal-Mart Documents**

25      The first issue is Schneider's refusal to produce any documents regarding Wal-

26  Mart, or any communications between Schneider and Wal-Mart.  This section first lists

27  all of the RFPs in dispute, along with Schneider's responses and objections.  It then sets

28  forth plaintiffs' position regarding these RFPs, followed by Schneider's position.

**A.     The RFPs in Dispute and Schneider's Responses**

**REQUEST NO. 5:**

Any DOCUMENTS reflecting, recording and/or regarding any discussions, negotiations and/or communications within SLTD and/or between SLTD and any other person or entity (including but not limited to PWV, ROGERS-PREMIER, IMPACT, SLI, SNI, and WAL-MART, and/or any other person or entity) regarding the parties' performance under the 2011-2013 IMPACT CONTRACT and/or any predecessor contracts.

**RESPONSE TO REQUEST NO. 5:**

Defendant objects to this Request on the grounds that lacks foundation, assumes facts not in evidence, and is vague and ambiguous as to the term "parties' performance." Defendant further objects to this Request on the grounds that it is overly broad as to time and scope.  Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive.  Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.   Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendant responds as follows:

Defendant produced all non-privileged responsive documents in Defendant's possession, custody and/or control with respect to PWV.

Defendant will produce non-privileged responsive documents in Defendant's possession, custody and/or control with respect to Rogers-Premier, Impact and SLI to the extent any exist.

**REQUEST NO. 6:**

Any DOCUMENTS reflecting, recording and/or regarding any discussions, negotiations and/or communications within SLTD and/or between SLTD and any other person or entity (including but not limited to PWV, ROGERS-PREMIER, IMPACT, SLI, SNI, and WAL-MART, and/or any other person or entity) regarding the parties' performance under the 2011-2013 PWV CONTRACT and/or any predecessor contracts.

**RESPONSE TO REQUEST NO. 6:**

Defendant objects to this Request on the grounds that lacks foundation, assumes facts not in evidence, and is vague and ambiguous as to the term "parties' performance." Defendant further objects to this Request on the grounds that it is overly broad as to time and scope. Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive. Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendant responds as follows:

Defendant produced all non-privileged responsive documents in Defendant's possession, custody and/or control with respect to PWV and Impact.

Defendant conducted a diligent search and reasonable inquiry, has been unable to locate such documents and do not believe such responsive documents exist with respect to Rogers-Premier and SLI.

**REQUEST NO. 32:**

DOCUMENTS that reflect or refer to guidelines, policies, practices, or procedures governing the EMPLOYEES at the WAREHOUSES during the RELEVANT TIME PERIOD. Such documents include guidelines or directives on work and/or production requirements; employment standards; safety measures and training; workplace rules; hiring guidelines; employment applications; orientation manuals or videos; and/or training manuals or videos prepared or used by YOU, WAL-MART, and/or any other entity.

**RESPONSE TO REQUEST NO. 32:**

Defendant objects to this Request on the grounds that it lacks foundation, , is vague and ambiguous. Defendant further objects to this Request on the grounds that it is overly broad as to time and scope.  Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive.  Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence  Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendant responds as follows:

Defendant conducted a diligent search and reasonable inquiry, has been unable to locate such documents and do not believe documents responsive to this request exist.

**REQUEST NO. 39:**

Any COMMUNICATIONS between YOU and WAL-MART or any other entity discussing the benefits or detriments of subcontracting the loading and unloading work in the WAREHOUSES as opposed to directly employing personnel to do the work.

**RESPONSE TO REQUEST NO. 39:**

Defendant objects to this Request on the grounds that it lacks foundation, assumes facts not in evidence, is vague and ambiguous as to "benefits or detriments." Defendant further objects to this Request on the grounds that it is overly broad as to time and scope. Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive. Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**REQUEST NO. 54:**

All contracts entered into between WAL-MART and YOU and/or one of YOUR affiliated companies to provide services in the WAREHOUSES.

**RESPONSE TO REQUEST NO. 54:**

Defendant objects to this Request on the grounds that it lacks foundation, is vague and ambiguous. Defendant further objects to this Request on the grounds that it is overly broad as to time and scope. Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive. Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**REQUEST NO. 55:**

COMMUNICATIONS between YOU and WAL-MART regarding the provision of unloading or loading services at the WAREHOUSES.

1   **RESPONSE TO REQUEST NO. 55:**

2           Defendant objects to this Request on the grounds that it lacks foundation, is vague

3   and ambiguous.  Defendant further objects to this Request on the grounds that it is

4   overly broad as to time and scope.  Defendant further objects to this Request on the

5   grounds that it is unduly burdensome and oppressive.  Defendant further objects to this

6   Request on the grounds that it seeks information that is not relevant to the subject matter

7   of this litigation and is not reasonably calculated to lead to the discovery of admissible

8   evidence.    Defendant further objects to this Request on the grounds that it seeks

9   private, privileged, and confidential commercial, financial, and/or proprietary business

10  information.

11  **REQUEST NO. 56:**

12          To the extent not produced in response to the foregoing request, DOCUMENTS

13  that YOU received from WAL-MART containing or discussing any directives,

14  instructions or guidelines regarding the provision of unloading or loading services at the

15  WAREHOUSES.

16  **RESPONSE TO REQUEST NO. 56:**

17          Defendant objects to this Request on the grounds that it lacks foundation, is vague

18  and ambiguous.  Defendant further objects to this Request on the grounds that it is

19  overly broad as to time and scope.  Defendant further objects to this Request on the

20  grounds that it is unduly burdensome and oppressive.  Defendant further objects to this

21  Request on the grounds that it seeks information that is not relevant to the subject matter

22  of this litigation and is not reasonably calculated to lead to the discovery of admissible

23  evidence.    Defendant further objects to this Request on the grounds that it seeks

24  private, privileged, and confidential commercial, financial, and/or proprietary business

25  information.

26

27  //

28  //

**REQUEST NO. 57:**

DOCUMENTS that contain or discuss any of WAL-MART's requirements, instructions or guidelines regarding YOUR contracts with subcontractors providing services in the WAREHOUSES.

**RESPONSE TO REQUEST NO. 57:**

Defendant objects to this Request on the grounds that it lacks foundation, assumes fats not in evidence, is vague and ambiguous.  Defendant further objects to this Request on the grounds that it is overly broad as to time and scope.  Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive.  Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**REQUEST NO. 58:**

All DOCUMENTS setting forth, discussing or regarding any policies created by or provided to YOU by WAL-MART that have applied to the WAREHOUSES or any EMPLOYEES who work in the WAREHOUSES.

**RESPONSE TO REQUEST NO. 58:**

Defendant objects to this Request on the grounds that it lacks foundation, assumes facts not in evidence, is vague and ambiguous.  Defendant further objects to this Request on the grounds that it is overly broad as to time and scope.  Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive. Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Defendant further objects to this Request on the

1  grounds that it seeks private, privileged, and confidential commercial, financial, and/or

2  proprietary business information.

3  **REQUEST NO. 59:**

4          Any DOCUMENTS regarding or reflecting the contents of any meetings during

5  the RELEVANT TIME PERIOD between YOU and any WAL-MART employee,

6  manager or agent in which the work of PWV or IMPACT was discussed, including

7  minutes, notes, e-mails, agendas or reports.

8  **RESPONSE TO REQUEST NO. 59:**

9          Defendant objects to this Request on the grounds that it lacks foundation, assumes

10 facts not in evidence, is vague and ambiguous.  Defendant further objects to this

11 Request on the grounds that it is overly broad as to time and scope.  Defendant further

12 objects to this Request on the grounds that it is unduly burdensome and oppressive.

13 Defendant further objects to this Request on the grounds that it seeks information that

14 is not relevant to the subject matter of this litigation and is not reasonably calculated to

15 lead to the discovery of admissible evidence.  Defendant further objects to this Request

16 on the grounds that it seeks private, privileged, and confidential commercial, financial,

17 and/or proprietary business information.

18 **REQUEST NO. 60:**

19         All COMMUNICATIONS between YOU and WAL-MART regarding any aspect

20 of this lawsuit, including, but not limited to, the Temporary Restraining Order (Doc. 43)

21 or Preliminary Injunction (Doc. 106) entered by the Court.

22 **RESPONSE TO REQUEST NO. 60:**

23         Defendant objects to this Request on the grounds that it lacks foundation, assumes

24 facts not in evidence, is vague and ambiguous.  Defendant further objects to this

25 Request on the grounds that it is overly broad as to time and scope.  Defendant further

26 objects to this Request on the grounds that it is unduly burdensome and oppressive.

27 Defendant further objects to this Request on the grounds that it seeks information that

28 is not relevant to the subject matter of this litigation and is not reasonably calculated to

1  lead to the discovery of admissible evidence.  Defendant further objects to this Request

2  on the grounds that it seeks private, privileged, and confidential commercial, financial,

3  and/or proprietary business information.

4  **REQUEST NO. 61:**

5      All COMMUNICATIONS between YOU and WAL-MART regarding PWV or

6  IMPACT.

7  **RESPONSE TO REQUEST NO. 61:**

8      Defendant objects to this Request on the grounds that it lacks foundation, assumes

9  facts not in evidence, is vague and ambiguous.  Defendant further objects to this

10 Request on the grounds that it is overly broad as to time and scope.  Defendant further

11 objects to this Request on the grounds that it is unduly burdensome and oppressive.

12 Defendant further objects to this Request on the grounds that it seeks information that

13 is not relevant to the subject matter of this litigation and is not reasonably calculated to

14 lead to the discovery of admissible evidence.  Defendant further objects to this Request

15 on the grounds that it seeks private, privileged, and confidential commercial, financial,

16 and/or proprietary business information.

17 **REQUEST NO. 62:**

18     Any reports or other DOCUMENTS provided by YOU to WAL-MART regarding

19 PWV's metrics or performance in the WAREHOUSES.

20 **RESPONSE TO REQUEST NO. 62:**

21     Defendant objects to this Request on the grounds that it lacks foundation, assumes

22 facts not in evidence, is vague and ambiguous.  Defendant further objects to this

23 Request on the grounds that it is overly broad as to time and scope.  Defendant further

24 objects to this Request on the grounds that it is unduly burdensome and oppressive.

25 Defendant further objects to this Request on the grounds that it seeks information that

26 is not relevant to the subject matter of this litigation and is not reasonably calculated to

27 lead to the discovery of admissible evidence.   Defendant further objects to this Request

28

on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**REQUEST NO. 63:**

Any reports or other DOCUMENTS provided by YOU to WAL-MART regarding IMPACT's metrics or performance in the WAREHOUSES.

**RESPONSE TO REQUEST NO. 63:**

Defendant objects to this Request on the grounds that it lacks foundation, assumes facts not in evidence, is vague and ambiguous.  Defendant further objects to this Request on the grounds that it is overly broad as to time and scope.  Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive. Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**REQUEST NO. 64:**

All DOCUMENTS regarding or providing support for the statement in Section 2.04 of the 2011-2013 PWV CONTRACT that "Wal-Mart requires that its vendors and their contractors utilize only such workers who are not only properly qualified and legally eligible to work in the Unites States, but whose character and background have been vetted."

**RESPONSE TO REQUEST NO. 64:**

Defendant objects to this Request on the grounds that it lacks foundation, is vague and ambiguous.  Defendant further objects to this Request on the grounds that it is overly broad as to time and scope.  Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive.  Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible

evidence.   Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**REQUEST NO. 68:**

All DOCUMENTS that WAL-MART provided to the media regarding or discussing any aspect of this lawsuit, including any press releases or other written statements.

**RESPONSE TO REQUEST NO. 68:**

Defendant objects to this Request on the grounds that it lacks foundation, assumes facts not in evidence, is vague and ambiguous.  Defendant further objects to this Request on the grounds that it is overly broad as to time and scope.  Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive. Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request on the grounds that the information sought is a matter of public record and, therefore, equally accessible to Plaintiff.

**B.    Plaintiffs' Position**

Schneider refuses to search for or produce any documents related to Wal-Mart on the grounds that they are irrelevant.  Teukolsky Exhs. 6, 7 & 16.  These include communications with Wal-Mart discussing the provision of loading or unloading labor services in the warehouses (RFP 55); communications with Wal-Mart discussing Premier or Impact (RFPs 61, 62, 63); Schneider's contracts with Wal-Mart to operate the warehouses (RFP 54); requirements that Wal-Mart imposes on Schneider about the workforce it retains to perform the loading and unloading work (RFPs 56-57, 64); and Wal-Mart policies that apply to the class members (RFP 58).

The Court should compel Schneider to search for and produce these documents because they are highly relevant to determining whether and to what extent Schneider acted at the behest or direction of Wal-Mart (which is relevant to Schneider's intent and the scope of its responsibility as an "employer"), and whether Wal-Mart itself bears any responsibility for the violations at issue (which plaintiffs must determine by the September 3, 2012 deadline for adding new defendants, *see* Teukolsky Exh. 15). Fed. R. Civ. Proc. 26(b)(1) provides:  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

The Rule 26 standard is very broad.  *See Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997) ("Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence; but the discoverable information need not be admissible at the trial"; "party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."); *Kaufman v. Board of Trustees*, 168 F.R.D. 278, 280 (C.D. Cal. 1996) ("Rule 26(b) is liberally interpreted to permit wide-ranging discovery . . . . The burden of proof is on the party opposing discovery to claim lack of relevancy and privilege.").

Plaintiffs' requests are calculated to lead to the discovery of admissible evidence because the existing facts strongly suggest that Wal-Mart played a central role in setting the terms and conditions of plaintiffs' employment, both directly and indirectly, through its contracts with Schneider and its extensive on-site presence at defendants' Mira Loma warehouses.  Federal and California law broadly define "employer."  "The definition of 'employer' under the FLSA is not limited by the common law concept of 'employer,'

1    and is to be given an expansive interpretation in order to effectuate the FLSA's broad

2    remedial purposes." *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465,

3    1469 (9th Cir. 1983), *abrogated on other grounds*, *Garcia v. San Antonio Metropolitan*

4    *Transit Authority*, 469 U.S. 528, 539 (1985).   Under federal law, joint employment

5    status turns on the "economic reality" of the workplace relationship. *Torres-Lopez v.*

6    *May*, 111 F.3d 633, 639 (9th Cir. 1997) (setting forth multiple factors that might show

7    an entity's direct or indirect control over workers).   Similarly, California law broadly

8    defines an "employer" as any entity that exercises control over wages, hours, or working

9    conditions. *Martinez v. Combs*, 49 Cal.4th 35, 59 (2010).

10        All of plaintiffs' requests seek information that would show whether Wal-Mart

11   exercises either direct or indirect control over the terms and conditions of plaintiffs'

12   employment, or dictated that Schneider do so, and that would illuminate the "economic

13   reality" of the provision of labor services in the warehouses.   Therefore, the requests are

14   calculated to lead to the discovery of admissible evidence on Schneider's and Wal-

15   Mart's potential status as "employers," agents, or co-conspirators under federal and

16   California law.

17        The following are some of the facts pertaining to Wal-Mart's involvement that

18   plaintiffs have already obtained as a result of initial, limited discovery.[1]   Schneider

19   operates the warehouses exclusively on Wal-Mart's behalf, which means that the

20   plaintiffs are loading and unloading only Wal-Mart's goods.   Teukolsky Exh. 3 at

21   38:24-39:10.   Tax records show that Wal-Mart owns one of the warehouses in its

22   entirety, and has a part ownership share in another.   Teukolsky Exh. 2.   Impact states in

23   its documents that it has been working in the "Wal Mart Mira Loma" warehouses since

24   2001, well before Schneider started operating the warehouses in 2006.   Teukolsky Exh.

25   29 at Impact 52.

26

27        [1] Plaintiffs have obtained these facts through the four limited depositions that
     have taken place to date; the documents produced by Impact and Premier; the limited
28   documents produced by Schneider; and publicly available information.   Teukolsky
     Decl. ¶44.

Schneider's contracts with Impact and Premier to provide labor services repeatedly refer to the requirements that Wal-Mart imposes on the loaders and unloaders who work in its warehouses. The contracts state that the labor services provided are for Schneider's "Wal-Mart account." Teukolsky Exh. 26 at SCH/LOMA 326; Exh. 27 at SCH/LOMA 340. The contracts require Impact and Premier to create orientation materials that require all workers to "comply with the basic policies of the specific facility and the customer [Wal-Mart] (i.e., no use of cell phones, no running or horseplay, etc.)." Teukolsky Exh. 26 at SCH/LOMA 329; Exh. 27 at SCH/LOMA 343.

The contracts make clear that Wal-Mart imposes numerous conditions on Schneider about the qualifications that loaders and unloaders must meet before being hired in the warehouses. *See* Teukolsky Exh. 27 at SCH/LOMA 341 (contracts state that Wal-Mart "require[s] that any worker assigned to perform work which may involve the handling of their product meet certain qualifications"). The contracts require Impact and Premier to use 17 pre-screening, orientation and training requirements before any individual worker may be put to work in a Mira Loma warehouse to comply with Wal-Mart's requirement "that its vendors and their contractors utilize only such workers who are not only properly qualified and legally eligible to work in the Unites States, but whose character and background have been vetted." Teukolsky Exh. 26 at SCH/LOMA 327. The contracts further require Premier to meet with Schneider's Human Resources Director to ensure that Premier's background check policy for new employees complies with the policies of both Schneider and Wal-Mart. *Id*. at SCH/LOMA 329. Wal-Mart also created multiple choice tests for Impact and Premier to administer to loaders and unloaders to ensure that they are sufficiently trained. Teukolsky Exh. 18.

In addition to the hiring and workplace requirements that Wal-Mart imposes on the plaintiffs, Wal-Mart is intimately involved with the operations of the warehouses. All of the managers who work in the warehouses meet at 8:00a.m. every morning, including a Wal-Mart employee named Hector Avalos. Teukolsky Exh. 4 at 26:6-27:17. Mr. Avalos has an office in Building One, where the other high-level operations

1    managers are located. *Id*. at 27:18-21.  The security personnel who staff the warehouse

2    (and who keep security logs tracking the comings and goings of the plaintiffs) work for

3    Wal-Mart. *Id*. at 60:9-17; Exh. 3 at 86:23-25.  The "Walmart visitor log" and other logs

4    produced by Schneider show that Wal-Mart employees routinely visit the warehouses.

5    Teukolsky Decl. Exh. 28.

6        Wal-Mart employees frequently communicate directly with Premier and Impact

7    employees, providing instructions on staffing levels, productivity, worker misconduct,

8    and other topics.  For example, the documents show that individuals with Wal-Mart

9    email addresses have reprimanded Impact workers for various reasons, such as failing

10   to provide enough unloaders on various shifts (Teukolsky Exh. 36), and failing to

11   comply with safety protocols (Teukolsky Exh. 37).  Premier and Impact regularly send

12   productivity reports, invoices, and other communications to individuals with Wal-Mart

13   email addresses.  Several of the emails from individuals with Wal-Mart addresses have

14   a disclaimer at the end stating that they are "Walmart Confidential."  Teukolsky Decl.

15   ¶41 & Exhs. 24, 36, 37, 39, 40.

16       A letter sent by Schneider employee Scott Larson further indicates that Wal-Mart

17   set productivity standards for the Impact and Premier workers, and that when worker

18   productivity declined, Wal-Mart reduced its compensation to Schneider.  Teukolsky

19   Decl. Exh. 23.  The documents also suggest that the prices Schneider was willing to pay

20   to Impact and Premier for providing labor services depended on the prices that Wal-

21   Mart paid to Schneider.  Teukolsky Exh. 5 at 57:7-58:4; Exh. 25.

22       These facts, which plaintiffs have gathered from the extremely limited discovery

23   done to date, strongly suggest that Wal-Mart has both direct and indirect control over

24   the terms and conditions of plaintiffs' work.  Wal-Mart appears to set hiring standards

25   for the plaintiffs; to set productivity requirements for the plaintiffs; to influence the

26   wages paid to plaintiffs; to establish workplace conduct rules that plaintiffs must follow;

27   and to discipline the plaintiffs (or their supervisors) for failing to adhere to certain

28   standards.  Wal-Mart has an ownership stake in two of the three warehouses; the

1  plaintiffs move goods that belong exclusively to Wal-Mart; Wal-Mart employees

2  frequently visit the warehouses; and Wal-Mart has a manager in the warehouse who

3  helps oversee operations.  Simply put, this is not a fishing expedition, but is based on

4  concrete facts.   Plaintiffs respectfully request that the Court order Schneider

5  immediately to search for and produce documents responsive to all of the RFPs listed

6  above in Section A.

7      **C.   SLTD's Position**

8          **1.     Discovery Related to Wal-Mart Is Beyond the Scope of the**

9                **Claims in this Case.**

10     The Court should deny Plaintiffs' requested discovery regarding Wal-Mart as

11  irrelevant and beyond the scope of the claims in this case.  As explained above, the

12  parties had agreed to limited discovery on joint employer issues relating to the

13  *Defendants* in this case.  The parties did not agree that Plaintiffs could extend discovery

14  and seek out additional potential joint employers.  In fact, this would not make sense

15  because no such joint employers exist.

16     In this case, it is indisputable that Plaintiffs were directly employed by Premier

17  and Impact.  In turn, Premier and Impact served as vendors to SLTD.  The only

18  connection between Plaintiffs and Wal-Mart is that Plaintiffs handle Wal-Mart's goods

19  in the Mira Loma warehouse facility.  The fact that SLTD has a business relationship

20  with Wal-Mart does not create even an inference of a joint employer relationship

21  between Plaintiffs and Wal-Mart.  No contractual relationship exists between Wal-Mart

22  and PWV and Impact (the direct employers of the Plaintiffs).  Plaintiffs' connection to

23  Wal-Mart is attenuated and separated by at least three degrees.    The attenuated

24  relationship between Wal-Mart and the Plaintiffs makes the discovery Plaintiffs seek

25  irrelevant to the claims asserted in the case.

26     Additionally, Plaintiffs' discovery goes well beyond what is needed to address

27  joint employer issues that <u>allegedly</u> exist between SLTD and PWV and/or Impact.  For

28  example, Plaintiffs seek:

1      •    Documents regarding performance (Request Nos. 5-6)

2      •    SLTD's Contracts with Wal-Mart (Request No. 54)

3      •    Communications regarding the temporary restraining order or preliminary

4           injunction (No. 60)

5      •    Communications with Wal-Mart regarding Impact or Premier (No. 61)

6      •    Documents regarding the vendors' performance (Nos. 62, 63)

7      •    Documents Wal-Mart provided regarding media (No. 68)

8          These requests are irrelevant to joint employer issues that allegedly exist between

9    SLTD and PWV and/or Impact and Plaintiffs' motion should be denied.

10              **2.    Plaintiffs Cannot Establish that Wal-Mart Is a Joint Employer**

11         In the Ninth Circuit, to establish a joint employer relationship, the burden falls on

12   the Plaintiffs to show whether: "the alleged employer (1) had the power to hire and fire

13   the employees, (2) supervised and controlled employee work schedules or conditions of

14   employment, (3) determined the rate and method of payment, and (4) maintained

15   employment records." *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465,

16   1470 (9th Cir. 1983) (internal citations omitted).

17         The Court should question the motives underlying Plaintiffs' requested discovery

18   of Wal-Mart documents.  As an initial matter, the Court should note that this litigation

19   has been ongoing for nearly nine months.  If Wal-Mart exercised control over hiring,

20   firing, work schedules, pay, or personnel records, Plaintiffs and their counsel would have

21   *direct knowledge and evidence* of this control by now.  Yet, despite filing numerous

22   declarations with the court in support of injunctive relief (Plaintiffs submitted some of

23   these documents with this motion to compel), none of those declarations provide any

24   direct evidence of supervision or control by SLTD or Wal-Mart over Plaintiffs and the

25   other employees of PWV and Impact.

26         More than a month ago, the Court granted provisional class certification which has

27   given the Plaintiffs a list of the potential plaintiffs' names, addresses, and telephone

28   numbers.  For more than a month, Plaintiffs have had an opportunity to collect direct

Joint Stip. re Schneider RFPs;
Case No. CV 11-8557 CAS (DTBx)          -22-

1  evidence of Wal-Mart's alleged control over the workforce at the Mira Loma warehouse

2  facility.  Despite this access, Plaintiffs provide no evidence showing that Wal-Mart

3  controlled or directed Plaintiffs' work and, instead, they rely on vague allegations that

4  fail to establish any of the four factors espoused by the Ninth Circuit in *Bonnette*.

5          Unable to come forward with any evidence, the obvious conclusion is that Plaintiff

6  is harassing SLTD with irrelevant discovery requests.  Their purported evidence of a

7  joint employer relationship, which frequently misstates the record, falls well short of the

8  *Bonnette* standards.

9                    a.   **Plaintiffs Present No Evidence That Wal-Mart Hires or Fires**

10         Plaintiffs do not present any evidence that Wal-Mart exercises any control over

11 hiring and firing.   At best, Plaintiffs point to allegations that they (1) "load and unload

12 Wal-Mart goods"; (2) Wal-Mart owns one of the warehouses; (3) Impact has been at the

13 warehouse since 2001.   None of these alleged facts demonstrate that Wal-Mart has the

14 power to hire and fire PWV or Impact employees, nor is there any direct, competent

15 evidence of hiring or firing of employees at the warehouses by Wal-Mart.   These

16 allegations only show that the Plaintiffs work at a facility which is not out of the ordinary

17 in a contractor/vendor type relationship. *See Moreau v. Air France*, 356 F.3d 942 (9th

18 Cir. 2004).

19         In fact, SLTD's agreements with PWV and Impact reflect that PWV and Impact

20 are solely responsible for the hiring, firing, and disciplining of their employees.

21 (Plaintiffs' Exh. 27 (Impact Agreement Section 2.05); Plaintiffs' Exh. 26 (PWV

22 Agreement Sections 2.02, 2.04).  The authority to fire remains solely with PWV and

23 Impact, as recognized by Impact's counsel at a TRO hearing where Impact made the

24 decision after "heavy-duty investigation" to remove a supervisor and manager from the

25 Mira Loma warehouse facility.  (Hearing Transcript pp. 29:18-25 to 30:2) Not only do

26 these agreements establish that SLTD is not involved in the hiring, firing, or discipline,

27 but also they clearly leave no room for Wal-Mart's potential involvement.  In fact, there

28 are no facts in the record even alleging Wal-Mart's involvement in such processes.

1          b.    **Plaintiffs Have No Evidence That Wal-Mart Supervises or**

2               **Controls Work Schedules**.

3       Plaintiffs point to "basic policies" established for the Mira Loma warehouse

4  facilities, like cell phone use and the prohibition against running in the warehouse, as

5  evidence of Wal-Mart's involvement in the warehouses.   Yet, despite having a

6  provisional class-certification and some nine months to marshal their evidence, Plaintiffs

7  have not alleged a single instance of "day-to-day" supervision or control by Wal-Mart

8  as required by *Bonnette*.

9       Plaintiffs argue that the contracts (between SLTD and Impact and Premier – not

10  Wal-Mart) impose numerous conditions on SLTD about the qualifications of loaders and

11  unloaders.   Numerous courts recognize that this is merely the nature of contractor

12  relationships and that it is completely appropriate for a company to set forth standards

13  of this nature.  *Moreau*, 356 F.3d at 942; *Jacobsen v. Comcast Corp.*, 740 F. Supp. 2d

14  683, 690 (D. Md. 2010).  Plaintiffs have not made a single allegation that Wal-Mart

15  controlled shifts, scheduled work, or assigned employees to work.  *See Zhao v. Bebe*

16  *Stores, Inc.*, 247 F. Supp. 2d 1154, 1160 (C.D. Cal. 2003).   The fact that the contract

17  calls for background checks and drug tests does not satisfy this factor.  *Comcast*, 740 F.

18  Supp. 2d at 690.  Likewise, even if Wal-Mart has an employee on site for meetings, there

19  is no direct or competent evidence that  this person controls shifts, schedules work or

20  assigns works.  *See*, *e.g.*, *Zhao*, 247 F. Supp. 2d at 1160 (fact that Bebe had supervisors

21  on site did not establish supervision or control).

22       It is obvious that Plaintiffs lack evidence of Wal-Mart's involvement and, as a

23  consequence, rely on misleading evidence to support their position.   For example,

24  Plaintiffs argue that "Wal-Mart employees routinely visit the warehouses."    Yet,

25  Plaintiffs fail to tie this to any measure of control or supervision of Impact or Premier

26  employees.  It is not surprising in the least that Wal-Mart would have employees visit a

27  warehouse where hundreds of thousands of dollars worth of its goods and products are

28  stored.

1    Also misleading is Plaintiffs' accusation that "Premier and Impact regularly send

2   productivity reports, invoices, and other communications to individuals with Wal-Mart

3   email addresses."  It is not surprising that a customer would receive productivity reports

4   which, importantly, have nothing to do with control over the day-to-day management or

5   employment of PWV and Impact employees. Indeed, several courts have explained that

6   this is a typical, expected aspect of a contracting relationship and does not amount to a

7   joint employer relationship.  *See Jean-Louis v. Metropolitan Cable Commn'cs, Inc.*, No.

8   09-CV-6831, 2011 WL 4530334, **11-12 (S.D. N.Y. 2011).  This merely relates to the

9   need to provide quality service to a customer.  *Jacobsen*, 740 F. Supp. 2d at 691.

10    Contrary to Plaintiffs' arguments, PWV and Impact are solely responsible for the

11   onsite management of their personnel, as set forth in their respective agreements with

12   SLTD.  (Exh. 26 (PWV Agreement 2.08); Exh. 27 (Impact Agreement 2.05.).  As a

13   result, Plaintiffs cannot establish the second factor of *Bonnette*.

14          c.    **Plaintiffs Offer No Evidence That Wal-Mart Determines Pay**

15    Third, Plaintiffs offer no direct or competent evidence that Wal-Mart determines

16   the rate or method of pay of the PWV and Impact employees.  Of course, Plaintiffs

17   attempt to mislead the Court by alleging that "Wal-Mart reduced its compensation to

18   Schneider" and "the prices that Schneider was willing to pay to Impact and Premier

19   depended on the prices that Wal-Mart paid to Schneider."  Even though Plaintiffs now

20   have provisional class certification, they have not offered a single shred of evidence that

21   Wal-Mart "determines" the rate or method of pay for the PWV and Impact employees or

22   that Wal-Mart issues pay directly or indirectly through SLTD to the Plaintiffs.

23   Arguments about payments made by a customer to its vendors do not satisfy this factor

24   and are routinely rejected by other courts.  See Jacobson, 740 F. Supp. 2d at 692

25   (rejecting argument that Comcast has control over wages because Comcast paid

26   installation companies on a per service basis); *Rosales v. El Rancho Farms*, No.

27   1:09-cv-00707-AWI-JLT, 2011 WL 6153276, *16 (E.D. Cal. Dec. 12, 2011).

28

As set forth in SLTD's agreements with PWV and Impact, PWV and Impact are responsible for all aspects of their employees' pay including determination of rate and method of pay.  Exh. 26 (PWV Agreement 2.05); Exh. 27 (Impact Agreement 2.06). Consistent with these agreements, Plaintiffs concede in numerous declarations they filed, the undisputed fact that PWV and Impact determine the rate of pay or method of pay of their employees, respectively.  *See*, *e.g.*, Exh. 8, Decl. of Everardo Carrillo, ¶ 2; Exh. 9, Decl. of Juan Chavez, ¶ 4. There is no doubt that neither SLTD nor Wal-Mart have any involvement in the determination of the rate of method or payment for employees of PWV or Impact.  The Court should find that the third *Bonnette* factor weighs against a finding of joint employer status.

> d.   **Plaintiffs Offer No Evidence That Wal-Mart Maintains Personnel Records**

As with the other *Bonnette* factors, Plaintiffs do not offer any evidence that Wal-Mart maintains personnel records for Plaintiffs.

In fact, the record is undisputed that PWV and Impact maintain their own payroll, timekeeping and human resources information for their respective employees.  Exh. 27 (PWV Agreement 2.05); Exh. 26 (Impact Agreement 2.06); Nguyen Decl. Exh. D, Decl. Kozik, ¶¶ 13-14, 18-22, 28-40, 43-44; Nguyen Decl. Exh. E, Decl. Redgrave, ¶¶ 26-31, 46-53.  Moreover, PWV and Impact explicitly state that they control their own time keeping and payroll systems. Nguyen Decl. Exh. F, Hearing Transcript pp. 11:14-15, 12:1-3, 14:6-25 15:1-20, 17:20-25, 18-19, 20:20-25, 21:6-25, 22, 23:1-12, 27:9-25, 28:1-8; 30-32, 37:7-16, 38, 39:1-3, 40:1-3, 41:11-16, 42:10-13.

Thus, there is no evidence to support that Wal-Mart has access to or maintains records for employees of PWV or Impact.

//
//

1    3.    **The Court Should Decline to Compel SLTD to Produce Confidential**

2          **Documents Relating to a Third Party.**

3          Plaintiffs' requests for contracts and communications with Wal-Mart, a non-party

4    to this action, are burdensome and oppressive in that they are demands for highly

5    sensitive and confidential business information that is closely guarded by SLTD.

6    Plaintiffs also have provided no authority that supports their demand for broad-based

7    discovery of private business information for the purpose of attempting to establish a

8    speculative claim against a third party based on a joint employer theory of liability.  In

9    contrast, SLTD has a significant interest in preventing the disclosure of the private

10   business information requested.

11         a.    **SLTD's Confidential Agreements With Non-Party, Wal-Mart,**

12               **Are Entitled To Special Protection**

13         Plaintiffs' demands for contracts and communications between SLTD and a third

14   party to this case, Wal-Mart, go well beyond the scope of permissible discovery under

15   the Rules of Civil Procedure.  Through the requests for production at issue, Plaintiffs

16   demand the disclosure of SLTD's most sensitive business information despite the fact

17   that it is of no relevance to any of Plaintiffs' claims.

18         A party's right to discovery is not endless and courts have the power to limit and

19   control discovery.  *See* Fed. R. Civ. P. 26(b)(2).  Courts are empowered to make, any

20   order which justice requires "to protect a party or person from annoyance,

21   embarrassment, oppression, or undue burden or expense." Rule 26(c)(1). Indeed, courts

22   are required to limit discovery where, "the burden or expense of the proposed discovery

23   outweighs its likely benefit[.]" Fed. R. Civ. P. 26(b)(2)(C)(iii); see also *World Wrestling*

24   *Fed. Entm't, Inc. v. William Morris Agency, Inc.*, 204 F.R.D. 263, 265 (S.D. N.Y. 2001)

25   (affirming magistrate Judge's Order denying plaintiff's motion to compel production of

26   agreements between the defendant and third parties).

27         The protection afforded by Rule 26 extends to trade secrets and to other

28   confidential research, development, or commercial information.  See Fed. R. Civ. P.

1  26(c)(1)(G).  When deciding whether to restrict discovery under Rule 26, courts "should
2  consider the totality of the circumstances, weighing the value of the material sought
3  against the burden of providing it, and taking into account society's interest in furthering
4  the truth-seeking function in the particular case before the court."  *Klein v. Freedon*
5  *Strategic Partners, LLC*, 2009 U.S. Dist. LEXIS 52441 at *10 (D. Nev. Jun. 5, 2009)
6  (denying discovery of private financial information) (internal citations omitted); *see also*
7  *Masterson v. Huerta-Garcia*, 2010 U.S. Dist. LEXIS 113030 at **11-12 (E.D. Cal. Sept.
8  30, 2010).

9       Special consideration must be given where the discovery at issue, like here,
10  involves business information that is highly sensitive and closely guarded.  The Supreme
11  Court has recognized the property interest that exists with respect to confidential
12  business information.  *See Carpenter v. United States*, 484 U.S. 19, 26 (1987)
13  ("Confidential information acquired or compiled by a corporation in the course and
14  conduct of its business is a species of property to which the corporation has the exclusive
15  right and benefit, and which a court of equity will protect through the injunctive process
16  or other appropriate remedy.") (internal citations omitted).  Moreover, where private
17  business information is involved, courts also must consider the parties' entitlement to
18  protection from undue burden in discovery, including protection from misuse of private
19  business information by competitors.  *See Brown Bag Software v. Symantic Corp.*, 960
20  F.2d 1465, 1470 (9th Cir. 1992) (limiting disclosure of trade secrets).

21       As stated above, the agreements and communications at issue constitute SLTD's
22  most sensitive information. The records at issue contain SLTD's rates, charges and
23  margins.  If SLTD's competitors knew of this information, they would be able to meet
24  or undercut SLTD's pricing and rates. This would give SLTD's competitors unfair
25  advantage regarding SLTD's pricing, rates, productivity, and margins.   Declaration of
26  Daniel P. Flaherty ("Flaherty Decl."), ¶ 4.  This information is highly confidential and
27  public dissemination of the information would allow SLTD's competitors to obtain a
28  previously unavailable advantage in future negotiations with Wal-Mart.  The information

has independent economic value in that the information is not generally known outside of SLTD and is not known to SLTD's competitors. Flaherty Decl., ¶ 5.  Indeed, public dissemination of the records would lead to irreparable harm to the business of SLTD in that it would case Wal-Mart to move its business elsewhere and stop doing  business with SLTD.  Flaherty Decl., ¶ 6. For this reason, the pricing and conditions of SLTD's agreements with Wal-Mart, as well as the communications associated with those agreements, are closely guarded and kept confidential by the SLTD.  Flaherty Decl., ¶ 6.  In contrast to SLTD's significant interest in the non-disclosure of the records at issue, Plaintiffs' reasons for demanding the records concern nonsensical arguments about a speculative joint employer theory of liability against Wal-Mart.

As stated above, Plaintiffs have no evidence, nor any reason for believe, that Wal-Mart acted as joint employer of the Plaintiffs.  No contractual relationship exists between Wal-Mart and the employers of the two Plaintiff classes.  Moreover, Plaintiffs evidence establishes none of the four standards in *Bonnette* for establishing a joint employer relationship.  Despite these irrefutable facts, Plaintiffs insist that SLTD must disclose its most sensitive business information and expose itself to the risk of public dissemination of the same.  Knowing that a joint employer theory cannot stand against Wal-Mart, Plaintiffs insist on obtaining this discovery for the sensationalism that would result from associating their case with an important and well-known contractual partner of SLTD.

**IV.   Second Issue in Dispute: Schneider's Destruction or Withholding of Responsive Documents**

The second issue is whether Schneider has destroyed or is withholding documents that are responsive to plaintiffs' RFPs.  This section first lists all of the RFPs at issue, along with Schneider's responses and objections.  It then sets forth plaintiffs' position regarding these RFPs, followed by Schneider's position.

//

//

## A.     The RFPs at Issue

**REQUEST NO. 5:**

Any DOCUMENTS reflecting, recording and/or regarding any discussions, negotiations and/or communications within SLTD and/or between SLTD and any other person or entity (including but not limited to PWV, ROGERS-PREMIER, IMPACT, SLI, SNI, and WAL-MART, and/or any other person or entity) regarding the parties' performance under the 2011-2013 IMPACT CONTRACT and/or any predecessor contracts.

**RESPONSE TO REQUEST NO. 5:**

Defendant objects to this Request on the grounds that lacks foundation, assumes facts not in evidence, and is vague and ambiguous as to the term "parties' performance." Defendant further objects to this Request on the grounds that it is overly broad as to time and scope.  Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive.  Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendant responds as follows:

Defendant produced all non-privileged responsive documents in Defendant's possession, custody and/or control with respect to PWV.

Defendant will produce non-privileged responsive documents in Defendant's possession, custody and/or control with respect to Rogers-Premier, Impact and SLI to the extent any exist.

**REQUEST NO. 9:**

All correspondence between YOU and PWV regarding the 2009-2010 PWV CONTRACT.

**RESPONSE TO REQUEST NO. 9:**

Defendant objects to this Request on the grounds that it lacks foundation, is overly broad as to time and scope. Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive. Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendant responds as follows

Defendant conducted a diligent search and reasonable inquiry, has been unable to locate such documents and do not believe documents responsive to this request exist.

**REQUEST NO. 13:**

DOCUMENTS that reflect or refer to how YOU calculated the rates paid by YOU to IMPACT and PWV for loading or unloading semi-trailer truck containers at the WAREHOUSES during the RELEVANT TIME PERIOD.

**RESPONSE TO REQUEST NO. 13:**

Defendant objects to this Request on the grounds that it lacks foundation, is vague and ambiguous. Defendant further objects to this Request on the grounds that it is overly broad as to time and scope. Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive. Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request on the grounds that it seeks private,

1  privileged, and confidential commercial, financial, and/or proprietary business
2  information.

3      Subject to and without in any way waiving the foregoing objections, and to the
4  extent it understands this Request, Defendant responds as follows:

5      Defendant conducted a diligent search and reasonable inquiry, has been unable to
6  locate such documents and do not believe documents responsive to this request exist.

7  **REQUEST NO. 15:**

8      DOCUMENTS that reflect or refer to time and motion studies or any other type
9  of studies conducted by, provided to, or reviewed by YOU regarding an appropriate rate
10 to be set for each truck container, either in terms of payment by YOU to IMPACT, PWV,
11 or any other entity YOU paid to provide loading or unloading services at the
12 WAREHOUSES, or in terms of appropriate payment to EMPLOYEES for hours spent
13 working in loading or unloading trucks of various sizes, types, or organization.  Such
14 documents include any studies or estimates reviewed or prepared regarding the time or
15 labor required to load a particular number of boxes, size of truck, or type of cargo.

16 **RESPONSE TO REQUEST NO. 15:**

17     Defendant objects to this Request on the grounds that it lacks foundation, assumes
18 facts not in evidence, is vague and ambiguous.  Defendant further objects to this Request
19 on the grounds that it is overly broad as to time and scope.  Defendant further objects to
20 this Request on the grounds that it is unduly burdensome and oppressive.  Defendant
21 further objects to this Request on the grounds that it seeks information that is not
22 relevant to the subject matter of this litigation and is not reasonably calculated to lead to
23 the discovery of admissible evidence.   Defendant further objects to this Request on the
24 grounds that it seeks private, privileged, and confidential commercial, financial, and/or
25 proprietary business information.

26 Subject to and without in any way waiving the foregoing objections, and to the extent it
27 understands this Request, Defendant responds as follows:

28

Defendant conducted a diligent search and reasonable inquiry, has been unable to locate such documents and do not believe documents responsive to this request exist.

**REQUEST NO. 19:**

Any reports or other DOCUMENTS provided by PWV to YOU regarding metrics or performance as described in Section 2.06 of the 2011-2013 PWV CONTRACT or Section 2.07 of the 2009-2010 PWV CONTRACT.

**RESPONSE TO REQUEST NO. 19:**

Defendant objects to this Request on the grounds that it lacks foundation, is vague and ambiguous. Defendant further objects to this Request on the grounds that it is overly broad as to time and scope. Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive. Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendant responds as follows:

Defendant conducted a diligent search and reasonable inquiry, has been unable to locate such documents and do not believe documents responsive to this request exist.

**REQUEST NO. 20:**

Any reports or other DOCUMENTS provided by IMPACT to YOU regarding metrics or performance as described in Section 2.07 of the 2011-2013 IMPACT CONTRACT and any similar provision in YOUR previous contracts with IMPACT during the RELEVANT TIME PERIOD.

**RESPONSE TO REQUEST NO. 20:**

Defendant objects to this Request on the grounds that it lacks foundation, is vague and ambiguous. Defendant further objects to this Request on the grounds that it is overly

1  broad as to time and scope.  Defendant further objects to this Request on the grounds that
2  it is unduly burdensome and oppressive.  Defendant further objects to this Request on
3  the grounds that it seeks information that is not relevant to the subject matter of this
4  litigation and is not reasonably calculated to lead to the discovery of admissible
5  evidence.  Defendant further objects to this Request on the grounds that it seeks private,
6  privileged, and confidential commercial, financial, and/or proprietary business
7  information.

8       Subject to and without in any way waiving the foregoing objections, and to the
9  extent it understands this Request, Defendant responds as follows:

10      Defendant conducted a diligent search and reasonable inquiry, has been unable to
11 locate such documents and do not believe documents responsive to this request exist.

12 **REQUEST NO. 23:**

13      All monthly reports provided by PWV to YOU per Section 3.02 of the 2011-2013
14 PWV CONTRACT or Section 3.03 of the 2009-2010 PWV CONTRACT.

15 **RESPONSE TO REQUEST NO. 23:**

16      Defendant objects to this Request on the grounds that it lacks foundation, is vague
17 and ambiguous.  Defendant further objects to this Request on the grounds that it is overly
18 broad as to time and scope.  Defendant further objects to this Request on the grounds that
19 it is unduly burdensome and oppressive.  Defendant further objects to this Request on
20 the grounds that it seeks information that is not relevant to the subject matter of this
21 litigation and is not reasonably calculated to lead to the discovery of admissible
22 evidence.   Defendant further objects to this Request on the grounds that it seeks private,
23 privileged, and confidential commercial, financial, and/or proprietary business
24 information.

25      Subject to and without in any way waiving the foregoing objections, and to the
26 extent it understands this Request, Defendant responds as follows:

27      Defendant conducted a diligent search and reasonable inquiry, has been unable to
28 locate such documents and do not believe documents responsive to this request exist.

**REQUEST NO. 24:**

All reports provided by IMPACT to YOU per Section 2.17 of the 2011-2013 IMPACT CONTRACT and any similar provision in YOUR previous contracts with IMPACT during the RELEVANT TIME PERIOD.

**RESPONSE TO REQUEST NO. 24:**

Defendant objects to this Request on the grounds that it lacks foundation, is vague and ambiguous. Defendant further objects to this Request on the grounds that it is overly broad as to time and scope. Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive. Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendant responds as follows:

Defendant conducted a diligent search and reasonable inquiry, has been unable to locate such documents and do not believe documents responsive to this request exist.

**REQUEST NO. 25:**

Any DOCUMENTS discussing or referring to whether PWV was compensating its EMPLOYEES in accordance with the law during the RELEVANT TIME PERIOD, including, but not limited to, whether PWV was properly paying its employees for overtime, per Section 3.02 of the 2009-2010 PWV CONTRACT.

**RESPONSE TO REQUEST NO. 25:**

Defendant objects to this Request on the grounds that lacks foundation, assume facts not in evidence, is vague and ambiguous. Defendant further objects to this Request on the grounds that it is overly broad as to time and scope. Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive. Defendant

1  further objects to this Request on the grounds that it seeks information that is not

2  relevant to the subject matter of this litigation and is not reasonably calculated to lead to

3  the discovery of admissible evidence.   Defendant further objects to this Request on the

4  grounds that it seeks private, privileged, and confidential commercial, financial, and/or

5  proprietary business information.

6       Subject to and without in any way waiving the foregoing objections, and to the

7  extent it understands this Request, Defendant responds as follows:

8       Defendant conducted a diligent search and reasonable inquiry, has been unable to

9  locate such documents and do not believe documents responsive to this request exist.

10 **REQUEST NO. 26:**

11      Any DOCUMENTS discussing or referring to whether IMPACT was

12 compensating its EMPLOYEES in accordance with the law during the RELEVANT

13 TIME PERIOD, including, but not limited to, whether IMPACT was properly paying its

14 employees for overtime, per Section 3.02 of the 2011-2013 IMPACT CONTRACT and

15 any similar provision in YOUR previous contracts with IMPACT during the

16 RELEVANT TIME PERIOD.

17 **RESPONSE TO REQUEST NO. 26:**

18      Defendant objects to this Request on the grounds that lacks foundation, assume

19 facts not in evidence, is vague and ambiguous. Defendant further objects to this Request

20 on the grounds that it is overly broad as to time and scope.  Defendant further objects to

21 this Request on the grounds that it is unduly burdensome and oppressive.  Defendant

22 further objects to this Request on the grounds that it seeks information that is not

23 relevant to the subject matter of this litigation and is not reasonably calculated to lead to

24 the discovery of admissible evidence.  Defendant further objects to this Request on the

25 grounds that it seeks private, privileged, and confidential commercial, financial, and/or

26 proprietary business information.

27      Subject to and without in any way waiving the foregoing objections, and to the

28 extent it understands this Request, Defendant responds as follows:

1    Defendant conducted a diligent search and reasonable inquiry, has been unable to

2    locate such documents and do not believe documents responsive to this request exist.

3    **REQUEST NO. 29:**

4    DOCUMENTS that YOU received from IMPACT or PWV reporting hours

5    worked or tasks accomplished by EMPLOYEES during the RELEVANT TIME

6    COMMUNICATIONS regarding specific tasks completed by EMPLOYEES, including

7    order filling, sweeping, cleaning, breaking down pallets, and/or any type of work other

8    than loading or unloading trucks.

9    **RESPONSE TO REQUEST NO. 29:**

10    Defendant objects to this Request on the grounds that it lacks foundation, assumes

11    facts not in evidence, is vague and ambiguous as to the terms "RELEVANT TIME

12    COMMUNICATIONS" and "specific tasks." Defendant further objects to this Request

13    on the grounds that it is overly broad as to time and scope.  Defendant further objects to

14    this Request on the grounds that it is unduly burdensome and oppressive.  Defendant

15    further objects to this Request on the grounds that it seeks information that is not

16    relevant to the subject matter of this litigation and is not reasonably calculated to lead to

17    the discovery of admissible evidence.  Defendant further objects to this Request on the

18    grounds that it seeks private, privileged, and confidential commercial, financial, and/or

19    proprietary business information.

20    Subject to and without in any way waiving the foregoing objections, and to the

21    extent it understands this Request, Defendant responds as follows:

22    Defendant conducted a diligent search and reasonable inquiry, has been unable to

23    locate such documents and do not believe documents responsive to this request exist.

24    **REQUEST NO. 30:**

25    DOCUMENTS that discuss or refer to, the wage rate or method of compensation

26    used by IMPACT or PWV to compensate their EMPLOYEES during the RELEVANT

27    TIME PERIOD.

28

**RESPONSE TO REQUEST NO. 30:**

Defendant objects to this Request on the grounds that it lacks foundation, assumes facts not in evidence, is vague and ambiguous. Defendant further objects to this Request on the grounds that it is overly broad as to time and scope.  Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive.  Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendant responds as follows:

Defendant conducted a diligent search and reasonable inquiry, has been unable to locate such documents and do not believe documents responsive to this request exist.

**REQUEST NO. 32:**

DOCUMENTS that reflect or refer to guidelines, policies, practices, or procedures governing the EMPLOYEES at the WAREHOUSES during the RELEVANT TIME PERIOD.  Such documents include guidelines or directives on work and/or production requirements; employment standards; safety measures and training; workplace rules; hiring guidelines; employment applications; orientation manuals or videos; and/or training manuals or videos prepared or used by YOU, WAL-MART, and/or any other entity.

**RESPONSE TO REQUEST NO. 32:**

Defendant objects to this Request on the grounds that it lacks foundation, , is vague and ambiguous. Defendant further objects to this Request on the grounds that it is overly broad as to time and scope.  Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive.  Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter

of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence  Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendant responds as follows:

Defendant conducted a diligent search and reasonable inquiry, has been unable to locate such documents and do not believe documents responsive to this request exist.

**REQUEST NO. 34:**

DOCUMENTS that discuss, define or refer to the job duties, qualifications, requirements, responsibilities, and/or essential job functions of EMPLOYEES at any time during the RELEVANT TIME PERIOD, whether prepared by YOU, WAL-MART, or some other entity.  Such documents include job descriptions, lists of job duties, and/or lists of essential job functions.

**RESPONSE TO REQUEST NO. 34:**

Defendant objects to this Request on the grounds that it lacks foundation, is vague and ambiguous. Defendant further objects to this Request on the grounds that it is overly broad as to time and scope.  Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive.  Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendant responds as follows:

Defendant conducted a diligent search and reasonable inquiry, has been unable to locate such documents and do not believe documents responsive to this request exist.

**REQUEST NO. 36:**

DOCUMENTS that reflect or refer to any and all guidelines, policies, practices, or procedures governing eligibility for employment as an EMPLOYEE in the WAREHOUSES, during the RELEVANT TIME PERIOD, including required skills and/or experience; background checks; and/or drug or alcohol testing.

**RESPONSE TO REQUEST NO. 36:**

Defendant objects to this Request on the grounds that it lacks foundation, is vague and ambiguous. Defendant further objects to this Request on the grounds that it is overly broad as to time and scope. Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive. Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendant responds as follows:

Defendant has produced all non-privileged responsive documents in Defendant's possession, custody and/or control.

**REQUEST NO. 38:**

DOCUMENTS that reflect or refer to guidelines, policies, practices, or procedures governing discipline of EMPLOYEES, during the RELEVANT TIME PERIOD, whether prepared and/or implemented by YOU or by any other entity.

**RESPONSE TO REQUEST NO. 38:**

Defendant objects to this Request on the grounds that it lacks foundation, is vague and ambiguous as to "discipline" and "any other entity." Defendant further objects to this Request on the grounds that it is overly broad as to time and scope. Defendant further objects to this Request on the grounds that it is unduly burdensome and

oppressive.   Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendant responds as follows:

Defendant conducted a diligent search and reasonable inquiry, has been unable to locate such documents and do not believe documents responsive to this request exist.

**REQUEST NO. 40:**

Any internal COMMUNICATIONS discussing the benefits or detriments of subcontracting the loading and unloading work in the WAREHOUSES as opposed to directly employing personnel to do the work.

**RESPONSE TO REQUEST NO. 40:**

Defendant objects to this Request on the grounds that it lacks foundation, assumes facts not in evidence, is vague and ambiguous as to "benefits or detriments." Defendant further objects to this Request on the grounds that it is overly broad as to time and scope. Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive.  Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendant responds as follows:

Defendant conducted a diligent search and reasonable inquiry, has been unable to locate such documents and do not believe documents responsive to this request exist .

**REQUEST NO. 41:**

Any DOCUMENTS regarding or reflecting the contents of any meetings during the RELEVANT TIME PERIOD between YOU and any PWV owner, supervisor or manager to discuss service issues, including minutes, notes, e-mails, agendas or reports.

**RESPONSE TO REQUEST NO. 41:**

Defendant objects to this Request on the grounds that it lacks foundation, assumes facts not in evidence, is vague and ambiguous as to "service issues." Defendant further objects to this Request on the grounds that it is overly broad as to time and scope. Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive.  Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendant responds as follows:

Defendant has produced all non-privileged responsive documents in Defendant's possession, custody and/or control.

**REQUEST NO. 43:**

All DOCUMENTS discussing or referring to any behavioral problems, performance deficiencies, or other issues regarding PWV or IMPACT EMPLOYEES during the RELEVANT TIME PERIOD.

**RESPONSE TO REQUEST NO. 43:**

Defendant objects to this Request on the grounds that it lacks foundation, assumes facts not in evidence, is vague and ambiguous as to "behavioral problems" and "performance deficiencies" and "other issues." Defendant further objects to this Request on the grounds that it is overly broad as to time and scope.  Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive.  Defendant

1  further objects to this Request on the grounds that it seeks information that is not

2  relevant to the subject matter of this litigation and is not reasonably calculated to lead to

3  the discovery of admissible evidence.  Defendant further objects to this Request to the

4  extent that it seeks information protected by the attorney-client privilege and/or attorney

5  work product doctrine.  Defendant further objects to this Request on the grounds that it

6  seeks private, privileged, and confidential commercial, financial, and/or proprietary

7  business information.

8          Subject to and without in any way waiving the foregoing objections, and to the

9  extent it understands this Request, Defendant responds as follows:

10         Defendant conducted a diligent search and reasonable inquiry, has been unable to

11 locate such documents and do not believe documents responsive to this request exist.

12 **REQUEST NO. 44:**

13         All DOCUMENTS in which YOU discussed or referred to discipline or

14 termination of a PWV or IMPACT EMPLOYEE during the RELEVANT TIME

15 PERIOD.

16 **RESPONSE TO REQUEST NO. 44:**

17         Defendant objects to this Request on the grounds that it lacks foundation, assumes

18 facts not in evidence, is vague and ambiguous. Defendant further objects to this Request

19 on the grounds that it is overly broad as to time and scope.  Defendant further objects to

20 this Request on the grounds that it is unduly burdensome and oppressive.  Defendant

21 further objects to this Request on the grounds that it seeks information that is not

22 relevant to the subject matter of this litigation and is not reasonably calculated to lead to

23 the discovery of admissible evidence.  Defendant further objects to this Request to the

24 extent that it seeks information protected by the attorney-client privilege and/or attorney

25 work product doctrine.  Defendant further objects to this Request on the grounds that it

26 seeks private, privileged, and confidential commercial, financial, and/or proprietary

27 business information.

28

1  Subject to and without in any way waiving the foregoing objections, and to the extent it

2  understands this Request, Defendant responds as follows:

3  Defendant conducted a diligent search and reasonable inquiry, has been unable to locate

4  such documents and do not believe documents responsive to this request exist.

5  **REQUEST NO. 45:**

6    All DOCUMENTS discussing or referring to PWV or IMPACT's time keeping

7  system or method for its EMPLOYEES at the WAREHOUSES during the RELEVANT

8  TIME PERIOD.

9  **RESPONSE TO REQUEST NO. 45:**

10    Defendant objects to this Request on the grounds that it lacks foundation, assumes

11  facts not in evidence, is vague and ambiguous. Defendant further objects to this Request

12  on the grounds that it is overly broad as to time and scope.  Defendant further objects to

13  this Request on the grounds that it is unduly burdensome and oppressive.  Defendant

14  further objects to this Request on the grounds that it seeks information that is not

15  relevant to the subject matter of this litigation and is not reasonably calculated to lead to

16  the discovery of admissible evidence.  Defendant further objects to this Request to the

17  extent that it seeks information protected by the attorney-client privilege and/or attorney

18  work product doctrine.  Defendant further objects to this Request on the grounds that it

19  seeks private, privileged, and confidential commercial, financial, and/or proprietary

20  business information.

21  Subject to and without in any way waiving the foregoing objections, and to the extent it

22  understands this Request, Defendant responds as follows:

23  Defendant conducted a diligent search and reasonable inquiry, has been unable to locate

24  such documents and do not believe documents responsive to this request exist.

25  **REQUEST NO. 46:**

26    DOCUMENTS that reflect or refer to requests by YOU that any particular work

27  (such as order filling, labeling, building of pallets, etc.) be performed by IMPACT or

28  PWV EMPLOYEES, during the RELEVANT TIME PERIOD.

**RESPONSE TO REQUEST NO. 46:**

Defendant objects to this Request on the grounds that it lacks foundation, assumes facts not in evidence, is vague and ambiguous. Defendant further objects to this Request on the grounds that it is overly broad as to time and scope. Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive. Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Defendant further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendant responds as follows:

Defendant conducted a diligent search and reasonable inquiry, has been unable to locate such documents and do not believe documents responsive to this request exist.

**REQUEST NO. 47:**

COMMUNICATIONS between YOU and PWV regarding the volume of work or staffing levels during the RELEVANT TIME PERIOD.

**RESPONSE TO REQUEST NO. 47:**

Defendant objects to this Request on the grounds that it lacks foundation, assumes facts not in evidence, is vague and ambiguous. Defendant further objects to this Request on the grounds that it is overly broad as to time and scope. Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive. Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request on the

1  grounds that it seeks private, privileged, and confidential commercial, financial, and/or
2  proprietary business information.

3      Subject to and without in any way waiving the foregoing objections, and to the
4  extent it understands this Request, Defendant responds as follows:

5      Defendant will produce non-privileged responsive documents in Defendant's
6  possession, custody and/or control.

7  **REQUEST NO. 79:**

8      DOCUMENTS that reflect or refer to COMMUNICATIONS between YOU and
9  any other person or entity, including the other defendants in this action, regarding this
10  lawsuit. This request includes, but is not limited to, the correspondence between YOU
11  and IMPACT and PWV "regarding their compliance with the Court's Order dated
12  December 7, 201 [1]" referenced in your Initial Disclosures dated January 4, 2012.

13  **RESPONSE TO REQUEST NO. 79:**

14      Defendant objects to this Request on the grounds that it lacks foundation, assumes
15  facts not in evidence, is vague and ambiguous.  Defendant further objects to this Request
16  on the grounds that it is overly broad, unduly burdensome and oppressive.  Defendant
17  further objects to this Request on the to the extent that it seeks information that is not
18  relevant to the subject matter of this litigation and is not reasonably calculated to lead to
19  the discovery of admissible evidence.   Defendant further objects to this Request on the
20  grounds that it seeks private, privileged, and confidential commercial, financial, and/or
21  proprietary business information.

22      Subject to and without in any way waiving the foregoing objections, and to the
23  extent it understands this Request, Defendant responds as follows:

24      Defendant has produced all non-privileged responsive documents in Defendant's
25  possession, custody and/or control.

26  **REQUEST NO. 81:**

27      To the extent not duplicative of previous requests, all DOCUMENTS that refer to
28  any plaintiff or opt-in plaintiff in this action.

**RESPONSE TO REQUEST NO. 81:**

Defendant objects to this Request on the grounds that it lacks foundation, is vague and ambiguous. Defendant further objects to this Request on the grounds that it is overly broad as to time and scope. Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive. Defendant further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Defendant further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendant responds as follows:

Defendant conducted a diligent search and reasonable inquiry, has been unable to locate such documents and do not believe documents responsive to this request exist.

**REQUEST NO. 82:**

Any and all DOCUMENTS that have been provided by YOU to any plaintiff or potential opt-in plaintiff in this action that refer to or are related to this action.

**RESPONSE TO REQUEST NO. 82:**

Defendant objects to this Request on the grounds that it lacks foundation, is vague and ambiguous. Defendant further objects to this Request on the grounds that it is overly broad as to time and scope. Defendant further objects to this Request on the grounds that it is unduly burdensome and oppressive. Defendant further objects to this Request to the extent it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

1    Subject to and without in any way waiving the foregoing objections, and to the

2    extent it understands this Request, Defendant responds as follows:

3    Defendant conducted a diligent search and reasonable inquiry, has been unable to

4    locate such documents and do not believe documents responsive to this request exist.

5    **B.    Plaintiffs' Position**

6    With respect to about 20 of plaintiffs' requests, Schneider has responded that it

7    conducted a "diligent search" and "reasonably inquiry," but has been unable to locate

8    any responsive documents. Alternatively, Schneider responds that it has now produced

9    all documents responsive to plaintiffs' requests. However, as to several of these RFPs,

10   Schneider's contention that there are no responsive documents (or that it has produced

11   all responsive documents) is demonstrably false. As detailed below, Premier and Impact

12   have now produced documents that are also within Schneider's possession, that are

13   responsive to plaintiffs' requests, and that Schneider has failed to produce. All of these

14   documents are probative of Schneider's joint employer status because they show the

15   direct or indirect control that Schneider exercises over the terms and conditions of the

16   plaintiffs' work.

17   First, RFP 32 requests policies or practices governing the class members, whether

18   authored by Schneider or not. Schneider claims that no responsive documents exist. But

19   both Premier and Impact recently produced dozens of pages of policies and workplace

20   rules *authored by Schneider* that apply to the class members. Examples include a

21   "training checklist" that all employees must complete before Schneider will issue a badge

22   to gain access to the warehouses (Teukolsky Exh. 17 at PREM 1047-48; Exh. 32 at

23   Impact 167-68); Schneider's workplace rules warning employees that violations will

24   result in discipline, e.g., no cell phones in the warehouses (Exh. 17 at PREM 1049-50,

25   Exh. 32 at Impact 169-70, Exh. 33 at 200-01); and Schneider's safety contract (Exh. 17

26   at PREM 1052, Exh. 32 at Impact 171). The documents show that Schneider required

27   employees to watch training videos and complete Schneider's orientation procedures.

28   Exhs. 19 & 31. Some of these documents have a footer showing the precise location *on*

1   *Schneider's computer system* where the document is kept.  *E.g.*, Exh. 17 at PREM 1047,

2   1053; Exh. 30 at Impact 138, 146.  These documents are extremely probative of

3   Schneider's joint employment status because they show that Schneider set the workplace

4   rules that the plaintiffs were required to follow, and mandated that plaintiffs attend

5   trainings.  Yet Schneider claims that none of these documents exist.

6        Other examples abound.  RFP 5 requests communications regarding Impact's

7   performance under the 2011-13 contract.  Impact has produced dozens of emails between

8   Schneider and Impact regarding Schneider's claim that Impact's performance dropped

9   after Impact switched from paying workers on a piece rate to an hourly rate.  *E.g.*.,

10  Teukolsky Exhs. 34, 35 and 38.  Schneider claims that it has produced all responsive

11  documents, but has not produced any of these communications.   RFP 9 seeks

12  correspondence between Schneider and Premier regarding the 2009-2010 contract for

13  Premier to provide loading services in the warehouses.  Premier has produced dozens of

14  pages of correspondence about the 2009-10 contract, including a memo from a Schneider

15  employee setting forth the agenda for Premier's presentation to win the bid for the work.

16  Schneider asks Premier to "explain how your company will handle peak volumes without

17  charging Schneider [overtime]," demonstrating the pressure that Schneider exerted over

18  its contractors to cheat workers out of overtime.  Teukolsky Decl. ¶45  Exh. 21.

19  Schneider claims that no responsive documents exist.

20       RFP 15 requests studies that Schneider performed to determine the appropriate

21  rates to be set for loading or unloading in the warehouses.  Premier produced its own

22  study of loading rates which states: "The average load time *from Schneider's study* was

23  [redacted] hours per load."  Teukolsky Exh. 22.  Schneider has failed to produce the

24  study, and claims that no studies exist.  The study is relevant to joint employment

25  because it helps demonstrate that Schneider knew how much it had to pay its contractors

26  per container to cover the contractor's minimum labor costs.  Schneider's failure to pay

27  its contractors a fair rate demonstrates its influence over the minimum wage and

28  overtime violations that occurred in this case.

RFP 30 seeks documents in which Schneider discusses the wage rate or method of compensation used by Impact or Premier.  Impact and Premier have produced a number of responsive documents, while Schneider claims that no responsive documents exist.  For example, Impact produced Schneider's "Request for Quote," which Schneider used to solicit bids for unloading work in the warehouse.  In it, Schneider states a preference that its contractors pay their employees on a piece rate basis, not an hourly basis: "The [labor] supplier's freight handlers are normally paid by an incentive pay and compensation structure where they receive a wage based on the amount of work accomplished, not an hourly wage."  Teukolsky Exh. 29 at Impact 50.  Both Impact and Premier paid their workers on a piece rate, and not on an hourly rate, demonstrating Schneider's control over the manner in which contractors pay their workers.  Schneider has failed to produce this or any other document responsive to RFP 30.

RFP 41, 43 and 47 seek, respectively, documents regarding meetings between Schneider and Premier (such as agendas); documents discussing performance issues; and documents discussing Premier's staffing levels.  Premier produced an agenda authored by Schneider from a "quarterly review" meeting between Schneider and Premier discussing, *inter alia*, Premier's staffing levels and performance issues regarding Premier's workers.  Schneider asks questions like:  "What issues do *we* currently have or potential pitfalls?  What can *we* do to improve?"  PREM 1114 (emphasis added). Schneider failed to produce this document, and claims that no responsive documents exist as to RFP 43 (worker performance) and 47 (staffing levels), and that it has produced all documents in response to RFP 41 (meeting agendas).

Plaintiffs' counsel first raised the problems with Schneider's document production during a telephonic meet and confer on March 27 and 28.  At that time – before Impact and Premier had produced most of their documents – Schneider's counsel refused to disclose any steps that Schneider had taken to search for documents, and refused even to confirm whether an electronic search of relevant email accounts had been conducted. *See* Teukolsky Exh. 6 at 3.

After Impact and Premier produced their documents, and plaintiffs' counsel identified numerous documents that Impact and Premier had produced proving that Schneider was withholding responsive documents, Teukolsky Exh.16, Schneider's counsel backtracked, agreeing to provide a list of individuals whose email accounts and computers have already been searched, and representing that additional documents would be produced on May 5 or May 8. Teukolsky Exh. 7. However, to date, Schneider has failed to provide such a list. Although Schneider produced additional documents on May 14, Schneider has failed to explain what these documents are, to which RFPs they respond, what was done to search for them, and why they were not produced earlier. Teukolsky Decl. ¶46.

Furthermore, during an in-person meet and confer conference on May 3 – long after the March 12 due date for Schneider's discovery responses – Schneider's counsel revealed that no one from Schneider's information technology department had been brought in to search for documents, and that backup tapes, servers and archives had not been searched. Teukolsky Exh. 7 at 2. Despite plaintiffs' requests, Schneider has provided no written description of the steps taken to search for responsive documents. Teukolsky Decl. ¶47 & Exhs. 6, 7 & 16. As best plaintiffs can tell, individual Schneider employees, with no expertise in searching electronic files, and with no guidance regarding search protocols, have been searching their own computers for responsive documents (although plaintiffs have not even received confirmation that this has occurred, or of the scope of such searches). *Id.* Moreover, when plaintiffs' counsel asked whether specific folders – identified on the Premier and Impact documents – had been searched, Schneider's counsel responded that the documents might have been erased or "written over." Teukolsky Decl. Exh. 7 at 2. Schneider's counsel repeatedly stated during the meeting that documents might have been erased, without being able to specifically identify any such documents. Teukolsky Decl. ¶47.

Although Schneider has belatedly offered to consider performing some kind of "keyword search" for electronically stored information ("ESI"), Teukolsky Decl. Exh.

7 at 2, Schneider cannot be trusted to perform a search that complies with the discovery rules. The searches to date apparently have been performed without the assistance of IT. Individual employees with no expertise in locating ESI are supposedly searching their own computers. Backup tapes and servers (among other potential locations of ESI) have not yet been searched. Responsive documents may have been erased or written over, but Schneider is unable to identify which ones. Schneider is unable to confirm whether the file locations identified in the Premier and Impact documents have even been searched. Schneider has failed to provide any of the information it promised to provide regarding the scope of searches done to date. And, most significant, Schneider only offered to perform a keyword search after plaintiffs confronted Schneider with evidence that documents had been withheld. These facts all indicate that an outside vendor with expertise in performing searches for ESI is appropriate.

In *Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, 2007 U.S. Dist. LEXIS 72953, *46-47 (C.D. Cal. Sept. 18, 2007), a party named New Line failed "to perform any structured search for emails and other electronic documents from the company's servers and from individual employees' desktop or laptop computers." Like Schneider, New Line failed to "charge[] its in-house information technology professionals with responsibility to ensure that all of the company's servers and individual computers were searched, and that they were searched in a manner that was reasonably calculated to capture all responsive documents (e.g., keyword searches of electronic documents and emails)." *Id.* at *36-37. The court held that New Line "should be required to retain an outside vendor experienced in electronic document retrieval to collect responsive documents." *Id.*

Similarly, in *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 2002 U.S. Dist. LEXIS 7792 (D. Del. Apr. 30, 2002), Tulip identified a number of gaps in Dell's document production. Dell repeatedly claimed that responsive documents did not exist, and that it had produced all responsive documents. Dell later disclosed that it had failed to search a number of boxes stored in a warehouse, and a large number of backup tapes.

*Id*. at *5-6.  The Court concluded that Dell had failed to fulfill its "basic discovery obligations," and that Tulip's outside consultant should be retained to search the email accounts and other electronic data for responsive documents.

Similar relief is warranted here.  Schneider has utterly failed to comply with its basic discovery obligations.  Its claims that it has produced all of the documents that are responsive to plaintiffs' requests are demonstrably false.  Its representations that it has performed "diligent searches" and "reasonable inquiries" are beyond belief.  And, Schneider was caught in its duplicity only because the other defendants in the case – Impact and Premier – produced documents proving that Schneider had not complied with its discovery obligations.  Had Impact and Premier not done so, Schneider likely would have succeeded in withholding crucial documents that demonstrate its joint employer status.

Based on these facts, plaintiffs request that the Court order the following relief, which is similar to the relief granted in *Wingnut* and *Tulip Computers*.  First, plaintiffs request that the Court order Schneider to produce for deposition under Fed. R. Civ. Proc. 30(b)(6) a custodian of records (or multiple custodians, if necessary) so that plaintiffs can determine the scope of documents within Schneider's possession, custody or control; where they are located; and the steps that Schneider has taken to comply with its discovery obligations.  Schneider should be required to bear the expense of the deposition.

Second, plaintiffs request that the Court permit plaintiffs to hire, at Schneider's expense, an outside vendor experienced in electronic document retrieval to collect responsive documents.  Schneider should be required to identify all potential sources of electronically stored information, which the vendor will be permitted to search using an agreed-upon list of search terms.  As part of this search, Schneider should be required to provide the e-mails from the accounts of identified employees and managers, as well as files from their individual or shared computer drives, in electronic form to the outside vendor.  Schneider will then produce the e-mails and files to plaintiffs, subject to a

1  review for privilege and proper confidentiality designations under the protective order,

2  and will also provide a complete privilege log.   Schneider may not withhold any

3  documents on relevance grounds.

4      The requested relief is entirely proper given Schneider's demonstrated

5  untrustworthiness in searching for responsive documents itself.

6  **C.    SLTD's Position**

7      **1.    The Court Should Deny the Motion Because Plaintiffs Failed To**

8           **Meet And Confer**

9      The Federal Rules of Civil Procedure require that, prior to moving for an order

10  compelling discovery, the movant must meet and confer in good faith to obtain the

11  requested discovery without court action.   Fed. R. Civ. P. 37(a)(1); *see also* C.D. L.R.

12  37-1 ("Prior to filing any motion relating to discovery pursuant to F.R. Civ. P. 26-37,

13  counsel for the parties shall confer in a good faith effort to eliminate the necessity for

14  hearing the motion or to eliminate as many of the disputes as possible").

15      The requirement of good faith in the meet and confer process is key to avoiding

16  needless motion practice on issues that are not ripe for presentation to the Court.   Indeed,

17  the meet and confer process requires a "live exchange of ideas and opinions[.]"   *Soto v.*

18  *City of Concord*, 162 F.R.D. 603, 623 (N.D. Cal. 1995) (holding that simply demanding

19  compliance with a discovery request is not an, "earnest attempt to 'meet and confer' on

20  the issues").   Moreover, a party's failure to comply with Rule 37's meet and confer

21  requirement is grounds for denial of a motion to compel.   *See Holmes v. Castellaw*, No.

22  C-09-3259 RMW(PR), 2009 WL 2762522 *4 (N.D. Cal. 2009) (holding that no motion

23  to compel will be considered by the court unless Rule 37's meet and confer requirement

24  is satisfied); *see also Robinson v. Potter*, 453 F.3d 990, 995 (8th Cir. 2006) (affirming

25  decision to deny motion compel discovery where requirement to meet and confer in good

26  faith was not met) (citing *Naviant Mktg. Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d

27  180, 186 (3d Cir. 2003) (denying motion to compel discovery where the over-zealous

28  conduct of plaintiff's counsel did not constitute a good faith effort to meet and confer)).

The Court should deny the Plaintiffs' requested relief because Plaintiffs have not completed the meet and confer process.   During the in-person meet and confer conference on May 3, 2012, Plaintiffs' counsel raised the issue of responsive documents allegedly produced by co-defendants PWV and Impact that had purportedly not been produced by SLTD. Declaration of Truc Nguyen ("Nguyen Decl."), ¶¶ 5, 6.  SLTD's counsel explained that SLTD had reviewed the four examples that Plaintiffs provided in their April 23, 2012 letter, i.e. PREM 1292-97, PREM 1048-1058, and PREM 1065, and were looking into the issues Plaintiffs raised. Nguyen Decl., ¶ 6. SLTD's counsel also noted, however, that SLTD was still in the process of gathering and producing documents.  Specifically SLTD's counsel noted that one of the documents Plaintiffs provided as an example, Exh. 20 at PREM 1114 (Teukolsky Decl., Exh. 20), was a document that had already been tagged for production. In fact, SLTD recently produced the document in its most recent production on May 15, 2012. Nguyen Decl., ¶ 7.

Moreover, in a good faith effort to comply with its discovery obligations, SLTD expressly stated that it would agree to perform a server search and to perform a key word search based on keywords agreed to by both parties.  SLTD's counsel even took the initiative to request a list of keyword search terms that Plaintiffs would like SLTD to use. Plaintiff's counsel replied that she would confer with her co-counsel regarding the search terms and if they were willing to provide them. Nguyen Decl., ¶ 8.

Plaintiffs' letter on May 4, 2012, also reflected SLTD's willingness to work with Plaintiffs and to comply with its discovery obligations. Specifically the letter stated, "I asked whether you would even consider performing a keyword search based on keywords agreed to by both parties, and you said that you would.  You asked that I provide a list of keyword that we would like to use. As I mentioned during our meeting, I will take this suggestion back to my co-counsel for discussion. . . But, I will get back to you on this shortly." Exh. 16.

However, Plaintiffs' counsel  never responded to SLTD.  Thus, on May 14, 2012 at 3:44 PM. SLTD sent a follow up e-mail regarding the keyword search terms. Nguyen

1   Decl., ¶ 9, Exh. B.  Without any further discussion with SLTD, Plaintiffs sent a draft of

2   a joint stipulation re: Plaintiff's motion to compel at 5:47 PM the same day. Nguyen

3   Decl., ¶ 9, Exh. C.  SLTD is clearly willing to work with Plaintiffs to resolve these

4   discovery issues on an informal basis rather than involve the Court, but Plaintiffs simply

5   refuse to do so. To date, Plaintiffs' counsel still have not responded to our request for

6   appropriate search terms.  Nguyen Decl., ¶ 10.

7         Likewise, Plaintiffs failed to provide SLTD with an opportunity to fully respond

8   to the numerous documents now raised in its motion to compel.  First, Plaintiff's motion

9   to compel raised document production issues concerning categories of requests for

10  production which it had not previously raised in its April 23, 2012 letter to SLTD or in

11  the meet and confer. Exh. 16. Plaintiffs never mentioned Requests for Production 5, 30,

12  43, and 47.  In addition, Plaintiffs' letter on April 23, 2012 and the meet and confer only

13  discussed four items, i.e. Exh. 17 at PREM 1048-1058; Exh.19 at PREM 10659, Exh. 20

14  at PREM 1114; and Exh. 22 at PREM 1293-1294. (Teukolsky Decl., Exh. 17, 19, 20 and

15  22.) Plaintiffs failed to provide SLTD the opportunity to meet and confer regarding all

16  the other documents Plaintiffs have now raised in its motion to compel. Also, as

17  discussed above, SLTD has already produced the equivalent document identified as

18  PREM 1114 and had raised that with Plaintiff's counsel in the in-person meet and confer

19  on May 3, 2012.

20        Notwithstanding SLTD's willingness to reach a reasonable and informal resolution

21  to the issues presented in this motion, Plaintiffs' counsel has chosen to bypass the meet

22  and confer process and demand further discovery through a motion to compel.  Indeed,

23  the conduct of Plaintiffs' counsel constitutes a failure to meet and confer in good faith

24  and, for this reason alone, Plaintiffs' motion to compel should be denied.

25        Plaintiffs argue that SLTD cannot be trusted with providing responsive documents.

26  Contrary to Plaintiffs' assertions, SLTD has diligently complied with its discovery

27  obligations.   To date, SLTD has produced over 5750 responsive documents and

28  continues to provide Plaintiffs with documents on a rolling basis. Nguyen Decl., ¶ 11.

1    Further, Plaintiffs disingenuously imply that SLTD did not meet and confer with

2    Plaintiffs until May 3, when, in fact, SLTD met and conferred telephonically with

3    Plaintiffs on March 27 and March 28 with respect to its initial responses for production

4    of documents, which SLTD subsequently supplemented.   Nguyen Decl., ¶ 3.

5         Finally, the Court should take note that Plaintiffs caused additional delay in the

6    meet and confer date of May 3, 2012 because they failed to follow Local Rule 37-1

7    which requires a letter identifying the issues and terms of the discovery order a party

8    seeks.  Although SLTD reminded Plaintiffs on April 12, 2012, of its failure to comply

9    with the local rule, Plaintiffs belatedly provided a letter 11 days later on April 23, 2012.

10   Nguyen Decl., ¶ 4, Exhibit A.

11            2.    **Plaintiffs' Demand For Extraordinary Relief Is Unwarranted**

12        Plaintiffs ask the Court to allow an outside vendor unwarranted access to SLTD's

13   property, without restriction, and at SLTD's expense.  Plaintiffs' demands are untenable

14   and should be denied.

15        First and foremost, Plaintiffs fail to provide any authority on point that justifies

16   their requested relief, particularly where they have ignored SLTD's repeated requests for

17   the parties to meet and confer with respect to search terms.   Plaintiffs rely on two cases

18   where parties repeatedly violated court orders to produce records and refused to engage

19   in searches for information.

20        In *Wingnut Films Ltd. v. Katja Motion Pictures Corp.*, 2007 U.S. Dist. LEXIS

21   72953 (C.D. Cal. Sept. 18, 2007), a party ("New Line") violated four court orders to

22   produce records and a separate court order requiring New Line to certify compliance

23   with the discovery orders concerning an opposing party's requests for production of

24   documents.  *Id.* at **3-7.  Only after New Line repeated violated the court's orders did

25   the court require New Line to make their custodians of records available for deposition.

26   *Id.* at **7-9.  After New Line's custodians of records appeared unprepared for two

27   rounds of depositions, the court required New Line to make certain records available to

28   their opponent if those records were not produced within 21 days and required New Line

1   to retain a jointly selected outside vendor experienced in electronic discovery to assist

2   with the search for information. *Id.* at **45-52.

3       In *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 2002 U.S. Dist. LEXIS

4   7792, 2002 WL 818061 (D. Del. Apr. 30, 2002), the defendant refused to search for

5   additional materials for a period of nine months. *Id.* at **4-5. The defendant then

6   disclosed the existence of additional information that had not previously been produced

7   and the court required that a third party vendor would search for additional responsive

8   materials pursuant to an agreed upon list of search terms. *Id.* at *19.

9       Unlike the defendant in *Wingnut Films*, SLTD has not violated any court orders

10  with respect to discovery and is not stonewalling Plaintiffs with respect to discovery. To

11  the contrary, SLTD is requesting that the parties meet and confer to discuss search terms

12  so that responsive material can be located and produced in an orderly fashion. The

13  determination of search terms is exactly the remedy determined necessary by the court

14  in *Tulip Computers Int'l* and it is exactly the type of normal and obligatory discovery

15  procedure that Plaintiffs are refusing to participate in.

16      Furthermore, Plaintiffs' request for a custodian of records deposition is also

17  unwarranted in light of the fact that SLTD is the party actively seeking to resolve the

18  discovery disputes and make further productions while Plaintiffs choose not to

19  participate in that process.

20      In sum, the Court should conclude that Plaintiffs have not met and conferred in

21  good faith and that Plaintiffs' demands are not warranted. At best, the parties should

22  instead be ordered to meet and confer, as is required by the rules, concerning the proper

23  parameters for the identification of responsive materials. This is especially important in

24  the case at hand because of the numerous complicated issues that Plaintiffs are seeking

25  discovery about and the fact that Plaintiffs' demands implicate costly discovery of

26  electronically stored information. The cooperation of the parties is key.

27      SLTD stands prepared to continue its compliance with its discovery obligations

28  in that regard.

**V.     Plaintiffs' Request for Attorneys' Fees**

    **A.     Plaintiffs' Position**

Fed. R. Civ. P. 26(g) "requires that counsel make a reasonable investigation and effort to certify that the client has provided all information and documents available to it which are responsive to a discovery request." *Wingnut Films*, 2007 U.S. Dist. LEXIS 72953, at *55. Violation of Rule 26(g) results in mandatory sanctions. *Id*. ("When Rule 26(g) is violated without substantial justification, 'the court . . . shall impose upon the person who made the certification, the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.'") (citing  Fed. R. Civ. Proc. 26(g)(3)).

Here, Schneider has provided *no* justification, let alone "substantial justification," for its failure to perform a "reasonable investigation" for documents responsive to plaintiffs' requests.  Schneider is a large, sophisticated company, with an in-house information technology department that should have assisted with the search.  When plaintiffs first raised with Schneider whether it had complied with its discovery obligations, Schneider refused to meet and confer on the issue. Teukolsky Exh. 6 at 2-3. Schneider refused, for example, to disclose any steps it had taken to search for electronically stored information, and refused to disclose the names of employees whose computers and email accounts were searched.  *Id*.  Only *after* plaintiffs received documents from Premier and Impact demonstrating that Schneider was withholding documents did Schneider agree even to discuss the issue.  Teukolsky Exh. 16.

Given Schneider's failure to perform a "reasonable investigation" for documents responsive to plaintiffs' requests, and its obstruction of plaintiffs' efforts to meet and confer on the issue until caught red-handed, an award of attorneys' fees is warranted.

    **B.     SLTD's Position**

As a preliminary matter, Plaintiffs are not entitled to attorneys' fees because their motion to compel should be denied.  Plaintiffs bring this motion for an order granting

1   them the right to information that is well beyond the scope of permissible discovery.

2   Plaintiffs are also demanding extraordinary relief while failing to comply with their own

3   discovery obligations under Rule 37 to meet and confer in good faith. Indeed, Plaintiffs'

4   motion should be denied in its entirety, the parties should be ordered to meet and confer

5   concerning search terms for the items identified in Section II, and SLTD should be

6   granted an award of attorneys' fees for having to oppose Plaintiffs' baseless and

7   premature motion.

8       Should the Court choose to permit the discovery demanded by Plaintiffs, the

9   request for attorneys' fees should still be denied because SLTD's responses to Plaintiffs'

10   broad demands and conduct in the discovery process is substantially justified. *See* Fed.

11   R. Civ. P. 37(a)(5)(A)(ii) ("But the court must not order [payment of attorney's fees] if:

12   ... (ii) the opposing party's nondisclosure, response, or objection was substantially

13   justified[.]"). A party's conduct is "substantially justified" where there is, "a genuine

14   dispute, or if reasonable people could differ as to the appropriateness of the contested

15   action." *Devaney v. Continental American Ins. Co.*, 989 F.2d 1154 (11th Cir. 1993)

16   (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)).

17       Here, Plaintiffs seek an order that is without precedent concerning their novel legal

18   theory that they might establish a joint employer relationship with an entity that is three

19   relationships removed from their direct employers. In light of the remoteness to the case

20   at hand, SLTD was justified in opposing the production of the information pursuant to

21   Rule 26. Moreover, with respect to Section II, SLTD's efforts to meet and confer show

22   its good faith efforts to comply with its discovery obligations. In contrast, Plaintiffs have

23   refused to fulfill their discovery obligations. For these reasons, and those stated in the

24

25

26

27   //

28   //

1 | SLTD's sections above, Plaintiffs' demand for attorneys' fees should be denied and SLTD

2 | should be deemed the prevailing party on this motion.

3

4 | Dated: May 30, 2012                    Respectfully submitted,

5 |                                        TRABER & VOORHEES

6

7 |                          By:    /s/ Lauren Teukolsky

8 |                                        Lauren Teukolsky

9 | Dated: May 31, 2012                    Respectfully submitted,

10

11 |                                       OGLETREE, DEAKINS, NASH,
                                           SMOAK & STEWART, P.C.

12 |                          By:    /s/ Betsy Johnson

13 |                                       Betsy Johnson

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28