THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
Traber & Voorhees
128 N. Fair Oaks Avenue, Suite 204
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com

MICHAEL RUBIN (SBN 80618)              SANDRA C. MUÑOZ (SBN
JONATHAN WEISSGLASS (SBN               190404)
185008)                                Law Offices of Sandra C. Muñoz
JENNIFER SUNG (SBN 254741)             5429 E. Beverly Blvd.
Altshuler Berzon LLP                   Los Angeles, CA 90022
177 Post Street, Suite 300             Telephone: (323) 720-9400
San Francisco, California 94108        Facsimile: (323) 720-9090
Telephone: (415) 421-7151              scm4law@att.net
Facsimile: (415) 362-8064
mrubin@altber.com
jweissglass@altber.com                 (Add'l counsel on next page)
jsung@altber.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

EVERARDO CARRILLO, *et al.*, for          ) Case No. CV 11-8557 CAS (DTBx)
themselves and all others similarly       )
situated and the general public,          ) **PLAINTIFFS' SUPPLEMENTAL**
                                          ) **MEMORANDUM IN SUPPORT**
                                          ) **OF MOTION TO COMPEL**
            Plaintiffs,                   ) **RESPONSES TO FIRST SET OF**
                                          ) **REQUESTS FOR PRODUCTION**
      v.                                  ) **OF DOCUMENTS PROPOUNDED**
                                          ) **TO SCHNEIDER LOGISTICS**
SCHNEIDER LOGISTICS, INC.,                ) **TRANSLOADING &**
*et al.*,                                 ) **DISTRIBUTION, INC.**
                                          )
            Defendants.                   ) Date:      June 21, 2012
                                          ) Time:      10:00 a.m.
                                          ) Judge:     Hon. David T. Bristow
                                          )
                                          ) Discovery cutoff:  None set
                                          ) Pretrial conf.:    None set
                                          ) Trial date:        None set

1

2

<u>Additional counsel for plaintiffs</u>:

3

4

GUS T. MAY (SBN 159436)
KEVIN R. KISH (SBN 233004)
MATTHEW E. DECAROLIS (SBN 238595)
Bet Tzedek Legal Services
3435 Wilshire Blvd., Suite 470
Los Angeles, CA  90010
Telephone: (323) 939-0506
Facsimile: (213) 384-3524
gmay@bettzedek.org
kkish@bettzedek.org
mdecarolis@bettzedek.org

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.    **Plaintiffs Are Entitled to Discovery Regarding Wal-Mart**

    A.    **The Bifurcation Order Expressly Permits the Wal-Mart Discovery**

    Schneider argues that plaintiffs cannot seek the Wal-Mart discovery because the bifurcation order only permits discovery into the named defendants' status as joint employers. Schneider is mistaken. The order limits Phase I to "defendants' control over plaintiffs' employment in the Mira Loma warehouses, as joint employers, as party of an integrated enterprise, or on some other basis," but the "defendants" referred to in that order includes the "Doe" defendants in plaintiffs' complaint. Exh. 15 at 281.[1]  Nothing in the order precludes plaintiffs from seeking discovery into those Doe defendants' potential liability – let alone discovery of communications between the Doe defendants and the named defendants – and plaintiffs would never have agreed to restrict discovery in this manner. After all, plaintiffs propounded the Wal-Mart discovery on February 1, 2012, five weeks *before* stipulating to bifurcated discovery on March 6, 2012. Supplemental Declration of Lauren Teukolsky ("Supp. Decl.") ¶10.  Plaintiffs fully expected defendants to respond to that discovery during Phase I, because under the bifurcation order, any decision about whether to add Wal-Mart or another Doe defendant must be made by September 3, 2012.  It would have made no sense for plaintiffs to excuse Schneider from responding to the discovery given the fast-approaching deadline for deciding whether to name Wal-Mart as a defendant.

    Even if Schneider's counter-intuitive reading of the stipulation were correct, its arguments ignore that the disputed discovery *is* calculated in part to learn about Schneider's joint employment. For example, RFP 55 seeks communications between Schneider and Wal-Mart regarding the unloading and loading work in the warehouses, and RFP 57 requests any requirements that Wal-Mart imposed on Schneider for subcontracted employees. These documents will likely show why Schneider chose to

---

[1]Unless otherwise indicated, all exhibits cited in this brief are attached to the Declaration of Lauren Teukolsky filed on May 31, 2012 (Doc. #249).

1  subcontract the work while continuing to exercise extensive control over the loaders and

2  unloaders (as Judge Snyder has now found on three separate occasions).

3      Finally, to read the order as Schneider suggests would merely delay the

4  inevitable.  The first phase of discovery is over; unlimited discovery began June 1,

5  2012. Exh. 15 at 281.  If plaintiffs are now precluded from obtaining the Wal-Mart

6  discovery, plaintiffs will be forced to re-send the same discovery and Schneider will

7  have 30 more days before reiterating that it refuses to provide any Wal-Mart discovery

8  without a Court order.  Given the approaching deadline for adding new parties, plaintiffs

9  would have no choice but to respond by seeking an extension of that deadline – which

10  is a waste of the parties' time, the Magistrate Judge's time, *and* Judge Snyder's.

11  **B.    Plaintiffs Meet the Rule 26 Standard For the Wal-Mart Discovery**

12      Schneider argues that plaintiffs' motion must be denied because plaintiffs have

13  not provided "direct evidence" that Wal-Mart is a joint employer. Def. Supp. Mem. at

14  3:17.  But this is not the correct standard.  Under Rule 26, discovery is relevant if

15  calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).  A

16  party is not required to prove the very fact it seeks to establish through discovery as a

17  predicate for obtaining that threshold discovery. Here, plaintiffs seek to determine

18  whether Wal-Mart exercises control over plaintiffs' work such that it is liable as a joint

19  employer or co-conspirator.  That discovery is entirely proper under the broad Rule 26

20  standards, and the Court should compel Schneider to respond to plaintiffs' requests.

21      Contrary to Schneider's claim, this is not a fishing expedition.  Plaintiffs have

22  already obtained substantial evidence – based on limited discovery – showing that Wal-

23  Mart exercises considerable control over aspects of plaintiffs' employment.  For

24  example: all of the goods that plaintiffs handle belong to Wal-Mart, which owns some

25  of the warehouses; a Wal-Mart manager with an office in the warehouses attends daily

26  management meetings; Wal-Mart has extensive hiring requirements for plaintiffs;

27  Schneider's compensation from Wal-Mart is directly tied to plaintiffs' productivity,

28

creating incentives for Schneider to pressure its contractors to falsify hours;[2] Impact and Premier routinely reported to Wal-Mart; Wal-Mart employees reprimanded plaintiffs; and Wal-Mart set workplace rules applicable to plaintiffs. Joint Stip. at 18-21. Plaintiffs are entitled to discover other facts that would enable them to determine the extent of Wal-Mart's control and its involvement in the labor violations at issue in this lawsuit.

Schneider argues that it should not be compelled to produce the Wal-Mart documents because they contain confidential information.   Joint Stip. at 27-29. However, the Court has already entered a protective order, *see* Doc. Nos. 158, 172, so there is no basis for concern that confidential information will be publicly disseminated.

## II.   Schneider's Destruction or Withholding of Responsive Documents

Pursuant to the Court's instructions on June 6, 2012, the parties will meet and confer to attempt to resolve the issue of Schneider's improper withholding or destruction of documents.  However, in the event that the parties are unable to resolve this issue, plaintiffs wish to make two critical points.

First, Schneider attempts to support its claim that it is complying with its discovery obligations by pointing to its production of 5,750 documents.  Joint Stip. at 56.  That assertion is both irrelevant and misleading.  It is irrelevant because this dispute concerns Schneider's deliberate failure to produce highly relevant, inculpatory documents – so the question is what Schneider *failed* to produce (and why), not what it chose to produce.   It is misleading because of those 5,750 documents: 4,139 are invoices from Impact and Premier to Schneider; 521 are printouts of Premier employee time sheets; 347 are handwritten security logs of visitors to and from the warehouses; and 206 are duplicates of other documents produced.  Supp. Decl. ¶11.  That leaves 537 documents; and 246 of *those* were produced long ago, in connection with Judge

---

[2]Danny Soto, Impact's Director of Operations, recently corroborated that Schneider supervisors pressured Impact to falsify its hours because Schneider had "to report to Walmart . . . low man hours."  Supp. Decl. Exh. 1 at 16.

1  Snyder's order requiring expedited discovery into Schneider's mass retaliatory

2  termination of the Schneider-Premier class members. *Id*.

3      In other words, Schneider has actually produced only 291 documents in response

4  to plaintiffs' RFPs that are not invoices, security logs or time sheets. These documents

5  mostly comprise: the bids that Impact and Premier submitted to obtain the labor

6  contracts; documents related to DLSE's October 2011 inspection of the warehouses; and

7  emails between Schneider's public relations personnel and reporters regarding this

8  lawsuit. *Id*. That could not possibly be the full universe of responsive documents, and

9  Schneider clearly has ignored its obligation to search for responsive documents.

10     According to Schneider, only *two* emails reflecting communications between

11 Schneider and Impact or Premier supervisors were located during Schneider's "diligent

12 search" of its records. Supp. Decl. ¶12. We know there are more, and that Schneider

13 and its counsel failed to perform their legally required discovery obligations, because

14 Impact and Premier have themselves produced hundreds of these emails, *id.*, many of

15 which directly establish Schneider's joint employer status (and show that many of

16 Schneider's factual statements to Judge Snyder and the Ninth Circuit were false).

17 Discovery is not a game. Our system of civil litigation depends upon honest, good faith

18 compliance with the discovery rules. Schneider has flagrantly violated those rules, and

19 still has not offered any explanation for failing to produce these inculpatory documents.

20 Nor has it described what steps it took to respond to plaintiffs' discovery requests, or

21 whether its outside counsel, rather than some in-house personnel, oversaw the process

22 and maintained responsibility for discovery compliance.

23     Second, Schneider's counsel stated on the June 6 Court conference call that one

24 potential reason it failed to produce emails is because they were destroyed before

25 plaintiffs filed this lawsuit. Even if that were true as to some documents (Schneider has

26 not yet provided its document destruction policy or any sworn declaration supporting

27 its assertion), Impact has produced many emails between its supervisors and Schneider's

28 that *post-date* the filing of this lawsuit on October 17, 2011. So this excuse, too, is false.

1   For example, Impact produced an email dated November 30, 2011 in which its
2   Director of Operations (Soto) informed Schneider's General Manager (Redgrave) that
3   Schneider supervisors had instructed Impact's supervisors to falsify the number of hours
4   that Impact's employees spent unloading trucks.  Supp. Decl. Exh. 2.  This document
5   corroborates an earlier declaration from a former Impact supervisor (Cepeda) who
6   testified that Schneider instructed him "to report two hours per truck container
7   unloaded, regardless of the actual time spent and even though most containers take far
8   longer to unload than two hours."  Supp. Decl. Exh. 3 ¶5.  Schneider vigorously
9   disputed Mr. Cepeda's testimony in prior filings.  Supp. Decl. Exh. 4 at 8-9.  Yet its own
10  files included this undisclosed email showing that Mr. Cepeda was telling the truth.
11  Schneider has also not yet produced a *single* document pertaining to its instructions to
12  Impact to falsify time records, even though a recent Impact deposition confirms that this
13  fraudulent conduct was pervasive.  Supp. Decl. Exh. 1 at 3, 8, 12-13, 16.

14  Further, in the November 30 email, Redgrave asserts that Impact is no longer
15  meeting Schneider's "Cases Per Hour" (CPH) productivity standard, Supp. Exh. 2,
16  directly contradicting his previous declaration that Schneider "does not and has never
17  determined the productivity goals and standards for any Defendant Impact employees."
18  Doc. #56 ¶55.  And, Impact has now produced numerous other emails that post-date this
19  lawsuit in which Schneider complains that Impact employees are not meeting
20  Schneider's productivity standards; Schneider has produced none.  Supp. Decl. ¶14.

21  Impact has also produced two emails in which Schneider instructs Impact to
22  terminate employees.  Supp. Decl. Exhs. 5 & 6.  Both emails are from 2011 (one is dated
23  a week before this lawsuit was filed), and it is unlikely that Schneider's document
24  destruction policy involves purging emails sent this recently.  These emails show that
25  Schneider possessed and exercised the authority to terminate workers, contradicting its
26  representations to Judge Snyder and the Ninth Circuit that it had no supervisory
27  authority over the class members.  Supp. Decl. Exh. 7 ¶¶56, 59; Exh. 8.  Yet Schneider
28  failed to produce these emails.

1    For these reasons, should the Court hear plaintiffs' motion on the document

2 withholding issue, it is certainly appropriate for the Court to order a third party to be

3 hired, at Schneider's expense, to conduct a proper search for responsive documents.

4

5 Dated: June 7, 2012                               Respectfully submitted,

6                                                   TRABER & VOORHEES

7

8                                      By:    /s/ Lauren Teukolsky
                                              Lauren Teukolsky
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28