THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
Traber & Voorhees
128 N. Fair Oaks Avenue, Suite 204
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com

MICHAEL RUBIN (SBN 80618)
JONATHAN WEISSGLASS (SBN 185008)
JENNIFER SUNG (SBN 254741)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
mrubin@altber.com
jweissglass@altber.com
jsung@altber.com

SANDRA C. MUÑOZ (SBN 190404)
Law Offices of Sandra C. Muñoz
5429 E. Beverly Blvd.
Los Angeles, CA 90022
Telephone: (323) 720-9400
Facsimile: (323) 720-9090
scm4law@att.net

(Add'l counsel on next page)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| EVERARDO CARRILLO, *et al.*, for themselves and all others similarly situated and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>SCHNEIDER LOGISTICS, INC., *et al.*,<br><br>Defendants. | Case No. CV 11-8557 CAS (DTBx)<br><br>**PLAINTIFFS' REQUEST FOR FURTHER RELIEF AND SANCTIONS RE MOTION TO COMPEL RESPONSES TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO SCHNEIDER LOGISTICS TRANSLOADING & DISTRIBUTION, INC.**<br><br>Date:           Sept. 13, 2012<br>Time:           10:00 a.m.<br>Judge:         Hon. David T. Bristow<br><br>Discovery cutoff:   None set<br>Pretrial conf.:        None set<br>Trial date:             None set |

1

2

<u>Additional counsel for plaintiffs:</u>

3

GUS T. MAY (SBN 159436)

4
KEVIN R. KISH (SBN 233004)
MATTHEW E. DECAROLIS (SBN 238595)

5
Bet Tzedek Legal Services

6
3435 Wilshire Blvd., Suite 470
Los Angeles, CA 90010

7
Telephone: (323) 939-0506

8
Facsimile: (213) 384-3524
gmay@bettzedek.org

9
kkish@bettzedek.org

10
mdecarolis@bettzedek.org

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A.   Schneider Has Used Duplicity to Try to Conceal Its Joint Employer
Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B.   Schneider's Campaign of Obstructing Plaintiffs' Discovery . . . . . . . . . . . . 5

C.   The 30(b)(6) Depositions Confirmed Schneider's Discovery Misconduct . . . 7

D.   The Recent Production Also Shows Schneider's Discovery Malfeasance . . . 8

E.   Schneider Made False Representations Regarding the Warehouse Videos . . 11

F.   Schneider Engaged in Spoliation of Evidence . . . . . . . . . . . . . . . . . . . . . 12

SUMMARY OF RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

A.   The Court Has Ample Authority to Enter A Broad Range of Sanctions . . . 15

B.   Legal Standards Governing Sanctions for Spoliation of Evidence . . . . . . . 16

C.   Plaintiffs Are Entitled to an Adverse Inference Based on Spoliation . . . . . 17

     1.   Schneider Destroyed Evidence it Was Obligated to Preserve . . . . . . . 17

     2.   Schneider Acted With a Culpable State of Mind . . . . . . . . . . . . . . . . 18

     3.   The Destroyed Evidence Was Relevant to Plaintiffs' Claims . . . . . . . 19

     4.   The Court Should Enter an Adverse Inference . . . . . . . . . . . . . . . . . 21

D.   The Court Should Also Enter Sanctions For Bad Faith Discovery
Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Plaintiffs' Mtn. for Further Relief and Sanctions
Against Defendant SLTD;
Case No. CV 11-8557 CAS (DTBx)       i

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page(s)**

*Apple Inc. v. Samsung Electrics Co., Ltd.,*
     2012 U.S. Dist. LEXIS 103958 (N.D. Cal. July 24, 2012) . . . . . . 16, 17, 18, 22

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.,*
     2008 U.S. Dist. LEXIS 111150 (N.D. Cal. Sept. 19, 2008) . . . . . . . . . . 16, 20

*Fretz v. Keltner,*
     109 F.R.D. 303 (D. Kan. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hynix Semiconductor, Inc. v. Rambus Inc.,*
     591 F. Supp. 2d 1038 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*IO Group Inc. v. GLBT Ltd.,*
     2011 U.S. Dist. LEXIS 120819 (N.D. Cal. Oct. 19, 2011) . . . . . 16, 17, 18, 21

*Kronisch v. United States,*
     150 F.3d 112 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Leon v. IDX System Corp.,*
     464 F.3d 951 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Metropolitan Opera Association v. Local 100,*
*Hotel Emples. & Restaurant Emples. International Union,*
     212 F.R.D. 178 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 23

*In re Napster, Inc. Copyright Litigation,*
     462 F. Supp. 2d 1060 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . 16, 17, 18, 21

*National Association of Radiation Survivors v. Turnage,*
     115 F.R.D. 543 (N.D. Cal. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Pension Committee of University of Montreal Pension Plan v. Banc of America Sec., LLC.,*
     685 F. Supp. 2d 456 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Plaintiffs' Mtn. for Further Relief and Sanctions
Against Defendant SLTD;
Case No. CV 11-8557 CAS (DTBx)      ii

*In re Phenylpropanolamine (PPA) Products Liability Litigation,*
    460 F.3d 1217 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Primus Automobile Finance Services v. Batarse,*
    115 F.3d 644 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 24

*Residential Funding Corp. v. Degeorge Finance Corp.,*
    306 F.3d 99 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Torres-Lopez v. May,*
    111 F.3d 633 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Unigard Sec. Insurance Co. v. Lakewood
Engineering & Manufacturing Corp.,*
    982 F.2d 363 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 24

*United Factory Furniture Corp v. Alterwitz,*
    2012 U.S. Dist. LEXIS 48795 (D. Nev. Apr. 5, 2012) . . . . . . . . . . . . . . . 16

*West v. Goodyear Tire & Rubber Co.,*
    167 F.3d 776 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wingnut Films, Ltd. v. Katja Motion Pictures Corp.,*
    2007 U.S. Dist. LEXIS 72953 (C.D. Cal. Sept. 18, 2007) . . . . . . . . . . . 15, 24

*Zubulake v. UBS Warburg LLC (Zubulake IV),*
    220 F.R.D. 212 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 26(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# NOTICE OF MOTION AND MOTION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 13, 2012, at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 4 of this Court located at 3470 Twelfth Street, Riverside, CA 92501, plaintiffs Everardo Carrillo, *et al.*, will and hereby do move for further relief and sanctions against defendant Schneider Logistics Transloading and Distribution, Inc. and its attorneys at Ogletree, Deakins, Nash, Smoak & Stewart, P.C. for their egregious, ongoing discovery abuses, including spoliation of evidence and the bad faith withholding of critical documents.

For the reasons set forth in the accompanying Memorandum of Points and Authorities, plaintiffs seek an order imposing sanctions on Schneider and its attorneys to remedy and punish Schneider's discovery misconduct and spoliation of evidence.  Specifically, plaintiffs request: 1) entry of factual findings enumerating Schneider's acts of misconduct; 2) entry of an adverse inference against Schneider based on its spoliation of evidence and false statements of material fact concerning its joint employer status; 3) issuance of notice to Schneider and its attorneys that further misconduct will result in additional sanctions, such as terminating sanctions; and 4) reasonable attorneys' fees and costs.

Plaintiffs further request that the Court order Schneider immediately to produce the videotapes from the security cameras in the Mira Loma warehouses at issue in this lawsuit that its Fed. R. Civ. P. 30(b)(6) designee testified are currently stored in its evidence locker, and all other videos that still exist that are responsive to plaintiffs' document requests.  Schneider should also be ordered to provide a description of any such videos that have been destroyed since October 17, 2011.

The Court has ample authority to enter the sanctions requested.  Fed. R. Civ. P. 26(g) requires the imposition of mandatory sanctions when a party or its counsel

1    signs a response to a document request without performing a reasonable

2    investigation into whether the response is correct, and whether a reasonable search

3    for responsive documents has been conducted.  As set forth in the accompanying

4    Memorandum, the facts clearly establish that Schneider's counsel signed a document

5    response on April 4, 2012 without performing a reasonable search for documents,

6    and without confirming that the responses were correct.

7        The Court also has authority to enter sanctions under its "inherent powers"

8    upon a showing of bad faith, willfulness, or fault by Schneider.  Numerous facts

9    show Schneider's bad faith, willfulness or fault.  Schneider has now produced

10   thousands of documents it previously claimed did not exist, including over 12,100

11   pages of personnel files it maintained for the Impact and Premier class members

12   (whom it claims not to jointly employ), and the workplace rules and training

13   requirements it imposed on all class members.  These documents, among others,

14   show that Schneider's top managers knowingly made material false statements in

15   declarations previously filed with Judge Snyder by denying the facts that these

16   documents show to be true.

17       The Court's "inherent powers" further authorize the entry of sanctions for

18   spoliation of evidence.  Here, Schneider failed to preserve relevant evidence after

19   learning about plaintiffs' lawsuit.  The recent court-ordered Rule 30(b)(6)

20   depositions established that Schneider has an "auto-delete email system," under

21   which emails sent to or from Mira Loma are permanently deleted from Schneider's

22   servers after a short period of time.  Schneider has no backup system for emails or

23   other electronic documents, and no document retention policy.  Rather, employees

24   have absolute discretion to decide whether to delete emails or other documents.

25   Despite knowing this, Schneider and its attorneys failed to implement a proper

26   "litigation hold," and took no steps to turn off the "auto-delete" email function until

27   recently.  A key Schneider employee who supposedly received the litigation hold

28

1   memo recently testified that she *never* received instructions not to delete emails or

2   other documents, and that she has routinely deleted potentially relevant emails to the

3   present day.  These facts warrant the imposition of a spoliation adverse inference.

4         Plaintiffs' motion is based on this Notice of Motion, the attached

5   Memorandum of Points and Authorities, the accompanying declaration of Lauren

6   Teukolsky with attached exhibits, the proposed order submitted herewith, the

7   pleadings, declarations and papers on file with the Court, and any further briefing

8   and arguments of counsel.

9

10   Dated:  August 23, 2012        Respectfully submitted,

11                                     TRABER & VOORHEES

12                                     ALTSHULER BERSON LLP

13                                     LAW OFFICES OF SANDRA MUNOZ

14                                     BET TZEDEK

15

16                                 By:  /s/ Lauren Teukolsky

17                                       Lauren Teukolsky
                                     Attorneys for Plaintiffs Everardo Carrillo, *et al.*

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Mtn. for Further Relief and Sanctions
Against Defendant SLTD;
Case No. CV 11-8557 CAS (DTBx)      3

### MEMORANDUM OF POINTS AND AUTHORITIES

By this motion, plaintiffs request an order sanctioning Schneider Logistics Transloading and Distribution, Inc. and its attorneys at Ogletree, Deakins, Nash, Smoak & Stewart, P.C. for their egregious, ongoing discovery abuses.  Plaintiffs' motion rests on two distinct but related discovery violations: Schneider's bad faith withholding of critical documents that bear directly on its liability as plaintiffs' "joint employer" (the core factual issue in this case); and Schneider's spoliation of relevant evidence that also bears on its joint employer liability.

From the outset of this litigation, Schneider and its counsel have engaged in efforts – through artifice, duplicity, and, as shown below, perjury – to conceal Schneider's status as plaintiffs' joint employer.  The time has come for the Court to remedy these egregious violations of the discovery rules and breaches of Schneider's obligations to the Court.

Schneider's efforts to prevent plaintiffs from uncovering evidence of its joint employer status are marked by an escalating series of discovery violations.  First, on April 4, 2012, Schneider certified that it had taken reasonable steps to search for documents responsive to plaintiffs' requests and represented that vast categories of relevant documents simply did not exist. But the Court-ordered Rule 30(b)(6) depositions show that Schneider did not truly begin to search for responsive documents until *after* the Court ordered Schneider to produce documents on June 13.

Schneider has now produced over 23,600 documents that it should have located before – which plaintiffs would never have known about, had not the production of the two other defendants, Impact and Premier, shown that Schneider was withholding critical documents.  The new documents include 12,100 pages of personnel files that Schneider maintained on the plaintiff class members, including documents showing that the class members are bound by Schneider's rules and procedures.  Schneider's counsel previously falsely certified that these files do not

1  exist.  Doc. 249-1, Ex. 1 at 25:16-26:7, 56:15-57:4.  And, Schneider's top managers

2  previously filed declarations falsely stating that Schneider does not keep personnel

3  files for the class members, and does not make class members subject to Schneider's

4  policies or procedures.  Doc. 56 ¶¶26, 46; Doc. 57 ¶¶13, 21, 37, 42.  Schneider has

5  not even attempted to explain why it failed to produce these files earlier, other than

6  the obvious reason that production would prove that Schneider and its attorneys had

7  made knowingly false statements to the Court to avoid liability.

8        Schneider also repeatedly asserted, both to the Court and plaintiffs, that it had

9  no access to extensive video footage from cameras in the warehouses (which would

10  show, *inter alia*, when class members actually began their workdays), and could not

11  produce the videos.  The Rule 30(b)(6) depositions revealed, however, that

12  Schneider not only can access the videos, but in fact possesses at least some of them

13  in its "evidence locker."  Again, Schneider has not explained why it lied to the Court

14  and plaintiffs about its possession of these potentially highly relevant videotapes.

15        Second, the Rule 30(b)(6) depositions show that Schneider knowingly

16  destroyed evidence after this lawsuit was filed, and failed to instruct its employees to

17  preserve potentially relevant documents.  Schneider's designees testified that

18  Schneider has an "auto-delete" email system, in which all emails are permanently

19  deleted from its servers after a short time, and that Schneider does not back up its

20  electronic documents.  Yet Schneider failed to send a "litigation hold memo" until

21  weeks after the lawsuit was filed, and took no steps to monitor employees'

22  compliance with the memo after it was sent.  Indeed, a key Schneider supervisor

23  recently testified that she *never* received instructions to preserve emails, and that she

24  has deleted potentially relevant emails on a daily basis since this lawsuit was filed.

25  This spoliation of evidence has resulted in the loss of unknown volumes of relevant

26  emails, and can only be explained by Schneider's mistaken belief that with so much

27  else going on in this lawsuit, its wrongful conduct would never be uncovered.

28

1       Schneider's egregious misconduct has severely prejudiced plaintiffs, and

2  makes a mockery of our system of civil litigation, which depends upon honest, good

3  faith compliance with the discovery rules.  These facts warrant the imposition of

4  severe sanctions, including adverse inferences against Schneider and monetary

5  sanctions against Schneider and its counsel.

6                   **FACTUAL BACKGROUND**

7  **A.**     **Schneider Has Used Duplicity to Try to Conceal Its Joint Employer Status**

8       Schneider's discovery misconduct is part and parcel of its overall strategy of

9  concealing its liability to the plaintiff class members as their "joint employer" – that

10  is, an entity with sufficient authority to control the terms and conditions of their

11  employment as to be liable, along with its subcontractors, for the labor violations at

12  issue in this lawsuit.  *Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997).

13       Schneider has consistently acted to conceal its joint employer status.  Initially,

14  plaintiffs sued only one of the Schneider defendants, Schneider Logistics, Inc.

15  ("SLI"), along with Impact and Premier.  SLI responded by trying to mislead the

16  Court about its involvement in the warehouse operations and the role played by its

17  subsidiary Schneider Logistics Transloading and Distribution, Inc. ("SLTD").  SLI

18  thus argued that Judge Snyder could not issue a TRO against it because SLI had "no

19  connection with or responsibility for the operation, oversight, or supervision" of the

20  Mira Loma warehouses where plaintiffs work.  Doc. 26 at 1:22-27.  SLI's

21  Secretary/Treasurer Amy Schilling submitted a sworn declaration stating that SLI

22  had "no business or contractual relationship" with Premier or Impact, and "had no

23  knowledge of or information regarding the identity of the Named Plaintiffs'

24  employer(s)," Doc. 27 ¶¶1, 16, 25.  But those facts turned out to be untrue.

25       In response to Schneider's assertions, plaintiffs demonstrated that Schilling

26  knew that SLTD had operated the warehouses since 2006.  Doc. 35 at 10-14.  Indeed,

27  Schilling *herself* signed the labor services contracts with Impact and Premier, and

28

Plaintiffs' Mtn. for Further Relief and Sanctions
Against Defendant SLTD;
Case No. CV 11-8557 CAS (DTBx)      -3-

1   she signed those contracts on behalf of SLTD "and its affiliates," including SLI.

2   Doc. 93-1 at 14, 31 After Judge Snyder allowed expedited discovery into

3   Schneider's corporate structure, plaintiffs also established that Schneider National,

4   the parent corporation for which Schilling is Vice President and Controller, was the

5   entity that negotiated those labor services contracts with Impact and Premier.  Ex. 1

6   at 20:22-21:13, 28:2-6, 36:3-37:12, 120:5-12.[1]  These facts showed that Schilling

7   was not being truthful when she stated that SLI had "no business or contractual

8   relationship" with Impact or Premier, and had "no information regarding the

9   identity" of plaintiffs' employers.  Doc. 27 ¶¶1, 16, 25.

10        After failing in its attempt to mislead the Court as to its role in the warehouses,

11  Schneider opposed plaintiffs' motion for a preliminary injunction by making the

12  equally false statement, this time through the declaration of General Manager Vince

13  Redgrave, that its contracts with Impact and Premier gave Schneider no right to

14  control any aspect of the plaintiffs' employment.  Instead of actually producing these

15  contracts, Schneider merely represented to the Court what they supposedly stated.

16  Doc. 56 ¶¶18-22, 34-35, 38-45, 56.  At the hearing, the Court expressed impatience

17  with Schneider's position that it could avoid being bound by a preliminary injunction

18  by characterizing contract provisions without producing the contracts, and she

19  ordered Schneider to produce them within 72 hours.  Ex. 2 at at 52:15-55:21.

20        Sure enough, when Schneider actually produced those contracts, they proved

21  the exact opposite of what Vince Redgrave had testified and Schneider's lawyers had

22  represented.  As Judge Snyder found, in her ordering binding both SLTD and SLI to

23  the preliminary injunction: "The contracts dictate nearly every material term of

24  plaintiffs' employment including how Impact and PWV must conduct

25  pre-employment screening and new employment training."  Doc. 106 at 5.  But for

26

27
        [1]All exhibits referenced herein are attached to the concurrently-filed Teukolsky
28  Declaration, unless otherwise noted.

1   Judge Snyder's order requiring Schneider to produce those contracts, Schneider

2   might have gotten away with its efforts to conceal its role as plaintiffs' joint

3   employer.  But that attempted concealment was just a small taste of things to come.

4   **B.** **Schneider's Campaign of Obstructing Plaintiffs' Discovery**

5        Plaintiffs served a Request for Production of Documents (RFP) to Schneider

6   on February 1, 2012.  On April 4, 2012, Schneider responded by certifying that after

7   "reasonable inquiry" and a "diligent search," it had no responsive documents with

8   respect to more than 20 requests, and that, with respect to numerous other requests,

9   all responsive documents had already been produced.  Doc. 249-1, Ex. 1.

10        That was not true.  Schneider and its attorneys had not conducted a reasonable

11   inquiry, let alone a diligent search.  As we now know, Schneider withheld thousands

12   of relevant documents establishing that Schneider set the working conditions for

13   plaintiffs, and engaged in several acts of "control," such as setting productivity

14   quotas, that are highly relevant to the joint employer inquiry under *Torrez-Lopez*.

15        Plaintiffs would never have learned about Schneider's discovery fraud, except

16   that the two other defendants, Impact and Premier, produced dozens of documents

17   *that Schneider itself had created*, like Schneider's workplace rules applicable to all

18   class members; Schneider emails ordering the termination of Impact employees; and

19   Schneider emails to Impact and Premier managers setting detailed productivity levels

20   for the workers.  Doc. 248-1 at 48-50; Doc. 254 at 4-5.  Some of the documents that

21   Schneider withheld showed the *exact location on Schneider's computer system*

22   *where the documents were kept*.  *E.g.,* Doc. 249-1 at 291-94, 297-98.

23        When plaintiffs confronted Schneider about the missing documents, rather

24   than acknowledge that Schneider's search efforts were inadequate, Schneider's

25   counsel instead embarked on a campaign of obstruction.  Counsel refused to disclose

26   any steps taken to search for documents.  Ex. 3 at 3; Ex, 4 at 2.  They asserted – as

27   we now know, falsely – that the missing documents might have been deleted.  They

28

1   claimed – also falsely – that Schneider had no "protocol" for providing its training

2   materials and workplace rules to Impact and Premier.  Ex. 5 at 2.

3   In the face of counsel's complete refusal to cooperate, plaintiffs filed a motion

4   to compel on May 31, 2012.  The Court ordered the parties to meet and confer and

5   required Schneider to describe its search efforts.  As it turned out, Schneider and its

6   counsel had undertaken almost no search at all, let alone the "diligent search" they

7   claimed to have made before certifying that no responsive documents existed.

8   As of June 8, only *five* Schneider email accounts and computers had been

9   searched for responsive documents, even though this case involves dozens of

10  Schneider employees.  Ex. 6 at 1.  None of the Schneider supervisors who work most

11  closely with the Impact and Premier class members were asked to search for

12  documents.  Teukolsky Dec. ¶22.  Nor had Schneider requested assistance from its

13  Information Technology Department, instead deliberately placing responsibility on a

14  handful of individuals with no training in retrieving electronic information and no

15  experience in responding to discovery.  Schneider's counsel, who are ultimately

16  responsible for ensuring that its client complies with discovery obligations, did not

17  even know whether Schneider's servers had been searched for responsive

18  documents, reflecting an inappropriate hands-off approach that left compliance

19  entirely to the client, with no oversight or follow up.  Doc. No. 256 at 4-5.

20  During the meet and confer, plaintiffs also learned that Schneider may have

21  engaged in spoliation by failing to preserve potentially relevant emails.  Schneider's

22  counsel revealed that Schneider has no document retention policy; that individual

23  employees have absolute discretion to decide whether to delete emails; that

24  Schneider does not back up its email system or other electronic documents; and that

25  documents once deleted are irretrievable.  Ex. 6 at 1-2; Doc. 256 at 8-9.  While those

26  policies may not be improper in and of themselves, they are improper in conjunction

27

28

1   with Schneider's failure to enforce a proper litigation hold after this lawsuit was

2   filed, as described in the next section.

3        On June 13, the Court ordered Schneider to produce two Rule 30(b)(6)

4   witnesses for deposition: one knowledgeable about the steps Schneider took to

5   comply with its discovery obligations (Matt Daniels), and one knowledgeable about

6   Schneider's document retention policy (Mark Gallert).  The Court also ordered

7   Schneider to produce by July 12, 2012 all other responsive documents in its

8   possession.  *See* Doc. 261.  Although the Court did not rule on plaintiffs' sanctions

9   request, the Court ruled that either party could re-calendar the motion at a later date.

10  **C.**   **The 30(b)(6) Depositions Confirmed Schneider's Discovery Misconduct**

11       Both Rule 30(b)(6) deponents confirmed that Schneider and its attorneys had

12  utterly failed to comply with their most basic discovery obligations.  Matt Daniels is

13  an informational security analyst. Ex. 8 at 7:25-8:5.  Schneider designated him as

14  the custodian of records because he is the Schneider employee responsible for

15  working with Schneider's attorneys to locate information in connection with

16  litigation.  *Id*. at 18:24-19:10.  Daniels has the ability to search all email accounts of

17  Schneider employees in Mira Lima from his office in Green Bay.  *Id*. at 37:23-38:9.

18       Daniels confirmed that, as of the date of his deposition (June 27), neither he

19  nor anyone else in his department had searched for *any* documents in response to

20  plaintiffs' requests.  *Id*. at 47:9-22, 55:13-56:2, 56:16-21, 67:24-68:17, 72:8-12,

21  73:2-74:16.  Indeed, Daniels could not even recall seeing the requests until plaintiffs'

22  counsel showed them to him at the deposition.  *Id*. at 80:4-14.  Although Daniels can

23  search all Mira Loma email accounts, Schneider never asked him to conduct such a

24  search.  Rather, Daniels testified that Schneider's counsel had told him only recently

25  that he would be asked to oversee *future* search efforts.  *Id*. at 73:8-74:22.

26       Daniels's testimony confirmed that Schneider failed to perform a "diligent

27  search" for responsive documents.  For example, plaintiffs' counsel showed Daniels

28

1  the Schneider training materials that Impact had produced, which identify the

2  specific location on Schneider's computer system where those documents are kept.

3  Daniels testified that no one had ever asked him to search for this document (or for

4  anything like it).  Ex. 8 at 86:20-87:21; *see also id.* at 88:14-92:13.

5      Thus, contrary to the April 4 certification that Schneider had performed a

6  "diligent search" for documents, *Schneider's own designated custodian* confirmed

7  that the company had done almost nothing to search for responsive documents.

8  **D.    The Recent Production Also Shows Schneider's Discovery Malfeasance**

9      Since the last hearing on June 13, Schneider has produced about 23,600

10  documents, including thousands that are extremely probative of joint employment,

11  but that Schneider previously claimed in its certified discovery responses did not

12  exist.  Several of these documents show on their face that Schneider managers

13  perjured themselves – apparently believing they would not be caught – when they

14  submitted declarations in opposition to plaintiffs' early requests for injunctive relief.

15      Perhaps most egregiously, Schneider withheld more than *12,100 pages of*

16  *personnel files* that Schneider maintained for the Premier and Impact workers from

17  2007 to 2011.  These files contain Schneider's policies, procedures, orientation

18  manuals, and training materials applicable to the Premier and Impact class members,

19  with signed acknowledgments that the workers would follow all of Schneider's rules

20  and had received Schneider's required training.  Teukolsky Dec. ¶¶23-25 & Exs. 11,

21  12.  Included is Schneider's file for lead plaintiff Everardo Carrillo.  Ex. 11.

22  *Schneider claimed in its certified April 4 responses that these documents did not*

23  *exist.*  Doc. 249-1, Ex. 1 at 25-26, 56-57.  It lied.

24      The existence of these documents reveals significant falsehoods by

25  Schneider's managerial declarants.  In a sworn declaration dated November 4, 2011,

26  Vince Redgrave, Schneider's former General Manager in Mira Loma, testified that

27  Schneider "is not in possession and has never been in possession of any records,

28

Plaintiffs' Mtn. for Further Relief and Sanctions
Against Defendant SLTD;
Case No. CV 11-8557 CAS (DTBx)          -8-

1    files, data, or personnel information relating to Defendant Premier employees

2    assigned to the Mira Loma warehouse facility." Doc. 56 ¶26. Redgrave (who

3    recently left Schneider for as-yet unexplained reasons) made the identical statement

4    for the Impact class members. Doc. 56 ¶46. Schneider's Human Resources Director,

5    Constancia Kozik, submitted a similar declaration, also under penalty of perjury,

6    stating that none of the Premier or Impact employees "are or have ever been subject

7    to SLTD's personnel policies and procedures." Doc. 57 ¶42. Like Redgrave, Kozik

8    denied that SLTD maintained personnel files for any of the Premier or Impact

9    workers, or that SLTD provided training to any of them. Doc. 57 ¶¶13, 21, 37.

10        The 12,100 pages of files that Schneider has now produced shows that

11   Redgrave and Kozik lied when they testified that Schneider has never maintained

12   files for the class members; that Schneider does not provide training to them; and

13   that they are not subject to Schneider's policies or procedures. Schneider's counsel

14   also provided a false certification when she signed a discovery response stating that

15   these documents do not exist and that Schneider had performed a reasonable search

16   for them. The files show that, contrary to Schneider's counsel's representations

17   during the meet and confer, Schneider does have a "protocol" of providing

18   workplace rules, orientation materials, and training materials to the class members.

19   Ex. 5 at 2. This is a fraud, not only on plaintiffs, but on the Court.

20        Other examples of Schneider's misrepresentations abound. Redgrave swore in

21   his declaration that Impact "is and has been solely responsible for recording and

22   keeping track of hours worked by employees it assigned to the Mira Loma

23   warehouse facility. . . . SLTD has never recorded or kept track of hour[s] worked by

24   Defendant Impact employees at the Mira Loma warehouses facility." Doc. 56 ¶43;

25   *see also* ¶¶48-49. But Schneider has now produced dozens of documents showing

26   that Impact class members used Schneider's own electronic punch clocks to record

27   their time and that Schneider supervisors routinely reviewed the hours they worked.

28

1    Ex. 13 (Schneider email stating that an Impact worker was "unable to swipe" into

2    Schneider's electronic timekeeping system); *see also* Ex. 14; Teukolsky Dec. ¶26.

3    ***Yet Schneider claimed in its certified responses that no such responsive documents***

4    ***existed.***  Doc. 249-1, Ex. 1 at 20:12-13, 24:8-25.

5        Redgrave swore in his declaration that "SLTD is not in possession, and has

6    never been in possession of any records, files, [or] data [] relating to any work

7    production records for Defendant Premier employees assigned to the Mira Loma

8    warehouse facility."  Doc. 56 ¶27.  He swore that "Premier solely determines and has

9    solely determined the productivity goals and standards for all of its employees at the

10   Mira Loma warehouse facility."  *Id.* ¶33.  Redgrave made identical representations

11   for the Impact employees.  *Id.* ¶¶47, 55.

12       But Schneider has now produced hundreds of documents, including emails

13   from Redgrave himself, showing that Schneider did in fact set the productivity

14   standards for the Premier and Impact class members.  Teukolsky Dec. ¶27; Ex. 15

15   (email from Redgrave to Impact complaining that "unload productivity" had dropped

16   dramatically, and attaching charts showing that Schneider tracks weekly Impact

17   worker productivity, as measured by cases unloaded per hour (CPH)); Ex. 16 (email

18   from Redgrave to Premier complaining that "production rates have dropped" and

19   including Schneider's goals for how many cases per hour it expects Premier workers

20   to load); Ex. 17 (Schneider's "CPH Action Plan," which discusses how Schneider

21   intends to remedy Impact's low productivity); Ex. 18 (Impact's productivity reports

22   to Schneider).  ***Schneider claimed in its certified April 4 responses that these***

23   ***documents did not exist or that all such documents had already been produced.***

24   Doc. 249-1, Ex. 1 at 16:15-17:22, 19:23-20:13, 23:10-12.

25       The accompanying declaration sets forth numerous additional examples of

26   documents that Schneider withheld which are highly probative of its joint

27

28

1 employment status, and which Schneider previously claimed did not exist.

2 Teukolsky Dec. ¶28.

3      As these examples show, the documents that Schneider withheld are extremely

4 probative of its joint employer status, the key liability issue for Schneider (both in

5 the trial court and in the pending consolidated Ninth Circuit appeals of the two

6 preliminary injunctions that Judge Snyder entered against Schneider).  Under the

7 governing legal standards, these documents are highly relevant because they show

8 Schneider's direct involvement in key aspects of the plaintiffs' employment.

9      By contrast, of the 5,750 documents that Schneider produced *before* plaintiffs

10 filed the motion to compel, most were largely irrelevant printouts of invoices from

11 Impact and Premier to Schneider for services rendered (4,139 pages), and the rest

12 were mostly warehouse visitor logs. Doc. 254-1 ¶11.  Of the 5,750 documents

13 initially produced, Schneider provided only *two emails* between Schneider and

14 Impact/Premier supervisors. *Id*. ¶12.  In other words, Schneider voluntarily produced

15 only innocuous documents like invoices while withholding the documents that will

16 be central to plaintiffs' efforts to establish Schneider's joint employer status.

17 **E.**      **Schneider Made False Representations Regarding the Warehouse Videos**

18      The Rule 30(b)(6) depositions further reveal that Schneider lied to the Court

19 and plaintiffs' counsel when it claimed that it had no access to videos from the

20 warehouse security cameras.  In early 2012, plaintiffs filed a motion to enjoin the

21 mass retaliatory termination of the Schneider-Premier class members.  Doc. 186.  In

22 support, plaintiffs submitted evidence of a worker meeting conducted by Schneider

23 in which its managers made a gesture like crumpling up and discarding paper while

24 threatening to "destroy" anyone who supported this lawsuit.  Doc. 123 ¶6.

25 Schneider admitted that the meeting was videotaped, and plaintiffs sought an adverse

26 inference after Schneider failed to produce the video.  Doc. 159 at 12-13.  Schneider

27 then represented to Judge Snyder that it did not have possession or custody of the

28

1  tapes, and no ability to obtain them from US Security, the company Wal-Mart hired

2  to provide security in the warehouses.  Doc. 174 at 12-13.  Schneider made the same

3  representation to plaintiffs' counsel during the meet and confer.  Doc. 160-2 at 171.

4       Subsequently, on February 1, 2012, plaintiffs propounded a request for all

5  surveillance tapes that record employees at the Mira Loma warehouses.  Schneider

6  again refused to produce the tapes, responding that it "does not have and never had

7  possession, custody and/or control [of] surveillance tapes or other recordings, that

8  recorded employees at the warehouses."  Doc. 249-1, Exh. 1 at 56:2-13.

9       During the 30(b)(6) depositions, though, Schneider's designee Daniels

10  testified that Kozik, the Human Resources Director in Mira Loma, had sent him

11  videos in early 2012 from the CCTV systems in the warehouses, and asked whether

12  he could make them viewable. Ex. 8 at 102:11-104:19.[2]  Kozik told Daniels that the

13  video footage was of "the area of the building where time card punch [clocks] are."

14  *Id.* at 104:14-19.  He testified that the videos are "locked up in our evidence locker"

15  in Green Bay. *Id.* at 104:20-105:6.  Daniels' testimony completely belies

16  Schneider's representations to the Court, to plaintiffs' counsel, and in its discovery

17  responses, that it does not have (and never had) possession, custody or control of the

18  videos.  After the Daniels deposition, plaintiffs asked Schneider to produce the

19  videotapes. Ex. 19.  To date, Schneider has not responded.

20  **F.**    **Schneider Engaged in Spoliation of Evidence**

21       In addition to establishing Schneider's willful failure to comply with its

22  discovery obligations, the recent depositions also demonstrate that Schneider

23  violated its obligation to preserve potentially relevant evidence.  Schneider knew of

24  this litigation by October 19, 2011.  Doc. 37 ¶6, Exh. D.  Schneider claims to have

25  sent a litigation hold memo to 63 employees sometime in November 2011, although

26

27       [2] Schneider says it asked Kozik to search for documents responsive to

28  plaintiffs' RFPs. Ex. 6.  She apparently failed to disclose that she had the videos.

Plaintiffs' Mtn. for Further Relief and Sanctions
Against Defendant SLTD;
Case No. CV 11-8557 CAS (DTBx)    -12-

1  Schneider's counsel will not disclose the date of that memo or its contents. Ex. 8 at

2  33:4-20; Ex. 20. Daniels, Schneider's designee, was unable to recall the memo's

3  instructions. *Id.* at 67:15-18. Thus, we have only Schneider's word about who got

4  the memo, and we have no idea what instructions Schneider actually provided.

5      According to Daniels, Schneider has an aggressive "auto-delete" email system:

6  all emails sent to or from Schneider employees in Mira Loma are stored on servers in

7  Green Bay for only a short period of time, after which they are automatically deleted.

8  There is no archive or backup of any kind; once an email is deleted from the servers,

9  it is gone forever. Ex. 8 at 38:23-40:6, 42:12-43:5, 45:9-18. Not until late May 2012

10  – more than seven months after this lawsuit was filed – did Daniels for the first time

11  implement technology to preserve potentially relevant emails on Schneider's servers.

12  *Id.* at 44:6-21. Otherwise, he did nothing to ensure that employees would not

13  continue to delete emails potentially relevant to this case. *Id.* at 77:10-78:6.

14  Further, no one in Mira Loma was responsible for ensuring that the employees did

15  not delete potentially relevant emails or other documents. *Id.* at 23:1-10.

16      Schneider's Rule 30(b)(6) witness Mark Gallert confirmed that Schneider had

17  no formal document retention policy in place during the relevant time period.

18  Rather, individual Schneider supervisors and officials had absolute discretion about

19  whether to delete potentially incriminating emails. Ex. 9 at 40:23-42:1, 47:25-48:19.

20  Corporate designee Gallert was unable to identify *any* measures taken by Schneider,

21  either on its own or on the direction of counsel, to preserve data and documents that

22  might be relevant to this lawsuit. *Id.* at 52:7-22, 53:22-25. Nor did any Schneider

23  manager or attorney ever ask Gallert – the company's document retention expert –

24  for any guidance about document preservation. *Id.* at 54:5-13.

25      Plaintiffs recently took the deposition of Maria Arauz, a key Schneider

26  supervisor in Mira Loma who works closely with the Impact and Premier class

27  members, and whom several plaintiffs have identified as having directly supervised

28

1   their work.  *E.g.*, Doc. 64 (Morales Dec.) ¶3; Doc. 70 (Arceo Dec.) ¶2; Doc. 71

2   (Acosta Dec.) ¶4.  Recognizing Arauz's central role, Schneider had her file a

3   declaration on November 21, 2011, in which she specifically (but falsely) denied

4   having supervised the work of any of the Impact or Premier workers.  Doc. 83.

5       Schneider's counsel identified Arauz as one of the Schneider employees who

6   supposedly received the litigation hold memo. Ex. 20.  Yet Ms. Arauz testified that

7   she *never* received instructions to preserve emails or other potentially relevant

8   documents.  As a result, *she has routinely deleted emails and other documents*

9   *related to Impact and Premier since October 2011*, when this lawsuit was filed.  Ex.

10  10 at 164:2-167:19 ("Q: And even up till today, you've received no instructions not

11  to delete e-mails; is that correct?  A: Correct.").  Even though Arauz was represented

12  at her deposition by the Managing Partner of Ogletree's Los Angeles office, there is

13  no evidence that Schneider or its counsel has stopped the ongoing spoliation of

14  evidence by Schneider employees and supervisors.  Teukolsky Decl. ¶29.

15                          **SUMMARY OF RELIEF REQUESTED**

16      Based on these facts, plaintiffs seek an order imposing sanctions on Schneider

17  and its attorneys to remedy and punish Schneider's egregious discovery misconduct

18  and spoliation of evidence.  Specifically, plaintiffs request: 1) entry of factual

19  findings enumerating Schneider's acts of misconduct; 2) entry of an adverse

20  inference against Schneider based on its spoliation of evidence concerning its joint

21  employer status; 3) issuance of notice to Schneider and its attorneys that further

22  misconduct will result in additional sanctions, such as terminating sanctions; and 4)

23  reasonable attorneys' fees and costs.

24      Plaintiffs further request that the Court order Schneider immediately to

25  produce the videos in its evidence locker, and all other videos that still exist that are

26  responsive to plaintiffs' document requests.  Schneider should also be ordered to

27  provide a description of any videos that have been destroyed since October 17, 2011.

28

# ARGUMENT

## A.   The Court Has Ample Authority to Enter A Broad Range of Sanctions

Fed. R. Civ. P. 26(g) requires counsel to "make a reasonable investigation and effort to certify that the client has provided all information and documents available to it which are responsive to a discovery request." *Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, 2007 U.S. Dist. LEXIS 72953, *55 (C.D. Cal. Sept. 18, 2007). Violation of Rule 26(g) results in mandatory sanctions. *Id.* "When Rule 26(g) is violated without substantial justification, 'the court . . . shall impose upon the person who made the certification, the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction.'" *Id.*

"Counsel ha[s] an affirmative duty under Rule 26(g) to make a reasonable inquiry into the basis of their [client's] discovery responses and to 'stop and think about the legitimacy of [those responses].'" *Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union*, 212 F.R.D. 178, 221-22 (S.D.N.Y. 2003) (finding Rule 26(g) violation where counsel knew its client did not have a document retention policy, but failed to implement procedures for document production or retention) (quoting Rule 26(g) Advisory Notes); *Fretz v. Keltner*, 109 F.R.D. 303, 310 (D. Kan. 1986) (imposing sanctions where defendant initially said documents did not exist, yet plaintiffs later discovered that such documents did in fact exist).

The Court may also issue sanctions under its "inherent powers" upon a finding of bad faith, willfulness, or fault by the offending party. *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997); *Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 368 n.2 (9th Cir. 1992). The district court has "broad fact-finding powers" with respect to sanctions, and can base a finding of bad faith on a party's "delaying or disrupting the litigation." *Primus*, 115 F.3d at 649 (citation omitted). The Court's inherent powers give it "broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and

1   orderly trial." *Unigard*, 982 F.2d at 368.  Sanctions may include warnings and

2   reprimands. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217,

3   1229 (9th Cir. 2006).  Sanctions may also take the form of attorneys' fees against a

4   party or counsel. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006).

5   **B.     Legal Standards Governing Sanctions for Spoliation of Evidence**

6          The Court's "inherent powers" include authority to enter sanctions based on a

7   party's spoliation of evidence. *Leon*, 464 F.3d at 959.  "As soon as a potential claim

8   is identified, a litigant is under a duty to preserve evidence which it knows or

9   reasonably should know is relevant to the action." *In re Napster, Inc. Copyright*

10  *Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006).

11         The duty to preserve requires suspending any "routine document

12  retention/destruction policy and put[ing] in place a 'litigation hold.'" *Zubulake v.*

13  *UBS Warburg LLC (Zubulake IV)*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003); *Apple Inc.*

14  *v. Samsung Elecs. Co., Ltd.*, 2012 U.S. Dist. LEXIS 103958, *14 (N.D. Cal. July 24,

15  2012) (failure to turn off "auto-delete email function" violated duty to preserve); *IO*

16  *Group Inc. v. GLBT Ltd.*, 2011 U.S. Dist. LEXIS 120819, *14-15 (N.D. Cal. Oct. 19,

17  2011) (same). Counsel "must take affirmative steps to monitor compliance [with a

18  litigation hold] and counsel's failure to do so constitutes gross negligence for

19  sanctions purposes, because it is likely to result in destruction of relevant

20  information." *United Factory Furniture Corp v. Alterwitz*, 2012 U.S. Dist. LEXIS

21  48795, *7 (D. Nev. Apr. 5, 2012); *Pension Comm. of Univ. of Montreal Pension*

22  *Plan v. Banc of Am. Sec., LLC.*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010).

23         Spoliation sanctions serve the purpose of deterring parties from engaging in

24  spoliation, placing the risk of erroneous judgment on the party who wrongfully

25  created the risk, and restoring the prejudiced party to the position it would have held

26  had the evidence not been destroyed. *West v. Goodyear Tire & Rubber Co.*, 167

27

28

1    F.3d 776, 779 (2d Cir. 1999); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*,

2    2008 U.S. Dist. LEXIS 111150, *12 (N.D. Cal. Sept. 19, 2008).

3         The court may impose a range of sanctions, including an adverse inference

4    that the destroyed evidence would have been favorable to the innocent party.

5    *Residential Funding Corp. v. Degeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

6    Adverse inferences are an appropriate sanction where: 1) the party with control over

7    the evidence had an obligation to preserve it when it was destroyed; 2) the evidence

8    was destroyed with a culpable state of mind; and 3) the destroyed evidence was

9    "relevant" to the party's claim or defense. *Id.*; *Apple Inc.*, 2012 U.S. Dist. LEXIS

10   103958, at *23-24; *Napster*, 462 F. Supp. 2d at 1078.

11   **C.   Plaintiffs Are Entitled to an Adverse Inference Based on Spoliation**

12        Schneider's spoliation of evidence fully supports an adverse-inference

13   sanctions, because: 1) Schneider destroyed evidence it was obligated to preserve; 2)

14   Schneider acted with a culpable state of mind; and 3) the destroyed evidence was

15   relevant.  The Court should enter an adverse inference that the evidence Schneider

16   wrongfully destroyed after this class action lawsuit was filed would have supported

17   plaintiffs' contention that Schneider jointly employed the Schneider-Impact and

18   Schneider-Premier class members.

19        **1.   Schneider Destroyed Evidence it Was Obligated to Preserve**

20        Schneider had notice of this lawsuit by October 19, 2011, yet Schneider took

21   no steps to send a litigation hold memo to any employees until some time in

22   November 2011 (it refuses to state when).  Schneider also failed to suspend its auto-

23   delete email system.  Only recently did Schneider begin taking any steps to save

24   copies of potentially relevant emails, and Schneider still has no document retention

25   policy in place.  These facts establish spoliation.  *See Apple Inc.*, 2012 U.S. Dist.

26   LEXIS 103958, at *14 (failure to turn off "auto-delete email function" violated duty

27   to preserve); *IO Group*, 2011 U.S. Dist. LEXIS 120819, at *14-15 (same).

28

1   Although Schneider purports to have sent a "litigation hold" memo to 63
2   employees, the evidence demonstrates that Schneider did nothing to ensure that its
3   employees complied with that memo, if they received it at all.  Schneider's
4   designated custodian of records (Daniels) had no recollection of the memo's
5   contents.  Maria Arauz *never* received instructions to preserve emails or other
6   documents, and stated that she has continued to delete emails related to Impact and
7   Premier daily since this litigation began.  "[I]t is not sufficient to notify all
8   employees of a litigation hold and expect that the party will then retain and produce
9   all relevant information.  Counsel must take affirmative steps to monitor compliance
10  so that all sources of discoverable information are identified and searched."
11  *Zubulake IV*, 229 F.R.D. at 432; *Apple Inc.*, 2012 U.S. Dist. LEXIS 103958, at *48
12  (Samsung's failure to monitor employees' compliance with litigation hold,
13  particularly in light of auto-delete email function, violated duty to preserve).

14  Schneider's delayed issuance of a litigation hold memo; its failure to turn off
15  its auto-delete email function; its failure to monitor whether its employees were
16  complying with the litigation hold; and the testimony of a key player that she never
17  received the instructions and has deleted emails potentially relevant to this lawsuit
18  all establish that Schneider violated its duty to preserve.

19  **2.     Schneider Acted With a Culpable State of Mind**

20  The second factor, culpability, is satisfied by showing that Schneider acted
21  with a "conscious disregard" of its obligations to preserve evidence.  "Bad faith" is
22  not required.  *Apple Inc.*, 2012 U.S. Dist. LEXIS 103958, at *54 & n.89.  A company
23  acts in "conscious disregard" of its obligations when it has an auto-delete email
24  system, fails to turn off the system, and fails to verify whether its employees are
25  complying with instructions in a "litigation hold" memo.  *Id.*, at *54-55; *see also IO*
26  *Group Inc.*, 2011 U.S. Dist. LEXIS 120819, at *19-20 (party "consciously
27  disregarded" its discovery obligations by failing to turn off its auto-delete function);

28

1  *Napster*, 462 F. Supp. 2d at 1070 (failure to suspend e-mail destruction policies is
2  grossly negligent and satisfies "culpability" factor).

3        Here, Schneider clearly acted in "conscious disregard" of its duty to preserve
4  because it failed to disable its auto-delete email function after receiving notice of this
5  litigation.  Further, Schneider's counsel did not adequately oversee the process or
6  implement any system to capture relevant documents that Schneider employees
7  deleted, even though counsel knew that the company did not have a document
8  retention policy; that individual employees had discretion to decide whether to delete
9  emails or other documents; and that none of Schneider's emails or electronic
10 documents are backed up or otherwise retrievable once they have been deleted.

11       Schneider's counsel also took no steps to ensure that individual recipients of
12 the litigation hold memo understood their responsibilities or followed the
13 instructions in that memo (whatever the instructions may have been), and took no
14 steps to ensure that Schneider employees did not delete relevant documents.  Even
15 after plaintiffs' counsel on March 27 identified numerous documents that Schneider
16 failed to produce but that it obviously created, Ex. 8, Schneider's counsel *still* failed
17 to take steps to ensure that employees did not delete potentially relevant documents.
18 And, despite hearing Arauz's testimony about the deletion of emails – after a lengthy
19 meet and confer process regarding Schneider's failure to produce relevant documents
20 – Schneider's counsel still has taken no steps to fix the problem.  Teukolsky Dec.
21 ¶29.

22       These facts are more than sufficient to demonstrate that Schneider acted in
23 "conscious disregard" of its duty to preserve, and that unknown volumes of emails
24 and other documents have been destroyed as a result.

25     **3.**    **The Destroyed Evidence Was Relevant to Plaintiffs' Claims**
26       The third factor requires only "some evidence suggesting" that destroyed
27 documents were potentially relevant to the lawsuit. *Kronisch v. United States*, 150
28

Plaintiffs' Mtn. for Further Relief and Sanctions
Against Defendant SLTD;
Case No. CV 11-8557 CAS (DTBx)     -19-

F.3d 112, 128 (2d Cir. 1998).  Because the relevance of destroyed documents can never be clearly ascertained after those documents have been destroyed, courts do not require a high level proof to establish relevance.  *Id.* "Where one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court must draw the strongest allowable inferences in favor of the aggrieved party." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987) (inferring that destroyed materials were relevant); *see Hynix Semiconductor, Inc. v. Rambus Inc.*, 591 F. Supp. 2d 1038, 1060 (N.D. Cal. 2006) (stating "if spoliation is shown, the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation" because that party "is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing"), *rev'd on other grounds*, 645 F.3d 1336, 1344-1347 (Fed. Cir. 2011); *Dong Ah*, 2009 U.S. Dist. LEXIS 62668, at *29 (stating "spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it").

There can be little doubt that emails and other documents relevant to this case have been destroyed.  According to Schneider's own index of documents that it prepared (Ex. 7), it has not produced any correspondence between Impact and Schneider regarding the contracts between the parties. Teukolsky Dec. ¶30.  The index shows that Schneider has not produced any documents regarding how it calculated the rates it paid to Impact or Premier for unloading and loading work.  *Id.* ¶31.  Schneider has not produced the warehouse study that Premier's documents confirm exists, *id*. ¶32, nor a Schneider study of the Premier workers' hours, which Schneider's Kozik identified in a declaration, *id*. ¶33.  Schneider has not produced the reports that Impact and Premier were required to provide under their contracts. *Id*. ¶34.  Schneider has produced only a single email chain discussing the wage rates or methods of compensation that Impact or Premier used to compensate the class

1  members. *Id.* ¶35.  Given that Premier and Schneider were in business from 2009-

2  2012, and that Impact and Schneider have been in business since 2006, it is simply

3  implausible that more responsive documents do not exist.

4       Further, according to plaintiffs' own document review, Schneider still has not

5  produced any internal emails in which Schneider supervisors discuss training the

6  Impact and Premier workers or terminating them, even though we know that

7  Schneider required training of all new Impact and Premier workers and that

8  Schneider supervisors ordered the termination of dozens of Impact and Premier

9  workers. *Id.* ¶36.  Schneider also has not produced any notes, minutes or agendas

10  from any meetings except one. *Id.* ¶37.  And, Schneider has not produced the false

11  reports that Impact turned in to Schneider on a daily basis understating the number of

12  hours that workers spent unloading trucks. *Id.* ¶38.

13       This showing is more than sufficient to demonstrate that the destroyed

14  documents were potentially relevant to this lawsuit.

15      **4.**    **The Court Should Enter an Adverse Inference**

16       Plaintiffs have established the predicate facts necessary for imposition of an

17  adverse inference.  The only remaining question is the form the adverse inference

18  should take, consistent with the Court's broad discretion in fashioning an appropriate

19  remedy.  While the precise wording of the adverse inference may be determined

20  closer to trial, *Napster*, 462 F. Supp. 2d at 1078, plaintiffs propose that the adverse

21  inference take one of two forms.

22       The adverse inference may be in the form of a rebuttable presumption related

23  to the categories of documents destroyed. *IO Group*, 2011 U.S. Dist. LEXIS

24  120819, at *25 (entering rebuttable presumption based on spoliation that "third

25  parties posted material on Defendants' websites that infringed plaintiffs'

26  copyrights").  Here, each of the categories of improperly destroyed evidence relates

27

28

Plaintiffs' Mtn. for Further Relief and Sanctions
Against Defendant SLTD;
Case No. CV 11-8557 CAS (DTBx)     -21-

1 | to Schneider's status as a joint employer.  Accordingly, the Court may enter a

2 | rebuttable presumption that Schneider is the joint employer of the class members.

3 |      In the alternative, the Court could enter rebuttable presumptions regarding the

4 | constituent elements of plaintiffs' joint employment claim.  For example, given the

5 | evidence produced by Impact and Premier showing that Schneider had and exercised

6 | authority to terminate plaintiff class members, to set their productivity levels, to

7 | determine when and where they would work, and how much work they would be

8 | provided, the Court could establish separate rebuttable presumptions as to each of

9 | these factual elements pertaining to Schneider's joint employer status.

10 |      Or, if the Court concludes that a broader adverse inference is more appropriate

11 | based on Schneider's wrongful spoliation, it could simply enter a finding – as in the

12 | recent case between Apple and Samsung – that plaintiffs are entitled to an adverse

13 | inference jury instruction that Schneider has destroyed relevant evidence, and that

14 | the jury may infer that the destroyed evidence was favorable to plaintiffs. *Apple Inc.*,

15 | 2012 U.S. Dist. LEXIS 103958, at *67.  This inference would be applicable not only

16 | during any trial in this matter, but also in connection with plaintiffs' motion for class

17 | certification and other pre-trial motions submitted by the parties, and on any appeal.

18 |      In addition, because the record now contains so many instances of

19 | Schneider's declarants and counsel making materially false representations, the

20 | Court may also make the finding that it has determined that Schneider and its

21 | management officials made false sworn statements to the Court prior to trial, and that

22 | the jury may consider those prior false statements in evaluating the credibility and

23 | truthfulness of Schneider's witnesses and counsel at trial.

24 | **D.**  **The Court Should Also Enter Sanctions For Bad Faith Discovery Conduct**

25 |      In addition to drawing adverse inferences based on wrongful spoliation, the

26 | Court should enter sanctions against Schneider based on its bad faith discovery

27 | conduct.  "A lawsuit is supposed to be a search for the truth, and the tools employed

28 |

Plaintiffs' Mtn. for Further Relief and Sanctions
Against Defendant SLTD;
Case No. CV 11-8557 CAS (DTBx)    -22-

1  in that search are the rules of discovery. Our adversary system relies in large part on

2  the good faith and diligence of counsel and the parties in abiding by these rules and

3  conducting themselves and their judicial business honestly." *Metro. Opera Ass'n*,

4  212 F.R.D. at 181 (citation omitted).  Schneider and its counsel have failed to

5  conduct themselves honestly as shown by their indefensible use of fraudulent and

6  duplicitous tactics to conceal Schneider's joint employer status and resulting

7  responsibility for plaintiffs' damages.  The Court is therefore empowered to impose

8  severe sanctions both to punish the misconduct, and deter any future misconduct.

9       Schneider's counsel provided a false certification on April 4 when they signed

10  the responses to plaintiffs' document requests.  At that time, only five Schneider

11  employees had searched for responsive documents, even though 63 employees were

12  purportedly sent the "litigation hold" memo.  None of the Schneider supervisors who

13  work most closely with the Impact and Premier class members were asked to search

14  for documents.  The searches were conducted without any assistance from IT, and

15  Schneider failed to produce huge numbers of emails and other electronic documents

16  that should have been located and produced.  Despite Schneider's ineffective and

17  largely non-existent efforts to preserve documents or search through the ones that

18  existed, Schneider's counsel certified, with respect to dozens of plaintiffs' requests,

19  that no documents existed, or that all documents had already been produced.  They

20  did so without having conducted the due diligence and close supervision required of

21  counsel who are members of the State Bar of California, and despite knowing that a

22  far more rigorous inquiry was required under the Federal Rules of Civil Procedure.

23       The record also establishes that Schneider's designated custodian of records

24  took no steps to search for responsive documents until after his deposition on June

25  27, 2012 (despite the pendency of the applicable document requests since February

26  1, 2012), he could not even recall seeing the requests before his deposition.  Even

27  though plaintiffs' counsel repeatedly identified documents to Schneider's counsel

28

1   that were responsive to plaintiffs' discovery requests but were missing from

2   Schneider's production as early as March 2012, Ex. 3, we now know that Schneider

3   did little to look for the documents, and refused even to tell plaintiffs' counsel what

4   had been done to search, until the Court ordered Schneider to do so.

5       Schneider has belatedly produced thousands of documents, underscoring how

6   woefully incomplete its previous production was, and further demonstrating that its

7   high-level managers perjured themselves in their Fall 2011 declarations to Judge

8   Snyder, when Schneider first sought to avoid joint employer liability for the harms

9   suffered by plaintiffs.  Still, Schneider has not provided any explanation for failing to

10   produce these documents after its prior "search," nor any justification – let alone a

11   "substantial justification" – for its April 4 signed representation by counsel that

12   Schneider had made a "reasonable investigation and effort to certify that the client

13   has provided all information and documents available to it which are responsive to a

14   discovery request." *Wingnut Films*, 2007 U.S. Dist. LEXIS 72953, at *55.

15       These facts are also sufficient for the Court to enter sanctions based on its

16   "inherent powers," because they show that Schneider acted with bad faith,

17   willfulness or fault. *Primus*, 115 F.3d at 648; *Unigard*, 982 F.2d at 368 n.2.  There is

18   little doubt that Schneider's conduct has "delay[ed] or disrupt[ed]" this litigation.

19   *Primus*, 115 F.3d at 649.  This collateral inquiry has delayed other discovery,

20   disrupted the class certification schedule, and prevented plaintiffs from meeting the

21   Court's initial deadline for amending the complaint to add defendants (who may also

22   have joint employer liability).  Teukolsky Dec. ¶39.  Rather than focusing on the

23   merits, plaintiffs' counsel have had to devote substantial time to meeting and

24   conferring, puzzling through the documents produced to figure out what is missing,

25   taking Rule 30(b)(6) depositions in Green Bay, and drafting motions to compel. *Id.*

26   ¶41.  Schneider's delayed document production has required the substantial

27   postponement of the depositions of Schneider supervisors, as well as the 30(b)(6)

28

Plaintiffs' Mtn. for Further Relief and Sanctions
Against Defendant SLTD;
Case No. CV 11-8557 CAS (DTBx)      -24-

1  depositions of all defendants. *Id.* ¶40. These delays are prejudicial to the plaintiffs,

2  and are one more consequence of Schneider's improper discovery conduct.

3       Schneider's false statements about the existence and control of the

4  surveillance videotapes provide yet another basis for finding bad faith, willfulness

5  and/or fault.  Simply put, Schneider lied to the Court and to plaintiffs' counsel when

6  it represented that it did not have possession of or access to the videos from the

7  security cameras in the warehouses.  Schneider's continued refusal to produce those

8  videotapes (which are relevant not only to the retaliatory threats, but to the threshold

9  issue of which plaintiffs worked uncompensated hours) is further evidence of

10 Schneider's serous wrongdoing.

11      Based on these facts, plaintiffs request that the Court enter the following

12 sanctions: 1) entry of detailed factual findings regarding Schneider's misconduct and

13 the misconduct of its counsel, a version of which is set forth in the accompanying

14 proposed order; 2)  issuance of a warning to Schneider that any further discovery

15 misconduct will result in additional sanctions, which may include issue preclusion or

16 terminating sanctions; and 3) an award of attorneys' fees and costs to plaintiffs in

17 connection with their previous motion to compel, the Rule 30(b)(6) depositions, and

18 this motion.  Should the Court find that plaintiffs are entitled to an award of

19 attorneys' fees and costs, plaintiffs request the opportunity to file appropriate

20 documentation based on their contemporary time records and expense receipts.

21 Dated:  August 23, 2012          Respectfully submitted,

22                                 TRABER & VOORHEES

23                                 ALTSHULER BERSON LLP

                                   LAW OFFICES OF SANDRA MUNOZ
24
                                   BET TZEDEK
25

26
                                   By:    /s/ Lauren Teukolsky
27                                        Lauren Teukolsky
                                   Attorneys for Plaintiffs Everardo Carrillo, *et al.*
28

---