1
2
3
4
5
6
7

O

8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11  EVERARDO CARRILLO, et al.,          ) Case No. CV 11-8557-CAS (DTBx)
                                        )
12               Plaintiffs,            ) **ORDER GRANTING IN PART AND**
                                        ) **DENYING IN PART PLAINTIFFS'**
13         vs.                          ) **REQUEST FOR FURTHER RELIEF**
                                        ) **AND SANCTIONS RE MOTION TO**
14  SCHNEIDER LOGISTICS, INC.,          ) **COMPEL RESPONSES TO FIRST**
    et al.,                             ) **SET OF REQUESTS FOR**
15                                      ) **PRODUCTION OF DOCUMENTS**
                                        ) **PROPOUNDED TO SCHNEIDER**
16               Defendants.            ) **LOGISTICS TRANSLOADING &**
                                        ) **DISTRIBUTION, INC.**
17  _____ )

18          Currently pending before this Court is plaintiffs' Request for Further Relief and

19  Sanctions Re Motion to Compel Responses to First Set of Requests for Production of

20  Documents Propounded to Schneider Logistics Transloading & Distribution, Inc.

21  ("Motion") filed on August 23, 2012.  Defendant Schneider Logistics Transloading

22  and Distribution, Inc. ("Schneider") filed an Opposition ("Opp.") to the Motion on

23  September 7, 2012, and plaintiffs filed a Reply ("Reply") on September 17, 2012.  A

24  hearing on the matter was held on September 25, 2012, at which, the parties were

25  provided an opportunity to address their respective positions.  After considering the

26  parties' briefs as well as the arguments of counsel, and for good cause shown, the

27  Court GRANTS the Motion in part and finds as follows:

28  / / /

1

## PROCEDURAL BACKGROUND

Plaintiffs filed a class action Complaint on October 17, 2011 and a First Amended Complaint on October 28, 2011 alleging, *inter alia*, wage and hour violations at three warehouses in Mira Loma, California which are operated and/or staffed by defendants Schneider, Schneider Logistics, Inc. ("SLI"), Impact Logistics, Inc. ("Impact"), Premier Warehousing Ventures, LLC, and Rogers-Premier Unloading Services, LLC (collectively, "Premier") on behalf of their customer, Wal-Mart.

On February 1, 2012, plaintiffs propounded their First Set of Requests for Production of Documents to defendant Schneider. (Dkt. # 249, ¶43.) Schneider provided its initial responses on March 12, 2012, and supplemental responses on April 4, 2012. (Id.) As plaintiffs believed that Schneider's document production was incomplete, plaintiffs began a series of meet and confers with Schneider, and expressed concern that Schneider had not produced all responsive non-privileged documents.

On May 31, 2012, plaintiffs filed a Motion to Compel regarding Schneider's failure to produce documents relating to Wal-Mart and Schneider's alleged failure to conduct a proper search and produce responsive documents. (See Dkt. # 248-1.) After the Court ordered the parties to further meet and confer, the parties resolved their dispute and submitted a proposed order. Pursuant to the proposed order, the Court ordered Schneider to supplement its responses to the requests for production of documents and produce responsive documents, including those relating to Wal-Mart. (Dkt. # 261.) Schneider was also ordered to produce a custodian of records and person most knowledgeable regarding Schneider's document retention policies.

Following the Court's Order, Schneider produced an additional 23,000 documents, many of which related to categories of documents Schneider previously claimed did not exist. Schneider also designated two employees to address Schneider's retention policies and its efforts to search for responsive documents. When these witnesses appeared for their depositions, however, they were unable to

answer many basic questions regarding Schneider's document retention policies and Schneider's search for responsive documents.

On July 10, 2012, plaintiffs deposed Yanira (Maria) Arauz, an area manager for Schneider.  During her deposition, she testified that she had deleted various emails, including reports.  She further testified that she has continued to delete documents up to the date of her deposition, and that she had never received an instruction advising her not to delete such emails.

On August 23, 2012, plaintiffs filed the instant Motion.  In their Motion, plaintiffs identified, *inter alia*, substantial gaps in Schneider's production, including a substantial number of emails and surveillance videotapes which had not been produced.

## EVIDENTIARY OBJECTIONS

Preliminarily, the Court will address Schneider's evidentiary objections to the declaration of Lauren Teukolsky filed in support of the Motion.  Schneider contends that the declaration is unreliable because (1) the declaration misrepresents numerous documents produced by Schneider in response to plaintiffs' request for production; (2) the declaration includes statements and attaches exhibits that misrepresent communications between counsel; (3) the declaration misrepresents the deposition testimony of witnesses; and (4) the declaration includes information that is not relevant to the issue of spoliation. After reviewing Schneider's various objections, the Court concludes that virtually all of the objections to Teukolsky's declaration are unsupported and without merit.  As such, the vast majority of Schneider's objections are overruled.  For instance, Schneider objects to a substantial portion of Teukolsky's declaration relating to the meet and confer process, Schneider's production of documents, and the identities of various Schneider employees, on the grounds of lack of foundation and lack of personal knowledge.  However, as one of the lead attorneys representing plaintiffs in this matter, she would be familiar with such information and

as such, an objection on these grounds is not supported. The only objections that are sustained are as follows:

- Teukolsky Decl., ¶25 at 5:1-2: "The personnel file that Schneider maintained for lead plaintiff Everardo Carrillo is attached hereto as Exhibit 11." Teukolsky has not presented sufficient evidence that she has personal knowledge regarding what Schneider maintains and interprets as Carrillo's personnel file. As such, the objection to this statement is sustained on the grounds of lack of foundation and lack of personal knowledge.

- Teukolsky Decl., ¶36 at 8:8-12: "Impact and Premier supervisors, such as Premier's Hector Soriano and Impact's Ramon Cepeda and Alfred Viramontes, have now testified in their depositions that Schneider required training and orientation of all new Impact and Premier workers and the Schneider supervisors ordered the termination of dozens of Impact and Premier workers." Unlike other deposition testimony, Teukolsky has not attached a copy of the relevant portions of the deposition transcripts for the Court's review. Teukolsky has not represented that she was present at the depositions, or indicated, at a minimum, when such depositions even took place. In the absence of such evidence, the Court sustains Schneider's objection to this statement on the grounds of lack of foundation and lack of personal knowledge.

- Teukolsky Decl., ¶38 at 8:16-18: "Impact supervisors Cepeda and Soto testified in their depositions that Impact turned in daily reports to Schneider that understated the number of hours that Impact workers had spent unloading containers." Schneider's objection to this statement is sustained on the grounds of lack of foundation and lack of personal knowledge as explained above with respect to the statement at Teukolsky Decl., ¶36 at 8:8-12.

4

# DISCUSSION

## I. <u>Schneider has failed to comply with its discovery obligations.</u>

Throughout this litigation, plaintiffs have argued that Schneider's document production has been wholly inadequate and has expressed concern that Schneider has not performed a reasonably diligent search for responsive documents. Plaintiffs have repeatedly raised these concerns with Schneider in numerous meet and confers, many of which have been to no avail. Schneider has repeatedly represented that diligent searches had been made and that all responsive documents had been produced, only to turn around and "find" more documents after plaintiffs proved those contentions were false. Schneider's discovery failures have now become readily apparent. To date, Schneider still has not searched a significant portion of its electronically stored information, nor has it provided any satisfactory assurance to the Court that such documents have not been destroyed during the course of this litigation.

Schneider's continuing discovery failures fall into three basic categories: (1) Schneider has not conducted a reasonably diligent search for responsive documents; (2) Schneider has improperly withheld responsive documents; and (3) Schneider has not taken adequate steps to preserve documents.

### A. <u>Schneider has not conducted a reasonably diligent search for responsive documents.</u>

In response to plaintiffs' First Set of Requests for Production of Documents, Schneider produced 5,750 documents. However, most of the documents were printouts of invoices, time sheets, visitor logs, and duplicate documents. (Dkt. # 254-1, ¶ 11.) With respect to at least 20 of the requests for production, Schneider claimed that it did not have any responsive documents. (<u>See</u> Dkt. # 249, Exh. 1.)

Although Schneider claimed that it had produced all responsive documents or it did not have any responsive documents, defendants Premier and Impact produced documents created by Schneider that were directly responsive to plaintiffs' requests,

but which were not produced by Schneider.  (Dkt. # 248-1 at 3.)   For instance, although Schneider claimed that there were no training materials or policies that applied to the Schneider-Premier or Schneider-Impact employees (Dkt. # 249, Exh. 1 at 25-26), Premier and Impact produced dozens of pages of training materials and workplace rules authored by Schneider applicable to plaintiffs.  (Id.; see also Dkt. # 249, Exh. 17 at PREM 1047-50, Exh. 19, Exh. 31, Exh. 32 at Impact 167-70, Exh. 33 at 200-01.)  In another example, plaintiffs requested studies that Schneider performed to determine the appropriate rates to be set for loading and unloading in the warehouses.  (Dkt. # 249, Exh. 1 at 13-14.)  Schneider stated that it did not have any such documents.  (Id.)  However, Premier produced its own study of loading rates, which stated, "[t]he average load time from Schneider's study was [redacted] per load."  (Dkt. # 249, Exh. 22.)

Plaintiffs first raised the issue regarding what it believed to be problems with Schneider's document production during a telephonic meet and confer on March 27 and 28, 2012.  (Dkt. # 248-1 at 50; Dkt. # 249, Exh. 6.)  At that time, Schneider refused to disclose the steps it had taken to search for responsive documents or even state whether an electronic search of relevant email accounts had been conducted. (Declaration of Lauren Teukolsky ["Teukolsky Decl."] in support of Motion, Exh. 4 at 2.)

After Impact and Premier produced their documents, plaintiffs' counsel identified numerous documents to Schneider that Impact and/or Premier had produced that should have also been included in Schneider's production.  (Dkt. # 248-1 at 51; Dkt. # 249, Exh. 16.)  Schneider's counsel then agreed to provide a list of individuals whose email accounts and computers had been searched, and agreed that additional documents would be produced on May 5 or 8, 2012.  (Dkt. # 249, ¶46, Exh. 7.)  It was also revealed at this time that, with respect to the scope of the searches that had been performed, Schneider's information technology department had not yet been brought in to perform broader searches, such as searches of backup tapes and archives.  (Dkt.

6

# 249, Exh. 7 at 2.)

On May 14, 2012, Schneider produced additional documents, but it failed to explain what such documents were, which requests for production of documents they were responsive to, what was done to search for them, and why they were not produced earlier. (Dkt. # 249, ¶46.) Additionally, the list of individuals whose email accounts and computers had been searched was not provided. (Id.)

On May 31, 2012, plaintiffs filed a Motion to Compel. In their Motion to Compel, plaintiffs identified numerous documents that had been produced by Premier and/or Impact, but which had not been produced by Schneider even though they were the types of documents that should have been in Schneider's possession. For instance, at that time, Schneider had only produced two emails reflecting communications between Schneider and Impact or Premier supervisors, even though Impact and Premier had produced hundreds of such emails. (Dkt. # 254-1, ¶12.) After the Court ordered the parties to further meet and confer, Schneider's counsel agreed to provide a description of the steps taken to search for responsive documents and provide the list of employees whose emails were searched. (Teukolsky Decl., Exh. 6.) At that time, only five Schneider employee email accounts had been searched for responsive documents. (Id.)

Following additional meet and confer efforts, the parties reached a stipulation regarding the Motion to Compel. Pursuant to a proposed order, the Court ordered Schneider to produce for deposition the custodian of records, and the person most knowledgeable regarding Schneider's document retention policy. (Dkt. # 261.)

Thereafter, Schneider produced approximately 23,600 additional documents, including thousands of documents that Schneider had previously certified did not exist, such as 12,100 pages of personnel files containing Schneider's guidelines, policies, procedures, safety measures, orientation manuals, and training materials. (Motion at 8; Teukolsky Decl., ¶¶24-28; Dkt. # 249, Exh. 1 at 25-26; Dkt. # 56, ¶¶26, 46, Dkt. # 57, ¶¶13, 21, 37, 42.) Also included within this production were dozens of

emails and other documents demonstrating that Schneider previously falsely certified that it did not have any documents regarding time keeping or work production levels. (Teukolsky Decl., ¶¶26-27, Exhs. 13, 14, 16, 17; Dkt. # 249, Exh. 1 at 16-17, 20-21, 23-24; Dkt. # 56, ¶¶27,  33, 47, 55; see also Teukolsky Decl., ¶28 (identifying examples of documents that Schneider recently produced, which it previously claimed did not exist or had already been produced).)

Plaintiffs also deposed the two individuals who were designated by Schneider as the custodian of records and the person most knowledgeable regarding Schneider's document retention policies. However, Schneider's designees, Mark Gallert and Matt Daniels, had little knowledge of the document retention polices at the Mira Loma facilities, or the steps taken to search for responsive documents. (Teukolsky Decl., Exh. 19.)   Daniels, an information security analyst for Schneider Enterprise Resources, LLC, stated that he did not recall doing any searches for responsive documents, was not aware of whether documents were produced prior to May 2012, and was not aware as to whether anyone else had taken any action to locate or produce responsive documents. (Teukolsky Decl., Exh. 8 at 47:9-22 (other than a search of his files in November 2011 in response to the litigation hold memorandum and a search for a specific document in May 2012, he could not recall taking any other actions with regard to the lawsuit), 55:13-56:2 (he was not aware of whether documents were produced prior to May 2012), 56:16-21 (he was not aware of whether anyone else took any actions to locate or produce responsive documents), 67:24-68:17 (he was not aware of whether other employees searched their own documents or whether other departments were responsible for conducting searches for employees who provided documents), 72:8-12 (he did not know whether employees had their files searched or they searched themselves), 73:2-74:16 (he did not know whether employees' emails were searched; he received instructions to conduct a search of email accounts within the past 30 days.)  Gallert, Schneider's designee regarding its document retention policies, testified that he did not have any knowledge regarding the steps taken by

Schneider to preserve information relevant to this action.  (Teukolsky Decl., Exh. 9 at 52:7-22 (he did not have knowledge regarding the steps taken by Schneider to preserve information relevant to this action), 53:22-25 (he did not have any knowledge regarding any actions taken by anyone at Schneider to preserve information that might be relevant to this case).

At the hearing on the Motion, plaintiffs' counsel identified a number of categories of documents (*i.e.*, emails regarding termination and training, and Schneider's studies regarding loading times and the tracking of Premier hours) they would have expected to be produced by Schneider at this point in the litigation. Schneider has neither produced such documents nor provided any explanation as to why these categories of documents still have not been produced.  Indeed, as explained below, to date, Schneider still has not conducted a search for responsive emails sent to or from the Schneider employees' Wal-Mart email accounts.

The record reflects - at best - a haphazard search for records, and neither Schneider's counsel nor its designated witnesses appear to know with any certainty what steps have been taken to search for responsive documents.  Schneider has disregarded its obligation to conduct a reasonably diligent search for responsive documents, including, as explained below, electronically stored information.

> B.    Schneider has improperly withheld responsive documents.
>
>    1.    Schneider has withheld documents related to Wal-Mart.

In their First Set of Requests for Production of Documents, plaintiffs requested documents regarding Wal-Mart's involvement in the Mira Loma warehouses.  (See, e.g., Dkt. # 249, Exh. 1 at 6-7, 25, 30, 40-45, 48.)  Initially, Schneider refused to search for and produce any responsive documents, which resulted in the Motion to Compel.  After the Court ordered the parties to further meet and confer, Schneider altered its position, and agreed to produce documents responsive to the requests for production as they related to Wal-Mart.  The Court granted plaintiffs' Motion to

Compel on this issue, and ordered that documents responsive to the requests for production related to Wal-Mart be produced. (Dkt. # 261.)  Additional documents were produced.

Thereafter, based on a review of documents produced by Schneider, Impact, and Premier, plaintiffs' counsel learned that at least 20 Schneider employees regularly used "@wal-mart.com" email accounts for conducting business with Impact and Premier. (See, e.g., Supplemental Declaration of Lauren Teukolsky ["Supp. Teukolsky Decl."] in support of Reply, ¶14.) However, the only emails from the Wal-Mart email accounts that were produced were those that were otherwise sent to or from a Schneider email account. (Supp. Teukolsky Decl., ¶16.)

At the time of the hearing on this Motion, Schneider still had not produced emails from the Wal-Mart email accounts.  At the hearing on the Motion, Schneider confirmed that it had not produced this electronically stored information and instead argued that it had no obligation to produce Wal-Mart emails on the ground that such emails were not stored on the Schneider computer servers.  Schneider argued that it had no "control" over such information, as the information pertaining to the Schneider employees' "@wal-mart.com" email accounts is stored on the Wal-Mart servers, which Wal-Mart controls.  The Court finds this argument unavailing, particularly given that Schneider's employees use the Wal-Mart email address as their primary work email account.  As explained below, the fact that these Schneider email accounts are administered by a third party does not obviate Schneider's obligation to produce all information that is available to it.  As such, the Court concludes that Schneider still has not complied with the Court's Order that it produce documents responsive to the requests for production regarding Wal-Mart, and Schneider's repeated and unequivocal certifications that it has produced all responsive documents is misleading and false.

/ / /

/ / /

10

### 2.   Schneider has withheld surveillance videotapes.

In their First Request for Production of Documents, plaintiffs requested that Schneider produce "surveillance tapes or other records, that recorded EMPLOYEES at the WAREHOUSES at any time during the RELEVANT TIME PERIOD." (Dkt. # 249, Exh. 1 at 55-56.)  In response to this request, Schneider claimed that it did not have any videotapes responsive to this request. (Dkt. # 249, Exh. 1 at 56.)  Schneider represented that such videotapes were owned and controlled by a third party vendor, U.S. Security, and did not belong to Schneider.  (See Dkt. # 160-2, Exh. 5 at 2.)

Plaintiffs thereafter learned during Daniels's deposition that Schneider's Human Resources Director, Connie Kozik, sent him videotapes in early 2012 from the CCTV systems in the warehouses and asked whether he could make them viewable. (Teukolsky Decl., Exh. 8 at 102:11-104:19.)  Schneider had requested this video footage from U.S. Security to investigate possible time card fraud.  (Declaration of Cynthia Gonzalez [Gonzalez Decl."] in support of Opp., ¶¶7-10, 14-15.)  Those videotapes are currently being stored in Schneider's "evidence locker."  (Teukolsky Decl., Exh. 8 at 104:20-105:6.)

Following Daniels's deposition, plaintiffs asked Schneider to produce these videotapes.  (Teukolsky Decl., Exh. 19.)  To date, Schneider has failed to produce them.

With respect to the remaining surveillance videotapes, plaintiffs served a subpoena on U.S. Security based on Schneider's representation that it did not have access to such videotapes.  U.S. Security responded to the subpoena with the statement that the videotapes were "Schneider's property [and] we don't have the authority to release them."  (Supp. Teukolsky Decl., ¶8, Exh. 9.)  To date, Schneider has not requested these additional videotapes from U.S. Security for plaintiffs (Gonzalez Decl., ¶¶16-17), despite prior representations from defense counsel that they would look into it.

Schneider contends that it is not under any obligation to produce any of the

videotapes.  First, with respect to the videotapes in the "evidence locker," it contends that the original document request sought surveillance videotapes related to Premier and Impact employees, not Schneider employees.  According to Schneider, the videotapes in the evidence locker involved Schneider employees.  It additionally maintains that, despite U.S. Security's response to the subpoena, Schneider does not have control of these videotapes. (Gonzalez Decl., ¶¶5-7.)  The Court finds neither argument persuasive.  One of the key issues in this litigation is whether Schneider is a joint employer.  Although plaintiffs requested surveillance videotapes regarding individuals directly hired or paid by defendants Impact and Premier, Schneider has not presented any evidence that the two individuals involved in the time card fraud were not "directly hired or paid" by defendants Impact and Premier.  Rather, Schneider has only presented evidence that the two individuals involved were Schneider "associates" and that, to the best of Gonzalez's knowledge, Schneider has not requested any digital files from U.S. Security of individuals that are "direct hires of Premier Warehousing Ventures, LLC or Impact Logistics, LLC." (See Gonzalez Decl., ¶¶8, 17; Declaration of Matthew Daniels ["Daniels Decl."] in support of Opp., ¶17.)  Further, Schneider admitted that it can simply request a copy of the videotapes and as U.S. Security explained, these videotapes belong to Schneider.  Thus, as further explained below, Schneider has "control" over the videotapes, and therefore, the Court concludes that Schneider has improperly withheld their production to plaintiffs.

C.   Schneider has not taken adequate steps to preserve documents.

Also concerning to the Court is Schneider's failure to implement adequate steps to preserve electronic documents after this dispute arose.

Schneider maintains that, on October 19, 2011, the legal department verbally instructed key employees of both SLI and Schneider not to destroy any documents and not to delete anything from their computers, local server, or email accounts that was relevant to the allegations in the Complaint.  (Declaration of Truc T. Nguyen

["Nguyen Decl."] in support of Opp., ¶5.)  On November 4, 2011, shortly after the First Amended Complaint was served on Schneider, a written litigation hold memorandum was sent to 63 employees.  (Nguyen Decl., ¶7; Declaration of Yanira (Maria) Arauz ["Arauz Decl."] in support of Opp., ¶¶3-5.)  Arauz attested that she was instructed in the memorandum "not to destroy, conceal or alter any paper or electronic files or data residing in [Schneider's] assets, files, computers and storage media, as well as in [her] own personal home computer, laptop or electronic device that relate to the workers employed by Impact Logistics, LLC or Premier Warehousing Ventures, LLC at the Mira Loma facility and the allegations made in the complaint."  (Arauz Decl., ¶4.)  She further attested in her declaration that this memorandum instructed her to notify the legal department if she had any potentially relevant documents, data, or equipment.  (Arauz Decl., ¶5.)  Schneider further contends that the employees on the litigation hold list were asked to certify that they were complying with the litigation hold and indicate whether they had any responsive documents.  (Nguyen Decl., ¶9.)  Each employee purportedly submitted these certifications.  (Nguyen Decl., ¶10.)  On January 5, 2012, the legal department issued a reminder regarding the litigation hold.  (Nguyen Decl., ¶8; Arauz Decl., ¶8.)

Despite these representations, however, when Arauz was deposed in this action, she testified that she had deleted numerous emails since the inception of this case, including emails pertaining to the set up for trailers, overloaded trailers, team sheets, and various reports.  She further testified that she never received instructions not to delete such emails and has continued to do so.  (Teukolsky Decl., Exh. 10 at 164:2-167:19.)

Schneider maintains that Arauz's testimony only related to her Wal-Mart email

/ / /

/ / /

13

account.[1]  Schneider's counsel represented at the hearing on the Motion that defense counsel did not learn that Schneider's employees were using a Wal-Mart email account until after the litigation started.  Regardless, either through inadvertence, lack of investigation, incompetence, or bad faith, the litigation hold memorandum apparently did not cover Wal-Mart electronic documents, such as emails on "@wal-mart.com" accounts, and Schneider employees have continued to delete such emails.  At the hearing, Schneider's counsel was unable to provide any assurance to the Court that this was not the case.  Counsel for Schneider further argued that Arauz's deletion of emails may be an isolated incident and that there had been no showing that other employees deleted responsive documents.  Again, however, Schneider's counsel was unable to confirm whether any steps had been taken to preserve the Wal-Mart emails after learning of their existence.  Such responses are not satisfactory, especially given that this litigation has been ongoing since October 2011, and in light of the Court's prior discovery Order.

The Schneider employees' deletion of potentially relevant documents is particularly troubling when considered in conjunction with Schneider's automatic deletion system.  Daniels testified that emails are stored until they are manually deleted, at which time they remain on the system for an additional 45 days, after which they are permanently deleted.  (Teukolsky Decl., Exh. 8 at 38:23-40:16, 42:12-43:5; Nguyen Decl., Exh. 11 at 45:19-46:1; Daniels Decl., ¶6.)  However, Schneider apparently has not suspended the automatic deletion of emails after this 45-day period.  Indeed, only recently did Schneider set up a system in which it could make a copy of an employees' mailbox.  (Teukolsky Decl., Exh. 8 at 44:6-21.)

Schneider's attempt to defend its conduct by arguing that relevant emails were

---

[1]      Plaintiffs dispute this contention, asserting that Arauz testified that she deleted documents from the O and L drives on her computer.  (See Teukolsky Decl., Exh. 10 at 164:2-10.)

14

destroyed prior to litigation is unavailing.  Arauz expressly testified that she has continued to delete emails to the present.  As a result of Schneider's failure to instruct its employees not to delete Wal-Mart emails or suspend its automatic deletion system, it is quite possible that, over the past year, numerous relevant documents have been destroyed.  There is no indication that these emails can be recovered.

As such, the Court concludes that Schneider has not taken adequate steps to preserve relevant documents in this action.   To the extent a litigation hold memorandum was issued, it was wholly inadequate as it failed to instruct employees regarding an entire category of relevant electronic documents.  Moreover, even if such a notice was issued, it was not heeded, as employees have continued to delete emails and Schneider has not taken adequate steps to ensure that these deleted emails are not permanently destroyed.

## II.   **Schneider's failure to comply with its discovery obligations warrants sanctions.**

Discovery serves as a device for ascertaining the facts and information as to the existence or whereabouts of those facts.  It provides a way for parties "to obtain the fullest possible knowledge of the issues and facts before trial."  Hickman v. Taylor, 329 U.S. 495, 501, 67 S. Ct. 385, 91 L. Ed. 451 (1947).  "For the discovery system to function properly, the costs of resisting discovery must be sufficiently great so that the benefits to be gained from sharp or evasive discovery practices are outweighed by the sanctions imposed when those practices are discovered."  Wingnut Films, Ltd. v. Katja Motion Pictures Corp., No. CV 05-1516-RSWL SHX, 2007 WL 2758571, at *16 (C.D. Cal. Sept. 18, 2007). When a party fails to comply with its discovery obligations, a court has the authority to impose sanctions under its inherent powers, or pursuant to Fed. R. Civ. P. 37.  See generally Fed. R. Civ. P. 37; Mendez v. Cnty. of San Bernardino, 540 F.3d 1109, 1131 (9th Cir. 2008) (explaining that a district court's authority to impose sanctions under its inherent powers is broad, although not

15

limitless).  Fed. R. Civ. P. 37 authorizes a court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules.  Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983).

Here, as a result of Schneider's failure to comply with the Court's discovery Order as well as its discovery obligations, plaintiffs have been prejudiced.  First, plaintiffs have been and continue to be denied access to documents that the Court has already ordered produced.  See Valley Eng'rs Inc. v. Electrical Eng'g Co., 158 F.3d 1051, 1058 (9th Cir. 1998) ("There is no point to a lawsuit, if it merely applies law to lies.  True facts must be the foundation for any just result.").  Second, Schneider's failure to timely produce documents in response to plaintiffs' requests for production has forced plaintiffs to push back their motion for class certification as well as depositions.  Further, the deadline for requesting leave to amend the pleadings or to add new parties is November 15, 2012; thus, plaintiffs face a looming deadline to name Wal-Mart as an additional party. (See Dkt. # 312.)  Finally, plaintiffs have been forced to incur substantial attorneys' fees and costs as a result of Schneider's failure to comply with its discovery obligations and the Court's discovery Order.  As such, sanctions are warranted.

A.   An outside vendor shall collect emails and other electronically stored information.

Based on Schneider's failure to comply with the Court's previous discovery Order to produce responsive documents regarding Wal-Mart, the Court does not have any confidence that ordering Schneider to conduct a good faith search for electronically stored information will be productive.  Schneider has repeatedly certified that it produced all responsive documents, only for plaintiffs to spend substantial time and resources demonstrating that those representations were false.  Further, Schneider's own designee regarding the steps it has taken to search for

responsive documents could not even specify with any certainty as to those steps.

Schneider's objection based on its assertion that it does not possess the Wal-Mart servers housing the responsive information is overruled.  Under Fed. R. Civ. Proc. 34, a responding party has a duty to provide all documents within its "possession, custody, or control."  However, the phrase "possession, custody, or control" is disjunctive and only one of the numerated requirements needs to be met.  Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995) (citation omitted).  Therefore, actual possession is not required.  Id.  Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document."  Id. (internal citation omitted).  The term "control" includes "the 'legal right of the producing party to obtain documents from other sources upon demand.'"  Id. (citation omitted); see also In re Citric Acid Litig., 191 F.3d 1090, 1107 (9th Cir. 1999) (control is "the legal right to obtain documents upon demand" (quoting United States v. Int'l Union of Petroleum & Indus. Workers, 870 F.2d 1450, 1452 (9th Cir. 1989)).

Here, the fact that Schneider does not physically possess the server that stores the Wal-Mart emails is immaterial.  The electronically stored information is within Schneider's control by virtue of the fact the Schneider employees use the Wal-Mart email accounts as their primary work email.  As such, since Wal-Mart or Wal-Mart's vendor has granted access to Schneider to use its email system, it is inconceivable that Schneider lacks the ability to request and obtain such records from Wal-Mart or another third party that stores the relevant servers.  See Soto, 162 F.R.D. at 619-20.

Under the circumstances, the Court concludes that Schneider should be required to retain an outside vendor experienced in retrieving electronically stored information to collect responsive documents and determine whether responsive documents have been permanently destroyed.  See Wingnut, 2007 WL 275871, at *18-19.  Schneider shall be required to retain an outside vendor, to be jointly selected by the parties

within seven (7) days of the date of this Order.  Within 45 days of this Order, the vendor shall collect electronically stored documents and email correspondence that are within the scope of plaintiffs' discovery requests and the Court's discovery Order. The vendor shall be granted access to Schneider's servers, including without limitation, the email server(s), for the purpose of conducting keyword searches for responsive documents and emails.  The vendor shall also be granted access, on a limited basis, to the Wal-Mart servers or the servers of any third party administrator that pertain to the Schneider employees' Wal-Mart email accounts.  The vendor shall also be granted access to the hard drives from the desktop and laptop computers of specific employees who are connected with this dispute for the purpose of conducting keyword searches.  The parties shall agree on a list of employees within seven (7) days of this Order.   In preparing this list, Schneider shall provide plaintiffs with the names of all Schneider employees who use or have a Wal-Mart email account.

The vendor shall prepare a log of all collected documents so that plaintiffs can confirm that all such documents are either produced or logged.

All documents and emails collected by the vendor may be reviewed by Schneider for privilege and confidentiality.  A privilege log shall be provided to plaintiffs to the extent any documents are withheld on this basis.  Additionally, the Stipulated Protective Order shall be amended as needed to account for this production. However, no documents identified by the vendor may be withheld on relevance grounds.

At the time the vendor conducts the search for responsive documents, it shall also conduct a search to determine whether any potentially responsive documents have been permanently deleted by Schneider and/or Wal-Mart and if so, whether such documents can be recovered.

In the event the parties are unable to agree upon the identity of the outside vendor, the search protocol, or the individual employees whose desktop and laptop computers will be provided for inspection, the parties shall promptly submit such

disputes to the Court for resolution.  Schneider shall bear all costs and expenses of the outside vendor.

      B.   <u>Surveillance videotapes shall be produced by Schneider.</u>

As explained, Schneider cannot avoid its discovery obligations by asserting that it does not have actual possession of the responsive information.  With respect to the surveillance videotapes, the record reflects that Schneider has a legal right to obtain copies of the videotapes from U.S. Security.  Although Schneider claimed that it did not have access to the videotapes, the declaration of Cynthia Gonzalez reflects that Schneider can request such videotapes.  Further, U.S. Security itself believes Schneider is the rightful owner of such videotapes.  As such, Schneider has the requisite relationship with U.S. Security such that it can request U.S. Security to provide the videotapes (and/or digital files).  Within ten (10) days of this Order, Schneider shall produce to plaintiffs all responsive surveillance videotapes, including those stored in Schneider's evidence locker and a description of any videotapes that have been destroyed or overwritten since October 17, 2011 and the date when any such videotapes were destroyed or overwritten.  The videotapes shall be produced in a viewable format or otherwise produced with a devise for viewing the videotapes.

      C.   <u>Monetary sanctions are warranted.</u>

Plaintiffs are entitled to reimbursement for much of the attorneys' fees and costs they have incurred as a result of Schneider's discovery violations.  Rule 37(b)(2)(C) provides that, instead of or in addition to other sanctions, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

Sanctions are likewise mandatory under Rule 26(g), which requires that counsel make a reasonable investigation and effort to certify that the client has provided all

information and documents available to it, which are responsive to the discovery request - something that Schneider's counsel failed to do.  If a certification violates Rule 26(g)(1) without substantial justification, the Court must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both, including an order to pay the reasonable expenses caused by the violation. Fed. R. Civ. P. 26(g)(3).

The Court finds that Schneider's actions have been without substantial justification and an award of monetary sanctions is warranted.  On or before October 16, 2012, plaintiffs shall serve and file a brief, establishing the amount of attorneys' fees and costs incurred in connection with Schneider's discovery violations, along with supporting declaration(s) and documentation.  The declaration(s) shall provide an itemization of the time incurred and description of the work performed, identify the attorney(s), or other staff member(s) performing work, the customary fee of these individuals, and the experience, reputation, and ability of these individuals performing the work.  Schneider shall have two weeks from the service of plaintiffs' brief in which to file a responsive brief addressing the reasonableness of the costs and fees sought, and any equitable considerations deemed appropriate for the Court to consider in determining the amount of costs and fees that should be awarded.

## ORDER

Based on the foregoing, the Court GRANTS, in part, plaintiffs' Motion and ORDERS as follows:

1.      Within 7 days of the date of this Order, Schneider shall retain, at its expense, an outside vendor, to be jointly selected by the parties, to collect electronically stored information and email correspondence that are within the scope of plaintiffs' document requests and the Court's discovery Order and determine whether potentially responsive electronically stored information and/or email correspondence have been deleted since October 17, 2011.  Such collection of

information shall be completed within 45 days;

2.     Within 10 days of the date of this Order, Schneider shall produce all surveillance videotapes responsive to plaintiffs' discovery requests, including those videotapes stored in Schneider's evidence locker, and a description of videotapes that have been destroyed or overwritten since October 17, 2011, as well as the date when such videotapes were destroyed or overwritten;

3.     On or before October 16, 2012, plaintiffs shall file an additional brief, and supporting evidence, establishing the amount of their claim for attorneys' fees and costs;

4.     Within two weeks of the date of service of plaintiffs' brief regarding their claim to attorneys' fees and costs, Schneider shall file a responsive brief addressing the reasonableness of the costs and fees; and

5.     Plaintiffs' Motion for additional sanctions is DENIED without prejudice as premature.

DATED: October 5, 2012

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

21