UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not Present | Not Present |

**Proceedings:**      **(In Chambers:)** DEFENDANT WALMART'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. #422, filed August 30, 2013)

## I.      INTRODUCTION

On October 17, 2011, plaintiffs filed suit against Schneider Logistics, Inc. ("SLI"), Premier Warehousing Ventures, LLC ("PWV"), Rogers-Premier Unloading Services, LLC ("Rogers-Premier," and collectively with PWV, "Premier"), and Impact Logistics, Inc. ("Impact"). On October 28, 2011, plaintiffs filed their First Amended Complaint, which added Schneider Logistics Transloading and Distribution, Inc. ("SLTD") as a defendant in this case. Pursuant to a November 28, 2012 stipulation between the parties, plaintiffs filed a Second Amended Complaint, which dismissed a named plaintiff without prejudice, updated factual allegations, and clarified class definitions. Additionally, over Walmart Stores, Inc.'s ("Walmart") objection, on January 11, 2013, plaintiffs were granted leave to file a Third Amended Complaint ("TAC") adding Walmart as a defendant. Pursuant to a July 17, 2013 stipulation between the parties, the Court dismissed SLI as a defendant.

The TAC is a class, collective, and representative action complaint. It asserts claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., the California Labor Code, the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., and the common law for unpaid wages, failure to keep proper employment records, and related violations. TAC ¶¶ 134-254. Plaintiffs seek to represent two proposed classes. Id. ¶¶ 122-26. The first proposed class includes all individuals initially hired by Premier to perform work at Walmart's warehouses in Mira Loma, California, "during the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|----------|------------------------|------|------------------|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

applicable limitations periods." Id. ¶ 122. This class asserts the second through seventeenth claims for relief.[1] Id. The second proposed class asserts the second through twelfth and fifteenth through seventeenth claims for relief, and consists of individuals initially hired by Impact to work at the warehouses during the applicable limitations periods. Id. ¶ 124.[2]

On August 30, 2013, Walmart filed a motion for partial summary judgment, challenging its liability as an alleged joint employer under the FLSA and California law. Dkt. #422. Plaintiffs filed an opposition on September 30, 2013.[3] Dkt. #434. Walmart filed a reply on October 15, 2013. Dkt. #453. The Court held a hearing on November 4, 2013. The Court thereafter took the matter under submission. After considering the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

Walmart owns multiple warehouse facilities across the country, including in Mira Loma, California. Plaintiffs' Separate Statement in Opposition to Walmart's Motion for Partial Summary Judgment ("WMSS") ¶ 9; Walmart's Reply to Plaintiffs' Separate Statement ("Reply WMSS") ¶ 9. Walmart uses these warehouses to receive imported

---

[1] This proposed class contains a subclass that asserts the ninth claim for relief, and includes all individuals hired by Premier to work at the warehouses from November 18, 2011, through February 24, 2012. Id. ¶ 123.

[2] The second proposed class contains two subclasses. The first subclass asserts the second through twelfth and fifteenth through seventeenth claims for relief, and consists of all individuals employed by Impact at the warehouses before SLTD began its operations at that location. Id. ¶ 125. The second subclass asserts the second through twelfth and fourteenth through seventeenth claims for relief. Id. ¶ 126. It consists of all employees hired by Impact to work at the warehouses after SLTD began its operations at that location. Id.

[3] By order dated September 27, 2013, the Court granted plaintiffs' request to file a combined opposition to SLTD's and Walmart's separate motions for partial summary judgment. Dkt. #433. The Court will address each motion in a separate order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

merchandise from various ports, and to prepare such merchandise for distribution to Walmart's regional distribution centers and retail stores.  Id.  SLTD began operating the Mira Loma warehouses in 2006, pursuant to an agreement with Walmart.  Walmart's Statement of Undisputed Facts ("WMSUF") ¶ 4; Plaintiffs' Statement of Disputed Issues in Opposition to Walmart's Motion for Partial Summary Judgment ("WMDI") ¶ 4.  In turn, pursuant to a series of contracts with SLTD, Impact performed loading and unloading work at the Mira Loma warehouses.  WMSUF ¶¶ 20-23; WMDI ¶¶ 20-23.  Similarly, Premier performed merchandise loading services at those warehouses, also pursuant to contracts with SLTD.  WMSUF ¶¶ 34-35; WMDI ¶¶ 34-35.

Plaintiffs Esquivel, J. Chavez, Rangel, and Trujillo were employees of Impact who worked at the Mira Loma warehouses.  SLTD's Statement of Uncontroverted Material Facts ("SUMF") ¶¶ 1, 3-7; Plaintiffs' Statement of Disputed Issues in Opposition to SLTD's Motion for Partial Summary Judgment ("SLDI") ¶¶ 1, 3-7.  The period of employment varied for each plaintiff, but all of these plaintiffs were employed by Impact at some point between 2003 and 2013.  Id.  Plaintiffs Arceo, Carrillo, F. Chavez, and Flores were employees of Premier who performed merchandise loading services at the Mira Loma warehouses and other facilities.  SUMF ¶¶ 2, 8-11; SLDI ¶¶ 2, 8-11.  These plaintiffs were employed by Premier during various periods between 2009 and 2012.[4]  Id.

It is undisputed that Walmart "leases and/or owns" the Mira Loma warehouses.  WMSS ¶ 16; Reply WMSS ¶ 16.  It is also undisputed that Walmart has provided all equipment necessary to perform work at the warehouses.  WMSS ¶ 18; Reply WMSS ¶ 18.  Walmart's investment in and control over its import distribution network, of which the Mira Loma warehouses are a part, "is a critically important corporate strategy for Walmart."  WMSS ¶¶ 5, 9; WMDI ¶¶ 5, 9.

The parties do not dispute that Impact and Premier provide loading and unloading services for clients besides SLTD and Walmart.  WMSUF ¶¶ 26, 39; WMDI ¶¶ 26, 39.

---

[4] The evidence cited in this paragraph is drawn from SLTD's evidence in support of its motion for partial summary judgment (not Walmart's), and plaintiffs' responses to that evidence.  The Court cites this evidence here to provide additional background, but does not rely on it in reaching its conclusions herein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|----------|------------------------|------|------------------|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

The work of the Impact plaintiffs in the Mira Loma warehouses consisted primarily of unloading goods from shipping containers, and placing the goods onto pallets.  See WMSS ¶¶ 446-47, 449, 453-55, 459, 471.  Premier workers were then responsible for transferring the goods from the pallets to other containers so that they could be shipped out of the Mira Loma warehouses.  Id.  At least one Impact employee has worked at the Mira Loma warehouses since 2003.  WMSS ¶ 535.  Plaintiff Everardo Carrillo worked as a Premier loader at the Mira Loma warehouses from November 2009 to 2010.  WMSS ¶ 516.  The same number of Premier and Impact workers were required to report to work at the warehouses each day, regardless of the volume of merchandise moving through the warehouses on that day.  WMDI ¶¶ 29, 42.  Some of the workers would then be sent home, depending on manpower demands for that day.  Id.

SLTD's contracts with Premier and Impact for loading and unloading services at the Mira Loma warehouses show that SLTD imposed screening requirements on Premier and Impact direct employees at Walmart's request.  See WMSS 278 (citing Pls. Exs. 22, 62). In this regard, SLTD's 2011-2013 contract with Premier states that "Wal-Mart requires that its vendors and their contractors utilize only such workers . . . whose character and background have been vetted." Pls. Ex. 62.  The contract then lists sixteen screening measures that Premier must implement for all of its employees at the Mira Loma warehouses.  Id.  Additionally, it is undisputed that Walmart imposed a requirement at Mira Loma that all workers, including Impact and Premier workers, receive training regarding Department of Transportation regulations and additional loading guidelines. WMSS ¶ 310; Reply WMSS ¶ 310.  SLTD's safety department thereafter trained Impact and Premier supervisors regarding these regulations, who in turn trained their own subordinates.  WMSS ¶ 312; Reply WMSS ¶ 312.  Plaintiffs have also  produced evidence that Walmart exercises control over the hiring and firing of Impact and Premier employees because Walmart must approve overall staffing levels at Mira Loma, including temporary workers.  WMSS ¶ 166 (citing Gardner Dep. 67:17-68:8).

Walmart does not dispute that it has established the "operating metrics" for its warehouses, and that these metrics include productivity standards.  WMSS ¶ 323; Reply WMSS ¶ 323.  For example, Walmart expected SLTD to operate according to a specific productivity goal, measured in cases per man-hour ("CPH").  WMSS ¶ 113; Reply WMSS ¶ 113; see also WMSS ¶¶ 71, 80; Reply WMSS ¶¶ 71, 80 (undisputed that Walmart sets annual CPH productivity goals for the Mira Loma warehouses).  Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

have produced evidence that Walmart personnel closely monitor productivity levels at the Mira Loma warehouses, and notify SLTD when productivity levels are inadequate.  See Pls. Ex. 283.  For example, a Walmart employee expressed concern to SLTD manager Vincent Redgrave in a 2008 email that a method of loading pallets was "impacting our productivity" and "needs to [be] corrected as quick[ly] as possible."  Id.  Walmart does not dispute that SLTD managers and supervisors "regularly exerted pressure on Impact and Premier workers to work faster" in order to "enforce Walmart's productivity standards."  WMSS ¶ 133; Reply WMSS ¶ 133.  Walmart would provide suggestions about how to improve CPH, and Walmart expected that SLTD would follow these suggestions.  Miller Dep. 133:21-134:8.  One such CPH improvement plan, see Pls. Ex. 144, included detailed guidelines that affected Impact and Premier work schedules, such as "if [a] break starts at 8:00 and is a 15 minute break the associates do not leave the work area until 8:00 am and then leave the break area at 8:15 to return to work," and "haulers should come in one hour later because of lack of pallets to haul from the dock." Pls.  Ex. 144 at 1-2 (WM0067088-90).

In addition to closely monitoring and enforcing productivity standards at Mira Loma, Walmart imposed and enforced other operating procedures, including procedures that governed Impact and Premier's daily job functions.  WMSS ¶ 328; Reply WMSS ¶ 328.  For example, on one occasion, a Walmart manager complained to SLTD about doors being left open on trailers, and directed SLTD to "make sure Impact is closing doors."  Id.  Plaintiffs have also produced evidence that Walmart exerted control over Impact and Premier employees' working conditions by conducting detailed audits of operations at the Mira Loma warehouses, and instructing SLTD to speak with Impact and Premier employees directly if those employees were not following Walmart's procedures. For example, Walmart mandated that a monthly food safety audit occur at Mira Loma. WMSS ¶ 340; Reply WMSS ¶ 340.  The audit was sometimes conducted by Walmart's onsite managers at Mira Loma "to ensure that [SLTD] and the other employees working in the building were complying with Walmart's requirements."  WMSS ¶ 341; Reply WMSS ¶ 341.  Any deficiencies found during a food safety audit had to be "addressed promptly by way of a written action plan submitted to Walmart and immediate corrective action."  WMSS ¶ 342; Reply WMSS ¶ 342.

In turn, this corrective action resulted in SLTD personnel speaking directly with Impact and Premier personnel to remedy the deficiencies.  In this regard, when a 2008

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

food safety audit found that Impact loaders had violated a Walmart requirement by failing to keep certain areas free of trash, the action plan developed in response called for SLTD to review the requirement with Impact loaders. WMSS ¶ 350; Reply WMSS ¶ 350. Similarly, the same audit found that Impact loaders had violated another Walmart requirement by failing to sweep out trailers before loading, and the responsive action plan called for SLTD managers to "communicate with Impact associates to fix the issue." WMSS ¶ 350; Reply WMSS ¶ 350. During another audit, Hector Avalos, Walmart's onsite manager, found that two warehouse doors were open and left unattended with trailers docked to them, in violation of a Walmart requirement that warehouse doors are to be closed when employees step away from a trailer. WMSS ¶ 353; Reply WMSS ¶ 353. After Avalos observed this deficiency, an SLTD manager instructed other SLTD personnel to "remind the loaders that they are not following proper procedure, and to counsel them if necessary." Id. (internal quotation marks omitted).

Walmart does not dispute that, in 2008, it directed SLTD to shift all workers at the Mira Loma warehouses to an alternative workweek schedule. WMSS ¶ 198; Reply WMSS ¶ 198. This schedule reduced the total number of shifts per day from three to one, and also altered the workweek from a 5-day, 8 hour per day workweek, to a 4-day, 10 hour per day workweek. Id. Walmart does not dispute that this change affected plaintiffs' work schedules. WMSS ¶ 208; Reply WMSS ¶ 208; see also WMSS ¶ 210; Reply WMSS ¶ 210 (undisputed that the schedules of Impact and Premier employees were contingent on schedules of SLTD employees). Additionally, as part of Walmart's budget approval process for SLTD's operating budget at Mira Loma, SLTD must submit to Walmart an organizational chart that includes the ratio between the number of supervisors and the number of line employees who are supervised in each area of the warehouse. WMSS ¶ 155; Reply WMSS 155. The staffing chart, which includes Impact and Premier employees, lists the average number of hours worked per employee so that Walmart can evaluate whether employees are working sufficient hours to avoid overstaffing. WMSS ¶¶ 159-60; Reply WMSS ¶¶ 159-60.

Regarding Walmart's influence over plaintiffs' method and rate of payment, Walmart employee Bob Duron stated in a 2006 email that he was "very focused on the use of incentive based temp agencies." WMSS ¶ 388 (citing Pls. Ex. 118). Additionally, SLTD manager Flaherty stated that SLTD was required to seek Walmart's approval before changing the total amount that it paid its subcontractors, including Impact and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

Premier.  WMSS ¶ 385 (citing Flaherty Dep. 54:12-15).  Similarly, a 2012 email from Walmart manager Steve Gardner to SLTD manager Redgrave expressed concern that Impact was billing SLTD based on an hourly rate rather than a per-container rate. WMSS ¶ 429 (citing Pls. Ex. 336).  In the email, Gardner asked Redgrave, "what is this costing Wal-Mart?"  Id.

In an email dated January 4, 2012, Walmart manager Steve Gardner, instructed warehouse managers, including Vincent Redgrave, the SLTD manager at Mira Loma, that "[e]veryone should now be working towards the reduction of temp agency people in our buildings."  Pls. Ex. 247.  Walmart does not dispute that SLTD hired Impact and Premier employees as direct employees of SLTD in the months following this email.  WMSS ¶¶ 260-61; Reply WMSS ¶¶ 260-61.  Walmart's directive may have resulted in an overall reduction in staff in other warehouses besides those in Mira Loma.  E.g., WMSS ¶ 242 (stating that "Walmart[] . . . ultimately approved the staffing change in Elwood and Savannah, which resulted in about half of the contracted-out lumper positions being eliminated").

## III.  LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114
F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed
facts, the Court must decide whether the moving party is entitled to judgment as a matter
of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 &
n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to
be drawn from the underlying facts . . . must be viewed in the light most favorable to the
party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.
574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121
F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper
when a rational trier of fact would not be able to find for the nonmoving party on the
claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.  ANALYSIS

### A.   Joint Employer Liability Under the FLSA

The FLSA defines "employ" as "to suffer or permit to work."  29 U.S.C. § 203(g).
It defines "employer" as "any person acting directly or indirectly in the interest of an
employer in relation to an employee."  Id. § 203(d).  These definitions are "given an
expansive interpretation in order to effectuate the FLSA's broad remedial purposes."
Lambert v. Ackerley, 180 F.3d 997, 1011-12 (9th Cir. 1999).  The determination of
whether an employer-employee relationship exists depends on the "economic reality" of
the situation.  Torres-Lopez v. May, 111 F.3d 633, 639 (9th Cir. 1997) (quoting Bonnette
v. Cal. Health & Welf. Agency, 704 F.2d 1465, 1470 (9th Cir. 1983)).  While this
determination does not depend on "isolated factors," Boucher v. Shaw, 572 F.3d 1087,
1090-91 (9th Cir. 2009) (quoting Rutherford Food Corp. v. McComb, 331 U.S. 722, 730
(1947)), courts in this Circuit frequently rely on factors set forth in Bonnette, 704 F.2d at
1470, and Torres-Lopez, 111 F.3d at 640, to guide their analysis.  E.g., Moreau v. Air
France, 356 F.3d 942, 946-47 (9th Cir. 2003); see also 29 CFR § 791.2 (stating that the
joint employer determination "depends on all the facts in a particular case").

The Bonnette factors assess whether the entity asserted to be a joint employer "(1)
had the power to hire and fire the employees, (2) supervised and controlled employee

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  704 F.2d at 1470; see also In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig., 683 F.3d 462, 469 (3d Cir. 2012) (applying a four-factor test similar to the Bonnette factors).

The Torres-Lopez factors supplement, but do not replace, the Bonnette factors. They assess:

> (1) whether the work was a specialty job on the production line, (2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes, (3) whether the premises and equipment of the employer are used for the work, (4) whether the employees had a business organization that could or did shift as a unit from one [worksite] to another, (5) whether the work was piecework and not work that required initiative, judgment or foresight, (6) whether the employee had an opportunity for profit or loss depending upon [the alleged employee's] managerial skill, (7) whether there was "permanence [in] the working relationship, and (8) whether the service rendered is an integral part of the alleged employer's business.

111 F.3d at 640 (internal quotations and citations omitted).  As set forth below, the Court concludes that Walmart's motion for summary judgment should be denied because significant factual disputes exist with regard to the first three Bonnette factors, and the first, third, fifth, seventh, and eighth Torres-Lopez factors.

      1.   The Bonnette Factors

         a.   The Power to Hire and Fire

The first Bonnette factor assesses whether the asserted joint employer had the power to hire or fire the plaintiff employees.  Plaintiffs contend that a genuine factual dispute exists as to whether Walmart had this power.

Plaintiffs first argue that Walmart had this power because it could control the ratio of direct SLTD employees to employees of SLTD subcontractors (like Impact or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

Premier) at the Mira Loma warehouses.  Opp. Mot. Summ. J. 39 (citing WMSS ¶¶ 239, 240-242, 259-61); Pls. Ex. 247.  Walmart does not dispute that SLTD hired Impact and Premier employees as direct employees of SLTD in the months following this email.  WMSS ¶¶ 260-61; Reply WMSS ¶¶ 260-61.  However, the record does not appear to show that SLTD's hiring of Impact and Premier employees as direct SLTD employees resulted in an overall reduction of the number of employees.

   Second, plaintiffs argue that Walmart exercised control over plaintiffs' hiring by imposing screening requirements on all employees hired to work at the Mira Loma warehouses.  Opp. Mot. Summ. J. 39-40.  According to plaintiffs, failure to satisfy the screening requirements barred prospective employees from gaining access to the warehouses.  Id. at 40.  The portions of the record cited by plaintiffs pertaining to this factor do not appear to support plaintiffs' argument.  Rather, those portions of the record show that SLTD imposed screening requirements on Impact and Premier employees, and that Walmart may have required that screening occur for "all associates" hired to work at warehouse facilities, e.g. Pls. Ex. 302.  However, none of the documents specify whether "associates" referred to direct employees of subcontractors like Impact or Premier, or just Walmart direct employees.  Additionally, other documents in the record show that the term "associates" is used by Walmart to refer to its direct employees.  See Pls. Ex. 303.

   However, other portions of the record appear to support plaintiffs' argument.  As stated in Section II above, SLTD's contracts with Premier and Impact for loading and unloading services at the Mira Loma warehouses show that SLTD imposed screening requirements on Premier and Impact direct employees at Walmart's request.  See WMSS 278 (citing Pls. Exs. 22, 62); Pls. Ex. 62; WMSS ¶ 310; Reply WMSS ¶ 310; WMSS ¶ 312; Reply WMSS ¶ 312.  While Walmart argues that its only role in imposing pre-hire screening procedures was "expressing a desire" that warehouse workers be qualified for their jobs, eligible to work in the United States, and subjected to background checks, this argument is contradicted by the evidence contained in SLTD's contract with Premier, cited above.  Reply Mot. Summ. J. 12.  Finally, plaintiffs have produced evidence that Walmart exercises control over the hiring and firing of Impact and Premier employees because Walmart must approve overall staffing levels at Mira Loma.  WMSS ¶ 166 (citing Gardner Dep. 67:17-68:8).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

Based on this evidence, the Court concludes that, with regard to the first <u>Bonnette</u> factor, there exists a genuine dispute of material fact based on Walmart's imposition of screening requirements and its control over staffing levels.

      b.     Control over Work Schedules and Employment Conditions

The second <u>Bonnette</u> factor assesses whether the asserted joint employer exercised control over the employees' work schedules and employment conditions. Regarding work schedules, Walmart does not dispute that, in 2008, it directed SLTD to shift all workers at the Mira Loma warehouses to an alternative workweek schedule, and that this change affected plaintiffs' work schedules. WMSS ¶ 198, 208; Reply WMSS ¶ 198, 208; <u>see also</u> WMSS ¶ 210; Reply WMSS ¶ 210 (undisputed that the schedules of Impact and Premier employees were contingent on schedules of SLTD employees).

Walmart also exerts indirect control over Premier and Impact employees' work schedules through its oversight of SLTD's operating budget. WMSS ¶ 155; Reply WMSS 155. As stated in Section II, this oversight includes the review of a staffing chart submitted by SLTD that sets forth the hours worked per employee and the ratio between supervisors and line employees. WMSS ¶¶ 159-60; Reply WMSS ¶¶ 159-60. Additionally, plaintiffs have produced evidence showing that Walmart exercised substantial control over Impact and Premier employees' working conditions by establishing various operating metrics and productivity goals. WMSS ¶ 113, 323; Reply WMSS ¶ 113, 323; <u>see also</u> WMSS ¶¶ 71, 80; Reply WMSS ¶¶ 71, 80 (undisputed that Walmart sets annual CPH productivity goals for the Mira Loma warehouses). Walmart also closely monitored productivity levels at the warehouses, and SLTD exerted pressure on Premier and Impact employees to work faster in order to comply with Walmart's productivity standards. <u>See</u> Pls. Ex. 283; WMSS ¶ 133; Reply WMSS ¶ 133. Walmart would also provide suggestions about how to improve productivity, and there was an expectation that SLTD would follow these suggestions. Miller Dep. 133:21-134:8; Pls. Ex. 144 at 1-2 (WM0067088-90).

In addition to closely monitoring and enforcing productivity standards at Mira Loma, Walmart imposed and enforced other operating procedures, including procedures that governed Impact and Premier's daily job functions. WMSS ¶ 328; Reply WMSS ¶ 328. As noted in Section II above, Walmart personnel complained to SLTD when

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

Premier and Impact employees did not follow Walmart's procedures, and also conducted audits of operations at the warehouses that resulted in Walmart instructing SLTD personnel to speak with Impact and Premier employees if those employees were not following Walmart's procedures. Id.; WMSS ¶ 340-42, 350, 353; Reply WMSS ¶ 340-42, 350, 353.

Based on this evidence of Walmart's extensive oversight and enforcement of its own guidelines and standards at the Mira Loma warehouses, the Court finds that this factor weighs against granting summary judgment to Walmart. See Lemus v. Timberland Apartments, L.L.C., 2011 WL 7069078, *10-11 (D. Or. Dec. 21, 2011) (denying summary judgment to defendant employer on joint employer liability based in part on employer's control over master construction schedule and overall jobsite working hours).

c.    Determination of Rate and Method of Payment

The third Bonnette factor assesses whether the asserted joint employer determined the rate and method of the employees' payment. Plaintiffs have produced evidence that Walmart influenced their rate and method of pay, albeit indirectly. For example, Walmart's Bob Duron stated in a 2006 email that he was "very focused on the use of incentive based temp agencies." WMSS ¶ 388 (citing Pls. Ex. 118). Additionally, SLTD manager Flaherty stated that SLTD was required to seek Walmart's approval before changing the total amount that it paid its subcontractors, including Impact and Premier. WMSS ¶ 385 (citing Flaherty Dep. 54:12-15). Similarly, a 2012 email from Walmart manager Steve Gardner to SLTD manager Redgrave expressed concern that Impact was billing SLTD based on an hourly rate rather than a per-container rate. WMSS ¶ 429 (citing Pls. Ex. 336). In the email, Gardner asked Redgrave, "what is this costing Wal-Mart?" Id. This evidence gives rise to the reasonable inference that Walmart indirectly influenced plaintiffs' method of compensation by pressuring SLTD to minimize its costs and continue to pay its subcontractors on a per-container basis. Accordingly, this factor weighs slightly against granting summary judgment to Walmart.

Walmart argues that this type of oversight and pressure is a necessary by-product of its cost-plus arrangement with SLTD, in which it reimburses SLTD for its overhead costs, and adds a fixed profit percentage to that amount. Mot. Summ. J. 16-17. This argument is unavailing, because the cases relied on by Walmart address joint employer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

determinations based on standards that are materially different from the <u>Bonnette</u> and <u>Torres-Lopez</u> standards, <u>see</u> <u>Int'l Longshoremen's Ass'n v. Norfolk Southern Corp.</u>, 927 F.2d 900, 903 (6th Cir. 1991) (analyzing joint employer status under the Railway Labor Act); <u>Teamsters Local Union No. 89 v. Kroger Co.</u>, 921 F. Supp. 2d 733, 742 (W.D. Ky. 2013) (applying the standard from <u>Norfolk</u> to a determination of joint employer status under the National Labor Relations Act). The standard employed in these cases assesses the "interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership." <u>E.g.</u>, <u>Norfolk S. Corp.</u>, 927 F.2d at 902. These factors focus on the corporate structure of the two companies, instead of the "economic reality" of the employment relationship, <u>see, e.g.</u>, <u>Torres-Lopez</u>, 111 F.3d at 639. In the Ninth Circuit, these factors constitute the "single employer" test, used for determining whether two entities can be bound by a collective bargaining agreement signed by only one of them. <u>See</u> <u>Carpenters Union Local No. 1478 v. Stevens</u>, 743 F.2d 1271, 1276 (9th Cir. 1984). These factors are not applied in determining joint employer status under the FLSA. <u>Compare</u> <u>Carpenters Union</u>, 743 F.2d at 1276, <u>with</u> <u>Torres-Lopez</u>, 111 F.3d at 639. Therefore, the cases cited by Walmart with regard to this factor do not govern the joint employer inquiry in this case.

      d.   Maintenance of Employment Records

The fourth <u>Bonnette</u> factor assesses whether the asserted joint employer maintained employment records for the plaintiff employees. The Court finds that this factor weighs in favor of granting summary judgment to Walmart. Plaintiffs acknowledge that Walmart was not directly involved in maintaining their employment records. Opp. Mot. Summ. J. 46. However, they contend that Walmart directed SLTD to maintain such records and use them to make periodic reports to Walmart. <u>Id.</u> According to plaintiffs, this type of involvement in the maintenance of employment records supports a finding in their favor on this factor. <u>Id.</u> The Court is unpersuaded by this argument. The portions of the record cited by plaintiffs do not appear to support their contention that SLTD maintained records at Walmart's direction. Rather, those portions of the record show only that Walmart imposed a variety of screening requirements on all employees that worked in the Mira Loma warehouses. <u>See</u> Opp. Mot. Summ. J. 22-23.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

    e.    Walmart's Arguments Regarding the <u>Bonnette</u> factors

    Walmart addresses the <u>Bonnette</u> factors holistically, rather than individually.  In this regard, Walmart argues that its imposition of standards and reporting requirements on the operations at the Mira Loma warehouses does not establish joint employment.  Mot. Summ. J. 13-16.  Walmart relies principally on <u>Moreau</u>, 356 F.3d at 949-53, <u>Singh v. 7-Eleven, Inc.</u>, 2007 WL 715488, *4-5 (N.D. Cal. 2007), <u>Zhao v. Bebe Stores, Inc.</u>, 247 F. Supp. 2d 1154, 1158-60 (C.D. Cal. 2003), and <u>Maddock v. KB Homes</u>, 631 F. Supp. 2d 1226, 1230 (C.D. Cal. 2007) in support of its argument.  These cases are also inapposite.

    In <u>Moreau</u>, the Ninth Circuit affirmed the district court's grant of summary judgment to Air France, holding that the airline was not a joint employer of the plaintiff, who was a direct employee of a subcontractor providing ground handling services at San Francisco International Airport.  356 F.3d at 953.  <u>Moreau</u> is readily distinguishable from this case.  There, the court found that the subcontractor's work was primarily performed on the airport tarmac, and not on Air France's property.  <u>Id.</u> at 951.  As set forth below, Walmart owns or leases the Mira Loma warehouses, and ownership or control of the premises of employment is a key consideration in determining joint employer liability.  See <u>Torres-Lopez</u>, 111 F.3d at 640.  Moreover, the <u>Moreau</u> court observed that the imposition of standards and oversight "can, in some situations, constitute 'indirect' supervision of the employees' performance."  356 F.3d at 951.  However, Air France's oversight of ground operations in San Francisco did not support a determination of joint employer liability because the court concluded that much of that oversight was "purportedly to ensure compliance with various safety and security regulations" peculiar to the airline industry.  <u>Id.</u>

    Similarly, in <u>Singh</u>, the district court granted summary judgment to 7-Eleven, finding that it was not the joint employer of two employees working at a 7-Eleven franchise retail store.  2007 WL 715488, at *1.  Walmart argues that <u>Singh</u> is analogous to this case because the district court found that setting operating standards and conducting audits without "actual control of day-to-day operations" did not support a finding of joint employment under the <u>Bonnette</u> factors.  Mot. Summ. J. 14 (citing <u>Singh</u>, 2007 WL 715488, at *5).  <u>Singh</u> is inapposite for at least two reasons.  First, in <u>Singh</u>, the plaintiffs presented "no evidence" to suggest a factual dispute as to 7-Eleven's control of the plaintiff's work schedules.  Here, by contrast, plaintiffs have produced evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | | Date | January 14, 2014 |
|---|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | | |

suggesting that Walmart imposed an alternative workweek schedule on all personnel at the Mira Loma warehouses.  Second, the Singh court applied the Bonnette factors but not the Torres-Lopez factors in its analysis.  It did not explain its reason for failing to consider the Torres-Lopez factors.  In this case, the Court concludes that the Torres-Lopez factors form an important component of the joint employer analysis with respect to Walmart, see Moreau, 356 F.3d at 950-52 (applying both the Bonnette factors and the Torres-Lopez factors in reviewing the district court's grant of summary judgment), and that many of those factors weigh against granting summary judgment to Walmart.

In Zhao, the district court found that the clothing retailer Bebe Stores was not a joint employer of an employee working at Apex, a textile manufacturer. 247 F. Supp. 2d 1154, 1155 (C.D. Cal. 2003).  The court noted that Bebe personnel were involved in quality control inspections of Apex's product, but found that this type of oversight fell short of the type of control necessary to support joint employer liability.  Id. at 1160.  The court found it significant that Apex, not Bebe, "own[ed] its facility and its equipment." Id. at 1160.  Zhao is distinguishable because here, Walmart owns or leases the Mira Loma warehouses, and owns all of the equipment used by plaintiffs.  WMSS ¶¶ 16, 18; Reply WMSS ¶¶ 16, 18.

In Maddock, the court found that KB Home, a "nationwide seller of homes in community developments," was not a joint employer of the plaintiff, who worked directly for one of KB Home's subsidiaries as a sales agent.  631 F. Supp. 2d at 1230.  Maddock is inapposite for two reasons.  First, the plaintiff in that case conceded that the first and third Bonnette factors weighed against a finding of joint employer liability.  Id. at 1234. Second, the court did not apply the Torres-Lopez factors in conducting its analysis because it concluded that they were "irrelevant or, at best, carr[ied] neutral weight" in that case.  Id. at 1233-34.  That analysis was made in light of the fact that the Maddock plaintiff's work as a commissioned salesperson bore no resemblance to the manual labor performed by the agricultural workers in Torres-Lopez, 111 F.3d at 636, because the commissioned salespersons performed work that required initiative, judgment, and foresight.  In this case, however, the manual labor performed by plaintiffs at the Mira Loma warehouses is sufficiently analogous to the labor in Torres-Lopez such that the combined application of the Bonnette and Torres-Lopez factors is appropriate. Moreover, as set forth below, the Court concludes that most of the Torres-Lopez factors weigh against granting summary judgment to Walmart.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|----------|------------------------|------|------------------|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

Walmart also argues that <u>Gonzalez v. Sterling Builders</u>, 2010 WL 1875620, at *5 (D. Or. May 6, 2010) and <u>Adams v. US Airways, Inc.</u>, 2013 WL 1345509, at *4-5 (D. Ariz. Mar. 29, 2013) are particularly persuasive here because in both cases, the asserted joint employer was separated from the plaintiffs by two layers of subcontractors, as Walmart is from plaintiffs in this case.  Mot. Summ. J. 15-16; Reply Mot. Summ. J. 21. Both cases are distinguishable.  In <u>Gonzalez</u>, plaintiffs produced no evidence that the defendants owned the premises where the plaintiffs worked.  2010 WL 1875620 at *7.  In <u>Adams</u>, it was undisputed that the premises on which the plaintiff skycaps worked were owned by the City of Phoenix.  2013 WL 1345509, at *5.

      2.    The <u>Torres-Lopez</u> Non-Regulatory Factors

          a.    Specialty Job on the Production Line

The first <u>Torres-Lopez</u> factor assesses whether the plaintiffs performed a "specialty job on the [asserted joint employer's] production line."  <u>Torres-Lopez</u>, 111 F.3d at 640. Walmart argues that operations at the Mira Loma warehouses do not resemble a production line because plaintiffs are "responsible for the protection and movement of millions of dollars of inventory every day," and their jobs required "care, attention, and judgment."  Mot. Summ. J. 19; Reply Mot. Summ. J. 24.  The Court is unpersuaded by this argument.  This inquiry as to whether plaintiffs performed a specialty job on the production line originates from the Supreme Court's decision in <u>Rutherford Food Corp. v. McComb</u>, 331 U.S. 722, 730 (1947).  The Court's opinion in that case gives no indication that the care, attention, or judgment required for a job has any bearing on whether the job is part of a production line.  <u>See id.</u>  Moreover, the evidence cited by defendants in support of their argument that plaintiffs' work required "care, attention, and judgment" actually supports the conclusion that operations at the Mira Loma warehouses occurred in a series of discrete steps akin to a production line, and that plaintiffs' role was a "specialty job" in that series of steps.  <u>See</u> WMSS ¶¶ 446, 447, 449, 453, 454, 455, 459, 471; Mot. Summ. J. 19 (stating that plaintiffs "have to unload goods . . . onto pallets, properly protect and label them, prepare new pallets for reloading, [and] load . . . goods on trucks").  Accordingly, the Court concludes that this factor weighs against granting summary judgment to Walmart.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

      b.    Responsibility Under the Contracts Between a Labor Contractor and an
           Employer Pass from one Labor Contractor to Another Without Material
           Changes

      The second <u>Torres-Lopez</u> factor assesses whether responsibility under labor
contracts between the subcontractor and the asserted joint employer passes from one
labor contractor to another without material change.  The purpose of this factor is to
assess whether "employees are tied to an entity . . . rather than to an ostensible direct
employer."  <u>Zheng</u>, 355 F.3d at 74; <u>see also</u> <u>Torres-Lopez</u>, 111 F.3d at 640 (considering
whether the contracts were "standard for the industry and involved little negotiation").  In
other words, evidence under this factor would indicate that labor contractors are
interchangeable and lack autonomy, and that actual control over the employees comes
from an entity that operates above the labor contractors.  <u>See</u> <u>Zheng</u>, 355 F.3d at 74.

      Walmart argues that this factor weighs in its favor because the subcontract between
Premier and SLTD as well as the subcontract between Impact and SLTD contained
"unique terms."  Mot. Summ. J. 20.  Moreover, Walmart contends that it played no role
in contract negotiations that SLTD conducted with Impact and Premier, and that this fact
weighs against the conclusion that Walmart jointly employed Premier and Impact direct
employees.  <u>Id.</u>  Plaintiffs contend that the terms of the contracts between Walmart and
SLTD's predecessor are similar to the contract between Walmart and SLTD.  Opp. Mot.
Summ. J. 47-48.  In addition, plaintiffs contend that the Impact's contract with SLTD's
predecessor is similar to Impact's contract with SLTD.  <u>Id.</u> at 48.  Finally, plaintiffs
contend that SLTD's contract with Premier is virtually identical to SLTD's contract with
impact.  <u>Id.</u>

      While it appears that there is substantial disagreement between the parties regarding
the evidence relating to this factor, the Court finds that this factor is of limited relevance
in the joint employer analysis in this case because of the multiple contractual layers that
separate Walmart from plaintiffs.  Impact and Premier operated at the Mira Loma
warehouses pursuant to contracts with SLTD, WMSUF ¶¶ 20-23, 34-35; WMDI ¶¶ 20-
23, 34-35, and SLTD operated pursuant to an agreement with Walmart, WMSUF ¶ 3;
WMDI ¶ 3.  Even if the evidence showed that the Premier and Impact-level contracts
passed from one contractor to another without material change, that evidence would only
inform the joint employer analysis with respect to SLTD, which is addressed in a separate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

order denying summary judgment as to SLTD. Similarly, if the evidence showed that the SLTD-level contracts passed without material change, that evidence would only inform the joint employer analysis with respect to whether Walmart was a joint employer of direct SLTD employees. That inquiry is not relevant here.

    c.    Premises and Equipment of the Employer Used for the Work

The third <u>Torres-Lopez</u> factor assesses whether the "premises and equipment" of the asserted joint employer are used to perform the work. It is undisputed that Walmart "leases and/or owns" the Mira Loma warehouses, and is responsible for "all incidences of ownership." WMSS ¶ 16; Reply WMSS ¶ 16. It is also undisputed that Walmart has provided all equipment necessary to perform work at the warehouses. WMSS ¶ 18; Reply WMSS ¶ 18. Based on this evidence, the Court finds that this factor weighs particularly strongly against granting summary judgment to Walmart because "a business that owns or controls the worksite will likely be able to prevent labor law violations, even if it delegates hiring and supervisory responsibilities to labor contractors." <u>See</u> <u>Antenor v. D&S Farms</u>, 88 F.3d 925, 936-37 (11th Cir. 1996) (conducting a joint employer analysis under the FLSA based on factors similar to those contained in <u>Bonnette</u> and <u>Torres-Lopez</u>).

    d.    Employees Had a Business Organization That Could Shift from One Worksite to Another

The fourth <u>Torres-Lopez</u> factor assesses whether the employees had a business organization that could shift from one worksite to another. This factor is relevant to the joint employer analysis because "a subcontractor that seeks business from a variety of contractors is less likely to be part of a subterfuge arrangement than a subcontractor that serves a single client." <u>Zheng</u>, 355 F.3d at 72. Plaintiffs do not dispute that Impact and Premier provide loading and unloading services for clients besides SLTD and Walmart. WMSUF ¶¶ 26, 39; WMDI ¶¶ 26, 39. Based on this evidence, the Court finds that this factor weighs in favor of granting summary judgment to Walmart. Plaintiffs resist this conclusion, arguing that plaintiffs are hired individually to work at the Mira Loma warehouses, and are not part of a cohesive work group. Opp. Mot. Summ. J. 48-49. This argument is unavailing for two reasons. First, plaintiffs cite no evidence in support of this contention. Second, even if plaintiffs produced such evidence, it would not change

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

the fact that Walmart was not Premier's or Impact's only client, demonstrating that Impact's and Premier's status as a separate entity likely had an "independent economic purpose" besides "evad[ing] the FLSA or other labor laws." Cf. Zheng, 355 F.3d at 72.

     e.    Employees Performed Piecework That Did Not Require Initiative, Judgment or Foresight

    The fifth Torres-Lopez factor assesses whether the employees performed piecework that did not require initiative, judgment, or foresight. Walmart argues that this factor weighs in its favor. In this regard, Walmart states that the loading and unloading work performed by plaintiffs "requires great care and attention" because "Walmart's distribution system depends on speed and efficiency." Mot. Summ. J. 21. The Court is unpersuaded by this argument, and finds that this factor weighs against granting summary judgment to Walmart. Like the "specialty job" factor, this factor is derived from the Supreme Court's decision in Rutherford, 331 U.S. at 731. There, the plaintiff employees worked as meat de-boners at a slaughterhouse. Id. The Court noted that, "[w]hile profits to the boners depended on the efficiency of their work, it was more like piece work than an enterprise that actually depended for success upon the initiative, judgment or foresight of the typical independent contractor." Id. This case is analogous to Rutherford because, while the success of the loading and unloading work may depend on plaintiffs' efficiency, plaintiffs' evidence supports the reasonable inference that plaintiffs' work consisted primarily of conventional manual labor, including moving large pallets of Walmart's merchandise around the Mira Loma warehouses in preparation for distribution to Walmart stores. See WMSS ¶¶ 444-75.

     f.    Employee Had Opportunity for Profit or Loss Depending upon Managerial Skill

    The sixth Torres-Lopez factor assesses whether the employees had the opportunity for profit or loss depending on managerial skill. Walmart argues that this factor weighs in its favor because Impact and Premier workers were periodically promoted to management positions within their respective companies. Mot. Summ. J. 21. While plaintiffs do not dispute that four Impact employees and one Premier employee have been promoted to supervisory positions since the early 2000's, this fact is otherwise disputed by plaintiffs. See WMSUF ¶¶ 28, 41; WMDI ¶¶ 28, 41. Plaintiffs argue that this factor

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | | Date | January 14, 2014 |
|---|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | | |

weighs in their favor because they lacked the opportunity to exercise managerial skill, "much less profit by it." Opp. Mot. Summ. J. 49. The Court is unpersuaded by these arguments, because the Court concludes that this factor is not relevant in this context. The reasoning behind this factor is that a job that a person exercising managerial skill is more likely to be an independent contractor than an employee. <u>Antenor</u>, 88 F.3d at 932 n.9. However, inquiring into the level of skill required for a job is unhelpful in determining if an individual is jointly employed two or more entities. <u>Id.</u>; <u>see also</u> <u>Aimable v. Long and Scott Farms</u>, 20 F.3d 434, 443 (11th Cir. 1994).

        g.    Permanence in the Working Relationship

     The seventh <u>Torres-Lopez</u> factor assesses whether there was permanence in the working relationship between the asserted joint employer and the plaintiff employees. Plaintiffs have produced evidence that at least one Impact employee has worked at the Mira Loma warehouses since 2003. WMSS ¶ 535. Similarly, plaintiff Everardo Carrillo worked as a Premier loader at the Mira Loma warehouses from November 2009 to 2010. WMSS ¶ 516. Walmart argues that it did not have a permanent working relationship with plaintiffs because the number of Impact or Premier workers at the warehouses varied on a daily basis depending on the volume of merchandise. Mot. Summ. J. 21. According to Walmart, this fact indicates that plaintiffs' employment at the warehouses was intermittent or sporadic, and not permanent. <u>See id.</u> Plaintiffs dispute this fact on the grounds that the same number of Premier and Impact workers were required to report to work each day, regardless of the volume of merchandise moving through the warehouses on that day. WMDI ¶¶ 29, 42. Some of the workers would then be sent home, depending on that day's manpower demands. <u>Id.</u> Based on plaintiffs' evidence of the length of employment of certain Premier and Impact workers, and the factual dispute regarding the degree to which Impact and Premier workers' employment was intermittent or sporadic, the Court finds that a genuine factual dispute exists as to this factor. This factor therefore weighs against granting summary judgment to Walmart.

        h.    Whether the Service Rendered Was an Integral Part of the
             Employer's Business

     The final <u>Torres-Lopez</u> factor assesses whether the service performed by the plaintiff employees is an integral part of the asserted joint employer's business. It is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

undisputed that "[i]nvestment in and control over the import distribution network is a critically important corporate strategy for Walmart." WMSS ¶ 5; WMDI ¶ 5. It is also undisputed that the Mira Loma warehouses are part of that distribution network. WMSS ¶ 9; WMDI ¶ 9. It is a fair inference that the loading and unloading work performed by plaintiffs is essential to the success of this corporate strategy.

Walmart does not directly dispute that plaintiffs' work is integral to its business. Rather, it cites <u>Zheng</u> for the proposition that this factor weighs against finding joint employer liability if the service provided by the plaintiff employees is frequently outsourced. Mot. Summ. J. 22 (citing <u>Zheng</u>, 355 F.3d at 73). The cited portion of <u>Zheng</u> notes that outsourcing is less likely to be a device for avoiding liability under the FLSA and other labor laws in a particular case if outsourcing is widespread in that industry. 355 F.3d at 73-74. While that observation may be correct, this factor is relevant for reasons beyond whether the subcontracting relationship exists as a means of evading labor laws. The Ninth Circuit has stated that this factor is significant because "a worker that performs a routine task that is a normal and integral phase of the [employer's] production is likely to be dependent on the [employer's] overall production process." <u>Torres-Lopez</u>, 111 F.3d at 641 (quoting <u>Antenor</u>, 88 F.3d at 937).

**B.    Joint Employer Liability under California Law**

Under California law, "employ" means (1) "to exercise control over . . . wages, hours or working conditions," (2) "to suffer or permit to work," or (3) "to engage, thereby creating a common law employment relationship." <u>Martinez v. Combs</u>, 49 Cal. 4th 35, 64 (2010) (analyzing Cal. Code Regs. tit. 8, § 11140 and the common law). Under the first definition, control over wages, hours, or working conditions can be exercised "directly or indirectly." <u>E.g.</u>, Cal. Code Regs. tit. 8, § 11140(2)(G).

Plaintiffs do not separately address Walmart's contention that it is not a joint employer under California law. Rather, plaintiffs incorporate their discussion of the FLSA joint employer standard by reference, and argue that summary judgment should be denied as to Walmart's joint employer status under California law because the "suffer or permit" standard is similar to the FLSA's definition of employer, and the "exercise control" standard is "particularly broad." Opp. Mot. Summ. J. 29 n.7. The Court agrees with plaintiffs that the evidence regarding Walmart's joint employer status under the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | | Date | January 14, 2014 |
|----------|------------------------|--|------|------------------|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | | |

FLSA also informs the inquiry under California law.[5]  In the interest of brevity, the Court will not repeat the evidence cited in section A above.  Rather, in summary, the evidence produced by plaintiffs pertaining to the second and third <u>Bonnette</u> factors, along with Walmart's control of the premises and equipment used to perform the work at the Mira Loma warehouses demonstrates that genuine factual disputes underlie the joint employer determination under California law.

Walmart argues that it is not a joint employer under California law because the facts of this case are analogous to those in <u>Martinez</u>, 49 Cal. 4th 35.  Mot. Summ. J. 22-25; Reply Mot. Summ. J. 3.  In that case, the California Supreme Court held that two produce merchants were not joint employers of plaintiffs, who were seasonal agricultural workers directly employed by a strawberry farming operation.  <u>Id.</u> at 42-43.  The Court analyzed the employment relationship between plaintiffs and the produce merchants under the three tests for joint employment under California law, described above.  In concluding that the produce merchants were not plaintiffs' joint employers, the Court relied heavily on the fact that the strawberry farmer "alone . . . hired and fired plaintiffs, trained and supervised them, determined their rate and manner of pay (hourly or piece rate), and set their hours, telling them when and where to report to work and when to take breaks."  <u>Id.</u> at 72.  The Court noted that the produce merchants' representatives would explain to the strawberry farmer and his foremen how the strawberries should be packed, and conducted

---

[5] The Court acknowledges that the definitions of employer under California law are distinct from the definition under the FLSA, and the California definition does not incorporate the FLSA definition.  <u>Martinez</u>, 49 Cal. 4th at 59.  Nonetheless, the same evidence is relevant to both inquiries.  <u>Guerrero v. Superior Court</u>, 213 Cal. App. 4th 912, 949-50 (2013) (analyzing the asserted joint employer's control over hiring and firing, wages, and job tasks); <u>see also Rios v. Airborne Express, Inc.</u>, 2006 WL 2067847, *2 (N.D. Cal. July 24, 2006) (noting the "similarities underlying the FLSA" and California labor laws).  Moreover, the California Court of Appeal has suggested that the joint employer standard under California law should be given a broader interpretation than the federal standard.  <u>See Guerrero</u>, 213 Cal. App. 4th at 945 (referring to the "narrower federal standard govern[ing] the definition of employer").  Therefore, a finding of genuine factual disputes underlying the FLSA joint employer analysis would support the same finding under California law.  <u>See id.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-8557-CAS(DTBx) | Date | January 14, 2014 |
|---|---|---|---|
| Title | EVERARDO CARRILLO, ET AL. V. SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC., ET AL. | | |

quality control inspections of plaintiffs' work. Id. at 75-76. However, the Court found that this type of oversight did not rise to the level of supervision or the actual exercise of control over the plaintiff employees. Id. at 76.

While the Court acknowledges that some similarities exist between Walmart's role in this case and the produce merchants in Martinez, the Court is nonetheless unpersuaded that summary judgment is appropriate here. Unlike in Martinez, the evidence in this case indicates a genuine factual dispute as to the degree of Walmart's influence over plaintiffs' work schedules, and whether they were compensated hourly or on an incentive basis. Furthermore, unlike in this case, the produce merchants in Martinez do not appear to have played any role in imposing screening requirements on the strawberry farmer's employees. Rather, the strawberry farmer had complete control over whom he chose to hire. Id. at 72. Finally, the strawberry farmer in Martinez leased two of the farming sites from one of the defendant produce merchants, and another site from an unidentified third party. Id. at 43. The farmer also owned all of the equipment that was used in the operation. Id. Here, by contrast, Walmart owns or leases the premises, and, to the extent that plaintiffs use equipment to perform their jobs, owns that as well. The Court concludes that these distinctions indicate that Walmart's degree of control over plaintiffs may have been substantially greater than the produce merchants' control over the Martinez plaintiffs. Accordingly, the Court finds that summary judgment as to joint employer liability under California law is unwarranted.

**V.    CONCLUSION**

In accordance with the foregoing, the Court hereby DENIES defendant Walmart's motion for partial summary judgment.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |