**McGuireWoods LLP**
Matthew C. Kane (SBN 171829)
    Email:  mkane@mcguirewoods.com
Michael D. Mandel (SBN 216934)
    Email:  mmandel@mcguirewoods.com
Sabrina A. Beldner (SBN 221918)
    Email:  sbeldner@mcguirewoods.com
John A. Van Hook (SBN 205067)
    Email:  jvanhook@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA  90067-1501
Telephone:  310.315.8200
Facsimile:   310.315.8210

Attorneys for Defendant SCHNEIDER LOGISTICS
TRANSLOADING AND DISTRIBUTION, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERARDO CARRILLO, *et al.*, for themselves and all others similarly situated and the general public,<br><br>        Plaintiffs,<br><br>    vs.<br><br>SCHNEIDER LOGISTICS, INC., *et al.*,<br><br>        Defendants. | CASE NO. 2:11-cv-08557 CAS (DTBx)<br><br>**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT PURSUANT TO CLASS ACTION FAIRNESS ACT, 28 U.S.C. § 1715** |

66358024.1

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
# PURSUANT TO CLASS ACTION FAIRNESS ACT, 28 U.S.C. § 1715

**NOTICE IS HEREBY GIVEN** that, on April 13, 2015, a proposed class action settlement was filed in the United States District Court, Central District of California, in the above-captioned action.  The class action claims are alleged by and on behalf of California residents under the California labor laws.  Defendant Schneider Logistics Transloading and Distribution, Inc., on behalf of itself and no other parties, provides this notice and the attached documents pursuant to 28 U.S.C. § 1715(b).

Exhibit 1:   Plaintiff's Notice of Motion and Motion for Preliminary Settlement Approval (Dkt. #611 and 611-1).

Exhibit 2:   The Declaration of Michael Rubin in Support of the Motion for Preliminary Settlement Approval (Dkt. #611-2).

Exhibit 3:   The Proposed Order on the Motion for Preliminary Settlement Approval and Exhibit A thereto which consists of a copy of the Settlement Agreement and Exhibits A (proposed Claim Form) and B (proposed Notice to Class of Proposed Settlement) to the Settlement Agreement.  (Dkt. #611-3 and #611-4).

Exhibit 4:   The operative Third Amended Complaint (Dkt. #378 and #378-1).

**PLEASE TAKE FURTHER NOTICE** that all previous and future filings in the above-captioned action are or will be available through the Internet on the Court's CM/ECF system using a PACER account – *see* https://ecf.cacd.uscourts.gov/cgi-

1    bin/login.pl and https://www.pacer.gov/psco/cgi-bin/regform.pl.

2

3      **PLEASE TAKE FURTHER NOTICE** that all of the class members were or

4    are residents of California at all times relevant to the class action claims being settled.

5

6      **PLEASE TAKE FURTHER NOTICE** that the preliminary approval hearing

7    on the proposed class action settlement is presently set for May 4, 2015 at 10:00 a.m.

8    in Courtroom 5 of the United States District Court for the Central District of

9    California, located at 312 North Sprint Street, Los Angeles, California 90012,

10    pursuant to a court-approved stipulation of the parties to advance the hearing from the

11    originally-noticed hearing date of May 11, 2015.

12

13    DATED: April 17, 2015      **McGuireWoods LLP**

14

15          By: _____

16            Matthew C. Kane, Esq.
            Michael D. Mandel, Esq.

17             Sabrina A. Beldner, Esq.
            John A. Van Hook, Esq.

18             Attorneys for Defendant SCHNEIDER
            LOGISTICS TRANSLOADING AND

19             DISTRIBUTION. INC.

20

21

22

23

24

25

26

27

28

2

NOTICE OF PROPOSED CLASS ACTION SETTLEMENT PURSUANT TO CLASS ACTION FAIRNESS ACT. 28 U.S.C. § 1715

THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
Traber & Voorhees
128 N. Fair Oaks Avenue, Suite 204
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com

MICHAEL RUBIN (SBN 80618)
JONATHAN WEISSGLASS
  (SBN 185008)
ERIC P. BROWN (SBN 284245)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
mrubin@altber.com
jweissglass@altber.com
ebrown@altber.com

SANDRA C. MUÑOZ (SBN 190404)
Law Offices of Sandra C. Muñoz
5429 E. Beverly Blvd.
Los Angeles, CA 90022
Telephone: (323) 720-9400
Facsimile: (323) 720-9090
scm4law@att.net

(Add'l counsel on next page)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EVERARDO CARRILLO, *et al.*, for themselves and all others similarly situated and the general public,

Plaintiffs,

v.

SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, INC.; PREMIER WAREHOUSING VENTURES, LLC; ROGERS-PREMIER UNLOADING SERVICES, LLC; IMPACT LOGISTICS, INC., WAL-MART STORES EAST, LP, and DOES 1-15, *et al.*,

Defendants.

Case No. CV 11-8557 CAS (DTBx)

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**

Date:         May 11, 2015
Time:        10:00 a.m.
Judge:      Hon. Christina A. Snyder

EXHIBIT 1

**Exh. 1**

1   Additional counsel for plaintiffs:

2

3   GUS T. MAY (SBN 159436)
    MATTHEW E. DECAROLIS (SBN 238595)
4   Bet Tzedek Legal Services
5   3250 Wilshire Blvd., 13th Floor
    Los Angeles, CA  90010
6   Telephone: (323) 939-0506
7   Facsimile: (213) 471-4568
    gmay@bettzedek.org
8   mdecarolis@bettzedek.org

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Motion and Motion for Preliminary Settlement Approval;
Case No. CV 11-8557 CAS (DTBx)

**EXHIBIT 1**

**Exh. 1**

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 11, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of the United States District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, California 90012, plaintiffs Everardo Carrillo et al. will and hereby do move this Court for an order preliminarily approving the third and final class action settlement in this matter, between plaintiffs (on their own behalf and on behalf of all similarly situated putative class member warehouse workers) and: 1) defendant Schneider Logistics Transloading and Distribution, Inc. ("Schneider"); and 2) defendant Wal-Mart Stores East, LP ("Walmart"). This Court previously granted final approval to the class action settlements between these same plaintiffs and the two labor services contractor defendants, Impact Logistics, Inc. ("Impact") and Premier Warehousing Ventures, LLC, and Rogers-Premier Unloading Services, LLC (collectively "Premier"). Dkt. #566.

Pursuant to F.R.C.P. 23, plaintiffs request that this Court:

1. Conditionally certify a settlement class comprised of the members of the previously certified Premier Class and Impact Class, *see* Dkt. 606 ¶9 (certifying Premier and Impact settlement classes), which include:

Premier Class: All non-exempt employees employed by Premier in any of the warehouses, buildings, or surrounding premises at 4100 and 4250 Hamner Avenue and/or 11900 Riverside Drive in Eastvale (formerly Mira Loma), California at any time from February 19, 2009 through February 24, 2012.

Impact Class: All non-exempt employees employed by Impact in any of the warehouses, buildings, or surrounding premises located at 4100 and 4250 Hamner Avenue, and/or 11900 Riverside Drive in Eastvale (formerly Mira Loma), California, at any time from 2001 through August 9, 2013.

2. Appoint plaintiffs Everardo Carrillo, Fernando Chavez, Eric Flores, and Jose Martinez Arceo as class representatives of the Premier Class and appoint

**EXHIBIT 1**

plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, and Jose Enrique Trujillo-Vergara as class representatives of the Impact Class;

3. Appoint Altshuler Berzon LLP, Traber & Voorhees, Bet Tzedek Legal Services, and Law Offices of Sandra Munoz as Class Counsel for the class;

4. Grant preliminary approval of the Settlement;

5. Approve the proposed forms of notice and proposed method of notice to plaintiffs and prospective class members in each class, including the proposed claim forms;

6. Appoint RG/2 Claims Administration LLC as the Claims Administrator; and

7. Schedule a hearing for final approval of the Settlement.

This motion is made on the grounds that the Settlement is the product of extended arms-length, good-faith negotiations, is fair and reasonable to the class, and warrants preliminary approval for the reasons set forth in the accompanying memorandum of points and authorities.

Plaintiffs' motion is based on this notice of motion and motion; the accompanying memorandum of points and authorities; the Settlement Agreement and exhibits (including the proposed Class Notices and the Claim Forms for class members who are not automatically eligible) attached to the accompanying Proposed Order; the Proposed Order: 1) certifying the settlement class, 2) granting preliminary approval to the proposed settlement and distribution plans, 3) directing notice to the class, and 4) setting a date for the Fairness Hearing and other matters; the accompanying declaration of Michael Rubin; the Court record in this action; all matters of which the Court may take notice; and such argument as the Court permits at the hearing on this motion.

Dated: April 13, 2015        Respectfully submitted,

MICHAEL RUBIN
JONATHAN WEISSGLASS

ERIC P. BROWN
Altshuler Berzon LLP

THERESA M. TRABER
LAUREN TEUKOLSKY
Traber & Voorhees

GUS T. MAY
MATTHEW E. DECAROLIS
Bet Tzedek Legal Services

SANDRA C. MUÑOZ
Law Offices of Sandra C. Muñoz

By:     /s Michael Rubin
          Michael Rubin

Attorneys for Plaintiffs

---

Notice of Motion and Motion for Preliminary Settlement Approval;
Case No. CV 11-8557 CAS (DTBx)

3

**EXHIBIT 1**

**Exh. 1**

THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
Traber & Voorhees
128 N. Fair Oaks Avenue, Suite 204
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com

MICHAEL RUBIN (SBN 80618)
JONATHAN WEISSGLASS
(SBN 185008)
ERIC P. BROWN (SBN 284245)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
mrubin@altber.com
jweissglass@altber.com
ebrown@altber.com

SANDRA C. MUÑOZ (SBN 190404)
Law Offices of Sandra C. Muñoz
5429 E. Beverly Blvd.
Los Angeles, CA 90022
Telephone: (323) 720-9400
Facsimile: (323) 720-9090
scm4law@att.net

(Add'l counsel on next page)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERARDO CARRILLO, *et al.*, for themselves and all others similarly situated and the general public, <br><br> Plaintiffs, <br><br> v. <br><br> SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, INC.; PREMIER WAREHOUSING VENTURES, LLC; ROGERS-PREMIER UNLOADING SERVICES, LLC; IMPACT LOGISTICS, INC., WAL-MART STORES EAST, LP, and DOES 1-15, *et al.*, <br><br> Defendants. | Case No. CV 11-8557 CAS (DTBx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY SETTLEMENT APPROVAL** <br><br> Date:     May 11, 2015 <br> Time:     10:00 a.m. <br> Judge:    Hon. Christina A. Snyder |

**EXHIBIT 1**

Additional counsel for plaintiffs:

GUS T. MAY (SBN 159436)
MATTHEW E. DECAROLIS (SBN 238595)
Bet Tzedek Legal Services
3250 Wilshire Blvd., 13th Floor
Los Angeles, CA  90010
Telephone: (323) 939-0506
Facsimile: (213) 471-4568
gmay@bettzedek.org
mdecarolis@bettzedek.org

# TABLE OF CONTENTS

I.      INTRODUCTION........................................................... 1

II.     FACTS AND CASE HISTORY............................................ 4

        A.      Summary of the Lawsuit and Procedural History. ................. 4

        B.      Discovery. ........................................................ 8

        C.      Settlement Discussions........................................... 8

III.    SETTLEMENT TERMS.................................................. 10

IV.     PROVISIONAL CLASS CERTIFICATION............................. 15

        A.      The Requirements of Rule 23(a) Are Satisfied. ................. 15

                1.      Rule 23(a)(1): Numerosity................................ 15

                2.      Rule 23(a)(2): Commonality.............................. 16

                3.      Rule 23(a)(3): Typicality................................ 17

                4.      Rule 23(a)(4): Adequacy of Representation.............. 17

        B.      The Requirements of Rule 23(b) Are Satisfied. ................. 18

                1.      Common Questions Predominate Over Any Individual
                        Issues.................................................... 18

                2.      Class Treatment is Superior to Individualized Actions....... 21

V.      THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED..... 21

VI.     PROPOSED SCHEDULING ORDER................................... 24

VII.    CONCLUSION.......................................................... 25

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*Abdullah v. U.S. Security Assocs., Inc.,*
  731 F.3d 952 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

4

5

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

6

*Barbosa v. Cargill Meat Solutions Corp.,*
  No. 1:11-cv-00275-SKO, 2013 WL 3340939 (E.D. Cal. Jul. 2, 2013). . . . . . . 21

7

*In re Bluetooth Headset Products Litigation,*
  654 F.3d 935 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

8

9

*Cervantez v. Celestica Corp.,*
  253 F.R.D. 562 (C.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

10

*Chu v. Wells Fargo Investments, LLC,*
  No. C05-4526, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011). . . . . . . . . . . . . . 12

11

12

*Churchill Village, LLC v. Gen. Elec.,*
  361 F.3d 566 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

13

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

14

15

*In re Corrugated Container Antitrust Litig.,*
  643 F.2d 195 (5th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

16

17

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

18

*Garcia v. Gordon Trucking, Inc.,*
  No. 1:10-cv-0324, 2012 WL 5364575 (N.D. Cal. Oct. 31, 2012). . . . . . . . . . . 12

19

20

*Gooch v. Life Investors Ins. Co. of Am.,*
  672 F.3d 402 (6th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

21

*Haley v. Medtronic, Inc.,*
  169 F.R.D. 643 (C.D. Cal. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

22

23

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18, 19, 20

24

*Jordan v. County of Los Angeles,*
  669 F.2d 1311 (9th Cir. 1982),
  *rev'd on other grounds,* 713 F.2d 503 (9th Cir. 1983). . . . . . . . . . . . . . . . . . 16

25

26

*Kamar v. Radio Shack Corp.,*
  254 F.R.D. 387 (C.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

27

*In re Literary Works,*
  654 F.3d 242 (2d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

28

1

2    *In re Live Concert Antitrust Litig.*,
     247 F.R.D. 98 (C.D. Cal. 2007)..................................... 17

3    *McClellan v. SFN Group, Inc.*,
     2012 WL 2367905 (N.D. Cal. June 21, 2012)........................... 17
4

5    *McNamara v. Bre-X Minerals Ltd.*,
     214 F.R.D. 424 (E.D. Tex. 2002)................................... 22

6    *In re Mercury Interactive Corp. Sec. Litig.*,
     618 F.3d 988 (9th Cir. 2010)....................................... 13
7

8    *Meyer v. Portfolio Recovery Assocs., LLC*,
     707 F.3d 1036 (9th Cir. 2012)..................................... 17

9    *Monterrubio v. Best Buy Stores, L.P.*,
     291 F.R.D. 443 (E.D. Cal. 2013).................................... 22
10

11   *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
     221 F.R.D. 523 (C.D. Cal. 2004).................................... 21

12   *In re Omnivision Tech., Inc.*,
     559 F. Supp. 2d 1036 (N.D. Cal. 2008)............................... 10
13

14   *In re Online DVD-Rental Antitrust Litigation*,
     _ F.3d __ (9th Cir. Feb. 27, 2015). ....................... 12, 13, 22, 23

15   *Rodriguez v. D.M. Camp & Sons*,
     2012 WL 6115651 (E.D. Cal. Dec. 7, 2012)............................ 16
16

17   *Rodriguez v. West Pub. Corp.*,
     563 F.3d 948 (9th Cir. 2009)....................................... 12

18   *Schwartz v. Dallas Cowboys Football Club, Ltd.*,
     157 F. Supp. 2d 561 (E.D. Pa. 2001)................................ 22
19

20   *Staton v. Boeing Co*,
     327 F.3d 938 (9th Cir. 2003)....................................... 20

21   *In re Tableware Antitrust Litig.*,
     484 F. Supp. 2d 1078 (N.D. Cal. 2007).............................. 22
22

23   *Tierno v. Rite Aid Corp.*,
     2006 WL 2535056 (N.D. Cal. Aug. 31, 2006)......................... 21

24   *Wal-Mart Stores, Inc. v. Dukes*,
     131 S. Ct. 2541 (2011)............................................ 16
25

26   *Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*,
     396 F.3d 96 (2d Cir. 2005)........................................ 20

27   *In re Wells Fargo Home Mortg. Overtime Pay Litigation*,
     527 F.Supp. 2d 1053 (N.D. Cal. 2007). ............................. 19
28

*Zinser v. Accufix Research Inst. Inc. Corp.*,
   253 F.3d. 1180 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**STATE CASES**

*Benton v. Telecom Network  Specialists, Inc.*,
   220 Cal.App.4th 701 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**DOCKETED CASES**

*Carrillo v. Schneider Logistics, Inc.*,
   9th Cir. Nos. 12-55042, 12-55386 (Mem. Disp. Dec. 28, 2012). . . . . . . . . . . . . . 5

*Carrillo v. Schneider Logistics, Inc.*,
   9th Cir. Nos. 12-55042, 12-55386 (April 21, 2014 Order). . . . . . . . . . . . . . . . . . 6

*Gould v. Motel 6 Inc.*,
   No. 2:09-cv-8157-CAS-FMO (C.D. Cal. May 25, 2013) (Dkt. 98-6). . . . . . . . . 11

*Hodge v. Cardinal Logistics Mgmt. Corp.*,
   No. 2:11-cv-8346-CAS-JCG (C.D. Cal. Apr. 13, 2012) (Dkt. 26-1). . . . . . . . . . 11

**FEDERAL STATUTES**

29 U.S.C. §216(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 24

**STATE STATUTES AND REGULATIONS**

California Business & Professions Code §17200. . . . . . . . . . . . . . . . . . . . . . . . . . 6

California Code of Civil Procedure §1021.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

California Labor Code
   §226(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   §2699(g)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**RULES**

Federal Rules of Civil Procedure
   Rule 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**MISCELLANEOUS**

California Wage Order No. 9-2001 §15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Manual for Complex Litig. (Third Ed.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Newberg on Class Actions (5th ed. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

7A Wright et al., Fed. Prac. & Proc. Civ. §1768 (3d ed. 2005-11 Supp.). . . . . . . . 18

# I. INTRODUCTION

Plaintiff warehouse workers, on behalf of the class of 2,327 similarly situated individuals who are or were employed in three Walmart-owned Inland Empire warehouses, request preliminary approval of their $21 million class action settlement with defendants Schneider Logistics Transloading and Distribution, Inc. ("Schneider") and Wal-Mart Stores East, LP ("Walmart") (collectively "Settling Defendants").  This settlement is in addition to plaintiffs' $700,000 class action settlement with Impact Logistics, Inc. ("Impact") and $1 million class action settlement with Premier Warehousing Ventures, LLC, and Rogers-Premier Unloading Services, LLC (collectively "Premier"), which this Court approved on September 22, 2014.  Dkt. 606.

A copy of the parties' Settlement Agreement is attached to the Proposed Order Granting Preliminary Approval as Exhibit A.  The proposed Class Notices and Claim Forms are included as exhibits to that Settlement Agreement.[1]

Plaintiffs' settlement with Schneider and Walmart is the product of many months of extensive arm's-length negotiations that continued even after the parties reached agreement on the major deal points in April 2014 and executed a Memorandum of Understanding with the assistance of mediator David Rotman. Declaration of Michael Rubin ¶¶16-17.  The settlement resolves all remaining state and federal claims of the plaintiffs, who worked at various times since 2001 in the three designated warehouses owned or leased by Walmart (which have been operated since 2006 by Schneider).  Of the 2,327 settlement class members, 379 filed claims in the prior settlements with Impact and Premier.  *Id.* ¶10.

Part of the new settlement amount is guaranteed and part will be paid only if the value of the submitted claims exceeds the guaranteed amount.  Of the $21 million

---

[1]  The Settlement Agreement has been executed by counsel for all parties, representatives of defendants Schneider and Walmart, and six of the eight named class representatives.  The remaining two class representatives have received copies of the settlement agreement and are reviewing it with their separate counsel.

1    total, approximately $13.8 million is allocated for class member payments (of which

2    45% is guaranteed); $150,000 is allocated for payment to the California Labor &

3    Workforce Development Agency ("LWDA") under PAGA, the Labor Code Private

4    Attorney General Act; $40,000 is allocated for service payments to the eight named

5    plaintiffs ($5,000 each); $32,000 is allocated for the expenses and fees of the Claims

6    Administrator (RG2 Claims Administration LLC) which submitted a capped bid that

7    the parties accepted after competitive bidding; $210,000 is allocated to class counsel

8    expenses; and $6,930,000 is allocated to class counsel fees – all subject to court

9    approval.  Rubin Decl. ¶21; Settlement ¶¶II.5, II.19, III.1-10.  Based on the Plan of

10   Distribution in ¶II.10 and ¶V.1 of the Settlement (which, like the Impact and Premier

11   settlements, is based on a point-based distribution formula that gives greater weight

12   to time periods when the class members' claims have higher values), several class

13   members are entitled to recover more than $80,000 from this settlement, in addition

14   to their prior share of the Impact or Premier settlements.  Rubin Decl. ¶21.  Notices

15   will be sent to all 2,327 identifiable class members, though, who will have 90 days

16   from the date of mailing to decide whether to participate.  Settlement ¶IV.3(e).

17          There are two proposed Class Notices.  *Id.* Ex. B.  All class members who are

18   *former* employees will receive a personalized notice informing them of their rights

19   and obligations under the settlement, the minimum settlement payment they are

20   entitled to receive (based on records showing the number of workweeks that

21   individual class member was employed during each relevant time period as set forth

22   in the Distribution Plan), and how to file a claim.  *Id.* ¶IV.3 & Ex. B.  All class

23   members who are *current* employees as of the date of preliminary approval and who

24   were employed in the Mira Loma warehouses on April 30, 2014 (when the MOU

25   was executed) will receive a similar personalized notice, which will also explain the

26   settlement terms and designate the individual class member's minimum settlement

27   payment.  The notice to these current employees will explain that they will receive

28   their settlement payment automatically without having to submit a Claim Form – a

provision that will help to ensure that no current employees will be dissuaded from

participating in the settlement by concerns about potential retaliation.  *See id.*[2/]

The Class Notices and Claim Forms will be translated into Spanish and will be

mailed to each class member's last known address (using updated addresses from

the Impact and Premier claims administration process).  Additional procedures will

be used to ensure delivery to the greatest possible number of class members,

including standard follow-up and skip tracing.  Settlement ¶IV.3.  Class counsel may

supplement the mailed notice through alternative forms of notice (*e.g.*, telephone

calls, flyers, meetings, radio ads) to encourage the greatest possible participation, as

they did with respect to the court-ordered *Hoffmann-LaRoche* FLSA notice in 2012

and the Premier and Impact class notices in 2014.  *Id.* ¶IV.3(h).

This Court previously certified for purposes of settlement the two classes of

Impact employees and Premier employees that now comprise the proposed

settlement class.  Dkt. 606 ¶9.  In its prior order, the Court found that:  (1) the

members of the Premier and Impact settlement classes were ascertainable and so

numerous that joinder was impracticable, (2) questions of law or fact common to the

classes (all of which are present here) predominated over any individual issues, (3)

the claims of the class representatives (the same individuals who seek approval as

representatives for this settlement class) were typical, (4) each class representative

fairly and adequately protected the interests of the members of the classes, (5) a class

action was superior to other available methods for an efficient adjudication of the

controversy, and (6) counsel of record were qualified to serve as class counsel.  *Id.*

---

[2/]   The notices sent to the small number of current employees who (1) did not participate in the Impact or Premier settlements, (2) did not previously file an FLSA Consent to Sue in this lawsuit, and (3) worked for Schneider between October 11, 2008 and December 31, 2011, will explain that a Claim Form must be submitted to receive the additional designated FLSA payment for those weeks, although all other payments to that class member will be made automatically if that employee does not opt out.  Settlement ¶IV.4.  This provision ensures that no class member will be deemed to have released any FLSA claims without having filed a Consent-to-Sue form under 29 U.S.C. §216(b).

1   ¶10.  Because the class and claims at issue in this settlement agreement are

2   substantially identical to those at issue in the Premier and Impact settlements,

3   provisional class certification is also appropriate here.

4        For these reasons and those set forth below, plaintiffs respectfully request that

5   the Court grant preliminary approval, provisionally certify the class as described

6   herein, approve the class notices, and set a schedule for final approval.

## II.  FACTS AND CASE HISTORY

### A.    Summary of the Lawsuit and Procedural History

9        Plaintiffs are low-wage workers who loaded and unloaded trucks, often for 12

10  or more hours per day, seven days per week, in three Walmart warehouses operated

11  by defendant Schneider in Mira Loma (now Eastvale), California.  Plaintiffs filed

12  this lawsuit on October 17, 2011, after more than a year of investigation and legal

13  research by class counsel.  Rubin Decl. ¶3.  Plaintiffs initially sued only Impact and

14  Premier (the labor services contractors who supplied the workers) and Schneider

15  (since 2006, the warehouse operator), but later added Walmart, the exclusive

16  customer and owner/lessor of the warehouses, as an additional defendant.  Dkt. 414.

17       On October 31, 2011, this Court issued the first injunction in this case, a TRO

18  against Premier and Impact, based on plaintiffs' showing "that defendants do not

19  accurately record when [plaintiffs] report to work, the times at which they actually

20  begin and end work, their total hours of work, meal periods, or split shift intervals,

21  and that defendants do not compensate employees for all hours worked or provide

22  the required reporting time pay."  Dkt. 43 at 5.  The Court found, after reviewing the

23  evidence, that defendants "have not been keeping the required . . . records, . . . have

24  not been making those records available to employees to inspect [and have] rejected

25  the requests of several employees to obtain such information and retaliated or

26  threatened retaliation against employees who make such requests," and concluded

27  based on those facts that plaintiffs were "likely to prevail on their recordkeeping,

28  minimum wage, and reporting time claims."  *Id.* at 5-6.

On December 7, 2011, after considering additional evidence concerning defendant Schneider's liability as plaintiffs' joint employer, the Court extended the TRO by entering a preliminary injunction against Premier, Impact and Schneider, which extended the TRO and required defendants to begin using an electronic system to record plaintiffs' hours.  Dkt. 106.  As a result of that TRO and injunction, Impact abandoned its prior unlawful "piece rate" payment scheme and began paying class members on an hourly basis, with overtime (although defendants did not at that time come into full compliance with their legal obligations, including the basic obligation to pay for *all* time worked).  As a result, class members began to receive greater compensation for the hours they worked and, just as important, became able to document the many ways in which their state and federal employment law rights had been, and continued to be, violated.  Rubin Decl. ¶6.

On November 18, 2011, all class members who were then employed by Premier (and jointly employed by Schneider, according to plaintiffs) were informed that their jobs in the Walmart warehouses would be terminated on February 24, 2012.  Plaintiffs promptly sought a second preliminary injunction on behalf of that subclass of approximately 100 workers, contending that the planned mass terminations by Premier and Schneider were retaliatory.  Dkt. 92 at 1-2 & n.1; Dkt. 117.  The Court agreed, and on February 2, 2012 provisionally certified that subclass and enjoined Premier and Schneider from implementing the planned terminations.  Dkt. 186.  Schneider appealed that injunction and the prior record-keeping injunction.  The Ninth Circuit affirmed both injunctions, concluding among other things that plaintiffs had established a probability of success on the merits of their joint employer allegations.  *Carrillo v. Schneider Logistics, Inc.*, 9th Cir. Nos. 12-55042, 12-55386 (Mem. Disp. Dec. 28, 2012).[3]

---

[3]  The Ninth Circuit also awarded appellate attorneys' fees to class counsel, because the injunctions rested upon state and federal statutes with fee-shifting

(continued...)

As a consequence of this second injunction (and a third injunction the Court later issued to prevent Schneider and Premier from requiring the members of that protected subclass to re-establish their lawful immigration status and undergo additional background checks), approximately 100 class members gained job security and a substantial wage increase to $12.75 per hour (compared, in many cases, to prior payments that were less than the minimum wage).  Rubin Decl. ¶9; Dkt. 231 at 3.  Thus, well before the Impact and Premier settlements or the present settlement, many class members who were employed during the pendency of this litigation obtained substantial benefits, economic and otherwise, from this litigation.

On February 1, 2012, in the same order that enjoined Premier's and Schneider's mass retaliatory termination, the Court conditionally certified plaintiffs' minimum wage and overtime claims under the FLSA and ordered notice sent at defendants' expense to all current and former warehouse workers employed in the Mira Loma warehouses by Impact beginning in 2001 and by Premier beginning in 2009 (the dates those two companies began supplying workers to those Walmart-owned warehouses).  Dkt. 186 at 19-23; Dkt. 129 at 4; Dkt. 186 at 27; Dkt. 155 at 12-13.[4/]  The Court authorized class counsel to supplement the FLSA notice by

---

[3/]  (...continued)
provisions for prevailing plaintiffs. *Carrillo v. Schneider Logistics, Inc.*, 9th Cir. Nos. 12-55042, 12-55386 (April 21, 2014 Order).  Schneider never paid those fees, in the amount of $178,000.98, but has agreed to pay them (without interest) within 10 days after the filing of this motion. *See* Settlement ¶III.19.

[4/]  The Court equitably tolled the FLSA limitations period to the dates when each defendant began operating in the Mira Loma warehouses  – thus extending the limitations well beyond the four years permitted under Cal. Bus. & Prof. Code §17200 and beyond the two or three years permitted under the FLSA, based on "substantial evidence that defendants' misconduct has prevented workers from obtaining the information necessary to determine whether their rights under the FLSA were violated." Dkt. 186 at 27; *see also* Dkt. 43 at 3-6.  Given the transient nature of the plaintiff class, *see* Dkt. 186 at 25, a substantial number of class members can no longer be located, particular those who ceased working in the Mira Loma warehouses more than 10 years ago, which is likely why almost 80% of the workers who participated in the Impact and Premier settlements were employed in
(continued...)

---

EXHIBIT 1

1  "alternative" means, including flyers, radio ads, church and community meetings,

2  etc.  Dkt. 186 at 23-25.  By the end of the initial opt-in period in November 2012,

3  270 class members had filed FLSA Consent to Sue Forms under 29 U.S.C. §216(b).[5/]

4      Plaintiffs subsequently filed the operative Third Amended Complaint ("3AC")

5  against Premier, Impact, Schneider, and Walmart, alleging: (1) violation of the FLSA

6  minimum wage, overtime, recordkeeping and retaliation provisions; (2) violation of

7  California overtime provisions; (3) violation of California minimum wage

8  provisions; (4) violation of California meal period provisions; (5) violation of

9  California rest period provisions; (6) violation of California reporting time pay

10  provisions; (7) violation of California recordkeeping provisions; (8) violation of

11  California itemized wage statement provisions; (9) violation of California retaliation

12  provisions; (10) waiting time penalties; (11) payment of secret wages; (12)

13  fraudulent misrepresentation; (13) unlawful deductions from employee paychecks

14  and compelled purchases (not against Impact); (14) negligence (against Walmart);

15  (15) PAGA penalties, including for excessive heat; (16) unfair business practices;

16  and (17) declaratory judgment.  The 3AC alleged that Schneider was jointly and

17  severally liable for all of the alleged violations under theories of joint employer

18  liability and common law theories of shared liability.  Dkt. 378 ¶¶95-110.  The 3AC

19  also alleged that defendant Walmart was jointly and severally liable under each of

20

21

22      [4/]  (...continued)

23  the warehouse on or after January 1, 2008.  All class members are covered by the
current settlement, though, and a renewed effort will be made to track down as many
class members as possible given the substantial recoveries available to them.

24

25      [5/]  A second court-approved opportunity to opt into the FLSA portion of this

26  lawsuit was provided  to class members in conjunction with the Impact and Premier
settlements, which provided that any class member who filed a Claim Form in those
settlements would thereby be opting in for purposes of the FLSA.  Dkt. 517-22

27  §16.c; Dkt. 517-23 §14.c.  A similar provision is included in the proposed settlement,
so every class member will have a renewed opportunity to obtain an additional

28  payment for FLSA claims during workweeks between October 2008 and December
2011.  Settlement ¶III.13.

1   those same theories, *id.*, and for negligent selection, hiring, retention, supervision

2   and/or control of Schneider and the two labor services contractors. *Id.* ¶¶111-17.

3        Schneider and Walmart denied liability and continue to deny liability. *Id.*

4   ¶¶I.6, I.8, 8; VI.1.  However, this Court denied Walmart's motion to dismiss

5   plaintiffs' negligence claims, concluding that Walmart owed a "duty of care" to

6   plaintiff warehouse workers and that plaintiffs had sufficiently alleged negligent

7   breach of that duty.  Dkt. 414.  After months of discovery focused on Schneider's

8   and Walmart's status as plaintiffs' "joint employers" under state and federal law, the

9   Court also denied Schneider's and Walmart's motions for summary judgment,

10  concluding that plaintiffs had presented sufficient evidence of joint employer

11  liability to proceed to trial against all defendants.  Dkt. 512, 513.

12  **B.   Discovery**

13       The parties conducted extensive discovery into the merits of plaintiffs' claims,

14  class certification issues, and Walmart's and Schneider's potential liability as

15  plaintiffs' "joint employers" and other theories.  By the time summary judgment was

16  denied, the parties had taken the depositions of more than 60 individuals, including

17  several multiple-day depositions of managers for Walmart, Schneider, Impact and

18  Premier, and all of the named plaintiffs.  Dkt. 517-2 ¶3.  The parties had also

19  exchanged significant written discovery.  Over the course of this litigation,

20  defendants produced hundreds of thousands of pages of documents, including

21  payroll and time records for the plaintiff classes (although the time records are of

22  limited value because, as described below, both the Premier and Impact supervisors

23  admitted they were falsified in many respects).  Rubin Decl. ¶14.

24  **C.   Settlement Discussions**

25       After several rounds of mediation and subsequent settlement discussions

26  among counsel, plaintiffs reached settlement agreements with defendants Premier

27  and Impact, which were executed in late 2013 and early 2014.  Dkts. 517-22, 517-23.

28  The Court granted preliminary approval of the Premier and Impact settlements on

March 24, 2014.  Dkt. 570.  After notice was provided to class members and a fairness hearing held, the Court granted final approval of the Premier and Impact settlements on September 22, 2014.  Dkt. 606.

In September 2013, plaintiffs and Schneider participated in a full-day mediation before Ninth Circuit mediator Margaret Corrigan.  (Although the only issue pending in the Ninth Circuit at that point was the amount of appellate fees Schneider would be required to pay plaintiffs' counsel, the parties agreed to mediate all issues in the underlying case as well).  That mediation ended with the parties far apart.  Rubin Decl. ¶16.

In the spring of 2014, shortly after plaintiffs filed their motion for class certification, *see* Dkt. 535, the parties again tried to mediate, this time with David Rotman in San Francisco.  The parties conducted an initial mediation on April 17, 2014.  Although significant issues remained, the parties agreed to conduct a second mediation on April 30, 2014.  That second mediation resulted in a settlement in principle that the parties memorialized in a Memorandum of Understanding.  The parties then sought a stay from this Court as to all litigation between them so the parties would be able to prepare and execute a formal, written settlement agreement.  Dkt. 578.  On May 25, 2014, the Court issued the requested stay.  Dkt. 579.

Unfortunately, several details of the parties' agreement had not been sufficiently resolved during the mediation, and counsel for the settling parties had materially different perspectives on certain issues that needed to be resolved.  Months of protracted negotiations ensued, both two-way (between plaintiffs and Schneider, and plaintiffs and Walmart) and three-way (among all settling parties).  At one point, when it seemed the parties would be unable to resolve the remaining differences, plaintiffs sought the Court's assistance in resolving a particularly contentious issue.  Dkt. 593 (plaintiffs' request for status conference); Dkt. 600 (minutes of status conference).  Eventually, in mid-March 2014, nearly a year after

1   the final day of mediation, the parties reached final agreement on the Settlement

2   Agreement and exhibits submitted hereto.  Rubin Decl. ¶¶16-17.

3        Plaintiffs' counsel believe that the settlement is fair, reasonable, and adequate

4   and in the best interests of plaintiff class members.  Rubin Decl. ¶19.  The settlement

5   guarantees a substantial recovery for the class, while reflecting the risks and

6   uncertainties of litigation as well as the anticipated difficulties in tracking down all

7   class members, particularly from the early years of the class period.

8                            **III.  SETTLEMENT TERMS**

9        The settlement establishes a $21 million settlement fund, which will be used to

10  pay: (1) class members who submit valid claim forms or who are automatically

11  eligible to receive payments as current employees (from April 30, 2014 to present);

12  (2) service payments to the named plaintiffs, (3) civil penalties to the LWDA, (4)

13  plaintiffs' attorneys' fees and costs, (5) the costs of claims administration, and (6)

14  Schneider's share of employment taxes on the settlement payments to class members.

15  Settlement ¶III.1.  The Settlement Agreement states that all settlement funds will be

16  paid by Schneider, not Walmart.  *Id*.  However, the released claims include the class

17  members' potential claims against Walmart as well, including claims that arose

18  between 2001 and 2005, before Schneider began operating Walmart's Mira Loma

19  warehouses.  *Id*. ¶III.12; *see also id*. ¶III.15 (preserving the settling defendants'

20  rights against each other, Premier, and Impact).

21       The Plan of Distribution provides that payments to class members will be

22  calculated based on the number of weeks each class member worked during five

23  designated time periods multiplied by a number of "points" assigned to each period

24  that is based on a rough approximation of the value of the claims that arose during

25  those periods.  Settlement ¶¶III.8, V.1; *see In re Omnivision Tech., Inc.*, 559 F. Supp.

26  2d 1036, 1045 (N.D. Cal. 2008).

27       Payments to class members who have been employed in the Mira Loma

28  warehouses since at least April 30, 2014 and are still employed as of the preliminary

---

1  approval date are automatic.  Those class members will be paid their full settlement

2  shares without having to file a claim form (except for payments attributable to their

3  FLSA claims, which require the class members to file a claim *unless* they

4  participated in the Premier or Impact settlements or previously filed a Consent to

5  Sue).  Settlement ¶¶II.8, IV.4.  All other class members must file a claim form to

6  obtain their share of the settlement proceeds.

7        Approximately $13.8 million is available for direct payments to the class

8  members under the settlement (assuming the Court does not disallow or reduce any

9  other component of the settlement, as further discussed below), the $150,000 PAGA

10  payment to the LWDA, and the $5,000 each service payments to the eight named

11  plaintiffs.  *Id.* ¶¶II.19, III.1, III.6, III.7.  Of that amount 45% is guaranteed, meaning

12  that if the value of all class member claims (filed and automatic) plus service

13  payments and LWDA payment totals less than 45% of the net settlement fund, each

14  participating class member's share will increase on a pro rata basis until the

15  guaranteed amount is paid.  *Id.* ¶¶III.7, V.3.  Beyond that guaranteed percentage, the

16  amount of settlement funds that will be paid directly to class members will depend

17  on the value of the actual claims made plus the value of the automatic claims, up to

18  the full value of the Net Settlement Fund ($21 million minus the Claims

19  Administrator fee and Class Counsel fees and costs).  *Id.* ¶¶II.19, III.7.[6]

20        The parties cannot accurately predict how much of the approximately $13.8

21  million available for class member payments will actually be claimed.  However, the

22  Plan of Distribution provides that the class members with the highest valued claims

23  will be those who worked for several years recently (who are the class members most

24  likely to be known to Class Counsel or otherwise most easily traceable).  *See id.*

25  ¶V.1.  Although the settling defendants reserved the right to terminate the

26

27  _____

    [6]  This Court approved similarly structured settlement agreements in *Gould v. Motel 6 Inc.*, No. 2:09-cv-8157-CAS-FMO (C.D. Cal. May 25, 2013) (Dkt. 98-6),

28  and *Hodge v. Cardinal Logistics Mgmt. Corp.*, No. 2:11-cv-8346-CAS-JCG (C.D. Cal. Apr. 13, 2012) (Dkt. 26-1).

1   Settlement Agreement if 10% or more of the Class Members opt out of the

2   settlement, all parties have agreed to use their best efforts to effectuate the terms and

3   conditions of this settlement and to use reasonable means to "maximize the

4   probability that all Class Members shall receive the Class Notices and Claim Forms."

5   Settlement ¶¶IV.3(a), IV.7, V.8, VI.2.

6        The guaranteed portion of the net settlement amount includes two components

7   in addition to direct payments to the class members as a whole.  First, the Settlement

8   Agreement authorizes plaintiffs to apply to the Court for an award of $5,000 to each

9   of the four Premier named plaintiffs and former named plaintiff Baltazar Zavala, and

10  to each of the four Impact named plaintiffs, for services rendered to their respective

11  classes.  *See id*. ¶¶II.10, III.2.  These amounts reflect the considerable time and effort

12  these workers expended on behalf of the classes, including by participating in many

13  discussions with class counsel, providing declarations, appearing for deposition, and

14  assisting with other discovery.  Rubin Decl. ¶20.  Such "awards are fairly typical in

15  class action cases."  *Rodriguez v. West Pub. Corp*., 563 F.3d 948, 958-59 (9th Cir.

16  2009); *In re Online DVD-Rental Antitrust Litigation*, _ F.3d __ No. 12-15705, Slip

17  Op. at 16-17, 25-26 (9th Cir. Feb. 27, 2015).  Second, the Settlement Agreement

18  designates a $150,000 civil penalty to be paid to the LWDA for PAGA claims.

19  Settlement ¶III.4; *see Garcia v. Gordon Trucking, Inc*., No. 1:10-cv-0324, 2012 WL

20  5364575, at *7 (N.D. Cal. Oct. 31, 2012); *Chu v. Wells Fargo Investments, LLC*, No.

21  C05-4526, 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011).  If the Court awards or

22  approves less than these amounts for service payments or LWDA payments, the

23  difference will be added to the Net Settlement Fund and will supplement the amount

24  available for distribution to settlement class members (thereby increasing the

25  minimum guaranteed payment).  Settlement ¶¶II.19, III.6.

26       In addition to the payments described above, the Settlement Agreement

27  provides for a payment of up to $32,000 to the Claims Administrator, *id.* ¶III.5, and

28  payment of class counsel's attorneys' fees of up to 33% of the Gross Settlement

1  Amount ($6,930,000) and litigation expenses of up to $210,000. *Id.* ¶III.3. If the

2  Court disapproves or reduces any of those amounts in whole or in part, the difference

3  will be added to the Net Settlement Fund. *Id.*

4       Class counsels' lodestar fee is much greater than the common fund percentage

5  amount requested and will be documented in a motion for fees and costs that class

6  counsel will submit before the deadline for objecting or opting out. *In re Mercury*

7  *Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010). The proposed class

8  notices explain to class members: (1) that class counsel are seeking fees and expenses

9  in the amounts stated above; (2) how class members may obtain a copy of the

10  upcoming fee motion (which, like all pertinent settlement documents, will be posted

11  to a website by the Claims Administrator, *see* Settlement ¶IV.3(b)); and (3) how class

12  members can opt out or object in whole or in part. *Id.* ¶IV.3; *see In re Online DVD-*

13  *Rental Antitrust Litigation*, Slip Op. at 23-24, 37-38.[7/] Although plaintiffs' counsel

14  are seeking a percentage of the total common fund, they are independently entitled to

15  statutory fees under the FLSA and several provisions of California law, including

16  C.C.P. §1021.5 and Labor Code §226(h) and §2699(g)(1).

17

18

19      [7/] Class counsel sought, and were awarded, only a small fraction of their total

20  lodestar attorneys' fees and expenses in connection with the Premier and Impact settlements. Dkts. 598, 606. Moreover, to expedite the payments to class members,

21  class counsel agreed to defer obtaining any fee from the structured Impact settlement until several years from now, after all class members have been paid in full. Dkt.

22  517-23, 608-09.

23      Although class counsel's fees will be based a percentage of the common fund,

24  that common fund reflects only the direct economic value of the settlement and does *not* include the considerable additional value to the plaintiff class, economic and

25  otherwise, of the TRO and three injunctions issued by this Court. Those injunctive orders, which class counsel devoted many hundreds of hours to obtaining and

26  successfully defending on appeal, provided substantial benefits to the class members, including by preserving the jobs of approximately 100 Premier-Schneider subclass

27  members for several years, at considerably higher pay than they previously received, and helping to ensure higher and more uniform wage payments to all class members

28  after October 2011 (when defendants were required to begin tracking time electronically and reporting it accurately).

1    The settlement agreement provides that within 15 days after preliminary

2    approval, the Claims Administrator – RG2, whose capped bid of $32,000 was

3    accepted by the parties after competitive bidding by several potential claims

4    administrators, Rubin Decl. ¶24 – will mail a notice and, where appropriate, a claim

5    form, to each class member.  Settlement ¶IV.3(d).  The notice will state the dates

6    worked by the recipient during the class period based on records available to the

7    parties and explains the mechanism for class members to challenge the accuracy of

8    those dates (although to the extent the participating class members previously

9    participated in the Premier or Impact settlements, any corrections to that information

10   have already been made).  *Id.* ¶IV.9 & Exs. A (Claim Forms), B (Notice).

11   Class members will have 90 days to submit a claim form (unless they are

12   automatically eligible, *id.* ¶I.8).  Late claims will be denied without a showing of

13   good cause.  *Id.* ¶¶IV.3(e), IV.4(c).  Class members who do not submit claims within

14   the first 45 days after notice is mailed will be sent a reminder.  *Id.* ¶IV.3(f).  Class

15   members will have 75 days from the postmarked date of notice to object or opt out.

16   *Id.* ¶IV.3(e).  All settlement documents will be translated into Spanish.  *Id.* ¶I.8.

17   Upon the Effective Date, all class members who have not opted out will be

18   deemed to have released Schneider and Walmart and their related entities from all

19   claims that were or could have been asserted in the 3AC based on the facts alleged –

20   except for FLSA claims, which are only released by class members who file or filed a

21   timely claim form or Consent to Sue.  *Id.* ¶¶III.12, III.13, III.14.  If no objections are

22   filed, the Effective Date will be the date of final approval.  If objections are filed and

23   overruled, the Effective Date will be when the time for any appeal or collateral attack

24   has expired or all such challenges have been finally resolved.  *Id.* ¶I.12.

25   Within 30 business days of the Effective Date, the Claims Administrator will

26   calculate the amount due each eligible class member, determine whether additional

27   payments are due to meet the guaranteed settlement amount, and issue checks to class

28   members.  *Id.* ¶V.3.  Any checks returned as undeliverable or not cashed within 90

1  days after issuance will be donated as a *cy pres* payment to Inland Counties Legal

2  Services and to the National Employment Law Project.  *Id*.

3  ### IV.  PROVISIONAL CLASS CERTIFICATION

4  When considering a request for certification of a settlement class, the Court

5  must first determine "whether the proposed settlement class satisfies the requirements

6  of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions,

7  namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of

8  representation."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998).

9  "[T]he parties seeking class certification must also show that the action is

10  maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)."  *Id*. at 1022.  Plaintiffs seek

11  provisional certification of a class comprised of the previously certified Premier and

12  Impact classes, which together comprise the settlement class.

13  Premier Class:  All non-exempt employees employed by Premier in any

14  of the warehouses, buildings, or surrounding premises at 4100 and 4250 Hamner

15  Avenue and/or 11900 Riverside Drive in Eastvale (formerly Mira Loma), California

16  at any time from February 19, 2009 through February 24, 2012.

17  Impact Class: All non-exempt employees employed by Impact in any of

18  the warehouses, buildings, or surrounding premises located at 4100 and 4250 Hamner

19  Avenue, and/or 11900 Riverside Drive in Eastvale (formerly Mira Loma), California,

20  at any time from 2001 through August 9, 2013.

21  For the same reasons this Court previously certified these two classes in

22  granting approval of the Premier and Impact settlements, *see* Dkts. 570, 606,

23  provisional certification of the combined class is now appropriate.

24  **A.    The Requirements of Rule 23(a) Are Satisfied**

25  **1.    Rule 23(a)(1): Numerosity**

26  Rule 23(a) requires that the class be so numerous that joinder of all members

27  would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  There are approximately 270

28  FLSA opt-ins, Premier's class list shows 269 workers, and Impact's class list shows

1    2060 workers.  Rubin Decl. ¶3.  Numerosity is satisfied.  *See Jordan v. County of Los*

2    *Angeles*, 669 F.2d 1311, 1319-20 (9th Cir. 1982), *rev'd on other grounds*, 713 F.2d

3    503 (9th Cir. 1983).

4        **2.**    **Rule 23(a)(2):  Commonality**

5        Rule 23(a) next requires that there be "questions of law or fact common to the

6    class."  Fed. R. Civ. P. 23(a)(2).  Commonality requires plaintiffs to demonstrate that

7    their claims "depend upon a common contention . . . [whose] truth or falsity will

8    resolve an issue that is central to the validity of each one of the claims in one stroke."

9    *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal quotation

10   marks and citations omitted); *Rodriguez v. D.M. Camp & Sons*, 2012 WL 6115651, at

11   *5 (E.D. Cal. Dec. 7, 2012) (granting preliminary approval).

12       Plaintiffs' claims against Schneider and Walmart present many common

13   questions capable of classwide resolution.  *See* 3AC ¶129 (listing common questions).

14   These include: (1) whether Walmart and/or Schneider were plaintiffs' joint employer,

15   (2) whether Walmart and/or Schneider acted as a co-conspirator, aider and abettor, or

16   principal in an agency relationship, so as to become liable for the alleged violations,

17   (3) whether the itemized wage statements provided to class members complied with

18   California law; (4) whether there were classwide practices of under-recording hours

19   worked; (5) whether there were classwide practices of failing to record or falsely

20   recording meal periods; (6) whether there was a failure to record hours spent on non-

21   piece rate tasks; (7) whether there was unlawful retaliation against class members;

22   and (8) whether the warehouse temperatures to which all class members were

23   subjected provided "reasonable comfort" as required by Wage Order No. 9-2001 §15.

24       Commonality is satisfied as long as a single common issue exists, *Cervantez v.*

25   *Celestica Corp.*, 253 F.R.D. 562, 570 (C.D. Cal. 2008); *Haley v. Medtronic, Inc.*, 169

26   F.R.D. 643, 648 (C.D. Cal. 1996), so *each* of these issues is independently sufficient

27   to establish commonality, as are each of the other issues alleged in the 3AC to be

28   common, classwide issues.  *Abdullah v. U.S. Security Assocs., Inc.*, 731 F.3d 952, 957

1  (9th Cir. 2013) (commonality "does not . . . mean that *every* question of law or fact

2  must be common to the class; all that Rule 23(a)(2) requires is a single *significant*

3  question of law or fact.") (emphasis in original) (citations and internal quotation

4  marks omitted); *McClellan v. SFN Group, Inc*., 2012 WL 2367905, at *4 (N.D. Cal.

5  June 21, 2012).  Here, plaintiffs have presented numerous, significant common

6  questions, and the commonality requirement is therefore satisfied.

7        **3.**    **Rule 23(a)(3):  Typicality**

8       Rule 23 also requires that the "claims or defenses of the representative parties

9  [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).

10  Typicality is met when "[p]laintiffs' situations share a common issue of law or fact,

11  and are sufficiently parallel to insure a vigorous and full presentation of all claims for

12  relief."  *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 117 (C.D. Cal. 2007)

13  (internal quotation marks and citation omitted); *see Meyer v. Portfolio Recovery*

14  *Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012).

15       Plaintiffs' claims are substantially similar to the claims of absent class

16  members, all of which arise from Schneider's and Walmart's common policies and

17  practices.  All plaintiffs and class members are low-wage, manual laborers hired to

18  load or unload the large trucks containing Walmart goods at the Mira Loma

19  warehouses operated by Schneider, where all class members worked.  Because the

20  factual and legal circumstances giving rise to all class members' claims are

21  substantially similar, the named plaintiffs have sufficient incentive to pursue those

22  claims on behalf of all class members, and the typicality requirement is satisfied.

23        **4.**    **Rule 23(a)(4):  Adequacy of Representation**

24       Rule 23 also requires that the class representatives fairly and adequately protect

25  the interests of the class.  Fed. R. Civ. P. 23(a)(4).  Adequacy is met where the class

26  representatives: (1) have common, not antagonistic, interests with unnamed class

27  members; and (2) will vigorously prosecute the interests of the class through qualified

28  counsel.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).  The law

---

1   governing adequacy is well-settled:  "[O]nly a conflict that goes to the very subject

2   matter of the litigation will defeat a party's claim of representative status."  7A

3   Wright et al., Fed. Prac. & Proc. Civ. §1768 at 389-90 (3d ed. 2005-11 Supp.).

4          The named class representatives have the same types of interests and suffered

5   the same types of injury as all other class members.  Rubin Decl. ¶20.  In addition, the

6   named plaintiffs have already provided significant, valuable assistance in the

7   investigation and prosecution of this matter, and helped to bring about the settlement

8   now before this Court.  *Id.*  They are therefore "adequate" class representatives within

9   the meaning of Rule 23(a)(4).  Plaintiffs' counsel are also "adequate" because they

10  have extensive experience in class action wage-and-hour litigation, and have

11  vigorously pursued these claims throughout the history of this litigation.  *Id.*

12  Accordingly, the designated plaintiffs should be appointed as class representatives for

13  their respective classes, and plaintiffs' counsel should be appointed as class counsel.

14  **B.     The Requirements of Rule 23(b) Are Satisfied**.

15         "To qualify for certification under [Rule 23(b)(3)], a class must satisfy two

16  conditions in addition to the Rule 23(a) prerequisites: common questions must

17  'predominate over any questions affecting only individual members,' and class

18  resolution must be 'superior to other available methods for the fair and efficient

19  adjudication of the controversy.'"  *Hanlon*, 150 F.3d at 1022 (quoting Fed. R. Civ. P.

20  23(b)(3)).  Those requirements are satisfied here, as they were when, in connection

21  with the Premier and Impact settlements, the court certified substantially identical

22  classes bringing the same claims.  *See* Dkts. 570, 606.

23         **1.     Common Questions Predominate Over Any Individual Issues**

24         The predominance inquiry "tests whether proposed classes are sufficiently

25  cohesive to warrant adjudication by representation," and focuses on the "relationship

26  between the common and individual issues."  *Hanlon*, 150 F.3d at 1022 (quotation

27  marks and citation omitted).  "When common questions present a significant aspect of

28  the case and they can be resolved for all members of the class in a single adjudication,

---

1 there is clear justification for handling the dispute on a representative rather than on

2 an individual basis." *Id.* (quotation marks and citation omitted).

3      "When the claim is that an employer's policy and practices violated labor law,

4 the key question for class certification is whether there is a consistent employer

5 practice that could be a basis for consistent liability." *Kamar v. Radio Shack Corp.*,

6 254 F.R.D. 387, 399 (C.D. Cal. 2008). Classes are often certified where "an

7 employer's uniform policy . . . is uniformly implemented, since in that situation

8 predominance is easily established." *Id.* (citing *In re Wells Fargo Home Mortg.*

9 *Overtime Pay Litigation*, 527 F.Supp. 2d 1053, 1071 (N.D. Cal. 2007)). Such

10 uniformity is not required to satisfy the "predominance" prong. "[T]he existence of

11 certain individualized or deviating facts will not preclude certification if most class

12 members were subjected to a company policy in a way that gives rise to consistent

13 liability or lack thereof." *Id.*

14      As explained above, this case involves a series of complicated and weighty

15 classwide issues that are common to all class members, including factual and legal

16 questions regarding Schneider's and Walmart's status as joint employers, questions

17 about defendants' agency relationships, aiding and abetting liability as between the

18 defendant companies, conspiracies between the defendants and their officers and

19 managers and the failure to institute sufficient procedures to verify that their

20 subcontractors complied with applicable law. In addition, plaintiffs contend that, to

21 the extent that either Schneider or Walmart is held to be a joint employer of plaintiffs,

22 each will be liable for all wage and hour violations. *See Benton v. Telecom Network*

23 *Specialists, Inc.,* 220 Cal.App.4th 701, 730-31 (2013) (issue whether joint employer

24 "fail[ed] to adopt procedures verifying that the staffing companies were in fact paying

25 the employees' overtime" predominated and supported certification).

26      Plaintiffs need only establish that *some* claims can be adjudicated on a

27 classwide basis to make provisional certification appropriate. As plaintiffs pointed

28 out with respect to the Premier and Impact settlements, the scope of a classwide

---

1  release may extend beyond the particular claims in dispute so long as: 1) the released

2  claims arise from the same series of facts, transactions, or occurrences; and 2) any

3  class member who chooses not to participate in the settlement may opt out without

4  being bound.[8]  Consequently, such a release can extend beyond any claims that have

5  been provisionally certified for settlement, as long as those same two conditions are

6  satisfied.  *Cf. Staton v. Boeing Co*, 327 F.3d 938, 952 (9th Cir. 2003) ("[It] is the

7  settlement taken as a whole, rather than the individual component parts, that must be

8  examined for overall fairness. . . .") (quoting *Hanlon*, 150 F.3d at 1026).  Moreover,

9  because the questions of whether Walmart and Schneider are joint employers under

10 federal and California law are overarching issues that are common to all class

11 members, *see* Dkts. 512, 513, there is an even stronger showing that common legal

12 and factual issues predominate here than there was with respect to the Premier and

13 Impact settlements that the Court approved.

14      As plaintiffs have previously shown, plaintiffs' recordkeeping and wage

15 statement claims present predominating. common questions that warrant provisional

16 class certification for purposes of settlement.  Several of plaintiffs' other claims –

17 specifically, for minimum wage violations, overtime violations, reporting time

18 violations, meal and rest break violations, split shift pay violations and payment of

19 secret wages – rest on the same facts as the recordkeeping and wage statement claims

20 and therefore would be properly included within the scope of the classwide releases

21 contained in the settlement agreements even if those claims did not were not

---

23  [8]  *See, e.g.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287-88 (9th
24  Cir. 1992) (allowing classwide release that included unpleaded claims because they
    arose "from the same common nucleus of operative fact"); *see also In re Literary
    Works*, 654 F.3d 242, 247-49 (2d Cir. 2011) (release of claims not alleged in
25  complaint permissible in class action settlement if all claims rest on same factual
26  predicate); *Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d 96, 106-08 (2d Cir.
    2005) ("Plaintiffs in a class action may release claims that were or could have been
27  pled [if] the release[d] claims . . . share the same integral facts as [the] settled claims
    [and] adequate representation of a particular claim is established . . . by showing an
28  alignment of interests between class members . . . ."); *In re Corrugated Container
    Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir. 1981) (same).

1  independently certifiable (which they are, for the reasons set forth in plaintiffs'

2  motion for class certification, Dkt. 551).  So too do classwide issues predominate with

3  respect to plaintiffs' claims for retaliation and excessive heat.  *Id.*  And the class

4  notices inform class members that all of these claims are included in the scope of the

5  releases and that all class members have the right to object or to opt out of the

6  settlement.  *See* Settlement Ex. B.

### 2.  Class Treatment is Superior to Individualized Actions

8  Rule 23(b)(3)'s second requirement is that "resolution of the issues on a class-

9  wide basis [be] superior to other methods available for the fair and efficient

10  adjudication of the controversy."  *Tierno v. Rite Aid Corp.*, 2006 WL 2535056, at *11

11  (N.D. Cal. Aug. 31, 2006).  This requirement is also satisfied.

12  In considering whether a class action is superior, the Court must focus on

13  whether "efficiency and economy" would be advanced by class treatment.  *Zinser v.*

14  *Accufix Research Inst. Inc. Corp.*, 253 F.3d. 1180, 1190 (9th Cir. 2001).  Here,

15  concentrating the adjudication of claims into a single proceeding is highly desirable

16  because individual claims could only be brought by claimants unlikely to be able to

17  afford to pursue them or who lack sufficient knowledge of their rights.  Even if those

18  individuals could bring separate lawsuits, having nearly identical lawsuits filed by

19  more than 2,300 individuals would be wasteful and inefficient.  *Id.* at 1190-91.  The

20  high cost of litigating these cases would dwarf any potential recovery for most

21  individual workers, most of whom would likely forgo vindicating their rights.  *Cf.*

22  *Barbosa v. Cargill Meat Solutions Corp.*, No. 1:11-cv-00275-SKO, 2013 WL

23  3340939, at *11 (E.D. Cal. Jul. 2, 2013).  Accordingly, certification is superior to any

24  other method of resolution, as it will promote economy, expediency, and efficiency.

### V.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

26  The Court's review of a class action settlement requires two steps.  *Nat'l Rural*

27  *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  First,

28  the Court must determine whether to grant preliminary approval, provisionally certify

the class and order class notice.  *Id.*  Second, it must hold a fairness hearing to assess if the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  A "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned."  *Class Plaintiffs*, 955 F.2d at 1276 (citations omitted).

At the preliminary stage, a settlement will be found presumptively fair if it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)); *accord Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454-55 (E.D. Cal. 2013).[2/]  The court should then direct notice to class members to inform them of their rights and of their opportunity to be heard at the Fairness Hearing, when "arguments and evidence may be presented in support of and in opposition to the settlement."  *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002); *In re Online DVD-Rental Antitrust Litigation*, Slip Op. at 23-24; 4 Newberg, §11.25 (quoting Manual for Complex Litig., Third, at 237).

The Parties negotiated the settlement in good faith and at arm's length.  Rubin Decl. ¶¶15-17.  Substantial discovery, investigation, and research over the past four years has enabled experienced class action counsel to assess the strengths and weaknesses of plaintiffs' claims and the benefits of the settlement.  Plaintiffs' counsel believe that the settlement is fair, reasonable, adequate and in the best interest of the

---

[2/]  The factors identified by the Ninth Circuit in *In re Bluetooth Headset Products Litigation*, 654 F.3d 935, 946-47 (9th Cir. 2011), also support preliminary approval of the settlement.  Class members will receive substantial monetary awards (in some cases, many tens of thousands of dollars), the amount that class counsel are permitted to seek in fees is within the range of fees commonly awarded in similar cases, each class members' settlement amount is calculated based on the full amount of the net settlement fund, and the settlement does not permit an unlimited reversion to defendants (as a substantial amount is guaranteed to be distributed to class members no matter how many claims are filed).

1    class members in light of all known facts and circumstances.  *Id.*  The settlement will

2    provide substantial recoveries to class members, including tens of thousands of

3    dollars for many of them, and will be allocated in a manner that roughly approximates

4    the proportional value of their individual claims.  Thus, the proposed settlement

5    readily satisfy the standards for preliminary approval.

6        Under Rule 23(e), the Court upon preliminary approval must "direct notice in a

7    reasonable manner to all class members who would be bound" by the proposed

8    settlement.  That notice must be the "best notice that is practicable under the

9    circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  Notice is satisfactory "if it generally

10   describes the terms of the settlement in sufficient detail to alert those with adverse

11   viewpoints to investigate and to come forward and be heard" and provides notice

12   "that the court will exclude from the class any member who requests exclusion."

13   *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *In re Online*

14   *DVD-Rental Antitrust Litigation*, Slip Op. at 23-24; *see also* Fed. R. Civ. P.

15   23(c)(2)(B)(v).  Such notice is reasonable if mailed to each member of a settlement

16   class "who can be identified through reasonable effort."  *Eisen v. Carlisle &*

17   *Jacquelin*, 417 U.S. 156, 176 (1974).

18       Here, the form and manner of the class notices and claims forms have been

19   negotiated and agreed upon by all counsel and will be translated into Spanish.  The

20   class notices will inform class members of, among other things: (1) the nature of this

21   action and the essential terms of the settlement; (2) the allocation of the settlement

22   funds, including an estimate of each class member's settlement share, the requests for

23   class representative service payments and for attorneys' fees and expenses, and the

24   administration costs that will be deducted from the settlement funds; (3) how to

25   participate, opt out, or object to the settlement; (4) this Court's procedures for final

26   approval; and (5) how to obtain additional information.  The class notices are written

27   to be as clear as possible.  The notices encourage class members to contact plaintiffs'

28   counsel with any questions, and indicate which plaintiffs' counsel are fluent in

Spanish.  Newberg on Class Actions §8.17 (5th ed. 2013); *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012).

The proposed delivery method and deadlines are also reasonable.  Within 15 business days after preliminary approval, the Claims Administrator will mail notices to class members at addresses provided to them by the Premier and Impact claims administrator, as updated by the settling parties.  Settlement ¶IV.3(d).  If a class member's address has changed and no forwarding address is available, the Claims Administrator will use electronic search procedures to obtain a current address.  *Id.* ¶IV.3(g).  Class members will have 90 days after the notice is mailed to consider the proposed settlement before the deadline for filing claim forms, and will have 75 days to object to the settlement or to request not to participate in the settlement.  *Id.* ¶IV.3(e).  For the reasons stated by this Court in previously giving prospective FLSA opt-in plaintiffs 180 days to file consent to sue forms pursuant to 29 U.S.C. §216(b), these time periods are fair and reasonable under the circumstances, since it may be difficult to track down many prospective class members.  *See* Dkt. 186 at 28.

## VI.  PROPOSED SCHEDULING ORDER

The following schedule sets forth a proposed sequence for the relevant dates and deadlines, assuming the Court preliminarily approves the Settlement.

| Event | Time Limits According to Agreement |
|---|---|
| Deadline to mail Class Notice | Within 15 calendar days after date of Preliminary Approval Order |
| Deadline for filing fees motion | At least 28 days before opt-out deadline |
| Deadline for requests not to participate | 75 days after the Class Notice is mailed |
| Deadline for filing Claim Forms | 90 days after the Class Notice is mailed |
| Deadline to file motion for named plaintiff service awards | 28 days prior to Final Approval Hearing |
| Deadline to file Final Approval Motion | 28 days prior to Final Approval Hearing |
| Final Approval Hearing | To be set by the Court, but no sooner than 120 days after date of Preliminary |

| | Approval Order |
|---|---|

## VII.  CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that this Court: (1) provisionally certify the proposed settlement class; (2) appoint plaintiffs as the class representatives; (3) appoint plaintiffs' counsel as class counsel; (4) grant preliminary approval to the parties' settlement; (5) approve the distribution of the proposed class notices and claims forms; (6) appoint RG2 Claims Administration LLC as the Claims Administrator; and 7) schedule a final approval hearing.  A proposed order is submitted herewith.

Dated:  April 13, 2015                    Respectfully submitted,

MICHAEL RUBIN
JONATHAN WEISSGLASS
ERIC P. BROWN
Altshuler Berzon LLP

THERESA M. TRABER
LAUREN TEUKOLSKY
Traber & Voorhees

GUS T. MAY
MATTHEW E. DECAROLIS
Bet Tzedek Legal Services

SANDRA C. MUÑOZ
Law Offices of Sandra C. Muñoz

By:      _/s/ Michael Rubin_____
                Michael Rubin

Attorneys for Plaintiffs

THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
Traber & Voorhees
128 N. Fair Oaks Avenue, Suite 204
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com

MICHAEL RUBIN (SBN 80618)          SANDRA C. MUÑOZ (SBN 190404)
JONATHAN WEISSGLASS                Law Offices of Sandra C. Muñoz
(SBN 185008)                       5429 E. Beverly Blvd.
ERIC P. BROWN (SBN 284245)         Los Angeles, CA 90022
Altshuler Berzon LLP               Telephone: (323) 720-9400
177 Post Street, Suite 300         Facsimile: (323) 720-9090
San Francisco, California 94108    scm4law@att.net
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
mrubin@altber.com                  (Add'l counsel on next page)
jweissglass@altber.com
ebrown@altber.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERARDO CARRILLO, *et al.*, for themselves and all others similarly situated and the general public, <br><br> Plaintiffs, <br><br> v. <br><br> SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, INC.; PREMIER WAREHOUSING VENTURES, LLC; ROGERS-PREMIER UNLOADING SERVICES, LLC; IMPACT LOGISTICS, INC.; WAL-MART STORES EAST, LP, and DOES 1-15, *et al.*, <br><br> Defendants. | Case No. CV 11-8557 CAS (DTBx) <br><br> **DECLARATION OF MICHAEL RUBIN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY SETTLEMENT APPROVAL** <br><br> Date:     May 11, 2015 <br> Time:    10:00 a.m. <br> Judge:    Hon. Christina A. Snyder |

Rubin Declaration ISO Plaintiffs' Motion for Preliminary Approval;
Case No. CV 11-8557 CAS (DTBx)

**EXHIBIT 2**

Additional counsel for plaintiffs:

GUS T. MAY (SBN 159436)
KEVIN R. KISH (SBN 233004)
MATTHEW E. DECAROLIS (SBN 238595)
Bet Tzedek Legal Services
3250 Wilshire Blvd., 13th Floor
Los Angeles, CA  90010
Telephone: (323) 939-0506
Facsimile: (213) 471-4568
gmay@bettzedek.org
kkish@bettzedek.org
mdecarolis@bettzedek.org

I, Michael Rubin, declare as follows:

1.  I am a partner in the San Francisco law firm of Altshuler Berzon LLP, a member of the State Bar of California, and co-counsel to plaintiffs in this action.  I make this declaration of my own personal knowledge, and I am competent to testify to the matters set forth herein.

2.  I submit this declaration in support of plaintiffs' motion for preliminary approval of their settlement with defendants Schneider Logistics Transloading and Distribution, Inc. ("Schneider") and Wal-Mart Stores East, LP ("Walmart").  The Settlement Agreement is attached to the accompanying Proposed Order as Exhibit A.  This settlement is in addition to plaintiffs' $700,000 class action settlement with Impact Logistics, Inc. ("Impact") and $1 million class action settlement with Premier Warehousing Ventures, LLC, and Rogers-Premier Unloading Services, LLC (collectively "Premier"), which this Court approved on September 22, 2014.  Dkt. 606.   This declaration supplements and incorporates by reference the declarations I previously submitted in support of the Premier and Impact settlements and describing the history of this litigation.  Dkt. 488, 517.2, 540, 598.2.

3.  Plaintiffs are low-wage workers who loaded and unloaded trucks, often for 12 or more hours per day, seven days per week, in three warehouses in Mira Loma (now Eastvale), California owned or leased by defendant Walmart and operated since 2006 by defendant Schneider.  Premier's class list shows 269 workers.  Impact's class list shows 2060 workers.  There were approximately 270 FLSA opt-ins in response to the court-approved *Hoffmann-LaRoche* notice.

4.  Plaintiffs filed this lawsuit on October 17, 2011, after more than a year of investigation and legal research.  Initially, plaintiffs sued only Impact, Premier, and Schneider, but plaintiffs later added Walmart as a co-defendant, contending that Walmart was jointly and severally liable as a joint employer, and was liable on several additional theories as well, including negligence.

1     5.  On October 31, 2011, this Court issued a temporary restraining order

2  against Premier and Impact, based on plaintiffs' showing "that defendants do not

3  accurately record when [plaintiffs] report to work, the times at which they actually

4  begin and end work, their total hours of work, meal periods, or split shift intervals,

5  and that defendants do not compensate employees for all hours worked or provide

6  the required reporting time pay." Dkt. 43 at 5.  The Court found, after reviewing the

7  evidence, that defendants "have not been keeping the required . . . records, . . . have

8  not been making those records available to employees to inspect [and have] rejected

9  the requests of several employees to obtain such information and retaliated or

10 threatened retaliation against employees who make such requests," and concluded

11 based on those facts that plaintiffs were "likely to prevail on their recordkeeping,

12 minimum wage, and reporting time claims." *Id.* at 5-6.

13    6.  On December 7, 2011, after plaintiffs presented additional evidence

14 concerning Schneider's liability as plaintiffs' joint employer, the Court extended the

15 TRO by entering a preliminary injunction against Premier, Impact and Schneider,

16 which extended the TRO and required defendants to begin using an electronic

17 system to record plaintiffs' hours.  Dkt. 106.  As a result of that TRO and injunction,

18 Impact abandoned its prior unlawful "piece rate" payment scheme and began paying

19 class members on an hourly basis, with overtime.  As a result, class members began

20 to receive greater compensation for the hours they worked.  They became able to

21 document the many ways in which their state and federal employment law rights had

22 been, and continued to be, violated.

23    7.  On November 18, 2011, all class members who were then employed by

24 Premier and, plaintiffs contended, jointly employed by Schneider, were informed that

25 their jobs in the Walmart warehouses would be terminated on February 24, 2012.

26 Plaintiffs promptly sought a second preliminary injunction on behalf of that subclass

27 of approximately 100 workers, contending that the planned mass terminations by

28 Premier and Schneider were retaliatory.  Dkt. 92 at 1-2 & n.1; Dkt. 117.  The Court

1  agreed, and on February 2, 2012 provisionally certified that subclass and enjoined

2  Premier and Schneider from implementing the planned terminations.  Dkt. 186.

3      8.  Schneider appealed that injunction and the prior record-keeping injunction.

4  The Ninth Circuit affirmed both injunctions, concluding among other things that

5  plaintiffs had established a probability of success on the merits of plaintiffs' joint

6  employer allegations.  *Carrillo v. Schneider Logistics, Inc.*, 9th Cir. Nos. 12-55042,

7  12-55386 (Mem. Disp. Dec. 28, 2012).  The Ninth Circuit also awarded plaintiffs'

8  counsel $178,000.98 in appellate attorneys' fees.  *Carrillo v. Schneider Logistics,*

9  *Inc.*, 9th Cir. Nos. 12-55042, 12-55386 (April 21, 2014 Order).  Schneider has agreed

10 to pay those fees, without interest, within 10 days after we file the accompanying

11 motion for preliminary approval.  *See* Settlement ¶III.19.

12     9.  As a consequence of this second injunction (and a third injunction the Court

13 later issued to prevent Schneider and Premier from requiring the members of that

14 protected subclass to re-establish their lawful immigration status and undergo

15 additional background checks), approximately 100 class members gained increased

16 job security and a wage increase to $12.75 per hour (compared, in many cases, to

17 prior payments that were less than the minimum wage).  Dkt. 231 at 3.  Thus, well

18 before the Impact and Premier settlements or the present settlement, many class

19 members who were employed during the pendency of this litigation obtained

20 substantial benefits, economic and otherwise, from this litigation.

21     10.  On February 1, 2012, in the same order that enjoined Premier's and

22 Schneider's mass retaliatory termination, the Court conditionally certified plaintiffs'

23 minimum wage and overtime claims under the FLSA and ordered notice sent at

24 defendants' expense to all current and former warehouse workers employed in the

25 Mira Loma warehouses by Impact beginning in 2001 and by Premier beginning in

26 2009, which are the dates those two companies began supplying workers to those

27 Walmart-owned warehouses.  Dkt. 186 at 19-23; Dkt. 129 at 4; Dkt. 186 at 27; Dkt.

28 155 at 12-13.  The Court equitably tolled the FLSA limitations period to the dates

1   when each defendant began operating in the Mira Loma warehouses based on

2   "substantial evidence that defendants' misconduct has prevented workers from

3   obtaining the information necessary to determine whether their rights under the FLSA

4   were violated."  Dkt. 186 at 27; *see also* Dkt. 43 at 3-6.  Given the transient nature of

5   the plaintiff class, *see* Dkt. 186 at 25, the Court authorized Class Counsel to

6   supplement the FLSA notice by "alternative" means, including flyers, radio ads,

7   church and community meetings, etc.  Dkt. 186 at 23-25.  Of the 2,327 settlement

8   class members, 379 filed claims in the prior settlements with Impact and Premier.

9       11.  A second court-approved opportunity to opt into the FLSA portion of this

10  lawsuit was provided  to class members in conjunction with the Impact and Premier

11  settlements, which provided that any class member who filed a Claim Form in those

12  settlements would thereby be opting in for purposes of the FLSA.  Dkt. 517-22 §16.c;

13  Dkt. 517-23 §14.c.  A similar provision is included in the proposed settlement, so

14  every class member will have a renewed opportunity to obtain an additional payment

15  for FLSA claims during workweeks between October 2008 and December 2011.

16  Settlement ¶III.13.

17      12.  A substantial number of class members can no longer be located,

18  particularly those who ceased working in the Mira Loma warehouses more than 10

19  years ago.  That may explain why almost 80% of the workers who participated in the

20  Impact and Premier settlements were employed in the warehouses after January 1,

21  2008.  Class Counsel intend to undertake renewed efforts to track down as many class

22  members as possible in conjunction with the present settlement.

23      13.  Plaintiffs' Third Amended Complaint ("3AC") against Premier, Impact,

24  Schneider, and Walmart alleged that Schneider was jointly and severally liable for all

25  of the alleged violations under theories of joint employer liability and common law

26  theories of shared liability.  Dkt. 378 ¶¶95-110.  The 3AC also alleged that defendant

27  Walmart was jointly and severally liable under each of those same theories, *id.*, and

28  for negligent selection, hiring, retention, supervision and/or control of Schneider and

Exh. 2

1  the two labor services contractors.  *Id.* ¶¶111-17.  Schneider and Walmart denied

2  liability and continue to deny liability.  *Id.* ¶¶I.6, I.8, 8; VI.1.  However, this Court

3  denied Walmart's motion to dismiss plaintiffs' negligence claims, concluding that

4  Walmart owed a "duty of care" to plaintiff warehouse workers and that plaintiffs had

5  sufficiently alleged negligent breach of that duty.  Dkt. 414.  After months of

6  discovery focused on Schneider's and Walmart's status as plaintiffs' "joint

7  employers" under state and federal law, the Court also denied Schneider's and

8  Walmart's motions for summary judgment, concluding that plaintiffs had presented

9  sufficient evidence of joint employer liability to proceed to trial against all

10  defendants.  Dkt. 512, 513.

11        14.  The parties have conducted extensive discovery into the merits of

12  plaintiffs' claims, class certification issues, and Walmart's and Schneider's potential

13  liability as plaintiffs' "joint employers" and other theories.  By the time the Court

14  denied defendants' summary judgment motions, the parties had taken the depositions

15  of more than 60 individuals, including several multiple-day depositions of managers

16  for Walmart, Schneider, Impact and Premier, and all of the named plaintiffs.  Dkt.

17  517-2 ¶3.  The parties had also exchanged significant written discovery.  Over the

18  course of this litigation, defendants produced hundreds of thousands of pages of

19  documents, including payroll and time records for the plaintiff classes.

20        15.  After several rounds of mediation and subsequent settlement discussions

21  among counsel, plaintiffs reached settlement agreements with defendants Premier and

22  Impact, which were executed in late 2013 and early 2014.  Dkts. 517-22, 517-23.  The

23  Court granted preliminary approval of the Premier and Impact settlements on March

24  24, 2014.  Dkt. 570.  After notice was provided to class members and a fairness

25  hearing held, the Court granted final approval of the Premier and Impact settlements

26  on September 22, 2014.  Dkt. 606.

27        16.  In September 2013, plaintiffs and Schneider participated in a full-day

28  mediation before Ninth Circuit mediator Margaret Corrigan.  That mediation ended

1   with the parties far apart.  In the spring of 2014, shortly after plaintiffs filed their

2   motion for class certification, *see* Dkt. 535, the parties again tried to mediate, this

3   time with David Rotman in San Francisco.  The parties conducted an initial mediation

4   on April 17, 2014.  Although significant issues remained, the parties agreed to

5   conduct a second mediation on April 30, 2014.  That second mediation resulted in a

6   settlement in principle that the parties memorialized in a Memorandum of

7   Understanding.  The parties then sought a stay from this Court as to all litigation

8   between them so the parties would be able to prepare and execute a formal, written

9   settlement agreement.  Dkt. 578.  On May 25, 2014, the Court issued the requested

10  stay.  Dkt. 579.

11         17.  Several details of the parties' agreement had not been sufficiently resolved

12  during the mediation, and counsel for the settling parties had materially different

13  perspectives on certain issues that needed to be resolved.  Months of protracted

14  negotiations ensued, both two-way (between plaintiffs and Schneider, and plaintiffs

15  and Walmart) and three-way (among all settling parties).  At one point, when it

16  seemed the parties would be unable to resolve the remaining differences, plaintiffs

17  sought the Court's assistance in resolving a particularly contentious issue.  Dkt. 593

18  (plaintiffs' request for status conference); Dkt. 600 (minutes of status conference).

19  Eventually, in mid-March 2014, nearly a year after the final day of mediation, the

20  parties reached final agreement on the Settlement Agreement and exhibits submitted

21  hereto.

22         18.  The settlement will provide substantial recoveries to class members,

23  including tens of thousands of dollars for many of them, and will be allocated in a

24  manner that roughly approximates the proportional value of their individual claims.

25         19.  Plaintiffs' counsel believe that the settlement is fair, reasonable, adequate

26  and in the best interests of plaintiff class members.  The settlement guarantees a

27  substantial recovery for the class, while reflecting the risks and uncertainties of

28

litigation as well as the anticipated difficulties in tracking down all class members, particularly from the early years of the class period.

20. The named class representatives have the same types of interests and suffered the same types of injury as all other class members. In addition, the named plaintiffs have already provided significant, valuable assistance in the investigation and prosecution of this matter, and helped to bring about the settlement now before this Court. The Court has already concluded that those class representatives are "adequate" within the meaning of Rule 23(a)(4). The Court has also already concluded that Class Counsel are "adequate," based on Class Counsel's previously filed declarations and the Court's first-hand knowledge of our efforts in this litigation, all of which demonstrate that Class Counsel have extensive experience in class action wage-and-hour litigation and have vigorously pursued these claims throughout the history of this litigation.

21. Part of the new settlement amount is guaranteed and part will be paid only if the value of the submitted claims exceeds the guaranteed amount. Of the $21 million total, approximately $13.8 million is allocated for class member payments (of which 45% is guaranteed); $150,000 is allocated for payment to the California Labor & Workforce Development Agency ("LWDA") under the California Labor Code Private Attorney General Act; $40,000 is allocated for service payments to the eight named plaintiffs ($5,000 each); $32,000 is allocated for the expenses and fees of the Claims Administrator (RG2 Claims Administration LLC) which submitted a capped bid that the parties accepted after competitive bidding; $210,000 is allocated to class counsel's expenses; and $6,930,000 is allocated to class counsel's fees – all subject to court approval. Settlement ¶¶II.5, II.19, III.1-10. Based on the Plan of Distribution in ¶II.10 and ¶V.1 of the Settlement (which, like the Impact and Premier settlements, is based on a point-based distribution formula that gives greater weight to time periods when the class members' claims have higher values), several class members

1 are eligible to recover more than $80,000 from this settlement, in addition to their
2 prior share of the Impact or Premier settlements.

3      22. The parties cannot accurately predict how much of the approximately
4 $13.8 million available for class member payments will actually be claimed.
5 However, the Plan of Distribution provides that the class members with the highest
6 valued claims will be those who worked for several years recently (who are the class
7 members most likely to be known to Class Counsel or otherwise most easily
8 traceable). *See* Settlement ¶V.1.

9      23. Although the settling defendants reserved the right to terminate the
10 Settlement Agreement if 10% or more of the Class Members opt out of the settlement,
11 all parties have agreed to use their best efforts to effectuate the terms and conditions
12 of this settlement and to use reasonable means to "maximize the probability that all
13 Class Members shall receive the Class Notices and Claim Forms." Settlement
14 ¶¶IV.3(a), IV.7, V.8, VI.2.

15      24. The Settlement Agreement provides that within 15 days after preliminary
16 approval, the Claims Administrator – RG2, whose capped bid of $32,000 was
17 accepted by the parties after competitive bidding by several potential claims
18 administrators – will mail a notice and, where appropriate, a claim form, to each class
19 member. Settlement ¶IV.3(d). Notices will be sent to all 2,327 identifiable class
20 members, though, who will have 90 days from the date of mailing to decide whether
21 to participate. Settlement ¶IV.3(e).

22      25. Further specific details of the Settlement Agreement are set forth in the
23 Settlement Agreement attached as Exhibit A to the Proposed Order and are
24 summarized in plaintiffs' motion for preliminary approval.

25      I declare under penalty of perjury that the foregoing is true and correct to the
26 best of my knowledge. Executed this 11th day of April 2015, at Berkeley, California.

27

28                 */s/* Michael Rubin
                  Michael Rubin

---

**EXHIBIT 2**

1    THERESA M. TRABER (SBN 116305)
2    LAUREN TEUKOLSKY (SBN 211381)
     Traber & Voorhees
3    128 N. Fair Oaks Avenue, Suite 204
     Pasadena, California 91103
4    Telephone: (626) 585-9611
     Facsimile: (626) 585-1400
5    tmt@tvlegal.com
     lt@tvlegal.com
6
     MICHAEL RUBIN (SBN 80618)            SANDRA C. MUÑOZ (SBN 190404)
7    JONATHAN WEISSGLASS                  Law Offices of Sandra C. Muñoz
     (SBN 185008)                         5429 E. Beverly Blvd.
8    ERIC P. BROWN (SBN 284245)           Los Angeles, CA 90022
     Altshuler Berzon LLP                 Telephone: (323) 720-9400
9    177 Post Street, Suite 300           Facsimile: (323) 720-9090
     San Francisco, California 94108      scm4law@att.net
10   Telephone: (415) 421-7151
     Facsimile: (415) 362-8064
11   mrubin@altber.com                    (Add'l counsel on next page)
     jweissglass@altber.com
12   ebrown@altber.com
13
14                  UNITED STATES DISTRICT COURT
15                 CENTRAL DISTRICT OF CALIFORNIA
16                          EASTERN DIVISION
17
18   EVERARDO CARRILLO, *et al.*, for    )  Case No. CV 11-8557 CAS (DTBx)
     themselves and all others similarly )
19   situated and the general public,    )  **[PROPOSED] ORDER (1)**
                                          )  **CERTIFYING SETTLEMENT**
20                  Plaintiffs,           )  **CLASS, (2) GRANTING**
                                          )  **PRELIMINARY APPROVAL TO**
21          v.                            )  **PROPOSED CLASS ACTION**
                                          )  **SETTLEMENT AND PLAN OF**
22   SCHNEIDER LOGISTICS                  )  **ALLOCATION, (3) DIRECTING**
     TRANSLOADING AND                     )  **DISSEMINATION OF NOTICE**
23   DISTRIBUTION, INC.; PREMIER          )  **AND CLAIM FORM TO THE**
     WAREHOUSING VENTURES, LLC;           )  **CLASS; AND (4) SETTING DATE**
24   ROGERS-PREMIER UNLOADING             )  **FOR FAIRNESS HEARING AND**
     SERVICES, LLC; IMPACT                )  **RELATED DATES**
25   LOGISTICS, INC., WAL-MART            )
     STORES EAST, LP, and DOES 1-15,      )
26   *et al.*,                            )
                                          )
27                  Defendants.           )
                                          )
28

1    <u>Additional counsel for plaintiffs:</u>

2

3    GUS T. MAY (SBN 159436)
     MATTHEW E. DECAROLIS (SBN 238595)
4    Bet Tzedek Legal Services
5    3250 Wilshire Blvd., 13th Floor
     Los Angeles, CA  90010
6    Telephone: (323) 939-0506
     Facsimile: (213) 471-4568
7    gmay@bettzedek.org
8    mdecarolis@bettzedek.org

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[Proposed] Order Granting Preliminary Approval
Case No. CV 11-8557 CAS (DTBx)

EXHIBIT 3

Exh. 3

1   Having reviewed plaintiffs' Motion for Preliminary Settlement Approval, the

2   accompanying memorandum of points and authorities in support of the motion and

3   other supporting documents, the parties' Settlement Agreement and the record in this

4   case, and for good cause shown, the Court hereby GRANTS plaintiffs' motion and

5   ORDERS as follows:

6   **I.      CLASS CERTIFICATION**

7       **A.      Classes Certified**

8   For purposes of settlement, the parties have proposed provisional certification

9   of a single settlement class under Federal Rule of Civil Procedure 23 comprised of

10  the following groups (which the Court previously certified for purposes of the prior

11  settlement between plaintiffs and defendants Impact Logistics, Inc. ("Impact") and

12  Premier Warehousing Ventures, LLC, and Rogers-Premier Unloading Services, LLC

13  (collectively "Premier"), Dkt. 606 ¶9):

14      <u>Premier Class</u>:  All non-exempt employees employed by Premier in any

15  of the warehouses, buildings, or surrounding premises at 4100 and 4250 Hamner

16  Avenue and/or 11900 Riverside Drive in Eastvale (formerly Mira Loma), California

17  at any time from February 19, 2009 through February 24, 2012.

18      <u>Impact Class</u>: All non-exempt employees employed by Impact in any of

19  the warehouses, buildings, or surrounding premises located at 4100 and 4250

20  Hamner Avenue, and/or 11900 Riverside Drive in Eastvale (formerly Mira Loma),

21  California, at any time from 2001 through August 9, 2013.

22      **B.      Findings Regarding Conditional Certification**

23  The Court hereby finds and concludes that the class satisfies all of the

24  requirements for certification under Rules 23(a) and (b)(3) of the Federal Rules of

25  Civil Procedure.

26      1.  The class is sufficiently numerous (269 workers in the Premier Class and

27  2,060 workers in the Impact Class) that joinder is impracticable.

28

---

[Proposed] Order Granting Preliminary Approval
Case No. CV 11-8557 CAS (DTBx)                                                  1

**EXHIBIT 3**

Exh. 3

2.  The members of the class share many common issues of fact and law, including: 1) whether Walmart and/or Schneider acted as plaintiffs' joint employer, 2) whether Walmart and/or Schneider acted as co-conspirators, aider and abettors, or principals or agents, so as to become liable for the workplace violations alleged by plaintiffs, 3) whether the itemized wage statements provided to class members complied with California law; 4) whether there were classwide practices, with respect to the Premier and/or Impact class, of under-recording hours worked by class members; 5) whether there were classwide practices, with respect to the Premier and/or Impact class, of failing to record or falsely recording meal periods; 6) whether there was a failure to record hours spent on non-piece rate tasks, with respect to the Premier and/or Impact class members; 7) whether unlawful retaliation against class members occurred; and 8) whether the warehouse temperatures to which all class members were subjected provided "reasonable comfort" as required by Wage Order No. 9-2001 §15.

3.  The named plaintiffs' claims are typical because they arise out of the same policies and practices and course of conduct complained of by all class members.

4.  The named plaintiffs are adequate representatives of the class, because their interests are co-extensive with those of the other class members because they are represented by skilled and experienced class counsel.

5.  Questions of law or fact common to the class predominate over individualized issues, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

6.  Because certification of the class is in the context of a settlement, the Court need not inquire whether the case, if tried as a class action, would present intractable management problems.

Accordingly, for the purposes of approving this settlement, the Court certifies the proposed settlement class described in paragraph I.A. above, under Rules 23(a) and (b)(3).

## II. APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL

### A. Class Representatives

For purposes of settlement, the Court finds and concludes that plaintiffs and former Premier employees Everardo Carrillo, Fernando Chavez, Eric Flores, and Jose Martinez Arceo have claims typical of class members and are adequate representatives of them. The Court hereby appoints Mr. Carrillo, Mr. Chavez, Mr. Flores and Mr. Arceo to serve as Class Representatives.

The Court also finds and concludes that plaintiffs and former Impact employees Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, and Jose Enrique Trujillo-Vergara have claims typical of class members and are adequate representatives of them. The Court hereby appoints Mr. Chavez, Mr. Esquivel, Mr. Mendoza, and Mr. Trujillo-Vergara to serve as Class Representatives.

### B. Class Counsel

The Court finds and concludes that Traber & Voorhees, Altshuler Berzon LLP, The Law Offices of Sandra C. Muñoz, and Bet Tzedek Legal Services have extensive experience and expertise in prosecuting wage-and-hour class actions, collective actions and other employment law class actions. The Court appoints these firms and organization as Class Counsel.

## III. PRELIMINARY APPROVAL OF SETTLEMENT

The settlement with defendants Schneider and Walmart is attached hereto as Exhibit A. The Court has reviewed the terms of the settlement, including the distribution plan and the releases. The Court has also considered the declaration of Michael Rubin in support of preliminary approval. Based on review of those papers and the Court's familiarity with this case, the Court finds and concludes that the settlement is the result of arms-length negotiations between the parties conducted after class counsel adequately investigated plaintiffs' claims and become familiar with the strengths and weaknesses of those claims. Based on all of these factors, the

1   Court concludes that the proposed settlement satisfies preliminary settlement

2   approval.  The settlement has no obvious defects and falls within the range of

3   possible approval as fair, adequate, and reasonable, such that notice to the class is

4   appropriate.  Accordingly, the settlement is hereby preliminarily approved.

5   **IV.   APPROVAL OF THE CLASS NOTICE, CLAIM FORM, AND**

6   **        MANNER OF DISTRIBUTION**

7            The parties have submitted for this Court's approval two proposed Notices of

8   Settlement of Class and Collective Action (the "Class Notices," one for more class

9   members and the other for the subgroup of class members who were employed by

10  defendant Schneider on April 30, 2014 and remain employed through today's date,

11  who will be paid their settlement shares without having to file a Claim Form), and

12  Claim Forms for the Impact and Premier class members who are entitled to receive

13  that notice.  The parties have also proposed a plan for disseminating these documents

14  by mail to all class members, with a self-addressed return envelope, after the Court

15  grants preliminary approval of the settlements.  After carefully reviewing these

16  documents and plan of dissemination, the Court finds and concludes as follows:

17            **A.    Best Notice Practicable**

18            The proposed Class Notices are the best notices practicable under the

19  circumstances and will allow class members a full and fair opportunity to consider

20  the relevant Settlement.

21            The Class Notices fairly, plainly, accurately, and reasonably inform class

22  members of: 1) appropriate information about the nature of this action, the definition

23  of the class, the identity of Class Counsel, and the essential terms of the settlement,

24  including the plan of allocation and the hybrid claims made nature of the settlement;

25  2) appropriate information about plaintiffs' and Class Counsel's forthcoming

26  applications for a Class Representative Payment and the Class Counsel attorneys'

27  fees and costs award; 3) appropriate information about how to claim a share of the

28  proceeds under the settlement; 4) appropriate information about this Court's

procedures for final approval of the settlement, and about class members' right to appear through counsel if they desire; 5) appropriate information about how to object to or elect not to participate in the settlement, if a class member wishes to do so; and 6) appropriate instructions as to how to obtain additional information regarding this action and the settlement.  Similarly, the proposed Claim Forms allow class members a full and fair opportunity to submit a claim for proceeds under the settlement, including for a share of the settlement fund that is available for payment of claims under the FLSA.  The Class Notices fairly, accurately, and reasonably inform class members how to submit a Claim Form, if one is required, and that for those class members required to submit a Claim Form, the failure to complete and submit such a Claim Form in the manner and time specified will constitute a waiver of any right to obtain any share of the proceeds under the relevant settlement.

### B.    Approval of Notice, Claim Form and Plan of Distribution

The proposed plan for disseminating the Class Notices is likewise reasonably calculated to reach all individuals who would be bound by the settlement.  The Claims Administrator will distribute the Class Notices, along with a self-addressed return envelope, to all class members by first-class mail to their last known address (which will incorporate the updated addresses obtained during the administration of the Impact and Premier settlements).  The Claims Administrator will also track non-delivered notice materials and take reasonable steps to re-send them to the correct, current addresses.

The Court finds and concludes that the proposed plans for disseminating the Class Notices will provide the best notice practicable, satisfy the notice requirements of Rule 23(e), and satisfy all other legal and due process requirements.  The Court hereby orders as follows:

1. The form of the Class Notices and Claim Forms are approved.

2. The manner of distributing the Class Notices to the class is approved.

1    3.  Promptly following the entry of this order, the Claims Administrator shall

2    prepare final versions of the Class Notices and Claim Forms, incorporating into them

3    the relevant dates and deadlines set forth in this order.

4    4.  Except as otherwise specified herein, the Court for purposes of this Order

5    adopts all defined terms set forth in the settlement.

6    5.  No later than fifteen (15) calendar days of the latter of preliminary approval

7    of the settlement or Court approval of the proposed notices to the class, the Claims

8    Administrator shall send a copy of the appropriate Class Notices and a Claim Forms

9    (where required) to all class members via first-class mail, to each Class Member's

10   last known address.  The parties shall provide the Claims Administrator with the

11   name and last known address of each known class member before the initial mailing.

12   6.  The Class Notices shall inform the class members that, as provided in the

13   relevant settlement agreement, the deadline for submitting any objection to the

14   settlement or for opting out of the settlement shall be seventy-five (75) calendar days

15   after the postmark date of the mailing of Class Notices and Claim Forms, and that the

16   deadline for submitting a Claim Form shall be ninety (90) calendar days after such

17   postmark date.

18   7.  Forty-five (45) calendar days after the Class Notices and Claim Forms are

19   sent to class members, the Claims Administrator shall mail a follow-up notice to

20   those class members who have not yet responded to the Class Notices by filing a

21   Claim Form, if such filing is required for that class member.

22   8.  Prior to mailing the follow-up notice, the Claims Administrator shall use

23   standard procedures to obtain forwarding addresses, including: 1) processing the

24   class list through the United States Postal Service's National Change of Address

25   database; 2) performing address searches using public and proprietary electronic

26   resources which lawfully collect address data from various sources such as utility

27   records, property tax records, motor vehicle registration records, and credit bureaus;

28   and 3) calling last-known telephone numbers (and telephone numbers updated

through public and proprietary databases) to contact class members to obtain their current addresses.  For any notice that is returned by the post office with a forwarding address, the Claims Administrator shall also forward the notice to that new address within five (5) calendar days of receipt of the forwarding address, restarting the time period for the recipient to submit a claim, object, or opt out of the settlement from the postmark date of the new notice.  For any notice that is returned by the post office as undeliverable, the Claims Administrator shall perform a skip trace, and if successful in locating an alternate subsequent address, shall forward such notice to the new address within ten (10) calendar days of receipt of the undeliverable notice.

9.  In addition to the foregoing, Class Counsel may, but are not obligated to, supplement the mailed notices with reasonable alternative forms of notice through Spanish-language radio announcements, newspaper notices, and/or leaflets as provided in the Settlement Agreement, and may provide Claim Forms to Class Members for whom there is no known address but who come forward to validly establish their eligibility to participate in the settlement.

10.  If a Claim Form, objection, or opt out form is timely submitted but is deficient in one or more aspects, the Claims Administrator shall, within five (5) calendar days of receipt of the deficient form, return the form to the class member with a letter explaining the deficiencies and informing the class member that he or she shall have fourteen (14) calendar days from the date of the deficiency notice to correct the deficiencies and resubmit the Claim Form.  This letter shall be translated into Spanish.

11.  Any resubmitted Claim Form must be postmarked within fourteen (14) calendar days of the date of the deficiency notice to be considered timely, unless there is a showing of good cause for additional time.  The Claims Administrator shall notify Class Counsel and the appropriate defendant's counsel within five (5) calendar days of receipt of each deficient form.  The Claims Administrator has no

1  obligation to provide a class member with a second notice of deficiency, unless a

2  different deficiency is later uncovered.

3      12.  The Claims Administrator shall take all other actions in furtherance of

4  claims administration as are specified in the Settlement Agreement.

5  **V.   PROCEDURES FOR FINAL APPROVAL OF THE SETTLEMENT**

6      **A.   Final Approval Hearing**

7      The Court hereby schedules a hearing to determine whether to grant final

8  approval of the settlement (the "Final Approval Hearing") for _____, 2015, at

9  _____.

10     **B.   Deadline to Elect Not to Participate in the Settlement**

11     1.   Form of Election

12     Class members may exclude themselves from participating in the settlement.

13 Any opt-out statement, to be valid, must state the name, telephone number, and

14 current address of the class member, the years the class member worked at the Mira

15 Loma Warehouses, and the address to which the class member's Claim Form was

16 mailed, and must include the following language: "I, [NAME], voluntarily choose

17 not to participate in the settlement of my claims against my Schneider Logistics

18 Transloading and Distribution, Inc. and Wal-Mart Stores East, LP, and hereby waive

19 any rights I may have to participate in the settlement against them in the federal court

20 lawsuit entitled *Carrillo v. Schneider Logistics, Inc*., Case No. CV 11-8557 CAS

21 (DTBx)."  The opt-out statement must be personally signed by the class member who

22 seeks to opt out.  No opt-out request may be made on behalf of a group of class

23 members.

24     2.   Deadline for Submitting Election

25     Absent a showing of good cause and in accordance with the procedures set

26 forth in the settlement agreement, no opt-out statement shall be honored or valid if

27 postmarked more than seventy-five (75) calendar days after the postmark date of the

28 Class Notices or any follow up notice mailed by the Claims Administrator to the

1  class member who seeks to opt out.  Requests to opt out that do not include all

2  required information, or that are not submitted on a timely basis, shall be deemed

3  null, void and ineffective.  If a class member files both an opt-out statement and a

4  Claim Form, the opt-out statement shall be deemed invalid and the class member's

5  Claim Form and release of claims shall be valid and controlling.

6          **C.**     **Deadline for Filing Objections to Settlement**

7         Any class member who does not timely opt out may object to the settlement.

8  The Class Notices shall provide that class members who wish to object to the

9  settlement must mail a written statement of objection subject to the provisions set

10  forth below:

11         1.  Any such objection must be filed with the clerk of the Court and served on

12  all counsel identified in the Class Notices no later than seventy-five (75) calendar

13  days after the postmark date of the mailing of Class Notice and Claim Form.

14         2.  The postmark date of the mailing shall be the exclusive means for

15  determining whether an objection is timely. The objection must state the basis for the

16  objection.

17         3.  Class members who fail to make objections in the manner specified shall be

18  deemed to have waived any objections and shall be foreclosed from making any

19  objection (whether by appeal or otherwise) to the settlement, and the settlement shall

20  be fully binding upon them.

21          **D.**     **Deadline for Submitting Claim Forms**

22         Absent a showing of good cause in accordance with the procedures set forth in

23  the settlement agreement, no Claim Form shall be honored if postmarked more than

24  ninety (90) calendar days after the date first mailed to the class members.  Any class

25  members who, without good cause, submit a Claim Form postmarked more than

26  ninety (90) calendar days after the date the Claim Forms are mailed to class members

27  shall be deemed to have waived irrevocably any right in or claim to a settlement

28  share, but the settlement shall nevertheless be fully binding on such class members

1   subject to the terms set forth herein.  The Claims Administrator shall notify Class

2   Counsel and counsel for defendants within five (5) calendar days of receipt of each

3   untimely Claim Form.  The Claims Administrator shall accept Class Counsel's

4   determination of whether good cause exists for honoring an untimely Claim Form.

5       The Claims Administrator shall handle any timely but deficient Claim Forms

6   in the manner specified in the settlement agreement.

7       **E.      Deadline for Submitting Motion Seeking Final Approval**

8       Not later than twenty-eight (28) days before the Final Approval Hearing,

9   plaintiffs shall file a motion for final approval of the settlement.  Two weeks or more

10  before the final approval hearing, the parties may file a reply brief responding to any

11  filed objections.

12      **G.      Deadline for Motion for Class Representative Service Payments**

13      Not later than twenty-eight (28) days before the final approval hearing,

14  plaintiffs may file a motion for approval of their class representative service

15  payments.  Two weeks or more before the final approval hearing, plaintiffs may file

16  a reply brief responding to any filed opposition to the motion.

17      **H.      Deadline for Motion for Class Counsel Attorneys' Fees and Costs**

18      Not later than twenty-eight (28) days before the close of the seventy-five-day

19  (75) period for submitting requests for exclusion or objections, Class Counsel may

20  file a motion for approval of their Class Counsel attorneys' fees and costs payment.

21  Such amount of time provides class members with sufficient time to file any

22  objection they might have to the application.  *See In re Mercury Interactive Corp.*

23  *Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010).  Two weeks or more before the final

24  approval hearing, Class Counsel may file a reply brief responding to any filed

25  opposition to the motion.

26  **VI.   RELEASE OF CLAIMS**

27      If, at or after the Final Approval Hearing, this Court grants final approval to

28  the settlement, plaintiffs and every class member who does not file a timely and

complete election to opt out of the settlement shall, pursuant to the settlement agreement, be adjudicated to have forever released and discharged all claims as set forth in the settlement agreement.  However, any FLSA opt-in claims that could be asserted by class members who did not opt in to the FLSA collective action portion of the action shall not be released, or deemed to be released.  All class members who submit a valid Claim Form shall be deemed to have opted in to the FLSA collective action portion of this action and shall thereby release their FLSA claims.  In the event a class member previously opted in to the FLSA collective action during the prior opt-in period or by submitting a Claim Form in the previous Impact or Premier settlements and neither submits a Claim Form nor a valid request to opt out of the settlement, such class member shall be deemed to have released his or her claims.

## VII.   APPOINTMENT OF CLAIMS ADMINISTRATOR

RG/2 Claims Administration LLC is hereby appointed Claims Administrator to carry out the duties set forth in this Preliminary Approval Order and the settlement.  The costs and expenses of printing and mailing the Class Notices and other costs of the settlement administration shall be paid out of the total settlement amount, pursuant to the provisions of the Settlement Agreement.

The Court shall retain jurisdiction for the purposes of implementing the provisions of this Order, and reserves the right to enter additional orders to effectuate the fair and orderly administration and consummation of the settlement and to resolve any and all disputes that may arise thereunder.

IT IS SO ORDERED.


Dated: May __, 2015                    _____

                                                      The Hon. Christina A. Snyder
                                                      U.S. District Court Judge

EXHIBIT 3

Exh. 3

# EXHIBIT A

EXHIBIT 3

Exh. 3

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into between plaintiffs and class representatives Everardo Carrillo, Fernando Chavez, Eric Flores, Jose Martinez Arceo, Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, and Jose Enrique Trujillo-Vergara, as individuals and on behalf of all Class Members as set forth herein (jointly "Plaintiffs"), and Defendants Schneider Logistics Transloading and Distribution, Inc. ("Schneider") and Wal-Mart Stores East, LP ("Walmart") (collectively, the "Settling Defendants"), subject to the terms and conditions of this Agreement and to the approval of the U.S. District Court in *Everardo Carrillo, et al. v. Schneider Logistics, Inc. et al.*, Central District of California Case No. CV 11-08557 CAS (DTBx).

This Agreement is intended to fully, finally, and forever settle, release, resolve, and bar all of Plaintiffs' individual, representative, and putative class claims released herein as against Defendants Schneider and Walmart and all other Released Parties as defined in this Agreement. This settlement does not settle or resolve whatever indemnity claims and/or rights Defendants Schneider and Walmart may have as to Defendant Impact Logistics, Inc. ("Impact") and/or Defendants Premier Warehousing Ventures, LLC and/or Rogers-Premier Unloading Services, LLC (jointly "Premier"), or any other claims of the parties not explicitly released herein.

EXHIBIT 3

# I.   **THE LITIGATION**

1.     This proposed class and collective action was filed on October 17,
2011.  Plaintiffs' First Amended Complaint was filed on October 28, 2011,
asserting 16 claims for relief, including *inter alia* minimum wage, overtime,
damages and penalties claims under the Fair Labor Standards Act ("FLSA") and
California Labor Code and Wage Orders, as well as claims for false and fraudulent
wage practices, for alleged violations of recordkeeping and disclosure obligations,
and for allegedly unlawful retaliation, all in connection with defendants'
operations in the Mira Loma Warehouses.  Plaintiffs' First Amended Complaint
named as defendants Schneider Logistics Transloading and Distribution, Inc.,
Schneider Logistics, Inc., Premier Warehousing Ventures, LLC, Rogers-Premier
Unloading Services, LLC and Impact Logistics, Inc.

2.     On January 31, 2012, the Court conditionally certified the Action as a
collective action pursuant to 29 U.S.C. §216(b) with respect to Plaintiffs' claims
under the Fair Labor Standards Act ("FLSA") and ordered that notice be sent to all
similarly situated workers who worked directly for Premier or Impact at any time
since January 1, 2001 – when Impact first employed workers in these Mira Loma
Warehouses.  By the end of the notice and opt-in period, approximately 270
Premier and Impact Class Members had filed Consent to Sue forms asserting their
FLSA claims in this Action.

EXHIBIT 3

3.    On November 29, 2012, the Court entered an order granting Plaintiffs leave to file a Second Amended Complaint to remove a named Plaintiff, add plaintiffs Armando Esquivel, Guadalupe Rangel Mendoza, and Jose Enrique Trujillo-Vergara, modify the class definitions, add subclasses, and modify certain factual allegations.

4.    On January 10, 2013, the Court granted Plaintiffs' motion to file a Third Amended Complaint, which added Walmart Stores, Inc. as a defendant, and alleged additional theories of civil liability, including a cause of action against Walmart for negligence.  On April 8, 2013, the Court entered a stipulated order amending the Third Amended Complaint to substitute Walmart Stores East, LP for Walmart Stores, Inc.  On July 19, 2013, the Court entered a stipulated order amending the Third Amended Complaint to dismiss defendant Schneider Logistics, Inc.

5.    As part of and in connection with the Action, Schneider filed cross-claims against Premier and Impact asserting claims for relief for contractual indemnity, equitable indemnity, and breach of contract and implied contractual indemnity.  Premier and Impact, in turn, filed cross-claims against Schneider, asserting causes of action for equitable indemnity, comparative indemnity and contribution, and declaratory relief.

6.    In response to Plaintiffs' complaints, all Defendants filed answers denying the substantive allegations against them and asserting various affirmative

defenses.  Specifically, Schneider and Walmart denied and continue to deny that they are or ever have been Plaintiffs' joint employers.

7.     On or about March 21, 2014, Plaintiffs, Schneider, and Walmart agreed to mediate this case with an experienced mediator, David Rotman of Gregorio, Haldeman & Rotman, in San Francisco.  Plaintiffs, Schneider, and Walmart participated in a full day of mediation with Mr. Rotman on April 17, 2014, but were unable to settle at that time.  A further mediation with Mr. Rotman was held on April 30, 2014.  On the second day of mediation, the parties reached a settlement in principle of Plaintiffs' claims against Schneider and Walmart, which settlement was memorialized in a Memorandum of Understanding and was expressly made subject to the preparation, execution, and Court approval of a formal written settlement agreement.

8.     Without admitting or conceding any liability or damages whatsoever, Schneider and Walmart have entered into this Settlement to fully, finally, and forever resolve this litigation as to the Plaintiffs' individual, representative, and putative class claims against them.  Schneider and Walmart deny and continue to deny that they have engaged in any misconduct in connection with their operations at the Mira Loma Warehouses, including denying that any wage and hour or other violations occurred, or that either Schneider or Walmart have any liability, as joint employers or otherwise, or that they have engaged in wrongdoing of any kind in connection with the claims alleged in the Action.

EXHIBIT 3

9.     Having engaged in extensive investigation, discovery, motion practice, formal mediation, and arms-length settlement negotiations, the Class Representatives and Class Counsel have concluded that the terms of the Settlement set forth herein are fair, reasonable, and adequate, that the Settlement represents a good-faith settlement under California law, and that settlement on these terms is in the best interest of the Class Members in light of all known facts and circumstances, including the risks of continuing litigation and the defenses asserted in the case.

## II.    DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

1.    Action.  The "Action" means the civil action entitled *Everardo Carrillo, et al. v. Schneider Logistics, Inc., et al.*, filed in the United States District Court for the Central District of California, Case No. CV 11-08557 CAS (DTBx), as pending, including without limitation, Plaintiffs' Third Amended Complaint, filed January 11, 2013.  Because this Settlement only settles, releases, and bars claims against the Settling Defendants and Released Parties as defined herein, references to the Action shall not be construed as modifying or affecting in any way the two separate settlements entered into between Plaintiffs, on the one hand, and (a) Defendant Impact Logistics, Inc. ("Impact"), and/or (b) Premier

5

EXHIBIT 3

Warehousing Ventures, LLC and Rogers-Premier Unloading Services, LLC (collectively, "Premier"), on the other.

2.    Agreement.  "Agreement" means this Settlement Agreement and all exhibits attached hereto.

3.    Authorized Claimant.  "Authorized Claimant" means any Settlement Class Member who is entitled to a Settlement Payment from the Net Settlement Fund in accordance with the provisions of this Agreement.

4.    Claim Forms.   "Claim Forms" means the two proof-of-claim forms agreed to by the Parties and to be approved by the Court.  Copies of the Claim Forms are attached hereto as Exhibit A.

5.    Claims Administrator.  "Claims Administrator" means the following claims administrator mutually designated by the Parties to this Agreement and subject to approval by the Court:  RG2 Claims Administration LLC.

6.    Class Counsel or Plaintiffs' Attorneys.  "Class Counsel" and/or "Plaintiffs' Attorneys" jointly refer to Traber & Voorhees, Altshuler Berzon LLP, Bet Tzedek Legal Services, and the Law Offices of Sandra C. Muñoz.

7.    Class/Class Members.  The "Class" and/or "Class Members" means all Premier Class Members, Impact Class Members, and FLSA Opt-in Plaintiffs, as described in Paragraphs II.15, II.17 and II.22, below.

EXHIBIT 3

8.   <u>Class Notices</u>.  "Class Notices" means the two forms of notice to the

Class that explain the Agreement and the Class Members' rights and obligations

and that shall be sent to the Class following preliminary approval of the

Settlement, and that shall, *inter alia*, explain the procedures for submitting a valid

claim, filing an objection to the Settlement, and opting out of the Settlement.  The

first form of Class Notice shall be sent to all Class Members *except* those who

were employed by Schneider on April 30, 2014 and who are still employed by

Schneider as of the date of Preliminary Settlement Approval, which latter group of

Class Members shall receive the second form of Class Notice.  *See* Paragraph

IV.4(a).  The Class Notices shall be translated into Spanish by a court-certified and

approved interpreter, and the reasonable cost of translation, subject to the Settling

Defendants' reasonable approval thereof before being incurred, shall be an

acceptable settlement administration expense incurred by the Claims

Administrator.  The proposed Class Notices are attached hereto as Exhibit B and

are subject to Court approval and revisions by the Court.

9.   <u>Class Period</u>.  "Class Period" means the following:  (a) for Premier

Class Members and any FLSA Opt-in Plaintiffs who were directly employed by

Premier, it is the period beginning on February 19, 2009, and ending on February

24, 2012, the date when Premier ceased its operations at the Mira Loma

Warehouses; and (b) for Impact Class Members and any FLSA Opt-in Plaintiffs

who were directly employed by Impact, it is the period beginning on January 1,

2001 and ending on August 9, 2013, the date when Impact ceased its operations at the Mira Loma Warehouses.

10. <u>Class Representatives</u>. "Class Representatives" means named plaintiffs Everardo Carrillo, Fernando Chavez, Eric Flores, Jose Martinez Arceo, Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, and Jose Enrique Trujillo-Vergara.

11. <u>Court</u>. The "Court" means the United States District Court for the Central District of California.

12. <u>Effective Date</u>. "Effective Date" of this Agreement means the date of final approval of the settlement. If no objections are filed to the settlement, the Effective Date shall be the date the Court enters an order of final approval of the settlement. If objections are filed and overruled and no appeal is taken of the approval, the Effective Date shall be 30 days after the district court enters an order of final approval. If an appeal is taken from the district court's overruling of objections to the settlement and/or from the Final Approval Order (other than an appeal limited solely to a challenge to the denial or reduction in the amount of requested attorneys' fees and litigation expenses, *see* Paragraph IV.15, below), the Effective Date shall be 30 days after the appeal is withdrawn or after all appellate review thereof is exhausted and an appellate decision exhausting such review and affirming the final approval decision becomes final. No money shall be

**EXHIBIT 3**

distributed by the Claims Administrator unless and until the Effective Date occurs,

except as otherwise expressly provided in this Agreement.

13.   <u>Final Approval Hearing</u>.  "Final Approval Hearing" means the

hearing conducted by the Court, following Class Notice, to determine whether to

enter final approval and order implementation of the terms of this Agreement.

14.   <u>Final Approval Order.</u>  "Final Approval Order" means the order

issued by the Court granting final approval of the Settlement.

15.   <u>FLSA Opt-in Plaintiff(s).</u>  "FLSA Opt-in Plaintiff(s)" means each

Class Representative, Class Member, and/or any other person who validly opted

into the collective action portion of the Action asserted and maintained under the

Fair Labor Standards Act ("FLSA").

16.   <u>Gross Settlement Amount</u>.  "Gross Settlement Amount" means the

maximum total payment of Twenty-One Million Dollars and No Cents

($21,000,000.00) to be paid by Schneider under the terms of this Agreement.

17.   <u>Impact Class Members</u>.   "Impact Class Members" includes all

non-exempt workers hired and directly employed by Defendant Impact Logistics,

Inc., to work in the Mira Loma Warehouses, at any time from January 1, 2001

through August 9, 2013, as determined through the administration of Plaintiffs'

separate court-approved Premier-Impact Settlements; except that without limiting

the scope of their claims released under this Agreement, Impact Class Members

who also worked for Impact in the Mira Loma Warehouses as a manager or

9

EXHIBIT 3

supervisor (non-lead) shall not be entitled to compensation under this Settlement for workweeks employed in such management capacity. Without limiting the scope of the foregoing class definition, "Impact Class Members" includes a subclass of all Impact Class Members who opted in or are otherwise lawfully included within the collective action portion of the Action that is asserted and maintained under the Fair Labor Standards Act ("FLSA"). For the purpose of minimizing the costs of claims administration, the Claims Administrator will be instructed to use the corrected databases developed during administration of the separate court-approved Premier-Impact Settlements in determining Impact Class Member identities and contact information and administering this Settlement.

18. <u>Mira Loma Warehouses.</u> The "Mira Loma Warehouses" means any or all of the warehouses, buildings, and surrounding premises that have been located at 4100 and 4250 Hamner Avenue, and/or 11900 Riverside Drive and other nearby addresses in Eastvale (formerly Mira Loma), California, owned or leased by Walmart at any time from January 2001 to the present, and operated by Schneider and/or any other logistics companies under service contracts with Walmart.

19. <u>Net Settlement Fund.</u> The "Net Settlement Fund" means the Gross Settlement Amount, less the amounts of all Court-approved: (a) costs of the Claims Administrator; and (b) Class Counsel's attorneys' fees and litigation expenses, as more fully described in Paragraph III.6, below.

**EXHIBIT 3**

20.   Parties.  "Parties" shall mean the parties to the Agreement, specifically, Class Representatives, individually and on behalf of all Class Members, and the Settling Defendants.

21.   Preliminary Approval Order. "Preliminary Approval Order" means the order entered and filed by the Court that preliminarily approves the terms and conditions of this Agreement, including, without limitation, the manner and content of notice provided to the Class.

22.   Premier Class Members.   "Premier Class Members" includes all non-exempt workers hired and directly employed by Defendants Premier Warehousing Ventures, LLC and/or Rogers-Premier Unloading Services, LLC, to work in the Mira Loma Warehouses at any time from February 19, 2009 through February 24, 2012, as determined through the administration of Plaintiffs' separate court-approved Premier-Impact Settlements; except that without limiting the scope of their claims released under this Agreement, Premier Class Members who also worked for Premier in the Mira Loma Warehouses as a manager or supervisor (non-lead) shall not be entitled to compensation under this Settlement for workweeks employed in such management capacity.  Without limiting the scope of the foregoing class definition, "Premier Class Members" includes: (a) a subclass of all Premier Class Members who opted in or are otherwise lawfully included within the collective action portion of the Action that is asserted and maintained under the Fair Labor Standards Act ("FLSA"); and (b) a subclass of all

EXHIBIT 3

employees directly employed by Premier at any time from November 18, 2011
(when Premier informed its then-employed direct employees of those employees'
upcoming termination) through February 24, 2012 (when Premier ceased its
operations at the Warehouses). For the purpose of minimizing the costs of claims
administration, the Claims Administrator will be instructed to use the corrected
databases developed during the administration of the separate court-approved
Premier-Impact settlements in determining Premier Class Member identities and
contact information and administering this settlement.

23. <u>Premier-Impact Settlements.</u> "Premier-Impact Settlements" refers
jointly to the proposed class settlement between Plaintiffs and Premier and the
proposed class settlement between Plaintiffs and Impact, both of which were
preliminarily approved by the Court in this Action on March 24, 2014, and granted
final approval on September 22, 2014.

24. <u>Released Parties.</u> "Released Parties" means Schneider Logistics
Transloading and Distribution, Inc., and Walmart Stores East, LP and their
respective past and present affiliated companies, parents, subsidiaries, related
companies and business concerns, and each of them, as well as each of their past
and present insurers, partners, trustees, directors, shareholders, officers, members,
managers, owners, agents, attorneys, servants, supervisors, and employees, past
and present, and each of them, including without limitation Schneider National,
Inc.

EXHIBIT 3

25.     Settlement.  "Settlement" shall mean and refer to the terms of this

Agreement to settle the claims as set forth and embodied in this Agreement.

26.     Settlement Class/Settlement Class Member(s).  "Settlement Class" or

"Settlement Class Member" means and includes each Class Member who has not

validly opted out of this Settlement as set forth herein.  "Settlement Class" means

the class of all Settlement Class Members.

27.     Settlement Payment.  "Settlement Payment" means the payment to an

Authorized Claimant under the terms of this Agreement as part of the Settlement

of the Action and distribution of the Net Settlement Fund.

28.     Settlement Share.  "Settlement Share" refers to the percentage of the

Net Settlement Fund allocated to each Authorized Claimant using the Parties'

agreed-upon point system for valuing each Authorized Claimant's workweeks

during the Class Period, as is explained more fully in Paragraph V.1, below.

29.     Settling Defendants.  "Settling Defendants" means defendants

Schneider Logistics Transloading and Distribution, Inc. and Walmart Stores East

LP.

## III.     SETTLEMENT TERMS

For and in consideration of the mutual covenants herein, the Parties agree,

subject to Court approval and conditional class certification for settlement

purposes only, that Class Members' claims against Schneider and Walmart shall

be, and are finally and fully compromised and settled, on the terms and conditions

set forth herein:

1.   <u>Gross Settlement Amount.</u>   Subject to conditional class certification

for settlement purposes only and Court approval, and in consideration for the

releases described in this Agreement, Schneider shall pay up to the Gross

Settlement Amount to resolve Class Members' claims against the Settling

Defendants on the terms described more fully below.   The Gross Settlement

Amount shall be used, as specified herein, to: (a) make the Settlement Payments to

all Authorized Claimants; (b) pay any Court-approved Class Representative

Enhancements; (c) pay any Court-approved award of attorneys' fees and

expenses, as described in Paragraph III.3, below; (d) make a payment of civil

penalties to the California Labor and Workforce Development Agency

("LWDA"); (e) pay Schneider's Employer Taxes due on the Settlement Payments

to all Authorized Claimants, to the extent funds remain available in the Gross

Settlement Amount after all other payment obligations under this Agreement have

been satisfied; and (f) pay the cost of the Claims Administrator in providing notice

to the Class, processing claims and exclusion requests, and performing other

settlement administration in accordance with the terms of this Agreement.   An

amount up to, but in no event more than, the Gross Settlement Amount shall be

funded and distributed in accordance with and subject to the terms of this

Agreement.   Under no circumstances shall Schneider ever be required to pay more

than this amount, plus the amount of the Appellate Fee Order as specified in Paragraph III.19 below, in total to all obligees in performing its obligations under this Agreement. Under no circumstances, including but not limited to Schneider's non-performance of any of its obligations under this Agreement, shall Walmart be required under any order by the Court approving the Settlement to pay any amount into the Gross Settlement Amount or to pay any amount to Plaintiffs' counsel, or to any other person or entity, constituting or representing a share of attorneys' fees and expenses.

2.  <u>Class Representative Enhancements</u>.  Plaintiffs' Attorneys represent that they will seek Court approval of Class Representative Enhancements of up to not more than Five Thousand Dollars ($5,000) for each Class Representative who submits a timely Claim Form or is otherwise an Authorized Claimant. The Settling Defendants shall not oppose such an application for Class Representative Enhancements. The Class Representative Enhancements are to be paid from the Gross Settlement Amount in connection with the Settlement described in this Agreement. The Court's refusal to award any or all of the Class Representative Enhancements, either at all or in the amounts requested by Plaintiffs' Attorneys, shall not be grounds for terminating this Agreement.

3.  <u>Attorneys' Fees and Litigation Expenses</u>.  Plaintiffs' Attorneys represent that they will file an application seeking Court approval of an award of reasonable attorneys' fees in the amount of up to and not more than thirty-three

percent (33%) of the Gross Settlement Amount, which is an amount up to and not

more than Six Million Nine Hundred Thirty Thousand Dollars ($6,930,000), for

all work performed by Class Counsel and former Plaintiffs' counsel Janet Herold

in connection with the Action, including any past or future appellate work, and for

reasonable litigation expenses of up to Two Hundred Ten Thousand Dollars

($210,000.00).  The Settling Defendants shall not oppose any application by

Plaintiffs' Attorneys for attorneys' fees and expenses up to the amounts stated

above, and in no event will Plaintiffs' Attorneys' application(s) exceed those

amounts.  To the extent that the Court does not approve the full amounts of

attorneys' fees and/or litigation expenses described in this Agreement, the

amounts not awarded shall become part of the Net Settlement Fund.  The Court's

refusal to award the amounts for fees and expenses requested by Plaintiffs'

Attorneys as set forth above shall not be grounds for terminating this Agreement.

In no event shall Walmart bear any responsibility for payment of whatever fees

and expenses are approved and awarded by the Court or stipulated between and

among the parties.

       4.   <u>Payment to the LWDA.</u>  The Parties agree that, subject to the Court's

approval, a total of up to One Hundred Fifty Thousand Dollars ($150,000) of the

Gross Settlement Amount shall be designated as civil penalties under the

California Labor Code Private Attorneys General Act ("PAGA") and paid to the

LWDA.  This payment to the LWDA shall be made out of the Gross Settlement

Amount in connection with the Settlement described in this Agreement.  Any

higher amount and/or different funding source required by the Court for payment

to the LWDA in connection with the approval of this Agreement shall be grounds

for either of the Settling Defendants to terminate this Agreement.

     5.   <u>Claims Administration.</u>  Subject to the Court's approval, the Claims

Administrator shall give notice to the Settlement Class Members and administer

this Settlement.  The Parties agree that the costs of the Claims Administrator in

providing notice to the Class, processing claims and exclusion requests, and

performing other settlement administration in accordance with the terms of this

Agreement shall be paid out of the Gross Settlement Amount, in an amount not to

exceed $32,000.00, for which Class Counsel have obtained a binding commitment

from the Claims Administrator to perform all settlement and claims administration

services as described in this Agreement.

     6.   <u>Net Settlement Fund:</u>  The Net Settlement Fund shall be calculated as

set forth in Paragraph II.19, above.  In the event that the Court awards or approves

less than amounts described in this Agreement for Class Representative

Enhancements, the payment to the LWDA, Class Counsel's attorneys' fees and

litigation expenses, and/or the costs of notice and claims administration costs, the

difference shall be added to the Net Settlement Fund and made available for

distribution to the Settlement Class Members.

**EXHIBIT 3**

7.    <u>Minimum Settlement Amount.</u>   Settlement Payments to Authorized

Claimants shall be made from the Net Settlement Fund based on the dollar value

of each Authorized Claimant's Settlement Share, as calculated by the Claims

Administrator in the manner specified in this Agreement and approved by the

Court.  In no event shall the total distribution of Settlement Payments to all

Authorized Claimants out of the Net Settlement Fund plus the amounts of the paid

Class Representative Enhancements plus the payment to the LWDA be less than

the dollar value of forty-five percent (45%) of the total Net Settlement Fund,

which is called the "Minimum Settlement Amount."  To the extent that the dollar

value of the total Authorized Claimant Settlement Shares, as calculated by the

Claims Administrator plus the amounts of the paid Class Representative

Enhancements plus the payment to the LWDA is less than the Minimum

Settlement Amount, Authorized Claimants will share in the entire remainder of

the Minimum Settlement Amount on a pro rata basis based on their calculated

Settlement Shares.

8.    <u>Authorized Claimants' Settlement Shares.</u>   The Claims

Administrator shall calculate the Settlement Shares of each Authorized Claimant

by using the Parties' agreed-upon point system for valuing each Authorized

Claimant's workweeks during the Class Period.  As is explained in Paragraph V.1,

below, this point system allocates the fewest points to each workweek during the

"Tolling Period" and "Post-Injunction Period," more points to each workweek in

the "UCL Period," and the greatest number of points to each workweek in the

"PAGA Period," and adds an additional point for certain workweeks if the Class

Member is an FLSA Opt-in Plaintiff.  Each Authorized Claimant's Settlement

Share shall be determined by calculating his/her total points and then computing

his or her proportion of the total points available to all Settlement Class Members.

The total points available shall be calculated by using the Court-approved point

system to value all the workweeks worked by all Settlement Class Members

during the Class Period, which shall not include any points that would be allocated

to any Class Members who opt out of the Settlement.

     9.    <u>Settlement Payments to Authorized Claimants.</u>  Each Authorized

Claimant shall receive a Settlement Payment comprised of the Authorized

Claimant's Settlement Share of the Net Settlement Fund based on his or her

Settlement Share.

     10.    <u>Allocation of Each Settlement Payment and Tax Issues.</u>  Each

Settlement Payment made to an Authorized Claimant, other than a Class

Representative Enhancement, shall be allocated as follows:  (a) forty percent

(40%) shall be allocated to wages (inclusive of the employee's share of payroll

taxes, deductions, and contributions); (b) twenty percent (20%) shall be allocated

to interest; and (c) forty percent (40%) shall be allocated to civil or statutory

penalties or liquidated damages attributable to the Released Class Claims (as

defined below).  The portion of each Settlement Payment that is attributed to

wages shall be reported by the Claims Administrator to government taxing

authorities on Form W-2 prepared by the Claims Administrator and applicable

withholdings shall be taken.  The portions of each Settlement Payment that are

attributed to interest, penalties, and damages shall be reported by the Claims

Administrator to government taxing authorities as miscellaneous income on Form

1099 and no withholdings shall be taken.  The Parties agree that no taxes shall be

withheld from Class Representative Enhancements or Plaintiffs' Attorneys' Fees

and Costs, which shall also be reported by the Claims Administrator to

government taxing authorities on a Form 1099 issued to the Class Representatives

and Plaintiffs' Attorneys, respectively.  The Claims Administrator shall

coordinate and cooperate with the Settling Defendants to ensure that all tax

withholdings and deductions made in administering the Settlement that are

attributable to them are done in accordance with all applicable government

regulatory requirements.

   Schneider's share of payroll taxes, deductions, and contributions

("Employer's Taxes") shall be paid out of the remainder of the Net Settlement

Fund that is not payable to Authorized Claimants for their Settlement Payments

under the terms of this Agreement, to the extent there are funds remaining to cover

all or part of such Employer Taxes and without increasing the Gross Settlement

Amount maximum funding and payment obligations under this Agreement.

**EXHIBIT 3**

11. <u>No Injunctive Relief.</u> The Parties agree that, as part of this Settlement, they will request that the Court dissolve any and all preliminary injunctions currently in force. The Parties agree and understand that this Settlement fully resolves any and all claims Plaintiffs may have, as of the date this Agreement is executed, for declaratory or injunctive relief in connection with the allegations asserted in this Action, and that no such relief will be in effect or binding after final approval of this settlement. Although not part of any order or judgment to be entered by the Court in connection with this Settlement, and without waiver or limitation of any other rights of Plaintiffs and Authorized Claimants regarding the same, Settling Defendants agree that no Class Member will be unlawfully retaliated against for participating in this Settlement; provided, however, that nothing herein shall in any way preclude or limit the imposition of otherwise permissible disciplinary action on any Class Member who is a current employee of either of the Settling Defendants if at the time of its imposition that discipline was or is imposed for lawful reasons.

12. <u>Settlement Class Member Releases.</u>

(a) Upon final settlement approval, each Settlement Class Member, regardless of whether that member submitted a timely Claim Form, and the LWDA (to the extent permitted by applicable law) will release the Released Parties from any and all claims, debts, liabilities, or causes of action that accrued during the Class Period to the extent that they were alleged in the Action, arise out

EXHIBIT 3

**Exh. 3**

of or are related to the allegations and claims that were asserted in the Action, and/or could have been asserted based on the facts, matters, transactions, or occurrences alleged in any of the complaints filed in the Action, including without limitation the Third Amended Complaint, whether under federal law (except the FLSA other than as to Authorized Claimants), state law, or common law, including, without limitation, any violation of the California Labor Code and/or any California Industrial Welfare Commission Wage Order alleged or referred to in the Action or which could have been alleged or referenced. The claims released shall be referred to herein as the "Released Class Claims," and include any claims that accrued during the Class Period for unpaid wages of any type, unpaid overtime, unpaid commissions, unpaid premium pay, damages, reimbursement, restitution, losses, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive or declaratory relief, chargebacks, liquidated damages or similar relief. Other than for Authorized Claimants, "Released Class Claims" does not include any claims arising under the FLSA that require, by law, a person to opt into an action to be able to assert such a claim, as the release of such claims is specifically addressed separately herein.

(b) It is further understood and agreed by the Parties, and each of them, that as a condition of this Agreement, each Settlement Class member, regardless of whether that member submitted a timely Claim Form, hereby expressly waives and relinquishes any and all claims, rights, or benefits that such Settlement Class

**EXHIBIT 3**

Member may have under California Civil Code section 1542 with respect to the Released Class Claims, which provides as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release which if known by him or her must have materially affected his or her settlement with the debtor."

In connection with such waiver and relinquishment, all Settlement Class Members, and each of them, hereby acknowledge that they or their attorneys may hereafter discover claims or facts in addition to, or different from, those which they now know or believe to exist, but that they expressly agree to fully, finally, and forever settle and release any and all claims, known or unknown, suspected or unsuspected, which exist or may have existed during the Class Period based on, arising out of or related to the allegations that were alleged in the Action or could have been alleged based on the facts, matters, transactions, or occurrences alleged in any of the complaints filed in the Action, including without limitation in the Third Amended Complaint, on their behalf against the Settling Defendants. The Parties, and each of them, further acknowledge, understand, and agree that this representation and commitment is essential to each of the other Parties and that this Agreement would not have been entered into were it not for this representation and commitment.

**EXHIBIT 3**

13. <u>FLSA Released Claims.</u> Upon final settlement approval, all FLSA Opt-in Plaintiffs, as defined herein, and all Authorized Claimants (who will be deemed to have opted into the collective action portion of the Action by submitting a timely Claim Form in accordance with the terms of this Agreement as approved by the Court) will release the Released Parties from any and all claims for relief under the FLSA, whether known or unknown, which any FLSA Opt-in Plaintiff or Authorized Claimant had or has against the Released Parties or any of them for any acts or omissions occurring during the Class Period, that are alleged in the Action, arise out of the facts, matters, transactions, or occurrences involved in or related to the Action, or which could have been alleged as separate claims, causes of action, lawsuits or other theories of relief in this Action. The claims released shall be referred to herein as the "FLSA Released Claims" and shall include all types of relief available under the FLSA with respect to any claims for unpaid wages, unpaid overtime, unpaid commissions, unpaid premium pay, damages, reimbursement, restitution, losses, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive or declaratory relief, chargebacks, liquidated damages or similar relief; provided, however, that if the Court does not approve the release of FLSA claims by FLSA Opt-In Plaintiffs and/or by Authorized Claimants who submit a valid Claim Form but who had not previously opted into the FLSA collective action in the Action, such persons shall not be deemed to have granted releases with respect to any FLSA Released Claims, and

**EXHIBIT 3**

the releases in this Agreement shall otherwise remain valid and enforceable in their entirety, and the Agreement shall otherwise remain valid and enforceable in its entirety, unless either of the Settling Defendants exercise their right to terminate this Agreement due to such non-approval by the Court.  In the event such non-approval occurs and the Settling Defendants do not terminate this Agreement, the Settlement Payments to such Authorized Claimants shall not include any portion of their Settlement Shares allocated to FLSA claims, and the Gross Settlement Amount shall be reduced by the total amount thereof allocated to FLSA claims.  Class Representatives and Class Counsel do not and shall not oppose or otherwise object to all Authorized Claimants who submit a valid Claim Form from releasing FLSA Released Claims as provided herein.

  14. <u>Mutual Releases by Class Representatives and Settling Defendants.</u>

  (a) The Class Representatives, and each of them, represent and warrant that, except for the claims set forth in the Third Amended Complaint in this Action, they do not currently have on file, and further represent that they will not hereafter file any grievances, complaints, or actions against the Settling Defendants with any arbitrator, or with any board, administrative agency, or court, based upon any actions occurring during the Class Period, unless otherwise permitted by law.

  (b) Except as otherwise provided herein, in consideration for the promises set forth above, the Class Representatives, and each of them, on the one

**EXHIBIT 3**

hand, and the Settling Defendants, and each of them, on the other hand, for themselves and their respective agents, heirs, predecessors, successors, assigns, representatives and attorneys, and each of them, do hereby mutually waive, release, acquit and forever discharge each other and the Released Parties, from any and all employment-related claims, actions, charges, complaints, grievances and causes of action of whatever nature, whether known or unknown, which exist or may have existed during the Class Period on behalf of each Class Representative and Settling Defendant, respectively, including but not limited to any and all tort claims, contract claims, wage claims, wrongful termination claims, disability claims, benefit claims, public policy claims, retaliation claims, statutory claims, personal injury claims, emotional distress claims, invasion of privacy claims, defamation claims, fraud claims, quantum meruit claims, and any and all claims arising under any federal, state or other governmental statute, law, regulation or ordinance, including, but not limited to claims for violation of the Fair Labor Standards Act, the California Labor Code, the California Wage Orders, other state wage and hour laws, Americans with Disabilities Act, Age Discrimination in Employment Act (ADEA), Employee Retirement Income Security Act, Title VII, California Fair Employment and Housing Act, California Family Rights Act and Family Medical Leave Act, California Whistleblower Protection Act), California Business & Professions Code section 17200, personal injury claims, emotional distress claims, invasion of privacy claims, defamation claims, fraud claims, and

**EXHIBIT 3**

any and all claims arising under any federal, state or other governmental statute, law, regulation or ordinance.

(c)  It is further understood and agreed by the Class Representatives and Settling Defendants, and each of them, that as a condition of this Agreement, they each hereby expressly waive and relinquish any and all employment-related claims, rights or benefits that they may have under California Civil Code section 1542, which provides as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release which if known by him or her must have materially affected his or her settlement with the debtor."

In connection with such waiver and relinquishment, the Class Representatives and Settling Defendants, and each of them, hereby acknowledge that they or their attorneys may hereafter discover employment-related claims or facts in addition to, or different from, those which they now know or believe to exist, but that they expressly agree to fully, finally, and forever settle and release any and all claims, known or unknown, suspected or unsuspected, which exist or may have existed during the Class Period on their behalf against each other, including any and all claims relating to or arising from the Class Representatives' direct employment with Premier and/or Impact.  The Class Representatives and Settling Defendants, and each of them, further acknowledge, understand, and

**EXHIBIT 3**

agree that this representation and commitment is essential to each of them and that this Agreement would not have been entered into were it not for this representation and commitment.

15.    <u>Indemnity Claims Reserved.</u>  By this Agreement, the Settling Defendants do not intend to settle, release, or resolve any type of indemnity or other claims or rights either may have as against each other, Impact and/or Premier, and the Parties agree that this Agreement is without prejudice to the assertion of any such claims or rights by either of the Settling Defendants, except as may be set forth in any separate written agreements on the subject, which are not and will not be modified or affected by this Agreement.

16.    <u>Stipulated Settlement Class.</u>  For purposes of settlement only, the Parties stipulate that a class comprising all Class Members may be certified under Rule 23 of the Federal Rules of Civil Procedure, and that all of the prerequisites for establishing class certification for this limited purpose have been met.  For purposes of settlement only, the Parties also stipulate that all Class Members are similarly situated within the meaning of 29 U.S.C. §216(b).

17.    <u>Execution of the Agreement.</u>  This Agreement shall become enforceable in accordance with its terms upon its execution by:  (a) one or more Impact Class Representatives; (b) one or more Premier Class Representatives; (c) the Settling Defendants; (d) Class Counsel; and (e) Settling Defendants' respective counsel.  The Parties intend this agreement to be admissible and

**EXHIBIT 3**

binding, but fully understand that no settlement can be effectuated on behalf of the plaintiffs or the Class without the final approval of the Court in this Action.

18.    <u>Effect of Court Order Granting or Denying Approval in Whole or in Part.</u>  Upon full execution of this Agreement, the Parties shall take all necessary steps to obtain Preliminary and Final Approval of the Settlement.  As part of the process of obtaining final approval of the Settlement, the Parties agree to seek dismissal with prejudice of the Settlement Class Members' claims against the Settling Defendants.  If the Court gives final approval to the Settlement, the Action shall be dismissed with prejudice as between Plaintiffs and the Settling Defendants within fourteen (14) days after the Effective Date.

          If the Court does not approve this Agreement as presented herein, the Agreement shall terminate and be of no force or effect, unless the Parties agree in writing to modify this Agreement in the manner necessary to obtain Court approval.  This Agreement shall not terminate should the Court elect to reduce the amounts of attorneys' fees, litigation expenses, Class Representative Enhancements, and/or the payment to the LWDA.

19.    <u>Payment of Appellate Fee Order.</u>  Not later than ten (10) days after the filing of Plaintiffs' motion for preliminary approval, Schneider shall pay Plaintiffs' Attorneys the award of attorneys' fees and costs in the amount of $178,000.98, as ordered by the Ninth Circuit Court of Appeals on April 21, 2014 (the "Fee Award"), in full and final satisfaction of any and all amounts owed or

claimed to be owed in connection therewith, and Plaintiffs' Attorneys shall

provide Schneider with a properly prepared and signed acknowledgment of full

satisfaction of the Fee Award immediately upon such payment.  Payment of the

Fee Award by Schneider shall be separate from and in addition to any payments

that Schneider may be required to make to fund the Gross Settlement Amount

pursuant to this Agreement.  With the exception of such Fee Award, Schneider

shall not be required under any circumstances to pay more than the total Gross

Settlement Amount in performing its obligations under this Agreement.

## IV.   <u>PRELIMINARY AND FINAL APPROVAL, CLASS NOTICE, AND CLASS MEMBER RESPONSES</u>

As part of this Agreement, the Parties agree to the following procedures for

obtaining the Court's preliminary and final approval of the Settlement, certifying

the Class for purposes of settlement only, notifying Class Members, and

addressing Class Member responses to Class Notice.

1.   <u>Request for Preliminary Approval Order</u>.  Upon full execution of this

Agreement, the Parties shall take all necessary steps to obtain the Court's

preliminary approval of the Settlement.  Within thirty (30) days following

execution of this Agreement by the Parties,  Class Counsel shall file with the Court

a motion seeking preliminary approval of the Settlement by the Court, approval of

the Class Notices to be sent to the Class Members ("Class Notices," attached

hereto as Exhibit B), approval of  the Claim Forms ("Claim Forms," attached

hereto as Exhibit A), approval of an opt-out method, approval of the method of

giving Class Notice as set forth in this Agreement, appointment of the Claims

Administrator, approval of a deadline for Plaintiffs to file a Motion for Final

Approval, and the setting of a hearing date for final approval of the Settlement

Agreement and hearing any objections to the settlement.  Plaintiffs shall seek to

certify the Class for settlement purposes only, as defined above.  The Settling

Defendants shall not oppose such motion, and shall cooperate in good faith with

Plaintiffs to the extent necessary to file such motion.  Plaintiffs shall provide the

Settling Defendants with a draft of their Motion for Preliminary Approval of the

Settlement for their review and comments not less than seven (7) days before it is

filed.

      2.   <u>Notice of Settlement to Appropriate Government Officials</u>.  Within

ten (10) calendar days after the filing of a motion for preliminary approval of the

Settlement with the Court, the Settling Defendants shall provide appropriate

notice of the Settlement to appropriate state and federal officials in conformance

with the Class Action Fairness Act.

      3.   <u>Class Notice</u>.  Notice of the Settlement shall be provided to all Class

Members.  The Parties believe and agree that the following procedures for such

notice provide the best practicable notice to Class Members.

      (a)  The Parties intend that reasonable means be used to maximize the

probability that all Class Members shall receive the Class Notices and Claim

Forms, as approved by the Court. To this end, the Claims Administrator shall use the class member information compiled during the administration of the Premier-Impact Settlements as a starting point for preparing the Claim Forms and for notifying Class Members of the Settlement. This Class Member information includes each Class Member's full name; last known address; last known telephone number(s); Social Security Number; and hire and termination dates, all as provided by Premier and Impact to the Claims Administrator and modified, corrected, or updated during the administration of the Premier-Impact Settlements. To the extent the Parties have any additional or updated contact information for any Class Member, the Parties shall provide the Claims Administrator with such information before the initial mailing and periodically as new information is obtained.

(b) The Claims Administrator shall be responsible for updating the Premier-Impact Settlements website maintained at the URL www.warehousesettlement.com by posting thereon downloadable versions of: (i) this Agreement; (ii) the Class Notices; (iii) a blank Claim Form along with instructions for filling out such a blank form; (iv) the Court's order granting preliminary approval and/or final approval; (v) Plaintiffs' motion for attorneys' fees and expenses; and (vi) any other matters agreed to by the Parties and/or ordered by the Court. The Settlement website shall not be used for the submission of Claim Forms, Objections, or Opt-out notices.

EXHIBIT 3

(c)   The Claims Administrator shall be responsible for preparing, printing, and mailing to all Class Members the Class Notices and Claim Forms attached to this Agreement, as approved and directed by the Court, along with a properly addressed return envelope.  The Claim Forms prepared for each Class Member shall be individualized and shall state the number of covered weeks the Class Member worked during the Class Period, along with the start and end date(s) for his or her tenure as a direct employee for Impact and/or Premier.  Each individualized Claim Form sent to a Class Member shall include a statement of the Class Member's estimated Settlement Payment, based on the calculations described below in Paragraph V.1.  The Claims Administrator shall also provide blank forms if requested by any Class Member or other individual not included in the Class Member database, along with instructions for filling out such Claim Form and substantiating the individual's right to participate in the Settlement.

(d)   No later than fifteen (15) calendar days after the latter of preliminary approval of the Settlement or Court approval of the Class Notices and Claim Forms, the Claims Administrator shall send a copy of the Class Notices and Claim Forms (the "Notice Packet") to all Class Members via first-class mail, postage prepaid, to each Class Member's last known address.

(e)   The Class Notices shall inform the Class Members that, except as provided in this Agreement, the deadline for submitting any objection to the Settlement or for opting out of the Settlement shall be seventy-five (75) calendar

**EXHIBIT 3**

days after the postmark date of the mailing of the Notice Packet, and that the

deadline for submitting a Claim Form shall be ninety (90) calendar days after such

postmark date.

(f)  Forty-five (45) calendar days after the Notice Packet is sent to Class

Members, the Claims Administrator shall mail a follow-up notice to those Class

Members who have not yet responded to the Class Notices.

(g)  Prior to mailing the follow-up Notice Packet, the Claims

Administrator shall use standard procedures to obtain forwarding addresses,

including:  (i) processing the class list through the United States Postal Service's

National Change of Address database; (ii) performing address searches using

public and proprietary electronic resources which lawfully collect address data

from various sources such as utility records, property tax records, motor vehicle

registration records and credit bureaus; and (iii) calling last-known telephone

numbers (and telephone numbers updated through public and proprietary

databases) to contact Class Members to obtain their current addresses.  For any

notice that is returned by the post office with a forwarding address, the Claims

Administrator shall also forward the notice to that new address within five (5)

calendar days of receipt of the forwarding address.  For any notice that is returned

by the post office as undeliverable, the Claims Administrator shall perform a skip

trace, and if successful in locating an alternate subsequent address, shall forward

EXHIBIT 3

Exh. 3

such notice to the new address within ten (10) calendar days of receipt of the
undeliverable notice.

(h)   In addition to the foregoing, Plaintiffs and their counsel may, but are
not obligated to, supplement the mailed notice at their own cost and expense not to
be paid out of the Gross Settlement Amount with alternative forms of notice
through Spanish-language radio announcements, newspaper notices, and/or
leaflets, and may provide Claim Forms to Class Members for whom there is no
known address but who come forward to validly establish their eligibility to
participate in this Settlement.  Nothing in this Agreement authorizes or permits
Plaintiffs, Class Counsel and/or their agents or representatives to enter and/or be
upon the Mira Loma Warehouses for any such purposes.

(i)   If a Claim Form, objection, or opt out form is timely submitted but is
deficient in one or more aspects, the Claims Administrator shall, within five (5)
calendar days of receipt of the deficient form, return the form to the Class Member
with a letter explaining the deficiency and informing the Class Member that he or
she shall have fourteen (14) calendar days from the date of the deficiency notice to
correct the deficiency and resubmit the Claim Form.  This letter shall be translated
into Spanish by a court-certified and approved interpreter, subject to the Settling
Defendants' reasonable approval thereof before being incurred, and the reasonable
cost of translation shall be an acceptable settlement administration expense.

EXHIBIT 3

(j)  Any resubmitted Claim Form must be postmarked within fourteen (14) calendar days of the date of the deficiency notice to be considered timely, unless there is a showing of good cause for additional time.  The Claims Administrator shall notify Class Counsel and Settling Defendants' counsel within five (5) calendar days of receipt of each deficient form and shall provide a copy of the deficient form to Class Counsel and Settling Defendants' counsel.  The Claims Administrator has no obligation to provide a Class Member with a second notice of deficiency, unless a different deficiency is later uncovered.

4.  <u>Class Members Entitled to Participate in Settlement.</u>  Class Members who are entitled to receive a Settlement Payment are referred to as Authorized Claimants and include the following:

(a)  Any Class Member who was employed as a direct employee of Defendant Schneider at the Mira Loma Warehouses on April 30, 2014, and is still currently so employed as of the date of preliminary settlement approval, shall be provided with Class Notice and an opportunity to object and/or opt out.  Unless such a Class Member opts out of the Settlement, however, each such Class Member shall be deemed to have submitted a valid Claim Form to participate in the Settlement and shall not be required to submit such a Claim Form to assert a right to participate; provided, however, that any Settlement Payment made to such a Class Member will not include any portion allocated to FLSA claims unless such Class Member is an Opt-In Plaintiff and/or has previously submitted a claim form

**EXHIBIT 3**

opting into the FLSA portion of this Action in connection with the Premier-Impact

Settlements; otherwise such Class Member will be required to file a Consent to

Join the Action to receive any portion of his or her Settlement Payment allocated

to FLSA claims.  To the extent that such a Class Member disagrees with the

number of workweeks or the dates of employment listed on the Claim Form, he or

she shall have the same right as any other Class Member to challenge this

information and provide information or documents to support a correction of this

information.

(b)  To the extent that a Class Member has sought a correction of the

number of workweeks and/or dates of employment in the context of the

Premier-Impact Settlements, the corrections accepted by the Claims

Administrator in that context shall be used in this Settlement to calculate the

Settlement Shares of such Authorized Claimants.

(c)  All Class Members other than those identified in Paragraph 4(a)

above, must timely and properly submit a valid Claim Form to participate in this

Settlement.  Absent a showing of good cause in accordance with the procedures

set forth in this Agreement, no Claim Form shall be honored if postmarked more

than ninety (90) calendar days after the date first mailed to the Class Member.

Any Class Member not included in Paragraph 4(a) who, without good cause,

submits a Claim Form postmarked more than ninety (90) calendar days after the

date the Claim Forms are mailed to Class Members shall be deemed to have

**EXHIBIT 3**

waived irrevocably any right in or claim to a Settlement Payment, but this
Settlement shall nevertheless be fully binding on such Class Members subject to
the terms set forth herein.  The Claims Administrator shall notify Class Counsel
and Settling Defendants' counsel within five (5) calendar days of receipt of each
untimely Claim Form.  The Claims Administrator shall make the final
determination, based on input from Class Counsel and Settling Defendants'
counsel and any explanation provided by the Class Member who submitted the
untimely Claim Form, whether good cause exists for honoring the untimely Claim
Form.

  5. <u>Opting Out of the Settlement</u>.  Class Members may opt out of the
Settlement by timely mailing a valid opt-out statement to the Claims
Administrator.

  (a) Any opt-out statement, to be valid, must state the name, telephone
number, and current address of the Class Member, the years the Class Member
worked for the Settling Defendant(s), and the address to which the Class
Member's Claim Form was mailed, and must include the following language:  "I,
[NAME], voluntarily choose not to participate in the settlement of my claims
against Defendants Schneider Logistics Transloading and Distribution, Inc. and
Walmart Stores East LP, and hereby waive any rights I may have to participate in
the settlement against those companies in the federal court lawsuit entitled
*Carrillo v. Schneider Logistics, Inc*., Case No. CV 11-8557 CAS (DTBx)."  The

opt-out statement must be personally signed by the Class Member who seeks to opt out. No opt-out request may be made on behalf of a group of Class Members.

(b) Absent a showing of good cause and in accordance with the procedures set forth in this Agreement, no opt out statement shall be honored or valid if postmarked more than seventy-five (75) calendar days after the postmark date of the Class Notice or any follow up notice mailed by the Claims Administrator to the Class Member who seeks to opt out. Requests to opt out that do not include all required information, or that are not submitted on a timely basis, shall be deemed null, void and ineffective. If a Class Member files both an opt-out statement and a Claim Form, the opt-out statement shall be deemed invalid and the Class Member's Claim Form and release of claims shall be valid and controlling.

(c) Class Members (including FLSA Opt-In Plaintiffs) who submit valid and timely requests to opt out of the Settlement may not participate in any portion of the Settlement and shall not receive any Settlement Payment, nor shall such Class Members be bound by the terms of the Settlement or the dismissal with prejudice of the Settling Defendants.

(d) A Class Member who does not timely opt out of the Settlement as described in this Agreement shall be considered a Settlement Class Member and shall be bound by the terms and conditions of this Agreement, regardless of whether he or she timely submits a valid Claim Form.

6.   <u>Objecting to the Settlement.</u>  Any Class Member who does not timely opt out may otherwise timely and properly object to the Settlement.  The Class Notice shall provide that Class Members who wish to object to the Settlement must submit a written statement of objection subject to the provisions set forth below:

(a)   The Class Member's statement of objection must set forth his or her name, address, telephone number, the reason(s) why the Class Member is objecting to the proposed settlement, the date and signature of the Class Member and whether he or she intends to appear at the hearing on final approval either personally or through counsel.

(b)   Any such objection must be filed with the clerk of the Court and served on all counsel identified in the Class Notice no later than seventy-five (75) calendar days after the postmark date of the mailing of Class Notice and Claim Form.  The postmark date of the mailing shall be the exclusive means for determining whether an objection is timely.

Class Members who fail to make objections in the manner specified shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement, and the Settlement shall be fully binding upon them.

EXHIBIT 3

7.    Termination.  If ten percent (10%) or more of the Class Members opt out of the Settlement, then either of the Settling Defendants shall have the right to terminate this Agreement, which will then be void ab initio.

8.    Non-Interference with Claims Procedure and Settlement.  The Parties and their counsel agree that they shall not seek to solicit or otherwise encourage Class Members to submit opt-out requests or objections to the Settlement or to appeal from the Final Approval Order.

9.    Class Member Challenges to Stated Workweeks.  Any Class Member shall be entitled to submit a written, signed challenge to the hire date, termination date, or number of workweeks set forth on his or her Claim Form.  The challenge must specify the grounds for the challenge and include any supporting documentation and must be mailed to the Claims Administrator, postmarked on or before the deadline to submit objections or requests for exclusion.  Upon receipt of any such challenge, the Claims Administrator shall promptly serve counsel for all Parties with a copy of the challenge.  The Claims Administrator shall evaluate the evidence submitted by the Class Member and by any of the Parties and shall make a final, binding determination based on its evaluation of the evidence.  The Claims Administrator shall inform all Parties and the Class Member who submitted the challenge of how the dispute was resolved within five (5) calendar days after the Claims Administrator makes its determination.

In the event that any disputes remain, it is agreed that, if the Court grants final approval to the Settlement, the Court may resolve any remaining disputes as to the validity or amount of Class Members' Settlement Shares at the same time, it being the intent of the Parties to resolve such disputes, if any, as expeditiously and in as informal a manner as is consistent with the due process rights of the Class Members.

10. <u>Claims Administrator's Performance</u>. All disputes relating to the Claims Administrator's performance of its duties shall be referred to the Court, if necessary, which shall have continuing jurisdiction over the terms and conditions of the Settlement until all payments and obligations contemplated by the Settlement have been fully satisfied and carried out.

11. <u>Reports by the Claims Administrator</u>. No later than thirty (30) calendar days prior to the date of the Final Settlement Hearing, the Claims Administrator shall provide counsel for the Parties with a declaration setting forth: (a) due diligence and proof of mailing of the Class Notices and due diligence; (b) the total number of Class Members who were sent the Class Notices; (c) the total number of Authorized Claimants, the total number of points assigned to them, and the total Settlement Shares they represent; (d) the total number of Settlement Class Members and the total number of points attributable to their workweeks; (e) the total number of Class Members who submitted valid Claim Forms without seeking any correction of the dates worked contained therein; (f) the total number of Class

EXHIBIT 3

Exh. 3

Members who submitted claims that were deficient, or sought to correct the dates worked in the Claim Form, and how such deficient or allegedly incorrect Claim Forms were resolved; (g) the total number of Class Members who filed valid requests to opt out, including complete copies of all such requests, including the postmark dates for each; and (h) the total number of Class Members who filed timely objections to the Settlement, along with the complete copies of all objections received, including the postmark dates for each objection. The Claims Administrator shall provide an updated declaration on these matters three (3) calendar days prior to the date of the Final Settlement Hearing if any changes or additions have occurred, and again the business day after the Effective Date of the Settlement or such other later date as the Court or the Parties may agree upon. The Claims Administrator shall keep the originals of all settlement administration documents sent to and received from the Class Members, including checks issued to and/or negotiated by the Class Members, for at least five (5) years after the Effective Date, and shall comply with any request for copies of any such documents, if such request is made by any Party's counsel during the settlement administration process or during the subsequent five-year period, after giving reasonable notice of that request to counsel for the other Parties to this Agreement, who shall also be entitled to copies of the requested documents.

12. <u>Motion for Final Approval.</u> Prior to the Final Settlement Hearing, at such time as shall be set by the Court, the Plaintiffs shall file a memorandum of

EXHIBIT 3

points and authorities in support of final approval of all terms of the Settlement, including a specific request for an award of attorneys' fees and litigation expenses as agreed to in this Settlement.  All requests for exclusion from the Class and all written objections to the Settlement and/or notices of intention to appear and object shall be filed with the Court and served on the Settling Defendant's counsel by Plaintiffs' Attorneys no later than ten (10) days before the Final Settlement Hearing.  A draft of Plaintiffs' Motion for Final Approval of the Settlement and for Attorneys' Fees and Expenses shall be provided to the Settling Defendants for review and comments not less than seven (7) days before being filed with the Court.

13.    <u>Final Settlement Hearing</u>.  After expiration of the deadlines for submitting a Claim Form, opting out, and submitting objections, the Court shall conduct a Final Settlement Hearing to determine whether the settlement is fair, reasonable, and adequate, to enter an order approving the settlement and dismissing the claims of the Settlement Class Members against the Settling Defendants, and to order amounts properly payable for attorneys' fees and litigation expenses, Class Member Enhancements, PAGA penalties paid to the LWDA, and the costs of administration of the Settlement.

<u>Appellate Review</u>.  Plaintiffs and their counsel reserve the right to appeal any denial or reduction in the amount of requested attorneys' fees and litigation expenses awarded by the Court.  The Parties agree that

regardless of any action taken by the Court with respect to attorneys' fees and litigation expenses, however, the validity of the underlying Settlement shall not be affected. In the event any appeal or collateral attack is filed concerning any of the Court's orders pertaining to the Settlement, administration of the Settlement shall be stayed pending final resolution of such appeal or review, unless the appeal involves only the denial or reduction in the amount of Class Counsel's requested attorneys' fees and litigation expenses. If, after the conclusion of any such appeal of the denial or reduction in Class Counsel's requested attorneys' fees and litigation expenses, additional Claims Administration costs are incurred as a result of a supplemental distribution of funds to Class Members, those Claims Administration costs shall be paid from the funds of the Net Settlement Fund available for such a supplemental distribution.

## V.      SETTLEMENT FUNDS, CLAIMS PROCESSING, AND SETTLEMENT PAYMENT CALCULATION

1. <u>Calculation of Settlement Shares.</u> The Parties agree to the following method for calculating Settlement Shares for each Authorized Claimant:

(a) The Parties agree to use the points system set forth below for calculating the total points available for the entire Settlement Class and the Settlement Share for each Authorized Claimant. Each week worked by a

Settlement Class Member during the Class Period shall be assigned the following point(s) based on its time period:

(1)  Each workweek at any time from January 1, 2001 through October 16, 2007, called the Tolling Period, shall be assigned one (1) point;

(2)  Each workweek at any time from October 17, 2007 through October 16, 2010, called the UCL Period, shall be assigned five (5) points;

(3)  Each workweek at any time from October 17, 2010 through December 31, 2011, called the PAGA Period, shall be assigned seven (7) Points;

(4)  Each workweek at any time from January 1, 2012 through August 9, 2013, called the Post-Injunction Period, shall be assigned one (1) point; and

(5)  Each workweek worked by an FLSA Opt-in Plaintiff during the period from October 17, 2008 through December 31, 2011 shall be assigned one (1) additional point.

(b)   Within ten (10) days after the Court's order preliminarily approving this Settlement, the Claims Administrator shall calculate the total number of points available to all Class Members, using the Class Information initially provided by Premier and Impact and modified, corrected, and updated

46
EXHIBIT 3

during the implementation of the Premier-Impact Settlements. The Claims Administrator shall multiply each workweek included in the Class Information by the applicable number of points indicated under the Parties' point system to determine the total points available to the Class. The Claims Administrator shall provide these calculations to Class Counsel and to Settling Defendants' counsel.

(c)   In preparing the Claim Forms to be mailed to Class Members, the Claims Administrator shall determine each Class Member's estimated Settlement Payment for inclusion on their Claim Form by calculating the number of points attributable to the weeks worked by the Class Member, determining what percentage the Class Member's points is out of the total points available to the entire Class, and then computing the Class Member's Settlement Share by calculating the amount that reflects his or her likely percentage of the Net Settlement Fund.

(d)   Within ten (10) days after the deadline for opting out of the settlement, the Claims Administrator shall calculate the total number of points available to the Settlement Class Members, by deducting from the total Class points, described in subparagraph (b), above, any points attributable to any Class Members who timely opted out of the Settlement. The Claims Administrator shall provide these calculations to Class Counsel and to Settling Defendants' counsel.

(e)   Within five (5) days after entry of the Final Approval Order, the Claims Administrator shall calculate the total number of points available to all

EXHIBIT 3

Authorized Claimants and determine the proportional relationship between the total Authorized Claimant points and the total Settlement Class Member points, and the dollar values thereof in relation to the Net Settlement Fund.

    2.  <u>Deposit of Settlement Funds upon Final Approval</u>.  Within fourteen (14) calendar days after entry of the Final Approval Order, Schneider shall deposit into a Qualified Settlement Fund established by the Claims Administrator all amounts approved by the Court in the entered Final Approval Order for payment from the Gross Settlement Amount under this Settlement.  Such funds shall be maintained in an interest-bearing depository account to be approved by Schneider in advance of the deposit being made.  Any interest accruing on the funds held in the Qualified Settlement Fund by the Claims Administrator shall accrue to the benefit of and be distributed as part of the Net Settlement Fund; provided, however, if the Effective Date does not occur or the Final Approval Order is otherwise reversed or vacated in whole or in part by reason of appellate review or collateral attack such that the funds are not to be distributed, the amounts deposited by Schneider into the Qualified Settlement Fund, including all interest accruing thereon, shall be returned to Schneider, with the exception of any funds already paid to the Claims Administrator for fees and costs actually incurred for services already performed as part of the administration of the Settlement.

    3.  <u>Distribution of Settlement Payments</u>.  Except as otherwise permitted under this Agreement, no money shall be distributed from funds deposited into the

Qualified Settlement Fund prior to thirty-three (33) calendar days after the date of

entry of the Court's Final Approval Order, and unless and until the Effective Date

occurs. Within thirty (30) calendar days of the Effective Date, the Claims

Administrator shall calculate the final Settlement Payment for each Authorized

Claimant.  If the combined total of all amounts due to Authorized Claimants

pursuant to Paragraph V.1 plus Class Member enhancements pursuant to

Paragraph III.2 plus the LWDA payment of $150,000 pursuant to Paragraph III.4

is less than the Minimum Settlement Amount, the Claims Administrator shall

allocate the amount necessary to meet the Minimum Settlement Amount to

Authorized Claimants on a pro rata basis.  Within that same deadline, the Claims

Administrator shall issue checks to each Authorized Claimant to be paid out of the

Qualified Settlement Fund (including accrued interest, if any), and shall mail those

checks to all Authorized Claimants.  The Claims Administrator shall issue and

distribute to each Authorized Claimant a single check that includes both a wage

payment and 1099 payments for penalties, damages and interest and, if applicable,

for Class Representative Enhancements.  All checks to Authorized Claimants shall

clearly bear a marking that such checks will expire ninety (90) days after issuance.

The Claims Administrator shall, within sixty (60) days following such

disbursement, file an accounting of such disbursements with the Court, with

copies to Class Counsel and the Settling Defendants' counsel.

Distributions of Settlement Payments by the Claims Administrator shall indicate the percentage of each award attributable to wages subject to employment taxation, and the percentage of each award attributable to penalties, damages and interest, or Class Representative Enhancements subject only to income taxation. To the extent any Class Member's payment must be wired or otherwise delivered in a manner other than through issuance of a check, any and all additional administrative fees and required withholdings shall be paid from that Class Member's individual payment.

4. <u>Uncashed Checks Payable to *Cy Pres* Fund.</u>  To the extent that any checks for Settlement Payments are returned as undeliverable or are not cashed within ninety (90) days after issuance, these Settlement Payments shall constitute unpaid residuals in the Action and shall be paid as *cy pres* in equal amounts to Inland Counties Legal Services and to the National Employment Law Project.

## VI.    <u>GENERAL PROVISIONS</u>

1. <u>No Admission of Liability or Wrongdoing.</u>  The Parties enter into this Agreement to resolve the disputes that have arisen between them and to avoid the burden, expense, and risk of continued litigation.  In entering into this Agreement, the Settling Defendants do not admit, and specifically deny that: they have violated any federal, state, or local law; violated any regulations or guidelines promulgated pursuant to any statute or any other applicable laws, regulations or legal requirements; breached any contract; violated or breached any duty; engaged

EXHIBIT 3

in any misrepresentation or deception; or engaged in any other unlawful conduct with respect to their employees or operations. Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Settling Defendants of any such violation(s) or failure(s) to comply with any applicable law. Except as necessary in a proceeding to enforce the terms of this Agreement, this Agreement and its terms and provisions shall not be offered or received as evidence in any action or proceeding to establish any liability or admission on the part of the Settling Defendants or to establish the existence of any condition constituting a violation of, or noncompliance with, federal, state, local or other applicable law. The Parties intend this Settlement to be contingent upon the preliminary and final approval of this Agreement; and the Parties do not waive, and instead expressly reserve, their respective rights to prosecute and defend this Action as if this Agreement never existed in the event that the Settlement is not fully and finally approved as set forth herein.

2.    It being the mutual intention of the Parties that the Settlement be expeditiously approved by the Court and that the dispute between the Plaintiffs and the Class Members on the one hand, and the Settling Defendants, on the other hand, be finally resolved, the Parties agree to use their best efforts to effectuate the terms and conditions of this Settlement Agreement and to cooperate in good faith to secure Court approval, both preliminary and final.

EXHIBIT 3

3. <u>Good Faith Settlement</u>. This Settlement has been negotiated and entered into between the Parties through arms-length negotiations, and it is made in good faith, including within the meaning of California Code of Civil Procedure sections 877 et seq. and any comparable provisions provided under the laws of any state or territory of the United States, whether statutory or judicial decision, which is equivalent or similar to such California code sections.

4. <u>Applicable Law</u>. This Settlement Agreement shall be construed and interpreted under the laws of the State of California, except to the extent that federal law requires federal law to govern.

5. <u>Construction</u>. The Parties have reached this Agreement through formal mediation followed by extensive arms-length negotiations. This Agreement has been drafted jointly by counsel for the Parties. Hence, in any construction or interpretation of this Agreement, the Agreement shall not be construed against either party as the principal drafter of the Agreement. Should any dispute arise as to the validity, effect or interpretation of any portion of this Settlement Agreement, such dispute may be resolved through application by any of the Parties to the Court in the Action.

6. <u>Amendment or Waiver Only in Writing</u>. This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest. No rights hereunder may be waived except in writing.

EXHIBIT 3

7.   <u>Entire Agreement</u>.  This Agreement and any attached exhibits constitute the entire agreement between the Parties relating to the Settlement and the related transactions contemplated herein.  All prior or contemporaneous agreements, understandings and statements, whether oral or written, and whether by a party or its counsel, are merged herein. No oral or written representations, warranties or inducements have been made to any Party concerning this Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Notwithstanding the foregoing, nothing in this paragraph or elsewhere in this Settlement Agreement is intended or should be construed to nullify, modify, or have any impact whatsoever on agreements which have been, are, or will be executed between or among parties other than Plaintiffs pertaining to the subject matter of this Settlement Agreement.

8.   <u>Authorization to Execute Agreement and Effectuate Settlement and Agreement to Cooperate</u>.  Counsel for all Parties hereto warrant and represent that they are expressly authorized by the Parties whom they represent to negotiate this Settlement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement.  The Parties and their respective counsel shall cooperate with each other and use their best efforts to effect the implementation of this Agreement.  In the event the Parties are unable to reach agreement on the form or content of any document needed to

**EXHIBIT 3**

implement this Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Agreement, the Parties may seek the assistance of the Court to resolve such disagreement. The person or persons signing this Agreement on behalf of each Settling Defendant represents and warrants that he or she is authorized to sign this Agreement on behalf of such Settling Defendant.

9.   <u>No Prior Assignment</u>.  The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

10.   <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts and by facsimile or scanned signature. All executed copies of this Agreement, and photocopies thereof (including facsimile copies of signature pages), shall have the same force and effect and be as legally binding and enforceable as the original.

11.   <u>Retention of Jurisdiction.</u>  The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, and the Parties and counsel hereto submit to the jurisdiction of the Court for purposes of

**EXHIBIT 3**

interpreting, implementing, and enforcing the settlement embodied in this
Agreement and all orders and judgments entered in connection therewith.

12.    <u>No Signature Required by Class Members on Settlement Agreement</u>.
Because the Settlement Class Members and FLSA Collective Action Plaintiffs are
so numerous, it is impossible or impractical to have each one execute this
Agreement.  The Class Notice and the Claim Form shall advise such persons of the
binding nature of the releases contained herein, and this Agreement shall have the
same force and effect as if this Agreement were executed by each Settlement Class
Member and FLSA Collective Action Plaintiff.

13.    <u>Titles and Captions of No Force</u>.  Paragraph titles or captions
contained herein are inserted for convenience and ease of reference, and do not
define, limit, extend, or describe the scope of the terms of the Agreement and its
provisions.

14.    <u>Invalid Without Court Approval</u>.  This Agreement is subject to
approval by the Court.  In the event the Settlement is not approved, it shall be
deemed null and void, of no force and effect, and the Parties represent, warrant,

//

//

EXHIBIT 3

and covenant that in such event it shall not be admitted in the Action as evidence, or used as a basis for obtaining discovery in the Action.

### IT IS SO STIPULATED AND AGREED.

Dated: 3.30.15          By: _____

Defendant Schneider Logistics Transloading and Distribution, Inc.  William J. Matheson

Dated: 4-9-15          By: _____

McGUIREWOODS LLP
Matthew C. Kane
Michael D. Mandel
John A. Van Hook
Attorneys for Defendant Schneider Logistics Transloading and Distribution, Inc.

Dated: _____          By: _____

Defendant Walmart Stores East LP

Dated: _____          By: _____

STEPTOE & JOHNSON LLP
Lawrence A. Katz
Attorneys for Defendant Walmart Stores East LP

Dated: _____          By: _____

Eric Flores

Dated: _____          By: _____

Jose Martinez Arceo

Dated: _____          By: _____

Fernando Chavez

EXHIBIT 3

and covenant that in such event it shall not be admitted in the Action as evidence,

or used as a basis for obtaining discovery in the Action.

### IT IS SO STIPULATED AND AGREED.

Dated: _____  By: _____
  Defendant Schneider Logistics Transloading
  and Distribution, Inc

Dated: _____  By: _____
  McGUIREWOODS LLP
  Matthew C. Kane
  Michael D. Mandel
  John A. Van Hook
  Attorneys for Defendant Schneider Logistics
  Transloading and Distribution, Inc.

Dated: 4-9-15  By: _____
  Defendant Walmart Stores East LP

Dated: 4-9-15  By: _____
  STERTOE & JOHNSON LLP
  Lawrence A. Katz
  Attorneys for Defendant Walmart Stores East LP

Dated: _____  By: _____
  Eric Flores

Dated: _____  By: _____
  Jose Martinez Arceo

Dated: _____  By: _____
  Fernando Chavez

**EXHIBIT 3**

and covenant that in such event it shall not be admitted in the Action as evidence, or used as a basis for obtaining discovery in the Action.

**IT IS SO STIPULATED AND AGREED.**

Dated: _____          By: _____
                            Defendant Schneider Logistics Transloading
                            and Distribution, Inc

Dated: _____          By: _____
                            McGUIREWOODS LLP
                            Matthew C. Kane
                            Michael D. Mandel
                            John A. Van Hook
                            Attorneys for Defendant Schneider Logistics
                            Transloading and Distribution, Inc.


Dated: _____          By: _____
                            Defendant Walmart Stores East LP

Dated: _____          By: _____
                            STEPTOE & JOHNSON LLP
                            Lawrence A. Katz
                            Attorneys for Defendant Walmart Stores East LP


Dated: 04-01-15             By: _Eric Flores._____
                            Eric Flores

Dated: 03-27-15             By: _Jose Javier Mtnez_____
                            Jose Martinez Arceo

Dated: 04/1/15              By: _FERNANDO CHAVEZ_____
                            Fernando Chavez

56

EXHIBIT 3

**Exh. 3**

Dated: 03/27/15   By: _Everardo A. Carrillo_
                       Everardo Carrillo

Dated: 03/27/15   By: _____
                       Juan Chavez

Dated: 04-01-15   By: _ARMANDO ESQUIVEL_
                       Armando Esquivel

Dated: _____   By: _____
                       Guadalupe Rangel Mendoza

Dated: _____   By: _____
                       Jose Enrique Trujillo-Vergara

Dated: 4/9/15     By: _____
                       Altshuler Berzon LLP
                       Traber & Voorhees
                       Bet Tzedek Legal Services
                       Law Offices Of Sandra C. Munoz
                       Counsel For Class Representatives and the
                       Plaintiff Class

57

**EXHIBIT 3**

Exh. 3

# EXHIBIT A

## TO SETTLEMENT AGREEMENT

EXHIBIT 3

# CLAIM FORM

<span style="color:red">**Exh. 3**</span>

TO RECEIVE YOUR SHARE OF THIS CLASS ACTION SETTLEMENT, YOU MUST **COMPLETE, SIGN,** AND **MAIL** THIS FORM POSTMARKED NO LATER THAN _____**, 2015**.  YOU **MUST** RETURN THIS FORM TO RECEIVE MONEY FROM THE SETTLEMENT, EVEN IF YOU PREVIOUSLY COMPLETED A CLAIM FORM FOR A SHARE OF THE PREMIER SETTLEMENT MONEY.

Mail to:    Carrillo Settlement Claims Administrator
RG/2 Claims Administration LLC
PO Box ######
Philadelphia, PA 19102-9479

*Claim forms postmarked later than _____, 2015 will not be accepted.*

*You will* not *receive your settlement share unless you timely submit this form to the Claims Admonistrator.*

---

*Carrillo v. Schneider Logistics Transloading and Distribution, Inc.,* Case No. 11-8557
United States District Court, Central District of California

| **A.    YOUR IDENTIFICATION INFORMATION** |
|---|

If this is your correct contact information, please check this box [  ]

If your contact information is different, please write the correct information below:

Please provide your telephone number and email to help us reach you: (_ _ _) _ _ _ - _ _ _ _ _____@_____

| **B.    THE AMOUNT OF TIME YOU WORKED AT WALMART'S WAREHOUSES** |
|---|

The amount of money you will get depends on how many weeks you worked for Premier in the Walmart warehouses from February 19, 2009 through February 24, 2012.  Our records show that your start and end dates are as follows:

Start Date:  _____        End Date:  _____

Based on these dates, your estimated settlement payment is $_____.  This is an **estimate** subject to change.

If you believe that this information is incorrect, including because you were sometimes known by a different name, explain why the information is incorrect in the box below (including by stating your correct start and end dates) and include any supporting documentation (e.g, pay stubs, W-2 forms) when you mail back this Claim Form.  You may use additional pages to explain why the information is incorrect if you cannot fit the information in the space below.

| **C.    RELEASE OF CLAIMS AND AGREEMENT WITH SETTLEMENT** |
|---|

By signing this form, you agree to the following statements:

Exh. 3

I have received the Notice of Class Action Settlement and I wish to participate in the settlement.  By signing this Claim Form, I hereby consent to join this lawsuit under the Fair Labor Standards Act, 29 U.S.C. §216(b).  In exchange for the settlement amount I will receive, I agree to release all of my state and federal claims against Schneider Logistics Transloading and Distribution, Inc. and Walmart Stores East LP, as set forth in the Settlement Agreement.  I understand that I am represented by counsel and if I have any questions, I may contact one of the plaintiffs' attorneys listed in the Notice.  I also understand that the complete terms of the Settlement Agreement, including definitions and the language that will release my claims if I do not opt out of the lawsuit, are set forth in the Settlement Agreement that is on file with the Court and available at www.warehousesettlement.com.

## D.   QUESTIONS ABOUT THIS FORM

If you have any questions about this Claim Form or how to properly submit your claim, please contact:

> Carrillo Settlement Claims Administrator
> RG/2 Claims Administration LLC
> PO Box ######
> Philadelphia, PA 19102-9479
>
> ph: (215) 979-1620
> fax:  (215) 979-1695

Additional information is available at www.warehousesettlement.com.

## E.   DECLARATION UNDER PENALTY OF PERJURY

### *If you do not sign below, you will not receive money from this settlement.*

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing information, and any additional information that I have submitted in connection with my claim, is true and correct.  If I submitted a statement challenging my stated work dates, my signature here confirms that such statement is true and correct.

Executed on _____  at  _____, _____.
                  Date                                  City                       State

_____
                  Signature of Claimant

Name (print): _____

**Optional**: If you do not want back-up withholding taken from your settlement check, you may also fill out the following:

---

**Taxpayer Identification Number Certification – Substitute IRS Form W-9**

Enter your Social Security Number or Taxpayer Identification Number, if any:  _____-_____-_____
Print name as shown on your income tax return if different from _____
First Name:  _____       Last Name: _____
Under penalty of perjury, I certify that:
1. The taxpayer identification number shown on this form is my correct taxpayer identification number, and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) theirs has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. person (including a U.S. resident alien).
Note: If you have been notified by the IRS that you are subject to backup withholding, you must cross out item 2 above.

**The IRS does not require your consent to any provision of this document other than this Form W-9 certification to avoid backup withholding.**

---

Exh. 3

.

EXHIBIT 3

# CLAIM FORM

TO RECEIVE YOUR SHARE OF THIS CLASS ACTION SETTLEMENT, YOU MUST **COMPLETE, SIGN,** AND **MAIL** THIS FORM POSTMARKED NO LATER THAN _____**, 2015**.  YOU **MUST** RETURN THIS FORM TO RECEIVE MONEY FROM THE SETTLEMENT, EVEN IF YOU PREVIOUSLY COMPLETED A CLAIM FORM FOR A SHARE OF THE IMPACT SETTLEMENT MONEY.

Mail to:          Carrillo Settlement Claims Administrator
                  RG/2 Claims Administration LLC
                  PO Box ######
                  Philadelphia, PA 19102-9479

***Claim forms postmarked later than _____, 2015 will not be accepted.***

*You will not receive your settlement share unless you timely submit this form to the Claims Admonitor.*

_____

*Carrillo v. Schneider Logistics Transloading and Distribution, Inc.,* Case No. 11-8557
United States District Court, Central District of California

| **A.    YOUR IDENTIFICATION INFORMATION** |
|---|

If this is your correct contact information, please check this box [  ]

If your contact information is different, please write the correct information below:

Please provide your telephone number and email to help us reach you: (_ _ _) _ _ _ - _ _ _ _ _____@_____

| **B.     THE AMOUNT OF TIME YOU WORKED AT WALMART'S WAREHOUSES** |
|---|

The amount of money you will get depends on how many weeks you worked for Impact in the Walmart warehouses from January 1, 2001 to August 9, 2013.  Our records show that your start and end dates are as follows:

Start Date: _____          End Date: _____

Based on these dates, your estimated settlement payment is $_____.  This is an **estimate** subject to change.

If you believe that this information is incorrect, including because you were sometimes known by a different name, explain why the information is incorrect in the box below (including by stating your correct start and end dates) and include any supporting documentation (e.g, pay stubs, W-2 forms) when you mail back this Claim Form.  You may use additional pages to explain why the information is incorrect if you cannot fit the information in the space below.

| **C.    RELEASE OF CLAIMS AND AGREEMENT WITH SETTLEMENT** |
|---|

By signing this form, you agree to the following statements:

Exh. 3

I have received the Notice of Class Action Settlement and wish to participate in the settlement.  By signing this Claim Form, I hereby consent to join this lawsuit under the Fair Labor Standards Act, 29 U.S.C. §216(b).  In exchange for the settlement amount I will receive, I agree to release all of my state and federal claims against Schneider Logistics Transloading and Distribution, Inc. and Walmart Stores East LP, as set forth in the Settlement Agreement.  I understand that I am represented by counsel and if I have any questions, I may contact one of the plaintiffs' attorneys listed in the Notice.  I also understand that the complete terms of the Settlement Agreement, including definitions and the language that will release my claims if I do not opt out of the lawsuit, are set forth in the Settlement Agreement that is on file with the Court and available at www.warehousesettlement.com.

## D.  QUESTIONS ABOUT THIS FORM

If you have any questions about this Claim Form or how to properly submit your claim, please contact:

> Carrillo Settlement Claims Administrator
> RG/2 Claims Administration LLC
> PO Box ######
> Philadelphia, PA 19102-9479
> ph:  (215) 979-1620
> fax:  (215) 979-1695

Additional information is available at www.warehousesettlement.com.

## E.  DECLARATION UNDER PENALTY OF PERJURY

### *If you do not sign below, you will not receive money from this settlement.*

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing information, and any additional information that I have submitted in connection with my claim, is true and correct.  If I submitted a statement challenging my stated work dates, my signature here confirms that such statement is true and correct.

Executed on _____ at _____, _____.
             Date                          City                                    State


_____
Signature of Claimant


Name (print): _____

**Optional**: If you do not want back-up withholding taken from your settlement check, you may also fill out the following:

---

**Taxpayer Identification Number Certification – Substitute IRS Form W-9**

Enter your Social Security Number or Taxpayer Identification Number, if any: _____-_____-_____
Print name as shown on your income tax return if different from _____
First Name: _____  Last Name: _____
Under penalty of perjury, I certify that:
1.  The taxpayer identification number shown on this form is my correct taxpayer identification number, and
2.  I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) theirs has notified me that I am no longer subject to backup withholding, and
3.  I am a U.S. person (including a U.S. resident alien).
Note: If you have been notified by the IRS that you are subject to backup withholding, you must cross out item 2 above.

**The IRS does not require your consent to any provision of this document other than this Form W-9 certification to avoid backup withholding.**

---

Exh. 3

# EXHIBIT B

## TO SETTLEMENT AGREEMENT

EXHIBIT 3

---

*Carrillo v. Schneider Logistics and Transloading Distribution, Inc.*   **Exh. 3**

United States District Court, Central District of California

Case No. CV 11-8557 CAS (DTBx)

---

### NOTICE TO CLASS OF PROPOSED SETTLEMENT

To:   All hourly employees who were hired by Impact Logistics to work in the Walmart warehouses located in Mira Loma (Eastvale), California, and operated at any time from January 1, 2001 through August 9, 2013, by **Schneider Logistics and Transloading Distribution, Inc.** (referred to in this notice as "SLTD" or "Schneider") and/or any other logistics companies under service contracts with Walmart; and

All hourly employees who were hired by Rogers-Premier or Premier Warehousing (both referred to collectively as "Rogers-Premier" in this Notice) to work in Walmart warehouses located in Mira Loma (Eastvale), California, and operated at any time from February 19, 2009 through February 24, 2012 by SLTD and/or any other logistics companies under service contracts with Walmart.

### READ THIS NOTICE -- YOU MAY BE ENTITLED TO MONEY

You may be entitled to money from the settlement of a class action lawsuit against SLTD and Walmart. You may have already received money from Impact's or Rogers-Premier's settlement in this case, but **additional settlement funds of up to $21 million are now available**. **TO GET YOUR SHARE OF THIS SETTLEMENT MONEY, YOU MUST COMPLETE AND SEND IN THE CLAIM FORM INCLUDED WITH THIS NOTICE BY _____, 2015.** You must complete the Claim Form to receive money even if you already sent in a claim form for the Impact or Rogers-Premier settlement funds.

If you do not file a Claim Form by _____, 2015, you will lose your right to receive money.

---

### WHY SHOULD YOU READ THIS NOTICE?

This Notice explains your rights and tells you how to file a Claim Form. This Notice also explains how to remove yourself from the settlement if you choose. If you remove yourself from the settlement, you will not get any money but you will not be giving up any right to sue SLTD and/or Walmart on your own. This Notice also explains how you can inform the Court that you disagree with the settlement terms, without losing your right to receive your share of the settlement money.

---

### WHAT IS THE LAWSUIT ABOUT?

The named plaintiffs in this lawsuit are Eric Flores, Jose Martinez Arceo, Everardo Carrillo, Fernando Chavez, Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza and Jose Enrique Trujillo-Vergara. On October 17, 2011, plaintiffs sued SLTD, Impact Logistics and Rogers-Premier in federal court in California. The lawsuit was brought on behalf of all workers in Walmart's Mira Loma warehouse facility (operated by SLTD) who were directly hired by Impact or Rogers-Premier. Walmart was later added as a defendant. The lawsuit alleges that defendants committed a number of labor violations, including by failing to pay proper minimum wage and overtime, failing to provide proper meal and rest breaks, failing to pay reporting time ("show up") pay, failing to provide accurate pay stubs, failing to keep proper records or provide workers with access to records, and retaliating against workers who sought information about their pay. The lawsuit alleges claims under California law and the federal Fair Labor Standards Act ("FLSA"), and seeks money damages, penalties, injunctive and declaratory relief, attorneys' fees and costs. To review the complaints or other court filings, you may contact one of the plaintiffs' lawyers listed below.

SLTD and Walmart deny all of the allegations in the lawsuit. All parties have agreed to this settlement to avoid further expense and the risks of litigation.

---

### WHAT DOES THE SETTLEMENT AGREEMENT SAY?

**The settlement agreement says that up to $21 million will be paid into a settlement fund to resolve plaintiffs' claims against SLTD and Walmart**. Subject to final court approval, out of the $21 million:

- Approximately $13,640,000 will be available for payments to Class Members such as yourself.
- Approximately $30,000 will be used to pay the Claims Administrator, who will review your claims, calculate your payment, and send you your check.
- Up to $150,000 will be paid to the California Labor and Workforce Development Agency (LWDA), the government agency responsible for making sure employers follow the law.
- The eight named plaintiffs will be paid up to $5,000 each, for a total of up to $40,000 for their time and effort in bringing this lawsuit, in addition to any other award they get from this settlement.
- Plaintiffs' attorneys will be paid up to $210,000 to reimburse their expenses in bringing this lawsuit.
- Plaintiffs' attorneys will be paid up to $6,930,000, which is 33% of the settlement amount for their successful efforts in litigating and resolving this lawsuit.

**EXHIBIT 3**

Exh. 3

About 2,360 Class Members from Rogers-Premier and Impact are eligible to participate in this settlement.  Each class member's share of the settlement fund will be based on a point system, which is explained on the next page.  Except for certain current employees, **Class Members will not be entitled to their settlement shares if they do not send in a timely Claim Form** (which may result in the full settlement amount set aside for Class Members not having to be paid)**.**

The amount of settlement funds available for Class Members who submit timely Claim Forms is subject to a guaranteed minimum "floor."  Under no circumstances will the amount paid to Class Members plus the payments to the eight named plaintiffs (up to $5,000 each) plus the payment to the LWDA (up to $150,000) total less than 45% of the "Net Settlement Fund" (defined as the gross amount of $21 million minus the amount of court-awarded attorneys' fees and expenses and the Claims Administrator costs).  If the Court approves all of the requested amounts set forth above, the guaranteed minimum "floor" will be approximately $6,033,500.  If not enough timely Claims Forms are filed to reach this guaranteed minimum, the difference between the amount claimed and the guaranteed minimum will be proportionally reallocated among all Class Members who made timely claims.  For example, if the amount of all timely claims was $5,033,500, the difference between the amount claimed and the floor would be $1 million.  This $1 million would be shared by the Class Members who made claims, based on the same point system used to calculate their initial shares.

Court approval of this settlement is required before it becomes final and before anyone can be paid.  If the court grants final approval, the settlement terms will bind every Class Member who has not removed himself from the settlement.  Class Members who do not remove themselves will lose their right sue SLTD or Walmart for the claims released by the settlement, even if they do not return a timely Claim Form.

## HOW DOES THE POINT SYSTEM WORK?

Class members who submit Claim Forms will share the settlement money based on a point system, which is allocated as follows:

| Type of Workweek | Number of points |
|---|---|
| Each workweek from January 1, 2011 through October 16, 2007 | 1 |
| Each workweek from October 17, 2007 through October 16, 2010 | 5 |
| Each workweek from October 17, 2011 through December 31, 2011 | 7 |
| Each workweek from January 1, 2012 through August 9, 2013 | 1 |
| Each workweek worked by a Class Member who joined the FLSA action by filing a consent to sue during the period from October 17, 2008 through December 31, 2011 | 1 (in addition to any points already allocated for the same time period) |

Impact and Rogers-Premier will provide the Claims Administrator with each Class Member's workweek dates.  If you previously corrected your dates of employment through the Rogers-Premier or Impact settlement process, the corrected dates will be used.  The Claims Administrator will calculate the total number of points by multiplying each workweek by the designated number of points (as described in the table above).  The Claims Administrator will determine your share by calculating the number of your points, determining your percentage of the total points available, and applying that percentage to the Net Settlement Fund.  For example, if the total number of points is 100,000 and you have 100 points, you will receive .1% of the Net Settlement Fund.  If the Net Settlement Fund is $13,830,000 (which it will be if the Court approves all of the numbers set forth in the section above), your share would be $13,830.

## HOW MUCH MONEY WILL I GET?

**Based on the calculation described in the foregoing section, you will receive approximately $_____.**  This is an estimate that may change.  Your dates of employment and contact information are set forth on the Claim Form.  If that information is incorrect, please follow the instructions on the Claim Form to correct them.

## DO I HAVE TO PAY TAXES ON MY SETTLEMENT MONEY?

Each class member remains personally responsible for ensuring the proper payment of all taxes.  Under the Settlement Agreement, 40% of your total award is designated as back pay, 40% as non-wage income, and 20% as interest.  The Claims Administrator will report the back pay portion of your award to the taxing authorities on a W-2 Form, and withholdings will be taken.  The remaining amount will be reported to the taxing authorities on a 1099 Form and no withholdings will be taken.  Plaintiffs' lawyers are not tax lawyers and are not qualified to provide tax advice to any Class Member.  There is no guarantee that the tax authorities will accept these allocations.  If you do not submit a valid Social Security Number or Individual Taxpayer Identification Number (ITIN), federal law requires that a 28% backup withholding must be applied to your payment.

## HOW DO I GET MONEY FROM THE SETTLEMENT?

To get money from this settlement, you must fill out and sign a Claim Form included with this Notice. **YOU MUST SEND IN A COMPLETE, SIGNED CLAIM FORM POSTMARKED NO LATER THAN ____, 2015 TO RECEIVE YOUR SHARE.** If you worked for both Impact and Rogers-Premier, you will need to fill out two separate Claim Forms (one for Impact and one for Rogers-Premier). If you need an additional form, please contact the Claims Administrator. The completed and signed Claim Form must be mailed to the Claims Administrator, postmarked no later than ____, 2015. The mailing address of the Claims Administrator is:

> Carrillo Settlement Claims Administrator
> ADDRESS

Additional information may be found at **www.warehousesettlement.com**.

## WHAT DO SLTD AND WALMART GET FROM THE SETTLEMENT?

In exchange for participating in the settlement, SLTD and Walmart will obtain a **release** of claims from all Class Members who do not opt out of the settlement. A "release" means that you agree to give up certain legal claims against SLTD and Walmart, including the state and federal claims alleged in the lawsuit and related to the facts alleged in the lawsuit, whether those claims are known or unknown. If you have questions about the release, you may contact one of the plaintiffs' attorneys listed below. You may also read the release language in the Settlement Agreement, which is available at www.warehousesettlement.com.

## WHAT IF I DO NOT WANT TO BE PART OF THE SETTLEMENT?

If you do not want to participate in this settlement, you must tell the Claims Administrator in writing of your decision to "opt out" of the settlement. **If you "opt out," you will not get any money from the settlement, and you will not be bound by the terms of the settlement.** This means that you will preserve your rights to sue SLTD and Walmart for these claims on your own, with your own attorney. If you do *not* opt out of the settlement, *you will be bound* by its terms even if you do not return a Claim Form and even if you do not receive any money. This means you will not be able to sue SLTD or Walmart for these claims on your own.

Any request to opt out of the settlement must be sent to the Claims Administrator and postmarked no later than ____, 2015. To be valid, the opt-out request must state: "I, [NAME], voluntarily choose not to participate in the settlement of my claims against Defendants Schneider Logistics Transloading and Distribution, Inc. and Walmart Stores East LP, and hereby waive any rights I may have to participate in the settlement against those companies in the federal court lawsuit entitled Carrillo v. Schneider Logistics, Inc., Case No. CV 11-8557 CAS (DTBx)." You must make the opt-out request yourself – another person cannot do it for you. To be valid, the opt-out statement must include your name, telephone number, current address, the length of time you worked in the Walmart warehouses, and your signature.

Send the opt-out request directly to the Claims Administrator at the following address:

> Carrillo Settlement Claims Administrator
> ADDRESS

## WHAT IF I DON'T AGREE WITH THE SETTLEMENT?

If you do not agree with the settlement, in whole or in part, you may send an objection to the Claims Administrator, postmarked no later than ____, 2015, stating why you object to the settlement. If you want to read the documents underlying plaintiffs' attorneys' request for fees and expenses, those documents will soon be available at www.warehousesettlement.com.

Late objections will not be considered. You can object and still receive money from the settlement, but you must still submit a Claim Form along with your objection. If you object and do not submit a Claim Form, you will not receive any money from the settlement. If you have an objection, you may attend the Settlement Fairness Hearing set for ____, 2015 at 10:00 a.m. in Courtroom 5 of the United States District Courthouse for the Central District of California, located at 312 N. Spring St., Los Angeles, CA 90012, to discuss your objection with the Court and the parties. You may also hire your own attorney, who can appear on your behalf at the Settlement Fairness Hearing if he or she informs the Court and the parties in advance. You are not required to appear at the court hearing or to have your own attorney in order to file an objection.

To be valid, any objection must contain the following information: (1) your full name, current address, telephone number, date, and signature, (2) your objections to the settlement, (3) the reasons for your objections, (4) whether you plan to attend the Settlement Fairness Hearing, and (5) if your attorney plans to attend the Settlement Fairness Hearing, the name of your attorney. Your objection should be mailed to the Claims Administrator at the following address:

> Carrillo Settlement Claims Administrator
> ADDRESS

IF YOU INTEND TO OBJECT TO THE SETTLEMENT, BUT ALSO WISH TO RECEIVE MONEY FROM THE SETTLEMENT, YOU STILL <u>MUST</u> FILE YOUR CLAIM FORM BY ____, 2015. IF THE COURT APPROVES THE SETTLEMENT DESPITE ANY OBJECTIONS AND YOU HAVE NOT RETURNED YOUR CLAIM FORM, YOU WILL NOT RECEIVE ANY MONEY FROM THE SETTLEMENT.

## WHAT IF I WORKED FOR BOTH IMPACT AND ROGERS-PREMIER?

If you worked for both Impact and Rogers-Premier in the Walmart warehouses, you will need to fill out **two separate Claim Forms**: one for Impact, and one for Rogers-Premier.  Contact the Claims Administrator to obtain an additional form, if necessary.

## WHAT IF I WORKED UNDER A NAME THAT IS NOT MY OWN?

If you worked in the Walmart warehouses under one or more names that are not your own, you are still entitled to receive payment for the time you worked in the warehouses.  If the Claim Form does not list all of your workweeks, you must explain to the Claims Administrator on the Claim Form why you are entitled to a settlement share for those additional workweeks.  Please submit any documentation to the Claims Administrator (e.g., pay stubs) if you contend that you worked under other names and/or for other workweeks in the Walmart warehouses.  Under the Settlement Agreement, the Claims Administrator has the authority to resolve disputes about whether a claim should be paid.  You are welcome to contact the plaintiffs' attorneys to discuss your situation before you submit a claim.  All discussions with the plaintiffs' attorneys seeking or providing legal advice or counsel about this settlement will be kept strictly confidential and are subject to the attorney-client privilege.

<!-- black bar -->

If you have any questions or would like more information, contact **Sandra Muñoz**, whose information is listed below.  Ms. Muñoz is one of the attorneys for the plaintiffs.  You may also contact any of the plaintiffs' attorneys listed below.  The lawyers who speak Spanish are indicated below with an asterisk (*).

TRABER & VOORHEES
Theresa M. Traber
Lauren Teukolsky
Marisa Hernández-Stern*
128 North Fair Oaks Avenue
Pasadena, California 91103
Telephone:  (626) 585-9611

ALTSHULER BERZON LLP
Michael Rubin
Jonathan Weissglass
Eric Brown
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421 7151

BET TZEDEK LEGAL SERVICES
Gus. T. May
Matthew E. DeCarolis*
3250 Wilshire Blvd., 13th Fl.
Los Angeles, CA  90010
Telephone: (323) 939 0506

LAW OFFICES OF SANDRA C. MUÑOZ
Sandra C. Muñoz *
Edith Castañeda*
5429 E. Beverly Blvd.
Los Angeles, CA 90022
Telephone: (888) 349-5011 or (323) 720-9400
Fax: (323) 720-9400
scm4@att.net

## WHO IS THE CLAIMS ADMINISTRATOR?

The Claims Administrator processes all claims, calculates each Class Members' settlement award, and processes Class Members' requests to be excluded from the settlement.  The Claims Administrator in this case is ___ and can be reached at the following address:

          Carrillo Settlement Claims Administrator
          ADDRESS

          PHONE

Contact the Claims Administrator for more information or to ask about the status of your claim form.  Additional information is also at **www.warehousesettlement.com**.

## OTHER IMPORTANT INFORMATION

The "Settlement Agreement" explains the entire agreement between the parties in detail.  You may request a copy of the Settlement Agreement from the Claims Administrator, or you may review it at **www.warehousesettlement.com**.

**This Notice only summarizes the lawsuit, the settlement, and related matters.  For more information, you may inspect the Court files at the Office of the Clerk, 312 N. Spring Street, Room G-8, from 8:30 a.m. to 4:00 p.m., Monday through Friday.**

**PLEASE DO NOT CONTACT THE COURT FOR INFORMATION ABOUT THIS SETTLEMENT OR THE CLAIMS PROCESS. IF YOU HAVE QUESTIONS, YOU MAY CONTACT THE PLAINTIFFS' ATTORNEYS, FREE OF CHARGE.**

Exh. 3

.

EXHIBIT 3

**Carrillo v. Schneider Logistics and Transloading Distribution, Inc.**   Exh. 3

United States District Court, Central District of California

Case No. CV 11-8557 CAS (DTBx)

### NOTICE TO CLASS OF PROPOSED SETTLEMENT

To:  All hourly employees who were hired by Impact Logistics, or by Rogers-Premier or Premier Warehousing (both referred to collectively as "Rogers-Premier"), to work in the Walmart warehouses located in Mira Loma (Eastvale), California operated by **Schneider Logistics and Transloading Distribution, Inc.** (referred to in this notice as "SLTD" or "Schneider"), who were employed by SLTD on April 30, 2014 and were still employed by SLTD on <Date of Preliminary Approval> (the "Employment Dates").

### READ THIS NOTICE -- YOU MAY BE ENTITLED TO MONEY

You may be entitled to money from the settlement of a class action lawsuit against Walmart and SLTD.  You may have already received money from Impact's or Rogers-Premier's settlement in this case, but **additional settlement funds of up to $21 million are now available**.

BECAUSE YOU WERE EMPLOYED BY SLTD IN THE MIRA LOMA WAREHOUSES ON THE EMPLOYMENT DATES (AS DEFINED ABOVE), YOU DO NOT HAVE TO FILE A CLAIM FORM TO RECEIVE MONEY FROM THE SETTLEMENT, UNLESS, AS EXPLAINED BELOW, YOU HAVE NOT PREVIOUSLY FILED A CONSENT-TO-SUE FORM IN THIS LAWSUIT.  However, you may object to the settlement, challenge the number of workweeks listed on your settlement notice, or opt-out of the settlement.  If you do not opt out, you will automatically be entitled to your share of the settlement money without filing a claim form, except as otherwise explained below.

### WHY SHOULD YOU READ THIS NOTICE?

This Notice explains your rights and explains how to remove yourself from the settlement if you choose.  If you remove yourself from the settlement, you will not get any money but you will not be giving up any right to sue SLTD and/or Walmart on your own.  This Notice also explains how you can inform the Court that you disagree with the settlement terms, without losing your right to receive your share of the settlement money.

### WHAT IS THE LAWSUIT ABOUT?

The named plaintiffs in this lawsuit are Eric Flores, Jose Martinez Arceo, Everardo Carrillo, Fernando Chavez, Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza and Jose Enrique Trujillo-Vergara.  On October 17, 2011, plaintiffs sued SLTD, Impact Logistics and Rogers-Premier in federal court in California.  The lawsuit was brought on behalf of all workers in Walmart's Mira Loma warehouse facility (operated by SLTD) who were directly hired by Impact or Rogers-Premier.  Walmart was later added as a defendant.  The lawsuit alleges that defendants committed a number of labor violations, including by failing to pay proper minimum wage and overtime, failing to provide proper meal and rest breaks, failing to pay reporting time ("show up") pay, failing to provide accurate pay stubs, failing to keep proper records or provide workers with access to records, and retaliating against workers who sought information about their pay.  The lawsuit alleges claims under California law and the federal Fair Labor Standards Act ("FLSA"), and seeks money damages, penalties, injunctive and declaratory relief, attorneys' fees and costs.  To review the complaints or other court filings, you may contact one of the plaintiffs' lawyers listed below.

SLTD and Walmart deny all of the allegations in the lawsuit.  All parties have agreed to this settlement to avoid further expense and the risks of litigation.

### WHAT DOES THE SETTLEMENT AGREEMENT SAY?

**The settlement agreement says that up to $21 million will be paid into a settlement fund to resolve plaintiffs' claims against SLTD and Walmart**.  Subject to final court approval, out of the $21 million:

- Approximately $13,640,000 will be available for payments to Class Members.
- Approximately $30,000 will be used to pay the Claims Administrator, who will calculate your payment and send you your check.
- Up to $150,000 will be paid to the California Labor and Workforce Development Agency (LWDA), the government agency responsible for making sure employers follow the law.
- The eight named plaintiffs will be paid up to $5,000 each, for a total of up to $40,000 for their time and effort in bringing this lawsuit, in addition to any other award they get from this settlement.
- Plaintiffs' attorneys will be paid up to $210,000 to reimburse their expenses in bringing this lawsuit.
- Plaintiffs' attorneys will be paid up to $6,930,000, which is 33% of the settlement amount for their successful efforts in litigating and resolving this lawsuit.

About 2,360 Class Members from Rogers-Premier and Impact are eligible to participate in this settlement, including warehouse workers who became employed by SLTD but were no longer employed by SLTD on April 30, 2014, who must file a Claim Form to

**EXHIBIT 3**

receive a share of the settlement money.  Each class member's share of the settlement fund will be based on a point system, which is explained below.

The amount of settlement funds available for Class Members who were employed by SLTD on the Employment Dates or who submit timely Claim Forms is subject to a guaranteed minimum "floor."  Under no circumstances will the amount paid to those Class Members plus the payments to the eight named plaintiffs (up to $5,000 each) plus the payment to the LWDA (up to $150,000) total less than 45% of the "Net Settlement Fund" (defined as the gross amount of $21 million minus the amount of court-awarded attorneys' fees and expenses and the Claims Administrator costs).  If the Court approves all of the requested amounts set forth above, the guaranteed minimum "floor" will be approximately $6,033,500.  If not enough timely Claims Forms are filed to reach this guaranteed minimum, the difference between the amount claimed and the guaranteed minimum will be proportionately reallocated among all Class Members who were employed by SLTD on the Employment Dates or made timely claims.  For example, if the amount of all timely claims was $5,033,500, the difference between the amount claimed and the floor would be $1 million.  This $1 million would be shared by the Class Members who were employed by SLTD on the Employment Dates or made claims, based on the same point system used to calculate their initial shares.

Court approval of this settlement is required before it becomes final and before anyone can be paid.  If the court grants final approval, the settlement terms will bind every Class Member who has not removed himself from the settlement.  Class Members who do not remove themselves will lose their right sue SLTD or Walmart for the claims released by the settlement.

## HOW DOES THE POINT SYSTEM WORK?

Class members who were employed by SLTD on the Employment Dates, and all other class members who submit timely Claim Forms, will share the settlement money based on a point system, which is allocated as follows:

| Type of Workweek | Number of points |
| --- | --- |
| Each workweek from January 1, 2001 through October 16, 2007 | 1 |
| Each workweek from October 17, 2007 through October 16, 2010 | 5 |
| Each workweek from October 17, 2011 through December 31, 2011 | 7 |
| Each workweek from January 1, 2012 through August 9, 2013 | 1 |
| Each workweek worked by a Class Member who joined the FLSA action by filing a consent to sue during the period from October 17, 2008 through December 31, 2011 | 1 (in addition to any points already allocated for the same time period) |

Impact and Rogers-Premier will provide the Claims Administrator with each Class Member's workweek dates.  If you previously corrected your dates of employment through the Rogers-Premier or Impact settlement process, the corrected dates will be used.  The Claims Administrator will calculate the total number of points by multiplying each workweek by the designated number of points (as described in the table above).  The Claims Administrator will determine your share by calculating the number of your points, determining your percentage of the total points available, and applying that percentage to the Net Settlement Fund.  For example, if the total number of points is 100,000 and you have 100 points, you will receive .1% of the Net Settlement Fund.  If the Net Settlement Fund is $13,830,000 (which it will be if the Court approves all of the numbers set forth in the section above), your share would be $13,830.

If you did not previously join the FLSA action in this lawsuit by filing a consent-to-sue form or by filing a cliam in the Impact or Premier settlements, you will only be eligible to receive your portion of the settlement for FLSA claims if you timely and properly send in the enclosed claim form to the Claims Administrator as identified below.  **TO GET THAT PORTION OF YOUR SHARE OF THIS SETTLEMENT MONEY, YOU MUST COMPLETE AND SEND IN THE CLAIM FORM INCLUDED WITH THIS NOTICE BY _____, 2015.**

## HOW MUCH MONEY WILL I GET?

**Based on the calculation described in the foregoing section, you will receive approximately $_____.**  This is an estimate that may change.  Your dates of employment and contact information are set forth on the attached Claim Form for your review (although you do *not* have to file that Claim Form to receive your share, except as explained above).  If that information is incorrect, please follow the instructions on the Claim Form to correct them.

## DO I HAVE TO PAY TAXES ON MY SETTLEMENT MONEY?

Each class member remains personally responsible for ensuring the proper payment of all taxes.  Under the Settlement Agreement, 40% of your total award is designated as back pay, 40% as non-wage income, and 20% as interest.  The Claims Administrator will report the back pay portion of your award to the taxing authorities on a W-2 Form, and withholdings will be taken.  The remaining amount will be reported to the taxing authorities on a 1099 Form and no withholdings will be taken.  Plaintiffs' lawyers are not tax lawyers and are not qualified to provide tax advice to any Class Member.  There is no guarantee that the tax authorities will accept

these allocations.  If you do not submit a valid Social Security Number or Individual Taxpayer Identification Number (ITIN), federal law requires that a 28% backup withholding must be applied to your payment.

**Exh. 3**

## HOW DO I GET MONEY FROM THE SETTLEMENT?

BECAUSE YOU WERE EMPLOYED BY SLTD IN THE MIRA LOMA WAREHOUSES ON THE EMPLOYMENT DATES, YOU DO NOT HAVE TO FILE A CLAIM FORM, EXCEPT AS EXPLAINED ABOVE.  If you do not opt-out, you will be entitled to your share of the settlement money without filing a claim form, except as explained above.

**Any** completed and signed Claim Form you decide to submit must be mailed to the Claims Administrator, postmarked no later than ___, 2015. The mailing address of the Claims Administrator is:

> Carrillo Settlement Claims Administrator
> RG/2 Claims Administration LLC
> PO Box ######
> Philadelphia, PA 19102-9479

Additional information may be found at **www.warehousesettlement.com**.

## WHAT DO SLTD AND WALMART GET FROM THE SETTLEMENT?

In exchange for participating in the settlement, SLTD and Walmart will obtain a **release** of claims from all Class Members who do not opt out of the settlement.  A "release" means that you agree to give up certain legal claims against SLTD and Walmart, including the state and federal claims alleged in the lawsuit and related to the facts alleged in the lawsuit, whether those claims are known or unknown.  If you have questions about the release, you may contact one of the plaintiffs' attorneys listed below.  You may also read the release language in the Settlement Agreement, which is available at www.warehousesettlement.com.

## WHAT IF I DO NOT WANT TO BE PART OF THE SETTLEMENT?

If you do not want to participate in this settlement, you must tell the Claims Administrator in writing of your decision to "opt out" of the settlement. **If you "opt out," you will not get any money from the settlement, and you will not be bound by the terms of the settlement.** This means that you will preserve your rights to sue SLTD and Walmart for these claims on your own, with your own attorney.  If you do *not* opt out of the settlement, *you will be bound* by its terms and will automatically be considered a claimant seeking payment under the Settlement Agreement.  This means you will not be able to sue SLTD or Walmart for these claims on your own.

Any request to opt out of the settlement must be sent to the Claims Administrator and postmarked no later than ____, 2015. To be valid, the opt-out request must state: "I, [NAME], voluntarily choose not to participate in the settlement of my claims against Defendants Schneider Logistics Transloading and Distribution, Inc. and Walmart Stores East LP, and hereby waive any rights I may have to participate in the settlement against those companies in the federal court lawsuit entitled Carrillo v. Schneider Logistics, Inc., Case No. CV 11-8557 CAS (DTBx)."  You must make the opt-out request yourself – another person cannot do it for you.  To be valid, the opt-out statement must include your name, telephone number, current address, the length of time you worked in the Mira Loma warehouses, and your signature.

Send the opt-out request directly to the Claims Administrator at the following address:

> Carrillo Settlement Claims Administrator
> RG/2 Claims Administration LLC
> PO Box ######
> Philadelphia, PA 19102-9479

## WHAT IF I DON'T AGREE WITH THE SETTLEMENT?

If you do not agree with the settlement, in whole or in part, you may send an objection to the Claims Administrator, postmarked no later than ____, 2015, stating why you object to the settlement.  If you want to read the documents underlying plaintiffs' attorneys' request for fees and expenses, those documents will soon be available at www.warehousesettlement.com.

Late objections will not be considered.  If you have an objection, you may attend the Settlement Fairness Hearing set for ____, 2015 at 10:00 a.m. in Courtroom 5 of the United States District Courthouse for the Central District of California, located at 312 N. Spring St., Los Angeles, CA 90012, to discuss your objection with the Court and the parties.  You may also hire your own attorney, who can appear on your behalf at the Settlement Fairness Hearing if he or she informs the Court and the parties in advance.  You are not required to appear at the court hearing or to have your own attorney in order to file an objection.

To be valid, any objection must contain the following information: (1) your full name, current address, telephone number, date, and signature, (2) your objections to the settlement, (3) the reasons for your objections, (4) whether you plan to attend the Settlement

Fairness Hearing, and (5) if your attorney plans to attend the Settlement Fairness Hearing, the name of your attorney.  Your objection should be mailed to the Claims Administrator at the following address:

> Carrillo Settlement Claims Administrator
> RG/2 Claims Administration LLC
> PO Box ######
> Philadelphia, PA 19102-9479

YOU MAY OBJECT TO THE SETTLEMENT WITHOUT GIVING UP YOUR RIGHT TO RECEIVE MONEY FROM THE SETTLEMENT.  BECAUSE YOU WERE EMPLOYED BY SLTD IN THE MIRA LOMA WAREHOUSES ON THE EMPLOYMENT DATES, YOU DO NOT HAVE TO FILE A CLAIM FORM TO RECEIVE MONEY FROM THE SETTLEMENT EVEN IF YOU OBJECT TO IT, EXCEPT AS EXPLAINED ABOVE.  IF THE COURT APPROVES THE SETTLEMENT DESPITE ANY OBJECTIONS, YOU WILL STILL RECEIVE ANY MONEY FROM THE SETTLEMENT TO WHICH YOU ARE ENTITLED.

## WHAT IF I WORKED UNDER A NAME THAT IS NOT MY OWN?

If you worked in the Walmart warehouses under one or more names that are not your own, you are still entitled to receive payment for the time you worked in the warehouses.  If the Claim Form does not list all of your workweeks, you must explain to the Claims Administrator on the Claim Form why you are entitled to a settlement share for those additional workweeks, including because you worked some weeks for Impact and some weeks for Rogers-Premier.  Please submit any documentation to the Claims Administrator (e.g., pay stubs) if you contend that you worked under other names and/or for other workweeks in the Walmart warehouses.  Under the Settlement Agreement, the Claims Administrator has the authority to resolve disputes about whether a claim should be paid.  You are welcome to contact the plaintiffs' attorneys to discuss your situation before you submit a claim.  All discussions with the plaintiffs' attorneys seeking or providing legal advice or counsel about this settlement will be kept strictly confidential and are subject to the attorney-client privilege.

If you have any questions or would like more information, contact **Sandra Muñoz**, whose information is listed below.  Ms. Muñoz is one of the attorneys for the plaintiffs.  You may also contact any of the plaintiffs' attorneys listed below.  The lawyers who speak Spanish are indicated below with an asterisk (*).

TRABER & VOORHEES
Theresa M. Traber
Lauren Teukolsky

128 North Fair Oaks Avenue
Pasadena, California 91103
Telephone:  (626) 585-9611

ALTSHULER BERZON LLP
Michael Rubin
Jonathan Weissglass
Eric Brown
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421 7151

BET TZEDEK LEGAL SERVICES
Gus. T. May
Matthew E. DeCarolis*
3250 Wilshire Blvd., 13th Fl.
Los Angeles, CA  90010
Telephone: (323) 939 0506

LAW OFFICES OF SANDRA C. MUÑOZ
Sandra C. Muñoz *
Edith Castañeda*
5429 E. Beverly Blvd.
Los Angeles, CA 90022
Telephone: (888) 349-5011 or (323) 720-9400
Fax: (323) 720-9400
scm4@att.net

## WHO IS THE CLAIMS ADMINISTRATOR?

The Claims Administrator processes all claims, calculates each Class Members' settlement award, and processes Class Members' requests to be excluded from the settlement.  The Claims Administrator in this case is RG/2 and can be reached at the following address:

> Carrillo Settlement Claims Administrator
> RG/2 Claims Administration LLC
> PO Box ######
> Philadelphia, PA 19102-9479
> ph:  (215) 979-1620
> fax:  (215) 979-1695

Contact the Claims Administrator for more information or to ask about the status of your claim form.  Additional information is also at **www.warehousesettlement.com**.



**OTHER IMPORTANT INFORMATION**

The "Settlement Agreement" explains the entire agreement between the parties in detail.  You may request a copy of the Settlement Agreement from the Claims Administrator, or you may review it at **www.warehousesettlement.com**.

**This Notice only summarizes the lawsuit, the settlement, and related matters.  For more information, you may inspect the Court files at the Office of the Clerk, 312 N. Spring Street, Room G-8, from 8:30 a.m. to 4:00 p.m., Monday through Friday.**

**PLEASE DO NOT CONTACT THE COURT FOR INFORMATION ABOUT THIS SETTLEMENT OR THE CLAIMS PROCESS. IF YOU HAVE QUESTIONS, YOU MAY CONTACT THE PLAINTIFFS' ATTORNEYS, FREE OF CHARGE.**

Exh. 4

THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
Traber & Voorhees
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com

MICHAEL RUBIN (SBN 80618)
JONATHAN WEISSGLASS (SBN 185008)
JENNIFER SUNG (SBN 254741)
ERIC P. BROWN (SBN 284285)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
mrubin@altber.com
jweissglass@altber.com
jsung@altber.com

(Add'l counsel on next page)
Attorneys for Plaintiffs Everardo Carrillo, *et al.*

FILED
CLERK, U.S. DISTRICT COURT

JAN 11 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERARDO CARRILLO; FERNANDO CHAVEZ; ERIC FLORES; JOSE MARTINEZ ARCEO; JUAN CHAVEZ; ARMANDO ESQUIVEL; GUADALUPE RANGEL MENDOZA; and JOSE ENRIQUE TRUJILLO-VERGARA, for themselves and all others similarly situated and the general public, <br><br> Plaintiffs, <br><br> v. <br><br> SCHNEIDER LOGISTICS, INC.; SCHNEIDER LOGISTICS TRANS-LOADING AND DISTRIBUTION, INC.; PREMIER WAREHOUSING VENTURES, LLC; ROGERS-PREMIER UNLOADING SERVICES, LLC; IMPACT LOGISTICS, INC., WALMART STORES, INC., and DOES 2-15, <br><br> Defendants. | Case No. CV 11-8557 CAS (DTBx) <br><br> THIRD AMENDED CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, DAMAGES, RESTITUTION, AND CIVIL PENALTIES <br><br> (1) FEDERAL FAIR LABOR STANDARDS ACT; <br> (2) CALIFORNIA LABOR CODE, CALIFORNIA WAGE ORDERS; <br> (3) CALIFORNIA LABOR CODE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA UNFAIR COMPETITION LAW <br><br> DEMAND FOR JURY TRIAL |

EXHIBIT 4

**Exh. 4**

1   Additional counsel for plaintiffs:
    GUS T. MAY (SBN 159436)
2   KEVIN R. KISH (SBN 233004)
3   MATTHEW E. DECAROLIS (SBN 238595)
    Bet Tzedek Legal Services
4   3250 Wilshire Blvd., 13th Floor
    Los Angeles, CA  90010
5   Telephone: (323) 939-0506
6   Facsimile: (213) 384-3524
    gmay@bettzedek.org
7   kkish@bettzedek.org
    mdecarolis@bettzedek.org
8

9   SANDRA C. MUÑOZ (SBN 190404)
    Law Offices of Sandra C. Muñoz
10  5429 E. Beverly Blvd.
    Los Angeles, CA 90022
11  Telephone: (323) 720-9400
12  Facsimile: (323) 720-9090
    scm4law@att.net

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 4**

Plaintiffs Everardo Carrillo, Fernando Chavez, Eric Flores, Jose Martinez Arceo, Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, and Jose Enrique Trujillo-Vergara, on their own behalf, on behalf of the general public, and on behalf of all similarly situated warehouse workers employed in Riverside County, California, by defendants Walmart Stores, Inc. ("Walmart"), Schneider Logistics, Inc. ("Schneider Logistics"); Schneider Logistics Transloading and Distribution Inc. ("Schneider Transloading," which includes its predecessor American Port Services, Inc., and, collectively with Schneider Logistics, "Schneider"); Premier Warehousing Ventures, LLC ("Premier Warehousing"); Rogers-Premier Unloading Services, LLC ("Premier Unloading," and, collectively with Premier Warehousing, "Premier"), Impact Logistics, Inc. ("Impact"), and Does 2-15, allege as follows:

## INTRODUCTION

1. This is a class, collective, and representative action brought under federal and California law by eight individual warehouse workers, and over 200 other similarly situated warehouse workers who filed consents to sue pursuant to 29 U.S.C. §216(b), whom defendants have forced to work long hours, under oppressive workplace conditions, for legally inadequate pay, in defendants' Inland Empire warehouses located in Eastvale (formerly Mira Loma), California ("the Mira Loma warehouses"). Plaintiffs bring this action on behalf of themselves, others similarly situated, and the general public to recover the wages that defendants stole from them – and are continuing to steal – in violation of federal and California law. Plaintiffs also seek redress for other consequences of defendants' unlawful conduct and conspiracies, including defendants' wrongful scheme to hide and then cover up the extent of their wrongdoing by failing to keep mandatory payroll records, falsifying records of hours worked and compensation owed, and concealing, denying and/or misrepresenting to the workers the amount of their earnings and on what basis these earnings were calculated.

**EXHIBIT 4**

Exh. 4

2. Like hundreds of other similarly situated warehouse workers whom defendants employed during the applicable limitations period, plaintiffs spend their workdays performing strenuous, unskilled physical labor in an environment where the temperature often exceeds 90 degrees, filling orders, labeling boxes, sweeping and cleaning warehouse facilities, breaking down pallet supports, and lifting boxes on and off semi-trailer truck containers destined for Walmart distribution centers and Walmart stores throughout the United States. Most of the warehouse workers are immigrants; many do not speak English fluently; and large numbers of them have no formal education beyond middle school.

3. At all relevant times, defendant Walmart has been the owner and/or lessee of the Mira Loma warehouses; the owner of all the equipment used by, as well as the goods unloaded and loaded by, plaintiffs and other workers in those warehouses; and the sole customer of those warehouses. Although Walmart has hired contractors, like defendant Schneider, to operate the Mira Loma warehouses on its behalf and as its agent, at all relevant times, Walmart has directed and controlled the warehouse operations, including the material terms and conditions of employment of plaintiffs and all other similarly situated warehouse workers.

4. Defendants Impact and Premier are warehouse service contractors that supply warehouse workers to warehouse operators like Schneider and warehouse owners like Walmart. Defendant Impact first started supplying warehouse workers to perform manual labor at the Mira Loma warehouses in or about 2001. When defendant Schneider assumed operations of the Mira Loma warehouses in or about 2006, Walmart and Schneider chose to continue contracting with Impact to supply warehouse workers. In or about 2009, Schneider began contracting with defendant Premier to supply additional warehouse workers, with Walmart's knowledge and approval; while continuing to contract with defendant Impact.

**PARTIES**

5. Plaintiff Everardo Carrillo is an unskilled warehouse worker who applied for employment as a warehouse worker and was employed by defendants Premier, Schneider, Walmart, and Does 2-5 to work at one or more of the Mira Loma warehouses from approximately November 2009 to approximately November 2010.

6. Plaintiff Fernando Chavez is an unskilled warehouse worker who applied for employment as a warehouse worker and was employed by defendants Walmart, Premier, Schneider and Does 2-5 to work at one or more of the Mira Loma warehouses from October 2010 to June 2011.

7. Plaintiff Eric Flores is an unskilled warehouse worker who applied for employment as a warehouse worker and has been employed by defendants Premier, Schneider, Walmart, and Does 2-5 to work at one or more of the Mira Loma warehouses since October 2010.

8. Plaintiff Jose Martinez Arceo is an unskilled warehouse worker who applied for employment as a warehouse worker and has been employed by defendants Premier, Schneider, Walmart, and Does 2-5 to work at one or more of the Mira Loma warehouses since October 2009.

9. Each of the four plaintiffs identified immediately above brings this lawsuit on his own behalf, on behalf of all similarly situated warehouse workers employed by defendants, and on behalf of all aggrieved employees and the general public pursuant to California Labor Code §2698 et seq. and California Business & Professions Code §17200 et seq. The proposed class that these four plaintiffs seek to represent includes all individuals employed as warehouse workers at one or more of defendants' Inland Empire warehouses in Eastvale (formerly Mira Loma), California, at any time during the applicable limitations periods, who were initially hired to perform that work by Premier ("Schneider-Premier class").

10. Plaintiffs Eric Flores and Jose Martinez Arceo also seek to represent a subclass that includes all individuals who were initially hired by Premier and

employed as warehouse workers at one or more of defendants' Inland Empire warehouses in Eastvale (formerly Mira Loma), California, at any time from November 18, 2011– when Premier announced that all then-employed Schneider-Premier class members would be terminated on February 24, 2012 – through February 25, 2012 – when Premier stopped operating at the Mira Loma warehouses ("Schneider-Premier Mass Retaliation subclass").

11. Plaintiff Juan Chavez was an unskilled warehouse worker who applied to Impact for employment as a warehouse worker and was employed by Impact, Schneider, Walmart, and Does 6-10 to work at one or more of the Mira Loma warehouses from September 2011 to in or about December 2011.

12. Plaintiff Armando Esquivel is an unskilled warehouse worker who applied to Impact for employment as a warehouse worker and was employed by Impact, Walmart, and Does 6-10 to work at one or more of the Mira Loma warehouses for approximately seven years, from 2004 to January 2011, and was also employed by Schneider from in or about 2006, when Schneider began operating in the Mira Loma warehouses, until January 2011.

13. Plaintiff Guadalupe Rangel Mendoza is an unskilled warehouse worker who applied to Impact for employment as a warehouse worker and has been employed by Impact, Walmart, and Does 6-10 to work at one or more of the Mira Loma warehouses since March 2005, and has also been employed by Schneider since Schneider began operating in the Mira Loma warehouses in or about 2006.

14. Plaintiff Jose Enrique Trujillo-Vergara is an unskilled warehouse worker who applied to Impact for employment as a warehouse worker and has been employed by Impact, Walmart, and Does 6-10 to work at one or more of the Mira Loma warehouses since January 2003, and has also been employed by Schneider since Schneider began operating in the Mira Loma warehouses in or about 2006.

15. Plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, and Jose Enrique Trujillo-Vergara each brings this lawsuit on his own behalf, on

1  behalf of all similarly situated warehouse workers employed by defendants, and on

2  behalf of all aggrieved employees and the general public pursuant to California

3  Labor Code §2698 et seq. and California Business & Professions Code §17200 et

4  seq.  The proposed class that these four named plaintiffs seek to represent includes

5  all individuals employed as warehouse workers at one or more of defendants' Inland

6  Empire warehouses in Eastvale (formerly Mira Loma), California, at any time during

7  the applicable limitations periods, who were initially hired to perform that work by

8  Impact ("Impact class").

9      16.  Plaintiffs Armando Esquivel, Guadalupe Rangel Mendoza, and Jose

10  Enrique Trujillo-Vergara also seek to represent a subclass that includes all

11  individuals employed as warehouse workers at one or more of defendants' Inland

12  Empire warehouses in Eastvale (formerly Mira Loma), California, at any time before

13  Schneider assumed operations of those warehouses and during the applicable

14  limitations periods, who were initially hired to perform that work by Impact ("Pre-

15  Schneider Impact subclass").

16      17.  Plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza,

17  and Jose Enrique Trujillo-Vergara also each seek to represent a subclass that

18  includes all individuals employed as warehouse workers at one or more of

19  defendants' Inland Empire warehouses in Eastvale (formerly Mira Loma), California,

20  at any time after Schneider assumed operations of those warehouses and during the

21  applicable limitations periods, who were initially hired to perform that work by

22  Impact ("Schneider-Impact subclass").

23      18.  In addition to the eight named plaintiffs, each of whom filed an individual

24  Consent to Sue under 29 U.S.C. §216(b), over 200 other similarly situated

25  warehouse workers have also filed Consents to Sue in this action.

26      19.  Defendant Schneider Logistics, Inc. is a Wisconsin corporation that

27  operates in California and other states, principally operating warehouses and

28  providing warehouse and trucking related services on behalf of Walmart and other

1  customers.  At all relevant times, defendant Schneider Logistics has done business in

2  California and committed the unlawful acts alleged in this Complaint in the Eastern

3  Division of the Central District of California.

4      20.  Defendant Schneider Logistics Transloading and Distribution, Inc. is a

5  Wisconsin corporation that operates in California and other states, principally

6  operating warehouses and providing warehouse and trucking related services on

7  behalf of Walmart and other customers.  Schneider Transloading includes its

8  predecessor American Port Services, which began operating the Mira Loma

9  warehouses for defendant Walmart and as its agent in or about early 2006.

10  Schneider Transloading is and American Port Services was, from about 2005

11  through in or about 2005 or 2006, a wholly owned subsidiary of Schneider Logistics.

12  At all relevant times, defendant Schneider Transloading has done business in

13  California and committed the unlawful acts alleged in this Complaint in the Eastern

14  Division of the Central District of California.

15      21.  Defendant Schneider is independently liable for all of the violations

16  alleged herein on behalf of the Schneider-Premier class, the Schneider-Premier Mass

17  Retaliation subclass, and the Schneider-Impact subclass.  Schneider is also jointly

18  and severally liable for all of those violations, along with Walmart, Premier and

19  Impact, as the joint employer of the plaintiff warehouse workers hired by Impact and

20  by Premier respectively; as a co-conspirator with Walmart, Impact and Premier; as

21  an aider and abetter of the violations committed by Walmart, Impact and Premier;

22  and as a principal on whose behalf Impact and Premier were acting as agents in

23  committing the violations alleged herein.

24      22.  Defendant Premier Warehousing Ventures, LLC, is a North Carolina

25  corporation that operates in California and other states, providing a range of

26  warehouse services, including but not limited to freight loading, unloading, pallet

27  repair, and cleaning services, and that provides employees to work in Schneider

28  Logistics' warehouses and other warehouses in California.  At all relevant times,

1  defendant Premier Warehousing has done business in California and committed the

2  unlawful acts alleged in this Complaint in the Eastern Division of the Central District

3  of California.

4       23.  Defendant Rogers-Premier Unloading Services, LLC, is a North Carolina

5  corporation that operates in California and other states, providing a range of

6  warehouse services, including but not limited to freight loading and unloading, pallet

7  repair, and cleaning services, and that provides employees to work in Schneider

8  Logistics' warehouses and other warehouses in California.  Premier Unloading is a

9  subsidiary of defendant Premier Warehousing, and is owned by defendant Premier

10  Warehousing and Rogers Unloading Services, Inc.  At all relevant times, defendant

11  Premier Unloading has done business in California and committed the unlawful acts

12  alleged in this Complaint in the Eastern Division of the Central District of

13  California.

14       24.  Defendant Premier is independently liable for all of the violations alleged

15  herein on behalf of the Schneider-Premier class and the Schneider-Premier Mass

16  Retaliation subclass.  Premier is also jointly and severally liable for all of those

17  violations, along with Schneider, Walmart, and Does 2-5 and Does 11-15, as the

18  joint employer of the plaintiff warehouse workers hired by Premier; as a

19  co-conspirator with Schneider, Walmart, and Does 2-5 and Does 11-15; as an aider

20  and abetter of the violations committed by Schneider, Walmart, and Does 2-5 and

21  Does 11-15; and as an agent that has committed the violations alleged herein on

22  behalf of Schneider, Walmart, and Does 2-5 and Does 11-15.

23       25.  Defendant Impact Logistics, Inc., is a Tennessee corporation that operates

24  in California and other states, providing a range of warehouse services, including but

25  not limited to freight loading, unloading, pallet repair, and cleaning services, and that

26  provides employees to work in Schneider Logistics' warehouses and other

27  warehouses in California.  At all relevant times, defendant Impact Logistics, Inc. has

28

1    done business in California and committed the unlawful acts alleged in this

2    Complaint in the Eastern Division of the Central District of California.

3         26. Defendant Impact is independently liable for all of the violations alleged

4    herein on behalf of the Impact class, the Pre-Schneider Impact subclass, and the

5    Schneider-Impact subclass. Impact is also jointly and severally liable for all of those

6    violations, along with Schneider, Walmart, and Does 6-15, as the joint employer of

7    the plaintiff warehouse workers hired by Impact; as a co-conspirator with Schneider,

8    Walmart, and Does 6-15; as an aider and abetter of the violations committed by

9    Schneider, Walmart, and Does 6-15; and as an agent that has committed the

10   violations alleged herein on behalf of Schneider, Walmart, and Does 6-15.

11        27. Defendant Walmart Stores, Inc. is an Arkansas corporation that operates

12   in California and other states, principally operating large retail stores and overseeing

13   and operating, both directly and indirectly, an extensive supply network of trucking

14   and warehouse operations that provide a regular flow of goods to its retail stores and

15   distribution centers. At all relevant times, defendant Walmart has done business in

16   California and committed the unlawful acts alleged in this Complaint in the Eastern

17   Division of the Central District of California.

18        28. Defendant Walmart is independently liable for all of the violations alleged

19   herein on behalf of the Schneider-Premier class, including the Schneider-Premier

20   Mass Retaliation subclass, and the Impact class, including the Pre-Schneider Impact

21   subclass and the Schneider-Impact subclass. Walmart is also jointly and severally

22   liable for all of those violations, along with Schneider, Premier and Impact, as the

23   joint employer of the plaintiff warehouse workers directly hired by Impact and by

24   Premier respectively; as a co-conspirator with Schneider, Impact and Premier; as an

25   aider and abetter of the violations committed by Schneider, Impact and Premier; and

26   as the principal on whose behalf Schneider, Impact and/or Premier are and were

27   acting as agents in committing the violations alleged herein. Walmart is also liable

28   for all of the alleged harms caused to the Schneider-Premier class and the Schneider-

EXHIBIT 4

1   Impact subclass because Walmart was negligent in selecting, hiring, retaining,

2   supervising, and/or otherwise controlling Schneider as its warehouse operator, as it

3   knew or should have know that the workplace violations alleged herein were a direct

4   and foreseeable consequence of its selection of Schneider as the operator of its Mira

5   Loma warehouses, and its failure to require Schneider, through contract terms,

6   oversight, and economic incentives, to ensure compliance with the state and federal

7   laws alleged herein to have been violated.

8        29. The true names and capacities, whether individual, corporate, associate, or

9   otherwise, of defendants sued herein as Does 1 through 15, inclusive, are currently

10   unknown to plaintiffs, who therefore sue such defendants by such fictitious names.

11   Plaintiffs are informed and believe, and on that basis allege, that each of the

12   defendants designated herein as a Doe defendant is legally responsible in some

13   manner for the unlawful acts and omissions alleged herein. Plaintiffs will seek leave

14   of court to amend this Complaint to reflect the true names and capacities of the

15   defendants designated hereinafter as Doe defendants when such defendants'

16   identities become known.

17        30. Defendants Premier, Schneider, Walmart, and Does 2-5 at all relevant

18   times have been employers covered by the Fair Labor Standards Act, the California

19   Labor Code, and California Industrial Welfare Commission ("IWC") Wage Order

20   No. 9-2001. Those defendants, together with their co-conspirators, Does 11-15, are

21   jointly and severally responsible for all violations alleged herein. Together, Premier,

22   Schneider, Walmart, and Does 2-5 have jointly employed throughout the limitations

23   period, plaintiffs Everardo Carrillo, Fernando Chavez, Eric Flores, Jose Martinez

24   Arceo, and hundreds of other similarly situated warehouse workers, jointly dictating

25   material terms and conditions of those workers' employment and jointly controlling

26   material aspects of the employment relationship.

27        31. Defendants Impact, Schneider, Walmart, and Does 6-10 at all relevant

28   times have been employers covered by the Fair Labor Standards Act, the California

1  Labor Code, and IWC Wage Order No. 9-2001. Defendants Impact, Walmart, and
2  Does 6-10, together with their co-conspirators, Does 11-15, are jointly and severally
3  responsible for all violations alleged herein. Defendant Schneider, together with
4  defendants Impact, Walmart, and Does 6-15, is jointly and severally responsible for
5  all violations alleged herein, from the time that Schneider assumed operations of the
6  Mira Loma warehouses to the present. Impact, Walmart, and Does 6-10 have jointly
7  employed plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza,
8  Jose Enrique Trujillo-Vergara, and hundreds of other similarly situated warehouse
9  workers, jointly dictating material terms and conditions of those workers'
10 employment and jointly controlling material aspects of the employment relationship,
11 throughout the limitations period. From the time that Schneider assumed operations
12 of the Mira Loma warehouses to the present, together with Impact, Walmart, and
13 Does 6-10, Schneider has jointly employed plaintiffs Juan Chavez, Armando
14 Esquivel, Guadalupe Rangel Mendoza, Jose Enrique Trujillo-Vergara, and hundreds
15 of other similarly situated warehouse workers, jointly dictating material terms and
16 conditions of those workers' employment and jointly controlling material aspects of
17 the employment relationship.
18       32.    Defendants Schneider, Walmart, and Does 2-15 are also jointly and
19 severally liable for the violations alleged herein because they have aided and abetted
20 Premier and Impact in the commission of those violations, and/or because Premier
21 and Impact have committed those violations as agents of Schneider, Walmart, and
22 Does 2-15.
23                    **JURISDICTION AND VENUE**
24       33.  This action arises under the Fair Labor Standards Act ("FLSA"), 29
25 U.S.C. §201 et seq., and several California statutes and other provisions of law. This
26 Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331.
27 This Court has supplemental jurisdiction over the state law claims under 28 U.S.C.
28 §1367, because all state law claims derive from a common nucleus of operative fact

1   and are so related to the federal claims that they form part of the same case or

2   controversy under Article III of the United States Constitution.

3       34. Venue is proper in this judicial district pursuant to 29 U.S.C. §1391(b)

4   and (c). Venue is proper in this division because: the Court has personal jurisdiction

5   over the parties; one or more defendants may be found within this district and

6   division; one or more defendants resides within this district and division and all

7   defendants reside within this State; and a substantial part of the events or omissions

8   giving rise to plaintiffs' claims occurred within this district and division.

9                   **GENERAL FACTUAL ALLEGATIONS**

10  **A.**    **Plaintiffs Hired by Premier and Jointly Employed by Defendants**

11      35. Plaintiff Carrillo obtained his job with defendants after being referred by

12  another employee of Schneider, who told him to present himself for work at a

13  specific time and date on or about the first week of November 2009 at one of the

14  Mira Loma warehouses. Upon arriving at that warehouse at the appointed time,

15  Carrillo was directed by the security guard on duty to speak to Jose Rivas, an

16  employee of defendant Premier. Defendant Premier has conducted in the warehouse

17  lunchroom its business relating to its joint employment with Schneider and Walmart

18  of plaintiffs and similarly situated warehouse workers.

19      36. Plaintiffs Fernando Chavez, Flores, and Martinez also obtained their jobs

20  by presenting themselves at one of the Mira Loma warehouses where they spoke to

21  an employee of defendant Premier. These plaintiffs' applications, hiring, and

22  orientation were also processed on the premises of one of the Mira Loma

23  warehouses.

24      37. The paychecks of all four of these plaintiffs and members of the

25  Schneider-Premier class have borne the name of "Premier Warehousing Ventures,

26  LLC," but these plaintiffs and class members were directed by, and their work was

27  supervised throughout the period of their employment by, employees of Premier,

28  employees of Schneider, employees of Walmart, and, on information and belief,

**Exh. 4**

1   Does 2-5.  During all periods relevant herein, Walmart's and Schneider's employees

2   have directed and supervised the overall work of the warehouse, including assigning

3   the work of plaintiffs and members of the Schneider-Premier class; and all

4   defendants jointly dictated and controlled the terms and conditions of these workers'

5   employment.

6   **B.**      **Defendants' Pay Practices for Members of the Schneider-Premier Class**

7        38.      Throughout the period that Premier has operated in the Mira Loma

8   warehouses, defendants have knowingly and willfully failed to pay these plaintiffs

9   and members of the Schneider-Premier class of similarly situated warehouse workers

10  for all hours worked at the rates required by state and federal law.  For example,

11  defendants have willfully failed to pay these plaintiffs and similarly situated

12  warehouse workers for mandatory on-duty time during which they were required to

13  report to the worksite and be physically present at defendants' warehouse while

14  waiting for specific tasks to be assigned to them.  Defendants have also willfully

15  failed to pay these plaintiffs and similarly situated warehouse workers the overtime

16  premium required by state law when they worked more than eight hours per day, or

17  12 hours per day, or seven continuous days, or split shifts.  During those weeks when

18  defendants caused plaintiffs and similarly situated workers to work seven-day

19  workweeks, defendants have required those workers to work more than six hours per

20  day and more than 30 hours per week.

21       39.  Beginning when defendant Premier started operating at the Mira Loma

22  warehouses, in or about 2009, until approximately February 2010, defendants paid

23  plaintiffs Everardo Carrillo, Jose Martinez Arceo, and other members of the

24  Schneider-Premier class on an "hourly rate" basis.  During that period, defendants

25  systematically violated federal and state wage and hour law by failing to compensate

26  members of the Schneider-Premier class for all hours worked at the legally required

27  minimum wage and overtime premium rates. Additionally, the paycheck stubs

28  provided by defendants to plaintiffs Carrillo and Martinez and other members of the

1  Schneider-Premier class did not identify the number of hours they worked during

2  each covered pay period, or the hourly rate that defendants paid them for that work.

3      40. In or about February 2010, defendants Premier, Schneider, Walmart, and

4  Does 2-5 unilaterally adopted a new pay scheme for members of the Schneider-

5  Premier class, which they describe as a group "piece rate" plan. At or about that

6  time, a Premier supervisor instructed plaintiffs Carrillo and Martinez and all other

7  members of the Schneider-Premier class of warehouse workers employed at the time

8  to attend a mandatory, unpaid meeting. At that meeting, defendants' representative

9  informed all workers present, including plaintiffs Carrillo and Martinez, that

10  defendants were unilaterally changing their compensation system from an hourly-pay

11  plan to a group piece rate plan. Defendants' representative specifically represented

12  that, under the new compensation plan, plaintiffs and members of the Schneider-

13  Premier class would each earn "much more money" than they were earning under the

14  hourly rate plan, for the same amount of work, a representation upon which the

15  workers reasonably relied. Plaintiff Carrillo asked whether he could continue to be

16  paid on the existing hourly rate basis instead of under the new "piece rate" plan.

17  Defendants' representative responded that the workers had no choice, and that going

18  forward all compensation would be based on defendants' new group "piece rate" pay

19  scheme.

20      41. At that meeting, and in conversations with new warehouse workers whom

21  defendants employed for the first time after that meeting, defendants' representatives

22  described the group "piece rate" pay plan as based on a pro rata share, divided

23  equally among all members of the Schneider-Premier class employed at all of

24  defendants' Mira Loma warehouses during a particular shift, of a per-container

25  "piece" amount for each semi-trailer truck container that was completely filled or

26  unloaded by the end of that shift. Under defendants' group "piece rate" scheme, the

27  "piece rate" amount has varied, purportedly based on the size of the container and

28  other factors known only to defendants and never disclosed to plaintiffs or other

THIRD AMENDED CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION COMPLAINT,
No. CV 11-8557 CAS (DTBx)                 13

EXHIBIT 4

members of the Schneider-Premier class; but each "piece" has always been a completely filled or unloaded semi-trailer truck container. The "group" among which defendants claimed to allocate pro rata shares in each completed piece supposedly included all members of the Schneider-Premier class employed by defendants in their Mira Loma warehouses during the shift that was working when the container was filled.

42. Under defendants' purported group piece rate plan for the Schneider-Premier class, defendants have claimed to assign a fixed "piece rate" amount to each of the semi-trailer truck containers fully loaded or unloaded by all members of the Schneider-Premier class working during a shift, to add those amounts together, and then to divide the total by the number of all class members who worked on that shift to determine the daily compensation paid to each class member. While defendants have sometimes informed plaintiffs and other members of the Schneider-Premier class of the amounts they earned during a particular day, defendants have refused to disclose the purported underlying basis for calculating these wages, including the number of truck containers fully filled or unloaded during a shift, the number of class members who worked on the shift, and/or the piece rate or rates assigned to each fully filled or unloaded truck container.

43. By defendants' own description, this purported group piece rate system does not cover any work that is unrelated to the process of placing cargo into or removing cargo from a semi-trailer truck container. Nonetheless, throughout the time that defendants used this purported group piece rate system, defendants have instructed and required plaintiffs and other members of the Schneider-Premier class to perform many work tasks that are unrelated to the class member's labor in placing cargo into or removing cargo from trailers, but have refused to pay any compensation to members of the Schneider-Premier class for their performance of those unrelated work tasks.

44. Throughout the time that defendants used this group "piece rate" plan, defendants have not provided any compensation to plaintiffs or members of the Schneider-Premier class of similarly situated warehouse workers for work on any container that was not completely filled or unloaded by the end of the workers' shift, no matter how much time the workers spent filling or unloading on that container or how little work remained for the next shift of workers to complete the work on that container. Nor have defendants compensated plaintiffs or members of the Schneider-Premier class for work on a shift when the worker did not complete the shift, or for work that did not directly involve filling or unloading such containers. Defendants also have not paid those workers for any additional work that defendants also required, suffered, and permitted them to perform, such as being on mandatory on-duty status while waiting for a specific task to be assigned, or performing tasks such as cleaning the warehouse, repairing pallets, packing boxes or organizing shelves, and other duties that did not involve physically placing cargo onto containers or, when assigned to perform unloading, physically removing cargo from such containers.

45. Individual worker productivity was never a factor in defendants' calculation of the pay earned by plaintiffs and other members of the Schneider-Premier class under defendants' supposed group "piece rate" scheme. No matter how much effort a worker devoted to filling or unloading a given truck container, if that container was not completely filled or unloaded by the end of the worker's shift, the worker was not paid by defendants for any of his work on that container. Similarly, no matter how productive a worker was in assembling pallets, sweeping the warehouse, and completing other non-loading tasks, the worker's pay was not increased to reflect this productivity because, under the purported group piece rate system used for the Schneider-Premier class, warehouse workers were not paid any compensation at all to complete these tasks. Workers also earned less under defendants' scheme, for the same amount of work, if other workers employed during

1  that same shift at another one of the Mira Loma warehouses were relatively less

2  efficient or productive in completely filling or unloading containers during that shift,

3  regardless of the reason.

4      46. Defendants' warehouses are each large structures, each spanning roughly

5  the length and width of two city blocks. Workers employed by defendants in one

6  warehouse have not known and have not been able to determine exactly how many

7  workers defendants employ in another warehouse during a given shift, and have not

8  been able to accurately count or determine the number of other workers employed by

9  defendants in any of the warehouses, because of the size of those warehouses and

10  because workers are often inside containers or otherwise out of sight. Further, at

11  least one of the Mira Loma warehouses is located several miles away from the other

12  Mira Loma warehouses, foreclosing any possibility that class members could

13  observe the total number of workers on any shift or the amount of work performed.

14  Neither plaintiffs nor any member of the Schneider-Premier class have had any

15  ability to determine how many containers were filled or unloaded on any shift, how

16  many workers were employed by defendants on that shift, or how defendants

17  allocated the supposed group piece rate among the workers employed on that shift.

18  Defendants have had access to all that information, but defendants have deliberately

19  withheld that information from plaintiffs and from other members of the Schneider-

20  Premier class to further the conspiracies alleged herein and to mask and cover up

21  defendants' violations of state and federal law. On or about October 14, 2011,

22  members of the Schneider-Premier class demanded that defendants provide this

23  information to the members of the Schneider-Premier class currently working at the

24  Mira Loma warehouses, but defendants' representatives specifically reiterated their

25  refusal to provide this information.

26      47. Defendants have required plaintiffs and similarly situated warehouse

27  workers to perform substantial amounts of unpaid off-the-clock work every day in

28  violation of state and federal law. For example, defendants have had a regular policy

1  and practice of expressly directing, suffering, and permitting plaintiffs and similarly
2  situated warehouse workers to report to work at a specific time ready for duty, and to
3  perform uncompensated work before defendants assign those workers any of the so-
4  called "piece rate" work to perform. Because defendants' group "piece rate"
5  compensation scheme has not compensated plaintiffs and similarly situated workers
6  for any work other than filling or, on occasion, unloading truck containers,
7  defendants have not paid these workers any compensation for performing other tasks
8  required by defendants. Because defendants' group "piece rate" compensation
9  scheme also has not paid these workers for any work on containers whose filling has
10  not been completed by the end of the workers' shift, defendants also have not paid
11  these workers any compensation for any work performed on any container that
12  remained unfilled – even slightly unfilled – at the end of the workers' shift, or for
13  any work a worker performed on an uncompleted shift. The same is true for how
14  defendants apply their group "piece rate" compensation scheme to unloading work
15  performed by members of the Schneider-Premier class, who have not been paid any
16  compensation for work performed on any container that remained only partially
17  unloaded at the end of the workers' shift. All of the unpaid work that defendants
18  have required, suffered, or permitted plaintiffs and similarly situated warehouse
19  workers to perform has benefitted defendants, enabling them to avoid having to pay
20  to have that same work performed by permanent workers recruited and paid directly
21  by Schneider, rather than by Premier.

22      48. Defendants falsely represented to members of the Schneider-Premier class
23  that those workers' incomes would increase as a result of defendants' change to the
24  group piece rate method of payment. Instead, defendants' adoption of group piece
25  rate plan for paying plaintiffs and members of the Schneider-Premier classes caused
26  the pay of such warehouse workers to decrease sharply. Although defendants'
27  representatives falsely stated that plaintiffs and other members of the Schneider-
28  Premier class would make more money based on the group "piece rate" system, on

1   information and belief, defendants knew or should have known that workers'

2   effective hourly rates of pay would decrease dramatically, in part because defendants

3   would be able to – and did – defraud plaintiffs and similarly situated warehouse

4   workers by not paying them for many hours of work they performed that was neither

5   loading nor unloading work, by not recording all hours worked by the Schneider-

6   Premier class as required by state and federal law, by knowingly misrepresenting to

7   the workers how their compensation would be calculated and what compensation

8   they earned, and/or by hiding critical information from those workers about how

9   defendants calculated, and would calculate, those workers' pay.

10       49. Defendants have also falsely and fraudulently informed plaintiffs and

11   members of the Schneider-Premier class that defendants have based the workers'

12   pay, and defendants' calculation of that pay, on this group "piece rate" formula. But

13   defendants have not disclosed the components of that formula and have not provided

14   the critical information necessary for any worker to evaluate the accuracy of

15   defendants' representations about what wages are due, whether the supposed formula

16   was accurately applied, or whether the weekly compensation paid is greater than the

17   minimum wages dictated by state and federal law. Defendants have also routinely

18   failed to disclose to plaintiffs and members of the Schneider-Premier class the

19   underlying figures on which defendants' supposed calculations have been based,

20   including the piece rate or rates for each truck trailer filled, the number of truck

21   containers filled or unloaded in each covered warehouse each shift or each workday,

22   and the identity or number of the workers sharing in each group piece rate. On

23   information and belief, defendants' representations about the total amounts each

24   worker earned during each pay period – whether made orally the day after the work

25   was performed or as included in the lump sum compensation paid after the fact to the

26   workers – have been knowingly false, fraudulent, and inaccurate, because those

27   statements do not accurately reflect the actual number of truck trailers filled or

28   unloaded, the number of workers who filled them, and/or the "piece rates" assigned

1   to each truck trailer filled, and because the compensation defendants have actually

2   paid to plaintiffs and members of the Schneider-Premier class of similarly situated

3   workers has been less than the compensation that defendants have orally represented

4   to those workers that the workers earned.

5   **C.**   **Plaintiffs Hired by Impact and Jointly Employed by Defendants**

6         50. Plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza,

7   and Jose Enrique Trujillo-Vergara obtained their jobs at the Mira Loma warehouses

8   by applying for work with defendant Impact and being assigned to work at one of the

9   Mira Loma warehouses.  The paychecks of plaintiffs Juan Chavez, Armando

10  Esquivel, Guadalupe Rangel Mendoza, Jose Enrique Trujillo-Vergara, and members

11  of the Impact class of similarly situated warehouse workers have borne and continue

12  to bear the name of "Impact Logistics, Inc.," but throughout the period of their

13  employment, these plaintiffs have been directed, and their work has been supervised,

14  by employees of Impact; by employees of Walmart; and on information and belief,

15  by Does 6-10; and, beginning when Schneider assumed operations of the Mira Loma

16  warehouses in or about 2006, by employees of Schneider as well.

17        51.  At all relevant times, Walmart's employees have directed and supervised

18  the overall work of the warehouse, including assigning the work of plaintiffs and

19  members of the Impact class; and defendants Impact, Walmart, and Does 6-10 have

20  jointly dictated and controlled the terms and conditions of these workers'

21  employment.

22        52.  At all times since Schneider assumed operations of the Mira Loma

23  warehouses and relevant herein, Schneider's employees have, together with

24  Walmart's employees, directed and supervised the overall work of the warehouse,

25  including assigning the work of plaintiffs and members of the Schneider-Impact

26  subclass; and all defendants have jointly dictated and controlled the terms and

27  conditions of these workers' employment.

28

## D.  Defendants' Pay Practices for Members of the Impact Class

53.  Beginning when Impact started operating in the Mira Loma warehouses in or about 2001, and continuing when Schneider assumed operations of the Mira Loma warehouses in 2006, Impact, Walmart, Does 6-10, and Schneider have used a bogus piece rate system to compensate members of the Impact class for loading and unloading.  Under this bogus piece rate system for the Impact class, defendants have claimed to pay members of the Impact class a set amount for each semi-trailer truck container fully filled or unloaded by an individual worker or that individual's team of unloaders.  Under this system, if a member of the Impact class works with another class member to fill or unload a semi-trailer truck container, the two workers share in the piece rate assigned to filling or unloading that trailer.  Defendants have represented to plaintiffs and other members of the Impact class that, under this piece rate system, workers are credited with a "piece" only when they have completed all of the loading or unloading work that must be done on a semi-trailer truck container.  Under this system, defendants have compensated plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, Jose Enrique Trujillo-Vergara, and members of the Impact class based only on the number of semi-trailer truck containers that were completely filled or unloaded by the worker or his team of loaders or unloaders during the shift worked.

54.  Under defendants' "piece rate" system for the Impact class, the piece rate amount has varied, purportedly based on the size of the semi-trailer truck container and/or on the number of boxes loaded into or unloaded from the containers, and other factors known only to defendants and not disclosed to plaintiffs or other members of the Impact class.  Defendants have maintained rate sheets that purportedly reflect the piece rate for each truck, but at times relevant herein plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, Jose Enrique Trujillo-Vergara, and other members of the Impact class have not had access to these rate sheets except when employed as a lead worker.  At times relevant herein,

1  defendants have prohibited lead workers from giving non-lead workers access to

2  these rate sheets, and have not disclosed to plaintiffs or other members of the Impact

3  class how these rate sheets were determined or other factors that affect their

4  compensation. For non-lead workers, the only source of information about the piece

5  rate compensation earned for work they performed has been from oral reports

6  provided by defendants after the class member has finished filling or unloading a

7  truck container and has reported that completion to defendants.

8       55. By defendants' own description, the purported piece rate system used to

9  compensate plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza,

10  Jose Enrique Trujillo-Vergara, and other members of the Impact class has not

11  provided any compensation for any work that is unrelated to the process of

12  completely loading or unloading a semi-trailer truck container. Defendants have not

13  paid those workers for the work they perform on any container that was not

14  completely loaded or unloaded by the end of the worker's shift. Defendants also

15  have failed to pay plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel

16  Mendoza, Jose Enrique Trujillo-Vergara, and other members of the Impact class for

17  other work that defendants have required, suffered, or permitted them to perform,

18  such as being on mandatory on-duty status while waiting for a specific loading or

19  unloading job to be assigned, sorting and arranging boxes on specific pallets,

20  locating missing boxes or posts, and other duties that have not involved physically

21  loading boxes in or unloading boxes from the semi-trailer truck containers. All of

22  the unpaid work that defendants have required, suffered, or permitted plaintiffs Juan

23  Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, Jose Enrique Trujillo-

24  Vergara, and other members of the Impact class to perform has benefitted

25  defendants, enabling them to avoid having to pay to have that same work performed

26  by more highly paid, direct-hire workers recruited and paid directly by Schneider

27  Logistics, rather than by Impact.

28

**Exh. 4**

56.  On information and belief, defendants knew or should have known that the workers' effective hourly rates of pay under the purported piece rate system used for the Impact class would result in a violation of federal and state minimum wage and overtime standards, in part because defendants would be able to defraud and have in fact defrauded plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, Jose Enrique Trujillo-Vergara, and members of the Impact class by not paying them for all work they performed, by knowingly misrepresenting to the workers how their compensation would be calculated and what compensation they earned, and/or by hiding critical information from them about the underlying factors and formula used by defendants to calculate the wages actually paid to these workers and the number of hours worked.

57.  Defendants falsely and fraudulently informed plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, Jose Enrique Trujillo-Vergara, and members of the Impact class that defendants have calculated these workers' pay on the basis of defendants' supposed per-container piece rate system.  But defendants have not disclosed the components of the formula and have not provided the critical underlying information necessary for any worker to evaluate the accuracy of defendants' representation about what wages are due, whether the supposed formula was accurately applied, or whether the formula produces compensation consistent with federal and state minimum wage and overtime pay requirements.  Specifically, defendants have failed to provide the workers with information about how the per-container rates have been derived, including how the size of the semi-trailer truck container, the number of boxes loaded or unloaded, and other factors that have affected what the worker has actually been paid for loading or unloading a particular semi-trailer truck container.  On information and belief, defendants' representations about the total amounts each worker earned during each pay period – whether made orally after the workers completed a loading or unloading task or as included in the lump sum compensation paid after the fact to the workers – have been knowingly

1    false, fraudulent, and inaccurate, because those statements have not accurately

2    reflected the actual number of boxes loaded or unloaded, and/or the number of semi-

3    trailer truck containers filled or emptied of cargo, and/or because the compensation

4    defendants have actually paid to plaintiffs Juan Chavez, Armando Esquivel,

5    Guadalupe Rangel Mendoza, Jose Enrique Trujillo-Vergara, and members of the

6    Impact class has been less than the compensation that defendants have orally

7    represented to those workers that the workers earned.

8        58.  Beginning when defendant Impact began operating in the Mira Loma

9    warehouses, defendants have knowingly and willfully failed to pay plaintiffs Juan

10   Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, and Jose Enrique Trujillo-

11   Vergara, and members of the Impact class of similarly situated warehouse workers

12   for all hours worked at the rates required by state and federal law.  For example,

13   defendants have willfully failed to pay plaintiffs Juan Chavez, Armando Esquivel,

14   Guadalupe Rangel Mendoza, and Jose Enrique Trujillo-Vergara and similarly

15   situated warehouse workers for mandatory on-duty time during which they were

16   required to report to the worksite and to be physically present at defendants'

17   warehouse while waiting for specific tasks to be assigned to them.  Defendants have

18   also willfully failed to pay these plaintiffs and similarly situated warehouse workers

19   the overtime premium required by state law when they have worked more than eight

20   hours per day, or 12 hours per day, or seven continuous days, or split shifts.  During

21   those weeks when defendants have caused these plaintiffs and similarly situated

22   workers to work seven-day workweeks, defendants have required those workers to

23   work more than six hours per day and more than 30 hours per week.

24       59.  During the limitations period, defendants Impact, Schneider, Walmart,

25   and Does 6-10 have sometimes required warehouse workers hired by Impact to

26   perform "flow work," which consists of transferring boxes that move through the

27   warehouse but are not stored at the warehouse, and have purported to compensate

28   plaintiffs and members of the Impact class for such flow work on an hourly basis.

THIRD AMENDED CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION COMPLAINT,
No. CV 11-8557 CAS (DTBx)                              23

EXHIBIT 4

**Exh. 4**

1   Job duties related to flow work include, but are not limited to, constructing pallets

2   and pallet racks, placing boxes onto pallets, and labeling boxes. However,

3   defendants have systematically violated federal and state wage and hour law by

4   failing to compensate plaintiffs and other members of the Impact class who have

5   performed flow work for all hours worked at the legally required minimum wage and

6   overtime premium rates.

7        60. During the limitations period, including but not limited to an

8   approximately ten-month period in 2008, defendants Impact, Schneider, Walmart,

9   and Does 6-10 have sometimes required warehouse workers hired by Impact to

10  perform loading work but have compensated them on an hourly basis instead of a

11  piece rate basis. Defendants have systematically violated federal and state wage and

12  hour law by failing to compensate plaintiffs and other members of the Impact class

13  who were performing loading work on an hourly basis for all hours worked at the

14  legally required minimum wage and overtime premium rates.

15  **E.**    **Defendants' Failure to Record and Report Accurate Hours Worked and**

16         **Production Information for Purported Piece Rates**

17       61. Defendants, and each of them, have failed to create accurate records of the

18  number of hours worked by plaintiffs and members of the Schneider-Premier and

19  Impact classes.

20       62. Throughout the time that Premier operated in the Mira Loma warehouses,

21  including during the period that defendants Schneider, Walmart, and Premier paid

22  plaintiffs Carrillo and Martinez and similarly situated warehouse workers on an

23  hourly basis, defendants Schneider, Walmart, and Premier did not record complete or

24  accurate information about the number of hours worked by plaintiffs and members of

25  the Schneider-Premier class.

26       63. In and after February 2010, defendants Schneider and Premier directed

27  plaintiffs Carrillo and Martinez and other members of the Schneider-Premier class on

28  every shift to sign their names on a blank sign-in form, but not to enter any other

THIRD AMENDED CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION COMPLAINT,
No. CV 11-8557 CAS (DTBx)

**EXHIBIT 4**

1 information such as the time work began, the time work ended, or any break time

2 taken. Defendants Schneider and Premier then directed Premier's "lead" employees

3 or other supervisors to fill in the blank spaces for each warehouse worker, and to

4 input false starting, stopping, and/or break times, a number purporting to record the

5 total hours worked, and/or similar notations that defendants knew and intended

6 would significantly understate the number of hours each worker actually worked

7 under California and federal law.

8     64. Throughout the time that Premier operated in the Mira Loma warehouses,

9 defendants Schneider, Walmart, and Premier failed to provide plaintiffs and

10 members of the Schneider-Premier class with complete or accurate information about

11 the hours they worked, the number of pieces they completed, the hourly rate or piece

12 rate they earned, their overtime hours and overtime pay, or other legally mandated

13 information.

14     65. Throughout the applicable limitations period, defendants Schneider,

15 Walmart, and Impact have maintained time records that significantly understate the

16 number of hours actually worked by plaintiffs Juan Chavez, Armando Esquivel,

17 Guadalupe Rangel Mendoza, Jose Enrique Trujillo-Vergara, and other members of

18 the Impact class and Schneider-Impact subclass. Defendants Schneider, Walmart,

19 and Impact have not recorded complete or accurate information about the number of

20 hours worked by plaintiffs and members of the Impact class and Schneider-Impact

21 subclass. Defendants Schneider, Walmart, and Impact have failed to provide

22 plaintiffs and members of the Impact class and Schneider-Impact subclass with

23 complete or accurate information about the hours they worked, the number of pieces

24 they completed, the hourly rate or piece rate they earned, their overtime hours and

25 overtime pay, or other legally mandated information.

26     66. Plaintiffs and other members of the Schneider-Premier and Impact classes

27 have requested that defendants provide them with accurate information of the wages

28 they have earned and the basis for those wages. Members of the Schneider-Premier

THIRD AMENDED CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION COMPLAINT,
No. CV 11-8557 CAS (DTBx)
25

EXHIBIT 4

1  class frequently asked their supervisors to tell them how much they actually earned.

2  Defendants' representatives often refused to respond to such inquiries altogether, but

3  when a response was given, defendants simply stated a dollar amount that defendants

4  represented was the per-worker share of the group piece rate on the worker's shift for

5  the prior day or for two days before, based on the number of containers filled by all

6  workers employed on that shift. When plaintiff Fernando Chavez requested that

7  defendants produce written documentation of the hours he worked and other

8  mandatory pay records, defendants refused to provide any responsive documents.

9  Similarly, members of the Impact class frequently asked their supervisors for

10 information about the wages earned unloading a particular semi-trailer truck

11 container or group of containers and received oral reports about what compensation

12 would be paid for that work. When plaintiffs and other members of the

13 Schneider-Premier and Impact classes compared the dollar amounts that defendants

14 represented they had earned with the dollar amounts they were actually paid on their

15 next pay check, those workers repeatedly discovered that defendants actually paid

16 them considerably less than the amounts defendants had represented the workers had

17 earned.

18 **F.      Defendants' Failure to Provide Mandatory Meal and Rest Breaks**

19        67.  Defendants Premier, Schneider, Walmart, and Does 2-5 have had a policy

20 or practice of not authorizing or permitting plaintiffs Carrillo, Martinez, Flores, and

21 Fernando Chavez and other members of the Schneider-Premier class to take all

22 legally mandated meal periods. On many occasions, defendants' supervisors have

23 affirmatively instructed these plaintiffs and other members of the Schneider-Premier

24 class not to take meal periods. Through the implementation of these practices,

25 defendants Premier, Schneider, Walmart, and Does 2-5 have failed to provide these

26 plaintiffs and other members of the Schneider-Premier class their first meal break as

27 required under California law.

28

68.  Defendants Premier, Schneider, Walmart, and Does 2-5 have had a policy and practice of not providing plaintiffs Carrillo, Martinez, Flores, and Fernando Chavez and other members of the Schneider-Premier class with all second meal breaks that defendants are required to provide to workers on shifts of 10 hours or more.

69.  Defendants Impact, Schneider, Walmart, and Does 6-10 have had a policy and practice of not providing plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, Jose Enrique Trujillo-Vergara, and other members of the Impact class with all legally-mandated off-duty meal breaks, allowing time off from continuous unloading work only when there are no semi-trailer truck containers present and ready for unloading.

70.  Defendants have not paid plaintiffs and other members of the Schneider-Premier and Impact classes the additional hour of pay required by California Labor Code §226.7 for any meal break that defendants failed to provide, or prevented, discouraged, or dissuaded those workers from taking.

71.  Defendants Premier, Schneider, Walmart, and Does 2-5 have had a policy and practice of not providing plaintiffs Carrillo, Martinez, Flores, and Fernando Chavez, and other members of the Schneider-Premier class with all legally mandated paid rest breaks.

72.  Defendants Impact, Schneider, Walmart, and Does 6-10 have had a policy and practice of not providing plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, and Jose Enrique Trujillo-Vergara, and other members of the Impact class with all legally mandated paid rest breaks, allowing time off from continuous unloading work only when there are no semi-trailer truck containers present and ready for unloading.

**G.  Defendants' Failure to Pay for Mandatory Reporting and Split Shifts**

73.  Defendants have routinely required a greater number of their jointly employed warehouse workers to report for duty each day and each shift than the

THIRD AMENDED CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION COMPLAINT,
No. CV 11-8557 CAS (DTBx)                                              27

EXHIBIT 4

1 number of workers whom defendants need to perform the work that defendants have
2 available to be performed on that particular day and shift. At the start of a shift,
3 defendants have sent all unneeded workers home without pay, including without the
4 reporting pay required by IWC Wage Order No. 9-2001 §5(A), despite having
5 required those workers to report for duty ready to work. Defendants also have not
6 compensated workers who worked two shifts that were interrupted by a non-paid
7 working period for an extra hour of work as required by IWC Wage Order No. 9-
8 2001 §4(C).

9      74. During the course of their employment for defendants, plaintiffs and other
10 members of the Schneider-Premier and Impact classes have complied with
11 defendants' requirements to report for duty each day at a designated time, but
12 defendants have failed to furnish plaintiffs and other members of the Schneider-
13 Premier and Impact classes with at least half of their usual or scheduled days work,
14 and have sent those workers home without the required pay for the time they spent
15 reporting to work, in violation of IWC Wage Order No. 9-2001 §5(A).

16      75. During the course of their employment for defendants, plaintiffs and other
17 members of the Schneider-Premier and Impact classes have been required and/or
18 scheduled to work two shifts during a single day. Although the shifts were
19 interrupted by non-paid working period of one or more hours, such workers have not
20 been paid for an extra hour of work as required by IWC Wage Order No. 9-2001
21 §4(C).

22 **H.**   **Defendants' Retaliation Against All Plaintiffs and Class Members**

23      76. During the period of time defendants' supposed "piece rate"
24 compensation schemes have been in effect, defendants have responded to workers
25 who questioned their pay or complained about defendants' unlawful practices by
26 denying them work, issuing disciplinary warnings or other threats, sending the
27 complaining workers home mid-shift and therefore denying them all pay for work
28 performed that day because the workers did not complete the shift, or terminating or

THIRD AMENDED CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION COMPLAINT,
No. CV 11-8557 CAS (DTBx)

**EXHIBIT 4** 28

1  threatening to terminate them.  Defendants have done so to punish and retaliate

2  against those who question or complain about defendants' unlawful practices and to

3  dissuade plaintiffs and similarly situated warehouse workers from questioning or

4  complaining about defendants' practices.

5      77. For example, when plaintiff Fernando Chavez complained about the

6  amount he was paid, based on his belief that defendants were not paying him the

7  amount he was promised for the work he performed, defendants responded by

8  refusing to give him any work the following day.  Plaintiff Flores witnessed that

9  workers who complained about pay were either sent home or were not called to work

10  the next day.  Plaintiff Flores was also present when a worker complained about

11  underpayment of wages and was punished by being sent home without work for a

12  week.  Plaintiff Carrillo repeatedly saw workers sent home who complained, and

13  when it happened mid-shift, the workers received no pay for the entire day.  Plaintiff

14  Martinez witnessed workers who complained being deprived of work hours as

15  punishment for questioning their pay.

16      78.  During 2011, plaintiff Fernando Chavez repeatedly complained to

17  defendants that they were denying him breaks he was entitled to receive and that

18  defendants were improperly assigning him to perform sweeping, order filling, and

19  other work for which he was provided with no compensation under defendants'

20  purported group "piece rate" scheme used for the Schneider-Premier class.  On or

21  about June 16, 2011 – the day after a Schneider Logistics supervisor issued a public

22  order to a Schneider-Premier class member to perform certain non-loading work – a

23  Premier lead employee named Luis Lopez informed plaintiff Fernando Chavez and

24  other members of the Schneider-Premier class that warehouse workers could be

25  terminated by Schneider if a Schneider supervisor saw that they were not constantly

26  working while they were present in the Mira Loma warehouse.  Plaintiff Fernando

27  Chavez and Baltazar Zavala, a Schneider-Premier class member, questioned this rule

28  and asked whether Schneider had the authority to fire them.  Schneider management

THIRD AMENDED CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION COMPLAINT,
No. CV 11-8557 CAS (DTBx)                    29

**EXHIBIT 4**

1   addressed these plaintiffs' questions in the presence of many other members of the

2   Schneider-Premier class, advising them that Schneider management personnel had

3   the authority to assign any tasks and to terminate any worker in the warehouse, and

4   that Schneider would terminate any worker who refused to accept this authority.

5   Later that day, in retaliation for these Schneider-Premier class members' questions

6   about and opposition to defendants' practices, defendants terminated plaintiff

7   Fernando Chavez and class member Baltazar Zavala, advising them that their

8   terminations were demanded and required by Schneider management personnel.

9       79.   On October 12, 2011, the California Division of Labor Standards

10   Enforcement ("DLSE") conducted an unannounced inspection of the Mira Loma

11   warehouses, during which investigators uncovered significant recordkeeping

12   violations for which administrative citations were issued.  Plaintiffs filed the original

13   complaint in this action on October 17, 2011.  On October 31, 2011, the United

14   States District Court, Central District of California, ("the Court") issued a temporary

15   restraining order ("TRO") against Premier and Impact imposing requirements for

16   recordkeeping and issuing corrected wage statements.  On November 9, 2011, the

17   Court ordered the defendants then named in this lawsuit to show cause why they

18   should not be restrained and enjoined by a preliminary injunction pending trial as

19   described in the TRO.  On December 7, 2011, the Court granted a preliminary

20   injunction against those defendants requiring them to keep accurate records and to

21   abide by the requirements of state and federal labor laws.

22       80.   On October 19, 2011, two days after this lawsuit was filed, Schneider's

23   management called a mandatory meeting of about 25 employees, at which a

24   Schneider manager threatened retaliation against workers who supported the lawsuit.

25   On October 21, 2011, Premier sent a letter to Schneider stating that Premier "had

26   come to believe" that it was "unable to sustain its work" under "the present terms" of

27   its April 2011-April 2013 labor services contract with Schneider, but that Premier

28   would "be glad to discuss new arrangements."  Schneider did not attempt to

renegotiate Premier's contract and instead negotiated with a different contractor to replace Premier; this response was contrary to Schneider's past practice. Schneider never offered Premier the higher contract rates it eventually agreed to pay the replacement contractor, despite Premier's offer to "discuss other arrangements." Schneider also refused to retain or arrange for the replacement contractor to retain the existing experienced workforce that had already been trained and vetted by Premier, even though doing so would be more efficient. On November 18, 2011, Premier distributed a termination letter to Schneider-Premier class members then working in the Mira Loma warehouses, notifying the workers that they would be "separated from employment with Premier on or about February 24, 2012," and that none would be rehired by Premier to work at other warehouses. On December 22, 2011, plaintiffs filed a motion for preliminary injunction seeking to enjoin this retaliatory mass firing of workers and for provisional class certification, which the Court granted on January 30, 2012. Schneider chose to comply with this preliminary injunction order by transferring the Schneider-Premier class members to its own payroll. Premier ceased acting as a labor services contractor for Schneider and Walmart at the Mira Loma warehouses as of February 24, 2012.

81. After October 17, 2011, when this lawsuit was filed, defendants Schneider, Walmart, and Does 2-15 began transferring work from Impact to other labor contractor(s), including a contractor named Select, in retaliation against the Impact class members' involvement in this lawsuit and/or cooperation with the DLSE investigation.

## I. Summary of Defendants' Violations of All Plaintiffs' Rights

82. Before approximately February 2010, defendants Premier, Schneider, Walmart, and Does 2-5 violated federal and state wage and hour law by failing to pay members of the Schneider-Premier class for all hours worked and for all overtime hours at the legally required overtime premium rates, among other violations.

EXHIBIT 4

83.  Beginning in or about February 2010, defendants Premier, Schneider, Walmart, and Does 2-5 have applied their purported group piece rate pay scheme in a manner that has deprived plaintiffs and all members of the Schneider-Premier class of the minimum wages, overtime, and other premium pay required by law.

84.  Defendants Impact, Walmart, and Does 6-10, starting when Impact began operating in the Mira Loma Warehouses, and defendant Schneider, when Schneider assumed operations of the Mira Loma Warehouses, have applied their purported piece rate pay scheme in a manner that has deprived plaintiffs and all members of the Impact class of the minimum wages, overtime, and other premium pay required by law.  To the extent that defendants have paid members of the Impact classes on an hourly basis for certain work performed, like flow work and some loading work, defendants have violated federal and state wage and hour law by failing to pay members of the Impact classes for all hours worked and for all overtime hours at the legally required overtime premium rates, among other violations.

85.  Under their purported piece rate pay schemes, defendants have not paid members of the Schneider-Premier and Impact classes compensation for work that defendants have required, suffered, and permitted that does not directly involve placing products into or out of containers and trucks.  Defendants have not paid these workers any compensation for mandatory on-duty waiting time and rest break time that is not included in the piece rate calculation.  Defendants have not paid these workers any compensation for work filling or unloading truck containers that are not completely filled or unloaded before the end of the workers' shift.

86.  Because defendants' piece rate compensation schemes have not paid plaintiffs and other members of the Schneider-Premier and Impact classes for time that these workers rest, defendants have denied plaintiffs and all members of the Schneider-Premier and Impact classes paid rest periods to which they are entitled. Defendants also have violated the rights of all plaintiffs and other members of the Schneider-Premier and Impact classes by failing to provide them with off-duty meal

1 breaks in compliance with the law.  Defendants have not paid these workers the

2 additional hour of pay that California law requires employers to pay when they fail to

3 provide a legally required meal period or rest break.

4      87.  Defendants have not paid plaintiffs or any members of the

5 Schneider-Premier and Impact classes the additional hour of pay that California law

6 requires employers to pay when workers are required to work two shifts that are

7 interrupted by a non-paid working period.  Defendants have not paid these workers

8 any compensation for "reporting time" when the workers are called to duty by

9 defendants and then sent away without being given any work, or when these workers

10 work partial shifts but are sent home or otherwise laid off before a shift is completed.

11 Defendants have not paid these workers for all wages due and owing upon the

12 workers' discharge or other termination of employment.

13     88.  Defendants have not kept accurate payroll records as required by law, and

14 have not provided plaintiffs or any members of the Schneider-Premier and Impact

15 classes with all of the information required by state law to be delivered with the

16 workers' paychecks, including an accurate statement of the actual hours worked and

17 the actual piece rate components, that would enable these workers to determine how

18 their purported piece rate pay was calculated.  Defendants have misrepresented to

19 these workers how they would be paid, how much they earned, and how their

20 compensation is, has been, and will be calculated, and defendants have conspired

21 among and between themselves to prevent plaintiffs and other members of the

22 Schneider-Premier and Impact classes from gaining timely access to this information.

23     89.  Defendants have maintained an unlawful policy and/or practice of

24 retaliating against plaintiffs and members of the Schneider-Premier and Impact

25 classes who questioned their pay, complained about defendants' pay practices,

26 sought detailed information about how their compensation was calculated, objected

27 to being assigned to do unpaid work, and otherwise asserted their rights under

28 federal and state labor law.  Defendants' retaliation has taken a number of forms,

1 including but not limited to through denial of the opportunity to work, issuance of

2 disciplinary warnings and other threats, terminating or threatening to terminate

3 plaintiff class members, and through other means.

4       90. Defendants have unlawfully exposed all plaintiffs and other members of

5 the Schneider-Premier and Impact classes to hazardous working conditions, and

6 deprived and continue to deprive these workers of minimum health and safety

7 protections required by state and federal law. For example, defendants have forced

8 plaintiffs and similarly situated warehouse workers to perform their jobs under hot

9 and dusty conditions in superheated containers and warehouses without adequate

10 ventilation or rest breaks. Temperatures in the areas where plaintiffs and similarly

11 situated warehouse workers work often exceed 90 degrees, especially during the hot

12 Inland Empire summers, and the high levels of dust and airborne particulates

13 frequently cause these warehouse workers to suffer acute respiratory and other health

14 problems.

15       91. Defendants Premier, Schneider, Walmart, and Does 2-5 have required

16 plaintiffs Carrillo, Fernando Chavez, Flores, and Martinez, and other members of the

17 Schneider-Premier class to incur work-related expenses that are not reimbursed,

18 including but not limited to uniforms. For example, defendants Premier, Schneider,

19 Walmart, and Does 2-5 have required plaintiffs Carrillo, Fernando Chavez, Flores,

20 and Martinez, and other members of the Schneider-Premier class to "rent" a tee-shirt

21 uniform with a distinct Premier Unloading logo for one dollar per week. These

22 defendants have required these plaintiffs and members of the Schneider-Premier

23 class to wear this uniform at work and to be responsible for their own laundering and

24 upkeep of the uniform. Defendants Premier, Schneider, Walmart, and Does 2-5 have

25 unlawfully deducted one dollar per week from the paychecks of these plaintiffs and

26 other members of the Schneider-Premier class to pay for the "rental" of this

27 mandatory work uniform.

28

**Exh. 4**

92. Defendants Premier, Schneider, Walmart, and Does 2-5 have also required these plaintiffs and other members of the Schneider-Premier class to reimburse defendants for defendants' purported cost of drug tests and/or background checks, which amounts were deducted from these workers' paychecks.

93. Plaintiff Carrillo's employment by defendants terminated in or about November 2010. Plaintiff Fernando Chavez's employment by defendants terminated in or about June 2011. Plaintiff Juan Chavez's employment by defendants terminated in or about December 2011. Plaintiff Armando Esquivel's employment by defendants terminated in or about January 2011. At the time of their terminations, defendants owed plaintiffs Carrillo, Fernando Chavez, Juan Chavez, and Esquivel unpaid and underpaid wages that were then due and owing. Defendants knowingly and willfully failed to pay plaintiffs Carrillo, Fernando Chavez, Juan Chavez, Esquivel, and other members of the Schneider-Premier and Impact classes of similarly situated workers whose employment terminated within the applicable limitations period, the full amount of wages that were due and owing at the time of their termination of employment.

94. Plaintiffs and other members of the Schneider-Premier and Impact classes have no plain, speedy, or adequate remedy at law for the violations alleged herein, because: (a) pecuniary compensation is not available for all such alleged violations; (b) where pecuniary compensation is available it is not sufficient to remedy such violations or to provide adequate and complete relief; (c) it is difficult to measure the amount of monetary damages that would fully compensate plaintiffs for many of the wrongful acts alleged herein; and (d) plaintiffs and similarly situated class members who are currently employed by defendants or who will be employed by defendants in the future are entitled by law not to be subjected to the violations alleged herein. For these reasons, and because plaintiffs and similarly situated warehouse workers are low-wage workers with limited financial means and often no other source of family income who live day-by-day in precarious economic circumstances, they will suffer

1  great and irreparable harm if defendants' ongoing violations of law as alleged herein
2  are not promptly enjoined.

### JOINT LIABILITY ALLEGATIONS

4  **A.**    **Defendants Have Jointly Employed Plaintiffs and All Class Members**

5        95.  Plaintiffs Everardo Carrillo, Fernando Chavez, Eric Flores, Jose Martinez
6  Arceo, and other members of the Schneider-Premier class have been jointly
7  employed by defendants Premier, Schneider, Walmart, and Does 2-5 to perform
8  unskilled, physical labor in the Mira Loma warehouses.  Much of these employees'
9  work has involved placing cargo in containers or trailers on the backs of trucks under
10  the direction of defendants' supervisors who have jointly directed the work,
11  including by providing specific instructions to members of the Schneider-Premier
12  class about what cargo to select and where to place it.  These defendants have
13  provided guidelines, requirements, and training to members of the Schneider-
14  Premier class about how to perform their duties, including but not limited to
15  instructions on how to lift boxes without injury and other safety training, although
16  defendants' supervisors regularly have disregarded such safety instructions in their
17  effort to pressure members of the Schneider-Premier class to be more productive
18  without regard to the workers' personal health and safety.  Through the directions,
19  training, and supervision provided, defendants have not allowed these workers to
20  exercise independent judgment or discretion in the performance of their job duties.

21        96.  Defendants Premier, Schneider, and Does 2-5 have been joint employers
22  of plaintiffs Everardo Carrillo, Fernando Chavez, Eric Flores, Jose Martinez Arceo,
23  and other members of the Schneider-Premier class, for the following reasons, among
24  others:

25        (a)  Defendants Premier, Schneider, and Does 2-5 have jointly controlled and
26  dictated all material terms and conditions of the employment of members of the
27  Schneider-Premier class ;

28

---

THIRD AMENDED CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION COMPLAINT,
No. CV 11-8557 CAS (DTBx)          **EXHIBIT 4** 36

1      (b) Members of the Schneider-Premier class have physically worked and

2  reported to work on Schneider's premises;

3      (c) The work of members of the Schneider-Premier class has been jointly

4  supervised by individuals employed by Premier, individuals employed by Schneider,

5  and Does 2-5;

6      (d) Members of the Schneider-Premier class have jointly applied for

7  employment through both Premier and Schneider, including by submitting

8  applications to Premier supervisors who have conducted defendants' hiring and

9  orientation activities at the Schneider warehouses, who have used orientation and/or

10  training materials from Schneider, its parent company, Schneider National, and/or

11  its customer, Walmart, and who have filled out employment-related paperwork at the

12  Schneider warehouses;

13      (e) Defendants Premier, Schneider, and Does 2-5 have jointly designed and

14  implemented the new-hire orientation that members of the Schneider-Premier class

15  must undertake after hiring, which has taken place at a Schneider warehouse with

16  Schneider training materials, and which has been principally run by Premier's on-site

17  supervisors;

18      (f) Defendants Premier, Schneider, and Does 2-5 have shared responsibility

19  for discipline and discharge decisions involving members of the Schneider-Premier

20  class, and Premier and Schneider have had authority and have jointly exercised the

21  authority to discharge, discipline, and/or correct the work of such warehouse workers

22  for perceived infractions of either Premier or Schneider's rules or policies or for

23  infractions of the rules or policies of their customers, including Walmart;

24      (g) Defendants Premier, Schneider, and Does 2-5 have jointly exercised

25  control over the number of hours and types of work performed by members of the

26  Schneider-Premier class by, among other things, deciding whether and when to

27  require those workers to perform work that is customarily performed by Schneider's

28  permanent direct-hire hourly rate employees, deciding whether and when to require

1   members of the Schneider-Premier class to perform warehouse work in addition to

2   filling truck containers, and deciding on the amount and pace of work that the

3   workers must perform;

4       (h)  Defendants Premier, Schneider, and Does 2-5 have jointly exercised

5   control over the pay that members of the Schneider-Premier class receive by

6   dictating the pace at which their work must be performed, providing daily rate sheets

7   based on the size of the truck containers to be filled, and assigning members of the

8   Schneider-Premier class to perform tasks that do not count toward the piece rate

9   compensation scheme, thereby effectively lowering those workers' wages;

10      (i)  Defendants Premier, Schneider, and Does 2-5 have jointly exercised

11  control over the working conditions under which members of the Schneider-Premier

12  class perform their jobs by supervising, monitoring, and checking their work,

13  including by instructing workers to change the way a box has been stacked or placed,

14  or by designating which boxes to remove if a truck is overweight; by determining the

15  protocol and procedure for filling each container and truck; by setting the daily pace

16  of work, including by imposing onerous and unrealistic productivity standards; by

17  setting work rules; and by adding to the workers' usual work duties;

18      (j)  Premier, Schneider, and Does 2-5 have jointly exercised control over the

19  wages and working conditions of members of the Schneider-Premier class by

20  entering into contracts between and among themselves that necessarily require

21  defendants to pay those workers less than federal and California law require, because

22  defendants cannot produce the volume of work contracted for under the time

23  constraints contracted for while complying with the legally mandated pay rates under

24  federal and state law;

25      (k)  Members of the Schneider-Premier class have generally performed just

26  one step in defendants' broader warehousing process, and defendants have assigned

27  to other workers the principal responsibility for unloading the boxes, placing them

28

1  into storage, and retrieving those boxes for plaintiffs and similarly situated

2  warehouse workers to place in the truck containers;

3       (l)  Schneider has suffered or permitted members of the Schneider-Premier

4  class to work in its warehouses by acquiescing in and not hindering their working,

5  including by not remedying but instead accepting and profiting from the unlawful

6  conditions under which they work;

7       (m)  The warehouse job duties performed by members of the Schneider-

8  Premier class constitute an integral, core function of the warehouse business of

9  Premier, Schneider, and Does 2-5; and

10       (n)  Members of the Schneider-Premier class have performed work that

11  consists primarily of unskilled physical labor that does not require special training,

12  education, or the exercise of judgment or discretion to perform.

13       97.  For the reasons set forth above, among others, defendants Premier,

14  Schneider, and Does 2-5, each directly or indirectly, or through an agent or any other

15  person, has employed or exercised control over the wages, hours, or working

16  conditions of plaintiffs Everardo Carrillo, Fernando Chavez, Eric Flores, Jose

17  Martinez Arceo, and other members of the Schneider-Premier class.

18       98.  Plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza,

19  Jose Enrique Trujillo-Vergara, and other members of the Impact class have been

20  jointly employed by defendants Impact, Walmart, and Does 6-10 to perform

21  unskilled, physical labor in the Mira Loma warehouses.  Plaintiffs and other

22  members of the Schneider-Impact subclass have been jointly employed by

23  defendants Impact, Schneider, Walmart, and Does 6-10.  Much of these employees'

24  work involves removing cargo from containers or trailers on the backs of trucks

25  under the direction of defendants' supervisors who jointly direct the work, including

26  by providing specific instructions to plaintiffs and similarly situated warehouse

27  workers about where to place the boxes unloaded from the semi-trailer truck

28  containers.  Defendants Impact, Schneider, Walmart, and Does 6-10  have provided

1   guidelines, requirements, and training to members of the Schneider-Impact class

2   about how to perform their duties, including but not limited to instructions on how to

3   lift boxes without injury and other safety training, although defendants' supervisors

4   regularly have disregarded such safety instructions in their effort to pressure

5   members of the Schneider-Impact class to be more productive without regard to the

6   workers' personal health and safety. Through the directions, training, and

7   supervision provided, defendants have not allowed these workers to exercise

8   independent judgment or discretion in the performance of their job duties.

9       99. Defendants Impact, Schneider, and Does 6-10 are joint employers of

10  plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, Jose

11  Enrique Trujillo-Vergara, and other members of the Schneider-Impact subclass for

12  the following reasons, among others:

13      (a) Defendants Impact, Schneider, and Does 6-10 have jointly controlled and

14  dictated all material terms and conditions of the employment of members of the

15  Schneider-Impact subclass;

16      (b) The work of members of the Schneider-Impact subclass has been jointly

17  supervised by individuals employed by Impact, individuals employed by Schneider,

18  and Does 6-10;

19      (c) Defendants Impact, Schneider, and Does 6-10 share responsibility for

20  discipline and discharge decisions involving members of the Schneider-Impact

21  subclass, and Impact and Schneider have authority and jointly exercise the authority

22  to discharge, discipline, and/or correct the work of such warehouse workers for

23  perceived infractions of either Impact or Schneider's rules or policies or for

24  infractions of the rules or policies of their customers, including Walmart;

25      (d) Members of the Schneider-Impact class have jointly applied for

26  employment through both Impact and Schneider, including by submitting

27  applications to Impact supervisors who have conducted defendants' hiring and

28  orientation activities at the Schneider warehouses, who have used orientation and/or

1    training materials from Schneider, its parent company, Schneider National, and/or

2    its customer, Walmart, and who have filled out employment-related paperwork at the

3    Schneider warehouses;

4        (e)  Defendants Impact, Schneider, and Does 2-5 have jointly designed and

5    implemented the new-hire orientation that members of the Schneider-Impact class

6    must undertake after hiring, which has taken place at a Schneider warehouse with

7    Schneider training materials, and which has been principally run by Impact's on-site

8    supervisors;

9        (f)  Defendants Impact, Schneider, and Does 6-10 jointly exercise control over

10   the number of hours and types of work performed by members of the Schneider-

11   Impact subclass by, among other things, deciding whether and when to require those

12   workers to perform work that is customarily performed by Schneider's direct-hire

13   hourly rate employees, deciding whether and when to require members of the

14   Schneider-Impact subclass to perform warehouse work in addition to loading or

15   unloading truck containers, and deciding on the amount and pace of work that the

16   workers must perform;

17       (g)  Defendants Impact, Schneider, and Does 6-10 jointly exercise control over

18   the pay that members of the Schneider-Impact subclass receive by dictating the pace

19   at which their work must be performed, providing daily rate sheets based on the size

20   of the truck containers to be filled, and assigning members of the Schneider-Impact

21   subclass to perform tasks that do not count toward the piece rate compensation

22   scheme, thereby effectively lowering those workers' wages;

23       (h)  Defendants Impact, Schneider, and Does 6-10 jointly exercise control over

24   the working conditions under which members of the Schneider-Impact subclass

25   perform their jobs:  by supervising, monitoring, and assigning the precise tasks that

26   must be performed; by checking and correcting their work; by directing individual

27   workers and teams of workers to perform various tasks throughout the warehouse; by

28   determining the protocols and procedures for unloading and loading boxes; by

1  setting the daily pace of work, including by imposing onerous and unrealistic

2  productivity standards; by setting work rules; and by adding to the workers' usual

3  work duties;

4       (i)  Impact, Schneider, and Does 6-10 jointly exercise control over the wages

5  and working conditions of members of the Schneider-Impact subclass by entering

6  into contracts between and among themselves that necessarily require defendants to

7  pay those workers less than federal and California law require, because defendants

8  cannot produce the volume of work contracted for under the time constraints

9  contracted for while complying with the legally mandated pay rates under federal

10  and state law;

11      (j)  Members of the Schneider-Impact subclass generally perform just one step

12  in defendants' broader warehousing process, and defendants assign to other workers

13  the principal responsibility for aspects of that process other than loading or

14  unloading boxes; such as moving boxes and other cargo to or away from the loading

15  dock and placing unloaded boxes into storage;

16      (k)  Schneider suffers or permits members of the Schneider-Impact subclass to

17  work in its warehouses by acquiescing in and not hindering their working, including

18  by not remedying but instead accepting and profiting from the unlawful conditions

19  under which they work;

20      (l)  The warehouse job duties performed by members of the Schneider-Impact

21  subclass constitute an integral, core function of the warehouse business of Impact,

22  Schneider, and Does 6-10; and

23      (m) Members of the Schneider-Impact subclass perform work that consists

24  primarily of unskilled physical labor that does not require special training, education,

25  or the exercise of judgment or discretion to perform.

26      100.  For the reasons set forth above, among others, Impact, Schneider, and

27  Does 6-10, each directly or indirectly, or through an agent or any other person,

28  employs or exercises control over the wages, hours, or working conditions of

EXHIBIT 4

**Exh. 4**

1   plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, and Jose

2   Enrique Trujillo-Vergara, and other members of the Schneider-Impact subclass.

3        101. Defendants Impact and Does 6-10 are joint employers of plaintiffs

4   Armando Esquivel, Guadalupe Rangel Mendoza, Jose Enrique Trujillo-Vergara, and

5   other members of the Pre-Schneider Impact subclass for the following reasons,

6   among others:

7       (a) Defendants Impact and Does 6-10 have jointly controlled and dictated all

8   material terms and conditions of the employment of members of the Pre-Schneider

9   Impact subclass;

10      (b) The work of members of the Pre-Schneider Impact subclass have been

11   jointly supervised by individuals employed by Impact and Does 6-10;

12      (c) Defendants Impact and Does 6-10 have shared responsibility for discipline

13   and discharge decisions involving members of the Pre-Schneider Impact subclass,

14   and Impact and Does 6-10 have had authority and have jointly exercised the

15   authority to discharge, discipline, and/or correct the work of such warehouse workers

16   for perceived infractions of the rules or policies of either Impact or Does 6-10, or for

17   perceived infractions of the rules or policies of their customers, including Walmart;

18      (d) Defendants Impact and Does 6-10 have jointly exercised control over the

19   number of hours and types of work performed by members of the Pre-Schneider

20   Impact subclass by, among other things, deciding whether and when to require those

21   workers to perform work that is customarily performed by the warehouse operator's

22   direct-hire hourly rate employees, deciding whether and when to require members of

23   the Pre-Schneider Impact subclass to perform warehouse work in addition to

24   unloading truck containers, and deciding on the amount and pace of work that the

25   workers must perform;

26      (e) Defendants Impact and Does 6-10 have jointly exercised control over the

27   pay that members of the Pre-Schneider Impact subclass receive by dictating the pace

28   at which their work must be performed, providing daily rate sheets based on the size

Exh. 4

1  of the truck containers to be filled, and assigning members of the Pre-Schneider
2  Impact subclass to perform tasks that do not count toward the piece rate
3  compensation scheme, thereby effectively lowering those workers' wages;

4      (f)  Defendants Impact and Does 6-10 have jointly exercised control over the
5  working conditions under which members of the Pre-Schneider Impact subclass
6  perform their jobs:  by jointly imposing training standards and procedures; by
7  supervising, monitoring, and assigning the precise tasks that must be performed; by
8  checking and correcting their work; by directing individual workers and teams of
9  workers to perform various tasks throughout the warehouse; by determining the
10  protocols and procedures for unloading and loading boxes; by setting the daily pace
11  of work, including by imposing onerous and unrealistic productivity standards; by
12  setting work rules; and by adding to the workers' usual work duties;

13      (g)  Impact and Does 6-10 have jointly exercised control over the wages and
14  working conditions of members of the Pre-Schneider Impact subclass by entering
15  into contracts between and among themselves that necessarily require defendants to
16  pay those workers less than federal and California law require, because defendants
17  cannot produce the volume of work contracted for under the time constraints
18  contracted for while complying with the legally mandated pay rates under federal
19  and state law;

20      (h)  Members of the Pre-Schneider Impact subclass have generally performed
21  just one step in defendants' broader warehousing process, and defendants have
22  assigned to other workers the principal responsibility for aspects of that process
23  other than loading or unloading boxes; such as moving boxes and other cargo to or
24  away from the loading dock and placing unloaded boxes into storage;

25      (i) Does 6-10 have suffered or permitted members of the Pre-Schneider Impact
26  subclass to work in defendants' warehouses by acquiescing in and not hindering
27  their working, including by not remedying but instead accepting and profiting from
28  the unlawful conditions under which they work;

1      (j) The warehouse job duties performed by members of the Pre-Schneider

2  Impact subclass constitute an integral, core function of the warehouse business of

3  Impact and Does 6-10; and

4      (k) Members of the Pre-Schneider Impact subclass perform work that consists

5  primarily of unskilled physical labor that does not require special training, education,

6  or the exercise of judgment or discretion to perform.

7      102.  For the reasons set forth above, among others, Impact and Does 6-10,

8  each directly or indirectly, or through an agent or any other person, employs or

9  exercises control over the wages, hours, or working conditions of plaintiffs Armando

10  Esquivel, Guadalupe Rangel Mendoza, and Jose Enrique Trujillo-Vergara, and other

11  members of the Pre-Schneider Impact subclass.

12      103.  In addition to the other defendants, defendant Walmart has been a joint

13  employer of all plaintiffs and other members of the Schneider-Premier class and the

14  Impact class, for the following reasons, among others:

15      (a)  Walmart has, along with the other defendants, jointly controlled and

16  dictated all material terms and conditions of the employment of members of the

17  Schneider-Premier and Impact classes, including by:

18          (1) dictating the specific tasks to be undertaken by the plaintiffs,

19         the manner and order in which these tasks are to be completed, and the

20         extent and nature of paperwork, reports, and forms to be used by the

21         plaintiffs by creating, requiring, and enforcing detailed Standard

22         Operating Procedures and other warehouse standards, policies, and

23         procedures governing the loading, unloading, and other tasks that

24         plaintiffs and other members of the plaintiff classes have been required

25         to perform, including off-the-clock work that Walmart knew or should

26         have known was not being compensated and overtime work that

27         Walmart knew or should have known was not being properly

28         compensated;

EXHIBIT 4

(2) devising and requiring standardized training and skills testing that must be completed by plaintiffs and other members of the plaintiff classes;

(3) overseeing the day-to-day performance of plaintiffs and other class members through the on-site supervision and reporting of Walmart personnel, including most recently its Mira Loma Quality Assurance Manager Hector Avalos, and by delegating such supervision and reporting to Schneider's personnel in the Mira Loma warehouses;

(4) conducting meticulous, comprehensive audits on a monthly and other periodic basis of the performance of all plaintiff warehouse workers, including by monitoring their regular and overtime hours, their efficiency and productivity as measured against Walmart-established quotas, and the labor costs in the Mira Loma warehouses, including the wages paid to plaintiffs;

(5) requiring Schneider to develop and implement detailed action plans, in response to the Walmart audits, to promptly correct any deficiencies found in those audits, by conducting additional training, making procedural changes, or otherwise;

(6) requiring regular written reports from Schneider about the day-to-day staffing levels, quantification and analysis of regular and overtime hours expended, and productivity of all workers employed at the Mira Loma warehouses, including plaintiffs and class members; and

(7) engaging in daily oral and written communications and conducting weekly telephonic meetings with Schneider to discuss and evaluate the day-to-day staffing levels, number of regular and overtime hours expended, and productivity of all warehouse workers, including plaintiffs; and through other related means.

EXHIBIT 4

Exh. 4

1      (b) Members of the Schneider-Premier and Impact classes have been

2  employed to work in warehouse premises that are owned and/or leased by Walmart,

3  operated by Walmart's closely controlled contractor, Schneider, and secured by

4  Walmart's security company, U.S. Security Services, Inc., under rules and standards

5  dictated by Walmart;

6      (c) The work performed by members of the Schneider-Premier and Impact

7  classes has been jointly supervised by Walmart and the other defendants through a

8  number of means, including by Walmart dictating the required number of

9  supervisory staff who oversee plaintiffs' work performance and productivity, and by

10  Walmart itself maintaining supervisory staff on the premises of the Mira Loma

11  warehouses at all relevant times;

12      (d) Walmart has imposed on its contractor, defendant Schneider, the

13  obligation to provide high quality, trained staff to conduct its warehouse operations

14  in the Mira Loma warehouses, and thus, has induced and required its contractor,

15  defendant Schneider, to devise and impose detailed standards on its own direct

16  employees and on all plaintiffs for pre-employment screening, orientation, and

17  training that must be completed before plaintiffs and other warehouse workers

18  perform work in the Mira Loma warehouses;

19      (e) Walmart has set the standards for training, work performance, and conduct

20  for all plaintiffs and members of the Schneider-Premier and Impact classes and thus

21  exercises, along with the other defendants, shared responsibility for discipline and

22  discharge decisions involving members of the Schneider-Premier and Impact classes

23  who violate Walmart's training, work performance, and/or conduct standards, and

24  has had authority and has jointly exercised the authority, along with the other

25  defendants, in discharging, disciplining, and/or correcting the work of such

26  warehouse workers for perceived infractions of either Premier, Impact, or

27  Schneider's rules or policies or for infractions of Walmart's rules, policies, or

28  procedures;

1    (f)  Walmart has, along with the other defendants, jointly exercised control

2    over the number of hours, productivity standards, schedules, and the speed and

3    amount of work performed by members of the Schneider-Premier and Impact classes

4    by, among other things:

5        (1) establishing standard operating metrics for warehouses

6        operated by Walmart alone ("Walmart-run" warehouses) and by third

7        parties like Schneider, that impose requirements for accuracy, timely

8        processing, and productivity, the latter of which is largely measured by

9        the number of cases processed per hour (CPH), and setting and/or

10       approving specific CPH standards for loaders and unloaders in the Mira

11       Loma warehouses, including plaintiffs and all members of the plaintiff

12       classes;

13       (2) preparing and approving manpower projections that establish

14       the number of hours to be expended on a month-to-month basis in the

15       Mira Loma warehouses, based on statistics that Schneider must report to

16       Walmart and that Walmart must review and approve, which itemize, by

17       job duty, the number of hours worked in the prior year and the projected

18       hours to be worked in the budgeted year, and that budget projected

19       hours by week and/or month for plaintiff warehouse workers;

20       (3) preparing and approving annual and monthly budgets that

21       establish and approve the overall labor costs to be expended in the Mira

22       Loma warehouses, based on Walmart's review and approval of reports

23       from defendant Schneider that provide, *inter alia*:  the number, identity

24       and job responsibilities of all supervisory staff in the Mira Loma

25       warehouses, including those hired by Impact and Premier; the ratio of

26       managers to non-managerial workers to be used as compared to

27       Walmart's target ratio; the total number of Schneider direct employees

28       and of Impact and Premier direct employees working in the warehouse;

Exh. 4

1 the ratio of Schneider direct employees to subcontractor employees to

2 be used as compared to the standard ratio in warehouses owned and

3 entirely operated by Walmart; the total number of regular and overtime

4 hours projected to be worked in the warehouse; and other required

5 measures;

6   (4) requiring Schneider to collect detailed statistics on the number

7 of hours worked by plaintiffs and each member of the plaintiff classes

8 on a daily basis and to report these numbers to Walmart in regular

9 weekly and monthly reports and in updated assessments of compliance

10 with the number of hours budgets that may occur as frequently as on a

11 daily basis;

12   (5) determining, through its budgeting and staffing projection

13 practices, the specific amount of budgeted hours that may be devoted to

14 loading and/or unloading in the Mira Loma warehouses during a

15 particular workweek to satisfy the approved CPH assigned to plaintiff

16 warehouse workers, while also controlling the volume of goods that

17 must be processed at the Mira Loma warehouses during any week and

18 the required rates at which those goods must be processed; and through

19 other related means.

20  (g) Walmart has, along with the other defendants, jointly exercised control

21 over the pay that members of the Schneider-Premier and Impact classes receive

22 through various means, including but not limited to: by dictating the pace at which

23 plaintiffs' work must be performed, as through the assignment of specific CPH rates

24 for loading and unloading; by exercising strict controls over what Schneider, Impact,

25 and Premier can pay plaintiffs through Walmart's budgeting and staffing projection

26 procedures; by exercising strict controls over the number and cost of overtime hours

27 worked in the Mira Loma warehouse; by mandating that Walmart must approve any

28 increases in the amounts paid by Schneider to Impact and/or Premier for warehouse

1   services; by closely monitoring the number of hours worked by plaintiffs, and the

2   cost of loading and unloading work in the Mira Loma warehouses; and through other

3   means designed to suppress and/or lower the wages paid to plaintiffs;

4       (h)  Walmart has, along with the other defendants, jointly exercised control

5   over the working conditions under which members of the Schneider-Premier and

6   Impact classes perform their jobs by supervising, monitoring, and checking their

7   work, as alleged in more detail above; by determining the protocol and procedure for

8   loading and/or unloading each container and truck and requiring that its standards be

9   followed as the minimum level of acceptable performance in the Mira Loma

10  warehouses; by setting the daily pace of work, including by imposing onerous and

11  unrealistic productivity standards; by setting work rules; by overseeing and

12  approving or denying approval of safety and health measures designed to improve

13  working conditions for the plaintiffs; and through other related means;

14      (i)  Walmart has, along with the other defendants, jointly exercised control

15  over the wages and working conditions of members of the Schneider-Premier and

16  Impact classes by entering into contracts between and among themselves that

17  necessarily require defendants to pay those workers less than federal and California

18  law require, because defendants cannot produce the volume of work contracted for

19  under the time constraints contracted for while complying with the legally mandated

20  pay rates under federal and state law;

21      (j)  Members of the Schneider-Premier and Impact classes have generally

22  performed a single critical step in Walmart's overall warehousing process – loading

23  and unloading trucks – and defendants have assigned to other workers the principal

24  responsibility for performing other warehouse tasks that occur in the warehousing

25  and delivery process, including taking the cases unloaded by the Impact class

26  members and placing them into storage and retrieving those cases out of storage and

27  transporting them to the loading dock for the Schneider-Premier class members to

28  place in the truck trailers;

1    (k) Walmart has suffered or permitted plaintiffs and other members of the

2    Schneider-Premier and Impact classes to work in its warehouses by acquiescing in

3    and not hindering their working, including by not remedying but instead accepting

4    and profiting from the unlawful conditions under which they work;

5        (l)  The warehouse job duties performed by plaintiffs and other members of

6    the Schneider-Premier and Impact classes constitute an integral, core function of the

7    warehouse business of Walmart, which directly employs loaders and unloaders doing

8    the same work performed by plaintiffs in its own Walmart-run warehouses; and

9        (m) Plaintiffs and other members of the Schneider-Premier and Impact classes

10   have performed work that consists primarily of unskilled physical labor that does not

11   require special training, education, or the exercise of judgment or discretion to

12   perform.

13       104.  For the reasons set forth above, among others, defendant Walmart,

14   together with the other defendants, directly or indirectly, or through an agent or any

15   other person, employs or exercises control over the wages, hours, or working

16   conditions of all plaintiffs and other members of the Schneider-Premier and Impact

17   classes.

18   **B.**     **Defendants Have Committed the Violations Alleged Herein as Co-**

19           **Conspirators**

20       105.  Plaintiffs are informed and believe, and on that basis allege, that at all

21   material times, each defendant acted and is continuing to act as a co-conspirator of

22   each other defendant and of certain unnamed and as-yet unknown co-conspirators.

23   Plaintiffs are informed and believe, and on that basis allege, that prior to the start of

24   the applicable limitations periods, each defendant entered into a conspiracy and

25   agreement with the other defendants and with unnamed and unknown co-

26   conspirators and/or subsequently joined said conspiracy and ratified the prior acts

27   and conduct of the other defendants and/or co-conspirators who had previously

28   entered into said conspiracy.  The purpose of said ongoing conspiracy includes

1 unlawfully evading compliance with the federal and state labor laws in an effort to

2 artificially reduce defendants' labor costs and unlawfully maximize their profits by

3 failing to pay plaintiffs and similarly situated warehouse workers the wages and

4 benefits required by law; failing to provide meal periods, rest breaks, and other labor

5 rights mandated by law; creating a sham and fraudulent group "piece rate" scheme;

6 and concealing their illegal activities by making misrepresentations about facts

7 known only to defendants, by failing to provide workers with information required

8 by law, and by other means. Plaintiffs are currently unaware of when each defendant

9 or other co-conspirator joined said conspiracy but, on information and belief, allege

10 that all defendants and their co-conspirators knowingly, maliciously and wilfully

11 entered into said conspiracy which continues to this day. By engaging in the conduct

12 and omissions alleged in this Complaint, each defendant was acting within the

13 course and scope of its agency, with the authorization of the other defendants, and in

14 furtherance of the ongoing conspiracy.

15 **C.** **Schneider, Walmart, and Does 2-15 Have Aided and Abetted Premier and**

16 **Impact in the Commission of the Violations Alleged Herein**

17 106. Schneider, Walmart, Does 2-5, and Does 11-15 aided and abetted

18 Premier in the commission of the violations against the Schneider-Premier class and

19 Schneider-Premier Mass Retaliation subclass alleged herein. Schneider, Walmart,

20 Does 2-5, and Does 11-15 knew that Premier's conduct was in breach of Premier's

21 duties to plaintiffs and other members of the Schneider-Premier class and Schneider-

22 Premier Mass Retaliation Subclass; and Schneider, Does 2-5, and Does 11-15 gave

23 substantial assistance or encouragement to Premier to so act. In addition, the

24 conduct of Schneider, Walmart, Does 2-5, and Does 11-15 has breached those

25 defendants' duties to plaintiffs and other members of the Schneider-Premier class

26 and Schneider-Premier Mass Retaliation subclass. Schneider, Walmart, Does 2-5,

27 and Does 11-15 have given substantial assistance or encouragement to Premier by,

28 for example, requiring Premier to supply a sufficient number of warehouse workers

1    to meet labor demands that varied on a daily basis, and requiring that those

2    warehouse workers meet high productivity standards under severe time constraints,

3    while also requiring Premier to keep labor costs low and compensating Premier at

4    low rates, which caused Premier to violate federal and state minimum wage and

5    overtime standards.

6        107.   Schneider, Walmart, and Does 6-15 have aided and abetted and continue

7    to aid and abet Impact in the commission of the violations against the Impact class

8    alleged herein. Schneider, Walmart, and Does 6-15 have known that Impact's

9    conduct is in breach of Impact's duties to plaintiffs and other members of the Impact

10   class; and Schneider, Walmart, and Does 6-15 have given substantial assistance or

11   encouragement to Impact to so act. In addition, the conduct of Schneider, Walmart,

12   and Does 6-15 has breached those defendants' duties to plaintiffs and other members

13   of the Impact class. Schneider, Walmart, and Does 6-15 have given and continue to

14   give substantial assistance or encouragement to Impact by, for example, requiring

15   Impact to supply a sufficient number of warehouse workers to meet labor demands

16   that varied on a daily basis, and requiring that those warehouse workers meet high

17   productivity standards under severe time constraints, while also requiring Impact to

18   keep labor costs low and compensating Impact at low rates, which has caused and

19   continues to cause Impact to violate federal and state minimum wage and overtime

20   standards.

21   **D.**    **Impact and Premier Have Acted as Agents of Schneider, Walmart, and**

22        **Does 2-15; and Schneider Has Acted as an Agent of Walmart**

23        108.   Plaintiffs are informed and believe, and on that basis allege, that at all

24   material times, defendant Premier acted as an agent of Schneider, Walmart, Does 2-

25   5, and Does 11-15. Premier employed plaintiffs and members of the Schneider-

26   Premier class on behalf of those defendants for those defendants' benefit. Schneider,

27   Walmart, Does 2-5, and Does 11-15 had the authority to control and exercised

28   control over the wages, hours, and working conditions of the workers paid by

1   Premier.  By engaging in the violations alleged herein, Premier was acting within the

2   course and scope of its agency, with the authorization of Schneider, Walmart, Does

3   2-5, and Does 11-15.

4        109.  Plaintiffs are informed and believe, and on that basis allege, that at all

5   material times, defendant Impact has acted and continues to act as an agent of

6   Schneider, Walmart, and Does 6-15.  Impact has employed and continues to employ

7   plaintiffs and members of the Impact class on behalf of those defendants and for

8   those defendants' benefit.  Schneider, Walmart, and Does 6-15 have the authority to

9   control and exercise control over the wages, hours, and working conditions of the

10  workers paid by Impact.  By engaging in the violations alleged herein, Impact has

11  acted and continues to act within the course and scope of its agency, with the

12  authorization of Schneider, Walmart, and Does 6-15.

13       110.  Plaintiffs are informed and believe, and on that basis allege, that at all

14  material times, defendant Schneider has acted and continues to act as an agent of

15  Walmart.  Jointly with defendants Impact and Premier, Schneider has employed and

16  continues to employ plaintiffs and members of the Schneider-Premier class and

17  Schneider-Impact subclass on behalf of Walmart and for Walmart's benefit.

18  Walmart has the authority to control and exercises control over the wages, hours, and

19  working conditions of the workers paid by Impact, Premier, and Schneider.  By

20  engaging in the violations alleged herein, Schneider has acted and continues to act

21  within the course and scope of its agency, with the authorization of Walmart.

22  **E.**      **Walmart Has Been Negligent in Its Selection, Hiring, Retention,**

23           **Supervision, and/or Control of Schneider**

24       111.  Walmart has been the owner and/or lessee of the Mira Loma warehouses,

25  the owner of the warehouse equipment, the owner of all the goods that move through

26  those warehouses by the physical efforts of plaintiff warehouse workers, and the only

27  customer served by those warehouses since before 2001, when defendant Impact first

28  began operations in those warehouses.

**Exh. 4**

112.   At all relevant times, Walmart has closely monitored, supervised, and controlled the operations of the Mira Loma warehouses, and has known or should have known of the violations of the federal and state labor and employment law rights of plaintiffs and similarly situated warehouse workers that have been occurring at those warehouses since at least 2001, including violations committed by defendant Impact, as alleged herein.  These violations include but are not limited to requiring plaintiffs Esquivel, Mendoza, and Trujillo-Vergara and similarly situated warehouse workers to work long hours in excess of legal limits without proper compensation, failing to record all hours worked, failing to compensate all compensable activities and piece work at the legally required minimum wage and overtime rates, and failing to disclose critical wage and hour information to plaintiff warehouse workers.

113.   Although Walmart knew or should have known of the violations alleged herein when Walmart in or around 2006 selected and hired Schneider to operate the Mira Loma warehouses, Walmart failed to take any reasonable steps to stop those violations from continuing or increasing in scope or frequency, and instead created conditions that inevitably increased the likelihood that these violations would continue to occur and worsen, including by entering into a cost-plus contract with Schneider that contains powerful economic incentives for both Walmart and Schneider to require increased productivity from plaintiffs and other class members while lowering the costs of their labor, including by reducing the amount of reported hours and overtime hours worked.  Walmart knew or should have known that selecting, hiring, and retaining Schneider to operate the Mira Loma warehouses on Walmart's behalf would create an undue risk that the state and federal labor and employment law rights of members of the Schneider-Premier class and Schneider-Impact subclass would be violated as alleged herein, and that those workers would thereby be harmed, in part because Walmart knew or should have known, based on the terms of its contracts with Schneider and its knowledge of what

1 had been occurring at the Mira Loma warehouses and at other warehouses

2 throughout the country, including Wamart-run warehouses, that Schneider would not

3 be able to simultaneously meet Walmart's productivity standards, stay within

4 Walmart's labor and cost budgets, and maintain a profit margin at the rates paid by

5 Walmart while complying with all applicable federal and state employment law

6 standards.

7     114. At all relevant times since 2006, Walmart has also negligently retained,

8 supervised, and/or controlled Schneider as the operator of its Mira Loma

9 warehouses. Walmart has known or should have known that Schneider and its labor

10 services contractors were violating and would continue to violate the employment

11 law rights of the members of the Schneider-Premier class and Schneider-Impact

12 subclass as alleged herein, because Walmart closely monitored, supervised, and

13 controlled Schneider's warehouse operations, including the hours worked by

14 plaintiffs and other warehouse workers, the amounts paid to those workers, and the

15 conditions under which those workers labored.

16     115. Although Walmart has had the authority to control, and has exercised

17 substantial control, over Schneider's operation of the Mira Loma warehouses,

18 including the material terms and conditions of the employment of members of the

19 Schneider-Premier class and Schneider-Impact subclass, Walmart has failed to

20 ensure compliance with federal and state employment law standards or to implement

21 effective procedures for ensuring such compliance in its Mira Loma warehouses.

22 Walmart also failed to take reasonable measures to prevent the violations alleged

23 herein from continuing to occur by, *inter alia*, providing economic incentives to

24 encourage Schneider and its labor services contractors to lawfully compensate the

25 plaintiff warehouse workers for all hours worked and eliminating incentives to cheat

26 those workers as alleged herein; setting rates for warehouse services, productivity

27 standards, and staffing and labor budgets that would realistically permit compliance

28 with the applicable labor and employment laws; exercising its authority to monitor,

1  supervise, and control Schneider in a manner that ensured compliance with federal
2  and state labor and employment laws, instead of turning a willful blind eye to
3  rampant violations; and/or prohibiting Schneider from continuing to contract with
4  undercapitalized labor service contractors, such as defendants Impact and Premier,
5  that Walmart and Schneider knew or should have known were violating plaintiff
6  warehouse workers' labor and employment law rights, as alleged herein. In
7  particular, because Walmart has known or should have known since 2001 that
8  Impact routinely violates federal and state labor and employment laws as alleged
9  herein, Walmart has been and continues to be negligent in permitting Schneider to
10  continue contracting with Impact for the provision of labor services in Walmart's
11  Mira Loma warehouses, without taking any affirmative measures to ensure that
12  Impact is complying with all applicable labor and employment laws.

13  116. On information and belief, Schneider committed other labor and
14  employment law violations before Walmart hired Schneider to operate its Mira Loma
15  warehouses in 2006, and Walmart was also negligent in selecting, hiring, retaining,
16  supervising, and/or controlling Schneider because, at the time that Walmart hired
17  Schneider, Walmart knew or should have known that Schneider had committed other
18  labor and employment law violations, and that there was an undue risk that
19  Schneider would continue to commit, directly or indirectly through its labor services
20  contractors, additional employment law violations at the Mira Loma warehouses.

21  117. The violations and harms to the Schneider-Premier class and Schneider-
22  Impact subclass alleged herein are the result of Walmart's failure to exercise due
23  care in the selection, hiring, retention, supervision, and/or control of Schneider; and
24  based on the facts described above, which Walmart knew or should have known
25  when it selected and hired Schneider and continued to retain, supervise, and control
26  Schneider, those violations and harms were foreseeable.

27               **TOLLING ALLEGATIONS**

28

118. Plaintiffs are further informed and believe, and based on such information and belief allege, that defendants, and each of them, and those who acted as defendants' co-conspirators, agents, and/or aiders and abetters, and/or who acted in concert with defendants, have engaged and have continued to engage in the unlawful practices alleged in this Complaint and will continue to do so unless restrained and enjoined by this Court. To the extent that defendants have ceased engaging in some of the unlawful practices alleged in this Complaint, plaintiffs are informed and believe and on that basis allege that defendants have done so only in response to this pending litigation and because some practices have been preliminarily restrained and enjoined by this Court.

119. Defendants, including Does 11-15 who did not actually employ plaintiffs, had, and continue to have, the means of obtaining and actual possession of superior knowledge and special information relating to the nature and scope of the practices alleged herein and whether those practices are unlawful under state and federal law. Plaintiffs and similarly situated warehouse workers do not have, or have access to, this same information, which defendants have deliberately withheld from them. Defendants' superior knowledge and special information includes: what work is being performed in defendants' warehouses; who is performing it; how each piece rate is calculated; when each piece rate component is completed; which workers on which shifts and in which warehouses performed the work on each piece rate component; the history of defendants' use of warehouse workers; the discussions, agreements, negotiations, and other communications between the joint employer defendants (Does 2-10) and their suppliers and customers (Does 11-15) concerning the facts alleged in this Complaint and the structure of their relationship with each other, with the workers, and with suppliers and customers (including discussions concerning the labor cost component of defendants' contracts and commitments, and the labor cost component of defendants' budgeting); the history and historical development of the hourly rate and piece rate pay systems for plaintiffs and similarly

1  situated warehouse workers; and other facts relevant to a determination of each

2  worker's proper pay.  As a result of defendants' scheme to ensure that they have

3  superior knowledge, coupled with defendants' actual possession of such superior

4  knowledge, each defendant has gained an unconscionable advantage over their

5  workers, who have been and continue to be kept unaware of material facts relevant to

6  their wage and other claims and who have not been and are not in a position to

7  become informed about such facts.

8      120.  Despite defendants' superior knowledge and special information,

9  defendants have failed to provide plaintiffs and similarly situated workers with

10  material information pertaining to the claims alleged in this lawsuit.  To the contrary,

11  defendants have protected and reinforced their superior knowledge and access to

12  special information by resisting plaintiffs' efforts to obtain such information and by

13  retaliating against and punishing plaintiffs and other class members who have

14  requested the type of wage and other information that defendants have withheld from

15  plaintiffs. Defendants are under a statutory obligation to provide much of this

16  information to plaintiffs and similarly situated workers at the time of every wage

17  payment yet defendants have not complied with this statutory requirement, thereby

18  breaching a statutory duty and concealing and affirmatively misrepresenting material

19  information that would reveal defendants' unlawful practices.  Defendants have also

20  failed and, on information and belief, continue to fail to comply with the

21  requirements under federal law, 29 CFR §516.4 and in IWC Wage Order 9-2001 §22

22  that federal minimum wage laws and the entire wage order be posted in a

23  conspicuous area frequented by employees where it may be easily read during the

24  workday.

25      121.  Because of defendants' ongoing conspiracy to violate their warehouse

26  workers' rights and to conceal defendants' unlawful practices as alleged herein, and

27  because of defendants' failure to notify their employees of their rights under federal

28  and state wage and hour law, as is required under 29 CFR §516.4 and in IWC Wage

1 | Order 9-2001 §22, the applicable statute of limitations on the claims of plaintiffs and
2 | other workers has been and should continue to be tolled through the date on when
3 | each worker learned or learns of defendants' illegal practices and policies.

## CLASS ACTION ALLEGATIONS

5 |     122. <u>Proposed Classes and Subclasses.</u>  Plaintiffs Everardo Carrillo, Fernando
6 | Chavez, Eric Flores, and Jose Martinez Arceo, as class representatives, bring the
7 | Second through Seventeenth Claims for Relief on behalf of a class of all similarly
8 | situated individuals, pursuant to Rule 23 of the Federal Rules of Civil Procedure.
9 | The proposed Schneider-Premier class includes all individuals employed as
10 | warehouse workers at one or more of defendants' Inland Empire warehouses in
11 | Eastvale (formerly Mira Loma), California, at any time during the applicable
12 | limitations periods, who were initially hired to perform that work by Premier.

13 |     123.  Plaintiffs Eric Flores and Jose Martinez Arceo also bring the Ninth
14 | Claim for Relief on behalf of a subclass of all similarly situated individuals, pursuant
15 | to Rule 23 of the Federal Rules of Civil Procedure.  The proposed Schneider-Premier
16 | Mass Retaliation subclass includes all individuals who were initially hired by
17 | Premier, employed as warehouse workers at one or more of defendants' Inland
18 | Empire warehouses in Eastvale (formerly Mira Loma), California, and were working
19 | at any time from the announced termination on November 18, 2011 through and
20 | including February 24, 2012.

21 |     124.  Plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza,
22 | and Jose Enrique Trujillo-Vergara bring the Second through Twelfth and Fifteenth
23 | through Seventeenth Claims for Relief on behalf of a class of all similarly situated
24 | individuals, pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The
25 | proposed Impact class includes all individuals employed as warehouse workers at
26 | one or more of defendants' Inland Empire warehouses in Eastvale (formerly Mira
27 | Loma), California, at any time during the applicable limitations periods, who were
28 | initially hired to perform that work by Impact.

1        125.  Plaintiffs Armando Esquivel, Guadalupe Rangel Mendoza, and Jose

2   Enrique Trujillo-Vergara bring the Second through Twelfth and Fifteenth through

3   Seventeenth Claims for Relief on behalf of a subclass of all similarly situated

4   individuals, pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The

5   proposed Pre-Schneider Impact subclass includes all individuals employed as

6   warehouse workers at one or more of defendants' Inland Empire warehouses in

7   Eastvale (formerly Mira Loma), California, at any time before Schneider assumed

8   operations of those warehouses and during the applicable limitations periods, who

9   were initially hired to perform that work by Impact.

10        126.  Plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza,

11   and Jose Enrique Trujillo-Vergara bring the Second through Twelfth and Fourteenth

12   through Seventeenth Claims for Relief on behalf of a subclass of all similarly

13   situated individuals, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

14   The proposed Schneider-Impact subclass includes all individuals employed as

15   warehouse workers at one or more of defendants' Inland Empire warehouses in

16   Eastvale (formerly Mira Loma), California, at any time after Schneider assumed

17   operations of those warehouses and during the applicable limitations periods, who

18   were initially hired to perform that work by Impact.

19        127.  <u>Ascertainability.</u>  The identity of all class members is readily

20   ascertainable from defendants' records, and class notice can be provided to all class

21   members by means permitted by Rule 23 of the Federal Rules of Civil Procedure.  To

22   be effective, class notice should be provided not only through written

23   communication to each class member's last known address as reflected in

24   defendants' records, but also through Spanish language newspaper and radio

25   announcements, workplace postings, and other alternative means of notice designed

26   to reach this class of transient, largely non-English speaking warehouse workers

27   whom defendants have affirmatively misled and deprived of information concerning

28   their workplace rights under state and federal law and of other information material

1   to the claims alleged herein. Most class members are no longer employed by

2   defendants, cannot be reached at the last-known addresses in defendants' records,

3   and do not have access to traditional English-speaking media.

4        128. <u>Numerosity.</u> The size of the class makes a class action both necessary

5   and efficient. The class consists of approximately 1800 warehouse workers currently

6   or formerly working at the Mira Loma warehouses during the applicable limitations

7   period. Members of the class are ascertainable but so numerous that joinder is

8   impracticable. The class includes future class members who will benefit from the

9   injunctive relief sought herein and whose joinder is inherently impossible.

10       129. <u>Common Questions Of Law And Fact.</u> This case poses common

11   questions of law and fact affecting the rights of all class members, including:

12      (a)    The legality of defendants' piece rate compensation systems;

13      (b)    The policies, practices, programs, procedures, protocols, and plans of

14                defendants regarding payment of the minimum wage;

15      (c)    The policies, practices, programs, procedures, protocols, and plans of

16                defendants regarding payment of overtime premiums;

17      (d)   Whether defendants required, suffered, or permitted plaintiffs and

18                similarly situated warehouse workers to work in excess of eight hours

19                per day and/or 12 hours per day and/or 40 hours per week and/or seven-

20                day workweeks comprising more than 30 hours total work or more than

21                six hours of work per day;

22      (e)   Whether defendants paid plaintiffs and similarly situated warehouse

23                workers the legally required overtime premium for hours worked in

24                excess of eight hours per day and/or 12 hours per day and/or 40 hours

25                per week and/or on the seventh day of work;

26      (f)    Whether defendants provided plaintiffs and similarly situated

27                warehouse workers with accurate itemized wage statements as required

28                by California Labor Code §226;

(g)     Whether defendants paid plaintiffs and similarly situated warehouse workers the reporting time pay required by California law when defendants required workers to report for duty but discharged them without providing them any work or discharged them mid-shift without pay, in violation of IWC Wage Order No. 9-2001 §5;

(h)     Whether defendants paid plaintiffs and similarly situated warehouse workers an additional hour of pay when they are required to work two shifts that are interrupted by a non-paid working period, as required by IWC Wage Order No. 9-2001 §4(C);

(i)     Whether defendants paid plaintiffs and similarly situated warehouse workers their full wages when due and whether defendants willfully failed to make timely payment of the full wages due to workers who quit or have been discharged as required by California Labor Code §§201-04;

(j)     Whether defendants paid plaintiffs and similarly situated warehouse workers secret wages in violation of Labor Code §223;

(k)     Whether defendants made fraudulent misrepresentations to plaintiffs and similarly situated warehouse workers;

(l)     Whether defendants violated California Labor Code §226.7 and IWC Wage Order No. 9-2001 §11 by failing to ensure that all plaintiffs and similarly situated warehouse workers were provided with a meal period for every five hours worked and twice for every ten hours worked and failed to compensate said employees one hour of wages in lieu of each meal period that was not provided;

(m)     Whether defendants violated California Labor Code §226.7 and IWC Wage Order No. 9-2001 §12 by failing to provide any paid rest periods to plaintiffs and similarly situated warehouse workers for every four hours or major fraction thereof worked and failed to compensate said

1      employees one hour of wages in lieu of each rest period that was not

2      provided;

3    (n)    Whether the temperature in defendants' warehouses provides plaintiffs

4          and similarly situated warehouse workers reasonable comfort consistent

5          with industry-wide standards as required by IWC Wage Order No. 9-

6          2001 §15;

7    (o)    Whether defendants engaged in unfair and unlawful business practices

8          in violation of Business & Professions Code §17200 et seq.;

9    (p)    Whether defendants are subject to civil penalties under the California

10         Labor Code Private Attorneys General Act, California Labor Code

11         §2698 et seq.;

12    (q)    Whether defendants are joint employers of plaintiffs and similarly

13         situated warehouse workers;

14    (r)    Whether the named defendants conspired with each other and/or with

15         any unnamed co-conspirator, as alleged herein;

16    (s)    Whether any defendants aided and abetted other defendants in the

17         commission of the violations alleged herein;

18    (t)    Whether any defendants acted as the agent of other defendants in the

19         commission of the violations alleged herein; and

20    (u)    What relief is necessary to remedy defendants' unfair and unlawful

21         conduct as herein alleged.

22      130. <u>Typicality.</u> The claims of the individual plaintiffs are typical of the

23 claims of the class as a whole. Defendants' unlawful wage policies and practices,

24 which have operated to deny plaintiffs the overtime premiums, minimum wages,

25 other unpaid wages, and other compensation, benefits, penalties, and protections

26 required by law, are typical of the unlawful wage policies and practices that have and

27 will continue to operate to deny other class members lawful compensation.

28      131. <u>Adequacy Of Class Representation.</u> The individual plaintiffs can

1 adequately and fairly represent the interests of the class as defined above, because

2 their individual interests are consistent with, not antagonistic to, the interests of the

3 class.

4    132.  <u>Adequacy Of Counsel For The Class.</u>  Counsel for plaintiffs have the

5 requisite resources and ability to prosecute this case as a class action and are

6 experienced labor and employment attorneys who have successfully litigated other

7 cases involving similar issues, including in class actions.

8    133.  <u>Propriety of Class Action Mechanism.</u>  This suit is properly maintainable

9 as a class action under Federal Rule of Civil Procedure 23(b)(2) because defendants

10 have implemented a series of unlawful schemes that are generally applicable to the

11 class, making it appropriate to issue final injunctive relief and corresponding

12 declaratory relief with respect to the class as a whole.  This suit is also properly

13 maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3)

14 because the common questions of law and fact predominate over any questions

15 affecting only individual members of the class.  For all these and other reasons, a

16 class action is superior to other available methods for the fair and efficient

17 adjudication of the controversy set forth in this Complaint.

18
19                 **FIRST CLAIM FOR RELIEF**
                      **(FLSA Violations,**
20          **29 U.S.C. §201 et seq., 29 C.F.R. §516 et seq.,**
            **Brought by Plaintiffs on Behalf of Themselves**
21              **and the FLSA Collective Plaintiffs)**

22    134.  Plaintiffs, on behalf of themselves and similarly situated warehouse

23 workers, reallege and incorporate by reference all previous paragraphs.

24    135.  Plaintiffs bring the First Claim for Relief as a collective action pursuant

25 to the FLSA, 29 U.S.C. §216(b), on their own behalf and on behalf of all individuals

26 who applied for employment as a warehouse worker and who were subsequently

27 assigned to work, and did work, at one or more of defendants' Mira Loma

28

1    warehouses located in the county of Riverside, California, at some time during the

2    applicable limitations period (hereafter, "FLSA Collective Plaintiffs").

3           136.  At all relevant times, defendants Premier, Schneider, Impact, Walmart,

4    and Does 2-15 have been employers and enterprises engaged in interstate commerce

5    within the meaning of the FLSA, 29 U.S.C. §203.  At all relevant times, defendants

6    Premier, Schneider, Impact, Walmart, and Does 2-10 have employed some or all of

7    the FLSA Collective Plaintiffs as employees within the meaning of the FLSA, 29

8    U.S.C. §203.

9           137.  At all relevant times, plaintiffs and the other FLSA Collective Plaintiffs

10   have been similarly situated; have had substantially similar job requirements, job

11   duties, and pay provisions; and have been subject to defendants' common decisions,

12   policies, programs, practices, procedures, protocols, routines, and rules pursuant to

13   which defendants have willfully failed and refused to pay plaintiffs and the other

14   FLSA Collective Plaintiffs the amounts to which those workers are entitled under the

15   FLSA.

16          138.  The First Claim for Relief is properly brought under and maintained as

17   an opt-in collective action pursuant to the FLSA, 29 U.S.C. §216(b).  The FLSA

18   Collective Plaintiffs are readily ascertainable and can be given notice about this

19   action through means permitted by the FLSA and *Hoffman-LaRoche v. Sperling*, 493

20   U.S. 165 (1989).  To be effective, collective notice should be provided not only

21   through written communication to each class member's last known address as

22   reflected in defendants' records, but also through Spanish language newspaper and

23   radio announcements, workplace postings, and other alternative means of notice

24   designed to reach this class of transient, non-English speaking warehouse workers

25   whom defendants have affirmatively misled and deprived of information concerning

26   their workplace rights under state and federal law and of other information material

27   to the claims alleged herein.  Plaintiffs are informed and believe that most collective

28   action members are no longer employed by defendants, cannot be reached at the last-

1 known addresses in defendants' records, and do not have access to traditional

2 English-speaking media.

3      139. Each of the named plaintiffs by this Complaint hereby consents to sue

4 under the FLSA, 29 U.S.C. §216(b). Further consents to sue have been and will be

5 submitted to the Court.

6      140. The FLSA, 29 U.S.C. §207(a), requires defendants to compensate

7 plaintiffs and the FLSA Collective Plaintiffs at 1-1/2 times these workers' regular

8 hourly rate for all work performed by plaintiffs and the FLSA Collective Plaintiffs in

9 excess of 40 hours per workweek.

10      141. Throughout the statute of limitations period covered by these claims, and

11 particularly during certain high-production times of the year, plaintiffs and the FLSA

12 Collective Plaintiffs regularly worked in excess of 40 hours per workweek and

13 continue to do so.

14      142. At all relevant times, defendants willfully, regularly, and repeatedly

15 failed, and continue to fail, to pay plaintiffs and the FLSA Collective Plaintiffs at the

16 required overtime rates, for hours worked in excess of 40 hours per workweek.

17      143. The FLSA, 29 U.S.C. §206, requires defendants to compensate plaintiffs

18 and the FLSA Collective Plaintiffs at the minimum wage rate of at least $7.25 per

19 hour.

20      144. Since defendants' implementation of their purported "piece rate"

21 compensation schemes, defendants have willfully failed, and continue to fail, to pay

22 the federal minimum wage to plaintiffs and similarly situated warehouse workers for

23 numerous workweeks during which those workers' gross pay divided by the number

24 of hours worked was less than $7.25 per hour.

25      145. The FLSA imposes specific record-keeping requirements on employers,

26 including the obligation to keep accurate records of all hours worked by employees.

27 Defendants have knowingly and willfully failed, and continue willfully to fail, to

28 record, report, and/or preserve accurate records of all hours worked by plaintiffs and

1   the FLSA Collective Plaintiffs.  By failing to record, report, and/or preserve records

2   of all hours worked by plaintiffs and the FLSA Collective Plaintiffs, defendants have

3   violated, and continue to violate, the FLSA, 29 U.S.C. §201 et seq., including 29

4   U.S.C. §§211(c) and 215(a), and 29 C.F.R. §516 et seq.

5     146.  The FLSA, 29 U.S.C. §215(a)(3), prohibits employers from discharging

6   or in any other manner discriminating against any employee because such employee

7   has filed any complaint or instituted or caused to be instituted any proceeding under

8   or related to the FLSA, or has testified or is about to testify in any such proceeding.

9     147.  Defendants have retaliated and threatened retaliation against plaintiffs

10  and the FLSA Collective Plaintiffs because plaintiffs and other FLSA Collective

11  Plaintiffs complained to defendants regarding FLSA violations and engaged in other

12  protected activity, including filing and testifying in support of this lawsuit, in

13  violation of 29 U.S.C. §215(a)(3).

14    148.  Defendants' violations of the FLSA's minimum wage, overtime,

15  recordkeeping, and retaliation provisions are, and were, willful within the meaning

16  of 29 U.S.C. §255.

17    149.  As a direct and proximate result of defendants' violations of the

18  minimum wage and overtime provisions as alleged herein, plaintiffs and the FLSA

19  Collective Plaintiffs have sustained economic damages, including but not limited to

20  unpaid wages and lost interest, in an amount to be established at trial, and are

21  entitled to recover economic and statutory damages and penalties, including

22  liquidated damages, and other appropriate relief under the FLSA.

23    150.  As a direct and proximate result of defendants' violations of the

24  retaliation provision as alleged herein, plaintiffs and the FLSA Collective Plaintiffs

25  have sustained economic damages, including but not limited to unpaid wages and

26  lost interest, in an amount to be established at trial.  Pursuant to 29 U.S.C. §216(b),

27  plaintiffs and the FLSA Collective Plaintiffs are entitled to, and hereby seek, such

28  legal or equitable relief as may be appropriate to effectuate the purposes of FLSA, 29

U.S.C. §215(a)(3), including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages, including but not limited to an injunction requiring defendants to cease violating 29 U.S.C. §215(a)(3) by discharging, suspending, threatening, or otherwise discriminating against plaintiffs, the FLSA Collective Plaintiffs, and others similarly situated.

### SECOND CLAIM FOR RELIEF
**(California Overtime Provisions,
Cal. Labor Code §§510, 1194(a), 1198
and IWC Wage Order No. 9-2001 §§3, 4(C);
Brought by Plaintiffs on behalf of
Themselves and the Schneider-Premier and Impact Classes)**

151.  Plaintiffs, on behalf of themselves and the Schneider-Premier and Impact classes, reallege and incorporate by reference all previous paragraphs.

152.  It is unlawful under California law for an employer to suffer or permit an employee to work in excess of eight hours per workday or 12 hours per workday or 40 hours per workweek without paying premium wages under California Labor Code §510 and IWC Wage Order No. 9-2001 §3.  It is also unlawful under California law for an employer to suffer or permit an employee to work in excess of 30 hours per workweek or six hours per day during any seven-day workweek under Labor Code §§550-56, or to suffer or permit an employee to work on the seventh day of a seven-day workweek without paying premium wages under California Labor Code §510 and IWC Wage Order No. 9-2001 §3.  Further, when workers are required to work two shifts that are interrupted by a non-paid working period, they must be paid for an extra hour of work pursuant to IWC Wage Order No. 9-2001 §4(C).

153.  California Labor Code §1198 makes employment of an employee for longer hours than the IWC sets or under conditions the IWC prohibits unlawful. California Labor Code §1194(a) entitles an employee to recover in a civil action the unpaid balance of all overtime compensation due but not paid.

EXHIBIT 4

154.  Plaintiffs and members of the Schneider-Premier and Impact classes routinely worked in excess of eight hours per workday and in excess of 40 hours per workweek during the applicable limitations period, and during certain parts of the year plaintiffs and class members routinely worked in excess of 12 hours per day.

155.  Plaintiffs and members of the Schneider-Premier and Impact classes routinely worked seven-day workweeks in excess of six hours per day and in excess of 30 hours per week during parts of the year during the applicable limitations period.

156.  Defendants have a policy and practice of not paying plaintiffs and members of the Schneider-Premier and Impact classes properly for overtime, and have not properly compensated plaintiffs and class members properly for their overtime hours under California law.

157.  Plaintiffs and members of the Schneider-Premier and Impact classes work double shifts with a break in between on certain occasions.  Defendants have a policy and practice of not paying plaintiffs and members of the Schneider-Premier and Impact classes an extra hour of pay on those occasions.

158.  As a direct and proximate result of defendants' unlawful conduct as alleged herein, plaintiffs and members of the Schneider-Premier and Impact classes have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from defendants' violations of the California Labor Code and IWC Wage Order No. 9-2001.

**THIRD CLAIM FOR RELIEF**
**(California Minimum Wage Provisions,**
**Cal. Labor Code §§1182.12, 1194(a), 1194.2(a), 1194.5, 1197, 1198**
**and IWC Wage Order No. 9-2001 §4;**
**Brought by Plaintiffs on behalf of**
**Themselves and the Schneider-Premier and Impact Classes)**

EXHIBIT 4

**Exh. 4**

159.  Plaintiffs, on behalf of themselves and the Schneider-Premier and Impact classes, reallege and incorporate by reference all previous paragraphs.

160.  California Labor Code §§1182.12 and 1197, and IWC Wage Order No. 9-2001 §4, requires defendants to pay plaintiffs and class members at or above the state minimum wage of $8.00 per hour for every hour defendants suffer or permit those employees to work.

161.  California Labor Code §1198 makes unlawful the employment of an employee under conditions the IWC prohibits.  California Labor Code §§1194(a) and 1194.2(a) provide that an employer that has failed to pay its employees the legal minimum wage is liable to pay those employees the unpaid balance of the unpaid wages as well as liquidated damages in an amount equal to the wages unpaid and interest thereon.

162.  Defendants have failed to pay plaintiffs and members of the Schneider-Premier and Impact classes at or above the California minimum wage for many hours worked by plaintiffs and class members, including but not limited to mandatory on-duty time when no work that defendants characterize as compensable was available to be performed and other hours spent on work that is not reflected in defendants' purported "piece rate" payments.

163.  As a direct and proximate result of defendants' unlawful conduct as alleged herein, plaintiffs and members of the Schneider-Premier and Impact classes have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from defendants' violations of the California Labor Code and IWC Wage Order No. 9-2001.

164.  California Labor Code §1194.5 authorizes injunctions where an employer has willfully violated laws governing wages, hours, or working conditions. Plaintiffs and members of the class are entitled to injunctive relief under the

Exh. 4

governing legal standards, and are entitled to an order requiring defendants to pay the minimum wage and to keep track of the time plaintiffs and similarly situated warehouse workers spend on all purported piece rate and non-piece rate work.

### FOURTH CLAIM FOR RELIEF
(California Meal Period Provisions,
Cal. Labor Code §§226.7, 1198
and IWC Wage Order No. 9-2001 §11;
Brought by Plaintiffs on behalf of
Themselves and the Schneider-Premier and Impact Classes)

165.  Plaintiffs, on behalf of themselves and the Schneider-Premier and Impact classes, reallege and incorporate by reference all previous paragraphs.

166.  California Labor Code §226.7(a) prohibits an employer from requiring an employee to work during any meal period mandated by an applicable Industrial Wage Order.  IWC Wage Order No. 9-2001 §11(A) prohibits employers from employing a worker for more than five hours without a meal period of at least 30 minutes.  IWC Wage Order No. 9-2001 §11(B) prohibits employers from employing a worker for more than ten hours without a second meal period of at least 30 minutes.   Under both California Labor Code §226.7(b) and IWC Wage Order No. 9-2001 §11(D), if an employer fails to provide an employee a meal period as required, the employer must pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided as required.

167.  California Labor Code §1198 makes unlawful the employment of an employee under conditions the IWC prohibits.

168.  Defendants have a policy or practice of failing to ensure that all plaintiffs and members of the Schneider-Premier and Impact classes take the meal periods required by California Labor Code §226.7 and IWC Wage Order No. 9-2001 §12.

169.  Defendants also have a policy or practice of failing to pay each of their employees who was not provided with a meal period as required an additional one hour of compensation at each employee's regular rate of pay.

EXHIBIT 4

Exh. 4

170. As a direct and proximate result of defendants' unlawful conduct as alleged herein, plaintiffs and members of the Schneider-Premier and Impact classes have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from defendants' violations of the California Labor Code and IWC Wage Order No. 9-2001.

**FIFTH CLAIM FOR RELIEF**
**(California Rest Period Provisions,**
**Cal. Labor Code §§226.7, 1198**
**and IWC Wage Order No. 9-2001 §12;**
**Brought by Plaintiffs on behalf of**
**Themselves and the Schneider-Premier and Impact Classes)**

171. Plaintiffs, on behalf of themselves and the Schneider-Premier and Impact classes, reallege and incorporate by reference all previous paragraphs.

172. California Labor Code §226.7(a) prohibits an employer from requiring an employee to work during any rest period mandated by an applicable Industrial Wage Order. IWC Wage Order No. 9-2001 §12(A) requires employers to authorize and permit employees to take a paid rest period of at least 10 minutes for every four hours worked or major fraction thereof, which insofar as practicable shall be in the middle of each work period. Under both California Labor Code §226.7(b) and IWC Wage Order No. 9-2001 §12(B), if an employer fails to provide an employee a rest period as required, the employer must pay the employee one hour of pay at the employee's regular rate of compensation for each workday that a rest period is not provided as required.

173. California Labor Code §1198 makes unlawful the employment of an employee under conditions the IWC prohibits.

**Exh. 4**

174. Defendants have a policy or practice of failing to authorize and permit plaintiffs and class members to take, on time or at all, the rest periods required by California Labor Code §226.7 and IWC Wage Order No. 9-2001 §12.

175. Defendants also have a policy or practice of failing to pay each of their employees who was not provided with a rest period as required an additional one hour of compensation at each employee's regular rate of pay.

176. As a direct and proximate result of defendants' unlawful conduct as alleged herein, plaintiffs and members of the Schneider-Premier and Impact classes have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from defendants' violations of the California Labor Code and IWC Wage Order No. 9-2001.

**SIXTH CLAIM FOR RELIEF**
**(California Reporting Time Pay Provisions,**
**Cal. Labor Code §1198**
**and IWC Wage Order No. 9-2001 §5;**
**Brought by Plaintiffs on behalf of**
**Themselves and the Schneider-Premier and Impact Classes)**

177. Plaintiffs, on behalf of themselves and the Schneider-Premier and Impact classes, reallege and incorporate by reference all previous paragraphs.

178. For each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half of said employee's usual or scheduled day's work, IWC Wage Order No. 9-2001 §5 requires the employer to pay the employee a minimum of two hours or half of the employee's usual or scheduled day's work, at the employee's regular rate of pay.

179. California Labor Code §1198 makes unlawful the employment of an employee under conditions the IWC prohibits.

180. Defendants have a policy or practice of failing to provide plaintiffs and members of the Schneider-Premier and Impact classes any reporting time pay when they require workers to report to work but fail to put the employees to work or furnish the employees with less than half their usual or scheduled day's work. This failure to provide reporting time pay occurs both at the beginning of the day and when defendants send workers home or otherwise lay off workers mid-shift, for disciplinary reasons or otherwise.

181. As a direct and proximate result of defendants' unlawful conduct as alleged herein, plaintiffs and members of the Schneider-Premier and Impact classes have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from defendants' violations of the California Labor Code and IWC Wage Order No. 9-2001.

**SEVENTH CLAIM FOR RELIEF**
**(California Recordkeeping Provisions,**
**Cal. Labor Code §§1174, 1194.5, 1198**
**and IWC Wage Order No. 9-2001 §7;**
**Brought by Plaintiffs on behalf of**
**Themselves and the Schneider-Premier and Impact Classes)**

182. Plaintiffs, on behalf of themselves and the Schneider-Premier and Impact classes, reallege and incorporate by reference all previous paragraphs.

183. California Labor Code §1174(c)-(d) requires employers to keep records showing the names and addresses of all employees employed, and to keep, at a central location in the State of California or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, all employees employed at the respective plants or establishments. IWC Wage Order No. 9-2001 §7(A)(3) further requires employers to keep time records

Exh. 4

1  showing when the employee begins and ends each work period, meal period, and

2  split shift interval. Under §7(A)(5), employers must also record each employee's

3  total hours worked and applicable rates of pay, and must make such information

4  "readily available" to the employee upon request. Under §7(A)(6), when a piece rate

5  or incentive plan is in effect, the employer must provide to employees the piece rates

6  and an explanation of the incentive plan formula, and the employer must maintain

7  "an accurate production record." Under §7(C), all required records must be in the

8  English language and in ink or other indelible form, properly dated, showing month,

9  day, and year; must be kept on file by the employer for at least three years at the

10  place of employment or at a central location within the State of California; and must

11  be available for inspection by an employee upon reasonable request.

12  184. California Labor Code §1198 makes unlawful the employment of an

13  employee under conditions the IWC prohibits.

14  185. Pursuant to defendants' policy or practice, defendants have willfully

15  failed, and continue willfully to fail, to maintain accurate, complete, and readily

16  available records, in violation of California Labor Code §1174 and IWC Wage Order

17  No. 9-2001 §7.

18  186. Although plaintiffs and other members of the Schneider-Premier and

19  Impact classes have requested defendants to produce certain required records,

20  defendants have not provided those records.

21  187. Plaintiffs and members of the Schneider-Premier and Impact classes

22  have suffered and will continue to suffer actual economic harm resulting from these

23  recordkeeping violations, as they have been, and will continue to be, precluded from

24  accurately monitoring the wages to which they are entitled, have been required to

25  retain counsel and other experts and consultants to evaluate and calculate unpaid

26  wages, and have suffered delays in receiving the wages and interest that are due and

27  owing to them. Defendants' ongoing violations of these mandatory recordkeeping

28  laws have caused, and will continue to cause, irreparable harm to plaintiffs and class

members, among other reasons because as long as defendants fail to maintain the required records, plaintiffs and members of the Schneider-Premier and Impact classes will be unable to determine or demonstrate the precise number of hours actually worked, or the wages and penalties owed to them for the long hours that defendants have required them to work.

188.  By willfully failing to maintain the records required by California Labor Code §1174(c) or the accurate and complete records required by §1174(d), defendants are also liable for a civil penalty of five hundred dollars for each violation under §1174.5.

189.  California Labor Code §1194.5 authorizes issuance of and injunction where an employer has willfully violated laws governing wages, hours, or working conditions.  Plaintiffs and members of the class are entitled to injunctive relief under the governing legal standards, and are entitled to an order requiring defendants to provide plaintiffs and members of the class all of the information required by California Labor Code §1174 and IWC Wage Order No. 9-2001.

**EIGHTH CLAIM FOR RELIEF**
**(California Itemized Wage Statement Provisions,**
**Cal. Labor Code §§226, 1198**
**and IWC Wage Order No. 9-2001 §7(B);**
**Brought by Plaintiffs on behalf of**
**Themselves and the Schneider-Premier and Impact Classes)**

190.  Plaintiffs, on behalf of themselves and the Schneider-Premier and Impact classes, reallege and incorporate by reference all previous paragraphs.

191.  California Labor Code §226(a) requires employers semimonthly or at time of paying wages to provide to their employees the following information: total hours worked, all applicable hourly rates, the number of piece rate units earned, any applicable piece rate, and deductions.  IWC Wage Order No. 9-2001 §7(B) requires employers semimonthly or at the time of each payment of wages to furnish to each employee an itemized statement in writing showing the following information: all

1  deductions; the inclusive dates of the period for which the employee is paid; the

2  name of the employee or the employee's social security number; and the name of the

3  employer.  These required disclosures of information are essential to enable

4  employees to determine whether they have been paid in compliance with the law and

5  to determine the identify of all employers who are responsible for any payments that

6  remain due.

7      192.  Pursuant to defendants' unlawful policies and practices as alleged herein,

8  defendants have knowingly and intentionally failed to provide plaintiffs and other

9  members of the Schneider-Premier and Impact classes with the legally mandated

10  disclosures of total hours worked, hourly rates, the number of piece rate units earned

11  and any applicable piece rate, the identity of all joint employers, and an itemization

12  of all deductions taken, as required by California Labor Code §226(a).

13      193.  California Labor Code §226(e) provides that an employee who suffers

14  injury as a result of a knowing and intentional failure by an employer to comply with

15  §226(a) may recover the greater of actual damages or the civil penalties designated

16  by statute of $50 for the initial pay period in which a violation occurs and $100 per

17  employee for each violation in a subsequent pay period up to an aggregate penalty of

18  $4,000.

19      194.  California Labor Code §1198 makes employment of an employee under

20  conditions the IWC prohibits unlawful.

21      195.  Defendants have knowingly and intentionally failed to furnish plaintiffs

22  and members of the Schneider-Premier and Impact classes with the information

23  required by California Labor Code §226(a) and IWC Wage Order No. 9-2001 §7(B).

24  This failure has injured and was intended to injure plaintiffs and members of the

25  Schneider-Premier and Impact classes by, among other things, enabling defendants

26  to avoid paying these workers all wages due without detection of wrongdoing;

27  creating confusion among these workers over whether they had received all wages

28  due and owing; making it difficult and expensive for these workers to reconstruct

1    pay records; forcing these workers to make mathematical computations to analyze

2    whether the wages paid compensated them for all hours worked; requiring these

3    workers to retain attorneys, experts, consultants, and others to help them determine

4    the fact, scope, and extent of defendants' wrongful conduct; and causing delay in

5    these workers recovering their full back pay and interest.

6        196.  Defendants have also willfully violated and continue to violate

7    California Labor Code §226(a) and IWC Wage Order No. 9-2001 §7(B) by

8    retaliating, or threatening retaliation, against plaintiffs and members of the

9    Schneider-Premier and Impact classes who seek information that the employer is

10   obligated to provide under that provision, and by making those threats in a loud,

11   public manner for the purpose, and with the effect, of dissuading other plaintiffs and

12   similarly situated workers from exercising their right to seek such information

13   themselves.

14       197.  As a direct and proximate result of defendants' unlawful conduct as

15   alleged herein, plaintiffs and members of the Schneider-Premier and Impact classes

16   have sustained economic damages, including but not limited to unpaid wages and

17   lost interest, in an amount to be established at trial, and are entitled to recover such

18   damages and penalties, and to other appropriate relief from defendants' violations of

19   the California Labor Code and IWC Wage Order No. 9-2001.

20       198.  California Labor Code §226.3 provides that any employer who violates

21   §226(a) shall be subject to a civil penalty of $250 per employee per violation in an

22   initial citation and $1,000 per employee for each violation in a subsequent citation

23   for which the employer fails to provide the employee a wage deduction statement or

24   fails to keep the records required in §226(a).

25       199.  California Labor Code §226(g) authorizes courts to issue injunctive

26   relief to remedy violations of §226(a).  Plaintiffs and members of the

27   Schneider-Premier and Impact classes are entitled to injunctive relief under the

28   governing legal standards, and are entitled to an order requiring defendants: a) to

1  immediately begin providing to current employee class members all of the

2  information required to be disclosed by California Labor Code §226(a); b) to

3  immediately provide to all plaintiffs and members of the Schneider-Premier and

4  Impact classes the information required to be disclosed by California Labor Code

5  §226(a), dating back to those employees' beginning of employment or to the start of

6  the applicable limitations period, whichever is further back in time; and c) to prohibit

7  defendants from retaliating or threatening to retaliate against any plaintiff or class

8  member who seeks or requests information that is required to be disclosed by

9  California Labor Code §226(a).

10
### NINTH CLAIM FOR RELIEF
11  **(California Labor Code Prohibition against Retaliation,**
**Cal. Labor Code §98.6;**
12  **Brought by Plaintiffs on behalf of Themselves and the Schneider-Premier and**
13  **Impact Classes)**

14      200.  Plaintiffs, on behalf of themselves and the Schneider-Premier and Impact

15  classes, reallege and incorporate by reference all previous paragraphs.

16      201.  California Labor Code §98.6(a) prohibits employers from discharging or

17  otherwise discriminating against any employee "because of the exercise by the

18  employee . . . on behalf of himself, herself, or others of any rights afforded him or

19  her."

20      202.  Through their practices as alleged above, defendants violated, and

21  continue to violate, California Labor Code §98.6(a) by discriminating against and by

22  threatening plaintiffs and members of the Schneider-Premier and Impact classes with

23  suspension, discharge, and/or other adverse employment consequences for exercising

24  the rights protected by California Labor Code §§226(a) and 1174, and IWC Wage

25  Order No. 9-2001 §7, including but not limited to the right to be compensated in

26  accordance with federal and state law and to receive and/or request complete and

27  accurate information regarding their pay, hourly wage or piece rates, and hours

28  worked, by engaging in protected conduct including but not limited to complaining

1   about defendants' violations of federal and state labor law, cooperating with

2   investigation of defendants by the California Labor Commissioner, Division of

3   Labor Standards Enforcement, filing this lawsuit, and testifying in support thereof.

4        203. Plaintiffs, on behalf of themselves and the Schneider-Premier and Impact

5   classes, seek an injunction requiring defendants to cease violating California Labor

6   Code §98.6(a) by discharging, suspending, threatening, or otherwise discriminating

7   against plaintiffs and members of the Schneider-Premier and Impact classes for

8   exercising rights provided by the Labor Code and IWC Wage Order No. 9-2001.

9        204. Plaintiffs, on behalf of themselves and the Schneider-Premier and Impact

10   classes, separately seek damages and/or reinstatement, pursuant to Labor Code

11   §98.6(b), which provides that "[a]ny employee who is discharged, threatened with

12   discharge, demoted, suspended, or in any other manner discriminated against in the

13   terms and conditions of his or her employment" for exercising his or her rights is

14   entitled to reinstatement and reimbursement of lost wages and work benefits caused

15   by those acts of the employer.

16        205. Plaintiffs Eric Flores and Jose Martinez Arceo, on behalf of themselves

17   and the Schneider-Premier Mass Retaliation subclass, seek an injunction requiring

18   defendants to cease violating California Labor Code §98.6(a) by discharging,

19   suspending, threatening, or otherwise discriminating against plaintiffs and members

20   of the Schneider-Premier Mass Retaliation subclass for exercising rights provided by

21   the Labor Code and IWC Wage Order No. 9-2001.

22        206. Plaintiffs Eric Flores and Jose Martinez Arceo, on behalf of themselves

23   and the Schneider-Premier Mass Retaliation subclass, separately seek damages

24   and/or reinstatement, pursuant to Labor Code §98.6(b), which provides that "[a]ny

25   employee who is discharged, threatened with discharge, demoted, suspended, or in

26   any other manner discriminated against in the terms and conditions of his or her

27   employment" for exercising his or her rights is entitled to reinstatement and

28   reimbursement of lost wages and work benefits caused by those acts of the employer.

EXHIBIT 4

207. As a direct and proximate result of defendants' unlawful conduct as alleged herein, plaintiffs and members of the Schneider-Premier and Impact classes have each sustained economic damages, including loss of wages and other work benefits and lost interest, in an amount to be established at trial.

208. The unlawful conduct of defendants and/or their agents, supervisors, managers, and/or employees, as described herein, was malicious, fraudulent, and/or oppressive, and was done with a willful and conscious disregard for the rights of plaintiffs and members of the Schneider-Premier and Impact classes and for the deleterious consequences of defendants' actions. Further, defendants and/or their agents, employees, managers or supervisors authorized, condoned, and ratified the unlawful conduct of the officers, supervisors, managers, and/or other employees of defendants who retaliated against plaintiffs and other members of the Schneider-Premier and Impact classes. Consequently, plaintiffs and other members of the Schneider-Premier and Impact classes are entitled to punitive damages against all defendants, in amounts according to proof.

**TENTH CLAIM FOR RELIEF**
**(California Full and Timely Wage Provisions,**
**Cal. Labor Code §201-04;**
**Brought by Plaintiffs on behalf of**
**Themselves and the Schneider-Premier and Impact Classes)**

209. Plaintiffs, on behalf of themselves and the Schneider-Premier and Impact classes, reallege and incorporate by reference all previous paragraphs.

210. California Labor Code §201 requires an employer who discharges an employee to pay all compensation due and owing to that employee immediately upon the employee's discharge from employment. California Labor Code §202 requires an employer promptly to pay all compensation due and owing to an employee within 72 hours after that employee's employment terminates, including by resignation. California Labor Code §204 requires an employer to pay all wages due to its employees when those wages are due. California Labor Code §203 provides that if

an employer willfully fails to pay all compensation due promptly upon discharge or resignation, as required by §§201 and 202, the employer shall be liable for waiting time penalties in the form of continued compensation for up to 30 work days.

211. By failing to compensate plaintiffs and members of the Schneider-Premier and Impact classes as required by California law, as set forth above, defendants have violated and continue to violate California Labor Code §204, which requires employers, including defendants, to pay their employees their full wages when due.

212. By failing to compensate plaintiffs and members of the Schneider-Premier and Impact classes as required by California law, as set forth above, defendants have willfully failed to make timely payment of the full wages due to its employees who quit or have been discharged, thereby violating California Labor Code §§201-02.

213. As a direct and proximate result of defendants' unlawful conduct as alleged herein, plaintiffs and members of the Schneider-Premier and Impact classes have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial.

214. By failing to make timely payment of the full wages due to plaintiffs and members of the Schneider-Premier and Impact classes who quit or have been discharged, defendants are also liable for a penalty to each such employee of up to 30 days' of that employee's wages under California Labor Code §203.

**ELEVENTH CLAIM FOR RELIEF**
**(California Prohibition Against Secret Wages,**
**Cal. Labor Code §223;**
**Brought by Plaintiffs on behalf of**
**Themselves and the Schneider-Premier and Impact Classes)**

215. Plaintiffs, on behalf of themselves and the Schneider-Premier and Impact classes, reallege and incorporate by reference all previous paragraphs.

EXHIBIT 4

216.  Pursuant to California Labor Code §223, where a contract requires an employer to maintain a designated wage scale, it is unlawful for the employer secretly to pay a lower wage while purporting to pay the wage designated by the contract.

217.  For the purposes of California Labor Code §223, plaintiffs Everardo Carrillo, Fernando Chavez, Eric Flores, Jose Martinez Arceo and other members of the Schneider-Premier class had an oral contract with defendants Premier, Schneider, and Does 2-5 that the group "piece rate" would be based on a fixed rate for each completely filled or unloaded semi-trailer truck container divided on a pro rata basis among all workers on the shift that completed filling the containers.  Further, pursuant to California Labor Code §223, plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, Jose Enrique Trujillo-Vergara, and other members of the Impact class had an oral contract with defendants Impact, Schneider, and Does 6-10 that defendants would pay them a fixed piece rate for every semi-trailer truck container they finished unloading on each of their shifts.

218.  In violation of California Labor Code §223, defendants secretly paid plaintiffs and similarly situated workers at rates lower than the agreed upon group piece rate, including by failing to pay workers their full and accurate pro rata shares; failing to pay workers for all pieces completed during their shifts; failing to disclose to employees how their piece rate and group piece rate pay would actually be calculated; failing to disclose to employees information regarding the number of pieces on which they worked and the number of employees in their piece rate "group"; and making improper deductions from their paychecks.

**TWELFTH CLAIM FOR RELIEF**
**(Fraudulent Misrepresentation;**
**Brought by Plaintiffs on behalf of**
**Themselves and the Schneider-Premier and Impact Classes)**

219.  Plaintiffs, on behalf of themselves and the Schneider-Premier and Impact classes, reallege and incorporate by reference all previous paragraphs.

220.  Defendants Premier, Schneider, and Does 2-5 represented to Everardo Carrillo, Fernando Chavez, Eric Flores, Jose Martinez Arceo and other members of the Schneider-Premier class that they would be paid on a group "piece rate" basis a pro rata share, allocated among all workers on a shift, of a fixed price for each semi-trailer truck container that was completely filled or unloaded on that shift.  These defendants also represented to these plaintiffs and other members of the Schneider-Premier class that they would be paid more based on the group piece rate scheme than they had earned under the prior compensation system.  Similarly, defendants Impact, Schneider, and Does 6-10 represented to plaintiffs Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza, Jose Enrique Trujillo-Vergara, and other members of the Impact class that they would be paid a fixed piece rate for every semi-trailer truck container they finished unloading on each of their shifts.

221.  On information and belief, defendants did not intend to comply with these representations but made the statements without any intention to fulfill them.

222.  At all relevant times, defendants had and continue to have both the means of obtaining and actual possession of superior knowledge and special information with regard to their representations about the piece rate and group "piece rate."  As a result of defendants' opportunity to obtain superior knowledge and their actual possession of such knowledge, each defendant has gained an unconscionable advantage over members of the Schneider-Premier and Impact classes, who have been and/or continue to be ignorant of facts relevant to defendants' piece rate compensation systems and who have not been and/or are not in a position to become informed about such facts.

223.  Despite their superior knowledge and special information, defendants falsely represented to plaintiffs and other members of the Schneider-Premier and Impact classes how they would be paid under defendants' piece rate compensation

EXHIBIT 4

1  systems and, as to the Schneider-Premier group "piece rate" scheme, that they would

2  earn more than they had been earning.  Such representations were made by

3  defendants with knowledge of their falsity and with the intent to induce plaintiffs

4  and similarly situated workers to rely on those representations.  Because of

5  defendants' position of superior access to relevant knowledge and information,

6  plaintiffs and similarly situated workers justifiably relied upon defendants' false

7  representations to their detriment.

8       224.  As a direct and proximate result of defendants' conduct as alleged in this

9  Complaint, plaintiffs and other members of the Schneider-Premier and Impact

10  classes have lost wages and other benefits in amounts to be proven at trial.

11       225.  In making the representations set forth above under the circumstances set

12  forth above and in intentionally failing to live up to those representations, defendants

13  acted with oppression, fraud, and malice towards plaintiffs and other members of the

14  Schneider-Premier and Schneider-Impact classes, in violation of their rights.

15  Consequently, plaintiffs and all members of the Schneider-Premier and Impact

16  classes are entitled to recover from defendants exemplary and punitive damages in

17  an amount to be proven at trial.

18

19                    **THIRTEENTH CLAIM FOR RELIEF**
             **(California Unlawful Deductions and Compelled Purchases Provisions,**
20               **Cal. Labor Code §§221, 450, 1198, 2802**
                  **and IWC Wage Order No. 9-2001 §§8, 9(A);**
21           **Brought by Plaintiffs Everardo Carrillo, Fernando Chavez,**
              **Eric Flores, and Jose Martinez Arceo on behalf of**
22                  **Themselves and the Schneider-Premier Class)**

23       226.  Plaintiffs, on behalf of themselves and the Schneider-Premier class,

24  reallege and incorporate by reference all previous paragraphs.

25       227.  Defendants have taken deductions from the pay of plaintiffs and

26  members of the Schneider-Premier class, including for the cost of background

27  checks and uniforms.

28

228. For example, defendants have deducted from the pay of plaintiffs and members of the Schneider-Premier class a fee of one dollar per week that is purportedly for the cost of mandatory uniforms, consisting of tee-shirts with a distinct Premier Unloading logo, that defendants have required each worker to wear, to launder, maintain, and repair, and to "rent" from defendants for one dollar per week. This mandatory one dollar per week "rental" fee bears no reasonable relation to the cost and value of the uniform, but represents an unlawful mechanism by which defendants obtain unlawful deductions or kickbacks from the wages they lawfully owe to plaintiffs and members of the Schneider-Premier class.

229. California Labor Code §221 makes it unlawful for employers to collect or receive from an employee any part of wages paid. California Labor Code §450 makes it unlawful for an employer to compel or coerce employees to purchase any thing of value from the employer. California Labor Code §2802 requires employers to indemnify their employees for all expenditures necessary for the employees' duties. IWC Wage Order No. 9-2001 §9(A) provides that if an employer requires a uniform or part of a uniform to be worn by an employee, the employer must provide and maintain the uniform. IWC Wage Order No. 9-2001 §8 provides that the only circumstances under which an employer may take a deduction from an employee's wages due to cash shortage, breakage, or loss of equipment is if the employer can show that the shortage, breakage, or loss was the result of the employee's gross negligence or dishonest or willful act. The tee-shirts that defendants require plaintiffs and members of the Schneider-Premier class to rent and to wear are uniforms within the meaning of §9(A) because they have a distinct design and are not generally usable because of the specialized Premier Unloading logo.

230. California Labor Code §1198 makes unlawful the employment of an employee under conditions the IWC prohibits.

231. By taking deductions from the pay of plaintiffs and members of the Schneider-Premier class, including for the cost of drug tests, background checks

1  and/or uniforms, requiring plaintiffs and members of the Schneider-Premier class to

2  pay one dollar per week for uniforms, defendants, pursuant to their policy and

3  practice, have willfully violated California Labor Code §§221, 450, and 2802.  By

4  taking deductions for the cost of uniforms, defendants have also willfully violated

5  IWC Wage Order No. 9-2001 §§8 and 9(A).

6      232.  As a direct and proximate result of defendants' unlawful conduct as

7  alleged herein, plaintiffs and members of the Schneider-Premier class have sustained

8  economic damages, including unpaid wages and lost interest, in an amount to be

9  established at trial.

### FOURTEENTH CLAIM FOR RELIEF
**(Negligence; Brought by Plaintiffs on behalf of Themselves and the
Schneider-Premier Class and the Schneider-Impact Subclass)**

13      233.  Plaintiffs, on behalf of themselves and the Schneider-Premier class and

14  the Schneider-Impact subclass reallege and incorporate by reference all previous

15  paragraphs.

16      234.  Walmart has owed and continues to owe a duty to plaintiffs and other

17  members of the Schneider-Premier class and the Schneider-Impact subclass, both as

18  their joint employer and as the entity that benefitted most directly from their services

19  loading and unloading its product, not to subject those individuals to the foreseeable

20  harms as alleged herein that would reasonably result from Walmart's failure to

21  exercise to due care in its selection, contracting, and supervision of Schneider as the

22  entity it chose to operate its Mira Loma warehouses.  As the owner and lessee of the

23  Mira Loma warehouses and the sole customer and owner of the products that are

24  unloaded and loaded in those warehouses, Walmart had and continues to have the

25  contractual and other authority to ensure that its contractors and subcontractors

26  comply with all state and federal labor and employment laws and to ensure that

27  plaintiffs and class members' legal rights are fully protected while working on

28  Walmart goods under Walmart's direct and indirect supervision.

235.  In or about 2006, Walmart selected and hired Schneider to operate the Mira Loma warehouses on its behalf, and at all relevant times, Walmart has retained, supervised, and controlled Schneider as its agent and contractor for the purpose of operating its Mira Loma warehouses.

236.  Walmart violated its duty to plaintiffs and other members of the Schneider-Premier class and the Schneider-Impact subclass by failing to exercise due care in the selection, hiring, retention, supervision, and/or control of Schneider. Given the history of employment law violations at the Mira Loma warehouses dating back to at least 2001 as alleged herein, the terms of the Walmart-Schneider contract that created powerful incentives for Schneider and its labor services contractors to violate the labor and employment law rights of the plaintiff warehouse workers even more than they had previously, and Walmart's close monitoring and control over the warehouse operations; when Walmart selected, hired, retained, supervised, and controlled Schneider as the operator of its Mira Loma warehouses, Walmart knew or should have known that Walmart's conduct created an undue risk of harm to plaintiffs and members of the Schneider-Premier class and Schneider-Impact subclass.

237.  As a direct and proximate result of Walmart's conduct as alleged in this Complaint, plaintiffs and other members of the Schneider-Premier class and Schneider-Impact subclass have been harmed, including but not limited to lost wages and other benefits in amounts to be proven at trial.

**FIFTEENTH CLAIM FOR RELIEF**
**(California Labor Code Private Attorneys General Act,**
**Cal. Labor Code §2698 et seq.;**
**Brought by Plaintiffs on behalf of Themselves and all**
**Aggrieved Employees and/or on behalf of the Schneider-Premier and Impact**
**Classes)**

238.  Plaintiffs, on behalf of themselves and all aggrieved employees and/or on behalf of the Schneider-Premier and Impact classes, as well as the general public

1  of the State of California, reallege and incorporate by reference all previous

2  paragraphs.

3      239.  IWC Wage Order No. 9-2001 §15 requires defendants to maintain the

4  temperature in the work areas where plaintiffs and similarly situated warehouse

5  workers perform their job duties at a reasonable level of comfort consistent with

6  industry-wide standards for the nature of the process and the work performed.  The

7  temperature in defendants' warehouses where plaintiffs and similarly situated

8  warehouse workers are employed often exceeds 90 degrees, which is well in excess

9  of what IWC Wage Order No. 9-2001 §15(A) allows.  Defendants have not taken all

10  feasible means to reduce such excessive heat to a degree providing reasonable

11  comfort, as required by §15(B), such as air conditioning, improved ventilation,

12  cooling fans, and other reasonable alternatives.

13      240.  Under the California Labor Code Private Attorneys General Act,

14  California Labor Code §§2698-99 ("PAGA"), any aggrieved employee may bring a

15  representative action as a private attorney general on behalf of the general public,

16  including all other aggrieved employees, to recover civil penalties for their

17  employers' violations of the California Labor Code and IWC Wage Orders.  These

18  civil penalties are in addition to any other relief available under the Labor Code, and

19  must be allocated 75% to the State of California's Labor and Workforce

20  Development Agency and 25% to the aggrieved worker, pursuant to California

21  Labor Code §2699.

22      241.  Pursuant to California Labor Code §1198, defendants' employment of

23  any plaintiff or class member for longer hours than those fixed by IWC Wage Order

24  No. 9-2001 or under conditions of labor prohibited by Wage Order No 9-2001 is

25  unlawful and constitutes a violation of the California Labor Code, actionable under

26  PAGA.  Pursuant to California Labor Code §1198, it is unlawful for defendants to

27  have required plaintiffs and similarly situated warehouse workers to work for longer

28  hours than those fixed, or under conditions of labor prohibited by, Wage Order No.

1  9-2001; to have paid or caused to have paid plaintiffs and similarly situated

2  warehouse workers a wage less than the minimum fixed by Wage Order No. 9-2001;

3  and to have violated, or refused or neglected to have complied with, any other

4  provision of Wage Order No. 9-2001 as alleged herein.

5      242.  Plaintiffs allege, on behalf of themselves, all aggrieved employees and/or

6  on behalf of the Schneider-Premier and Impact classes, as well as the general public

7  of the State of California, that defendants have violated the following provisions of

8  the California Labor Code and the following provisions of the IWC Wage Orders

9  that are actionable through the California Labor Code and PAGA, as previously

10  alleged herein: California Labor Code §§ 98.6, 201-04, 221, 223, 226, 226.7, 450,

11  510, 551, 552, 1174, 1182.12, 1194(a), 1197-99, and 2802, and IWC Wage Order

12  No. 9-2001 §§3, 4, 5, 7, 8, 9, 11, 12, and 15.  Each of these violations entitles

13  plaintiffs, as private attorneys general, to recover the applicable statutory civil

14  penalties on their own behalf, on behalf of all aggrieved employees, and on behalf of

15  the general public.

16      243.  California Labor Code §2699(a), which is part of PAGA, provides in

17  pertinent part:

18      Notwithstanding any other provision of law, any provision of this

19      code that provides for a civil penalty to be assessed and collected by the

20      Labor and Workforce Development Agency or any of its departments,

21      divisions, commissions, boards, agencies, or employees, for a violation

22      of this code, may, as an alternative, be recovered through a civil action

23      brought by an aggrieved employee on behalf of himself or herself and

24      other current or former employees pursuant to the procedures specified

25      in Section 2699.3.

26      244.  California Labor Code §2699(f), which is part of PAGA , provides in

27  pertinent part:

28

1    For all provisions of this code except those for which a civil penalty

2    is specifically provided, there is established a civil penalty for a

3    violation of these provisions, as follows: . . .

4        (2)  If, at the time of the alleged violation, the person employs one

5    or more employees, the civil penalty is one hundred dollars ($100) for

6    each aggrieved employee per pay period for the initial violation and two

7    hundred dollars ($200) for each aggrieved employee per pay period for

8    each subsequent violation.

9        245.  Plaintiffs are entitled to civil penalties, to be paid by defendants and

10   allocated as PAGA requires, pursuant to California Labor Code §2699(a) for

11   defendants' violations of the California Labor Code and IWC Wage Orders for

12   which violations a civil penalty is already specifically provided by law; and plaintiffs

13   are entitled to civil penalties, to be paid by defendants and allocated as PAGA

14   requires, pursuant to California Labor Code §2699(f) for defendants' violations of

15   the California Labor Code and IWC Wage Orders for which violations a civil penalty

16   is not already specifically provided.

17       246.  On October 17, 2011, plaintiffs provided notice by certified mail under

18   California Labor Code §2699.3, to Schneider Logistics, Premier, Impact, and the

19   California Labor and Workforce Development Agency of their intention to pursue a

20   claim for relief under PAGA against these defendants on behalf of themselves and all

21   aggrieved employees.  On October 27, 2011, plaintiffs provided notice by certified

22   mail under California Labor Code §2699.3, to Schneider Transloading and the

23   California Labor and Workforce Development Agency of their intention to pursue a

24   claim for relief under PAGA against Schneider Transloading on behalf of themselves

25   and all aggrieved employees.  Because the California Labor and Workforce

26   Development Agency failed to respond to plaintiffs' notices within 33 calendar days

27   of the notices' postmarks, plaintiffs have completed the exhaustion process with

28   respect to defendants Schneider, Impact, and Premier.  On November 29, 2012,

1 plaintiffs provided notice by certified mail under California Labor Code §2699.3, to

2 Walmart and the California Labor and Workforce Development Agency of their

3 intention to pursue a claim for relief under PAGA against Walmart on behalf of

4 themselves and all aggrieved employees.  To the extent necessary, plaintiffs will

5 amend their Complaint to allege that the exhaustion process they have commenced

6 with respect to defendant Walmart has been completed.

7  247.  Under PAGA, plaintiffs and the State of California are entitled to

8 recover the maximum civil penalties permitted by law for the violations of the

9 California Labor Code and Wage Order No. 9-2001 that are alleged in this

10 Complaint.

### SIXTEENTH CLAIM FOR RELIEF
**(California Unfair and Unlawful Business Practices,
Cal. Bus. & Prof. Code §17200 et seq.;
Brought by Plaintiffs on behalf of
Themselves, the Schneider-Premier and Impact Classes, and the General
Public)**

16  248.  Plaintiffs, on behalf of themselves and the Schneider-Premier and Impact

17 classes, reallege and incorporate by reference all previous paragraphs.

18  249.  Defendants have engaged in unfair and unlawful business practices in

19 violation of California Business & Professions Code §17200 et seq. by engaging in

20 the unlawful conduct alleged above, including but not limited to: failing to pay the

21 overtime premiums required by federal and state law; failing to pay the minimum

22 wage required by federal and state law; requiring workers to work seven-day weeks

23 that include more than 30 hours of work including workdays in excess of six hours

24 per day; failing to provide workers with all meal periods and paid rest breaks to

25 which they are entitled; failing to provide employees information required by

26 California Labor Code §§226(a) and 1174 and Wage Order No. 9-2001; concealing

27 from workers material information concerning defendants' joint employer status,

28 defendants' relationships with the Doe defendants, the Doe defendants'

1   responsibilities for the acts and omissions alleged herein, and the nature and extent
2   of the conspiracy in which defendants are engaged; misleading the workers about the
3   basis for their periodic pay and the nature of their employment and defendants' joint
4   employer relationships and conspiracies as alleged herein; failing to pay full wages
5   when due and failing to make timely payment of full wages to workers who quit or
6   have been discharged; requiring workers to pay a "rental" fee for their uniforms and
7   making other wrongful deductions from the workers' paychecks; failing to pay
8   workers when they report as required and are sent home; retaliating against workers
9   in response to their requests for information about how their wages were calculated
10  or for complaining that they were not paid wages that were due and owing; failing to
11  maintain the temperature to provide reasonable comfort consistent with
12  industry-wide standards; and negligently selecting, hiring, retaining, supervising,
13  and/or controlling agents and/or contractors acting on their behalf.

14      250.   Plaintiffs are informed and believe, and based upon such information
15  and belief, allege that by engaging in the unfair and unlawful business practices
16  complained of above, defendants were able to lower their labor costs and thereby to
17  obtain a competitive advantage over law-abiding employers with which they
18  compete, in violation of California Business & Professions Code §17200 et seq. and
19  California Labor Code §90.5(a), which sets forth the public policy of California to
20  vigorously enforce minimum labor standards to ensure that employees are not
21  required or permitted to work under substandard and unlawful conditions and to
22  protect law-abiding employers and their employees from competitors that lower their
23  costs by failing to comply with minimum labor standards.

24      251.  As a direct and proximate result of defendants' unfair and unlawful
25  conduct as alleged herein, plaintiffs and members of the  Schneider-Premier and
26  Impact classes have sustained injury and damages, including unpaid wages and lost
27  interest, in an amount to be established at trial.  Plaintiffs and members of the
28  Schneider-Premier and Impact classes seek restitution of all unpaid wages owed to

the class members, disgorgement of all profits that defendants have enjoyed as a result of their unfair and unlawful business practices, penalties, and injunctive relief.

## SEVENTEENTH CLAIM FOR RELIEF
### (Declaratory Judgment Act,
### 28 U.S.C. §§ 2201 and 2202;
### Brought by Plaintiffs on behalf of
### Themselves and the Schneider-Premier and Impact Classes)

252.  Plaintiffs, on behalf of themselves and the Schneider-Premier and Impact classes, reallege and incorporate by reference all previous paragraphs.

253.  An actual controversy has arisen and now exists between the parties relating to the legal rights and duties of the parties as set forth above, for which plaintiffs desire a declaration of rights and other relief available pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.

254.  A declaratory judgment is necessary in that plaintiffs contend that defendants have committed the violations set forth above and defendants, on information and belief, will deny that they have done so and/or that they will continue to do so.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for the following relief:

1.  Certification of this action as a collective action brought pursuant to the FLSA, 29 U.S.C. §216(b).

2.  Designation of plaintiffs as representatives of the FLSA Collective Plaintiffs.

3.  Certification of this action as a Rule 23 class action on behalf of the proposed classes.

4.  Designation of plaintiffs as representatives of the classes.

5. A temporary, preliminary, and permanent injunction requiring defendants to pay plaintiffs and members of the class the minimum wage and requiring defendants to keep track of the time plaintiffs and similarly situated warehouse workers spend on non-piece rate work.

6. A temporary, preliminary, and permanent injunction requiring defendants to provide plaintiffs and members of the class all of the information required by California Labor Code §§226(a) and 1174 and IWC Wage Order No. 9-2001, §7.

7. A temporary, preliminary, and permanent injunction requiring defendants to cease discharging, threatening, or otherwise discriminating against plaintiffs and members of the class in violation of California Labor Code §98.6(a).

8. A permanent injunction prohibiting defendants from violating the California Labor Code and IWC Wage Order No. 9-2001, and committing unlawful and unfair business practices proscribed by California Business & Professions Code §17200 et seq.

9. Equitable tolling of the applicable statute of limitations on the claims of plaintiffs and members of the classes.

10. A declaratory judgment that defendants have knowingly and intentionally violated the following provisions of law, and have willfully violated the FLSA for purposes of calculating the applicable statute of limitations period:

(a) The FLSA, 29 U.S.C. §207(a), by failing to provide compensation at time and a half rates for work in excess of 40 hours per workweek;

(b) The FLSA, 29 U.S.C. §206, by failing to provide compensation at the federal minimum wage;

(c) California Labor Code §§510, 550-556 and 1194(a) and IWC Wage Order No. 9-2001 §3, by failing to provide premium wages for work in excess of eight hours per workday, 12 hours per workday, or 40 hours per workweek, for work in excess of 30 hours per workweek or six hours per day during any seven-day workweek, and/or for work on the seventh day of a seven-day workweek;

1       (d)  California Labor Code §§1182.12, 1194(a), 1194.2(a), and 1197 and IWC

2   Wage Order No. 9-2001 §4, by failing to pay at least the California minimum wage;

3       (e)  California Labor Code §226.7 and IWC Order No. 9-2001 §§11 and 12, by

4   failing to provide all required meal periods and rest breaks and failing to compensate

5   employees for missed or untimely meal periods and rest periods;

6       (f)  IWC Wage Order No. 9-2001 §5, by failing to provide reporting time pay;

7       (g)  California Labor Code §1174 and IWC Wage Order No. 9-2001 §7, by

8   failing to maintain and provide employees with access to complete and accurate

9   records;

10       (h)  California Labor Code §226, by failing to provide the information

11   required semimonthly or with each payment of wages;

12       (i)  California Labor Code §98.6, by retaliating against or threatening to

13   retaliate against employees for exercising their rights under California law;

14       (j)  California Labor Code §§201-204, by failing to pay full wages when due

15   and by willfully failing to make timely payment of the full wages due to workers

16   who quit or have been discharged;

17       (k) IWC Wage Order No. 9-2001 §4(C) by failing to compensate workers who

18   are required to work two shifts that are interrupted by a non-paid working period for

19   an extra hour of work;

20       (l) California Labor Code §223, by paying secret wages;

21       (m) California Labor Code §§221, 450, and 2802, and IWC Wage Order No.

22   9-2001 §§8 and 9(a), by making improper deductions from wages due;

23       (n) IWC Wage Order No. 9, §15, by failing to maintain the temperature in the

24   work area in such a manner as to provide reasonable comfort consistent with

25   industry-wide standards; and

26       (o)  California Business and Professions Code §§17200-08, by violating the

27   provisions set forth in subparagraphs (a)-(n).

28

THIRD AMENDED CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION COMPLAINT,
No. CV 11-8557 CAS (DTBx)                    97

EXHIBIT 4

11.   An award of unpaid minimum wages and an award of unpaid overtime premiums, plus liquidated damages and interest, pursuant to the FLSA, 29 U.S.C. §255(a).

12.   An award of restitution or damages in the amount of unpaid overtime, minimum wage compensation (plus liquidated damages pursuant to California Labor Code §1194.2), and unlawful deductions from wages (or liquidated damages pursuant to California Labor Code §226(e), whichever is greater), including interest thereon, subject to proof at trial.

13.   An award of statutory penalties pursuant to California Labor Code §§203, 1174.5, and 2698-99 and California Business & Professions Code §17206, subject to proof at trial;

14.   An award of penalties for failure to pay full wages when due pursuant to California Labor Code §§204 and 210, subject to proof at trial.

15.   An award of waiting time penalties as to those class members who quit or have been discharged, pursuant to California Labor Code §203, subject to proof at trial.

16.   An award of restitution of all amounts owed in unpaid overtime, minimum wage compensation, and unlawful deductions from wages, and interest thereon, in an amount according to proof at trial, pursuant to California Business & Professions Code §17203.

17.   Disgorgement of profits and all other appropriate equitable relief authorized by California Business & Professions Code §17203.

18.   Punitive and exemplary damages for fraudulent misrepresentation.

19.   Prejudgment and postjudgment interest on all sums awarded.

20.   Attorneys' fees and litigation expenses in an amount the Court determines to be reasonable, pursuant to 29 U.S.C. §216(b), Labor Code §§218.5, 226(g), 1194(a), 2699(g)(1), and 2802(c), and California Code of Civil Procedure §1021.5, and such other provisions as may be applicable.

21. Costs of suit.

22. Such other and further relief as is equitable, just, and proper.

Dated: January 10, 2013

MICHAEL RUBIN
JONATHAN WEISSGLASS
JENNIFER SUNG
Altshuler Berzon LLP

THERESA M. TRABER
LAUREN TEUKOLSKY
Traber & Voorhees

GUS T. MAY (SBN 159436)
KEVIN R. KISH (SBN 233004)
MATTHEW E. DECAROLIS (SBN 238595)
Bet Tzedek Legal Services

SANDRA C. MUÑOZ (SBN 190404)
Law Offices of Sandra C. Muñoz

By: _____
                Theresa M. Traber
Attorneys for Plaintiffs
EVERARDO CARRILLO; FERNANDO
CHAVEZ; ERIC FLORES; JOSE
MARTINEZ ARCEO; JUAN CHAVEZ;
ARMANDO ESQUIVEL; GUADALUPE
RANGEL MENDOZA; and JOSE ENRIQUE
TRUJILLO-VERGARA, *et al.*

THIRD AMENDED CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION COMPLAINT,
No. CV 11-8557 CAS (DTBx)

EXHIBIT 4

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and similarly situated warehouse workers, hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

Dated: 1/10, 2012

MICHAEL RUBIN
JONATHAN WEISSGLASS
JENNIFER SUNG
Altshuler Berzon LLP

THERESA M. TRABER
LAUREN TEUKOLSKY
Traber & Voorhees

GUS T. MAY (SBN 159436)
KEVIN R. KISH (SBN 233004)
MATTHEW E. DECAROLIS (SBN 238595)
Bet Tzedek Legal Services

SANDRA C. MUÑOZ (SBN 190404)
Law Offices of Sandra C. Muñoz

By: _____
Theresa M. Traber
Attorneys for Plaintiffs
EVERARDO CARRILLO; FERNANDO
CHAVEZ; ERIC FLORES; JOSE
MARTINEZ ARCEO; JUAN CHAVEZ;
ARMANDO ESQUIVEL; GUADALUPE
RANGEL MENDOZA; and JOSE ENRIQUE
TRUJILLO-VERGARA, *et al.*

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

     I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 1800 Century Park East, 8th Floor, Los Angeles, CA 90067.  On April 17, 2015, I served the following document(s) described as:  **NOTICE OF PROPOSED CLASS ACTION SETTLEMENT PURSUANT TO CLASS ACTION FAIRNESS ACT, 28 U.S.C. § 1715**

     on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

☐    **BY MAIL:**  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service.  Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business.  Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business practices.  (C.C.P. § 1013 (a) and 1013a(3))

☐    **BY FACSIMILE:**  At approximately _____, I caused said document(s) to be transmitted by facsimile pursuant to Rule 2008 of the California Rules of Court.  The telephone number of the sending facsimile machine was 310.315.8210.  The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list.  The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

☒    **BY OVERNIGHT DELIVERY:**  I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder.  (C.C.P. § 1013(d)(e))

☐    **BY HAND DELIVERY:**  I caused to be delivered such envelope(s) by hand to the office of the addressee(s).  (C.C.P. § 1011(a)(b))

☒    **FEDERAL:**  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

     I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

     Executed on April 17, 2015, at Los Angeles, CA.

_____
Matthew C. Kane

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT PURSUANT TO CLASS ACTION FAIRNESS ACT, 28 U.S.C. § 1715**

1

**SERVICE LIST**

2

The Attorney General of the United States
3   U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
4   Washington, D.C. 20530-0001

5

CAFA Coordinator
6   Office of the Attorney General
Consumer Law Section
7   455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
8

9   California Labor & Workforce Development Agency
Department of Industrial Relations
10   Division of Labor Standards Enforcement
San Francisco Headquarters
11   455 Golden Gate Avenue, 9th Floor
San Francisco, CA 94102

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2
NOTICE OF PROPOSED CLASS ACTION SETTLEMENT PURSUANT TO CLASS ACTION FAIRNESS ACT, 28 U.S.C. § 1715